FILED
2022 MAY 3
CLERK
U.S. DISTRICT COURT

Received
2022 MAY 2 PM 4:11
CLERK
U.S. DISTRICT COURT

**Hon. Samuel L. Biers – Pro Per**
Te-Moak Bar License No. TM21-01
1188 Court Street #1
Elko, Nevada 89801

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SAMUEL L. BIERS, an individual and Chief Tribal Judge of the Te-Moak Supreme Court, PLAINTIFF, * | **VERIFIED COMPLAINT** |
| VS. * | **PRELIMINARY INJUNCTION** |
| DENTONS US LLP, a Utah entity, dba Dentons, Dentons, Durham, Jones, Pinegar P.C.; * | **DECLARATORY JUDGMENT** |
| ZIONS BANCORPORATION, N.A. Utah corporation;* SALAL CREDIT UNION, a Washington entity; TONKON TORP LLP, an Oregon entity; * SCS ELKO LLC, a Nevada entity; GOVERNOR STEVE SISOLAK, in his official * capacity; STEVE SISOLAK, an individual; * AARON DARNELL FORD, an individual; AARON D. FORD, in his official capacity as the * Nevada Attorney General; TE-MOAK TRIBE OF WESTERN SHOSHONE * INDIANS OF NEVADA, a federal corporation; NEVADA STATE BANK, a Nevada Business entity * (a subsidiary of Zions Bancorporation, N.A.); ELKO BAND COLONY ENTERPRISES, a * fictitious entity; ADELA MORRISON, an individual; * ANDREA WOODS, an individual; ANGELEA MENDEZ, an individual; * | **EQUITABLE DISSOLUTION, RESCISSION, FORFEITURE OF ASSETS AND APPOINTMENT OF RECEIVER OR ALTERNATIVELY TEMPORARY CONSERVATOR** |

Case: 2:22–cv–00298
Assigned To : Bennett, Jared C.
Assign. Date : 5/2/2022
Description: Biers v Dentons US LLP
et al

ALICE TYBO, an individual;
BRENT ALAN WAITE, an individual;                                    *
BRYAN LUKE BOWKER, in his official and
Individual capacity;                                               *
CHADWICK CORNTASELL SMITH, an individual;
DARIAN STANFORD, an individual;                                    *
DAVIS GONZALEZ, an individual;
DAVID DALE CARRERA, an individual;                                 *
DUANE GARCIA, SR, an individual;
ELLIOT NANCE PARRIS, an individual;                                *
GEORGE TALLCHIEF SKIBINE, an individual;
JEFFERY SCOTT SYPOLT, an individual;                               *
JOSEPH DELAROSA, an individual;
JOSEPH HOLLEY, an individual;                                      *
J. ROSS DOCKSEY, an individual;
JOSEPH MCDADE, in his individual and                               *
official capacity;
JUAN AREVALO, an individual;                                       *
KEVIN CLOCK, an individual;
KRISTEN K. GODDARD-HEVENER, an individual; *
LARRY YEAGER, an individual;
LESLIE A. BERG-GROVE, an individual;                               *
MARLA L. MCDADE, in her individual
and official capacity;                                             *
PAUL CONABLE, an individual;
ROBIN ANN EVANS, an individual;                                    *
STEVE DUANE OLSON, an individual;
STEVEN JOSEPH MCDADE, an individual;                               *
SUZANNA R. SANDOVAL, an individual;
TAMMY JEAN CARRERA, an individual;                                 *
TANYA REYNOLDS, an individual;
THALIA MARIN, an individual;                                       *
VIRGINIA HEATHER SIBBISON, an individual;    CASE NO._____
WENDALL DEREK HAYES, an individual;          *
JOHN AND JANE DOES 1-100,                     **JURY TRIAL DEMANDED**
                              DEFENDANTS.     *

**VERIFIED COMPLAINT**

The Plaintiff, Samuel L. Biers, is an individual the appellate judge for the Te-Moak Supreme Court, who brings this action based in law and equity against the Defendants, in their individual and official capacities, and alleges the following:

## A.    INTRODUCTION

The Honorable Samuel L. Biers is not a convicted felon as a matter of fact and law. Individuals; federal, state and tribal government officials; private businesses and attorneys executed agreements to violate serious criminal laws, and during the process vilified, smeared and falsely accused the Plaintiff of being a convicted criminal, to hide their crimes.

Since February 2021 the Plaintiff, Samuel L. Biers, holds office as the Supreme Court Judge for the Te-Moak Tribe of Western Shoshone Indians of Nevada, and prior to that the Plaintiff served as the Te-Moak Tribal Administrator.  During this time allegations of corrupt practices surfaced involving federal, state and tribal government officials.

Initially, the Tribe's governing authority, the Tribal Council, instructed and directed the Plaintiff to report all fraud, waste and corruption discovered during the course of his employment, regardless of where the allegations arose.  Decades of fraud against the United States and tribal members occurred with impunity, and when the Plaintiff filed reports with federal law enforcement and agency officials, as required by law, the same officials enshrined with public trust were shown to be a part of a criminal organization.

This criminal network permeated the Executive, Legislative and Judicial Branches of the federal, state and tribal governments to such an extent that the Plaintiff's reporting was then subjected to open, public attacks, the Plaintiff rebuked by these government officials as though reporting criminal acts became an abhorrent act.

Through a series of agreements and plans, the Plaintiff's privacy, career and reputation were publicly assailed by the same groups of individuals who agreed to preserve and protect the criminal enterprise that first formed around the misappropriation of federal funding to Tribes, with kickbacks and bribes to officials, and then the organization blossomed to coalesce around the unlawful sale and distribution of a controlled substance, marijuana, as blessed by the Governor of Nevada.

To ensure the continued receipt of income and revenue from the criminal enterprise and avoid prosecution involving these individuals and entities, the Defendants, and others, engaged in a pattern of falsification and fabrication of legislative enactments, the fraudulent creation of businesses and legal authority.  Defendants moved across multiple jurisdictions falsifying and fraudulently manipulating financial data, tax forms and reports, to launder money obtained through the criminal enterprises, then transferring money into the political campaigns and personal assets of government leaders and officials.

For any attorney, judge, governor or senator to claim fealty to the laws of the United States and a criminal enterprise at the same time runs afoul with each and every oath of office taken by the Defendants, and simultaneously insults the hard work and dedication the rest of us who follow the law.  The continuity of the RICO enterprises identified in this Complaint would have ended absent the funding and material support from Governor Steve Sisolak; Attorney General Aaron Ford; Dentons; Zionsbank; Wells Fargo Bank and SALAL and the army of attorneys fighting to sustain a criminal organization.

Because the sale and distribution of marijuana is unlawful in Utah, Zionsbank, as the parent corporation, intentionally uses its subsidiaries, primarily Nevada State Bank, (NSB),

to serve as a central hub, clearing house or shell repository, before the electronic laundering of unlawful cash proceeds arrives at the main offices for Zionsbank Salt Lake City, Utah.  By design and purpose, Zionsbank attorney Brent Waite directs and controls financial operations at risk of liability to the shareholders through legal advice, including NSB and its employees, agents and representatives.

Following suite, Tonkon Torp, and its attorneys, create, dissolve and re-form multiple business entities they manage that engage in the unlawful sale, production and distribution of marijuana throughout the Western United States, then route the proceeds through SALAL and SCU Holdings into NSB and Zionsbank.  These transactions are observed and approved by state leaders, including Governor Steve Sisolak and Aaron Ford in exchange for the transfer of unreported cash contributions to their political campaigns, family members or business entities and associates, including the use of crypto currency.

However unpalatable or surprising these fact appear, this is a rare case, one that supports a finding that a true RICO organization operates through corrupt attorneys and politicians for their own personal interests and greed, claiming to be sanctioned by the courts and bar.  We are either a nation of laws or a nation of men.  There is no in between.

The words, facts and allegations in this Complaint, combined with the supporting evidence and proofs, will echo the immortal words of a truly great American:

> [a] thousand phenomena present themselves daily which we cannot explain, but where facts are suggested, bearing no analogy with the laws of nature as yet known to us, their verity needs proofs proportioned to their difficulty.  Jefferson, Thomas, Letter to Daniel Salmon, The Thomas Jefferson Papers Series 1, General Correspondence 1651-1827, U.S. Library of Congress, Image 1084 of 1330(February 15, 1808).

B.      **PARTIES**
        *Part I – Citizenship, Residency and Service of Process Information*

1.      Plaintiff, Samuel L. Biers, is an individual, an adult over the age of eighteen, who is a
        resident of the State of Washington, domiciled on federal, tribal lands within the
        United States Territory for the Te-Moak Tribe of the Western Shoshone Indians of
        Nevada, defined as Indian Country, and an official of the Te-Moak Tribe.

2.      Defendant, Andrea Woods, is an individual, an adult, over the age of eighteen, who is
        an enrolled tribal member and resident of the Te-Moak Tribe of the Western
        Shoshone Indians of Nevada - Wells Band within the United States Territory for the
        Te-Moak Tribe of the Western Shoshone Indians of Nevada, defined as Indian
        Country.  Andrea Woods may be served with legal process at:  1735 Ridgecrest
        Drive; Wells, Nevada 89835, or alternatively by mailing at:  P.O. 283; Wells, Nevada
        89835.

3.      Defendant, Adela E. Morrison, is an individual, an adult, over the age of eighteen,
        who is an enrolled tribal member and resident of the Te-Moak Tribe of the Western
        Shoshone Indians of Nevada - Wells Band within the United States Territory for the
        Te-Moak Tribe of the Western Shoshone Indians of Nevada, defined as Indian
        Country.  Adela Morrison may be served with legal process at:  907 Bar Hill Road;
        Wells, Nevada 89835 and 348 Metropolis Road; Wells, Nevada 89835, or
        alternatively by mailing at a rural United States Postal Serve mailbox address:  P.O.
        Box 424; Wells, Nevada 89835.  Adela E. Morrison also maintains a place of abode or
        retains or holds an ownership interest in real property located at: 102 Main S.
        Avenue; Twin Falls, Idaho 83301.

4.      Defendant, Davis Gonzalez, is an individual, an adult, over the age of eighteen, who is
        an enrolled tribal member and resident of the Te-Moak Tribe of the Western
        Shoshone Indians of Nevada - Elko Band within the United States Territory for the
        Te-Moak Tribe of the Western Shoshone Indians of Nevada, defined as Indian
        Country.  Davis Gonzalez may be served with legal process at:  554 Sunset Street;
        Elko, Nevada 89801, or alternatively by mailing: P.O. Box 898; Elko, Nevada 89803.

5.      Defendant, Alice Tybo, is an individual, an adult, over the age of eighteen, who is an
        enrolled tribal member and resident of the Te-Moak Tribe of the Western Shoshone
        Indians of Nevada – South Fork Band within the United States Territory for the Te-
        Moak Tribe of the Western Shoshone Indians of Nevada, defined as Indian Country.

Alice Tybo may be served with legal process at:  331 Long Canyon Road; Lee, Nevada 89815 or alternatively by mailing at:  20 Lee Unit 3; Lee, Nevada 89815.

6.   Defendant, Larry Yeager, is an individual, an adult, over the age of eighteen, who is an enrolled tribal member and resident of the Te-Moak Tribe of the Western Shoshone Indians of Nevada - Elko Band within the United States Territory for the Te-Moak Tribe of the Western Shoshone Indians of Nevada, defined as Indian Country.  Larry Yeager may be served with legal process at:  1720 Buckskin Drive; Elko, Nevada 89801.

7.   Defendant, Thalia Marin, is an individual, an adult, over the age of eighteen, who is an enrolled tribal member and resident of the Te-Moak Tribe of the Western Shoshone Indians of Nevada - Elko Band within the United States Territory for the Te-Moak Tribe of the Western Shoshone Indians of Nevada, defined as Indian Country.  Thalia Marin may be served with legal process at:  1757 Buckskin Drive; Elko, Nevada 89801.

8.   Defendant, Joseph Holley, is and individual, an adult, over the age of eighteen who is an enrolled tribal member and resident of the Te-Moak Tribe of the Western Shoshone Indians of Nevada – Battle Mountain Band within the United States Territory for the Te-Moak Tribe of the Western Shoshone Indians of Nevada, defined as Indian Country.  Joseph Holley may be served with legal process at:   36 Mountain View Drive; Battle Mountain, Nevada 89820, or alternatively by mailing at the United States Postal Service:  P.O. Box 274; Battle Mountain, Nevada 89820.

9.   Defendant, Suzanna R. Sandoval, is an individual, an adult, over the age of eighteen, who is an enrolled tribal member and resident of the Te-Moak Tribe of the Western Shoshone Indians of Nevada - Elko Band within the United States Territory for the Te-Moak Tribe of the Western Shoshone Indians of Nevada, defined as Indian Country.  Suzanna Sandoval may be served with legal process at: 2671 Indian View Heights Drive, SPC 3; Elko, Nevada 89801 or alternatively at: 17701 Avalon Blvd, SPC 342; Carson, California 90746.

10.   Defendant, Juan Arevalo, is an individual, an adult, over the age of eighteen, who is an enrolled tribal member and resident of the Te-Moak Tribe of the Western Shoshone Indians of Nevada - Elko Band within the United States Territory for the Te-Moak Tribe of the Western Shoshone Indians of Nevada, defined as Indian

Country.  Juan Arevalo may be served legal process at:  3001 Wongobi Street; Elko, Nevada 89801.

11.   Defendant, Marla L. McDade, is an individual, an adult, over the age of eighteen, who is an enrolled tribal member and resident of the Te-Moak Tribe of the Western Shoshone Indians of Nevada – South Fork Band within the United States Territory for the Te-Moak Tribe of the Western Shoshone Indians of Nevada, defined as Indian Country.  Marla McDade may be served with legal process at:  1435 SFIR Lee Road, Scattered Site #9; Lee, Nevada 89815 and 400 S. Saliman Road, Apartment L99; Carson City, Nevada 89701, or alternatively by mailing at HC 30 Box 250; Lee, Nevada 89815.

12.   Defendant, Steven Joseph McDade, is an individual, an adult, over the age of eighteen, who is an enrolled tribal member and resident of the Te-Moak Tribe of the Western Shoshone Indians of Nevada – South Fork Band within the United States Territory for the Te-Moak Tribe of the Western Shoshone Indians of Nevada, defined as Indian Country.  Steven Joseph McDade may be served with legal process at: 1645 Buckskin Drive; Elko, Nevada 89801; 1435 SFIR Lee Road, Scattered Site #9; Lee, Nevada 89815, or 6361 Johnson Avenue; Elko, Nevada 89801 or alternatively by mailing at:  HC 30 Box 250; Lee, Nevada 89815.  Steven Joseph McDade has or had an ownership interests in real property located at:  826 Laurelcrest Drive; Orlando, Florida 32828.

13.   Defendant, Tammy Jean Carrera, (aka Tammy Rambeau and Tammy Villareal), is an individual, an adult, over the age of eighteen, who is an enrolled tribal member and resident of the Te-Moak Tribe of the Western Shoshone Indians of Nevada – Battle Mountain Band within the United States Territory for the Te-Moak Tribe of the Western Shoshone Indians of Nevada, defined as Indian Country.  Tammy J. Carrera may be served with legal process at:  29 Mountain View Drive; Battle Mountain, Nevada 89820.

14.   Defendant, Tanya Reynolds, is an individual, an adult, over the age of eighteen, who is an enrolled tribal member and resident of the Te-Moak Tribe of the Western Shoshone Indians of Nevada – South Fork Band within the United States Territory for the Te-Moak Tribe of the Western Shoshone Indians of Nevada, defined as Indian Country.  Tanya Reynolds may be served legal process at:  397 Long Canyon Road; Lee, Nevada 89815, or alternatively at 21 Lee Unit 7; Lee, Nevada 89815.

15.    Defendant, Joseph McDade, is an individual, an adult, over the age of eighteen, who is an enrolled tribal member and resident of the Te-Moak Tribe of the Western Shoshone Indians of Nevada – South Fork Band within the United States Territory for the Te-Moak Tribe of the Western Shoshone Indians of Nevada, defined as Indian Country. Joseph McDade may be served legal process at: 544 Long Canyon Road; Lee, Nevada 89815, or alternatively by mailing at: 20 Lee Unit 6; Lee, Nevada 89815.

16.    Defendant, Duane Garcia, Sr., is an individual, an adult, over the age of eighteen, who is an enrolled tribal member and resident of the Te-Moak Tribe of the Western Shoshone Indians of Nevada – South Fork Band within the United States Territory for the Te-Moak Tribe of the Western Shoshone Indians of Nevada, defined as Indian Country. Duane Garcia, Sr., may be served with legal process at: Cedar Circle Drive #2; Lee, Nevada 89815 or 5200 S. Los Altos Parkway; Reno, Nevada 89436, or alternatively by mailing at 502 Lee Unit 13; Lee, Nevada 89815 and P.O. Box 1345; Elko, Nevada 89803.

17.    Defendant, David Dale Carrera, is an individual, an adult, over the age of eighteen, who is a tribal resident of the Te-Moak Tribe of the Western Shoshone Indians of Nevada – Battle Mountain Band within the United States Territory for the Te-Moak Tribe of the Western Shoshone Indians of Nevada, defined as Indian Country. David Carrera may be served with legal process at: 29 Mountain View Drive; Battle Mountain, Nevada 89820, or alternatively by mailing: P.O. Box 321; Battle Mountain, Nevada 89820.

18.    Defendant, Angelea Mendez, is an individual, an adult, over the age of eighteen, who is a tribal resident of the Te-Moak Tribe of the Western Shoshone Indians of Nevada – Elko Band within the United States Territory for the Te-Moak Tribe of the Western Shoshone Indians of Nevada, defined as Indian Country. Angelea Mendez is a tribal member of the Fort Hall Bannock Shoshone Tribe and may be served legal process at: 1628 Sagebrush; Elko, Nevada 89801 and 12421 Melon Drive; Rancho Cucamonga, California 91739, or alternatively by mailing at: 489 Route 6; Pocatello, Idaho 83202.

19.    Defendant, Chadwick Corntassel Smith, is an individual, an adult, over the age of eighteen, who is an enrolled tribal member of the Cherokee Tribe within the United States Territory for the Cherokee Nation, defined as Indian Country. Chadwick

Smith may be served legal process at:  708 East Ward Street; Tahlequah, Oklahoma 74464 and 22902 S 494 Road; Tahlequah, Oklahoma 7464, or alternatively by mailing at: P.O. Box 11324; Palm Desert, California 92255.

20.    Defendant, Wendall Derek Hayes, is an individual, an adult over the age of eighteen, who is a resident of the State of Illinois.  Wendall Derek Hayes may be served legal process at: 309 West Washington Street, Suite 900; Chicago, Illinois 60606-3209; 5800 E Lake Drive, Apartment 513; Lisle, Illinois 60532-4606 or  309 West Washington Street, Suite 550; Chicago, Illinois 60606.

21.    Defendant, the Te-Moak Tribe of the Western Shoshone Indians of Nevada, is a corporate entity, a federally recognized Native American Tribe, (referenced as "Te-Moak Tribe" "TMC" or "Tribe"), as stated in the United States Department of Interior, <u>Notice</u>, the Assistant Secretary – Indian Affairs, Tara Sweeney published in the Federal Register, Vol. 85, No. 20 (January 6, 2020), located within the United States Territory for the Te-Moak Tribe of the Western Shoshone Indians of Nevada, defined as Indian Country and governed by the Te-Moak Tribal Council.  The United States Department of Interior recorded the official place of business for the Te-Moak Tribe maintains in Indian Country as:  525 Sunset Street; Elko, Nevada 89801.

22.    Defendant, Robin Ann Evans, is an individual, an adult, over the age of eighteen, who is a resident of the State of Arizona.  Robin Evans may be served with legal process at:  8776 Shea Blvd. Suite 123; Scottsdale, Arizona 85260, or alternatively by mailing at:  P. O. Box 1135; Parker, Arizona 85344.

23.    Defendant, Lesley A. Berg-Grove, ("Leslie Grove"), is an individual, an adult over the age of eighteen, who retains or holds dual citizenship with the United States and Australia, and is a resident of the State of Nevada.  Lesley Grove may be served legal process at: 18171 Glen Lakes Court; Reno, Nevada 89508, 2201 Glenn Drive; Carson City, Nevada 89703 or 816 Mustang Lane; Gardnerville, Nevada 89410-6812.

24.    Defendant, Paul Conable, (*identified by the Plaintiff through Paul Conable's mother Barbara Conable at 4427 North Willis Blvd; Portland*), is an individual, an adult, over the age of eighteen, who is a resident of the State of Oregon.  Paul Conable may be served legal process at: 4920 NE 32nd PL; Portland, Oregon 97211; 35 M SW Whitaker SW Street; Portland, Oregon 97201; 888 SW Fifth Avenue; Portland,

Oregon 97204 and 3225 NE 43rd Avenue; Portland, Oregon 97213 (Andover Productions, Inc.).

25. Defendant, Jeffery Scott Sypolt, ("Sypolt"), is an individual, an adult, over the age of eighteen, who is a resident of the State of Illinois. Sypolt may be served with legal process at: 7903 Bayview Road; Wonder Lake, Illinois 60097 and 196 Ashley Way; Bloomingdale, Illinois 60108 or 1900 Fairfax Road; St. Charles, Illinois 60174 and 358 Cardinal Drive; Bloomingdale, Illinois 60108.

26. Defendant, Darian A. Stanford, is an individual, an adult, over the age of eighteen, who is a resident of the State of Oregon. Darian Stanford may be served with legal process at: 15530 NW Oakhills Drive; Beaverton, Oregon 97006 and 6937 North Fiske Avenue; Portland, Oregon 97203.

27. Defendant, Steven Duane Olson, ("Steve Olson" aka Sol Son), is an individual, an adult, over the age of eighteen, who is a resident of the State of Oregon. Steve Olson may be served with legal process at: 23586 NW Saint Helens Road, Apartment 2; Portland, Oregon 97231 or 31375 East Hayden Lake Road; Hayden, Idaho 83850 and 2202 NE 25th Avenue; Portland, Oregon 97231, or alternatively by mailing at: P.O. Box 13125; Portland, Oregon 97213.

28. Defendant, George Tallchief Skibine, is an individual and a partner at Dentons US LLP, an adult, over the age of eighteen, who is a resident of the State of Maryland. George T. Skibine may be served with legal process at: 1348 Constitution NE Avenue; Washington D.C. 20002, 1104 La Grande Road; Silver Springs, Maryland 20903 and 424 Mississippi Avenue; Silver Springs, Maryland 20910, or alternatively by mailing at: 9823 Pacific Heights Blvd. Suite H; San Diego, California 92121.

29. Defendant, Virginia Heather Sibbison, (aka V. Heather Sibbison aka Heather Sibbison), is an individual and a partner at Dentons US LLP, an adult, over the age of eighteen, who is a resident of the State of Virginia. Sibbison may be served with legal process at: 2913 Bryan Street; Alexandria, Virginia 22302, or alternatively by mailing at: P.O. Box 100, #8; South Westerlo, New York 12083.

30. Defendant, J. Ross Docksey, is an individual and a partner at Dentons US LLP, an adult, over the age of eighteen, who is a resident of the State of Illinois. J. Ross

Docksey may be served with legal process at: 4753 Wellington Drive; Long Grove, Illinois 60047, and 4753 RFD; Long Grove, Illinois 60047.

31. Defendant, Kevin Clock, is an individual, an adult, over the age of eighteen, who is a resident of the State of Oregon. Kevin Clock may be served with legal process at: 1100 Dumont Blvd. #C-148; Las Vegas, Nevada 89169 and 1167 North Main Street; Ashland, Oregon.

32. Defendant, Elliot Nance Parris, (aka "Eli"), is an individual, an adult, over the age of eighteen, who is a resident of the State of Oregon. Elliot N. Parris may be served with legal process at: 2689 S. Andros Way; Meridian, Idaho 83642 and 7517 Heather Knoll Circle; Las Vegas, Nevada 89129. Elliot N. Parris is identified in government records as the Managing Member for SCS Elko LLC with a street address of: 1100 Dumont Blvd. #C-148; Las Vegas, Nevada 89169.

33. Defendant, Joseph Delarosa, is an individual, an adult, over the age of eighteen, who is a resident of the State of Oregon. Joseph Delarosa may be served with legal process at: 1926 Sargent Avenue; Klamath Falls, Oregon 97601 and 4616 Spartan Way; North Las Vegas 89032.

34. Defendant, Governor Steve Sisolak, is a government official for the State of Nevada. Governor Steve Sisolak may be served with legal process, pursuant to law, to the Nevada Secretary of State at: 101 N. Carson Street, Suite 3; Carson City, Nevada 89701. Governor Steve Sisolak acted at all times relevant to this action under color and authority of and in violation of state law, to wit, contracts, statutes, ordinances, regulations, rules, customs and usages, in violation of federal law by enforcing and upholding state commercial marijuana laws in clear contravention with federal criminal prohibitions against commercial marijuana. See U.S. Const. Art. VI.

35. Defendant, Steve Sisolak, is an individual, an adult, over the age of eighteen, who is a resident of the State of Nevada. Steve Sisolak may be served with legal process at: 11031 Sanctuary Cove Court; Las Vegas, Nevada 89135 and 500 South Grand Central Parkway; Las Vegas, Nevada 89155 and 8337 Bella Famiglia Avenue; Las Vegas, Nevada 89178 and 359 E. Robindale Road; Las Vegas, Nevada 89123.

36. Defendant, Attorney General Aaron Ford, is a government official for the State of Nevada. Attorney General Aaron Ford may be served with legal process, pursuant to

41.    Defendant, SCS Elko LLC, (hereafter "SCS"), (acronym for Sovereign Cannabis
       Solutions), is identified and listed with the State of Nevada as a domestic limited
       liability company formed on May 8, 2019, (Nevada Business Identity No.
       NV20191350741), and government records state that SCS's street address is: 7517
       Heather Knoll Circle; Las Vegas, Nevada 89129 with one (1) sole manager-member:
       Elliot "Eli" Parris.  SCS may be served with legal process through its registered agent
       Eli Parris at:  1100 Dumont Blvd. #C-148; Las Vegas, Nevada 89169.

42.    Defendant, Dentons US LLP, DBA Dentons Durham Jones Pinegar P.C., ("Dentons"), is
       a Utah business entity that operates out of its principal place of business in Utah at:
       111 South Main Street, Suite 2400; Salt Lake City, Utah 84111.  Dentons also
       operates and conducts business involving interstate commerce from:  233 Wacker
       Drive, Suite 5900; Chicago, Illinois; and 1900 K Street NW; Washington, D.C. 20006.
       Dentons may be served with legal process through its registered agent DDJP
       Corporate Services at:  111 South State Street, Suite 2400; Salt Lake City, Utah
       84111.

43.    Defendant, Zions Bancorporation, National Association, is a Utah Corporation,
       (Entity Number 9603596-0143), with its principal place of business located at:  ONE
       SOUTH MAIN STREET, 2nd Floor; Salt Lake City, Utah 84133; and Zionsbank is the
       parent corporation for Nevada State Bank; California Bank and Trust; The
       Commerce Bank of Oregon; The Commerce Bank of Washington and Cash Access,
       Inc. (referenced herein as "Zionsbank").  Zionsbank may be served with legal
       process on its Utah registered agent Corporation Service Company at:  15 West
       South Temple, Suite 600; Salt Lake City, Utah 84101.

44.    Nevada State Bank, (NV20101844335), (herein referenced as "NSB"), merged with
       Utah's Zionsbank in 2010 and acts as Zionsbank's *alter ego* herein with the parent
       maintains its principle place of business located at:  One South Main Street, 2nd
       Floor; Salt Lake City, Utah 84133, with NSB operating locations throughout the State
       of Nevada where deposits, withdrawals and transfers identified in this complaint
       are directed electronically to Zionsbank in Salt Lake City, Utah, and the NSB
       registered agent in Nevada is identified as:  Corporation Service Company, George
       Massih, located at:  112 North Curry Street; Carson City, Nevada 89703.  The
       Corporate Officers identified by the State of Nevada are:  Deborah Smith,
       (Secretary), Dallas Haun, (President), Terry Shirey, (Treasurer) at: 750 E. Warm

law, to the Nevada Secretary of State at:  101 N. Carson Street, Suite 3; Carson City, Nevada 89701.  Attorney General Aaron Ford acted at all times relevant to this action under color and authority of state law, to wit, under color of statutes, ordinances, regulations, rules, customs and usages, in violation of federal law by enforcing and upholding state commercial marijuana laws in clear contravention with federal criminal prohibitions against commercial marijuana.  See U.S. Const. Art. VI.

37.   Defendant, Aaron Darnell Ford, is an individual, an adult, over the age of eighteen, who is a resident of the State of Nevada.  Aaron Ford may be served with legal process at:  3915 Pasilla Avenue; Las Vegas, Nevada 89118 and 1348 Saltern Drive; Carson City, Nevada 89706 and 500 South Grand Central Parkway; Las Vegas, Nevada 89155 and 2603 Creekwood Drive; Cedar Hill, Texas 75104 and 1474 Creekwood Drive; Cedar Hill, Texas 75104 and 5235 Gillette Avenue; Hilliard, Ohio 43026 and 1401 Fm 208; College Station, Texas 77840; and 401 Lincoln Avenue; College Station, Texas 77840.

38.   Defendant, Kristen K. Goddard-Hevener, is an individual, an adult, over the age of eighteen, who is a resident of the State of Nevada.  Kristen Hevener may be served with legal process at: 624 Rock Island Drive; Dayton, Nevada 89403. Kristen Hevener acted under color and authority of and in violation of state law, to wit, under color of statutes, ordinances, regulations, rules, customs and usages as a State of Nevada employee.

39.   Defendant, Brent Alan Waite, is an individual, an adult, over the age of eighteen, who is a resident of the State of Colorado.  Brent Waite may be served with legal process at:  6427 S. Acoma Street; Littleton, Colorado 80120-3410 and 353 Meadow Lark Trl; Gunnison, Colorado 81230 and 1227 E. Shadow Gate Circle; Sandy, Utah 84094, or alternatively by mailing at:  P.O. Box 30709; Salt Lake City, Utah 84130-0709.

40.   Defendant, Bryan Luke Bowker, is an individual, an adult, over the age of eighteen, who is a resident of the State of Arizona.  Bryan Bowker may be served with legal process at:  2524 E Linda Circle; Phoenix, Arizona 85050 and 12444 NE Knott Street; Portland, Oregon 97230 and 3000 SE 148th Avenue; Portland, Oregon 97236 and 10006 N. Ivanhoe Street; Portland, Oregon 97203.

Springs Road; Las Vegas, Nevada 89119; and Jeremy Aguero, (Director), 6385 S. Rainbow Blvd. Suite 105; Las Vegas, Nevada 89118.

45. Defendant, Tonkon Torp LLP, (herein "TT"), is an Oregon Business entity originally created for the purpose to "Practice of Law" as stated in government records, (No. 93-0633194) (October 29, 1997), with its principal place of business at: 888 SW Fifth Avenue; Portland, Oregon 97204. Tonkon Torp LLP may be served with legal process on Kurt W. Ruttum or Sherrill A. Corbett at 888 SW 5th Avenue, Suite 1600; Portland, Oregon 97204.

46. Defendants John and Jane Does 1-100 are individuals and entities known to exist however until the record is fully developed their true identities and involvement related to this action remain incomplete, through the use of discovery this information will become a part of the complaint through an amendment, if permissible by law, and until such time this Complaint references their involvement as "unnamed."

47. Defendant Elko Band Colony Enterprises, ("EBCE"), is a fictitious tribal business entity without a physical location that uses the address on federal Territory, within Indian Country, at: 1745 Silver Eagle Road; Elko, Nevada 89801 and the NCE Defendants use and submit the IRS EIN issued to Elko Band Colony for ECBE.

48. SALAL Credit Union is a business entity in the State of Washington registered under the Unified Business Identifier ("UBI") No. 601133761. SALAL was first incorporated on December 10, 1948, and SALAL identified its Board of Governors to the State of Washington on December 18, 2020 as: Russell Rosenthal; Bob Schweigert; Skott Pope, (aka Troy Skott Welden, Troy Skott Pope Jr. and Skott Pope); and Randy Cloes with the corporation's principal place of business identified as: 9706 4th Avenue NE; Seattle, Washington 98115. Exhibit III-D(1). SALAL Credit Union is also known as SCU Holdings LLC, a Washington business incorporated November 14, 2016, UBI No. 604058533, listing the physical address: 9706 4th Avenue NE; Suite 400; Seattle, Washington 98115, and both SALAL Credit Union and SCU Holdings LLC maintain and use the same mailing address: P.O. Box 75029; Seattle, Washington 98175. The State of Washington identifies KTC Service Corporation as the Registered Agent, located at: 701 5th Avenue, Suite 3300; Seattle, Washington 98104, and lists Russ Rosenthal, Skott Pope and Randy Cloes as the Board of Governors.

***Part II - Additional Factual Information Regarding The Parties***

49.    Davis Gonzalez implemented or used addresses, accounts and contact information related to his daughter, Barbelyn L. Tom, in Boise, Idaho; his son Mitch Gonzalez in Miami, Florida; his daughter Corrina Gonzalez in Elko, Nevada; his brother Raymond Gonzalez and Raymond's child Rosanna Recindez, and multiple United States Postal Service mailboxes, including P.O. Box 898; Elko, Nevada 89803, to hide by trick or deception Davis Gonzalez' residence, location and unlawful financial transactions from the public.  Davis Gonzalez claimed to the Plaintiff that Gonzalez has about 13 different credit cards issued in his name, some that are drawn in his adult children's names, (a possible 49 total), to hide his income and expenditures from tax liability.

50.    Thalia Marin held or retains an ownership interest in a business, Marin Roofing, LLC (Business ID:  NV20131614145), located at 491 4th Street; Elko, Nevada 89801 with her deceased husband's relative, Xavier T. Marin, who also holds an interest in real property that Thalia Marin invests in.  Thalia Marin held an ownership interest in a home previously titled in Merlin Gonzalez' name that was purchased, in whole or in part, with cash proceeds from the sale and distribution of a controlled substance at Newe Cannabis, to wit:  Merlin Gonzalez purchased the home from Xavier, with a loan that used cannabis proceeds obtained from Davis Gonzalez.

51.    Adela Morrison is the sister to Yolanda McDade, Joseph McDade's wife, and Yolanda McDade, Adela Morrison and Defendant Andrea Woods are sisters.  Defendant Morrison serves as the Te-Moak Housing Authority, ("TMHA"), Chairwoman.

52.    Joseph McDade is also an employee of the United States, the BIA Superintendent of the Eastern Nevada Agency and who is self-employed as a Native American rancher and married to Yolanda McDade.  Together Joseph McDade and Yolanda McDade manage a large cattle operation and have been cited and found liable for trespass by the United States involving grazing rights.

53.    Robin Evans held or retains an ownership interest in real property located at 9494 E. Redfield Road; Scottsdale, Arizona 85260; 8776 Shea Blvd, #B3A12; Scottsdale, Arizona 85260; 30 Virginia Drive; Monroe, Michigan 48161 and 310 Leland Pl; Lansing, Michigan 48917; 745 Arrowood Lane; Oak Park, California 91377.

54.    Robin Ann Evans maintains an analog landline telephone number through
       Michigan's Ameritech (517) 323-4147, and a digital cellular telephone number
       issued by or through New Cingular Wireless PCS LLC (480) 459-6201 located in
       Scottsdale, Arizona.  Robin Ann Evans' cell phone number is listed on the
       government contractor website Nevadabids.us and that website states that Evans'
       cellular telephone number is the telephone number for the official listing as "The
       Wells Band Council" with the stated address of:  1755 Mountainview Drive; Wells,
       Nevada 89835 where this is the official address identified as the Te-Moak Tribe's
       constituent Wells Band Council, and the same Robin Ann Evans' cellular phone
       number is listed as the number for RAM Homes LLC located at:  8776 Shea Blvd.
       Suite 123; Scottsdale, Arizona 85260.

55.    Tammy J. Carrera held or retains an ownership interest in real property located at:
       423 Antelope Drive; Battle Mountain, Nevada 89820; 115 Illipah Lane; Battle
       Mountain, Nevada 89820; 140 E 3rd Street; Battle Mountain, Nevada 89820 and 17
       Villa Real Lane; Yerington, Nevada 89447.  Tammy J. Carrera identified herself as the
       Master Court Clerk for the Te-Moak Administrative Offices of the Court and is the
       wife of David Dale Carrera.

56.    Duane Garcia, Sr., held or retains a joint ownership interest in real property with
       Alice Tybo, located on federal, tribal lands at:  203 Bench Road; Lee, Nevada 89815;
       and Duane Garcia, Sr., uses or used a United States Postal Service mailbox:  P.O. Box
       1345; Elko, Nevada 89803, with his wife, Melva Garcia, (sister to Alice Tybo and
       Tanya Reynolds), to hide, by trick and deception, assets using his children and
       grandchildren's names:  Michael Garcia, located at:  1004 Idaho Street; Belgrade,
       Montana 59714 along with a United States Postal Service mailbox address P.O. Box
       1125; Belgrade, Montana 59714; and also Duane Garcia, Jr., at 8261 Birch Water
       Lane; West Jordan, Utah 84081.

57.    David Dale Carrera held or retains an interest in real property located at:  1569
       1600 E; Battle Mountain, Nevada 89820; 640 Maple Court; Battle Mountain, Nevada
       89820; 67 E 5th Street; Battle Mountain, Nevada 89820, and in January 2022 the
       Plaintiff identified a recent deposit or balance of an amount over "$250,000.00" at
       Wells Fargo Bank in the name of David Dale Carrera.

58.    Paul Conable is an Oregon licensed attorney who works for Tonkon Torp; SCS Elko
       and Newe Cannabis, as well as controlled substance agreements involving Pyramid

Lake Paiute Tribe, the Reno Sparks Indian Colony, Winnemucca Indian Colony of Nevada and the Fort McDermitt Paiute-Shoshone Tribe. Fort McDermitt issued a Press Release with the University of Nevada-Reno announcing a cooperative use grant program to help grow tribal enterprises, the program Robin Evans presented to the Te-Moak Council on or about November 23, 2020. Paul Conable traveled across interstate highways, bridges, roads and on airlines to personally appear and has appeared on federal, tribal lands and conducted business for or on behalf of Newe Cannabis, SCS Elko LLC, EBC and EBCE, and other cannabis businesses.

59. The Te-Moak Tribe was first organized under the Constitution and By-Laws of the Te-Moak Bands of Western Shoshone Indians of Nevada on May 31, 1938, (approved by Assistant Secretary William Zimmerman August 24, 1938), and then pursuant to the <u>Corporate Charter of the Te-Moak Bands of Western Shoshone Indians of the State of Nevada</u>, a federal corporation chartered under the Act of June 18, 1934, (48 Stat. 1934), (as amended 49 Stat. 378 on June 15, 1935), as approved by the United States Secretary of the Interior, Assistant Secretary Oscar L. Chapman,(ratified on December 12, 1938), that granted the Te-Moak Tribe the right, power and authority "[t]o sue and be sued in courts of competent jurisdiction within the United States" limited to a "judgment, lien or attachment...[on] income or chattels specially pledged or assigned," under the perpetual succession of the federal incorporation.

60. Leslie Berg-Grove is co-owner of Integrity Business Solutions and Consulting with her husband, Aaron M. Grove, this business entity is a shell business, a tool or instrument that allows individuals or subsidiaries of the NCE to commit predicate acts, while committing predicate acts itself through Leslie Grove. Leslie Grove was hired in 2019 as the CFO Contractor for Elko Band Council, listing an address of 816 Mustang Lane; Gardnerville, Nevada 89410-6812, while simultaneously working for Elko Band Colony Enterprises, SCS Elko LLC, Tonkon Torp LLC and Newe Cannabis.

61. Leslie Grove used or uses the email addresses Lesleygrove@hotmail.com and lgrove@integritybsc.com to communicate with other Defendants to help transfer or deposit income and revenue obtained or derived from the sale and distribution of a controlled substance, marijuana, at Newe Cannabis, into Groves' personal and business bank accounts, funds or other intangibles, including Outback Equestrian Center LLC, with other unnamed parties, to hide, change or alter the character of the money, revenue or income without full, complete or accurate disclosure to financial institutions.

62.    Lesley Grove operates the business affairs of Integrity Business Solutions and
       Consulting, ("IBSC"), with a continuing pattern of racketeering activity that provided
       and provides material assistance to Davis Gonzalez; Juan Arevalo; Thalia Marin;
       Robin Evans; Kevin Clock; Elliot Parris; Paul Conable; Darian Stanford and Steve
       Olson to construct Elko Band Colony Enterprises and/or Newe Cannabis by holding
       her firm out as a GAAP accredited accounting firm when it lacks any GAAP
       accreditation, and on November 30, 2021 IBSC offered to perform a forensic audit
       on Elko Band programs and accounts for a $10,000.00 fee to determine the
       existence of any fraudulent transfers and expenditures related to the NCE.

63.    Defendant, Tanya Reynolds, continues to operate, manage and transact business,
       including financial transactions under the name Western Shoshone Descendants of
       Ruby Valley, ("WSDRV"), as a tribal business entity formerly recognized by the State
       of Nevada as a limited liability company listed by the state under the name ETK
       Enterprise, LLC, until June 30, 2016, (No. E0292302013-7), that identified Tanya
       Reynolds as the sole manager/owner with a fictitious address stated as being at the
       United States Postal Service issued tribal business mailbox address:  21 Lee B-7 Spg;
       Lee, Nevada 89815.  The business entity status for WSDRV and ETK was revoked by
       Nevada in 2016 and the fictitious address is a variation of Tanya Reynold's physical
       address on federal tribal land:  21 Lee Unit B-7; Lee, Nevada 89815.

64.    Darian Stanford is a former Department of Defense contractor attorney.  Darian
       Stanford is an Oregon licensed attorney who works for Tonkon Torp; SCS Elko LLC;
       Cascade Strategic Investments, ("CSI"), Sovereign Cannabis Investments, ("SCI"),
       Nuwu Cannabis and Newe Cannabis, by creating and managing controlled substance
       agreements involving the Te-Moak Tribe; Pyramid Lake Paiute Tribe; the Reno
       Sparks Indian Colony; Winnemucca Indian Colony of Nevada and the Fort
       McDermitt Paiute-Shoshone Tribe when the business entities are in fact false shell
       entities of Tonkon Torp.  Darian Stanford filed court documents claiming to
       represent Elko Band Council and Elko Band Colony Enterprises and made public
       statements that Darian Stanford was the attorney of record for Elko Band Council,
       ("EBC"), when EBC and Gonzalez repeatedly stated in public that Stanford did not
       represent EBC.[1]

---

[1] Elko Band Council and Elko Band Colony are synonymous here as the Elko Band Colony only acts pursuant to the
Elko Band Council, the governing body politic.

65.   Steve Olson held or retains an ownership interest in real property located at:  2202 NE 25th Avenue; Portland, Oregon 97231; 31375 East Hayden Lake Road; Hayden, Idaho 83850; 31245 E Hayden Lake Road; Hayden, Idaho 83835.  Steven D. Olson is an Oregon licensed attorney who shares a mutual United States Postal Service mailbox with his wife Colleen Marie Olson:  P.O. Box 13125; Portland, Oregon 97213 and uses his wife's email address to conduct business communications and messaging:  colleen@gmail.com and colleen@netzero.net.

66.   Steven D. Olson is the business agent for The Historic Portland Public Market Foundation and BAO Adventures LLC, which identify the same business address as Tonkon Torp LLC:   888 SW Fifth Avenue; Portland, Oregon 97204 and 1600 Pioneer Tower; Portland, Oregon 97204.  Steven D. Olson, aka Sol Son, maintains business associations with Barbara J. Jones; David D. Unzicker; Janet I. Gabrio; Wendy R. Dixon' Larry D. Dixon and Shannon Leigh Tomaszewski.

67.   Steve D. Olson is an Oregon licensed attorney at Tonkon Torp LLC.  Steve D. Olson traveled on interstate highways, bridges, roads and on airlines to personally appear and has appeared on federal, tribal lands and conducted business for or on behalf of Newe Cannabis, SCS, and Elko Band Colony Enterprises, and Steve Olson conducted business for or on behalf of CSI; SCI; Newe Cannabis; SCS and EBCE, as well as assisting or providing assistance with controlled substance business agreements involving Pyramid Lake Paiute Tribe, the Reno Sparks Indian Colony, Winnemucca Indian Colony of Nevada and the Fort McDermitt Paiute-Shoshone Tribe.

68.   SCS and CSI are fraudulent shell, instruments and 'prize' or 'tool' business entities of Tonkon Torp, and CSI is the alter ego business predecessor of SCS, which Cascade, Tonkon Torp, ("TT"), and TT Administrative Services (Registered Agent for Tonkon Torp) maintain the same business address:  888 SW Fifth Avenue; Portland, Oregon 97204, where the entities employ attorneys, agents and managers for or on behalf of Cascade, TT Administrative and Tonkon Torp.  Ref. Exhibits III-C(9) and (10). Defendant SCS is a manager member-owned business entity, its predecessor was called CSI, both of which are fraudulent shells, instruments or 'prize' business entities associated in fact and are operated by or owned by TT, Darian Stanford, Paul Conable or Steve Olson, with Kevin Clock and Elliot Parris pseudo or puppet managers on paper alone without true discretionary authority absent TT, Stanford, Olson or Conable's authorization to act.

69.     Dentons held, and continues to hold, itself out to the public as "a global legal practice providing client services worldwide," and "the world's largest law firm," with "207 offices...[in] 82 countries" where Dentons maintains "44 US locations" from which three (3) locations provided legal services to the Te-Moak Tribe, (*Sypolt, Skibine, Sibbison and Docksey*): 1) 111 South Main Street, Suite 2400; Salt Lake City, Utah 84111; 2) 233 Wacker Drive, Suite 5900; Chicago, Illinois; and 3) 1900 K Street NW; Washington, D.C. 20006 (*Denton's Native American Law and Policy team*).

70.     From April 2020 through September 1, 2021 Sypolt worked for, at or with Dentons in Salt Lake City, Utah; Chicago, Illinois; Washington, D.C., and beginning in September 2020 Sypolt frequently conducted business through the Dentons' Salt Lake City, Utah Office located at:  111 South Main Street, Suite 2400; Salt Lake City, Utah 84111 as well as an undisclosed office/location in Park City, Utah.

71.     Brent Waite is a Utah licensed attorney and for all relevant times to this action represented or provided legal services to Zionsbank while managing or controlling the business operations of Nevada State Bank, as Zionsbank's alter ego with Nicole Lewis, and others, through legal services, advice and representation.

72.     Defendant Sypolt is an Illinois licensed attorney and is married to Kiki Whitehead, (employed as a Professional Gambler).  Sypolt held or retain an interest in:  Fox Valley Towing Corporation-President (1701 E. Woodfield Road, Suite 1101; Schamburg, Illinois 60173); Grundy Personal Fitness Incorporated – Agent (730 Persimmons Drive; St. Charles, Illinois 60174); Merchant Capital Incorporation – Agent (730 Persimmons Drive; St. Charles, Illinois 60174); and RALEE International Trading Incorporated – President (10155 NW 9th Street Circle, Apt. 401; Miami, Florida 33171).  Sypolt and Kiki Whitehead (Stamatiou), jointly held or retain an interest in real property located at: 1436 Spyglass Court; Itasca, Illinois 60143; 196 Ashley Way; Bloomingdale, Illinois 60108 (reported August 2020); 1900 Fairfax Road; St. Charles, Illinois 60174 (reported January 2020); 358 Cardinal Drive; Bloomingdale, Illinois 60108 (reported July 2021); 787 E. Independence Drive; Palatine, Illinois 60074; 100 W. Randolph Street; Chicago, Illinois 60601; 5215 N. Moody Avenue; Chicago Illinois.  Defendant Sypolt used or uses a wireless cell phone to communicate and transmit electronic data related to the Te-Moak Tribe from to and across the Lucent Technologies data switch in Salt Lake City, Utah and the cellular number, (312) 402-6688, Sypolt used, was issued by New Cingular Wireless PCS LLC, and is associated with his a family member:  Brenda Joyce Sypolt.

89.   This lawsuit involves the diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of costs and interest, pursuant to 28 U.S.C. §1332(a)(1), and the suit is also between citizens of different states, a citizen or subject of a foreign state, Leslie Berg-Grove, and the amount in controversy exceeds $75,000.00, exclusive of costs and interest, pursuant to 28 U.S.C. §1332(a)(3).

90.   Under 28 U.S.C. §1367 the Court has supplemental jurisdiction over the Plaintiff's ancillary claims, *infra*, because they are so closely-related to, or interwoven with, the pendant-anchor claims under the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

91.   The Court has original jurisdiction because the lawsuit arises under, involves or relates to allegations, facts and events involving and related to the United States Postal Service, particularly 18 U.S.C. §1341,(*Mail Fraud*), *infra* incorporated by reference here, and joined with 5 U.S.C. §2302(2)(*Whistleblower Protection*) and 41 U.S.C. §4714(c)(*unlawful reprisal for filing OIG Complaints*).

92.   The Court has original jurisdiction over this lawsuit because the suit arises under 15 U.S.C. §1 and 7, (Sherman Act applies against Defendant's tortious interference in the Plaintiff's employment, business and contracts, and against Defendants who conspired to tortuously interfere with NDA agreements and other unlawful restraints on trade); and 15 U.S.C. §12-14, 18-19, 25-26, (Clayton Act applied against Defendants tortious interference in the Plaintiff's employment, business and contracts through the unlawful restraint of trade by way of NDA Agreements, serving or conducting the business of multiple business entities to restrain trade and competition, to fix prices, receive compensation to fix prices, suppress competition, bribery, extortion, threats, market manipulation schemes and retaliation against the Plaintiff).

73.     Defendant, George T. Skibine, held or retains an interest in real property located at: 1104 La Grande Road; Silver Springs, Maryland 20903 and 424 Mississippi Avenue; Silver Springs, Maryland 20910.  George T. Skibine served as the United States Department of Interior Assistant Secretary – Indian Affairs, (acting), in 2008 and 2009.  George T. Skibine used or uses a United States Postal Facility address and an address for Triden Security Group at:  9823 Pacific Heights Blvd. Suite H; San Diego, California 92121, and a cell phone number (706) 294-6094 issued out of Atlanta, Georgia by Powertel Atlanta Licenses Inc.

74.     Defendant Sibbison held or retains an ownership interest in real property located at: 54 Hunterstown Road; Germantown, New York 12526; 1330 Bayliss Drive; Alexandria, Virginia 12526; 902 Arcadian Drive; Cheyenne, Wyoming 82007 and 7337 Kehne Road; Frederick, Maryland 21702.  Defendant Sibbison is associated with a United States Postal Service mailbox address at:  P.O. Box 100, #8; South Westerlo, New York 12083.  Defendant Sibbison is an attorney and who holds or owns an interest in Dentons as a partner, where she serves as the Chair of the firm's Native American Law and Policy Practice.  Defendant Sibbison is a paid lobbyist in Washington D.C. for several Native American Tribes, and who has been employed as United States Department of Justice - Counsel to the Assistant Attorney General for Environmental and Natural Resources at the; United States Department of Interior Office of Water Rights - Director; Counsel to the United States Department of Interior Deputy Secretary; Special Assistant to the Secretary of the United States Department of Interior.

75.     Defendant J. Ross Docksey is an attorney and partner at Dentons.  Defendant J. Ross Docksey held or retains an interest in Rytec Corporation, held or retains an interest in Dentons and held or retains an interest in an agricultural farm located at:  4753 RFD; Long Grove, Illinois 60047.

76.     Defendant Chadwick Smith held or retains an ownership interest in real property located at: Tahlequah, Oklahoma 74464; 22959 S. 494 Road; Tahlequah, Oklahoma 74464; 24082 County Road 556; Colcord, Oklahoma 74338; 8324 Hillwood Drive; Tulsa, Oklahoma 74131; and Defendant Smith held or retains an interest, along with his wife, Bobbie Gail Smith, in real property located at:  322 NW 3rd Street; Antlers, Oklahoma 74523 and 1340 E. 61st Street; Tulsa, Oklahoma 74136.

77. Defendant Chadwick Smith, a.k.a. Chadwick F. Smith; Chadwick N. Smith; Chadwick C. Smith; Chadwick Bobbie Smith and Chad Smith, used or uses the mailing address of: P.O. Box 11324; Palm Desert, California 92255 with the telephone number of: (918) 453-1707 on legal filings, which is a number assigned to his daughter, Kaith A. Smith, a.k.a. Kaith Anaweg Nedsin and Kaith Smith, that was shown as 'disconnected' in public records when Plaintiff prepared this Complaint.

78. In August 2020 Sypolt, Skibine and/or Dentons hired and paid Defendant Smith to represent the Te-Moak Tribe to fight against the SCE-EBCE Cannabis operations on tribal lands, without disclosing a prior relationship existed between Smith, Sypolt, Skibine, Dentons and SCS/TT in a written, dated format to the entire Te-Moak Tribal Council at any time between August 2020 and March 19, 2021.

79. Defendant Kevin Clock held or retains an interest in real property located at: 12729 SE Kelly Street; Portland, Oregon and 10138 SE 96th Avenue; Happy Valley, Oregon 97086.

80. Defendant Elliot N. Parris held or retains an interest in real property located at: 11835 SW Koski Drive; Portland, Oregon 97914 and 219 SW 9th Avenue; Ontario, Oregon. Defendant Parris identified his address to the State of Nevada Secretary of State as: 7517 Heather Knoll Circle; Las Vegas, Nevada 89129. Defendant Parris used or maintains a United States Postal Service mailbox address at: P.O. Box 32; Ontario, Oregon 97914.

81. Defendant Bryan Bowker, ("Bowker"), held or retains, individually or jointly with his wife Carolyn Shafer-Bowker, an interest in real property located at: 12444 NE Knott Street; Portland, Oregon 97230; 3000 SE 148th Avenue; Portland, Oregon 97236 and 10006 N. Ivanhoe Street; Portland, Oregon 97203, and Defendant Bowker is employed with the United States Bureau of Indian Affairs as the Western Regional Director in Phoenix, Arizona where in an employment context Bowker supervises his wife's brother Glen Ivan Shafer as Shafer oversees the Bureau's contracts and grants to the Te-Moak Tribe.

82. RAE Solutions LLP was a Nevada business entity formed in 2008, Nevada Business Identification Number NV20081673770, until its status was permanently revoked by the state in 2010. RAE Solutions LLC was managed by its sole officer/owner, Defendant Robin Ann Evans, and continues to use a mailbox address at: 8776 Shea

Blvd. Suite 123; Scottsdale, Arizona 85260, while conducting business across multiple states, involving interstate commerce, particularly Utah, providing contract and federal grant services to multiple tribal governments and entities.

83. Defendant Steve Sisolak held or retains an ownership interest in real property located at: 500 South Grand Central Parkway; Las Vegas, Nevada 89155; 8337 Bella Famiglia Avenue; Las Vegas, Nevada 89178 and 359 E. Robindale Road; Las Vegas, Nevada 89123. Defendant Sisolak, individually or jointly with his wife Kathy Ong as well as his ex-wife Lori Sisolak, held or retains an interest in: Katlyns Dream; The Mortgage Finance Group LLC; United Alliances LLC; Desert Treasures Properties LLC; Desert Treasures Investments LLC; Consumer Credit Assistance LLC; Las Vegas Boulevard South.

84. Defendant Aaron Ford held or retains an ownership interest in real property located at: 1348 Saltern Drive; Carson City, Nevada 89706; 500 South Grand Central Parkway; Las Vegas, Nevada 89155. Defendant Ford held or retains an ownership interests, individually or jointly with his wife, Berna Rhodes Ford, in real property located at: 2603 Creekwood Drive; Cedar Hill, Texas 75104; 1474 Creekwood Drive; Cedar Hill, Texas 75104 and 5235 Gillette Avenue; Hilliard, Ohio 43026; 1401 Fm 208; College Station, Texas 77840; and 401 Lincoln Avenue; College Station, Texas 77840. Defendant Ford used a personal email address to conduct government business: aarondford@frontiernet.net, and Aaron D. Ford shares a cellphone telephone number listed out of Texas with his wife and other family members identified as: (972) 533-9921, issued through New Cingular Wireless PCS LLC. Defendant Ford is employed as the Attorney General for the State of Nevada who reports directly to the Governor, Steve Sisolak, and who is the supervisor over Kyle George, First Assistant Attorney General for Nevada.

85. Defendant Marla McDade used or continues to use the United States Postal Service mailbox: HC 30 Box 250; Lee, Nevada 89815, and maintains a place of abode located at: 400 South Saliman Road, Apt. L99; Carson City, Nevada 89701. Marla L. McDade is also known as Marla Williams and is employed as the State of Nevada Deputy Director Health and Human Services with responsibility over the state's cannabis program through her subordinate agency the Division of Public and Behavioral Health, ("DPBH"). DPBH receives applications for state cannabis licenses, then conducts a 90 day review and either issues a certificate or denies the application. Marla McDade is a former Deputy Administrator (February 2010 thru June 2014),

former Bureau Chief, (June 2008 thru February 2010), and former Health Program Manager, (July 2004 thru June 2008), at the State of Nevada Division of Public and Behavioral Health in the State of Nevada. Marla McDade also received pay as a lobbyist and Senior Director for Strategies 360, (from February 2017 through January 2022), a State of Washington business entity that advocates for marijuana legislation. Marla L. McDade Williams is the supervisor over Kirsten Hevener, Business Process Analyst II, (July 2012 to present), at the Nevada Department of Health and Human Services.

86.    Defendant Kristen Hevener uses a personal email address: khevener1@yahoo.com, and the telephone number (775) 241-0310, issued by Nevada Bell Telephone Company, and the cell phone (775) 230-3609 issued by New Cingular Wireless PCS LLC, to conduct government business, including the transmission of information, data and communications related to the allegations identified in this Complaint.

**B.    JURISDICTION**

87.    The Court has jurisdiction over this lawsuit because the suit arises under the United States Constitution, Amend. 1 and 14;  Article 1, sec. 10, cl. 5; Article 2, section 2; Article 4, sec. 2, cl. 1 and Article 6; 5 U.S.C. §2302(2)(*Whistleblower Protection*); 29 U.S.C. §201 et seq. and 41 U.S.C. §4714(c)(*unlawful reprisal for filing OIG Complaints*).

88.    The Court has jurisdiction over the lawsuit because a substantial part of this action arises under or is brought pursuant to 28 U.S.C. §§1331 and 1337 and allegations supporting violations of the RICO statutes: 18 U.S.C. §§1961(1)(A) and (B), (4) and (5), 18 U.S.C. § 1962(a), (c) and (d) and 1964(a) and (c), involving 18 U.S.C. §1341(*Mail Fraud*); 18 U.S.C. §1343(*Wire Fraud*); 18 U.S.C. §1344(*Bank Fraud, including False Entry under* 18 U.S.C. §§1005 and 1006); 18 U.S.C. §1956(*Money Laundering, including violations of* 18 U.S.C. §1957 *Engaging in Unlawful Money Transactions and violations of the Travel Act* 18 U.S.C. §1952); and 18 U.S.C. §§1503(*Obstruction*), 1510(*Obstruction of Criminal Investigation*), 1512(*Witness, Victim or Informant Tampering*) and 1512(*Retaliation against Witness, Victim or Informant*); 42 U.S.C. §§1981, 1982, 1983, 1985, 1986 and 1988; and 28 U.S.C. §1367.

## C.      VENUE

93.   There are two (2) sources of venue that resound in this Court:

    a.   A substantial part of the events giving rise to the action occurred in this district, where, from within the State of Utah, a criminal organization planned, and agreed to conduct its operations to create, amass and distribute wealth originating or derived from the unlawful sale and distribution of a controlled substance, marijuana, and from fraudulent misappropriations of federal grant funds:

        1)   The Te-Moak Tribe conducted and managed its financial management services and programs through Hinton-Burdick, CPA, in St. George Utah, where a substantial amount of financial evidence related to this lawsuit is located.  28 U.S.C. §1391(a)(2).

        2)   The Te-Moak Tribe and Elko Band Council conducted and managed its financial transactions directly and indirectly through Zionsbank in Salt Lake City, Utah where a substantial amount of financial evidence related to this lawsuit is located.  28 U.S.C. §1391(a)(2).

        3)   A substantial portion of the electronic transmissions and communications identified in this lawsuit, whether email,  internet and telephonic, were routed through the Lucent Technologies, Inc., POP 100 Gigabyte data switch in Salt Lake City, Utah.  28 U.S.C. §1391(a)(2).

        4)   A substantial portion of the communications identified or involved in this action were received, sent to, transferred and deliver through the United States Postal Service Regional Processing and Distribution Facility, partly to retaliate against the Plaintiff then an employee of a federal government grantee, who filed complaints with the OIG and Solicitor General in Salt Lake City, Utah. 5 U.S.C. §2302(2) and 41 U.S.C. §4714(c).  See 28 U.S.C. §1391(a)(2); and

      5) Defendants Sypolt, Holley and Reynolds contacted, communicated and negotiated, as a joint team through Sypolt and Dentons, with Darian Stanford; Paul Conable; Steve Olson; Governor Steve Sisolak and Attorney General Aaron Ford from and within the State of Utah, creating and entering agreements described in this Complaint that included retaliation, malicious prosecution and deprivation of the Plaintiff's constitutional rights, as part of the NCE plan or scheme.

    b. Defendant Dentons maintains a principal place of business in Utah at: 111 S. Main Street, Suite 2400; Salt Lake City, Utah 84111.  Zionsbank maintains a principal place of business at: ONE SOUTH MAIN STREET; Salt Lake City, Utah 84133.  Defendant Waite maintains a place of abode in the State of Utah and a substantial amount of evidence related to Defendant Waite's conduct, acts and omissions is located and Defendant Waites conduct occurred in the State of Utah.  See 28 U.S.C. §1391(a)(3).

## D.    FACTS AND ALLEGATIONS

94.    On August 26, 1982 John W. Fritz, United States Department of Interior Deputy Assistant Secretary ---Indian Affairs, stated in an official government record "with the authority granted to the Secretary of the Interior by the Act of June 18, 1934 (48 Stat. 984), as amended, and delegated to [Fritz] by 209 DM 8.3 . . .hereby approve th[e] Constitution of the Te-Moak Tribe of Western Shoshone Indians of Nevada . . .**providing that nothing in this approval shall be construed as authorizing any action under this document that would be contrary to Federal law**," and that the approved version of the Te-Moak Constitution provides that "the exercise of [Tribal Council] powers **shall not conflict with Federal Law**," and "[c]onsistent with this Constitution, Federal and Tribal law, the Band Councils shall have the power to . . .[c]onduct business. . .[m]anage local enterprises, own and operate businesses" provided that **"[n]o action of any Band Council shall be inconsistent with Federal law**, this Constitution, or ordinances and resolutions of the Tribe." Constitution of the Te-Moak Tribe, Article 4, section 3 and section 12, 12(a), 12(b) and 12(c)(emphasis added).  Any violation of federal law by any Te-Moak official should constitute a waiver of sovereign immunity, resulting in personal liability.

95.   For the relevant periods related to matters in this lawsuit the Plaintiff, Samuel L. Biers, is not and was not a convicted felon as a matter of law and fact.

96.   As the Te-Moak Tribal Administrator, the Plaintiff retained and held the authority to assign tasks and duties to each and every Te-Moak employee, subject to Te-Moak Tribal Council official action, direction, policy and existing law.

97.   The Te-Moak Tribe of Western Shoshone Indians of Nevada operates by way and through the Tribal Council, (hereinafter "TMC"), which is the Tribe's Executive and Legislative Branches of government.  The TMC announced on June 30, 1975 all State of Nevada laws were inapplicable on Te-Moak tribal lands, (P.L. 280), and that the Tribe will "retrocede back to Federal jurisdiction," and on June 29, 1975 the TMC enacted legislation that states the minimum rate of pay for the Chief Tribal Judge shall be "GS-13(1)."  Exhibit II-C(10); e.g. Te-Moak Const., Art. 4, Section 20(c)(*this type of Resolution is permanent as it relates to "particular individuals or officials"*).

98.   According to the United States Office of Personnel Management Salary Table 2021 for the District of Las Vegas, a GS-13(1) wage rate for the year 2021 was set at "$93,518.00" per year and for the year of 2022 the GS-13(1) wage rate was set at "$96,038.00" per year.

99.   Te-Moak law states that:  Ordinances, Proposed Ordinances, Resolutions and Motions are the only lawful legislative decrees of the Te-Moak Tribal Council, termed "Legislative Actions," and that the exercise of any power by the Te-Moak Tribal Council "shall not conflict with Federal Law or terms of th[e] Constitution." See Te-Moak Constitution, Article 4, sec. 3, sec.3(n) and sec. 20(a)-(d).

100.  On or about May 20, 2004 the Te-Moak Tribal Council held a Special Meeting after that body politic obtained information that the U.S. Bureau of Indian Affairs Eastern Nevada Agency "personnel, and its officers," were taking or receiving "kickbacks from judicial funds" earmarked or allocated to the Te-Moak Tribe, and the Te-Moak Tribal Council officially requested that the United States General Accounting Office; U.S. Department of Interior Office of Inspector General; U.S. Department of Justice and the "Nevada Congressional delegation" begin investigating the BIA WRO and BIA ENA "contracting practices" along with an internal audit to "account for federal funds." Te-Moak Resolution 04-TM-35.

101.   As grantee-recipient managers of federal funds obtained and awarded for tribal programs, (for the period October 2018 thru October 2021), Joseph Holley; Alice Tybo; Duane Garcia, Sr.; David Carrera; Davis Gonzalez; Andrea Woods; Thalia Marin; Juan Arevalo, and others, were responsible to guarantee that an "affirmative action plan" existed for all Te-Moak employees and to guarantee the protection of federal civil rights for all employees, officers, personnel and staff of the Tribe under that plan, including, but not limited to, preserving the confidentiality of personnel records "[i]n accordance with Federal Regulations . . ." Te-Moak Personnel Policies and Procedures Manual, Part IV at 6(*"insure[ ] equal opportunity in recruitment and selection. . .disciplinary action and all other related personnel procedures and practices in accordance with the Indian Self-Determination and Education Assistance Act, P. L. 93-638. . .Section 7, the Civil Rights Act, amended by P.L. 92-621, Section 703"*); Exhibit I-A(3): Part XV(B)(2) at 27 (1993); e.g. 42 U.S.C. §2000e et seq.

102.   Te-Moak law states that a sealed record shall not constitute criminal history and a sealed record shall not be considered during the employment and pre-employment process. See Exhibit I-A(3): Part V(A)(1) at 6.  The Te-Moak Personnel Policy states that the Tribal Council is required to "provide" employees with group hospital insurance, travel accident insurance, accidental death and dismemberment insurance, in addition to workers compensation and "Credit Union Savings" payments.  Exhibit I-A(3): Part VII(H)(1)-(3) at 10.  The Te-Moak Tribe failed or refused to provide required insurance to the Plaintiff apart from workers compensation insurance.

103.   Te-Moak law states that all employees, staff and personnel who are "subject to disciplinary action," are afforded the right to "file a grievance," defined as "a written complaint" setting forth the claims, delivered to the supervisor, who in turn must issue a "decision . . .within five (5) working days," and any failure to timely resolve the grievance triggers the appeals process.  In the appeals process an aggrieved employee requests TMC review of any decision and every employee shall be afforded "due process" which shall mean "notice of the charge or complaint or proposed action and an opportunity to be heard . . ." Exhibit I-A(3) at 18-19, Part X(A)-(C)(3).  After the Te-Moak Tribal Council issues its final decision in any disciplinary action Te-Moak tribal law states that "the only recourse is the court." Exhibit I-A(3) at 22, Part X(E)(13).

104.   On April 5, 2017 at a civil jury trial in the United States District Court for the Middle
District of North Carolina, North Carolina Administrative Office of the Courts'
employee, Tuwana Capers, testified under oath, (*as the person who processed the
Plaintiff's employment documents as a North Carolina magistrate judge*), that she
inserted a false or erroneous birth date regarding the Plaintiff onto hiring
documents, proving the Plaintiff's prior statements that the Plaintiff did not falsify a
birth date on the employment records with the State of North Carolina, and there
exists no decision or order from any court of law that the Plaintiff falsified
information related to his birth date on employment documents with the State of
North Carolina.  Ref. Transcript, Vol. 3, p.12, Ln. 9-14; p.18, Ln.9-24 and p.25 Ln. 1-3
(Biers v. Cline, Case No. 1:12CV375)(April 5, 2017). The Plaintiff did not falsify his
date of birth on employment records with the State of North Carolina, and all
removal proceedings in North Carolina were dismissed in favor of Plaintiff.  Ref.
Exhibit I-B(1):  Order Dismissing Removal (11-CVS-2972); Order to Dismiss
Removal (11-CVS02941); Order Sealing Personnel Records.

105.   On October 16, 2017 the United States Solicitor General for the Department of
Interior, Christopher Andres Rueda, (located in Salt Lake City, Utah), issued a formal
written opinion that states:

> [u]nless a tribal constitution states otherwise. . .[absent
> a delegation of authority or amendment to the Tribe's
> constitution] it is our position that no single individual,
> Councilmember or other officer currently holds the
> authority to negotiate with the United States or to bind
> the Tribe. . .it is the BIA's position that the Tribal Council as
> a whole retains this authority until it is official delegated. . .
> Exhibit I-B(5)(b):  Update Report at 1, No.  A15AV00203,
> (U.S. Office of Hearings and Appeals)(Case No. ISDA 2017-01).

106.   On or about December 17, 2018 Elko Band Council created a subcommittee that
produced a government report stating that a total of 119 Elko Band members out of
total of 1606 Elko Band members voted in 2018, and the final vote supported the
approval of legislation related to  "Medical Purposes Only" regulation of marijuana
by EBC with "91" votes. Elko Cannabis Poll (December 17, 2018).  In 2018 the Te-
Moak Tribe of Western Shoshone Indians of Nevada consisted of about 2459
enrolled members and the Tribe did not conduct a vote on this issue.

107. On or about January 18, 2019 United States Attorney for the District of Nevada, Nicholas Trutanich, prepared, drafted and authorized the submission of an official government record to the Te-Moak Tribe formally declaring a partnership between the United States and the Te-Moak Tribe, whereby the United States agreed to "increase prosecutorial resources . . .ultimately putting the most violent criminals in prison." Since 2019 United States prosecutorial resources for the Te-Moak Tribe decreased to a point of being almost non-existent.

108. Beginning on or about June 16, 2019 Marla McDade published and republished false statements regarding the Plaintiff to government officials, across the internet and to members of the community that the Plaintiff is a convicted felon, and further publicly stated that the Plaintiff was removed from his position as a magistrate judge because the Plaintiff lied on his employment application. Marla McDade then published and republished this same information to Joseph McDade and Steve McDade who in turn republished this information online and then distributed the same information to the Court of Indian Offenses, where the Plaintiff was practicing law, and to multiple tribes in Nevada.

109. Kristen Hevener was promoted and paid by the State of Nevada to sign and submit a false affidavit avowing that documents, records and information held under court seal were subject to release by Hevener, then a receptionist, without a court order, when the State of Nevada agency who employed Hevener acknowledged an order sealing those records existed years earlier. Two weeks prior to the execution of the false affidavit by Hevener, the State of Nevada drafted correspondence stating it will ensure application of the court seal, that the seal existed and all records were erased pursuant to the court seal and Nevada law. After producing, signing and transmitting the false affidavit, Kristen Hevener received a lateral promotion to a division of the Nevada Department of Health and Human Services where her annual pay rate doubled from her prior position as a receptionist. Marla McDade became Hevener's supervisor.

110. For all relevant times Kristen Hevener willfully, intentionally or recklessly continued to publish and republish her false affidavit, without retraction, disavowal or denial, and Kristen Hevener was assisted by Marla McDade, Steve Sisolak; Aaron Ford; Steve McDade; Joseph Holley; Joseph McDade; Tanya Reynolds, and others, to publish and republish her false affidavit on the internet and the Plaintiff's protected

personal information, by email and via FedEx and the United States Postal Service without retraction, disavowal or denial with the intent or purpose to violate or attempt to violate N.R.S. §205.463, a felony act.

111. After obtaining Kristen Hevener's agreement to republish the Hevener false affidavit, on or about June 16, 2019 Marla McDade republished the Hevener false affidavit containing the Plaintiff's protected information via the internet, email and other electronic means, throughout the United States, and thereafter Marla McDade published additional false information regarding the Plaintiff to Te-Moak Tribal members, government officials and leaders, and then contacted Plaintiff's former employer, the State of North Carolina, without legal authority or the permission from the Plaintiff seeking and obtaining private, confidential personnel information with the intent or purpose to violate or attempt to violate N.R.S. §205.463, a felony act in the State of Nevada. Ref. Exhibit I-B(Orders Dismissing, and Sealing Records).

112. From June 2019 through October 2019 Marla McDade stated to Joseph McDade and Steve McDade that Marla McDade confirmed with North Carolina government officials that the Plaintiff was "fired" and "removed" from office as a North Carolina Magistrate judge because the Plaintiff "lied on his employment application" by inserting a false birth date. Id; see Exhibit III-D(7):  McDade Defamation Facebook Post (January 1, 2020)("*article written in the Durham NC paper is not an accusation of any kind. It's fact. I personally know a family member who called the sitting NC magistrate and that magistrate verified everything in that article*";  Lorrie Carpenter: "*well when [Biers] dies we can thank the [Te-Moak Tribe]*").

113. On or about January 1, 20202 Steve McDade stated that the family member who provided the information regarding the Plaintiff referenced on Steve McDade's Facebook online post was his sister Marla McDade, and that at the time Marla McDade republished the statements regarding the Plaintiff and contacted North Carolina, Marla McDade was not a State of Nevada employee, yet she stated and claimed to government officials with the State of North Carolina, the United States and the Te-Moak Tribe that she represented the State of Nevada in order to obtain private, confidential personnel information related to the Plaintiff from an unnamed employee, agent or representative of the State of North Carolina with the intent or purpose to violate or attempt to violate N.R.S. §205.463.  During this same time period Marla McDade worked for a Cannabis firm out of the State of Washington and she received funds that were derived or originated from the unlawful sale and

distribution of a controlled substance, marijuana, to pay or reimburse Marla McDade for the time, services and costs associated with obtaining the confidential, private and privileged information regarding the Plaintiff in Nevada and North Carolina.

114.   At no point in time was the Plaintiff 'recalled or removed' as a magistrate judge in North Carolina as all removal actions were dismissed against the Plaintiff by the State of North Carolina in 2011.  As a magistrate judge the Plaintiff refused to take a bribe, refused to fix court cases and the Plaintiff reported criminal conduct associated with other magistrate judges, and as a result Tuwana Capers, and others, hid, falsified and misrepresented information and documents regarding the Plaintiff, leading up to the assignment of two (2) federal judges on the Plaintiff's civil case, when the State of North Carolina was a Defendant and at the same time the same two (2) federal judges received compensation as employees of the State of North Carolina without recusal or disqualification and without informing the parties. Ref. Biers v. Cline, Case No. 17-1619,(4th Cir.  April 3, 2018).[2]

115.   Alice Tybo stated that Alice Tybo uses the addresses for her daughter, Francisca Equihua Moore, (1292 Franklin Lane; Gardnerville, Nevada 89460), and son Tommy Tybo, as well as the bank account and business address for the business entity identified as Western Shoshone Descendants of Ruby Valley, (not a legally organized or licensed entity), that is managed by her sister, Tanya Reynolds.  Alice Tybo publicly stated on or about January 10, 2022 that Alice Tybo needed to transfer large sums of money from her personal accounts at Elko Federal Credit Union and Zionsbank/NSB to her children and grandchildren, using WSCRV access to avoid detection pursuant to a BIA CFR Court order commanding Tybo to produce all financial records on or about January 17, 2022.

116.   As official records show and as alleged by Sypolt, Bryan Bowker worked under the federal authority and for George T. Skibine, (hereafter referenced as "Skibine") and V. Heather Sibbison, (hereafter referenced as "Sibbison"), and Bowker also performed services for Dentons as a consultant or independent contractor.

117.   In early 2019 the Newe Cannabis Enterprise, (hereafter referenced as "NCE"), began pursuant to written and verbal agreements, (Agreement 1 "**A1**"), between EBC; SCS; Davis Gonzalez; Juan Arevalo; Thalia Marin; Robin Evans, RAE Solutions LLC; Leslie

---

[2] Independent Action based on Fraud on the Court, Document 35.

Grove, IBSC; Elliot Parris, Kevin Clock, and Paul Conable, Darian Stanford, Steve Olson at Tonkon Torp, for the stated purpose to generate income and revenue from the sale and distribution of a controlled substance, marijuana, on federal, tribal land after creating and modifying various business documents and organizational structures to use or implement EBCE as a shell, instrument or tool to capture the EBC and eventually the TMC as prizes of the NCE, whereafter the attorney members of the NCE agreed to create a criminal justice system that employed NCE individuals. The NCE agreements, plans or schemes included terms requiring multiple secondary or ancillary agreements to provide or obtain financial services, legal services, investment services and logistical services from other individuals and entities, and as a result the NCE sought to limit or restrain trade through the execution of non-disclosure and non-competition contracts and agreements, including the use of the attorney-client privilege to hide or prevent disclosure or unlawful activities related to the NCE and subsequent, related business transactions and dealings, under threat of lawsuit, *inter alia*.

118. Paul Conable, Steve Olson, Kevin Clock and Darian Stanford, along with Marla McDade, Davis Gonzalez, Robin Evans-RAE and Leslie Grove-IBSC negotiated and entered into an agreement with Governor Steve Sisolak and Aaron Ford, the Compact agreement, ("A2"), authorizing the individuals and entities associated with the NCE to act under color and authority of state law and engage in conduct related to the sale and distribution of a controlled substance, marijuana, on federal, tribal land with a promise of immunity from prosecution from Sisolak and Ford, and in return the NCE Defendants agreed to allocate proceeds, income and revenue among and between this group under the false justification that a significant portion of all such income, revenue and proceeds would be spent on Native American education, employment and opportunities at Elko Band, as though Elko Band constituted and represented a federally recognized tribe when it did not have that recognition.

119. Acting under color and authority of state law, custom or usage on federal, tribal Territory, as shown by the enactment of the Compact agreement, (A2), EBC- Davis Gonzalez; Juan Arevalo; Thalia Marin; SCS-Kevin Clock, Darian Stanford and Joe Delarosa; Robin Evans, RAE Solutions LLC; Leslie Grove, IBSC formed the fictitious business management tool or instrument arm of the NCE: Newe Cannabis Commission, ("NCC")(*members Suzanna Sandoval, Thalia Marin, Joseph Delarosa, Ernie Aldredge*), and by joint agreement, (NCC Bylaws "A3"), then captured EBCE as a prize of the NCE to serve as a fictitious tribal business entity where the parties

agreed to use, hide, destroy or obscure information contained in financial records, transactions and documents for and on behalf of the NCE Defendants as though the NCE constituted a lawful and legitimate tribal business behind the façade of ECBE and EBC Defendant members.

120.   Tonkon Torp attorneys Conable, Olson and Stanford agreed with Davis Gonzalez; Juan Arevalo; Thalia Marin; Kevin Clock; Elliot Parris; Darian Stanford; Joe Delarosa; Robin Evans, RAE Solutions LLC; Leslie Grove, IBSC; Suzanna Sandoval, ("A4"), to use SCS and EBCE as instruments to continue the  NCE and enter into agreements with Greenbits; Dutchie.com; Headset  Cannabis Intelligence; Empyreal Logistics; GardaWorld; Zionsbank; NSB; SALAL,(*including a software system Positive Pay*); H & R Block-Delcor, Inc., and Wells Fargo Bank, (*direct transactions via an ATM Machine physically located within 1555 Shoshone Circle that was connected directly to the bank via the internet*), where the individual officers, attorneys, employees and managers for SCS, EBCE, IBSC, RAE and Tonkon Torp then disguised or hid the true source and characteristics of the cash proceeds, income and revenue obtained from the sale and distribution of a controlled substance, marijuana, from financial institutions and transferred, deposited and withdrew those funds between the Parties related to **A4** and among TT, SCS and ECBE.

121.   In furtherance of the conspiracy to support the NCE and its goals and agreements, *infra* and *supra*, SCS, EBCE and NCC created, published or generated documents and reports, (*available daily, weekly, monthly, quarterly and annually*), via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City Utah using services and computer software licensed from and associated with a Washington State business entity:  Headset  Cannabis Intelligence and Greenbits that contained and stated the figures, data, numbers, information and mathematical conclusions related to the unlawful sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis. See Exhibits II-B(6)-(9).

122.   Newe Cannabis is the retail sales and distribution entity for the NCE that is located on federal tribal Territory at 1555 Shoshone Circle; Elko, Nevada 89801.

123.   In October 2021 NCC, acting n behalf of the NCE, hired Parson, Behle & Latimer, a Utah Law firm, assigning Jason S. Nichols as the lead attorney, and paid that law firm with revenue, income or cash proceeds received, derived or obtained from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe

Cannabis, to help protect and disguise the financial transactions generated at the NCE, NCC and ECBE by claiming the proceeds and income were sourced from legitimate, lawful federal grant funds and sales at the EBC Smoke Shop.

124. Defendant SALAL is a state of Washington Credit Union, doing business as SCU Holdings, (hereafter referenced as "SALAL") advertises its business as a "Cannabis" financial institution that business is an association-in-fact to the NCE here as a victim and perpetrator, where the board members run the business affairs with a pattern of racketeering activity: 18 U.S.C. 2314-2315, mail fraud, wire fraud and financial institution fraud, *infra*, as a bank across state lines free of applicable banking laws.

125. On March 15, 2022 the Plaintiff contacted SALAL at the telephone number (206) 298-9354, and communicated with SALAL's business services "Virtual Account" agent "David," who stated during that SALAL "recorded" call that:
    a. "every cannabis business" seeking to use SALAL must complete and satisfy the "Application Process for Cannabis, which is like a normal business account except we have additional cannabis restrictions;"
    b. "SALAL has been accepting cannabis accounts for over 8 years;"
    c. "SALAL has strict compliance with Washington cannabis licensing requirements, although we do allow footprint accounts from cannabis businesses in California and Oregon;"
    d. "SALAL is not under normal federal bank guidelines and cannabis businesses must meet SALAL requirements;
    e. "SALAL is a state credit union that uses 'My COOP' accounts where tellers access shared branch information with other credit unions, not cross account access with other banks because its cannabis.  If you have a personal or other business account with SALAL that is not cannabis, then we can allow cross account access to other banks;"
    f. "SALAL allows cannabis account holders to send money by wire and ACH out of SALAL to other bank and accounts because we are not regulated by federal banking rules;" and
    g. "send your specific questions to our email business sales agent at business services, all one word, at salalcu.org."

126. Juan Arevalo; Thalia Marin; Robin Evans, RAE Solutions LLC; Leslie Grove, IBSC;  Joe Delarosa; Davis Gonzalez; Darian Stanford; Paul Conable; Steve Olson; Kevin Clock;

Elliot Parris, and others, on behalf and for SCS and EBCE, further agreed, pursuant to **A4**, to assist in the completion and inclusion of data and information necessary to open a SALAL Commercial Business Account(s), (*in the name of EBCE*), that included federal tax forms and those IRS tax forms failed to identify the true owner of the account as NCE, SCS and TT or the source of funds as the proceeds, revenue or income derived or originated from the unlawful sale and distribution of a controlled substance, marijuana, at the NCE on federal, tribal Territory outside of the State of Washington.  Pursuant to **A4** these same Defendant individuals and entities intentionally falsified, by act and omission, complete and accurate facts stating in the SALAL Business Application and financial records or forms on record with SALAL that the funds, proceeds, revenue or income transferred or deposited into SALAL were legally or lawful funds that originated or were derived from lawful tribal business without disclosing the funds originated from the unlawful sale of a controlled substance, marijuana, outside of Washington when in violation of federal and Te-Moak law, and SALAL opened accounts for EBCE, SCS, IBSC and TT.  The same group of Defendant individuals and entities, with the aid and assistance of SALAL, willfully entered into or assisted in the completion and inclusion of data necessary to open and maintain a SALAL Cannabis Business Account(s), where said account or accounts were opened, based on the completion and submission of a SALAL Cannabis Business Application admitting that the proceeds or income transferred into the SALAL Cannabis Business Account or accounts, originated or were derived from the sale and distribution of a controlled substance, marijuana, at the NCE on federal, tribal Territory outside the State of Washington in violation of federal and Te-Moak law.  These same named Defendants, with others, used SALAL to transfer, deposit and withdraw funds, income and revenue into and out of SALAL using ACH, instruments and wire transfers.

127. EBCE, SCS, IBSC and TT held or retain financial records, assets or accounts at SALAL that relate to, originated or were derived from the NCE, and the records state that Davis Gonzalez is the authorized account holder for EBCE at SALAL, with Adriana Hernandez listed as an authorized check signer for EBCE on the SALAL account.

128. SALAL and SCU Holdings knowingly accepted cash proceeds that originated or were derived from the sale and distribution of a controlled substance, marijuana, at the NCE and were delivered to SALAL by Empyreal Logistics and GardaWorld Armored Transportation, after traveling across, through or on federal, tribal lands in Nevada, via Utah, Idaho, Oregon, California and Washington from December 2020 through

April 2022, and then the cash proceeds were deposited into the accounts belonging to or associated with: EBCE; SCS; IBSC; TT; Davis Gonzalez; Darian Stanford; Paul Conable; Steve Olson; Kevin Clock; Elliot Parris, and others. See Exhibit II-B(13).

129.   On November 23, 2020 by way and through Resolution 20-TM-129 the Te-Moak Tribe created and established a Tribal Court System, delegating tribal constitutional authority to the Judicial Branch, and then on February 3, 2021 by way and through Te-Moak Resolution 21-TM-29 the TMC delegated tribal constitutional Judicial Branch authority to the Plaintiff as the Te-Moak Supreme Court Judge, removing the Tribal Council as the sole and exclusive governmental authority for the Te-Moak Tribe of Western Shoshone Indians of Nevada as a matter of law and fact, thereafter creating two (2) independent branches of tribal government for the Te-Moak Tribe.

130.   For the period of November 23, 2020 through November 24, 2020 Sypolt sent or transmitted, from Sypolt's Dentons' assigned email address, email messages containing six (6) versions of Resolution 20-TM-129 that Sypolt drafted or authored, and then a final version submitted for signature by Joseph Holley.  Resolution 20-TM-129 shows knowledge of Te-Moak Constitutional authority related to the processes and procedures for the appointment and removal of judges.

131.   From April 2, 2020 forward Joseph Holley; Alice Tybo; Duane Garcia, Sr; David Carrera; Andrea Woods; Larry Yeager; Davis Gonzalez and Thalia Marin stated in multiple government records and documents, related to the termination of the Plaintiff as the Te-Moak Tribal Administrator, that as a group they failed to give any prior termination notice or any notice to appear to the Plaintiff, and that they refused or failed to afford the Plaintiff any due process rights as required by federal and tribal law related to Plaintiff's termination as the Tribal Administrator.

132.   On or about March 29, 2021 Sypolt, (*as the representative of Dentons acting on the advice of Skibine and pursuant to an earlier agreement, (A5), to eliminate the Plaintiff as a potential witness to an ongoing federal investigation involving Sypolt, Skibine and Dentons*), publicly advised and stated to Joseph Holley; Alice Tybo; Duane Garcia, Sr; David Carrera; Andrea Woods; Larry Yeager; Robert Brady; Davis Gonzalez and Thalia Marin that no due process requirements applied to the Plaintiff related to the termination of the Plaintiff because the Plaintiff is "white" and a "felon" who previously "lied on an application for employment as a little judge in North Carolina."

133. During 2008-2009 Skibine served as the United States Department of Interior Assistant Secretary – Indian Affairs, (acting), and Bryan Bowker, ALJ Heffernan and Joseph McDade formerly worked for and officially served under Skibine as United States agents, employees or representatives.  Skibine, Sypolt and/or Dentons paid, employed or employs Chadwick Smith, directly or indirectly, as a consultant or attorney for the Te-Moak Tribe and/or Dentons, when for the period of July 2020 and March 15, 2021, Dentons, Skibine and Sibbison failed or refused to identify or provide any actual written notice, statement, declaration, information or material related to any potential conflict of interest or any actual conflict of interest involving Skibine, Sibbison or Chadwick Smith and their legal relationship with SCS; EBCE; Bryan Bowker; Alan Heffernan; Mediator Kelly Latimer; Solicitor Reudas; Joseph McDade or other government officials, agents and representatives involved in A15AV00203 U.S. Department of Interior Office of Hearings and Appeals Case No. ISDA 2017-01, nor to the Te-Moak Tribe or the Plaintiff as the Te-Moak Tribal Administrator and Supreme Court Judge involving any matter.

134. During the period July 2020 through December 2021 Skibine provided advice, support and information, directly and indirectly, to Sypolt; SALAL; NSB-Nicole Lewis; Zionsbank; SCS; EBCE; Chadwick Smith; Dentons; Sibbison; Paul Conable; Darian Stanford; Steve Olson; Kevin Clock; Elliot Parris; Steve Sisolak; Aaron Ford; Joseph McDade; Bryan Bowker; Joseph Holley; Alice Tybo; Duane Garcia, Sr.; David Carrera; Juan Arevalo; Davis Gonzalez, and other unnamed individuals, where these same individuals and entities agreed, ("**A5**"), jointly and individually, to use federal funds, and cash proceeds, income or revenue derived or originated from the unlawful sale and distribution of a controlled substance, marijuana, at the NCE, to deprive the Plaintiff his constitutional rights; to destroy or injure the Plaintiff's professional reputation with false and defamatory statements, *infra*; to obstruct and interfere with the Plaintiff's right to testify as a witness and victim involving fraud and theft of federal funds by the same individuals to federal officers, agents and judges; to cause individuals to threaten the life and safety of the Plaintiff and Plaintiff's family; to interfere with the Plaintiff's familial associations; to interfere with and cause the termination of the Plaintiff's position as the Te-Moak Tribal Administrator; to interfere, obstruct and attempt to unlawfully remove or recall the Plaintiff as the Te-Moak Supreme Court Judge, where these same individuals and entities falsified documents, misrepresented facts and law related to the submission of financial records and documents regarding the actual characteristic, source or legal status of the income originating at or derived from the NCE retail store Newe

Cannabis, pursuant to an agreement, plan or scheme, (**A1, A2, A3** or **A4**), to engage in the commercial sale and distribution of a controlled substance, marijuana, with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341(Mail Fraud); 18 U.S.C. §1343(Wire Fraud); 18 U.S.C. §1344(Financial Institution Fraud); 18 U.S.C. §1952(Travel Act); 18 U.S.C. §1956(Money Laundering); 18 U.S.C. §1957(Engaged in Unlawful Monetary Transactions); 18 U.S.C. § 1960 et seq. and the Te-Moak Constitution, Article 4, sections 3, 12 and 14, who then jointly and individually carried into effect or executed a plan to interfere or interrupt Tribal government operations managed and administered by the Plaintiff as a means to continue the commercial sale and distribution of a controlled substance related to the NCE, resulting in transfers and deposits of NCE revenue or income into Zionsbank/NSB; SALAL; Wells Fargo Bank; Great Basin Bank; Avantax Wealth Management, and other unnamed financial institutions and firms, *infra*.

135. In or about January 2019 the formation and creation of NCE was and remains an association, partnership, union and group of individuals associated-in-fact, (although NCE is not a legal business entity), for a continuous purpose originally created and established to sell and distribute a controlled substance, marijuana, (*on federal land held and managed in trust for the Te-Moak Tribe contrary to and against then existing federal, state and tribal laws*), as a means to generate income or revenue to benefit associations-in-fact that engaged in alternating open-ended to a closed-ended pattern of racketeering activity use a shadow criminal justice system they created that further supported the continuation of the NCE, where the associations-in-fact, (*as perpetrator, victim, prize or instrument*), consisted and consists of the following:

    a. Elko Band Colony Enterprises and Newe Cannabis Commission;
    b. Davis Gonzalez; Juan Arevalo; Thalia Marin; Ladonna Leyva and Larry Yeager;
    c. Darian Stanford; Paul Conable and Steve Olson;
    d. RAE Solutions and Robin Evans;
    e. Leslie Grove and Integrity Business Solutions & Consulting;
    f. SCS; Kevin Clock, Elliot Parris and Joseph Delarosa and Adriana Hernandez;
    g. Steve Sisolak, Aaron Ford and Marla McDade;
    h. Jeffery Scott Sypolt; George Skibine and Chadwick Smith;
    i. Wendall Hayes, Morgan Currey and Tammy Carrera;

      j.   Joseph Holley; Alice Tybo; Andrea Woods; Duane Garcia, Sr.; David Carrera; Paula Garcia; Davis Gonzalez; Juan Arevalo; Suzanna Sandoval; Tanya Reynolds, WSDRV and ETK Enterprise LLC, and Angelea Mendez;

      k.   Bryan Bowker and Joseph McDade;

      l.   TMHA, Raymond Gonzalez and Adela Morrison-Avantax;

      m.  Elko County Democratic Central Committee;

      n.   Zionsbank-NSB, Brent Waite and Nicole Lewis;

      o.   H & R Block-Delcor, Inc., Edward Jones & Assoc. and SALAL;

      p.   Empyreal Logistics, Headset Cannabis Intelligence, Greenbits, Duchie.com and GardaWorld Armored.

136.   Elko Band Colony Enterprises, (hereafter "EBCE"), is a fictitious business entity without any real or actual licenses, permits or bona fide articles of incorporation or legitimate bylaws.  EBCE is the offspring *alter ego* of Elko Band Authority.

137.   Elko Band Council and EBCE hired and employed Tim Randolph as the in-house EBCE-SCS Finance Officer and the liaise with IBSC, the U.S. Treasury, Zionsbank/NSB, SALAL, H & R Block-Delcor Inc.; Edward Jones & Associates; RAE Solutions and Wells Fargo Bank for matters related to the financial operations, business and management of the NCE.  Tim Randolph resides or maintains a place of abode at 1003 Silverman Way; Las Vegas, Nevada 89106.

138.   Tim Randolph stated that Randolph identified false and fraudulent information contained in the financial documents prepared for, delivered or sent to the U.S. Treasury, federal grantors and to Zionsbank, Wells Fargo Bank and SALAL as prepared, authorized, approved, delivered or sent by Leslie Grove; Davis Gonzalez; Robin Evans; Darian Stanford; Paul Conable; Kevin Clock; Elliot Parris consisting of SF-425; IRS Form 941, W-2 and W-4 Forms related to EBC, EBCE and NCE, and on discovery Randolph then demanded an accurate and complete accounting of records and actual receipts for claims of tax payments to the federal and state government, as well as workers compensation, unemployment and insurance payments related to the NCE.  Paul Conable and Kevin Clock stated that under the non-disclosure agreement Randolph was prohibited from reviewing or obtaining copies of any record or document to support the tax and income claims made by SCS, TT and EBCE as it related to the cash, revenue and income that NCE-EBCE received or transferred that was derived or originated from the sale and distribution of a controlled substance, marijuana, involving the NCE.  Tim Randolph resigned.

139. Beginning in or about February 2019 Davis Gonzalez; Juan Arevalo; Thalia Marin;
Larry Yeager; LaDonna Leyva - Elko Band Council; Leslie Grove -IBSC, (Elko Band
Council's "[c]ontract CFO"); Robin Evans and RAE Solutions LLC infiltrated the
business structure of EBCE and commandeered EBCE to operate on Te-Moak Tribal
Lands, as a ghost tribal business tool, instrument or shell business of the NCE,
pursuant to agreements, (**A1** and **A2**), with  Sisolak and Ford; SCS-CSI agents,
managers and representatives Kevin Clock, Joseph Delarosa, Veronica Huerta and
Elliot Parris; and TT's attorneys Paul Conable, Steve Olson and Darian Stanford who
agreed by way and through **A1-A4** to draft, enact and publish written documents
and records consisting of compacts, non-disclosure agreements, policies and by-
laws to sell and distribute a controlled substance, marijuana, at the NCE, and with
the associations-in-fact, EBCE agreed to maintain, manage and control funds, money,
transactions, bank accounts, trusts, chattel and intangible holdings or interests that
are intentionally withheld from the legislative procedures and authority of the TMC
and the federal government when the Te-Moak Constitution states that copies of all
"official" records and documents of the Bands must be given to the "Tribal Council
and to the [U.S. Dept. Interior, BIA-ENA] Superintendent." Te-Moak Constitution,
Article 4, section 19(f); see also Article 10, section 4 ("*Approval of Secretary of the
Interior Necessary.  All leases, permits, assignments or contracts of any kind pertaining
to Tribal land or Tribal real property are subject to the approval of the Secretary of
the Interior, or his[/her] authorized representative*").  The Plaintiff, as then Tribal
Administrator, was required to receive and log all official records and documents.

140. The NCE, (*through its associations-in-fact*), delivered, transferred and paid Joseph
McDade and Bryan Bowker, directly or indirectly, with investment opportunities;
official or political favors; promotions; prosecution immunity; free legal advice; or
cash proceeds or income derived from the unlawful sale of a controlled substance,
marijuana, as a bribe, gratuity or gift to obtain tacit and covert approval for the
furtherance of the NCE, without notifying the U. S. Secretary of the Interior.

141. On May 2, 2019 SCS President Kevin Clock, EBC and EBCE Chairman Davis Gonzalez,
(*as the "Parties" identified in a written document entitled "Recreational Cannabis Joint
Venture Agreement," (hereinafter "Joint Venture Agreement" or "A6"*)), formed,
created and established a formal "cannabis business featuring a recreational
cannabis dispensary [a retail store] and/or cannabis cultivation, cannabis
processing, and related business ("the Business")," identifying the principal place of
business as "1555 Shoshone Circle, Elko, Nevada," an address located on federal

land held in trust within the U.S. Territory of the Te-Moak Tribe, where **A6** states the "Joint Venture shall commence on the date the first cannabis product is sold," under the laws "set forth in the Te-Moak Tribe of Western Shoshone. . .ordinances. . .[where] SCS shall use its best efforts to construct and open the facilities. . .[and because of] Federal tax reasons, or other reasons, the form of this agreement may change from time to time. . . SCS will finance or arrange for third-party financing for the development and construction of the facilities used in the Business. . .[and] amounts necessary to operate the Business." Exhibit I-A(4)(**A6**) at 1-2 (May 2, 2019).  Agents, attorneys and representatives of SCS and EBC entered **A6** with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201 and the Te-Moak Constitution, Article 4.  Id.

142. The Te-Moak Constitution, Article 4, section 12 states that the exercise of "[a]ll Powers of the Band Council," (EBC), must remain consistent and follow the Te-Moak "Constitution, Federal and Tribal law," and at the time of entering **A6** "EBCE" was not "a formally established Tribal Authority" permitting or allowing the sale and distribution of a controlled substance, marijuana, where EBC, SCS and Governor Sisolak failed to gain or obtain the prior "approval of the [United States] Secretary of the Interior."  Id at 1; see also Te-Moak Constitution, Article 10, section 4; e.g. 21 U.S.C. §841, 26 U.S.C. §7201.

143. The "Joint Venture Agreement," or **A6**, states that "[i]t is understood between the Parties that sales tax or excise tax greater than or equal to those charged by the State of Nevada will be applied to sales of the Business.  Tax revenue shall be deemed to be part of the Gross Revenue. . .the Joint Venture is owned by each Joint Venturer, respectively, as follows:  SCS 50% ECBE 50% . . . Management of the Joint Venture shall be conducted by the head officers/appointed representatives of SCS ("Manager") as follows:  Kevin Clock shall represent the interest, authority, and decision making of SCS.  The acting Chairperson [Davis Gonzalez] for ECBE shall represent EBCE for purposes of consultation, notices, interest, authority and decision making. . .SCS owners, officers and/or representatives will not receive compensation or Salary from the Joint Venture before distribution of net profits," and when that agreement was entered into by SCS, Clock, EBCE and Gonzalez they intended to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201 and the Te-Moak Constitution, Article 4.  Ibid at 2.  Defendants Conable, Olson, Stanford, Clock and Parris received compensation as the 'partner's share' before distribution.  Id.

144. Under the terms of A6, the named Defendants converted tax proceeds, obtained under false pretenses from the unlawful sale of a controlled substance, into "Gross Revenue," and transmitted a portion to Nevada Department of Taxation to launder under the permanent tax exemption for the Tribe, and divided, distributed and transferred the Gross Revenue via ACH, wire and USPS among the named Defendants.  Exhibit I-A(4)(A6) at 2; e.g. Exhibit II-A(6)

145. On May 2, 2019, seven (7) days before SCS filed its organizational documents with the Nevada Secretary of State, the Joint Venture Agreement **A6** was signed by Davis Gonzalez, (as ECBE Chairman and as Elko Band Colony Chairman); and Kevin Clock (President SCS Elko LLC), where **A6** states the conditions, obligations and duties for Books and Records; Insurance; Hiring; Legal Title and Transfers of Interest related to the NCE and when **A6** was entered into by SCS, Clock, EBCE and Gonzalez they intended to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201 and the Te-Moak Constitution, Article 4.  Id at 3-6 and 10.

146. On June 4, 2019 SCS sanctioned, approved and put forth a presentation for the purpose of violating 21 U.S.C. §841, 26 U.S.C. §7201 and the Te-Moak Constitution at a meeting held before for the TMC to persuade that governing body politic to legalize and authorize the sale and distribution of marijuana on tribal lands by the NCE without allowing the TMC to review or examine any A2-A4, and without SCS disclosing the existence of, any and all agreements, plans, policies and schemes involving EBCE; SCS; TT; Paul Conable; Steve Olson; Kevin Clock; Elliot Parris and Darian Stanford to sell and distribute marijuana, as shown in Articles of Incorporation of the Newe Cannabis Commission; Policy For the Regulation and Taxation of Recreational Marijuana and **A6**.  Ref. Exhibit II-A(6).

147. On June 5, 2019 the TMC voted 3-4-0 to defeat the EBC request to legalize the commercial sale and distribution of marijuana related to the NCE, with Chairman Joseph Holley casting the tie breaking vote and defeating the measure on the stated basis of the Te-Moak Constitution prohibiting Band Council official action that violates "Federal Law" as stated in the Te-Moak Constitution, Article 4, section 12. Darian Stanford, Paul Conable, Steve Olson, Kevin Clock and Elliot Parris agreed to submit and submitted a written protest related to Juan Arevalo that stated the denial "was [ ] disappointing. . .[when] inexplicably, Juan Arevalo left the room minutes before the vote," and "[b]ecause [Juan Arevalo] failed to vote," the measure died.  Exhibit II-A(3) SCS Cannabis Business Letter.

148.  On August 7, 2019 the TMC, with Vice Chairman Juan Arevalo officiating, enacted legislation authorizing the commercial sale and distribution of marijuana on federal, tribal land in violation of 21 U.S.C. §841 and the Te-Moak Constitution, Article 4, section 3(stating that the "Tribal Council shall exercise...such powers not in conflict with Federal Law"),  without obtaining the necessary prior approval of the United States Secretary of the Interior as required by the Tribe's Charter and Constitution.

149.  On August 7, 2019 after Juan Arevalo received an initial $20,000.00 cash bribe, gift or 'gratuity' approved by EBCE; SCS; Darian Stanford; Paul Conable; Davis Gonzalez; Steve Olson and Kevin Clock with the actual delivery of the cash to Arevalo by Kevin Clock, where EBCE; SCS; Darian Stanford; Paul Conable; Davis Gonzalez; Steve Olson and Kevin Clock, who also agreed to pay Juan Arevalo an additional $25,000.00 on Arevalo's showing of continued support for the NCE  by voting in favor of all future Newe Cannabis related issues at EBC and TMC, and Juan Arevalo cast the deciding vote to break a tie, (3-2-0), resulting in the enactment of legislation approving the sale and distribution of a controlled substance, marijuana, in violation of 21 U.S.C. §841 and Te-Moak Constitution Article 4, sections 3, 12 and 14.

150.  During the period January 2019 through April 2020 Defendants Sisolak, Marla McDade and Ford communicated with Darian Stanford; Paul Conable; Davis Gonzalez; Steve Olson and Kevin Clock to negotiate the terms that the NCE will operate under, including the amount of campaign donations ECDCC, Sisolak and Ford will receive from the NCE in exchange for Nevada maintaining the Compact.

151.  Darian Stanford, Paul Conable and Kevin Clock agreed to draft and submit a written statement to the Elko Band Council, dated June 19, 2019, that stated "SCS...[wrote] the Compact for the Elko Band with the State of Nevada."  Exhibit II-A(3).

152.  On June 19, 2019 Paul Conable traveled from Oregon to the Te-Moak Territory and hand-delivered a document entitled the "Advancement of Cannabis Business" to EBC that states the NCE's "purpose...[is] to operate a cannabis dispensary and/or cultivation, production and related cannabis businesses '(collectively, the 'Business')" referencing the previously executed A6 "Agreement" between SCS and EBCE, (May 2, 2019), with the intent or purpose to violate or attempt to violate 21 U.S.C. §841 and the Te-Moak Constitution, Article 4, section 3, 4 and 12.  Exhibit II-A(3).

153. The <u>SCS Letter</u> states that the SCS and TT attorneys "worked diligently to advance the Business," (the NCE), affecting interstate commerce, by traveling across roads, bridges and highways "engaging with third parties. . .[by way of an agreement, and] SCS . . .[wrote] the Compact for the Elko Band with the State of Nevada," costing the "Business" significant "time, money and energy" toward the "investment." <u>Exhibit II-A(3)</u>.

154. During the relevant period of time related to this lawsuit, Paul Conable, Darian Stanford and Steve Olson managed, controlled and directed all major decisions for SCS, SCI and CSI, for the NCE on behalf of TT where SCS, SCI and CSI are alter ego business entities of TT.

155. On or about August 1, 2019 EBCE submitted an unsigned document drafted, authored, edited, approved, published or produced by Paul Conable; Marla McDade; Aaron Ford; Steve Sisolak; Steve Olson; Thalia Marin; Davis Gonzalez; Larry Yeager; Juan Arevalo; Suzanna Sandoval and Darian Stanford entitled "<u>Policy For the Regulation and Taxation of Recreational Marijuana</u>," (hereafter "<u>Taxation Policy</u>"), with the intent or purpose to violate or attempt to violate <u>21 U.S.C. §841</u>, <u>26 U.S.C. §7201</u> and <u>Te-Moak Constitution Article 4, sections 3, 12 and 14</u>, and that document states that the NCE retained the authority to conduct business pursuant to "Article 4, Section 12 of the Constitution of the Te-Moak Tribe," acting through the "Elko Band Tribal Council [with] the authority to adopt resolutions, form contracts, engage in business, and exercise other delegated power," with the knowledge that the NCE and <u>Taxation Policy</u> violates the "federal Controlled Substances Act, **21 U.S.C. § 801 et seq., [that] classifies Marijuana as a Schedule I drug and prohibits any possession or use of Marijuana** except in the course of federally approved research projects. The Controlled Substances Act makes it **unlawful under federal law for any person to cultivate, manufacture, distribute, disperse or possess with intent to manufacture, distribute or disperse Marijuana**," and that document also states that by agreement the parties delegated the "authority to manage the Band's Marijuana business(es) to the Newe Cannabis Commission (the "Commission")," with orders and instructions that the Commission "report. . .to the Elko Band Council on the status of the Band's Marijuana Business(es)." <u>Taxation Policy</u>, at 1-2(emphasis added). In application, the NCC reported to SCS, TT and EBC separately to avoid public disclosure with the intent and purpose to violate federal and tribal laws.

156. The <u>Taxation Policy</u> states that "[t]he cultivation and sale of Marijuana . . .businesses **will be taxed** and the revenue will be dedicated to education, economic opportunity, and the enforcement of the regulations in these regulations," where "[a]ll Marijuana businesses on Elko Band Tribal Lands **shall be owned by the Band.** . .Marijuana sold on any Tribal Lands will be appropriately tested and labeled." <u>Taxation Policy</u> at 2(emphasis added).

157. Over the course of two years (2020-2022) the NCE generated about $20 million dollars from the sale and distribution of a controlled substance at Newe Cannabis, and EBC received just under 10% of the net profits, ($1,980,000), excluding any accounting related to the 'partner's share,' and TMC received about 5% of the EBC 10% gross reported receipts under a non-existent tax rate when **A6** required an even 50-50 division of profits between SCS and EBC. All other revenue or income, and cash, from the NCE was fraudulently transferred and distributed without an accounting by TMC; TT; SCS or EBCE. The Te-Moak Charter bound Elko Band Council and required a distribution of one equal share to each tribal member.

158. The <u>Taxation Policy</u> states that a legal exemption exists for the sale, distribution, disbursement and possession of Marijuana on Te-Moak Territory unless "Tribal law" provides otherwise, and that any related Marijuana "contract" or agreement "under these regulations," will remain "enforceable" regardless if any "actions or conduct" related to the NCE are "prohibited by federal law." <u>Id</u>. at 6-9. The <u>Taxation Policy</u> attempts to legislate criminal conduct without adhering to the Tribe's lawful legislative process and procedures that are necessary to enact an ordinance. <u>Te-Moak Constitution, Article 4, sections 19 and 20 et seq</u>.

159. The <u>Taxation Policy</u> states and identifies the applicable procedures for an "Inventory control system;" "Seed-to-Sale Inventory Program;" "Reporting of loss or theft of Marijuana;" "Security [protocols];" "Storage and sale of usable Marijuana, Concentrated Marijuana and related products;" "Packaging;" "Labeling;" "Labeling requirements for usable Marijuana sold at retail;" "Testing [of Marijuana to include]. . ."all ingredients and all major food allergens as identified in 21 U.S.C. §§343;" "Requirements for operation of Marijuana Establishment;" "Requirements and restrictions concerning the sale and advertising of Marijuana Products;" "Other rules for Marijuana Establishments, [including] Employ Tribal Police [to provide security to the NCE and the money it generates];" and "Taxes," with the intent and purpose to violate or attempt to violate <u>15 U.S.C. §§1, 2 and 13(a), (d) and (e); 18</u>

U.S.C. §§1341, 1343, 1952, 1956 and 1957; 21 U.S.C. §841, 26 U.S.C. §7201 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14.  Exhibit II-A(6) at 10-27; see also Exhibit II-A(9): Newe Cannabis –Dutchie.com Packaging.

160.   The Taxation Policy states that Newe Cannabis must install and include a "video camera at each point-of-sale location . . .[with storage of] video recordings from the video cameras for at least 21 calendar days," and requires "[t]he Band" to "use an electronic verification system and inventory control system that will track Marijuana Products from seed to sale." Exhibit II-A(6)

161.   Throughout March and April 2020 a video camera system was installed and serviced by White Cloud Communications, pursuant to the Taxation Policy, and that installation was paid for with $39,000.00 in cash received, derived or originating from the sale and distribution of a controlled substance, marijuana, at the NCE retail store, where the individual cameras were placed or installed over each point-of-sale location inside the physical structure of Newe Cannabis, and electronic signals and recorded images generated from each camera were broadcast and transmitted over the WCC installed internet system using Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah to computers and cellular phones located at the business of TT in Portland Oregon; the home/office/cellphone of Darian Stanford in Oregon; the home/office/cellphone of Paul Conable in Oregon; the home/office/ cellphone of Elliot Parris in Idaho; the home/office/cellphone of Kevin Clock in Oregon; the home/cellphone of Joseph Delarosa in Las Vegas, Nevada; the computers in the office of Davis Gonzalez at Elko Band Council and the home of Davis Gonzalez located on federal, tribal lands with the intent or purpose to violate or attempt to violate 18 U.S.C. §§1341, 1344 and 1343.

162.   The Taxation Policy states that Newe Cannabis must "[u]se a Seed-to-Sale Inventory Program . . .to provide accurate inventory accounting" with the intent or purpose to violate 21 U.S.C. §841; 18 U.S.C. §§1341, 1344 and 1343.  Exhibit II-A(6) at 14.

163.   Darian Stanford; Paul Conable; Steve Olson; Kevin Clock; Joseph Delarosa; Elliot Parris; Davis Gonzalez; Juan Arevalo; Thalia Marin; Ladonna Leyva and Larry Yeager agreed to use, purchase and install Greenbits and Headset Cannabis Intelligence software on each sales computer located inside the physical structure of Newe Cannabis where electronically recorded sales and distribution data or information was then transmitted over the internet, via Lucent Technologies POP 100 Gigabyte

data switch in Salt Lake City, Utah to computers and mobile cellular phones located at the business of TT in Portland Oregon; the home of Darian Stanford in Oregon; the home of Paul Conable in Oregon; the home of Elliot Parris in Idaho; the home of Kevin Clock in Oregon; the home of Joseph Delarosa in Las Vegas, Nevada; the computers in the office of Davis Gonzalez at Elko Band Council and the home of Davis Gonzalez located on federal, tribal lands, paid for with cash received, derived or originated from the sale and distribution of a controlled substance, marijuana, at the NCE.

164. The Taxation Policy states that "[Elko] Band shall impose a Tribal tax that is equal to at least 100 percent of the State tax on all sales of Marijuana Products on Tribal lands" with the intent and purpose to violate 21 U.S.C. §841, 26 U.S.C. §7201 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14. The Nevada State Department of Taxation set the applicable marijuana tax rate at: Wholesale 15% and Retail 10%, and for the period January 2019 through the present the Te-Moak Tribe failed and refused to duly enact legislation setting, creating or establishing a tax on a controlled substance, to wit: marijuana. See NRS 372A.290(1)-(2).

165. On or about August 10, 2019 Robin Evans, RAE Solutions LLC; Leslie Grove, IBSC; Darian Stanford; Paul Conable; Juan Arevalo; Larry Yeager; Thalia Marin; Davis Gonzalez; Elliot Parris; Joseph Delarosa; SCS Elko and Kevin Clock jointly agreed to author, edit and approve a final copy of a document entitled "Articles of Incorporation of the Newe Cannabis Commission ('NCC')," formally **A3**, with the intent or purpose to violate or attempt to violate 21 U.S.C. §841; 18 U.S.C. §§1341, 1344 and 1343; 26 U.S.C. §7201 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14. See **A3** ("NCC Bylaws").

166. On or about August 13, 2019 the EBC approved and enacted the agreed upon **A3** that states "[t]he NCC is organized for the following purposes: (1) **to engage in the business of cannabis**; (2) to **engage in any other business which can, in the opinion of the NCC, be advantageously carried on in connection with the foregoing business**; and (3) to oversee and do such things as are incidental to the foregoing or necessary/desirable," with the intent or purpose to violate or attempt to violate 21 U.S.C. §841; 18 U.S.C. §§1341, 1344 and 1343; 26 U.S.C. §7201 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14. **A3** at 1(emphasis added).

167. Pursuant to **A4**, Paul Conable, Darian Stanford, Kevin Clock, Steve Olson, Davis Gonzalez, Juan Arevalo, Thalia Marin and Larry Yeager agreed to transmit, and transmitted, on behalf the NCE, copies of the **A3** documents to Defendants SALAL; Zionsbank; NSB; Sisolak and Ford with the intent or purpose to violate or attempt to violate 21 U.S.C. §841; 18 U.S.C. §§1341, 1344 and 1343; and 26 U.S.C. §7201.

168. On or about September 4, 2019 Robin Evans, RAE Solutions LLC; Leslie Grove and IBSC; Darian Stanford; Thalia Marin; Juan Arevalo; Larry Yeager; Ladonna Leyva; Davis Gonzalez; Elliot Parris and Kevin Clock jointed authored, edited and approved a final copy of a document entitled "NEWE Cannabis Commission Cash Flow, Safe Access and Funds Withdrawal Procedures" pursuant to "Elko Band Council's Policy and Procedures for chronicling quarterly cash profits and tracking cash from the NEWE Cannabis Dispensary to the NEWE Cannabis Commission to the Elko Band Council Finance Department." See Exhibit II-A(5) at 1("Purpose"),(hereafter "Cash and Safe Policy").

169. On January 23, 2020 Governor Steve Sisolak and Davis Gonzalez signed a Cannabis Compact Agreement, **A2**, drafted by TT attorneys Paul Conable, Darian Stanford and Steve Olson pursuant to NRS 223.250 where that state law only authorizes the Governor to enter into such an agreement "with tribal governments in this State," defined as "a federally recognized American Indian Tribe pursuant to 25 C.F.R. §§83.1 to 83.13" when at that time Elko Band failed to meet the legal definition of a "Tribe" because federal recognition only applies to the actual Tribe identified and included in the U.S. Department of Interior's Federally Recognized Indian Tribe List of 1994 published within the Federal Register, not Elko Band. Ref. Exhibit I-A: Notice, Federal Register, vol. 85, No. 20 (signed January 6, 2020-T. Sweeney)(*Te-Moak Tribe of Western Shoshone Indians of Nevada*); c.f. **A2** at 2 (January 23, 2020)("'Tribe,' as defined [by NRS 223.250] means the Elko Colony of the Te-Moak Tribe of Western Shoshone Indians of Nevada"). Defendants Sisolak and Gonzalez, by way and through Conable, Stanford, Olson and TT, intentionally altered or changed the definition of a Tribe in **A2** to allow EBC and Nevada to enter the agreement without the knowledge and approval of the TMC, Te-Moak Tribe and the U.S. Secretary of the Interior, as required by federal and tribal law. See Exhibit II-A(3)("[SCS wrote] the Compact"); e.g. Exhibit II-A(6).

170. The **A2** states that Nevada "recognizes and respects the laws and authority of the" Te-Moak Tribe and that "the federal Controlled Substances Act continues to

designate marijuana as a Schedule I substance. **A2** at 3. Under the Te-Moak Constitution, EBC lacks the authority to enact Tribal law; Gonzalez was not and is not the Tribal Chairman; Sisolak, Ford, Conable, Olson, Stanford and Clock knew or should have known that Te-Moak Law prohibited the NCE.

171. Pursuant to **A2**, Defendants Davis Gonzalez; Aaron Ford; Steve Sisolak; Paul Conable; Darian Stanford and Steve Olson willfully intended to violate federal and tribal law according to the 1982 Constitution of the Te-Moak Tribe, Article 4, section 3(all *Tribal Council exercise of powers* "*shall not conflict with Federal Law*"), section 12(*Band Councils shall not exercise powers inconsistent with "this Constitution, Federal and Tribal law," including the management of "local enterprises," "businesses, charter local associations and corporations," and "contracts"*), and section 14 ("[*n]o action of any Band Council shall be inconsistent with Federal Law, this Constitution, or ordinances and resolutions of the Tribe*")(emphasis added). See also **A2** at 3-5("*acknowledge that pursuant to federal law, 21 U.S.C. § 812, marijuana is a Schedule I controlled substance and that this Agreement does not protect the sales or regulation of marijuana in Indian Country from federal law . . . .*")(emphasis added).

172. The **A2** states that "sales of all cannabis products by the Tribe [Elko Band] and any Tribal Enterprise [NCE] must be conducted in accordance with the Tribal Cannabis Policy and the internal policies and controls of the Tribe or Tribal Enterprise. The Tribal Cannabis Policy, as it exists on the date of this Agreement, is attached as Exhibit A," and at that time the Te-Moak Tribe failed to enact any such policy. **A2** at 5(*referencing Elko Band Tribal Council Policy for the Regulation and Taxation of Recreational Marijuana included as Exhibit A*)(January 23, 2020).

173. The **A2** states that Governor Steve Sisolak and Davis Gonzalez will conduct "regular and open  communication[s]" under the terms of **A2**, where that agreement identifies Davis Gonzalez as the "Tribal Chairman," and not the Elko Band Chairman, directing notices to the "Senior Staff Attorney Tribal Legal Department," where it is known that EBC lacks a "Tribal Legal Department," and it was also known in the community that  Julie Cavanaugh-Bill resigned as the Elko Band attorney of record in January 2019 and that Wes Williams, Jr. began his employment as the Elko Band attorney of record in July 2020. During the period February 2019 to July 2020 Darian Stanford continued to claim he was the EBC attorney of record for all cannabis issues and communicated with Sisolak and Ford in furtherance of the NCE.

174. On June 12, 2020 Governor Steve Sisolak and AG Aaron Ford authorized, prepared, drafted or published a written communication sent via "U.S. Mail and Electronic Mail" to Defendant David Carrera entitled "Elko Band Cannabis Compact," that addressed Carrera's claim that Davis Gonzalez falsified information contained in the Compact, (*Elko Band is not the Te-Moak Tribe and Davis Gonzalez was not authorized to sign as the Chairman for the Tribe because at the time Davis Gonzalez performed these actions Gonzalez did not hold a seat on the Te-Moak Tribal Council*), and that document states:
    a. "I am in receipt of our email dated May 28, 2020;"
    b. "On January 23, 2020, Governor Steve Sisolak signed a Cannabis Agreement between Elko Band Colony;"
    c. "The State of Nevada relied in part on Te-Moak...Resolution No. 17-TM-06 [authorizing medical marijuana only with a future] 'option to take advantage of recreational [cannabis];'"
    d. "The January 23, 2020 [Cannabis] Compact...is strictly between the State of Nevada, and the Elko Band Colony;" Exhibit I-A(2).
    e. "[i]t appears that this agreement [Cannabis Compact] is not inconsistent or incompatible with the [Tribe's] Constitution;"
    f. "...the document [Te-Moak Ordinance 19-ORD-TM-01 as repealed, revoked, rescinded May 11, 2020 by the TMC] you attached to your email is dated May 11, 2020...was not considered prior to entering into the January 23, 2020 Compact with Elko Band Colony." See Exhibit II-A(7); e.g. Exhibit I-C(9).

175. On June 12, 2020 Defendant Sisolak and Ford knew or should have known that no Te-Moak law existed to allow the lawful execution of **A2,** and that the A2 was falsified by Defendants Davis Gonzalez, Darian Stanford; Paul Conable and Steve Olson. Id; ref. Exhibit II-A(3)("[SCS wrote] the Compact").

176. Only the Te-Moak Tribe of Western Shoshone Indians of Nevada was authorized on January 23, 2020 to enter into a lawful contract or agreement with the State of Nevada, subject to the approval of the U.S. Secretary of Interior, not Elko Band. See, Te-Moak Constitution, Article 4, section 10; ref. Exhibit I-A: Notice(*"the Tribe's previously listed or former name is included in parenthesis after the correct current Tribal name...[and only the corrected name is] federally recognized. . .Dated January 6, 2020 Tara Sweeney, Assistant Secretary--Indian Affairs"*) and Notice at 5465(*"Te-Moak Tribe of Western Shoshone Indians of Nevada (Four constituent bands: Battle Mountain Band; Elko Band; South Fork Band and Wells Band)"*)(emphasis added).

177. The <u>Cash and Safe Policy</u> states that the "Quarterly Profits Count Procedures" require delivery of "50 %...of profits from the Newe Cannabis Dispensary operations" to "Elko Band Council" that includes a verification system and signature requirement for "the Quarterly Cash Statement indicating the total amount of cash received and deposited into the NEWE Cannabis Commission safe;" and pursuant to the "Cash Handling and Safe Access Procedures" Davis Gonzalez, Kevin Clock and an NCC representative, (*Joseph Delarosa as the SCS representative on NCC or alternatively Thalia Marin*), are individually required to retain "one-third (1/3)" of the combination for the safe containing the cash, income and revenue from the sale and distribution of a controlled substance, marijuana, related to the NCE. For the relevant times related to this action the safe combination was retained by more than the three (3) Defendants identified in the <u>Cash and Safe Policy</u>. <u>Exhibit II-A(5)</u>.

178. The <u>Cash and Safe Policy</u> states that Davis Gonzalez, Kevin Clock and the one (1) NCC representative will "remain present during the cash counting procedure and whenever cash is being removed or returned...utilizing an electronic digital counterfeit detector/counter," who shall then "sign the original safe access log sheet acknowledging the correct recorded amount of all transaction[s]...i.e. amount of currency, coins, banknotes, etc" and that "[o]ne (1) authorized representative of Elko Band Council and NEWE Cannabis Commission shall physically accompany [transported] funds" with a copy of the EBC "withdrawal requisition form" that is maintained by the NCC "chairman and treasurer for record keeping." <u>Id</u>.

179. For all relevant times that the <u>Cash and Safe Policy</u> existed and applied to the NCE, the retail store manager for SCS, Conor Ramsey, retained access to the safe at Newe Cannabis pursuant to secret agreement with Paul Conable, Steve Olson, Davis Gonzalez, Darian Stanford and Kevin Clock, whereby immediately before each Quarterly Count or as directed, Ramsey, Clock or Parris removed an undisclosed amount from the total cash received without recordation or involvement by NCC, EBCE or EBC, referenced as the 'partner's share,' and that amount was then divided among Davis Gonzalez; Paul Conable; Darian Stanford; Kevin Clock and Steve Olson before any accounting figures or numbers are provided as required by the <u>Cash and Safe Policy</u> "Quarterly Profits Count Procedures." <u>Exhibit II-A(5)</u>.

180. On November 24, 2020 EBC employee, Susan Zuzueta, and SCS/Tonkon/Elko Band Council employee Veronica Huerta, completed and inserted data and information

contained in EBC purchase requisition documents necessary to purchase one (1) Riboa BCS-160 Bank Grade Money Counter for "$1843.21," using the internet to transact business electronically through EBC's Amazon account, ("Amazon.com order number: 113-5816828-1426656"), via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah and this transaction was paid for with funds held or associated with NCC Program 10 that were transferred or deposited into Zionsbank and Nevada State Bank from the NCE and held in EBC-General Fund, using a credit card ending in "[*]925."  Exhibit II-B(4): Elko Band Council Purchase Order(November 24, 2020); e.g. Exhibit II-B(3): EBC Expanded General Ledger(January 4, 2020); ref. April 14, 2021 Video: Darian Stanford, Sypolt and Joseph Holley counting $30,000 in cash from the unlawful sale of a controlled substance(*Darian Stanford referenced the Counting Machine used at Newe to detect forged currency, i.e. 'bank grade'*).  NCC-Program 10 is one of several Program Budget Accounts associated or related to the NCE and EBC, and these Program Accounts launder, alter or change the character of funds and money from an illegal status, (*unlawful proceeds derived from or originated from the sale and distribution of a controlled substance at Newe Cannabis*), through a series of transactions at EBC; Edward Jones & Associates; Wells Fargo Bank; Zionsbank/NSB and SALAL, as well as other unnamed financial institutions and business entities, without the NCE, EBC, EBCE, NCC or SCS providing full disclosure as to that process to all of the financial institutions prior to depositing or transferring funds or money into the Band's General Fund at Zionsbank/NSB.  Id.

181.  The online purchase of one (1) Riboa BCS-160 Bank Grade Money Counter was purchased pursuant to EBC, SCS and the NCE **A2** and **A4** agreement, plan or scheme and in accordance with the Cash and Safe Policy stated approval process shall ". . .utiliz[e] an electronic digital counterfeit detector/counter. . .[and NCC] shall procure a counterfeit currency detector/counter unit as described above with funds from the account. . . [this] counterfeit detector/counter unit **shall not** be identical to those operated by NEWE Cannabis Dispensary." Id; e.g. Exhibit II-A(5) at 1-2.

182.  Cash and Safe Policy states the "Withdrawal of Funds Submission Deadline" section that the EBC "administrator," Susan Zuzueta, (Angelea Mendez's sister and former subordinate of Joseph McDade), was designated the sole "requestor for NCC safe funds" and that policy further states that the "Safe Access Date" is set as the "second Thursday of each month" to access the NCC "safe for withdrawal of funds." Id.

183.  In December 2019 Davis Gonzalez; Larry Yeager; Thalia Marin; Juan Arevalo; Paul Conable; Steve Olson; Darian Stanford; Suzanna Sandoval; Leslie Berg; Tim Randolph; Elliot Parris and Kevin Clock conspired and agreed to grant enrolled Te-Moak tribal members a 25% discount off the sale and purchase price of a controlled substance at Newe Cannabis, and all Te-Moak tribal members affiliated with the Elko Band were granted an additional 25% discount off the sale and purchase price of a controlled substance, marijuana, at Newe Cannabis, subject to submission of Te-Moak Tribal Enrollment information that Newe Cannabis employees and staff cross-reference in a computer database, at the time of sale, that electronically records and stores the data and information at the retail store for the NCE with the intent or purpose to violate or attempt to violate 15 U.S.C. §§1, 2 and 13(a), (d) and (e); e.g. Te-Moak Ordinance 15-ORD-TM-02, Art. 7(1)-(2)(*all enrollment records are confidential and release of information only "in writing"*).

184.  EBCE; Davis Gonzalez; Robin Evans, RAE Solutions; Leslie Grove, IBSC; Larry Yeager; Thalia Marin; Ladonna Leyva; Juan Arevalo; SCS; Paul Conable; Steve Olson; Darian Stanford; Kevin Clock; Joseph Delarosa; Elliot Parris and NCC agreed to pay and use Empyreal Logistics to track and transport cash from the NCE, and thereafter EBCE, Gonzalez, SCS, Clock and Stanford, on behalf of the NCE and pursuant to **A1-A4**, paid and authorized the use of Empyreal Logistics to track and transport cash from the unlawful sales of a controlled substance at Newe Cannabis, (*where Empyreal received approximately $100,000.00 for each quarterly delivery of cash derived or originating from the sale and distribution of a controlled substance, marijuana, each quarter of the year*), along with cash from ECBE that originated from prior sales of a controlled substance mixed with misappropriated federal funds, periodically using GardaWorld Armored Transportation, to SALAL in Seattle, Washington and to other financial institutions on behalf of TT and SCS in Portland Oregon with the intent or purpose to violate or attempt to violate 21 U.S.C. §841; 18 U.S.C. §§1341, 1344 and 1343; 26 U.S.C. §7201; 18 U.S.C. § 1960 et seq. Ref. Exhibit II-B(13).

185.  From January 2021 through March 2021,  and again from January 2021 through March 2022, Robin Evans, RAE Solutions; Leslie Grove, IBSC; Adriana Hernandez; Suzanna Sandoval and Susan Zuzueta conspired and agreed to complete, insert data, fill-out and issue, and did complete, insert data, fill-out and issue United States Internal Revenue Service Wage and Tax Reporting Statements, Form W-2 or IRS Form 1099, for Erica Jim; Conor Ramsey; Nocona Smales-Hassett; Leslie Berg-Grove, and the other "40 employees" Newe Cannabis reported it employed, when each W-2

or 1099, as filed and submitted to the IRS, contained or included materially misleading, fraudulent and false financial reporting information, specifically stating that the employer is either EBCE, RAE Solutions and/or IBSC when the actual employer is SCS, TT and Newe Cannabis, and each W-2 or 1099 includes fraudulent, false and misleading information, including the use of EBC EIN by SCS without official approval by EBC.  The IRS tax and wage documents included false amounts for the taxes withheld, collected or deducted from the employee's annual wages that failed to include all tips, wages and income, and Defendants failed to accurately report to the United States the total amount derived, obtained, collected or paid to: SCS; Darian Stanford; Paul Conable; Steve Olson; Davis Gonzalez; Kevin Clock; Elliot Parris; Conor Ramsey; Robin Evans and RAE Solutions; Leslie Grove and IBSC; Adriana Hernandez; Suzanna Sandoval; Juan Arevalo; Thalia Marin, and others, where the amount of income collected and reported by Greenbits and Headset Cannabis Intelligence, fails to match the actual amount derived, generated or received from the actual sales of a controlled substance at Newe Cannabis or the actual amount derived, generated or received from the actual sales of a controlled substance at Newe Cannabis as reported to SALAL, Zionsbank and NSB as reflected in deposit and transfer information, after each Quarterly Count, or as reported to the United States, particularly the 'partner's share' is omitted with the intent or purpose to violate or attempt to violate <u>26 U.S.C. §7201</u>, <u>18 U.S.C. §§1341, 1343, 1952, 1956 and 1957.</u>

186.   On or about September 24, 2019 Davis Gonzalez; Robin Evans, RAE Solutions; Leslie Grove, IBSC; Larry Yeager; Thalia Marin; Ladonna Leyva; Juan Arevalo; Paul Conable; Steve Olson; Darian Stanford; Kevin Clock; Joseph Delarosa; Elliot Parris, and others, pursuant to **A1, A2, A4** and **A6** conspired and agreed to sign, submit and file financial records and documents with financial institutions, containing false or materially misleading information, and then signed, submitted and filed the same financial documents and records with SALAL, (*Davis Gonzalez was assigned as the sole authorized representative on the SALAL Business Account and granting Adriana Hernandez, Robin Evans, Suzanna Sandoval, Susan Zuzueta, Thalia Marin and Leslie Grove access to EBCE SALAL account information*), knowing that when these financial records and documents were used to open a SALAL business account in the name EBCE, the NCE Defendants intentionally failed to inform, state or declare to SALAL, Empyreal Logistics or GardaWorld that the funds transferred, delivered or received at SALAL from EBCE constituted the cash, revenue, proceeds or income derived, received or originated from the unlawful sale and distribution of a controlled

substance, marijuana, at the NCE on federal, tribal land and transported from outside of Washington to a location within Washington with the intent or purpose to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 et seq. and the Te-Moak Constitution, Article 4, sections 3, 12 and 14.  See Exhibit III-D(2): SALAL-Marin Email; e.g. Exhibit II-B(13); also, Exhibit II-B(14).

187.   On or about January 28, 2020 Davis Gonzalez; Robin Evans, RAE Solutions; Leslie Grove, IBSC; Larry Yeager; Thalia Marin; Ladonna Leyva; Juan Arevalo; Paul Conable; Steve Olson; Darian Stanford; Kevin Clock; Joseph Delarosa; Elliot Parris, and others, pursuant to **A1, A2, A4** and **A6** conspired and agreed to sign, submit and file financial records and documents with financial institutions, and then signed, submitted and filed financial documents and records with SALAL, (*assigning Davis Gonzalez as the sole authorized representative on the SALAL Business Account and granting Adriana Hernandez, Robin Evans, Thalia Marin and Leslie Grove access to EBCE SALAL account information*), knowing that the financial documents and records submitted, signed and filed, (*including the SALAL Cannabis Business Account Application*), to open and obtain access to various financial institutions through SALAL and use the ACH, (*Automated Clearing House-an electronic network for financial transactions in the United States*), and wire transfer services at SALAL, in the name of EBCE, that included copies of **A3; A6**; SCS Cannabis Letter and the A2 Compact, identifying the source and characteristics of the cash, proceeds, revenue or income associated with SALAL account in the name of  EBCE, as being derived, received or originating from the sale and distribution of a controlled substance, marijuana, on federal, tribal lands outside the State of Washington deposited and transferred to SALAL, located within the State of Washington, with the intent or purpose to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341(Mail Fraud); 18 U.S.C. §1343(Wire Fraud); 18 U.S.C. §1344(Financial Institution Fraud); 18 U.S.C. §1952(Travel Act); 18 U.S.C. §1956(Money Laundering); 18 U.S.C. §1957(Engaged in Unlawful Monetary Transactions); 18 U.S.C. § 1960 et seq. and the Te-Moak Constitution, Article 4, sections 3, 12 and 14.  See Exhibit III-D(2); e.g. Exhibit II-B(13) and (14).

188.   EBCE, by way and through **A1-A4** and **A6** with SCS; Davis Gonzalez; Larry Yeager; Thalia Marin; Juan Arevalo; Paul Conable; Steve Olson; Darian Stanford; Kevin Clock and Elliot Parris operated, managed and directed the NCE  "Business" as an unlicensed money transmitting business by transporting, delivering and

transmitting cash, revenue, income or proceeds that were derived or originating from the sale and distribution of a controlled substance, marijuana, at the retail store Newe Cannabis, shown by way and through **A2**; **A3**; Taxation Policy; Empyreal Deposit and Bag Slip; Greenbits Sales Reports; **A6**; SCS Cannabis Letter and the Cash and Safe Policy to transfer, transmit, route, deliver or process the same money, cash or funds, directly or indirectly, through H & R Block/Delcor from May 2020 until January 2021 and from April 2020 until March 2022 to Wells Fargo Bank, Zionsbank, NSB and SALAL, and from December 2020 until March 2022 through the EBCE paid services by Empyreal Logistics and GardaWorld Armored Transportation, by wire, check, draft, facsimile or courier with the intent and purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956(Money Laundering); 18 U.S.C. §1957; 18 U.S.C. § 1960 et seq. See Exhibit II-A(5) and (6); e.g. Exhibit II-B(13); Exhibit III-D(2); also, Exhibit II-B(14).

189.   On September 15, 2019 Steve McDade, pursuant to an agreement with Marla McDade and Joseph McDade, ("**A7**"), transmitted, published or communicated to Elko County Commissioner Delmo Andreozzi statements regarding the Plaintiff, claiming that on September 11, 2019 the Plaintiff "cut a fence" adjacent to a highway allowing cows to escape, resulting in damage to a Nevada Highway Patrol vehicle and a private vehicle.  Steve McDade sought the Commissioner's assistance to pursue criminal charges against the Plaintiff as part of the **A7** plan or scheme with Marla McDade and Joseph McDade to discriminate against the Plaintiff as a non-Native American, with a goal or purpose to cause the Plaintiff's physical removal from federal, tribal land.  A local ranch worker admitted to law enforcement that he repaired the fence earlier in the day after a group of cows broke the fence in the same spot.  Steve McDade, Marla McDade and Joseph McDade were not physically present at the location at the time of the accident and lacked any personal knowledge related to the fence cutting or accident with the cows on the highway on September 11, 2019 sufficient to make any statement regarding the Plaintiff or the Plaintiff's whereabouts that day.

190.   On September 17, 2019 Thalia Marin engaged in communications with John Garrard, Elko County Democratic Central Committee-Diversity Chair, ("ECDCC"), on behalf of the NCE and at the direction of Defendants Davis Gonzalez; Darian Stanford; Paul Conable; Steve Sisolak and Aaron Ford, to arrange and secure future "fundraising" for the ECDCC and individual candidates, including John 'Doc' Garrard, paid with

unreported cash proceeds, income or revenue derived, received or originated from the sale and distribution of a controlled substance, marijuana, at the NCE with the intent and purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341(Mail Fraud); 18 U.S.C. §1343(Wire Fraud); 18 U.S.C. §1344(Financial Institution Fraud); 18 U.S.C. §1952(Travel Act); 18 U.S.C. §1956(Money Laundering); 18 U.S.C. §1957(Engaged in Unlawful Monetary Transactions); 18 U.S.C. § 1960 et seq. and the Te-Moak Constitution, Article 4, sections 3, 12 and 14.

191. On September 17, 2019 Elko County Commissioner Delmo Andreozzi, (*acting on the belief that Steve McDade was being truthful and without knowledge of the prior A7 between Marla, Joseph and Steve McDade*), relayed information obtained from Steve McDade to Elko County Sheriff Aitor Narvaiza regarding the Plaintiff and the fence cutting event on September 11, 2019.  Steve McDade stated that he intended to use Andreozzi as a conduit and family friend for the purpose of eliminating the Plaintiff's right to practice law in a federal court action that Steve McDade and his girlfriend were losing to the Plaintiff's client, to wit:  the Plaintiff committed a criminal act Plaintiff cut a fence allowing cattle to enter a highway resulting in damage to private motor vehicles and a state highway patrol vehicle on Friday September 11, 2019.  On September 11, 2019 the Plaintiff, a former career firefighter, was honoring those who were lost on 9/11.

192. The Plaintiff did not cut, disassemble or touch any fence on September 11, 2019.

193. On September 24, 2019 the Elko County District Attorney produced its findings on the fence cutting allegations levied by Steve McDade, exculpating the Plaintiff.

194. On September 25, 2019 Steve McDade, in possession of defamatory information regarding the Plaintiff obtained from Marla McDade and Joseph McDade, and pursuant to *A7*, submitted that material *ex parte* to the judge officiating in a case involving the Plaintiff claiming the Plaintiff is a "felon," and that the McDades, with others, investigated the private life of the Plaintiff and falsely claimed to the Court that the Plaintiff was "forced to resign from a Magistrate position in North Carolina for allegedly falsifying employment documents by giving the wrong birth date. Rather than defending his stance. . .he chose to step down . . ."  In a written response the BIA CFR federal court vindicated the Plaintiff and dismissed the claims by McDade for the second time.

195. On September 25, 2019 Steve McDade filed and obtained an *ex parte* temporary injunction against the Plaintiff based on false and perjured statements, claiming that a valid <u>Notice of Claim</u> the Plaintiff mailed one time to a potentially liable third party constituted irreparable harm by harassment, and then the federal court dissolved the TRO on challenge by the Plaintiff for a lack of merit.

196. On October 2, 2019 at the instruction, direction or advice of Joseph McDade and Marla McDade, and pursuant to **A7**, Steve McDade published and republished false information regarding the Plaintiff that Marla McDade unlawfully obtained and distributed regarding the Plaintiff at a public meeting held on federal, tribal land in Wells Nevada where Steve McDade, at the instruction of Joseph McDade, presented false evidence about the Plaintiff, and personal confidential information regarding the Plaintiff, to demand the exclusion of the Plaintiff from Te-Moak federal lands because the Plaintiff is "white" and a "felon." <u>Exhibit III-A(1)</u>(September 11, 2019). Steve McDade, Marla McDade and Joseph McDade released and distributed private, nonpublic information regarding the Plaintiff with the intent or purpose to violate or attempt to violate  <u>N.R.S. §205.463</u>, a felony act, *inter alia*.

197. On or about October 2, 2019 Steve McDade filed a complaint against the Plaintiff, pursuant to **A7**, with the Nevada State Bar Association claiming that the Plaintiff was practicing law without a license in the State of Nevada, when Steve McDade knew or should have known that the Plaintiff was admitted to practice before the BIA Court of Indian Offenses in accordance with the Te-Moak Tribe and CFR jurisdiction and that the Plaintiff was not unlawfully practicing law within the jurisdiction of Nevada.

198. On October 8, 2019 the State Bar of Nevada, (OBC19-1257), summarily dismissed Steve McDade's complaint for lack of merit officially stating that the "Office of Bar Counsel and the disciplinary boards of the State Bar are not substitutes for the court systems."

199. On October 28, 2019 Steve McDade submitted a handwritten, sworn statement to the Elko County Sheriff Aitor Narvaiza, pursuant to **A7**, falsely avowing that the Plaintiff made a false "perjured" statement as an officer of the federal court.  Steve McDade knew or should have known that Sheriff Narvaiza lacked any jurisdiction over the BIA CFR court proceedings.  Steve McDade personally appeared before the Sheriff on October 28, 2019 and insisted that Sheriff Narvaiza forcibly remove the Plaintiff from federal, tribal land because the Plaintiff is "white" demanding a written letter from Narvaiza to present to the federal court to use against the

Plaintiff.  Sheriff Narvaiza met with the Plaintiff on or about October 29, 2019 and provided the Plaintiff with a copy of McDade's sworn statement and verbally verified the statements made by McDade, indicating that the Sheriff refused to write a letter for Steve McDade.

200.   In November 2019 the Te-Moak Tribal Council authorized and approved the publication of the Te-Moak Tribal Administrator Job Announcement that states "[r]eferences are mandatory to check previous employment and working habits" as a necessary condition to perform "all other duties as directed by the Tribal Council **and** the Tribal Chairperson. . .[where the incumbent will] direct the daily operations of tribal government. . ." Exhibit III-B(5).

201.   On November 1, 2019 the Plaintiff submitted a completed employment application to the Te-Moak Tribe for the Tribal Administrator position.  That document stated that the Plaintiff had no criminal record and the Plaintiff affixed his signature granting a release to the Tribe for six-months to investigate the Plaintiff's character and background information, and as stated on the Application Form after that time period the Plaintiff's "application will be destroyed."

202.   On December 12, 2019 the Te-Moak Tribal Council held selection interviews for the Te-Moak Tribal Administrator position with two candidates:  Suzanna Sandoval and the Plaintiff.  Immediately after the interview with the Plaintiff, Joseph Holley signed and drafted an "offer" of employment to the Plaintiff, the Plaintiff accepted, and the Plaintiff was hired as the Te-Moak "Tribal Administrator" with the responsibility to report directly to the Tribal Council regarding the management and administration of federal grant programs and funds for the Tribe, as directed by the Tribal Council and pursuant to federal and tribal law.  See Exhibit III-B(6).  Juan Arevalo and Larry Yeager cast the only two (2) votes against hiring the Plaintiff, (7-2-0).  Both objected to hiring the Plaintiff since the Plaintiff is "white" and "not a member of the Tribe," and on February 13, 2020 Juan Arevalo verbally confirmed to the Plaintiff that he and Yeager made these statements at the interview, preferring Suzanna Sandoval.

203.    Joseph Holley; Alice Tybo; Andrea Woods; Juan Arevalo; Duane Garcia, Sr.; and Davis Gonzalez, with other unnamed individuals, refused or failed to provide insurance to the Plaintiff in violation of federal and tribal law solely on the basis of the Plaintiff's racial classification as a non-Native American, while Native American employees received insurance benefits. Te-Moak Personnel Policies and Procedures Manual, Part VII(H)(1)-(3) at 10; e.g. 42 U.S.C. §20003 et seq.

204. On December 12, 2019 within hours after the Plaintiff's interview for the Tribal Administrator position, (*conducted and held during a meeting closed to the public on December 12, 2019 where Steve McDade was not present*), Steve McDade signed a hand-written letter that Steve McDade hand-delivered to the Te-Moak Tribal Office, (*time stamped received 2:28 p.m. by Te-Moak Tribe*), where the language in that document stated to the Plaintiff's new employer that the Plaintiff is "a felon, non-native drug dealer." Exhibit III-A(2). Steve McDade, pursuant to **A7**, published and republished this document on the internet, via email and social media postings, and delivered it to individuals and government officers associated with the Plaintiff.

205. On or about December 5, 2019 Robin Evans, RAE Solutions; Leslie Grove and IBSC; SCS; Suzanna Sandoval; Juan Arevalo; Paul Conable; Kevin Clock and Darian Stanford co-authored, edited and drafted a document submitted to NCC and EBC seeking approval to publish an employment advertisement on the internet involving interstate commerce seeking candidates for employment positions related to the NCE with the intent or purpose to violate or attempt to violate 21 U.S.C. §841; 26 U.S.C. §7201; 18 U.S.C. §§1341, 1343, 1952, 1956 and 1957; 18 U.S.C. § 1960 et seq. and the Te-Moak Constitution Article 4, sections 3, 12 and 14. See Exhibit II-A(8).

206. On or about December 17, 2019 EBC approved a document advertising an offer of future employment with the NCE, as submitted to EBC on or about December 5, 2019 by Robin Evans, RAE Solutions; Leslie Grove and IBSC; SCS; Suzanna Sandoval; Paul Conable; Juan Arevalo; Kevin Clock and Darian Stanford, and thereafter the EBC authorized the publication of this advertisement for employment via the internet, email and United States Postal Service, with Davis Gonzalez and Juan Arevalo signing the final approved version which was then included as part of the text and language on the website for the retail store Newe Cannabis with the intent or purpose to violate or attempt to violate 21 U.S.C. §841; 26 U.S.C. §7201; 18 U.S.C. §§1341, 1343, 1952, 1956 and 1957; 18 U.S.C. § 1960 et seq. and the Te-Moak Constitution Article 4, sections 3, 12 and 14. See Exhibit II-A(8).

207. EBC approved and authorized the payment, costs and fees related to the approved publication of language on an online website that states "on January 23, 2020 . . .Governor Steve Sisolak and Elko Chairman Davis Gonzalez signed the Cannabis Agreement. . .[and]Elko Band . . .followed applicable law in every step of this economic endeavor and has worked closely with the Nevada Legislature, Governor Sisolak, Nevada Attorney General Aaron Ford, the Nevada Department of Taxation . . .[and] contracted with professionals to ensure that NeWe (sic) Cannabis is a first rate operation that meticulously adheres to all safety and security regulations,"

when Sisolak, Arevalo, Gonzalez and Ford knew or should have known that the <u>Compact</u> was entered, agreed and executed with the intent or purpose to violate or attempt to violate <u>21 U.S.C. §841</u>; <u>15 U.S.C. §§1, 2, 13 and 15</u>; <u>18 U.S.C. §§1341, 1343, 1952, 1956 and 1957</u>; <u>18 U.S.C. § 1960 et seq.</u>, and the <u>Te-Moak Constitution Article 4, sections 3, 4 and 12</u>.

208. The NCE website states that on "April 18, 2020. . . 'Elko Band' open[ed] Newe Cannabis. . .drive-through only" and that by offering "Online Orders. . .Cash Only . . 7 days a week," Defendants Sisolak, Ford, Gonzalez and Arevalo intended to violate or attempt to violate <u>21 U.S.C. §841</u>; <u>15 U.S.C. §§1, 2 and 13(a), (d) and (e)</u>; <u>18 U.S.C. §§1341, 1343, 1952, 1956 and 1957</u>; <u>18 U.S.C. § 1960 et seq.</u> and the <u>Te-Moak Constitution Article 4, sections 3, 4 and 12</u>.

209. On or about January 2, 2020 Dentons published and disseminated its standardized "Terms of Business." <u>Exhibit III-C(1)</u>: <u>Dentons Terms of Business</u>. In July, August and December of 2021 Sypolt delivered to the Plaintiff a copy of <u>Dentons Terms of Business</u> attached to multiple versions of Dentons Engagement Agreements wherein the <u>Terms</u> state "[e]ffective representation requires open and honest communication," that will remain necessary to avoid violating any "[a]nti-money laundering, anti-bribery, anti-terrorism and similar laws," and that Dentons "will handle personal data you send us about you, your employees, agents, contractors or other individuals in accordance with data protection and privacy standards equivalent to or higher than those required by law." <u>Ibid</u>(***Dentons will "not tolerate bribery or corruption***")(emphasis added).

210. On or about December 23, 2019 the TMC directed the Plaintiff, as the Tribal Administrator, to follow the law and report any events, facts or allegations of fraud, theft and criminal conduct known to the Plaintiff. Plaintiff began filing reports containing allegations of fraud, theft and criminal conduct involving tribal programs that received federal funds to federal law enforcement agents and officers as directed by the Tribal Council. Throughout 2020 and into 2021 the Plaintiff updated the members of the Tribal Council on the status of these reports.

211. On January 8, 2020 Davis Gonzales organized, directed or assisted others in a community uprising at the Te-Moak Tribal Council Meeting, held on federal, tribal land, a meeting paid for and funded with federal funds, (*including the wages and salary Davis Gonzalez received while planning, organizing and directing others in this endeavor*), where the object or goal of the uprising was to cause the termination of the Plaintiff as the Tribal Administrator due to the Plaintiff's race, color, culture or

ethnicity, under threat, force and violence, whereby Davis Gonzalez, Steve McDade and Joseph McDade distributed to the public information that the Plaintiff is an ex-felon.  At this meeting chairs were thrown, tribal members were screaming and yelling threats of violence against the Plaintiff, all witnessed by Governor Sisolak's Science and Technology Director, Jo Jo Meyers.  BIA law enforcement officers were dispatched to the meeting because of the violence and threats.  Davis Gonzalez received information and documents obtained from Marla McDade, Steve McDade and Joseph McDade containing false statements regarding the Plaintiff.  Joseph McDade and Davis Gonzalez republished and disseminated private confidential information regarding the Plaintiff to the public and the Councils with Davis Gonzalez claiming to the Plaintiff and Joseph Holley that the documents and statements were "true" because "Joe McDade verified it."  Chairman Joseph Holley ended the public meeting prematurely due to the threats aimed at the Plaintiff.  Steve McDade, Marla McDade, Davis Gonzalez and Joseph McDade released and distributed this private, nonpublic information regarding the Plaintiff with the intent or purpose to violate or attempt to violate  N.R.S. §205.463, a felony act.

212. On January 8, 2020 Chairman Joseph Holley ordered the Plaintiff to submit to a post-employment comprehensive background investigation, including a full drug panel screening, and ordering the Plaintiff to take paid leave from employment until completed, without authorization from the Council or tribal law.  The Te-Moak Tribe lacked adequate funding and authorization to pay for the background investigation and drug screening at the time, so the Plaintiff paid $277.35 for his fingerprint cards, taken at Elko Sheriff Department, an expedited FBI Background Report, 7 panel drug screen and associated costs and fees from his personal funds.  See Exhibit III-B(2) and (4).  The Te-Moak Council failed or refused to reimburse the Plaintiff for this expenditure as well as the Plaintiff's payment of over $400 into the general fund to cover the costs for emergency heart medicine for a Te-Moak law enforcement officer and staff member, Ruben Ramirez, because the Te-Moak Tribal Council refused to obtain health insurance for non-Native employees, a classification that fit both Ramirez and the Plaintiff.

213. On January 9, 2020 the Plaintiff drafted and sent correspondence to United States Attorney Nicholas Trutanich regarding certain facts and allegations of fraud, theft and criminal conduct involving tribal programs supported with federal funds at the Te-Moak Administration.

214. On January 17, 2020 the Plaintiff provided the results of the FBI Background Report and Drug Screen Toxicology Report regarding the Plaintiff to the Te-Moak Tribal

Council showing: No controlled substances or prescription medication; no negative findings, no arrests and no convictions, with copies of these findings delivered to each and every member of the Te-Moak Tribal Council, who are also members of the four (4) Band Councils, and an unredacted copy placed into the Plaintiff's personnel file as required by tribal law and policy.  See Exhibits II-E(1)-(3).

215.   On January 17, 2020 Joseph Holley signed and issued a letter to the Te-Moak Tribe exonerating the Plaintiff against the false conviction for a "felony" claims against the Plaintiff after accepting the FBI Background Report, Drug Screen and a 2011 version of Nevada's Criminal History Report as satisfying all requirements of tribal law. Exhibit III-B(1):  Holley Exoneration Letter; e.g. Exhibit III-B(2)-(3).

216.   In the January 17, 2020 exoneration letter Joseph Holley states that the "false accusations regarding [Plaintiff's] character," as published and republished by Joseph McDade, Steve McDade, Davis Gonzales, and others, seeking the termination of the Plaintiff from employment with the Tribe when the Plaintiff was a "qualified non-native person," are considered false "statements. . .about [the Plaintiff's] criminal history." Id(citing and quoting Exhibit I-A(3): Te-Moak Personnel Manual).

217.   Joseph Holley instructed and ordered Celia Gonzalez, a Te-Moak Finance Director, to place a true and correct copy of the FBI Background Report, Drug Screen and Holley's January 17, 2020 Letter into the Plaintiff's permanent personnel file as required by tribal law and policy.  Id.  Plaintiff confirmed by physical examination that the official documents were located in the Plaintiff's personnel file at the Te-Moak Offices located at 525 Sunset Street; Elko, Nevada 89801 on January 17, 2020.

218.   On February 11, 2020 Davis Gonzalez personally appeared at the Te-Moak Offices and verbally assailed the Plaintiff stating "Man, I want to talk to you about what you're doin to cannabis.  No matter what you say Elko Band is going to keep moving forward with cannabis.  You know what, you're a son of a bitch, mind your own damn business.  Who the fuck do you think you are callin the Governor and Kyle George? Man, I know everything you're doin.  You're just like Steve McDade.  You don't know shit."

219.   On February 14, 2020 the Plaintiff received a telephone call from an individual who identified herself as "Robin Evans and I have a company that works for the tribe, RAE Solutions."  During this conversation Ms. Evans stated that she agreed to pay "cash" for the Sex Offender Registration and Notification Act - Adam Walsh, (federal), "SORNA Grant Writer's fee."  Plaintiff stated to Evans that the process did

not allow cash payments and Evans offered to pay "the entire fee by check" if Plaintiff would "authorize the payment." The Plaintiff explained to Evans that this decision remained with the Tribal Council and it was not the Plaintiff's decision to make. The Plaintiff provided Evans with the contact information for the Chairman and the Grant Writer, Sharon Turner.

220. On February 18, 2020 the Plaintiff, Ruben Ramirez and Joseph Holley attended a Sex Offender Notification Act, ("SORNA"), training seminar in Reno, Nevada. During a break at that seminar in Reno, Joseph Holley and the Plaintiff approached Assistant United States Attorney Sue Fahami and discussed the operation of a marijuana business on federal, tribal land in violation of 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. § 1960 et seq. and the Te-Moak Constitution. AUSA Fahami spoke directly to the Plaintiff stating that her office instructed the FBI, DEA and BIA to take no action against the unlawful operation to avoid, in her words, "a race war," because Nevada allowed "non-Native Americans to operate similar facilities." The Plaintiff and Holley both informed AUSA Fahami that in the Tribe's case "the tribe's constitution doesn't allow violations of federal law," and the Plaintiff referenced the fact that the non-Native American dispensaries that Fahami brought up were following state and federal law. Fahami instructed the Plaintiff and Holley to contact USA Trutanich.

221. On or about February 19, 2020 Juan Arevalo reported that "Leslie Berg [Grove]," and "Robin Evans" executed an agreement with EBC to use a portion of funds held at Edward Jones & Associates, (*at that time consisting of about $1,200,000.00 in full*), to secure financing for NCE costs, and that SCS; Darian Stanford; Davis Gonzalez; Thalia Marin; Kevin Clock and "Eli" Parris demanded that all transactions involving the accounts at Edward Jones were to remain hidden from the Te-Moak Tribal Council, the public and specifically the Plaintiff as the Tribal Administrator. Ref. **A6** at 1-2 (May 2, 2019)("*SCS will finance or arrange for third-party financing for the development and construction of the facilities used in the Business. . .[and] amounts necessary to operate the Business*"). Plaintiff explained to Arevalo that under the Tribe's Constitution this money was at risk because the Bands have no authority to maintain, invest or expend tribal assets and that any amount retained without TMC could be in jeopardy.

222. On or about February 19, 2020 Davis Gonzalez stated at a public meeting that the Plaintiff signed and sent a letter to the Nevada Department of Taxation demanding the elimination of Newe Cannabis as a legal tribal business.

223. When the Plaintiff learned of Gonzalez' false declarations uttered on February 19, 2020, the Plaintiff sent an email refuting and challenging Gonzalez' false claims, that also included a statement that Gonzalez or someone acting for Gonzalez forged the Plaintiff's signature, and the Plaintiff sent or delivered a copy of this email to all the members of the TMC that day.

224. On February 20, 2020 Robin Evans personally appeared at the Plaintiff's place of employment to meet with Joseph Holley. Robin Evans sat down at the table, facing Joseph Holley, to the right of the Plaintiff, and Evans immediately began to make statements regarding the Plaintiff that "Sharon Turner" informed Davis Gonzalez and Robin Evans that the Plaintiff was "single-handedly ruining the SORNA Program and he is jeopardizing the Grant, and if you [Chairman] don't do something about Mr. Biers' attacks on Cannabis he is going to ruin all of the enterprises that we've built at Elko Band. I talked to Sharon Turner and she said to me that Mr. Biers has caused the whole SORNA Grant to be in jeopardy and the Tribe probably won't get any federal funds." At this time the Plaintiff had no knowledge of any enterprise at or built by Elko Band or involving RAE.

225. On February 20, 2020 after listening to Robin Evan's statements to Joseph Holley, the Plaintiff introduced himself to Robin Evans, who until then never met the Plaintiff in person. The Plaintiff immediately turned the conference room telephone on speaker and called Sharon Turner, introducing those in attendance to Mrs. Turner and repeating Ms. Evans' previous statements, asking "Sharon, did you inform Ms. Evans or Mr. Gonzalez that I interfered with or caused the Adam Walsh Grant to be in jeopardy, potentially ruining the entire SORNA Program?" Mrs. Turner stated "No. In fact Chairman Holley I would like you to know that without Sam there would be no Grant and the Tribe's SORNA Program would not exist, Ruben Ramirez would not have a job. I never said anything to the contrary to Ms. Evans, so I don't know where this is coming from."

226. On or about February 24, 2020 Steve McDade transmitted a text message over the internet to Elko County Commissioner Delmo Andreozzi stating "I just filed charges against biers per the state bar." Steve McDade filed his complaint on October 2, 2019, not February 24, 2020 and Steve McDade filed a request for reconsideration with that same agency on or about December 16, 2019. In a written statement, the State Bar of Nevada, (OBC19-1257), again summarily dismissed Steve McDade's request for reconsideration of McDade's earlier complaint against the Plaintiff stating "we will not proceed to investigate."

227. On or about March 2, 2020 Thalia Marin telephoned the Plaintiff at his place of employment yelling belligerently that the Plaintiff and Chairman Holley were trying to get a higher tax rate off the sale of "cannabis to stop Newe Cannabis from opening" unless EBC agreed to a tax rate favorable to Te-Moak. The Plaintiff repeatedly stated to Thalia Marin that her statements were "not true because the constitution bars the sale and distribution of marijuana on tribal lands, so a tax would also be illegal." Marin stated in reply "bullshit Sam! I know Joe wants more than 5%, we agreed on 2% then he wanted 5% now I know you both are trying to get 7%. That's not fair, this is Elko Band's money, not Te-Moak's, and I'm going to stop you both." Plaintiff replied "I have nothing to do with Cannabis or its tax rate, my job is to receive, log and record official tribal documents, including agreements. I do not have a vote on Council." At this time the Plaintiff lacked any knowledge beforehand of any tax rate or tax negotiations related to the NCE and TMC.

228. On or about March 3, 2020 Davis Gonzalez telephoned the Plaintiff, while the Plaintiff was working as the Tribal Administrator, and asked for a "cease fire" involving the Plaintiff's requests for documents related to the proposed Cannabis dispensary. Gonzalez offered to end the Band employees' resistance to Plaintiff's constitutional requests for copies of official documents, end the false accusations of wrongdoing against that the Plaintiff as the Administrator, and provide the Plaintiff with copies of the **A2** Compact and all of the related agreements and contracts. Plaintiff agreed to stop requesting copies of the Cannabis documents if Gonzalez delivered the official documents, unless "Council orders me otherwise."

229. On March 4, 2020 Davis Gonzalez personally appeared at the TMC meeting, and hand-delivered a copy of the **A2** Compact to the Plaintiff, except that copy of the document lacked one (1) page, the page containing the Law Enforcement Terms and Conditions. Plaintiff provided copies of the **A2** Compact to the TMC and BIA.

230. On March 4, 2020 the TMC authorized the Plaintiff to expend federal funds necessary to purchase a license from Bamboo HR LLC for its timekeeping software at Te-Moak Office to track and record personnel time for payment of wages, salaries and benefits involving federal funds. Bamboo HR is a business entity located at: 335 South 560 West; Lindon, Utah 84042. Plaintiff required all the staff to fully engage and use Bamboo HR software time reporting on or before July 1, 2020, and the Te-Moak Tribe continued to use Bamboo HR Software until July 2021. Bamboo HR LLC retains copies of time-keeping records showing the fraudulent records for Defendant Reynolds and other TMC staff cross referenced against RICO income.

231.  On or about March 26, 2020 EBC held a meeting where Davis Gonzalez produced a letter claiming the Plaintiff authored, drafted and signed that letter as the Te-Moak Administrator, which was addressed to and sent to the Nevada Department of Taxation.  Gonzalez then produced said letter and passed it around to the other members of the EBC to prove the Plaintiff signed the document.  The Plaintiff did not send a letter to the Nevada Department of Taxation; the Plaintiff sent a request for copies of **A2** to Governor Sisolak and Kyle George, General Counsel to Governor Sisolak, at the instruction of TMC Chairman Joseph Holley and TMC.  Sisolak, George and Ford refused or failed to respond to the Plaintiff's official requests based on Gonzalez' agreement with Sisolak and Ford to ignore the Plaintiff and the Te-Moak Tribal Council's requests for information and **A2**.  Ref. **A2** at 3(*Nevada "recognizes and respects the laws and authority of the" Te-Moak Tribe*).

232.  On March 27, 2020 Thalia Marin sent or transmitted a text message to the Plaintiff, via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah stating that Marin wanted a copy of the letter to Nevada Department of Taxation that Davis Gonzalez first claimed on February 19, 2020 and again on March 26, 2020 that Plaintiff authored, after both Gonzalez and Marin earlier claimed to possess a copy containing the forged signature.  Plaintiff again challenged the truthfulness of Marin's assertion, and Marin requested that the Plaintiff transmit a copy of the Sisolak request to email addresses Marin uses to conduct and hide sensitive communications: nativeoutlet@yahoo.com, councilmember5@elkoband.org and marin.thalia@yahoo.com.  Plaintiff sent Marin a copy of the actual correspondence sent to Governor Sisolak.

233.  Juan Arevalo stated to the Plaintiff that during the period of April 2020 through December 2020 EBCE; SCS; Darian Stanford; Paul Conable; Steve Olson; Elliot Parris; Kevin Clock; Davis Gonzalez; and Thalia Marin entered into an agreement ("**A8**"), with Aaron Ford and Governor Sisolak to transfer or deposit unreported cash proceeds derived or originating from the unlawful sale and distribution of a controlled substance, marijuana, at the retail store - Newe Cannabis, to the Nevada Department of Taxation, pursuant to NRS 372A.290(1)-(2), whereafter that agency would later refund amounts paid by EBCE, (on behalf of the NCE), back to EBC in a check pursuant to a permanent tax exemption granted by the State of Nevada, and distributed among EBCE; SCS; Darian Stanford; Paul Conable; Steve Olson; Elliot Parris; Kevin Clock; Davis Gonzalez; Thalia Marin; Aaron Ford; Steve Sisolak and other unnamed individuals, who entered into A8 with the intent or purpose to violate federal, state and tribal law and at a time when all of the individuals to **A8**

knew or should have known that the Tribe and its Bands were granted a "permanent" exemption pursuant to <u>Nevada Department of Taxation Permanent Exemption to the Te-Moak Tribe</u> (May 1, 1997); <u>Nevada Department of Taxation Permanent Exemption to the Te-Moak Tribe</u> (August 1, 2003); <u>Nevada Attorney General Opinion No. 2011-09</u> and <u>Nevada Attorney General Opinion 89-2</u>.

234. On or about April 6, 2020 NSB stated the Tribal Council must provide Zionsbank with written authorization "by Resolution" from the Te-Moak Tribal Council that to grant the Plaintiff access to Te-Moak Tribal bank information and records.

235. From March 2 through September 29, 2020 Davis Gonzalez, acting at the direction, authority or advice of Sisolak, Ford, Conable or Stanford, repeatedly communicated with Ashley Dewey and Nicole Lewis at NSB demanding that Zionsbank and NSB deny the Plaintiff, as the Tribal Administrator, access to Tribal bank accounts to prevent discovery by the Plaintiff and the Te-Moak Tribal Council of money laundering, bank fraud and wire fraud activities involving Davis Gonzalez; SCS; EBCE; Paul Conable; Steve Olson; Kevin Clock; Thalia Marin; Juan Arevalo, and others, at Zionsbank related to the NCE.

236. On or about April 6, 2020 the Plaintiff telephoned NSB and requested the necessary forms that the TMC must complete and sign to grant the Plaintiff access to the Tribe's account information at Zionsbank.

237. On April 9, 2020 the Plaintiff and Joseph Holley met to complete the required Zionsbank/NSB documentation to grant the Plaintiff access to the Tribe's accounts at Zionsbank/NSB, and the Plaintiff delivered the completed, signed documentation to Ms. Stanton at Zionsbank/NSB on April 9, 2020.

238. On or about April 9, 2020 Juan Arevalo stated to the Plaintiff that Zionsbank/NSB Ashley Dewey personally assists "Leslie Berg and Robin [Evans] with all of Davis' banking, so it doesn't surprise me they're blocking you."

239. On April 10, 2020 Zionsbank-NSB Stanton stated to the Plaintiff that additional, necessary documentation must be completed by the TMC, because, according to Stanton, Davis Gonzalez telephoned Zionsbank/NSB that the Plaintiff and Council failed to execute the necessary tribal authorization and permission documents.

240. On or about April 13, 2020 Steve McDade personally appeared at the Plaintiff's place of business verbally threatening staff member Sharla Dick, and the Plaintiff ushered Mr. McDade outside stating "you are not going to scream, yell and threaten the staff

Steve, you have been kicked out of South Fork Council, barred from attending Te-Moak Council meetings and now I have you at the Admin pulling this.  You do realize that I am the only person giving you an audience, and that I am at least submitting your requests to Council, right?"  Steve McDade resumed calling the Plaintiff derogatory names before stating that McDade had "called the BIA cops."

241.  On or about April 13, 2020 BIA law enforcement responded to the Te-Moak Offices just as Steve McDade was verbally engaged, screaming at Joseph Holley across the parking lot, calling Joseph Holley a stream of vulgar names as Holley sat in his vehicle.  The Plaintiff informed the BIA officer that Steve McDade is now trespassed from the administration building for threats, disorderly conduct and abuse, and to give McDade notice of the trespass.

242.  On or about April 13, 2020 Joseph McDade ordered the BIA officer to not file a report on the matter to protect his nephew Steve McDade from arrest and prosecution in a federal court, when the senior McDade lacked legal authority over BIA-OJS officers.

243.  On or about April 17, 2020 the Tribal Council enacted <u>Resolution 20-TM-30</u> authorizing the Plaintiff to have access to obtain all Zionsbank/NSB account information for the Tribe.  The Plaintiff telephoned Zionsbank/NSB later that day and confirmed receipt of the executed Zionsbank documents with Danielle Lupercio, who stated she needed to "fill out the signature card" and then after the Chairman and Vice Chairman signed the signature cards the process would be "complete."

244.  On or about April 18, 2020 the NCE retail store, Newe Cannabis, opened for business selling a controlled substance, marijuana, (*without the constitutionally required approval of the Te-Moak Tribal Council and the United States Secretary of the Interior*), on federal, tribal land managed and funded with federal funds, with drive-thru sales and distribution of marijuana only, as advertised on an online website, (newecannabis.com), that permitted the ordering and pre-purchase of controlled substances over the internet automatically routed through another online service: dutchie.com, pursuant to **A1-A4** and **A6** with and between SALAL; Zionsbank; Wells Fargo Bank; NCC; SCS; EBCE; Steve Sisolak; Aaron Ford; Davis Gonzalez; Juan Arevalo; Thalia Marin; Paul Conable; Larry Yeager; Darian Stanford; Kevin Clock; Joseph Delarosa; Steve Olson and Elliot Parris with the intent or purpose to violate or attempt to violate <u>21 U.S.C. §841</u>; <u>15 U.S.C. §§1, 2 and 13(a), (d) and (e)</u>; <u>18 U.S.C. §§1341, 1343, 1952, 1956 and 1957</u>; <u>26 U.S.C. §7201</u>, <u>18 U.S.C. § 1960 et seq.</u> and the <u>Te-Moak Constitution, Article 4, sections 3,4 and 12</u>. See Exhibit II-A(9).

245. Dutchie.com is a business entity located in Bend, Oregon that openly advertises and states that it operates as an e-commerce platform that processes $14B cannabis sales annually, involving over 5000 marijuana dispensaries.  By way and through agreements Duchie partnered with and accepted investment funds from SCS, CSI or TT, directly or indirectly, and a dutchie.com subsidiary, Greenbits, provides and licenses cannabis sales software to the NCE as authorized and approved for purchase and installation by and pursuant to **A1-A4** and **A6** involving SCS; NCC; EBCE; Davis Gonzalez; Paul Conable; Robin Evans, RAE Solutions; Leslie Grove, IBSC; Thalia Marin; Juan Arevalo; Larry Yeager; Darian Stanford; Kevin Clock; Joseph Delarosa; Elliot Parris with the intent or purpose to violate or attempt to violate <u>21 U.S.C. §841; 15 U.S.C. §§1, 2 and 13(a), (d) and (e); 18 U.S.C. §§1341, 1343, 1952, 1956 and 1957; 26 U.S.C. §7201; 18 U.S.C. § 1960 et seq</u>. and the <u>Te-Moak Constitution, Article 4, sections 3, 4 and 12</u>.  <u>See also, Exhibit II-A(9)</u>.

246. From January 2019 through March 2021 SCS; NCC; EBCE; Davis Gonzalez; Paul Conable; Thalia Marin; Larry Yeager; Juan Arevalo; Darian Stanford; Kevin Clock; Joseph Delarosa; Elliot Parris and others, agreed to refuse to produce or publish official documents and agreements involving the unlawful sale and distribution of a controlled substance on federal, tribal land to the TMC, the Tribal Administrator and the U.S. Secretary of the Interior for approval, showing the income, sales and revenue as reported by Greenbits and Dutchie.com related to the sale and distribution of a controlled substance, marijuana, at the NCE pursuant to the advice, direction and **A2** and **A5** with Steve Sisolak and Aaron Ford as means to preserve the continued application of the **A2** and its intended economic results, and to prevent the denial of operations at Newe Cannabis by TMC and detection by law enforcement, and thereby allowing the continued use of Greenbits and Dutchie.com services to assist in the sale and distribution of marijuana at Newe Cannabis producing revenue and income for the same named individuals and entities. <u>See</u> <u>15 U.S.C. §§1, 2 and 13 and 14</u>.

247. On April 21, 2020 Zionsbank/NSB agent Lupercio stated the Te-Moak account access signature cards were ready for Joseph Holley and Juan Arevalo "to sign" as the last step to grant the Plaintiff access to all information related to or associated with the Tribe's accounts held at Zionsbank/NSB.

248. On April 24, 2020 Zionsbank/NSB Dewey stated that Zionsbank now needed all of the Te-Moak Council member's signatures before Zionsbank allowed the Chairman and Vice Chairman to transfer any Te-Moak funds between accounts.  All signatures were provided along with the necessary documentation.

249. On May 6, 2020 Darian Stanford drafted a legal document entitled the Declaration of Thalia Marin, and both Marin and Stanford then signed that document on May 6, 2020 with the intent or purpose to violate or attempt to violate 18 U.S.C. §§1503 (*Obstruction by corrupt endeavor to injure or influence any party or witness in a federal court*) and 1512(*corruptly persuades or attempts to persuade another to influence testimony*). See Exhibit III-A(3)(United States Court of Indian Offenses, Case No. CIV-20-WR03)(May 6, 2020).

250. Thalia Marin's written avowal in the Declaration states that "[o]n April 18, 2020 the Elko Band opened Newe Cannabis on tribal land...presently limited to...drive-through only. Newe Cannabis presently employs approximately twenty-five persons," where the NCE, Marin and Stanford knew at the time that the NCE existed and operated with the intent or purpose of violating or attempting to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. § 1960 et seq. and the Te-Moak Constitution, Article 4, sections 3, 4, and 12. Id. Darian Stanford signed an attached Certificate of Service to Marin's Declaration and transmitted an electronic copy via the internet using an email address, darianstanford@gmail.com from Beaverton, Oregon sent via the Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah to the federal court in Elko, Nevada with the intent to violate or attempt to violate 21 U.S.C. §841; 18 U.S.C. §§1343, 1503 and 1512; 18 U.S.C. §§ 1952, 1956 and 1957; 26 U.S.C. §7201; and the Te-Moak Constitution, Article 4, sections 3, 4 and 12. Id.

251. Darian Stanford repeatedly stated in BIA CFR court filings that Darian Stanford was the attorney of record for EBC when EBC Chairman Davis Gonzalez repeatedly asserted on the record to the TMC that Stanford did not represent EBC. Stanford continued this practice with the intent to violate or attempt to violate 18 U.S.C. §§1503 (*Obstruction by corrupt endeavor to injure or influence any party or witness in a federal court*) and 1512(*corruptly persuades or attempts to persuade another to influence testimony*); 15 U.S.C. §§1, 2 and 13(a and (f) and 18 U.S.C. § 1960 et seq.

252. On May 7, 2020 Thalia Marin, (after receiving the Te-Moak Agenda item - Narcotics Ordinance), sent a text message to the Plaintiff, at the direction, advice or instruction of, with or from Davis Gonzalez; Juan Arevalo; Darian Stanford; Kevin Clock, and other unnamed individuals, pursuant to the **A1-A6** agreements, plan or schemes, via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah, that states "who put cannabis back on [the Te-Moak Tribal Council] agenda . . .I'm asking as Newe Cannabis Commission member...I just look at this as Temoak admin [Plaintiff] n Temoak Chair are [do]ing things just to get into Elko Band business," that was sent in furtherance of **A1-A6** for the continued commercial sale

and distribution of a controlled substance, marijuana, at the NCE with the intent or purpose to violate or attempt to violate 21 U.S.C. §841; 18 U.S.C. §§1503 and 1512; 26 U.S.C. §7201; 18 U.S.C. § 1960 et seq. and the Te-Moak Constitution, Article 4, sections 3, 4, and 12, to interfere or interrupt Tribal government operations and to invent, create or publish false or artificial reasons or justifications to obtain the termination of the Plaintiff's employment with the Tribe, and prevent disclosure of criminal conduct related to the NCE to SALAL; Wells Fargo Bank; VISA; MasterCard; Zionsbank/NSB as shown by the use of the names, DUNS and financial data and information for or related to EBCE, SCS and EBC, and not the NCE.

253. On May 9, 2020 Alice Tybo sent a text message to the Plaintiff, via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah stating "Elko Band using cares act funding to provide security for their cannabis. . . I'm not going to have federal charges brought against me or our council [a]nd not have protection of sovereign immunity. Elko Band is going to face huge liability issues if one of their security people injure or is injured by one of the people they are confronting. This is insane!!" SCS employee Derick Gibson, (*Adriana Hernandez' paramour*), was hired and employed as the NCE security guard until it was reported to Tybo on or about May 9, 2020 that Gibson abused his authority by pulling over and detaining motor vehicles, making traffic stops and attempting to gain access into the NCIC system to investigate tribal members. BIA law enforcement intervened and the NCE mobile security program terminated, Mr. Gibson continues to work inside the NCE retail store as security.

254. On May 9, 2020 the Te-Moak Tribal Council "repealed, rescinded and revoked" Te-Moak Ordinance 19-ORD-TM-01, (Narcotics Ordinance), and all prior versions, and Joseph Holley signed that official action with lawful effect on May 11, 2020.

255. On or about May 19, 2020 at an EBC Meeting Thalia Marin publicly stated that the Plaintiff is a "white devil" to members of the Te-Moak Tribe and EBC while acting under **A5** and the advice, authority, instruction or direction of Davis Gonzalez; SCS; EBCE; Steve Sisolak; Aaron Ford; ECDCC; Paul Conable; Steve Olson; Juan Arevalo; Darian Stanford; Kevin Clock, and others, to preserve and protect the continuation of **A2, A4** and **A6** agreements, plans or schemes involving these same individuals and entities to engage in the sale and distribution of a controlled substance, marijuana, involving the NCE with the intent or purpose of violating or attempting to violate 21 U.S.C. §841; 18 U.S.C. §§1343, 1503 and 1512; 26 U.S.C. §7201, 18 U.S.C. § 1960 et seq. and the Te-Moak Constitution, Article 4, sections 3, 4,and 12 by carrying into effect or execution a plan to interfere or interrupt Tribal government

operations and to invent, create or publish false or artificial reasons or justifications to obtain the termination of the Plaintiff's employment with the Tribe to permit the same individuals and entities to continue the unlawful commercial sale and distribution of a controlled substances.

256. On May 20, 2020 TMC Member Jill Temoke resigned from her office on the TMC, and EBC accepted that resignation by way of Elko Band Council Resolution 2020-EBC-24, replacing Jill Temoke with Davis Gonzalez on the Te-Moak Tribal Council.

257. On May 26, 2020 Davis Gonzalez and Juan Arevalo signed a document on EBC letterhead, (*color or authority of state law – A2*), that states EBC "intends to continue" with the sale and distribution of "recreational cannabis. . .for its members" under **A2** and that the NCE "is thriving and shall continue to do so," pursuant to the **A1-A6** agreements, plans or schemes  with and involving SCS; EBCE; Steve Sisolak; Aaron Ford; Paul Conable; Steve Olson; Larry Yeager; Thalia Marin; Darian Stanford; Kevin Clock, and others, on behalf of the NCE, in exchange for unreported cash payments that were derived, received or originated from the sale and distribution of a controlled substance, marijuana, that began April 18, 2020, with the intent or purpose of violating or attempting to violate 21 U.S.C. §841; 26 U.S.C. §7201; 18 U.S.C. §§1343, 1503 and 1512; 18 U.S.C. § 1960 et seq. and the Te-Moak Constitution, Article 4, sections 3, 4, and 12 who carried into effect a plan or executed the terms of an agreement, plan or scheme to interfere, injure or interrupt Tribal government operations and invent, create or publish false or artificial reasons or justifications to obtain the termination of the Plaintiff's employment with the Tribe to permit the same individuals and entities to continue the unlawful commercial sale and distribution of a controlled substances at the NCE, with the intent or purpose to violate or attempt to violate 18 U.S.C. §§1341, 1343, 1344, 1503 and 1512; 15 U.S.C. §§1, 2 and 14.

258. On or about May 26, 2020 Davis Gonzalez stated that the revocation, rescission and repealment of Te-Moak Ordinance 19-ORD-TM-01 by the TMC was invalid because "Newe [Cannabis] is on Tribal Land and it's owned by Elko Band and individual [tribal] members can't own anything to do with Newe," when this statement is in direct opposition to the Tribe's legislative processes, and the Tribe's Charter holding that each tribal member owns one equal share.  Ref. Te-Moak Constitution, Article 4; United States Department of the Interior, Office of Indian Affairs, Corporate Charter of the Te-Moak Bands of Western Shoshone Indians of the State of Nevada (December 12, 1938)(*the Te-Moak Tribe is "hereby chartered as a body politic and corporation of the United States...as a Federal corporation, [with] perpetual*

*succession. . . .all such leases, permits or contracts ['covering the land or interests in the land now or hereafter'] must be approved by the Secretary of the Interior. . .[this charter grants an] equal [ownership] share [to] each member in the assets of the Tribe")*. Davis Gonzalez unlawfully removed tribal members' ownership rights by entering **A6** and granting an outside, non-tribal entity, SCS, 50% ownership, while EBCE and SCS operated to convert the vast majority of money obtained from NCE into personal assets, bribes and gifts to Sisolak; Ford; Gonzalez; Conable; Olson; Stanford; Arevalo; Marin; Sandoval; Yeager; Clock; Parris and others.

259. On or about May 27, 2020 Adela Morrison ordered the Te-Moak Housing Authority, (hereafter "TMHA"), Executive Director Lillian Thomas to deliver U.S. Housing and Urban Development financial documents to the Plaintiff, and when the TMHA Director delivered financial documents to the Plaintiff, it appeared that the packet of documents included copies of two (2) sets of accounting books, one reported to the federal government and the Tribe, the other a set of financial accounting records maintained and kept internally at TMHA, only the records also included an end of quarter March 31, 2020 account statement from 1st Global Capital Corporation identifying a balance of about $1,100,000.00 in the fund, a fund that only the Executive Director, Raymond Gonzalez and Chairwoman Morrison had access or permission to access at the time, and on May 27, 2020 Adela Morrison, Lillian Thomas and Raymond Gonzalez knew or should have known that 1st Global Capital Corporation was purchased by Avantax Wealth Management in 2018.  Avantax physical address is:  3200 Olympus Blvd., Ste. 100; Dallas Texas 75019.  Ref. Exhibit II-B(1)(a).

260. On or about May 28, 2020 Lillian Thomas personally appeared at the Plaintiff's place of employment demanding the Plaintiff's signature on government documents, and when the Plaintiff refused, Thomas yelled "fine, I'll just sign your name for you."  The Plaintiff then informed Ms. Thomas to notify her supervisor that threatening to forge official signatures on federal forms is a serious offense.  Lillian Thomas left the building and a few minutes later the Plaintiff walked to the TMHA building where the Plaintiff observed Thomas state to her staff "so I told him, 'fine, I'll just sign your name.'"

261. On May 28, 2020 Zionsbank/NSB Lupercio stated that Zionsbank/NSB never received the required authorization form for the Plaintiff to access information, and Zionsbank/NSB denied access.  The Plaintiff again transmitted the completed form to Zionsbank/NSB, via email, and again Lupercio claimed receipt and stated it will take "24-48 hours" to process.

262.  From January 1, 2020 through June 5, 2020 Davis Gonzalez paid the Te-Moak
      Finance Clerk, Celia Gonzales, who was also Davis Gonzalez' concubine, with
      unlawful cash proceeds originating from the sale and distribution of a controlled
      substance at Newe Cannabis, under an agreement where Celia Gonzales provided
      Davis Gonzalez with information regarding the Plaintiff's work product, tasks,
      contacts and personal life, and if possible, to cause or create disruptions and
      interference in the Te-Moak Administration so Davis Gonzalez could seek Plaintiff's
      termination for employment with the Tribe, as part of **A5**.

263.  On or about June 9, 2020 the Plaintiff observed Celia Gonzales holding an
      unscheduled, closed-door meeting with Davis Gonzalez in the Te-Moak Finance
      Office.  In response to the Plaintiff's questions on June 9, 2020, Celia Gonzales stated
      that the senior Gonzalez and Ms. Gonzales were former paramours and that Mr.
      Gonzalez paid Ms. Gonzales cash from Newe Cannabis to provide information
      regarding the Plaintiff and Te-Moak Council to cause disruption and interference
      with the Plaintiff's employment.

264.  On or about June 10, 2020 a state grantor informed the Plaintiff it identified fraud in
      a state grant program at Te-Moak, involving Celia Gonzales, to wit: Celia Gonzales
      authorized, with Alfreda Walker, the expenditure of Indian Health Services-Diabetes
      grant funds, (federal), to pay the wages, salary and benefits for a Te-Moak state
      grant recipient employee, when Gonzales informed the Plaintiff the payments
      originated out of the IHS because the employees work was performed under IHS,
      and Celia Gonzales concealed and falsified this information to federal and state
      grantors, the Plaintiff and TMC.  Gonzales failed to communicate that a state grant
      recipient employee failed to submit monthly reports for over a year, while Gonzales
      transferred and paid this employee from federal funds out of an unrelated program.
      The state grant employee resigned on or about June 16, 2020.

265.  Celia Gonzales elected to resign on or about June 26, 2020 after the Plaintiff offered
      and attempted to develop a solution that included a plan to provide education,
      training and repayment.

266.  On or about June 1, 2020 Davis Gonzalez and Veronica Huerta, (*a former sex worker
      at a Nevada Brothel then employed by SCS as a liaison/consultant and at EBC as the
      Assistant Administrator*), agreed to entrap the Plaintiff in a sex discrimination claim
      in exchange for Huerta's continued employment, wages and benefits, including a
      cash commission and cryptocurrency Dogecoin, from the NCE and EBC, as part of
      **A5**. Ms. Huerta introduced SCS; Darian Stanford; Paul Conable; Steve Olson; Elliot

Parris and Kevin Clock to EBC and Robin Evans to establish a tribal cannabis business, and Huerta sought to entrap the Plaintiff in a sexual discrimination claim pursuant to **A5** agreement, plan or scheme with Davis Gonzalez; EBCE; Steve Sisolak; Aaron Ford; Paul Conable; Thalia Marin; Steve Olson; Juan Arevalo; Darian Stanford; Kevin Clock, and others, to preserve and protect the ongoing commercial sale and distribution of a controlled substance, marijuana, at the NCE, with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14 by carrying into effect or executing a plan to interfere or interrupt Tribal government operations and publish false or artificial reasons or justifications to obtain the termination of the Plaintiff's employment with the Tribe and permit the same individuals and entities to continue receiving cash, income or revenue from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis.

267. On June 2, 2020 Zionsbank/NSB Lupercio stated that Zionsbank/NSB sent the Plaintiff the wrong authorization form to access information, (the former contained the EIN for EBC accounts), so Lupercio demanded that the Plaintiff complete and sign the form again, now adding an additional 24-48 hours to process the documents. Davis Gonzalez continued to communicate with Zionsbank/NSB demanding that Zionsbank deny access to the Plaintiff, pursuant to the **A1-A6** agreements, plans or scheme with SCS; EBCE; Steve Sisolak; Aaron Ford; Paul Conable; Steve Olson; Juan Arevalo; Darian Stanford; Kevin Clock, and others, to continue the commercial sale and distribution of a controlled substance, marijuana, with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 31 U.S.C. §5318(h), 18 U.S.C. § 1960 and the Te-Moak Constitution, Article 4, sections 3, 4 and 12 who executed a plan to interfere or interrupt Tribal government operations and create, invent or publish false or artificial reasons or justifications to obtain or result in the termination of the Plaintiff's employment with the Tribe and obstruct an ongoing investigation involving the sale and distribution of a controlled substances, marijuana, involving the NCE to violate or attempt to violate 18 U.S.C. §§1503, 1510, 1512-13.

268. On June 3, 2020 the Plaintiff and USA Trutanich held a teleconference related to the sale and distribution of a controlled substance at the NCE retail store Newe Cannabis. Mr. Trutanich reiterated a clarified version of the policy that AUSA Fahami stated to the Plaintiff earlier in February 2020 that federal law enforcement

will take no action against the business to avoid claims of racial discrimination. Plaintiff was instructed to send a copy of the revoked, repealed and rescinded Narcotics Ordinance of May 9, 2020.  The Plaintiff forwarded a copy of the repealed Narcotics Ordinance to USA Trutanich.

269. On June 3, 2020 the Te-Moak Tribal Council officially welcomed Davis Gonzalez as a new member on the Te-Moak Tribal Council, replacing Jill Temoke, by way and through <u>Te-Moak Resolution 20-TM-45</u>, and on June 3, 2020 the Te-Moak Tribal Council increased the Plaintiff's hourly wage at $30.00 per hour and denying the Plaintiff's request for insurance as required by Te-Moak policy and law.

270. On June 4, 2020 Alice Tybo sent or transmitted a text message to the Plaintiff that stated "[h]ope that things are ok with you this morning.  Please know that the 'majority' of the council has your back and we really appreciate all that you do for us and the community.  I have said numerous times that you are the best administrator Te-Moak ever had.  Alice."

271. From April 18, 2020 until approximately December 13, 2020 Paul Conable; Darian Stanford; Davis Gonzalez; Juan Arevalo;  Larry Yeager; Kevin Clock; Thalia Marin and other unnamed individuals, pursuant to **A1-A4** and **A6**, conspired and agreed to transfer, deposit or deliver cash, income, revenue or proceeds from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, in a cumulative amount exceeding $1,000,000.00 as a deposit into H & R Block's Accounting Support and Bill Paying Services, (operated or managed by way and through Delcor, Inc., ("TLC"), located in Elko with the same manager/owner as the local Elko H & R Block (*Deborah Lindsey with Leray and Patsy Reese*)), after Paul Conable stated to the EBC on or about February 25. 2020 that "this H & R Block doesn't care where the cash comes from," with the intent or purpose to violate or attempt to violate <u>21 U.S.C. §841</u>, <u>26 U.S.C. §7201</u>, <u>18 U.S.C. §1341</u>; <u>18 U.S.C. §1343</u>; <u>18 U.S.C. §1344</u>; <u>18 U.S.C. §1952</u>; <u>18 U.S.C. §1956</u>; <u>18 U.S.C. §1957</u>; <u>18 U.S.C. § 1960</u> and the <u>Te-Moak Constitution</u>, <u>Article 4, sections 3, 12 and 14</u>, and pursuant to **A1-A4** and **A6**, Darian Stanford; Davis Gonzalez; Juan Arevalo;  Larry Yeager; Kevin Clock; Suzanna Sandoval; Thalia Marin; Robin Evans, RAE Solutions; Leslie Grove, IBSC; Adriana Hernandez, and other unnamed individuals, conspired and agreed to falsify or  misrepresent information contained in financial records submitted to H & R Block-Delcor to disguise or omit the actual characteristic, source or legal status of the funds, income or revenue as being derived from or originating at the NCE, not EBCE as declared and stated in those financial documents and records. Pursuant to the **A1-A4** agreements, H & R Block-Delcor completed, filed and prepared

accounting support and payroll services on behalf of the NCE in the name of EBCE for the period April 18 through December 30, 2020 and provided documents to Robin Evans, RAE Solutions; Leslie Grove-IBSC; SCS and EBCE.

272. Between April 18, 2020 and December 31, 2020 Steve Sisolak; Aaron Ford; SCS; EBCE; Juan Arevalo; Robin Evans, RAE; Leslie Grove, IBSC; Suzanna Sandoval; Darian Stanford; Paul Conable; Darian Stanford; Davis Gonzalez; Thalia Marin; Kevin Clock and Elliot Parris agreed pursuant to **A1-A6** to misrepresent facts and information and who failed to inform or provide the actual status, source or characteristics of the cash deposited and paid to H & R Block-Delcor and hid that information from H & R Block-Delcor to avoid prosecution, civil liability and rejection of the transactions by H & R Block-Delcor, as otherwise required by applicable federal law, pursuant to an agreement, plan or scheme, involving these same individuals to further carried into effect a plan or executed the terms of an agreement, plan or scheme to interfere, injure or interrupt Tribal government operations and invent, create or publish false or artificial reasons or justifications to obtain the termination of the Plaintiff's employment with the Tribe to permit the same individuals and entities to continue the unlawful commercial sale and distribution of a controlled substances at the NCE, with the intent or purpose to violate or attempt to violate 18 U.S.C. §§1341, 1343, 1344, 1503 and 1512.

273. On or about June 3, 2020 White Cloud LLC President Joe Shelton and White Cloud representative David Skinner stated to the Plaintiff that EBC authorized the installation of internet services for the NCE at the retail store - Newe Cannabis, (connected to Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah), allowing the Cannabis business to transact business over the internet, video and telephone, and that Davis Gonzalez ordered his staff to pay White Cloud with $39,000.00 in cash derived or originating from the sale and distribution of marijuana at Newe Cannabis, and Davis Gonzalez falsified, misrepresented or refused to inform or admit in financial records and documents the actual characteristic, source or legal status of the funds or to officially report this payment amount to the NCE entity NCC. White Cloud received $39,000.00 in cash directly from Veronica Huerta, at EBC, that originated from the sale of a controlled substance at the NCE retail store-Newe Cannabis, with that payment amount previously earmarked by EBCE and NCE for the purchase of hardware, equipment, telephone and internet services connected to two (2) separate physical locations at EBC Administration building and the NCE retail store building, with the intent or purpose to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343;

18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14.  The $39,000.00 in cash received by White Cloud was transferred, hand-delivered and deposited into an account at Zionsbank/NSB and at the time of deposit Zionsbank/NSB Ashley Dewey knew or should have known that the cash was derived or originated from the sale and distribution of a controlled substance where the cash was delivered in a plastic shopping bag and smelled of marijuana according to the bank teller who took possession of the cash prior to transfer and deposit.

274.  There is no indication, record or document in the financial records associated with the NCE the Plaintiff examined that revealed, disclosed or shows the $39,000.00 cash payment to White Cloud. Davis Gonzalez fraudulently transferred, withdrew or removed, or caused the same, a cash amount of $39,000.00 for payment to White Cloud, by concealment, before the required Quarterly Count in July 2020 pursuant to **A1-A4** and **A6** with SCS; EBCE; Paul Conable; Steve Sisolak; Aaron Ford; Steve Olson; Juan Arevalo; Larry Yeager; Thalia Marin; Darian Stanford; Kevin Clock, and others, who conspired and agreed to engage in the commercial sale and distribution of a controlled substance with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 et seq. and the Te-Moak Constitution, Article 4, sections 3, 12 and 14.

275.  On or about June 30, 2020, Juan Arevalo displayed a picture on a cellular phone to the Plaintiff showing a stack of money that Juan Arevalo declared represented $1,250,000.00 (USD) cash as "Elko's share" of the total revenue, income or proceeds that resulted from the sale and distribution of a controlled substance, marijuana, pursuant to **A1-A4** and **A6** NCE agreements, plans or schemes at "Newe Cannabis since we opened" for the period April 17 thru July 1, 2020.

276.  On July 8, 2020 the NCE produced a written report pursuant to the **A1-A4** and **A6** agreements, plans or schemes with or between SCS; EBCE; Robin Evans, RAE Solutions; Leslie Grove, IBSC; Paul Conable; Steve Sisolak; Aaron Ford; Steve Olson; Juan Arevalo; Davis Gonzalez; Thalia Marin, Larry Yeager; Darian Stanford; Kevin Clock, and others, regarding the sale and distribution of a controlled substance, marijuana, at the NCE retail store-Newe Cannabis, that states after the unreported pre-count 'partner's share' was divided and subtracted from the reported gross income amount,  the claimed net income for the second quarter 2020, (spanning April 18, 2020 through June, 30, 2020), totaled an even "$1,000,000.00," where the "EBCE" half-share amounted to "$500,000.00" and the  "SCS" half-share amounted to

"$500,000.00" pursuant to the <u>Joint Venture Agreement</u>("SCS 50% ECBE 50%") and distributed accordingly with the intent or purpose to violate or attempt to violate <u>21 U.S.C. §841</u>, <u>26 U.S.C. §7201</u>, <u>18 U.S.C. §1341</u>; <u>18 U.S.C. §1343</u>; <u>18 U.S.C. §1344</u>; <u>18 U.S.C. §1952</u>; <u>18 U.S.C. §1956</u>; <u>18 U.S.C. §1957</u>; <u>18 U.S.C. § 1960</u> and the <u>Te-Moak Constitution</u>, <u>Article 4, sections 3, 12 and 14</u> when NCC stated, claimed or reported to EBC Chairman Davis Gonzalez that the actual gross revenue or income from the sale and distribution of a controlled substance, marijuana, at the NCE retail store-Newe Cannabis for the second quarter 2020 was "over 2 million bucks" and Juan Arevalo stated, claimed or reported that the total gross income or revenue for the same quarter 2020 was $2,500,000.  Ref. <u>Exhibit II-B(2): Cannabis Distribution Log.</u>

277.   Plaintiff first met Sypolt on or about July 9, 2020 after the Plaintiff, with Joseph Holley, Duane Garcia, Sr; David Carrera; Alice Tybo and Andrea Woods drove along Interstate 80 into Wendover, Utah for a meeting scheduled and arranged by Dentons and Sypolt.  During this meeting the Plaintiff relayed the information Juan Arevalo provided that the NCE retail store Newe Cannabis generated $2.5 million during the first quarter 2020 operations.

278.   At the July 9, 2020 Sypolt introduced a potential investor for a future Battle Mountain Tribal Casino, and another lawyer Terry "Cameron" McEwen who stated that the three (3) individuals traveled first to Salt Lake City after flying from Alabama and Illinois, where they met at the "new Dentons' Office" in Utah.  Dentons and the Te-Moak Tribe paid or reimbursed Sypolt and McEwen for the travel costs and expenses to Utah and Nevada.  From the Dentons Utah Office, Sypolt formed the initial agreement with Holley and Tybo, via telephone, to defraud the Tribe and the United States, with the first mention of eliminating the Plaintiff as a Te-Moak employee.

279.   During the meeting on or about July 9, 2020 Sypolt introduced himself as an attorney with Dentons, "the world's largest law firm," and then "Cameron McEwen" as the newest attorney "with Dentons, he's a very skilled attorney and Dentons is proud to have him on board with the firm."

280.   On July 9, 2020 Sypolt stated that Cameron McEwen "will be working with [Sypolt] and who will appear at every monthly Council meeting to represent the Tribe, and this will show people that Dentons is a powerhouse firm representing the Tribe." At no time of point during the July 9, 2020 meeting did Sypolt or McEwen disclose to the Plaintiff that a prior contractual relationship existed between Dentons and McEwen.  See <u>Exhibit III-C(3)(a)</u> at Header pg. 2.

281. On or about July 9, 2020 Cameron McEwen and the Plaintiff exchanged brief background information when McEwen provided the Plaintiff detailed privileged information belonging to the Tribe by stating the legal approach and strategies that Dentons was going to  advance and apply to the Tribe's factual and legal position in the ongoing legal dispute involving the NCE on behalf of the Te-Moak Tribe. McEwen stated to the Plaintiff that Sypolt "briefed" McEwen on these matters. During the return trip to Te-Moak Territory, the Plaintiff informed the TMC "I would never be involved with an attorney as unethical as Sypolt."

282. On July 13, 2020 NSB Lupercio communicated with the Plaintiff stating that Vice President Ashley Dewey instructed Lupercio to deny the Plaintiff access to the Tribe's account information, based on information Dewey received from Davis Gonzalez, who was acting pursuant to **A1-A6** and **A8** agreement, plan or scheme with SCS; EBCE; Zionsbank; Paul Conable; Steve Sisolak; Aaron Ford; Steve Olson; Juan Arevalo; Larry Yeager; Thalia Marin; Darian Stanford; Kevin Clock, and others, to engage in the commercial sale and distribution of a controlled substance, marijuana, with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14 and who, pursuant to the **A2, A4, A5** and **A6** agreement, executed a plan to interfere or interrupt Tribal government operations the Plaintiff administered for the Te-Moak Tribe and continue the commercial sale and distribution of a controlled substances at the NCE retail store Newe Cannabis, including transfers and deposits of the cannabis cash into Zionsbank and NSB by failing to inform or admit in financial records and documents the actual characteristics, source or legal status of the funds derived or originating from the sale and distribution of a controlled substance at Newe Cannabis.

283. On or about July 13, 2020 NSB Ashley Dewey stated to the Plaintiff that Resolution 20-TM-30 "did not give you access" and that Zionsbank "revoked" the Plaintiff's access rights.  Plaintiff submitted a written complaint to Zionsbank and NSB quoting the exact language contained in Resolution 20-TM-30: "the Te-Moak Tribal Council . . .authorizes the Te-Moak Tribal Administrator, Samuel L. Biers . . .to have access to any information on all Nevada State Bank Te-Moak Accounts." Zionsbank and NSB agents continued to communicate with Davis Gonzalez, Brent Waite, Darian Stanford and Paul Conable who jointly agreed to deny the Plaintiff the right to access information contained in the Tribe's Zionsbank and NSB accounts, pursuant to **A1-A6** and **A8** agreement, plan or scheme with or between SCS; Zionsbank; EBCE;

Robin Evans; Suzanna Sandoval; Leslie Grove; Larry Yeager; Steve Sisolak; Aaron Ford; Steve Olson; Juan Arevalo; Thalia Marin; Kevin Clock, and others, who conspired and agreed to falsify or misrepresent facts and information contained in financial records and documents related to the actual characteristic, source or legal status of the funds, specifically that the funds originated or were derived from the sale and distribution of a controlled substance at Newe Cannabis and then deposited, transferred or held at Zionsbank and NSB pursuant to **A4** agreement, plan or scheme, involving the NCE to engage in the commercial sale and distribution of a controlled substance with the intent or purpose to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14, who then jointly and individually agreed to carry into effect a plan to interfere or interrupt Tribal government operations managed and administered by the Plaintiff and continue the sale and distribution of a controlled substance, including regular transfers and deposits of the NCE cash, directly and indirectly, into Zionsbank and NSB as part of **A5**.

284. On or about July 17, 2020, by way of majority vote of the Te-Moak Tribal Council, the Te-Moak Tribe hired Dentons, with Sypolt identified as the point of contact attorney. Ref. Resolution 20-TM-60; e.g. Exhibit Resolution 20-TM-73(*pay Dentons $127,000.00 to perform legal services : 1) draft amended version of Te-Moak Constitution; 2) Revise Apportionment Ordinance; 3) Memorandum of Points and Authorities RE: Nevada Revised Statute, NRS 41.430*)(August 5, 2020)).

285. On or about July 14, 2020 the draft Dentons Agreement with the Tribe states on the top of page 2, where the client's name is manually inserted in a Dentons electronic computer filing system, "Mr. Terry McEwen," and is dated "April 28, 2020." Exhibit III-C(3)(a). Terry McEwen is Terry Cameron McEwen who was introduced to the Plaintiff and the Te-Moak Tribe on or about July 9, 2020 in Wendover as "Cameron McEwen," and at no point in time did Sypolt, McEwen, Docksey, Skibine, Sibbison or Dentons disclose the prior contractual relationship or legal relationship between Dentons, Sypolt and Terry Cameron McEwen.

286. On or about July 21, 2020 Joseph Holley ordered the Plaintiff to deliver a copy of the existing Te-Moak Apportionment Ordinance to Sypolt. That day the Plaintiff sent an electronic copy of the Apportionment Ordinance to Sypolt at his Dentons' email and as Sypolt directed also to his personal email at scottsypolt@rocketmail.com.

287.  On July 22, 2020 NSB Vice President Northern Nevada Tammy Meyers communicated with the Plaintiff and stated that NSB received the correct authorization forms from the Te-Moak Tribe enabling the Plaintiff to gain access to the Tribe's account information (*accounts ending in [\*]953; [\*]961; [\*]945; [\*]001; [\*]222 and [\*]546*), and Chairman Holley and Vice Chairman Arevalo executed and signed the Zionsbank-NSB authorizations and permission forms on July 23, 2020 pursuant to Te-Moak Resolution 20-TM-30.

288.  On July 23, 2020 the Plaintiff signed and delivered a demand to TMHA, pursuant to the TMC's order and directive, commanding Adela Morrison, Raymond Gonzalez, Lillian Thomas, and other TMHA board members, to "[i]dentify each and every account, fund and interest in any account, fund, corporation, partnership or trust, including any domestic, tribal or foreign bank and/or financial institution created, managed or controlled by the Te-Moak Housing Authority or that any of its Board Members, employees, representatives, agents or managers that have signatory authority or any related control;" and "[i]dentify the record owner of title to each and every account, fund or interest in any account, fund, corporation, partnership or trust" on or before August 1, 2020.

289.  On July 31, 2020 the Plaintiff received a date stamped letter from Lillian Thomas, TMHA Executive Director, that stated on "July 27, 2020 Adela Morrison" received the Plaintiff's July 23, 2020 demand for production of financial records and information as mandated by the TMC.

290.  In August 2020 EBCE and EBC maintained and managed the distribution of funds contained in accounts at Edward Jones & Associates, (*balance totaling approximately $1,300,000.00*), and for each prior month EBCE and EBC deposited on average approximately $20,000.00 in cash received from the Elko Band Smoke Shop into an Edward Jones account.  The Edward Jones & Associates account or accounts are not publicly disclosed or disclosed to the TMC and operate as a 'slush' fund in conjunction with the TMHA accounts, both similar in form and purpose to hide and launder misappropriated federal funds and NCE income or revenue from the public.  One source of fraudulently obtained funds transferred into EJA surfaced through an IHS lease agreement for land, when Davis Gonzalez knew that all rights to federal trust land fall within the exclusive jurisdiction of the TMC, subject to approval by the U.S. Secretary of Interior, and that EBC lacked authority to enter a long-term lease for land.  On May 1, 2012 Gonzalez, on behalf of EBC as the "owner," and entered into a ten (10) year lease with the U.S. Department of Health and Human Services for the right to use the land, and EBC received "$16,543.90" each month without

disclosing the lease or funds EBC received to the TMC, and without obtaining the approval of the TMC or the U.S. Secretary of Interior.  Ref. United States Lease No. 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.

291.  After the Quarterly Profit Count for the third quarter 2020, pursuant to the **A2**, **A4** and **A6** agreements, plans and schemes, Robin Evans; Suzanna Sandoval; Leslie Grove; Larry Yeager; Davis Gonzalez; Steve Sisolak; Aaron Ford; Steve Olson; Juan Arevalo; Thalia Marin; Kevin Clock, and others, conspired and agreed to use EBCE, TT, SCS and IBSC to divert, distribute or transfer a portion of the quarterly profit total revenue or income derived, received or originating from the unlawful sale and distribution of a controlled substance involving the NCE, and commingled the funds with the monthly cash deposits from the Elko Smoke Shop that are deposited, transferred and delivered to Edward Jones & Associates; Wells Fargo Bank; NSB; Great Basin Bank and Zionsbank, and other financial institutions, to conceal the character, source and identity of the cash as originating, received or derived from the sale and distribution of a controlled substance, marijuana, involving the NCE, with the intent to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14.

292.  From January 2019 through December 2020 Darian Stanford; Steve Sisolak; Aaron Ford; Larry Yeager; Juan Arevalo; Thalia Marin; Steve Olson; Robin Evans; Kevin Clock; Paul Conable; Davis Gonzalez; Leslie Grove, and others, conspired and agreed to use EBC, ECDCC, TT, RAE, IBSC and SCS to exercise management or operational control over EBCE and the NCE by way and through:  Bribery; Threats; Witness Tampering; Retaliation; Extortion; and Fraud to continue the wholesale and retail purchases, distribution and sale of a controlled substance, marijuana; transportation of money, funds and a controlled substance, marijuana, across multiple jurisdictions, along, on and across highways, bridges and interstates; making and authorizing expenditures and investments of the proceeds, revenue and income resulting or derived from or related to the unlawful sale and distribution of a controlled substance, marijuana; granting and denying legislation, authorizations and rendering employment decisions; establishing rules, goals and policy and providing legal decisions and advice, including the planning and funding of the unlawful, joint campaign to destroy the Plaintiff's character and professional reputation with the intent and purpose to violate or attempt to violate the Plaintiff's civil liberties and constitutional rights:  Speech, Employment, Security and Privacy, *inter alia*, with the

intent or purpose to violate or attempt to violate <u>15 U.S.C. §§1, 2 and 13(a), (d)-(f)</u>;
<u>18 U.S.C. §§1341, 1343, 1952, 1956 and 1957</u>; <u>18 U.S.C. §§1344, 1503 and 1512</u>; <u>18
U.S.C. § 1960 et seq.</u>; and <u>29 U.S.C. §201 et seq.</u>

293. On August 10, 2020 the TMC held a Special Public Meeting with Adela Morrison,
Raymond Gonzalez, and other TMHA Board members, to address claims of fraud and
misappropriation of tribal assets and federal funding at TMHA due to inaccurate,
incomplete and missing documents, as well as the Plaintiff identifying hidden
accounts and significant funds held at 1st Global Capital Corporation that were never
disclosed to the Tribal Council or the Tribe.  Ref. <u>Exhibit II-B(1)(a)</u>.

294. Historically, there are two (2) primary programs administered through federal
grant awards at TMHA:  Low Rent and Mutual Aid Housing.  One (1) ongoing
fraudulent scheme or plan at TMHA requires some employees and staff to
intentionally cause the delay in processing Low Rent and Mutual Aid payments for
at-risk tribal individuals who are disfavored, (*as determined by the tribal family in
control of the administration at the time*), and then assess an additional fee or cost to
the payment, falsely labeled or determined as being late.

295. Another fraudulent scheme occurs during a process where TMHA obtains a 25 year
HUD grant/loan for the purchase of a home, usually a modular home, and TMHA
then administers a loan to a tribal member for the title to that home, where after the
end of the 25 year period, the home is owned outright by that tribal member.
TMHA, (*again dependent on whether a tribal member or their family is deemed
disfavored or not*), intentionally employs delay tactics to force non-payment and/or
default, and TMHA then assesses fees and costs on the defaulting tribal member
until TMHA reassumes the mortgage and home.  TMHA then 'resells' the home
under a new 25 year mortgage to a new tribal member, irrespective of the amount
previously received and paid under HUD's original 25 year grant amount.  TMHA
arbitrarily and often oppressively resells the loan multiple times after the original
amount under the HUD grant/loan is repaid at the original 25 year mark.  Most of
the additional, predatory fees and costs from this fraudulent process are then
deposited into the Avantax/Global account for the personal benefit or interests of
Raymond Gonzalez, Davis Gonzalez and Adela Morrison, and this process existed in
this manner for years without full disclosure to the TMC or the Tribe.

296. A third fraudulent scheme at TMHA involves the payment of stipends to the Board of
Commissioners, as the governing authority for the TMHA.  Since 1976 the TMHA
Ordinance prohibited TMHA Board members from taking or receiving any meeting

stipend except travel expense reimbursement. In December 2019 alone TMHA expended over $8,000 in federal funds for TMHA Board meeting stipends that are not travel expense reimbursements.

297. Under the Gonzalez family administration, (1981-2021), the TMHA continued to take and receive extensive attendance based stipends consisting of HUD funds earmarked for impoverished or at-risk tribal members. During the period 2020-2021 TMHA annual budgets revealed TMHA expended up to 70% on administrative costs from the total annual budget amounts. In contrast, the administrative costs associated with the CARES Act program, as administered by the Plaintiff for the Tribe during 2020-2021 equaled about 4% of the total budget.

298. Between March 1, 2021 and December 31, 2021 the TMHA unlawfully and arbitrarily and unlawfully enacted an amendment to the TMHA Ordinance allowing the expenditure of stipends, and continued the fraudulent payments thereunder.

299. Raymond Gonzalez was the TMHA Chairman or board member for about 20 years. The actual and complete TMHA records were either withheld from the annual audit or altered to hide the actual transactions involved at TMHA from the annual audit performed by Midwest Professionals, PLLC, in Gaylord Michigan.

300. On or about September 11, 2020 the Plaintiff received copies of certain TMHA records where the data showed that for the period 2010-2017 an amount of approximately $1,250,000.00 was listed as the average annual balance on the TMHA Statement at 1st Global Capital Corporation, with very little year-to-year change. See Exhibit II-B(1). In the records contained in TMHA's second set of books, (*its internal unpublished accounting report*), the data shows that for July 1, 2020 through July 30, 2021 the balance amount for TMHA 1st Global account was $2,572,622.19, where TMHA is legislated to operate as a not-for-profit entity. Id. This information is included in the TMHA Avantax Wealth Management that uses the same 1st Global account number EBP-11347. Id. This account balance more than doubled in size either through the use of fraudulent reporting and misappropriation of federal funds and the fraudulent transfers or deposits of money involving the NCE Newe Cannabis funds or both. Id.

301. Davis Gonzalez, instructed, directed and ordered Adela Morrison and Raymond Gonzalez to transfer and deposit funds, income or revenue that originated or were derived from the sale and distribution of a controlled substance, marijuana, at the NCE retail store - Newe Cannabis, through a series of financial transactions

involving SALAL; Wells Fargo Bank; Great Basin Bank; Bank of Baroda (India); Capital One Bank; PNC Bank (*closest physical access point listed is in Utah*); State Bank of India, and numerous credit cards, into and from 1st Global Capital Corporation, (Account Number EBP-11347), and Avantax Wealth Management in Dallas, Texas, (*with TMHA fraudulently listed as an Unincorporated Association when the Te-Moak Charter determines it is a federal corporate entity*), pursuant to the **A1-A4**, **A6** and **A8** agreements, plans and schemes with SCS; EBCE; Steve Olson; Aaron Ford; Steve Sisolak; Paul Conable; Darian Stanford; Juan Arevalo; Thalia Marin; Kevin Clock, and others, who agreed to falsify and misrepresent information in financial records and documents regarding the actual characteristic, source or legal status of funds transferred or deposited, directly or indirectly, to financial institutions pursuant to an agreement, plan or scheme, involving these same individuals and entities, and further engage in the sale and distribution of a controlled substance with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14 and the Defendants, jointly and individually, then executed the terms of **A5** agreement, plan or scheme to interfere, injure or interrupt Te-Moak Tribal government operations and invent, create or publish false statements and artificial justifications to obtain the termination of the Plaintiff's employment and permit the Defendants the NCE and fraudulent activity at TMHA, in exchange for payments or benefits from transfers and deposits of funds into TMHA Avantax Wealth Management, Account Number EBP-11347. Id.

302. After the expiration of Raymond Gonzalez' term of office on the TMHA Board, (Te-Moak Resolution 19-TM-10 *finish four year term "that began August 15, 2017"*), Raymond Gonzalez continued and continues to co-manage the Avantax Wealth Management funds and accounts with Adela Morrison on behalf of Davis Gonzalez.

303. On March 1, 2022 the Plaintiff communicated with Avantax and the broker agent stated only two (2) individuals are listed with Avantax with exclusive "Trading Authority" rights and access permission for TMHA Account No. EBP-11347: "Adela Morrison and Raymond Gonzalez." TMHA Investment Policy grants the Executive Director the exclusive right to monitor the account and only TMHA personnel are authorized "to make investment transactions." Exhibit II-B(1)(b): TMHA Investment Policy, section 4 (pursuant to Resolution 90-TMHA-28*(the TMHA "Chairman and Executive Director" are solely authorized "to make investment transactions"*)).

304.  Raymond Gonzalez' TMHA term of office expired and terminated on August 16, 2021 and all authority previously associated with Raymond Gonzalez as a TMHA Board member terminated on August 16, 2021.  Raymond Gonzalez agreed to continue the policy and practice of falsifying or misrepresenting facts or information related to the financial records and documents, including the actual characteristic, source or legal status of the funds deposited or transferred into and from Avantax Account Number EBP-11347, pursuant to **A1-A6** and **A8** agreements, plans and schemes with SCS; EBCE; Joseph McDade; Davis Gonzalez; Scott Sypolt; Steve Olson; Paul Conable; Darian Stanford; Juan Arevalo; Larry Yeager; Thalia Marin; Kevin Clock, and others, and after August 16, 2021 Raymond Gonzalez' continued to control, approve or authorize investment transactions, with Adela Morrison, by transferring or depositing, directly or indirectly, funds, income, revenue or cash proceeds derived or originating from TMHA fraud and from the unlawful sale and distribution of a controlled substance, marijuana, from the NCE retail store Newe Cannabis, with the intent or purpose to violate or attempt to violate 21 U.S.C. §841; 26 U.S.C. §7201; 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 15 U.S.C. §§1, 2 and 13(a), (d) and (e); 18 U.S.C. § 1960 et seq. and the Te-Moak Constitution, Article 4, sections 3, 12 and 14.

305.  In 1990 the United States Department of Housing and Urban Development—Office of Indian Programs, ("OIP"), conducted a financial audit of TMHA and OIP determined that, (as stated in TMHA Resolution 90-TMHA-27), TMHA "operating policies" were severely "outdated or inadequate," because TMHA continued to conduct business for-profit, at the expense of tribal members, and continued or allowed the transfer and expenditure of federal funds into personal accounts without legal authority, when the TMHA's "primary purpose is to provide safe and sanitary housing for all tribal members."  Exhibit II-B(1)(b).

306.  TMHA Investment Policy, section 5 states that TMHA "shall require [Avantax] to continuously and fully (100%) secure all deposits in excess of the $100,000.00 insured amount. . .[and TMHA] shall maintain evidence of collateralization." Id. Adela Morrison failed to maintain or publish evidence of collateralization to cover the $2.5 million dollar investment fund at Avantax, or Adela Morrison and Davis Gonzalez provided collateralization using the Tribe's title to homes or similar encumbrance, creating risk or liability for the Tribe to protect the personal benefits and interests of Gonzalez and Morrison, without notice or approval from TMC or tribal members.

307.   On August 10, 2020 at a public TMC Meeting, Adela Morrison personally appeared with other Board Members to provide answers regarding the TMHA hidden slush fund at 1st Global Capital/Avantax; TMHA Board receiving exorbitant, unlawful non-travel stipends for years; TMHA Executive Director maintaining two (2) sets of accounting books and the failure of Adela Morrison to provide documentation that the TMC previously ordered her office to provide.  Ref. Exhibit II-B(1).  At this meeting Morrison became agitated and yelled at the Plaintiff accusing the Plaintiff of being "unprofessional," casting blame and responsibility onto the Plaintiff for Adela Morrison's TMHA failures and requesting that the Council discipline the Plaintiff, basing her falsehoods on the Plaintiff's culture, race or ethnicity stating "you're not a tribal member," whereafter Davis Gonzalez entered his comments on the record, agreeing with everything "Adela just said about Sam."

308.   On August 11, 2020 the TMC issued a Cashier's Check (No. 922298), drawn on "Zions banccorporation" subsidiary NSB, in the name of Dentons US LLP for an amount of "$127,000.00" on behalf of the Te-Moak Tribe pursuant to Te-Moak Resolution 20-TM-73.

309.   On August 12, 2020 the TMC held a Special Public Meeting with Tammy Meyers and Ashley Dewey who appeared representing NSB and Zionsbank to discuss the continued deprivation of the Plaintiff's employment rights and continued interference by Zionsbank in continuing to deny the Plaintiff full access to any and all of the Te-Moak Tribe's account information after the Council issued Resolution 20-TM-30 on April 11, 2020, where both the Chairman and Vice Chairman fully executed every form and document Zionsbank required, as mandated and required by Brent Waite and Zionsbank in Salt Lake City, Utah.  Zionsbank, Dewey and Waite knew or should have known that the policy or practice denying the Plaintiff access prevented discovery by the Plaintiff to obstruct or interfere with the Plaintiff's rights, duties and obligations as the Tribal Administrator, showing Zionsbank involvement in the **A2, A4, A5** and **A6** agreement, plan or scheme with SCS; EBCE; Steve Sisolak; Aaron Ford; Joseph McDade; Davis Gonzalez; Scott Sypolt; Steve Olson; Paul Conable; Larry Yeager; Skibine; Darian Stanford; Juan Arevalo; Thalia Marin; Kevin Clock.

310.   On or about August 12, 2020 the TMC cautioned Meyers and Dewey that further interference with the Plaintiff's access would result in the closure of all Tribal accounts, and then Dewey stated that Zionsbank legal department in Salt Lake City

Utah must grant access to the Plaintiff, not NSB, at which point TMC member Alice Tybo directly stated that the TMC already granted authorization to the Plaintiff and if Zionsbank and NSB failed or refused to immediately honor that decision TMC would vote to close the accounts and transfer funds to another financial institution.

311.   During the period January 2019 through December 2020 Skibine; Sypolt; Davis Gonzalez; Steve Sisolak; Aaron Ford; Thalia Marin; Darian Stanford and/or Paul Conable communicated, directly or indirectly on behalf of the NCE, with Zionsbank and Brent Waite in Salt Lake City, Utah to obstruct, frustrate or deny the Plaintiff's access to Te-Moak account information at Zionsbank and NSB, and pursuant to **A1-A6** and **A8** agreement, scheme or plan with Skibine; Scott Sypolt; Davis Gonzalez; Steve Sisolak; Aaron Ford; Thalia Marin; Darian Stanford; Steve Olson; Paul Conable, and others, wherefrom Zionsbank, Brent Waite and Dewey agreed to frustrate, obstruct or deny the Plaintiff's access to permit the continuation of the NCE, including the receipt, transfer and exchange of income, revenue and cash proceeds from and to the parties to the **A1-A4**, **A6** and **A8** agreements and the involvement of NSB and Zionsbank with the sale and distribution of a controlled substance, marijuana, by the NCE at the retail store Newe Cannabis with the intent or purpose to violate or attempt to violate 21 U.S.C. §841; 26 U.S.C. §7201; 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 31 U.S.C. §5138(h); 18 U.S.C. § 1960 and the Te-Moak Constitution, Article 4, sections 3, 4 and 12 and Defendants jointly and individually agreed to falsify or misrepresent facts, records and information contained in financial records and documents related to SCS; EBCE and Newe Cannabis, at NSB and Zionsbank, regarding the actual characteristic, source or legal status of the proceeds derived or originating from the sale and distribution of a controlled substance, marijuana, at Newe Cannabis while transferring, withdrawing or depositing these funds into and from various financial institutions through Zionsbank and NSB, as part of the **A5** plan to retaliate against the Plaintiff for reporting the ongoing criminal conduct related to the NCE to federal law enforcement  and to prevent disclosure and access to the Plaintiff and discovery of Zionsbank/NSB involvement with the NCE and its commingling and use of various financial accounts containing misappropriated federal funds associated with EBC, EBCE and Davis Gonzalez, and others.

312.   On or about August 19, 2020 Sypolt requested that the Plaintiff "exchange contact information with Cameron [McEwen] so that you can work together to get the Apportionment Ordinance done."

313.   On or about August 19, 2020 the Plaintiff sent a text message to Sypolt, an attorney with Dentons, via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah, that states "[y]ou have my permission to forward to Cameron [McEwen] tmkadmin@elko-nv.com" in response to Sypolt's earlier request.

314.   On or about August 19, 2020 Plaintiff contacted McEwen by telephone, and McEwen stated that he was an "Assistant Attorney General for the State of Alabama," in the funeral division, and McEwen was an attorney who "teaches ethics," before stating that "Dentons has not hired me, they have not given me an offer to hire me and I haven't even had an interview with Dentons yet.  It would be highly unethical for me to provide the Tribe legal advice and I don't know why Mr. Sypolt put me in this position."  Plaintiff provided the newly unearthed McEwen information to Holley, Garcia, Tybo, Woods and Carrera to supplement the information regarding Sypolt and McEwen that the Plaintiff provided during the return ride from Wendover.

315.   On or about August 26, 2020 the newly hired Te-Moak CARES Act Director Jennifer Knight was ambushed with false information regarding Knight on her second day at work that circulated throughout the Te-Moak office as published and created by Alfreda Walker, Marci Villegas and Tanya Reynolds who stated that they wanted to force Director Jennifer Knight to resign. Reynolds and Walker were concerned that Knight's thoroughness and aptitude would reveal Reynolds' and Walker's fraudulent practices related to the CARES Act programs at Te-Moak.

316.   On or about August 27, 2020 Leslie Aguilar, along with another individual, received a CARES Act check, signed by the TMC, when both were non-Tribal members-ineligible to receive a CARES payment, and a subsequent internal investigation revealed that Te-Moak staff members Alfreda Walker, Marci Villegas and Tanya Reynolds gained unauthorized access to the Te-Moak finance computer system, (*during a time when Leslie Aguilar was not working*), and inserted the names of Leslie Aguilar and the other non-tribal member into the computer system to print a check for payment after the Plaintiff approved a check list that failed to contain the names of these individuals and before that list went to Hinton Burdick for processing. Leslie Aguilar resigned on or about August 19, 2020.

317.   On or about August 27, 2020 Sypolt and the Plaintiff held a brief teleconference regarding the information the Plaintiff received regarding Terry Cameron McEwen, and Sypolt stated "I was not part of the hiring process so I had no way of knowing" the status of McEwen at Dentons.  Sypolt drafted and sent the information.

318. On or about August 28, 2020 the Plaintiff assigned Tanya Reynolds and Alfreda Walker the task of reviewing and ensuring compliance with the Te-Moak Council, directives required for distribution of the CARES Act checks to tribal members pursuant to the U.S. Treasury guidelines, law and policy.

319. On or about August 28, 2020 Holley instructed the Plaintiff to send a copy of "all the Apportionment documents" to Sypolt so that Sypolt could "prepare and submit a revised Ordinance to the Council." Plaintiff informed Holley that Plaintiff already sent this material on August 16, 2020 to both of Sypolt's email addresses, and the Plaintiff resent the same material to Sypolt again. During a subsequent teleconference with Sypolt that day, the Plaintiff relayed to Sypolt the TMC direction for Dentons to edit and redraft a letter of engagement to include legal representation by Dentons to close the NCE retail store Newe Cannabis.

320. On August 29, 2020 the Plaintiff held a teleconference with Sypolt regarding the July draft Dentons' Engagement Agreement. See, Exhibit III-C(3)(a): Dentons and Te-Moak Engagement (file 115187332\V-1)(July 22, 2020). The TMC stated that the amendment to Dentons' representation must include closure of Newe Cannabis and related issues, and a final draft of that agreement must be delivered to the Plaintiff's office no later than August 31, 2020 to ensure timely submission to the TMC for publication in the September 2, 2020 Council Meeting Agenda packet.

321. On August 31, 2020 Adela Morrison delivered copies of TMHA financial records to the Plaintiff for distribution to the Te-Moak Tribal Council set for discussion at the September 2, 2020 Te-Moak Council Meeting.

322. On or about September 1, 2020 Plaintiff received an email from Sypolt containing a draft copy of the Apportionment Ordinance and Engagement Agreement that included representation by Dentons related to the NCE retail store Newe Cannabis. See Exhibits II-F(2)(a)-(b). Sypolt telephoned Plaintiff to discuss the Apportionment Ordinance revisions and except for the last two emphasized paragraphs, the draft Sypolt submitted was exactly the same document that the Plaintiff wrote, with Sypolt claiming that the emphasized paragraphs were written by "Cameron" McEwen. Plaintiff explained that the emphasized paragraphs probably violated the Tribe's constitution. Sypolt removed that language and then presented the product to the Council, subsequently enacted as Te-Moak Law, from which Sypolt submitted an invoice for services claiming to have drafted and performed all the work on the Apportionment Ordinance. See, Exhibit III-C(4)(c)(4:20 p.m. version).

323. On or about September 7, 2020 Joseph McDade ordered Claudette Ramos to interfere with the Plaintiff's work at Te-Moak by arbitrarily altering the requirements related to TMHA real property regulations, as part of **A5** and **A7**.

324. Claudette Ramos was employed at the BIA subordinate to Joseph McDade, where Ms. Ramos was employed at the GS-5 level based on the knowledge, skills and abilities listed in her federal forms and application. Ramos resigned from the BIA in 2018-2019 and transferred to the BLM, where after a few months the Field Manager was going to terminate her for incompetency. Joseph McDade agreed to rehire Ramos at the BIA. Ramos resigned from the BLM, and Joseph McDade rehired her at GS-12 in late 2019 early 2020 where with the only real change in her employment background consisted of several month's experience at BLM.

325. On or about September 2, 2020 the Plaintiff held a teleconference with Davis Gonzalez regarding the NCE after Gonzalez stated he wanted to present a bill to Te-Moak for payment and to get the repealed Narcotics Ordinance back on the Agenda. Gonzalez stated that the TMC action in repealing the Ordinance was unconstitutional and the Plaintiff replied that the TMC determined that matter was final unless a new Ordinance was presented to the Council. Gonzalez then stated that he wasn't "worried, the Governor is behind us, so we will just let it play out in the courts." When the Plaintiff next asked Gonzalez if Darian Stanford was Elko Band's attorney, Gonzalez became upset and said "that guy is not Elko Band's attorney, he doesn't work for us, he works for Cannabis."

326. In September 2020 David Carrera stated to the Plaintiff that Carrera fired his wife, Tammy Carrera, from an employment position at Battle Mountain Band because she disclosed to tribal members that Carrera transferred federal grant money to a financial entity located in the State of Washington, (WJC), and that Carrera received kick-backs from that action. Plaintiff informed Carrera that he should hire an attorney and that the Plaintiff's role as the Tribal Administrator precluded involvement unless the Council directed the Plaintiff.

327. For the period March 2021 through December 2021 the United States Bureau of Indian Affairs, Environmental Protection Agency and Department of Health and Human Services approved and transmitted federal funds, that were accepted by David Carrera and Joseph Holley, who then routed the funds from the federal government's electronic payment system, "Automated Standard Application for Payment," (ASAP), into and through Wells Fargo Bank, where David Dale Carrera and Joseph Holley transferred or deposited income, revenue or cash proceeds that

were derived, received or originated from the sale and distribution of a controlled substance, marijuana, by the NCE at the retail store Newe Cannabis, along with fraudulently obtained federal funds, as electronic transfers or deposits via ACH involving SALAL, then routed to Wade Cicrich at WJC Financials, 15413 E Valleyway Avenue, Building C, Suite 400; Spokane Valley, Washington 99037, where WJC processed the funds for redistribution and tendered payments to David Dale Carrera, Joseph Holley, Chadwick Smith, Scott Sypolt and Wendall Hayes, with secondary payments to WJC, Joseph Holley and David Carrera.

328.  On September 3, 2020 the Plaintiff carried out the direction of the TMC and informed U.S. BIA Court personnel, Sophia Torres and Felisa Wright, that Dentons represented the Te-Moak Tribe and that Sypolt was the assigned attorney.

329.  On or about September 6, 2020 the Plaintiff received information from Steve McDade that a private investor, "Todd C," was "one of the silent partners. . .and he specifically said Davis is going to resort to extortion" intended to extort favorable votes from Duane Garcia Sr. and Alice Tybo as members on the TMC in favor of the NCE "to keep that store [Newe Cannabis] open" under threat of releasing private, damaging information regarding Alice Tybo and Duane Garcia Sr. See 18 U.S.C. §1512(*intimidate, threaten or corruptly persuade or attempt to do so to influence, delay or evade legal process*) and 18 U.S.C. §1961(1)(A)(*any threat to extort*); e.g. N.R.S. §205.463 (*prohibits any release of this private, nonpublic information*).

330.  On or about September 8, 2020 Sypolt and Holley stated to the Plaintiff that Sypolt was working with SCS attorney Darian Stanford to draft a settlement agreement for the Cannabis lawsuit, Jim et al. v. Elko Band Council et al. Sypolt stated that the proposed settlement agreement will "benefit everyone in the Tribe."

331.  On or about September 9, 2020 Holley directed the Plaintiff to provide Sypolt with a summary of all the funding amounts known to be in the possession or under the control or custody of EBC. Plaintiff sent Sypolt a text message stating "EB Council member showed me a picture with 1.25 million cash as EB 50% share of Cannabis revenue from April 17 to July1."

332.  On or about September 15, 2020 the Plaintiff sent to Sypolt a copy of the Plaintiff's background investigation report from the U. S. Federal Bureau of Investigations, at the direction of Joseph Holley, and that report stated "a search of the Fingerprints provided by this individual has revealed no prior arrest data at the FBI." See Exhibit III-B(2). Sypolt acknowledged delivery and receipt of this email and document.

333.  On or about September 17, 2020 the Plaintiff started receiving specific telephone death threats on his personal cellular phone and on the business/office phone at the Te-Moak Tribal Administration Offices.

334.  On September 20, 2020 Sypolt and Chadwick Smith signed and submitted legal documents, (*in opposition to a court action filed by Te-Moak tribal members who sought to close retail store -Newe Cannabis*), in the BIA Court of Indian Appeals located in Andarko, Oklahoma (*listing an Arizona Bar No. 34756 and Oklahoma Bar No. 8312*), who stated an affiliation with Dentons as the "Attorneys for Te-Moak Tribal Council," when the Arizona Bar Association listed Chadwick Smith's license to practice as "[i]nactive. . .[t]his lawyer is currently unavailable to provide legal services.  This lawyer has chosen to be transferred to inactive status, and may not practice law in Arizona."  Ref. Objection to Motion For Reconsideration at 1, (Jim et al. v. Elko Band Council and Te-Moak Tribal Council), (Case No. APP-21-003).

335.  Sypolt, Chadwick Smith and Dentons failed to provide any written notice or statement to the TMC or the Plaintiff that in July, August or September 2020 Chadwick Smith received compensation for legal services to represent the Te-Moak Tribe or that Chadwick Smith provided legal services and legal representation to or on behalf of the Te-Moak Tribe, and the billing statements Sypolt submitted to the Plaintiff and the Tribal Council fail to show an entry for Chadwick Smith.  Chadwick Smith received compensation from Dentons, Skibine or Sypolt, on behalf of the Te-Moak Tribe and Dentons, at the same time Chadwick Smith received compensation or funds derived or originated from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, as authorized by SCS; Darian Stanford; Davis Gonzalez; Paul Conable; Kevin Clock; Steve Olson and Elliot Parris. The Plaintiff first received notice of Chadwick Smith's filings in the BIA CFR Court in January 2022.

336.  With the approval, knowledge or agreement of  Dentons, Skibine, Sibbison and Sypolt, Chadwick Smith signed and submitted legal documents in the BIA CFR Court via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah that associated Chadwick Smith, and Sypolt as co-counsel, with the law firm Dentons US LLP.  See Notice of Lack of Jurisdiction, Jim et al. v. Elko Band Council et al, (December 1, 2020)(Chadwick Smith as "Attorney for the Tribal Council"); e.g. Notice of Appeal at 4, Jim et al. v. Elko Band Council et al and Te-Moak Tribal Council, (Case No. CIV-20-WR03)(December 3, 2020).  In December 2020 the Te-Moak Tribe's legal counsel of record was Dentons, not Chadwick Smith, and at no time between December 17, 2019 and March 18, 2021 did the TMC issue any

Ordinance, Resolution or Motion that directly employed Chadwick Smith as the "Attorney for the Tribal Council."

337. On September 21, 2020 Plaintiff received a voice message from the US Treasury OIG regarding the Plaintiff's earlier inquiry related to the CARES Act. During a subsequent call the Plaintiff communicated with US Treasury OIG Agent Eric Hyland, and Hyland confirmed that several tribal members filed complaints alleging fraud in the administration of the CARES Act funding at Te-Moak. The Plaintiff informed OIG Hyland of an awareness of the reports and that while no system is perfect, Plaintiff had no direct evidence of the claimed fraud at that time and that the Tribe implemented control measures such as having Reynolds oversee the approved eligibility lists prior to HB and TMC approval and submission for check printing.

338. On or about September 22, 2020 Joseph Holley stated that he set a meeting for September 24th in Wells, Nevada and that Defendant Holley would refer to this meeting as a 'gathering' to avoid legal implications of holding an official TMC Meeting without notice. The Plaintiff stated to Holley that the Plaintiff had other tasks to perform and didn't want to be associated with Sypolt or the cannabis case. Defendant Holley ordered the Plaintiff to attend to "let [Holley] know if Scott starts lying or gets shady about Cannabis without me knowing."

339. On or about September 24, 2020 at the Holley arranged 'gathering' Sypolt introduced Darian Stanford, (*who was sitting directly next to Sypolt and in-between Juan Arevalo and Sypolt*), as the "Cannabis attorney for Elko Band and Cascade Investments," when Tybo quickly stated that Stanford "is not the attorney for Te-Moak and will never be the attorney for Te-Moak." Sypolt then stated that Sypolt and Stanford were "working together closely" on the cannabis court case, (*a case where Elko Band and Te-Moak were in opposition*), and that Sypolt and Stanford had already completed "extensive work on the cannabis issue together." Next, Sypolt openly questioned Council members Holley, Arevalo, Tybo and Woods until they disclosed, without any caution by Sypolt, strategic legal and factual information relevant to the court case against Elko Band and Newe Cannabis to Stanford, including statements that the TMC intended to close the dispensary and nullify Elko Band Council's 638 law enforcement contract, effectively breaking the attorney-client privilege. Sypolt agreed to submit a written contract between EBC and TMC regarding the NCE after Vice Chairman Arevalo and the Plaintiff corrected Sypolt's false assertion that a tribal resolution is considered a contract because under Te-Moak law "a resolution like this is of temporary effect." From September 24, 2020 until March 18, 2021 Sypolt failed to produce any written contract between Elko

Band and Te-Moak related to the NCE as discussed at the 'gathering' in Wells on September 24, 2020, instead Sypolt and Stanford offered 2020-EBC-48 as a substitute for a written contract.

340. On or about September 28, 2020 the death threats against the Plaintiff continued by telephone and text messages, now containing pictures of dismembered body parts. See Exhibit Picture (September 29, 2021).

341. Former NCE employee, Nocona Smales-Hassett, received compensation, income or remuneration, pursuant to **A1, A2, A4** and **A5** agreement, plan or scheme between Skibine; Sypolt; Elliot Parris; Juan Arevalo; Larry Yeager; SCS; Darian Stanford; Kevin Clock; Davis Gonzales; Thalia Marin, where between September 1 and October 1, 2020 Hassett gained unlawful and impermissible entry into Plaintiff's social media account, and altered, deleted, edited content and distributed private information to the Plaintiff's then fiancé' while Hassett falsely claimed to Yeager and other Council members that the Plaintiff openly disparaged and disrespected TMC members. See Exhibit III-A(4): Declaration of Larry Yeager.

342. Plaintiff reported death threats to BIA Law Enforcement Chief Morris, and Plaintiff sent an email to Sypolt identifying NCE/SCS as the source of the threats and events of September 28, 2020 after Plaintiff confronted Smales who stated that SCS wanted to get rid of the Plaintiff. Sypolt instructed the Plaintiff to start carrying "a pistol" and that Sypolt would speak to "the owners and Darian," about the threats and Smales' involvement. Hassett was later terminated for issues related to cocaine use while selling and distributing marijuana at the retail store Newe Cannabis.

343. Sypolt delivered a draft Dentons Engagement Agreement dated October 1, 2020 to the Plaintiff that failed to include a material term to provide representation on behalf of the Te-Moak Tribe related to the NCE cannabis issues involving the BIA-CFR CIO case. Exhibit III-C(3)(b)(file 115835914\V-1 and US_Active\116028876\V-10). This Agreement's Scope of Representation failed to match any of the three (3) versions of the Dentons-Sypolt billing statements of actual work performed, as submitted on December 10, 2020. See Exhibits III-C(4)(a)-(c): Dentons Billing Statement (2:40 p.m. version, 4:16 p.m. version and 4:20 p.m. version).

344. On or about October 5, 2020 the Plaintiff, Joseph Holley and Sypolt held a joint teleconference to address Sypolt's failure to understand Alice Tybo's objection to the continuation of the NCE under the Tribe's Constitution where it states that all official action by the Council "shall not conflict with Federal law." Te-Moak

<u>Constitution, Article 2; see also, Article 4, sections 3 and 14 and Article 15</u>.  The Plaintiff directed Sypolt to Article 4 and Sypolt stated that provision did not "apply to the current case with Elko Band, and this constitution is trash.  I've re-written the entire constitution and we will fix this."  The Plaintiff never received any copy of a re-written draft or copy of the Constitution and at multiple TMC meetings Alice Tybo, David Carrera and Duane Garcia referenced Sypolt's claim and requested copies of the draft amendments to the Te-Moak Constitution and no copy was ever produced or published to the Plaintiff as the Tribal Administrator or to the TMC at any meeting between the period July 2020 through March 2021.

345.   On October 5, 2020 the Plaintiff traveled to NSB and met with Ashley Dewey regarding the continued denial of access to Tribal accounts for the Tribe's CPA firm Hinton-Burdick.  Dewey informed the Plaintiff that Plaintiff's access requests for Hinton Burdick remained at Zionsbank with Brent Waite at the legal department in Salt Lake City, Utah awaiting a decision and direction from Waite and Zionsbank. Plaintiff received information from NSB showing multiple, previously unknown accounts and funds at Zionsbank and NSB assigned to the Te-Moak Tribe, while NSB continued to withhold information on other accounts at Zionsbank and NSB.

346.   On or about October 12, 2020 Erica Jim, an employee at the NCE retail store Newe Cannabis reported to SCS and federal law enforcement that she received a telephone call from someone claiming to be an agent at the Nevada Cannabis Compliance Board who instructed Jim to remove all of the cash in each sales register, except $200.00 to remain in each register, and then surrender the total amount removed, (*approximately $12,000.00*), to a state agent by leaving it in a trash can after converting the cash to gift cards that Erica Jim purchased from Walmart.  Conor Ramsey gave a statement to federal law enforcement that the money stolen was derived or originated from the sale of marijuana by the NCE at the retail store - Newe Cannabis.  AUSA Fahami refused or failed to prosecute or investigate.

347.   On October 14, 2020 EBC enacted <u>2020-EBC-48</u> as a proposed settlement agreement to the ongoing cannabis court case that states and provides:

   a.   TMC will use cash, income or "revenues" derived or originating from the sale and distribution of a controlled substance, marijuana, at the NCE retail store –Newe "to establish an independent judicial system, independent law enforcement, and strong lobbying and government relations teams nationally and in Nevada;"

  b. EBC agrees to permit Sypolt and Stanford "to draft revisions to the Te-Moak Constitution . . . [r]emoving or revising language referencing federal law;"

  c. "[C]reating a 'Bank Account Commission' that is comprised of Sypolt, Stanford, Holley, Hinton-Burdick and Leslie Grove-IBSC; and

  d. "this resolution shall remain in effect for the duration of Elko Band's Compact with the State of Nevada." See **A2**; also, 2021-EBC-03 (*rescinding 2020-EBC-48 because it violated "the Te-Moak Constitution"*)(January 11, 2021).

348. On October 14, 2020 the NCE produced a written report, Newe Cannabis Distribution Log, pursuant to the **A2**, **A4** and **A6** agreement, plan or scheme between SCS; EBCE; Robin Evans; Leslie Grove; Paul Conable; Steve Sisolak; Aaron Ford; Steve Olson; Juan Arevalo; Davis Gonzalez; Thalia Marin, Larry Yeager; Darian Stanford; Kevin Clock, and others, that states, (*once the undisclosed pre-count 'partner's share' is divided, subtracted and deducted from the gross income amount*), the claimed net income for the third quarter 2020, (*spanning July 1, 2020 through September 30, 2020*), totaled an even "$1,500,000.00" with the "EBCE" half-share equaling "$750,000.00" and the "SCS" half-share equaling "$750,000.00," as required by **A6** ("SCS 50% ECBE 50%"). See Exhibit II-B(2). The numbers, figures and amounts in the October 14, 2020 report fail to match the numbers, figures and amounts Kevin Clock reported to Davis Gonzalez that was derived, received, recorded or originating from the sale and distribution of a controlled substance, marijuana, involving the NCE for this same period of time, which Clock stated to Gonzalez that the SCS 50% equaled "1 million seven hundred thousand."

349. On October 27, 2020 the Plaintiff met with Juan Arevalo who stated to the Plaintiff that the BIA CFR Court records show that Sypolt failed to file a timely Answer for TMC in the Cannabis lawsuit after service of process. Plaintiff informed Holley and Sypolt, with Sypolt stating "Harlan doesn't know what she's talking about because I filed an answer." Plaintiff contacted the BIA Court and Felisa Wright stated that no Answer was filed on behalf of the Te-Moak Tribe, just a motion to extend time.

350. On October 27, 2020 White Cloud President Joe Shelton stated that his staff identified a 20MB data bandwidth line spliced off the Tribe's internet line, redirecting, cloning or copying all communications to an unknown server in Arizona. The Plaintiff instructed White Cloud, whose staff were rebuilding the internet and telephone systems to "cut the line." Plaintiff learned that Bryan

Bowker is in Phoenix Arizona and who possesses specialized training in computer sciences related to this type of activity.

351.   On or about October 29, 2020 Joseph Holley directed the Plaintiff to "write" Sypolt and express the Council's concern that Sypolt was failing to accomplish the contractual obligations related to the Tribe's Constitution; Billing; the Cannabis court case; the Cannabis Compact Agreement and TMC disapproval with Elko Band Resolution 2020-EBC-48.  The Plaintiff wrote Sypolt outlining these concerns and Sypolt stated that he would address these concerns "with Council, not with you."

352.   On October 31, 2021 Alice Tybo sent or transmitted a text message to the Plaintiff that stated "Sam you are such a good person!!!"

353.   On or about November 3, 2020 Sypolt filed an Answer to a civil action as his first responsive filing in the BIA-CIO Court wherein Sypolt failed to assert a challenge to the court's jurisdiction based on sovereign immunity or venue. .

354.   On November 11, 2020 Veronica Huerta, (*who at the same time was an SCS, EBC, EBCE and TT representative, agent or employee*), transmitted or sent an email to the Plaintiff, as the Tribal Administrator, on behalf of EBC seeking reimbursement from TMC for a debt to Elko County Dispatch.  See Exhibit II-B(5).  This email included billing statements from Elko County seeking payment of a debt from EBC totaling $20,937.50.  Id.  The Plaintiff presented the request and documents to Joseph Holley who refused to place the matter on the TMC Agenda stating "I don't know what money at Elko Band is cannabis or not, so tell her no, denied."

355.   On November 15, 2020 Joseph Holley sent or transmitted a text message to the Plaintiff via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah that stating Holley authorized expending and then expended $100,000.00 in CARES Act federal funds by transferring $14,000.00 to Battle Mountain Band's "heating assistance" program recipients and "[$]86,000 was distributed to BM voters."

356.   On or about November 18, 2020 while in Salt Lake City, Utah Tanya Reynolds, Joseph Holley and Sypolt agreed to enter and execute material terms contained in or a part of an **A2, A4** and **A5** agreement, plan or scheme with Steve Sisolak; Aaron Ford; Bryan Bowker; Joseph McDade; Davis Gonzalez; Chadwick Smith; Darian Stanford; Skibine; Paul Conable; Kevin Clock, (*and later according to Carrera implicated U.S. Senator Catherine Cortez Masto assisting in the performance*), who agreed to falsify or forge information and documents, including the Plaintiff's

signature; to release confidential, private information about the Plaintiff into the public to discredit and either terminate or force the resignation of the Plaintiff from his employment with the Tribe; to obtain a new **A2** from Governor Steve Sisolak for the Te-Moak Tribe and obtain criminal immunity for the NCE from Aaron Ford; to transfer land from Te-Moak to Elko Band and assist Elko Band receive rapid federal recognition as its own tribe; to obtain immunity from criminal prosecution and protection from arrest by federal law enforcement from the United States Attorney's office in Reno; to obtain false statements from Te-Moak staff and tribal members to obtain the Plaintiff's resignation or termination as the Te-Moak Tribal Administrator; to organize, build and fund the Te-Moak tribal court system with NCE funds; to use revenue, income or cash proceeds from the NCE to deposit, transfer or provide untraceable cash donations to Sisolak, Masto, Ford, Garrand, routed through or to ECDCC, who agreed to support the NCE involving SCS; Stanford; EBCE; Sypolt; Holley; Conable; Carrera; Clock; Davis Gonzalez, and others; to create and use tribal government systems to launder the cash proceeds from the NCE using various financial institutions, credit cards and federal grant program funds and then assess a fraudulent and non-existent tax rate on the unlawful sale and distribution of a controlled substance, marijuana, at the NCE, with Holley, Stanford and Sypolt collecting the tax revenue for personal use with the intent or purpose to violate or attempt to violate <u>21 U.S.C. §841</u>, <u>26 U.S.C. §7201</u>, <u>18 U.S.C. §1341</u>; <u>18 U.S.C. §1343</u>; <u>18 U.S.C. §1344</u>; <u>18 U.S.C. §1952</u>; <u>18 U.S.C. §1956</u>; <u>18 U.S.C. §1957</u>; <u>31 U.S.C. §5138(h)</u>; <u>18 U.S.C. § 1960</u> and the <u>Te-Moak Constitution, Article 4, sections 3, 4 and 12.</u>

357.  On or about November 18, 2020 the Plaintiff stated to Sypolt that Tanya Reynolds' belligerent text and telephone calls to the Plaintiff constituted insubordination, and apart from her being on leave the Plaintiff would terminate Reynolds. Sypolt stated to the Plaintiff that Sypolt was on "great terms with Tanya, I talk to her every day. Let me speak to her and smooth this out." On or about November 18, 2020 Joseph Holley stated to David Carrera that "Scott and Tanya told me that Sam has to go and we need to act fast or he's going to screw everything up."

358.  On November 18, 2021 the Plaintiff communicated with R. McKay Hall at Hinton-Burdick and requested an urgent teleconference with his team regarding CARES Act issues related to Alfreda Walker and Tanya Reynolds, specifically it appeared that Reynold and Walker were not following the policies in place to control and mitigate fraud or that satisfy the U.S. Treasury Guidelines for CARES Act distributions. During the teleconference with the Hinton Burdick Team, the Plaintiff disclosed that

it appeared Tanya Reynolds, Alfreda Walker and Clarinda Oppenhein, possibly others, were editing the list of qualified applicants for CARES Act funding after the Plaintiff approved the list by removing all related documents and computer information filed at Te-Moak related to tribal members Reynolds, Walker or Oppenhein disliked. This appeared in some cases to be true because some tribal members provided copies of receipt stamped documents they submitted when the computer log lacked any information; and that Tanya Reynolds, Alfreda Walker and Clarinda Oppenhein included the names of tribal members they favored and who failed to timely submit documentation and information to qualify for CARES Act funding, without the Plaintiff knowledge or approval, with the intent or purpose to blame the Plaintiff, Hinton-Burdick and Jesse Meyers to retaliate for Meyers and the Plaintiff identifying fraud or misappropriation of federal funds by Tanya Reynolds, in the EPA Program, and notifying Reynolds' EPA Grant Manager and TMC of Reynolds' misconduct, as part of **A5**.

359. On November 20, 2020 Alice Tybo publicly stated at a TMC Meeting that "Darian Stanford is not the attorney for the Te-Moak Tribe," when Sypolt and Darian Stanford were present to address the Council regarding the BIA CFR Cannabis court case. For the second time TMC drafted a resolution that Sypolt and Stanford jointly authored and presented regarding the sale and distribution of a controlled substance, purporting to answer 2020-EBC-48. The second proposed resolution was again rejected for failure to follow basic formatting requirements.

360. On November 20, 2020 Alice Tybo stated in a text message during the TMC meeting stating "Scott had all day yesterday to reformat the resolution," and failed again.

361. On November 20, 2020 Eide Bailly, (*CPA accounting firm hired by TMHA*), produced and submitted a Financial Management Analysis Report that states the TMHA Board of Commissioners "elected to omit substantially all of the disclosures required by accounting principles generally accepted in the United States of America," without identifying the Avantax account, and then states TMHA earned "$1,141,216[.00]" in FY 2020 from the net cash proceeds and equivalents and from that amount TMHA received "$686,002[.00]" as its "Net Cash" as a not-for-profit entity after only receiving "$243,279[.00]" for the entire prior year. Defendants Davis Gonzalez and Adela Morrison deposited and transferred cash proceeds from the NCE into TMHA to hide, prevent disclosure or launder the characteristics of the cash.

362. On or about November 23, 2020 Joseph Holley stated to the Plaintiff and TMC that a serious health condition left him without any income, vacation and sick leave

remaining with his employer, Marigold Mine, and that Holley agreed to work a 40 hour work week at Te-Moak if the TMC agreed to pay Holley a wage. The Plaintiff advocated for this position based on the assertions of Holley, and the TMC agreed and set his wage at $750 for each 40 hour work week Holley worked, for a maximum of six (6) months, to be paid out of federal program funds.

363.   On November 23, 2020 the TMC delegated Te-Moak Constitutional authority and created the Te-Moak Judicial Branch of government by <u>Resolution 20-TM-129</u>. Sypolt stated that "Chadwick Smith" would be helping Sypolt "draft the law and order code." Plaintiff asked Sypolt "why, the Tribe hired the world's largest law firm and paid you, plus the Tribe already has a law and order code?" Sypolt expressed a lack of knowledge and replied "I didn't know there was a law and order code, when was that enacted?" The Plaintiff responded "it was approved by the United States in 1989." This was the first instance the Plaintiff heard the name Chadwick Smith.

364.   On or about November 23, 2020 the Plaintiff informed TMC, at a public Meeting, that Plaintiff's office identified several anomalies in the CARES Act Programs, where it appeared Te-Moak Personnel altered documents and computer information to enable otherwise ineligible individuals to obtain funds and some eligible members were denied funds. Without disclosing the names of those involved, (*Tanya Reynolds, Alfreda Walker and Clarinda Oppenhein*), the Plaintiff explained to TMC that staff members were including names of those they favored during elections onto a list, after approval and before submission, without the Plaintiff's knowledge or permission, when those individual's names were deemed ineligible, and it appeared staff were deleting the names of some tribal members who were disfavored during elections, who were otherwise eligible, by these staff members. At that time the number of individuals involved totaled about 42 or $42,000.00, with dozens more that lacked sufficient evidence or information to ascertain whether they were eligible or not due to the deletions of files and data.

365.   On November 24, 2020 the Te-Moak Tribal Council gave formal notice to the United States Bureau of Indian Affairs that the TMC delegated tribal constitutional authority by creating and establishing the Te-Moak Tribal Court System.

366.   About November 24, 2020 Holley entered a hospital in Utah for heart surgery.

367.   On December 1, 2020 Sypolt filed a "Notice of Lack of Jurisdiction" that was nearly identical to a document filed by Darian Stanford, as stated by the BIA-CIO judge who remarked the two attorney's individual submissions were virtual mirror images of

each other and both filings included a copy of <u>Te-Moak Resolution 20-TM-129</u> claiming to remove subject matter jurisdiction from the BIA for all Te-Moak civil court cases.

368. On or about December 1, 2020 Aaron Ford authored, prepared, drafted or authorized the preparation and submission, publication and mailing of a written communication, from the campaign of Aaron Ford For Attorney General to Elko Band Colony Chairman Davis Gonzalez, thanking Davis Gonzalez for the "Te-Moak Tribe of Western Shoshone's **generous contribution** . . .[promising] to help protect Nevadan families from harm, scams, and injustice . . .[under Ford's] top three priorities. . .constitutional & civil rights, consumer protections, and criminal justice . . ." <u>Exhibit II-C(4):  Aaron Ford Receipt Letter</u> (December 1, 2020)(emphasis added).  Davis Gonzalez bragged to the Plaintiff that Davis Gonzalez gave Aaron Ford "50 grand" from Newe to "keep supporting our cannabis program."  The Te-Moak Tribe and its Bands did not authorize or provide any campaign contribution to Aaron Ford from federal program funds.

369. On or about December 2, 2020 the Plaintiff and Sypolt discussed the Te-Moak court case involving the NCE when the topic changed to Tanya Reynolds' need for a raise, which Sypolt claimed originated from Holley, Reynolds' paramour.  Plaintiff informed Sypolt that due to Reynolds' abusive text messaging while she was staying in Salt Lake City she may not have a job.  Sypolt stated he has "a tight leash on Tanya, we're really good friends."  Sypolt then stated that Dentons had Utah Governor Spencer Cox, Nevada Governor Steve Sisolak, Nevada Attorney General Aaron Ford and John Assuaga on Dentons' payroll as lobbyists and consultants, stating "I will reach out to them and they will help in any way we need with this court system."

370. On December 2, 2020 the TMC enacted <u>Resolution 20-TM-132</u> stating that Te-Moak adopted the <u>Te-Moak Records and Information Retention Policy</u>, incorporating the <u>Privacy Act</u>, <u>(5 U.S.C. §552 et seq.)</u>; <u>42 U.S.C. §13925(b)(2)</u>; <u>2 C.F.R. §200.207 and §200.338</u>, *inter alia*, and supplementing the Tribe's <u>Confidential Information Policy & Procedures</u> (enacted by <u>Resolution 03-TM-13</u>) that states "[p]ersonal Information shall be exempt from disclosure to protect important confidential information of the tribal members/employees – except by written authorization from the individual concerned."

371. On December 3, 2020 the Plaintiff responded to a question regarding Section O of the Foreign Corrupt Practices Act, <u>15 U.S.C. §§78dd-1 et seq.</u>, from Defendant Alice Tybo stating that "the FCPA has five elements . . ."

372. On December 4, 2020 Sypolt sent the Plaintiff an email stating that Joseph Holley lacked any knowledge regarding the U.S. Department of Interior Office of Hearings and Appeals Mediation Case.  U.S. Dept. of Interior Office of Hearings and Appeals, ALJ Heffernan officiated with Mediator Latimer and Solicitor General Reudas conducting proceedings with the Te-Moak Tribe since 2017.  Ref. Docket No. ISDA 2017-01.

373. On December 7, 2020 Sypolt failed to appear or defend the Te-Moak Tribe before the BIA CFR Court at a scheduled trial, and on December 11, 2020 a Default Judgment issued against TMC and the court issued a fine against Sypolt personally in the amount of "$2,993.58."  Order Granting Default, (Case No. CIV-20-WR03).  Plaintiff received a copy of this Order from Felisa Wright and immediately relayed a copy to each member of TMC.  Sypolt telephoned the Plaintiff and ordered Plaintiff to "stop sending court orders to the Council, only send them to [Sypolt] and [he] will decide what court documents go to the Council."

374. On December 10, 2020 Sypolt transmitted three (3) versions of Sypolt's Dentons billing statements, (*2:40 p.m., 4:16 p.m. and 4:20 p.m.*), for claimed services performed while representing the Te-Moak Tribe, and every submitted version failed to contain a specific indication for the total time expended on each issue, topic or subject identified therein.  See, Exhibits II-F(4)(a)-(c).

375. Four (4) separate draft versions of Dentons and Te-Moak Engagement Contracts were presented to the Plaintiff.  See Exhibits II-F(3)(a)-(d).  Of the four (4) agreements there are only three (3) different file identifies from Dentons (115187332\V-1; 115280113\V-1; 115835914\V-1), and all four (4) include a second page header with identifiers not related to the document presented.  Id.  The First (July 22, 2020 for $200,000.00) includes "Mr. Terry McEwen April 28, 2020;" the Second, (October 1, 2020 for $600,000.00), states "Joseph Holley August 10, 2020;" the Third, (December 11, 2020 for $300,000.00), states "Joseph Holley August 10, 2020;" and the Fourth, (December 11, 2020 for $200,000.00 CARES), states "Joseph Holley August 10, 2020," where all four (4) contain a typewritten name for Dentons "By:  J. Ross Docksey, Partner."  Id.

376. On December 10, 2020 the Plaintiff received an email from Sypolt and Dentons containing the 4:20 p.m. version of Dentons-Sypolt billing statement that included the following statements for September and October 2020:

a. "Call from Elko Attorney Darian Stanford to discuss Cannabis Law suit pending before the Te-Moak CFR Court;"

b. "Review Entire Cannabis Lawsuit Court File (100 pages); Review of Pleadings; Review of Related Statutes and Related Case Law;"

c. "Review of Legal Steps taken by Elko Band to Implement Cannabis Dispensary; Review of Resolutions and Ordinances; Review Consensus Poll taken with Elko Tribal Residents;"

d. "Review of Federal Case Law on Legality of Elko Dispensary; Review of Case Law on Medical Cannabis versus Recreational Cannabis; Review of State Law on Cannabis and Pending Federal Law on Legalization of Cannabis; Review of State Laws that allow Sale of Medical and Recreational Cannabis in their respective States Despite Federal ban on Sale of Cannabis; Review of Federal Policy of 'Don't Ask, Don't Tell, Non-Enforcement of Prosecuting Cannabis Medical and Recreational Sales in States; Review of Federally Recognized Tribes Selling Cannabis Despite Federal Ban; Review of the Constitutions of those Federally Recognized Tribes to Allow for the sale of Medical and Recreational Cannabis;"

e. "Multiple Phone Calls from Darian Stanford (Cannabis Attorney for Elko Band) on possible Settlement terms of Cannabis Lawsuit;"

f. "Discussions with Te-Moak Chairman, Te-Moak Tribal Administrator and Members of the Te-Moak Council on possible Settlement of Cannabis Lawsuit; Discussion of desired Terms including but not limited to Apportionment Agreement, Tax, 5 Buildings in Lower Elko Colony;"

g. "Discussion with Darian Stanford pertaining to the Te-Moak Constitution Conflict regarding the Elko Band Cannabis Dispensary;"

h. "Discussion of Legal Relationship between Elko Band and the Cannabis Company that established the Elko dispensary;"

i. "Discussion of the Legality of the State of Nevada Cannabis Compact with Elko Band;"

j. "Legal Conversation regarding Sovereign Cannabis Solutions [SCS];"

k. "Read and Research Federal Case Law on Article Eight of the 1982 Te-Moak Constitution pertaining to the Tribal Judicial Branch of Government . . .Federal Case Law on the Final Interpreters of the Tribal Constitution and on Tribal Laws, Ordinances and Resolutions; Federal Case Law on Terms of Judicial Office; Federal Case Law on Tribal Judges; Required Qualifications, Compensation. . .Federal Case Law on the Legal Process to Recall Tribal Judges; Removal of Judicial Officers;"

l. "Read and research Federal Case Law on Article 9 of the 1982 Te-Moak Constitution. . .Federal Case Law Against Taking Property Without Just Compensation. . .Equal Protection . . .[and] Due Process of Law;"

m. "Necessary Legal approval of the Secretary of the Interior for All Leases, Permits, Assignments and/or contracts on Tribal Lands;"

n. "Review of Te-Moak Law and Order Code; Matching Federal Case Law Requirements to Each Article within the Te-Moak Law and Order Code. . .Study the Legal Elements necessary to Create the Te-Moak Tribal Court of Original Jurisdiction and Te-Moak Tribal Court of Appellate Supreme Court Jurisdiction; Match Legal Requirements in the 1982 Te-Moak Tribe of Western Shoshone Indian[s] of Nevada Constitution . . .Research Structure of Courts and possible selections of Tribal judges, Tribal Clerk, Tribal Bailiff, Tribal Prosecutor, Tribal Public Defender . . . $127,000.00." Exhibit III-C(4)(c).

377. On December 10, 2020 the Plaintiff received an email from Sypolt and Dentons containing the 4:16 p.m. version of Dentons-Sypolt billing statement that is an almost mirror image of the subsequent 4:20 p.m. version seeking "$127,000.00" and the 4:16 p.m. version includes the exact language, topics, subjects, references and items as the 4:20 version, only the 4:16 version assesses a fee of "$200,000.00" for the same services rendered billed to the Te-Moak Tribe by Sypolt for the same period of time. Exhibit III-C(4)(b)[-(c). The "$200,000.00" payment was sought by Dentons and Sypolt pursuant to the CARES Act justification memoranda to support the payment from the Te-Moak Tribe through federal funds administered through the CARES Act Programs at Te-Moak. All three versions of the billing invoices lack legitimate or actual CARES Act work by Sypolt or Dentons for the Te-Moak Tribe.

378. On December 10, 2020 the Plaintiff received an email from Sypolt and Dentons containing the 2:40 p.m. version of Dentons-Sypolt billing statements that is almost a mirror image of the two subsequent versions, (4:16 p.m. and 4:20 p.m.), and the

2:40 version includes the exact language, topics, subjects, references and items as the other versions, for the same services rendered and billed to the Te-Moak Tribe by Sypolt for the same period of time, albeit the 2:40 p.m. version stops as though the keyboard ceased working in mid-sentence. Ref. Exhibits II-F(4)(a)-(c).

379. On December 11, 2020 the Plaintiff delivered to each member of the TMC a true and correct copy of the Dentons-Sypolt CARES Act expenditure memorandum justifying the payment of $200,000.00 with CARES Act funds to Dentons, and that document asserted that the expenditure is allowable if and only if an attorney actually works on CARES Act issue. The CARES Act Program expenditures deadline was set by the federal government as December 29, 2020 and as of December 11, 2020 Sypolt and Dentons failed to perform legitimate or actual services related to the Tribe's CARES Act Programs on behalf of the Te-Moak Tribe, as shown and reflected in all three (2) versions of the billing statement submitted on December 9-10, 2020. Id.

380. On December 11, 2020 at a TMC meeting conducted via the internet and other electronic means through the Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah, (Joseph Holley was in a Utah hospital), after review and discussion of the Dentons justification memoranda for the CARES Act expenditure, ($200,000.00), the TMC agreed and authorized the execution of two (2) new contracts with Dentons. Resolution 20-TM-139 states that Dentons will receive "$200,000.00" from CARES Act federal funds, as a security retainer, "for legal services on behalf of the Te-Moak Tribe specific to the use of CARES Act funding and expenditure." Sypolt received the $200,000.00 payment to Dentons on or about December 16, 2020 and left on a month long vacation December 18, 2020 and the federal CARES Act expenditure deadline was December 29, 2020.

381. On December 11, 2020 at a TMC meeting conducted via the internet and other electronic means through the Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah, (Joseph Holley was in a Utah hospital), the TMC agreed to the execution of the second contract with Dentons. Resolution 20-TM-140 states that Dentons will receive "$300,000.00 to be expended from the RAMAH Account," held at Zionsbank and NSB, to perform the following legal services for the Te-Moak Tribe:

   a. "(1) research and drafting of documents to create and establish a Te-Moak Court System of Original and Appellate Jurisdiction;"
   b. (2) research and drafting of new and updated Te-Moak Legal Civil Code;
   c. "(3) research and drafting of new and updated Te-Moak Rules of Civil Procedure;"

    d. "(4) research and drafting of new and updated Rules of Criminal Code;"

    e. "(5) research and drafting of new and updated Rules of Criminal Procedure;"

    f. "(6) Work with the Te-Moak Council to attract new economic development to the Tribe;"

    g. "(7) Initial Investigation and Presentation of Te-Moak Water Rights (Initial Stage);"

    h. "(8) Initial Investigation and Presentation of Ruby Valley Treaty Rights (Initial Stage);"

    i. "(9) Recruiting and Hiring of Qualified Tribal Court Personnel;"

    j. "(10) Input from Council Members and Continued Amendment of Te-Moak Constitution;" and

    k. "(11) Daily availability for minor day-to-day questions," and authorizing Chairman Holley to affix his signature and the language failed to allow for retroactivity of the services, payment or billing.

382. On information or belief Juan Arevalo, as the Vice Chairman and J. Ross Docksey, as Dentons partner, signed and executed the Dentons agreements pursuant to TMC Resolutions 20-TM-139 and 140. As of December 18, 2020 Dentons received three (3) checks from the Te-Moak Tribe totaling $627,000.00 for legal services in four (4) months. Ref. Exhibit III-C(2). Dentons, Sypolt, Skibine, Sibbison and Chad Smith knew or should have known the two (2) exclusive, constitutional qualifications for a Te-Moak judge and the removal procedures under the Te-Moak Constitution.

383. On December 11, 2020 at a TMC meeting conducted via the internet and other electronic means through the Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah, (*Joseph Holley was in a Utah hospital*), Sypolt stated to the TMC that completion of all matters related to the Court system will take Sypolt and Dentons 2 months and that it will take 1 year to complete the necessary work related to the Tribe's Water rights. As of March 1, 2022 the Te-Moak court system and water rights issues are incomplete, and the water rights issues for the tribe remain in the same condition as March 2021, unsettled and unresolved.

384. On December 11, 2020 the TMC voted to approve and accept the CARES Act justification expenditure memorandum provided by Sypolt and Dentons in support of payment with CARES Act federal funds pursuant to Resolution 20-TM-143.

385. On December 11, 2020 Scott Sypolt, an attorney with Dentons, sent the Plaintiff a text message via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah that states "[y]ou and Joe [Holley] are Great Leaders!"

386. On December 11, 2020 Davis Gonzalez and David Carrera demanded that Sypolt provide a detailed billing statement for all legal services and expenditures since July 2020 because both Dentons and Sypolt failed to provide Council with a detailed hourly billing statement. Larry Yeager and Juan Arevalo agreed that the TMC needed an itemized billing statement from Sypolt, to the Plaintiff, who in turn was directed to relay the same to each Council member when received from Dentons and Sypolt. The Plaintiff again transmitted copies of the documents the Plaintiff received from Sypolt, (December 9-10, 2020), informing the TMC of the same and describing the Plaintiff's attempts to work with Sypolt on multiple occasions to get resolution, compliance or compromise with the billing issues.

387. On December 11, 2020 the Plaintiff received a text message from Sypolt stating "just got off the phone with Governor Sisolak, please call me." Exhibit III-D(9): Sypolt-Biers Text. During a subsequent call Sypolt stated that Steve Sisolak re-affirmed prior material terms entered into between Sypolt, Dentons, Sisolak and Ford regarding the NCE outlined during the October and November 2020 discussions between the same individuals: Governor Sisolak agreed to enter into a new Cannabis Compact with the Te-Moak Tribe named as the proper party because Davis Gonzalez falsified material information in the existing Compact; that Sypolt needed funding from the Tribe for Sisolak and others to "grease the wheel and make sure this goes through quickly; " that "the Darian Stanford and SCS's owners agreed to pay the Tribe its taxes" based off the sale and distribution of a controlled substance at Newe Cannabis "if the Council changes the cannabis law then SCS will agree to continue to donate significant amounts to the Governor and his friends, who are our friends, so we can continue. This is a great day for the Tribe;" and that Dentons kept "Utah's former Attorney General onboard and he's now the Utah Governor and he also happens to be good friends with Nevada's Attorney General who also worked for Dentons, so I will be working with them both." The Plaintiff contends that during this discussion Sypolt, Sisolak and Ford agreed to continue the A5 agreement, plan and scheme to terminate the Plaintiff's employment to preserve and protect the continuation of the NCE.

388. On December 12 and 13, 2020 Davis Gonzalez began distributing $1,000.00 cash derived or originating from the sale of marijuana at the retail store - Newe Cannabis, to each eligible Elko Band member who resided on Elko Band Colony and who personally appeared on federal, tribal land in Elko. EBC, not EBCE, expended a total amount of $399,000.00 during this process to a reported 399 Elko Band members. Plaintiff personally appeared at the EBC on December 13, 2020 to have Juan Arevalo

sign unrelated checks for Te-Moak.  EBC members, SCS representatives and NCC members were personally counting the cash proceeds, (*after the 'partner's share' had been deducted*), and pursuant to **A6** the claimed EBCE half share net amount equaled $420,000.00, ( 50%-50%), from that amount  $399,000.00 was distributed, in $1000 increments, leaving a remainder of $21,000.00 from the NCE proceed net amount.

389.   On December 14, 2020 Alice Tybo sent or transmitted a text message to the Plaintiff via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah that states "[d]id the judge [Harlan] receive Scott's filing late or is she lying?  I wouldn't put it past her. . .Scott said not to worry about the judge's order.  I'm not!!" Sypolt failed to provide timely documents or information regarding Tybo's request with the intent to hide Chad Smith's involvement with SCS and TT on behalf of Dentons and to cause a delay as a pressure technique to obtain the $500,000.0 payment.

390.   On December 15, 2020 Sypolt telephoned the Plaintiff demanding the immediate payment of $500,000.00 or Dentons "will withdraw," giving instructions to send the money to Sypolt's home address "7903 Bayview Drive; Wonder Lake, IL 60097." The checks were sent and delivered to that address via United States Postal Service express mail.

391.   On or about December 15, 2020 the Plaintiff received a copy of an endorsed CARES Act check for "Herbert Knight," and the check endorsement contained multiple names and signatures that failed to match the application signature and name. Plaintiff transmitted a copy of both documents to Hinton Burdick in St. George, Utah and authorized that firm to submit a fraud report with law enforcement.

392.   On December 16, 2020 Davis Gonzales ordered Finance Department to deposit $21,000.00 of ECBE cash derived or originating from the sale and distribution of a controlled substance, marijuana, by the NCE at the retail store-Newe Cannabis, into Zionsbank and NSB account for EBC.  Davis Gonzalez, again without EBC authorization or knowledge, ordered the payment of Elko County Dispatch Bill in the amount of "$20,937.50" after Zionsbank processed the $21,000.00 cash deposit via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, through Zionsbank/NSB and SALAL, when Davis Gonzalez failed or refused to disclose the actual character of the funds as unlawful cash, income or revenue to Elko County Dispatch.  Exhibit II-B(5).  The payment receipt states that the payment was drawn in an amount of  "$20,937.50" for an "Outstanding Dispatch Bill from Te-Moak 2018."  Id: Elko Band Check Receipt #89132 (December 16, 2020).

393. On December 17, 2020 Bryan Bowker signed a document received by TMC on or about January 27, 2021 acknowledging receipt of "Resolution No. 20-TM-129" creating and establishing the Te-Moak Court system. Bowker, without lawful authority, with the intent or purpose to interfere or cause injury to the Plaintiff pursuant to **A5**, declared and invented a false legal standard requiring the BIA's acceptance of the Tribe's new court system. Exhibit II-C(5); see Carris LaRoque, et al v. Aberdeen Area Director, 29 BIA 201(1996)(*BIA should avoid interpreting tribal law with absurd result*); e.g. Cheyenne River Sioux Tribe v. Aberdeen Area Director, 24 IBiA 55(1993)(*review of tribal ordinances is an intrusion into tribal self-governance and disapproval is permissive only when ordinance conflicts with Federal law*). Bowker sent a copy of Exhibit II-C(5) to Joseph McDade.

394. On December 18, 2020 Sypolt telephoned the Plaintiff and stated that Sypolt received two (2) checks, one (1) $200,000.00 check and one (1) $300,000.00 check, both drawn on Zionsbank instruments, in the mail at his home address on behalf of Dentons. During this telephone call Sypolt stated that his family and Sypolt were at the airport leaving for the "Caribbean" for the holiday. Sypolt later stated they remained in the Caribbean for approximately 32 days, returning on or about January 20, 2021. The Te-Moak Tribe's CARES Act Programs finished all primary functions as of December 30, 2020, except for an amount held in reserve for pending predetermined distribution processes, the final accounting and reconciliation reports.

395. In January 2021 Juan Arevalo stated to the Plaintiff that "I got my Player's Club annual statement and in 2020 it said I lost over 45 thousand." Plaintiff stated "you didn't earn 45 grand in 2020 and you have two kids, how is it possible to spend 45 thousand gambling?" Juan Arevalo walked away without answering. The Player's Card is a point based benefit recording system at the former Red Lion Inn and Casino, and after the purchase of the Red Lion by Maverick, a Washington entity, the electronic system automatically transferred the stored, accrued data for each account as part of the purchase agreement with the Red Lion Inn and Casino.

396. On January 4, 2021 EBC Finance Department produced an EBC "Expanded General Ledger" report showing "Unposted Transactions Included In Report" for the period August 1, 2020 through December 31, 2020 at the direction of Susan Zuzueta, as approved and authorized by Davis Gonzalez. Exhibit II-B(3).

397. On January 4, 2021 the EBC Expanded General Ledger states that expenditures were made referencing: "Other Enterprise," "Law Enforcement" and "RIBAO BCS-160

BANK GRADE Nevada State Bank Commission Expense," *inter alia*, totaling "$151,839.31," adjusted with a credit of "$23,396.76," resulting in a remainder of "$128,422.55" with a handwritten note immediately adjacent to that amount stating "remaining amount owed to EBC" from the NCE and SCS.  Exhibit II-B(3).  The "[o]ther Enterprise" is the NCE, and this Ledger shows that Zionsbank and NSB knowingly received a "Commission" or that Zionsbank and NSB were knowingly receiving funds from the NCE by way and through expenditures at the NCC for the NCE.  This Ledger shows NCE expenditures of cash, revenue or income derived from or originated from the sale of a controlled substance at the NCE retail store Newe Cannabis, and that EBC maintained and managed those funds, in an amount here, equaling $151,839.31, where that amount is absent from the other financial records for the NCE.  Exhibit II-B(3).

398.  On January 12, 2021 Veronica Huerta personally delivered a written request from Davis Gonzalez and Susan Zazueta to appear before the TMC at a meeting on February 3, 2021 and to request reimbursement of $20,937.50 for the Elko County Dispatch debt.  See Exhibit II-B(5).

399.  On January 12, 2021 Ms. Huerta included a letter from Davis Gonzalez and a payment receipt, dated December 16, 2020, that states EBC paid "$20,937.50," and that Elko Band sought reimbursement from the Te-Moak Tribe.  Id:  Elko Band Check Receipt #89132 and Gonzalez-Holley Letter (January 12, 2021)(EBC file stamp 000102)(*sent via USPS to BIA-WRO Glenn Shafer*).  The documents included in this mailing failed to state that money used to pay Elko County Dispatch was derived or originated from the sale and distribution of a controlled substance, marijuana, by the  NCE retail store-Newe Cannabis.  EBC sent notice to the BIA-WRO, which at that point had actual knowledge of money laundering at EBC involving the NCE.  Id.

400.  The EBC request included documents showing that EBC applied for a federal grant, PL 638, to provide federal funds to support law enforcement services on EBC.  Id.  Ms. Huerta stated that without payment of the debt Elko Band's law enforcement would not have access to Emergency Management System radios.  Davis Gonzalez stated that EBC wanted its own private law enforcement agency to police and protect the EBC-SC-TT assets at Newe Cannabis, for the NCE, stating that Elko Band actually used $100,000.00 of the cash proceeds obtained from the NCE to initially fund law enforcement at Elko Band.  Plaintiff contends that EBC laundered $100,000.00 of CARES Act funding through Zionsbank, NSB and SALAL, with $100,000.00 in NCE cash, income or revenue prior to payment or expenditure of $100,000.00 to EBC law enforcement.

401.  On January 13, 2021 the NCE produced a written report, pursuant to a **A1-A4**, **A6** and **A8** agreement, plan or scheme between SCS; EBCE; Robin Evans; Leslie Grove; Paul Conable; Steve Sisolak; Aaron Ford; Steve Olson; Juan Arevalo; Davis Gonzalez; Thalia Marin, Larry Yeager; Juan Arevalo; Darian Stanford; Kevin Clock, and others, that states, (*after the undisclosed, pre-count 'partner's share' was reduced from the claimed gross income*), the claimed net income for the fourth quarter 2020, (spanning October 1, 2020 through December 31, 2020), totaled an even "$1,500,000.00," with the "EBCE" half share equaling "$750,000.00" and the "SCS" half share equaling "$750,000.00," pursuant to **A6** ("SCS 50% ECBE 50%"), produced and published by the NCE with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14 and when the Plaintiff appeared at EBC Offices on December 13, 2020, (*18 days before the end of the quarter*), the Plaintiff found Juan Arevalo, Davis Gonzalez, and others, counting and distributing the cash proceeds from the fourth quarter 2020 derived or originating from the sale and distribution of a controlled substance, marijuana, at the retail store Newe Cannabis, Juan Arevalo stated that "the building is locked up because while we were counting the money from Newe a bag with 75 grand cash went missing inside," before stating that EBC one half share from the NCE for the fourth quarter 2020 was "1.6, 1.7 million give or take a little." See Exhibit II-B(2).  The total amount generated from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis in 2020 totaled about $10 million, and EBC distributed a total amount to EBC tribal members $399,000.00 directly, plus an additional $25,000.00 for tuition, ($5,000 to each student), and about $15,000.00 in educational supplies and equipment.

402.  On or about January 15, 2021 Joseph Holley ordered the Plaintiff to submit and sign a CARES Act Financial Progress Report for the fourth quarter of 2020 prepared by Hinton Burdick in St. George, Utah.

403.  On or about January 18, 2021 an internal audit performed by EBC revealed an amount of $21,000.00 was missing or unaccounted for from the total amount remaining after EBC-NCE December 13, 2020 distribution, ($420,000 minus $399,000). According to EBC under the A6 $420,000.00 represented the remainder of the EBC half share of the total net proceeds, money or funds, (*originating from NCE sale and distribution of a controlled substance*), after operating costs.  The internal audit showed that the missing $21,000.00 matched the amount deposited in

the Zionsbank/NSB EBC-EBCE General Fund account after the December 13, 2020 EBCE/SCS accounting of NCE profits.

404.   On January 18, 2021 Alice Tybo sent an SMS text message to the Plaintiff via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah stating "Davis told me he was going to go to Boise . . . I told him we need to stay with our [CARES Act] deadline decision.  He agreed [s]aid the same thing happened at Elko Band when they decided to go with Elko Band affiliated, registered voters, head of household [f]or their distribution of the cannabis."

405.   On or about January 19, 2021 the Plaintiff reported suspected CARES Act fraud with the Office of Inspector General Treasury and directly to Joseph Holley that involved Reynolds, Walker, Sypolt and Dentons.

406.   On January 20, 2021 Alice Tybo sent an email message to the Plaintiff via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah stating "Sam: Thank you for all you do.  You are the best person for us to have as the administrator, during this pandemic and troubling court times.  I really appreciate you, your knowledge & professionalism."  Exhibit III-B(10).

407.   On or about January 21, 2021 Davis Gonzalez informed the Plaintiff that Gonzalez "wasn't worried about any investigation, fuck those guys" during a discussion about the payment to Elko County Dispatch with cannabis cash because "I've been doing this shit for years and we paid for a bunch of attorneys and gave 500 grand to politicians.  Man, we got Biden to show up here, we even got Masto and the Governor on our side."  The Plaintiff asked Gonzalez about the letter from Aaron Ford and Gonzalez replied "that's nothing, I gave him 50 grand to keep supporting our cannabis program and that's another thing you need to stop asking Kyle [George] about that shit.  What do you think, people don't tell me what you're doing?"  Ref. Exhibit II-C(4).  The Plaintiff responded "I'm just doing the job I was hired to do and you keep signing things on behalf of the Tribe when you're not the Chairman of the Tribe Davis."

408.   On or about January 22, 2021 Sypolt traveled by aircraft and arrived at the airport in Salt Lake City, then paid for a hotel and rented a car before traveling on Interstate 80 and arriving on federal, tribal lands on January 23, 2021.  Upon Sypolt's arrival at Te-Moak the Plaintiff requested that Sypolt return of the Tribe's $200,000.00 in CARES Act funds because "the programs are over and you didn't perform any CARES work."  Sypolt snapped back at the Plaintiff "I don't do refunds.".

409.   On or about January 23, 2021 Elko Band Council held a public meeting to address the missing $21,000.00 cash from the NCE funds held or controlled at Elko Band. This meeting was broadcast as an electronic video signal over the internet via the Lucent Technologies POP 100 gigabyte data switch in Salt Lake City.  After an official reading of the report into the public record, the Finance Clerk stated that the money used to pay $20,937.50 to Elko County Dispatch came from the NCE retail store Newe Cannabis funds or money deposited into Elko Band's General Fund at Zionsbank/NSB.  Ref. Exhibit II-B(5).  This money was commingled with federal, state and private funds at the direction of Davis Gonzalez, on behalf of EBCE, pursuant to **A1-A4**, **A6** and **A8** agreement, plan or scheme with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952(Travel Act); 18 U.S.C. §1956(Money Laundering); 18 U.S.C. §1957(Engaged in Unlawful Monetary Transactions); 18 U.S.C. § 1960 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14.

410.   Davis Gonzalez admitted, without EBC approval and against tribal policy and law, that Gonzalez ordered the Finance Clerk to issue Check No. 89132 to Elko County Dispatch with cash proceeds derived or originating from the sale and distribution of a controlled substance, marijuana, at the NCE.  See Exhibit II-B(5).  Gonzalez stated he ordered the funds to be deposited or transferred into Zionsbank/NSB and paid or routed through SALAL, and an instrument was deposited in the United States Postal Service or transmitted electronically as an ACH via the Lucent Technologies POP 100 gigabyte data switch in Salt Lake City, and sent to and received by Elko Central Dispatch, pursuant to **A1-A4**, **A6** and **A8** agreement, plan or scheme with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14 and during the video broadcast of this meeting members of Elko Band openly stated "that's money laundering Davis."

411.   On or about January 25, 2021 the Plaintiff exchanged emails with Elko County Dispatch Operations Director Donna Holladay and held a subsequent telephone conversation with Ms. Hollady regarding the $20,937.50 debt and the character of funds used to pay that debt by EBC after Mrs. Holladay confirmed that Elko Central Dispatch received payment from EBC, not EBCE, in the form of an instrument drawn on Zionsbank/NSB.  The Plaintiff informed Ms. Holladay of Mr. Gonzalez' admissions during the EBC January 23, 2021 meeting as published online.

412.  On or about January 25, 2021 Plaintiff participated in a joint law enforcement teleconference meeting with FBI and OIG agents regarding the CARES Act fraud report that Plaintiff submitted based on the discovery of evidence supporting fraud by officers, agents, representatives and employees of the Te-Moak Tribe, *supra*, and the Plaintiff indicated to OIG where the records and evidence were located, and as soon as the Plaintiff informed the agents of allegations of fraud and other criminal conduct associated with Jeffery Scott Sypolt and Dentons the meeting ended.

413.  On or about January 26, 2021 the Plaintiff reported suspected fraud at TMHA with the U.S. Housing and Urban Development Office of Inspector General related to TMHA financial records, practices and documents showing the impermissible application of late fees and charges, investments and expenditures of federal funds without authorization and contrary to law.

414.  On or about January 26, 2021 the Plaintiff filed a report of suspected fraud with OIG Interior-BIA involving personnel, staff and employees of the Te-Moak Tribe. Bowker caused or assisted in causing a processing delay and/or dismissal of this complaint without oversight by DOI in Washington, D.C. to prevent disclosure of the participation by Bowker and Joseph McDade in the NCE and assist the NCE continuing, including the terms of **A5**. As of October 1, 2021 the DOI-BIA implemented a new OIG and Internal Affairs policy requiring a copy of all complaints delivered to the Regional Offices be sent to the National Office.

415.  On or about January 27, 2021 the Plaintiff communicated with Elko City Manager Curtis Calder regarding the $20,937.50 debt and the character of funds used to pay the debt to Elko County Dispatch by Elko Band pursuant to the communications between the Plaintiff and Elko County Dispatch Operations Director Holladay and the video recording with Mr. Gonzalez' admissions as published online.

416.  On or about January 27, 2021 Davis Gonzalez, Thalia Marin, Juan Arevalo, Larry Yeager, LaDonna Leyva, held a public meeting with Suzanna Sandoval present and sitting at the EBC table. When the discussion turned to the topic of the NCE and the depositing of NCE funds into Zionsbank, Davis Gonzalez motioned to move that topic into a "Closed" Meeting, barring the public from receiving information, and tribal members in attendance verbally objected because the Te-Moak Constitution requires Open Meetings. Thalia Marin agreed to hold any discussions regarding the NCE in a meeting closed to the public to protect the "Agreement" with SCS from disclosure. EBC decisions were based on the direction and information EBC

members received from Steve Sisolak; Aaron Ford; ECDCC; Darian Stanford, Paul Conable, Sypolt and Steve Olson.

417.    On or about January 27, 2021 Juan Arevalo hand-delivered copies of the video recordings from the EBC January 23, 2021 meeting to the Plaintiff regarding the payment of $20,937.50 with cash proceeds from the NCE.  Juan Arevalo routinely "lost" or misplaced cellular phones issued by EBC to prevent discovery or disclosure of the electronic data contained on each phone by law enforcement.

418.    On or about January 28, 2021 Joseph Holley ordered the Plaintiff to continue researching the payment of $20,937.50 to Elko County Dispatch and the related debt to Western Shoshone Department of Public Safety, ("WSDPS"), and place the Elko County Dispatch debt and Elko Band request for reimbursement on the February 3, 2021 Tribal Council Agenda.  Ref. Exhibit II-C(8) at 5(1:07:58-1:09:46).

419.    On or about January 28, 2021 after the Plaintiff reported to Joseph Holley Sypolt's threats to use third parties to physically harm Davis Gonzalez, (an 80 year old Chairman of Elko Band Council and a Te-Moak Council Member), with Sypolt referring to Gonzalez as a "Red Apple" and stating Gonzalez is "red on the outside mostly white on the inside," and during that same conversation the Plaintiff reported Sypolt's attempted bribe of $37,000.00 in cash to the Plaintiff where Sypolt stated "SCS will deliver it to me and I'll give it to you if you want it, it's the Tribe's tax portion and nobody will know."  Plaintiff reported the events to Holley stating the Plaintiff was tired of dealing with Sypolt, and after that meeting with Holley, Sypolt telephoned the Plaintiff and stated "I'm going to kick your ass the next time you get in my way. . .if we were in Chicago I'd already have you and Gonzalez' legs broken or you both locked up in jail."

420.    On or about January 28, 2021 the Plaintiff stated to Zionsbank/NSB Nicole Lewis that EBC was commingling federal funds with funds derived or originated from the sale and distribution of a controlled substance, marijuana, by the NCE.

421.    On or about February 2, 2021 the Plaintiff received an email from a member of Alice Tybo and Tanya Reynolds' family, Alexus Leyva, routed via the Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah which is also the location of Ms. Leyva's residence.  Ms. Leyva is employed in the field of behavioral science.  Ms. Leyva stated in the email that Reynolds directed Leyva to approach the Plaintiff seeking CARES Act funds, and she described similar facts that were involved in other cases with allegations of fraud in the CARES Act where Ms. Leyva submitted

applications for herself and her daughter and only one application physically appeared in Te-Moak records, leaving Ms. Leyva's daughter without a check or payment. When Reynolds spoke to the Plaintiff about the Leyva case, Reynolds stated that the Plaintiff had "to issue her a check because her family has a bunch of votes and we need them for the election coming up."

422.    On or about February 2, 2021 EBC held an official meeting to discuss the payment of $20,937.50 with Newe Cannabis proceeds for an official debt to Elko Dispatch Center billing after accusations of money laundering were made against Davis Gonzalez. Joseph Holley and Sypolt both informed Davis Gonzalez that the Plaintiff reported the information to the FBI and OIG.

423.    On or about February 2, 2021 Sypolt requested to meet with the Plaintiff outside during a TMC meeting break. Sypolt apologized "for losing my cool and yelling at you, we're professionals and we need to work together. If you're okay with it, Joe and I agree that we need you as the prosecutor in the new court system we're building. Will you consider it?"

424.    On February 2, 2021 Joseph Holley sent a text message to the Plaintiff inviting the Plaintiff to attend a meeting with Tanya Reynolds, Sypolt and Darian Stanford at JR's restaurant in Elko, Nevada after Stanford and Sypolt flew into Salt Lake City, separately, on February 1, 2021 and then drove to federal, tribal lands to finalize an agreement, plan or scheme to use funds derived or originating from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis to finance the new Te-Moak Court system in exchange for the nomination of SCS attorneys and placement of those aligned or employed by SCS into Te-Moak judicial and court positions. The Plaintiff declined the invitation.

425.    On February 2, 2021 after the morning meeting with Sypolt, Reynolds and Stanford, Joseph Holley and the Plaintiff discussed the Plaintiff's nomination for the prosecutor position with the Tribe. At this time the Plaintiff stated that he would grudgingly agree to serve temporarily as the prosecutor but that the only position for serious consideration by the Plaintiff was for the appellate judge otherwise the "Tribal Administrator is enough for me." Holley stated that he agreed that the appellate judge was the best position for the Plaintiff. Alice Tybo telephoned the Plaintiff shortly after the discussion with Holley, and when Tybo posed the same question the Plaintiff stated he would accept the "appellate judge position."

426. On February 3, 2021 Sypolt and Joseph Holley met with Darian Stanford at JR's restaurant in Elko, Nevada at approximately 8:00 a.m. At this meeting Sypolt, Holley and Stanford finalized an agreement, plan or scheme as the agents and representatives of TMC; SCS; EBCE; TT and Dentons, where Sypolt agreed to nominate SCS agents, employees or representatives for positions in the Te-Moak court system as provided by Darian Stanford and SCS: Darian Stanford as the nominee for the appellate judge; Ramon Acosta as the Trial Court Judge; Elisa Dave as the Court Clerk and Tildon Smart as the Bailiff. In exchange for successful appointment, placement and hiring of these individuals SCS, EBCE and TT agreed to finance and fund the entire Te-Moak court system with cash proceeds, income or revenue that originated, received or were obtained or derived from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, on behalf of the NCE, with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14 and Sypolt, Joseph Holley and Darian Stanford then jointly and individually agreed to expand the terms of the **A5** agreement, plan or scheme to interfere, injure or interrupt Te-Moak Tribal government operations and invent, create or publish false statements and artificial reasons or justifications to obtain the termination of the Plaintiff's employment with the Tribe to permit the same individuals and entities to continue the unlawful commercial sale and distribution of a controlled substances at the NCE, in exchange for unreported cash payments that were derived, received or originated from the unlawful sale and distribution of a controlled substance, marijuana, and Stanford agreed to deliver $37,000.00 to Sypolt as an initial deposit, along with the names of candidates for the court system, and Holley and Sypolt agreed to pre-arrange the votes on TMC to pre-approve the SCS nominees, with both parties agreeing to guarantee that the personnel selected would promise that the NCE continued its operations on Te-Moak land without negative adjudication.

427. On February 3, 2021 Darian Stanford stated to Joseph Holley and Sypolt that Paul Conable expressed reservations about entering the agreement, plan or scheme to fund the Te-Moak Court system because of the Plaintiff's position and authority as the Te-Moak Tribal Administrator, and Sypolt stated that "we have that handled, don't worry about Sam he won't be here long, we will get him in as the prosecutor and force him out as the Administrator, then fire him as the prosecutor using his background against him. He's a fucking felon for Christ's sake. Have you read the Facebook posts about him?" Under the expanded **A5** agreement, plan or scheme the

parties agreed to nominate the Plaintiff as the prosecutor, force a conflict of interest and require the Plaintiff to step down as the Tribal Administrator, then terminate the Plaintiff as the prosecutor no later than June 2021, the time period SCS/TT attorneys stated they needed to fully fund the Judicial Enterprise.

428.  On February 3, 2021 Sypolt publicly stated that Sypolt submitted the Plaintiff's name as a nominee for the Tribal Prosecutor position stating that Sypolt performed a thorough background on every candidate before presenting their names to the Te-Moak Tribal Council guaranteeing that all were spotless, "cross[ing] every 't' and dotting every 'I,'" and that Sypolt "went through piles and piles of applications, made calls on them, [Sypolt] checked on their qualifications, did background checks," and submitted the Plaintiff's name "based on qualifications. . . based on [his] honesty and integrity. . ." Exhibit II-C(8) at 2(42:47).

429.  On February 3, 2021 Sypolt stated that Sypolt verified the references and backgrounds for all the candidates and nominees before the meeting, and that if "anybody got even one black mark, [Sypolt] took [them] out. . .They all had backgrounds on them. . ." Exhibit II-C(8) at 9 (05:14:46).

430.  On February 3, 2021 at 9:02 a.m. Alice Tybo sent a text message to the Plaintiff via Lucent Technologies POP 100 Gigabyte data switch located in Salt Lake City, Utah that stated "Sent to Joe:  Joe question for Scott.  Darrian is the attorney for Elko Band's Cannabis?  How can this not be a conflict of interest?  Can we consider someone like Sam who knows our constitution inside and out as the appeal[s] court judge?"  The Plaintiff witnessed Sypolt inside Holley office frantically scribbling notes where dozens of variously colored sticky tab notes were laying around as though a blizzard deposited them, handing them out for Holley to read and repeat during this meeting broadcast via telephone and the internet.

431.  On February 3, 2021 the Te-Moak Tribal Council held a meeting where Sypolt claimed that he "completed" all the tasks and work identified in the Te-Moak - Dentons Agreements when he knew or should have known that statement was materially false, *supra*.  Exhibit II-C(8) at 2-4 (48:19, 49:12-49:37);  ref. Resolution 20-TM-60 Engagement Agreement (July 22, 2020); Exhibit III-C(3)(c); Exhibit III-C(3)(d).  The Chairman and the Plaintiff immediately refuted and challenged Sypolts' assertion as untrue or false.  See Exhibit II-C(8) at 3 (48:25 – 49:00)("No you didn't Scott" and Holley: "I didn't get an update).

432.  On February 3, 2021 Sypolt publicly stated to the TMC "you all are sovereign, so if there's a [judicial] conflict you don't have to waive the conflict . . .you have total control over the judge." Exhibit II-C(8) at 12(5:31:55).

433.  The Te-Moak Constitution, Article 4 and Article 8, section 2 states that "the executive and legislative powers of the Tribe shall be vested in a Tribal Council. . .and in the Band Councils," and that "[a]ll judicial powers of the Tribe shall vest in the Judicial Branch," and as approved by the United States the Te-Moak Law and Order Code states that "[t]he Supreme Court Judge shall be responsible for the administration of the Court, the assignment of cases, and the management of the Court's calendar and business." 87-ORD-TM-03, 1-3-16(D).

434.  On February 3, 2021 no Te-Moak tribal law existed that will allow the TMC to recall, remove or terminate a judge for any reason.

435.  On February 3, 2021 Alice Tybo publicly stated "Darian [Stanford] has a conflict because he works with Elko cannabis . . .I think the two we really need to get filled today are the judge of general counsel and then the Supreme Court Appellate, and so I know that we also have another name that can be an appellate court, and that is Sam Biers.  He can also be a judge in the appellate court.  . .Mr. Biers is more than qualified to be our appellate court judge." Exhibit II-C(8) at 12 (5:32:55).

436.  On February 3, 2021 Sypolt publicly stated "I'm here just to make recommendations . . .the choice is your's with Sam. . .you need to have the court. . .the core of the court picked today per your constitution, and that is the judge of original jurisdiction, the judge of appellate jurisdiction." Exhibit II-C(8) at 13(5:34:46).

437.  On February 3, 2021 Sypolt publicly stated "I have a ton of experience in this . . .and I've spent a lot of time interviewing these people. . .**I really thoroughly vetted all of these people**, my only loyalty is, is, to the Te-Moak Courts." Exhibit II-C(8) at 13-14 (5:37:52)(emphasis added).

438.  On February 3, 2021 Davis Gonzalez and Scott Sypolt publicly stated that Darian Stanford is not employed as an attorney for Elko Band, that Darian Stanford is a "partner" with EBC-EBCE, and then Sypolt stated that "this is the way I was instructed to do it, so I'm just following the orders given to me," and if the TMC "doesn't like" the appointed judges "for whatever reason," the TMC has "the power per [the Te-Moak] constitution to recall them." Exhibit II-C(8) at 15(5:43:42 – 5:44:48)(*Davis Gonzalez: "Darian. . .he don't work for Elko [Band], he's a partner to Elko" and Sypolt: "You're right he's a partner with Elko, he doesn't work for Elko"*).

439.    On February 3, 2021 Sypolt publicly stated to the TMC "getting back to the court system, you have every legal right as a sovereign nation to have your own court system. **Your Te-Moak Constitution, Article 8 sections 1, 2, 3 and 4 give[s] you that right**, and the constatation, the Constitution of the United States Article 1 section 8 and Article 1 section 2 clause 3 is the legal authority. . . you also have the power to declare the regulations in 25 CFR part 11 are no longer, no longer apply to the Tribe, which means our CFR court is gone. **You all have asked me to create a legal pathway whereby you could create your own tribal court system. Ah, I have done that. We have crossed every "T" and dotted every "I" and then I was asked to look into candidates for the positions of judge of original jurisdiction, judge of appellate jurisdiction, the tribal clerk, Bailiff, prosecuting attorney and public defender, which are, which is the core basis of any court system. So, I went through piles and piles of applications, made calls on them, I checked on their qualifications, did background checks**, and I was asked to submit 2 names. . . These names were submitted based on qualifications, based upon their familiarity with tribal court systems, based upon their honesty and integrity, their background education. . ." Exhibit II-C(8) at 2-3(42:47).

440.    On February 3, 2021 Sypolt stated to the TMC "the purpose of today is for the new business for, regarding the new tribal court system. . . . **every 'T' has been crossed, every 'I' has been dotted** and you all are prepared to have your own tribal court system . . ." Exhibit II-C(8) at 5 (52:30 and 53:33).

441.    On February 3, 2021 Joseph Holley publicly stated to the TMC **"let's go on to new business "Request to Appoint (1) Appellate Court Judge; (1) Tribal Court Judge each separately for an initial appointment term pursuant to the Constitution of the Te-Moak Tribe of Western Shoshone Indians of Nevada Article 8 with individual candidates who are at least 30 years of age and of good moral character . . ."'** Exhibit II-C(8) at 6-7(5:02:07).

442.    On February 3, 2021 Sypolt publicly stated to the Te-Moak Tribal Council "[y]ou **always have the ability if for some reason Council doesn't like them you can remove them. You have the right to remove the judges . . . I was asked out of the big list in each category to supply two names and a little bit about each of them which I've done. I'll go over with them, with you and since you've hired me do this and I have expertise in this area.** I'll tell you whom I recommended and tell you why, and then the choice is yours." Exhibit II-C(8) at 8(5:11:11).

443. On February 3, 2021 Sypolt publicly stated to the TMC "the **judge of supreme court appellate jurisdiction I have two names one is Chadwick Smith**, who was the chairman of the Cherokee Nation, know him extremely well . . . **second choice is Darian Stanford** who many of you know, Darian was a chief judge at McDermitt and was also involved with Reno Sparks as many of you know, **he started off as an adversary to the Te-Moak Council . . . The next category is prosecuting attorney. I have two names one is Sam Biers, whom you all know well. I'm sure you know his qualifications and the other is Ann Laughlin . . .** , I actually took the time to call these groups and talk to them and anybody that got even one black mark I, I took out of the category. **They all had backgrounds on them** and again, this is an objective and impartial group . . ." Exhibit II-C(8) at 9(5:14:46).

444. On February 3, 2021 Sypolt publicly stated to the TMC "Darian [Stanford] is employed by the cannabis company that is involved with Elko Band and if a cannabis case ever arose and it went to the appellate level. . .he would recuse himself and then we could bring in someone like Chadwick Smith . . ." Exhibit II-C(8) at 10(5:22:11).

445. On February 3, 2021 Joseph Holley publicly stated "remember these [judges] that we have to put on for three years, so the contract is going to be for three years. That doesn't mean we have to keep them for three years because we can vote them back out in a month if that's what it takes after we get the court up and running." Exhibit II-C(8) at 10(5:23:58).

446. On February 3, 2021 Sypolt publicly stated to the TMC "you all have a process for the judges that you can recall them. . .I'll write into the contract. . .that the Council hires them at-will." Exhibit II-C(8) at 10-11(5:24:12). Judges are not employed at-will under Te-Moak tribal law and Sypolt failed to produce any written contract for the Plaintiff as a judge.

447. On February 3, 2021 Sypolt publicly stated that "the normal rate in Nevada per day for a judge is 1500." Exhibit II-C(8) at 12(5:29:37); ref. Exhibit II-C(10).

448. On February 3, 2021 Robert Brady publicly stated to the TMC that "[Sypolt] said their background checks were done, but I don't have any of that documentation saying their done. . .if we do appoint somebody we can't just get rid of them just as easy as we appointed them because we do have to follow that constitution for removing the judge, and we have to follow article four section eight and it's pretty

much the same steps to remove the tribal chairperson." Exhibit II-C(8) at 16(05:48:15).

449.   On February 3, 2021 Sypolt, as an attorney with Dentons, stated "Bryan Bowker actually worked with one of the partners at Dentons and when I showed this [December 17, 2020 Bowker Letter] to the Denton's team they were outraged. First of all, he, he doesn't, he doesn't base his decision, every lawyer and every judge has to base their decision on some kind of existing authority meaning in either case law or a statute. This guy doesn't cite anything. What he says is, he bases it all on hey we have an ongoing mediation, that has been going on by the way for three and a half years. When I showed that to Dentons they thought that was the most outrageous thing. Mediation takes three months not three and a half years, they thought you were being abused and neglected by these people so he has absolutely no legal grounds whatsoever. I wrote a response to this and it is extremely clear that you all are a sovereign nation and under your Constitution and under the US Constitution and under 25 CFR 11.104 you have the right to do whatever you want to do and the Council made their decision they wanted their own tribal court." Exhibit II-C(8) at 16-17(05:49:39); ref. Exhibit II-C(5). Skibine wrote the response and appeal to the December 17, 2020 Bowker Letter pursuant to 43 C.F.R. §900.170-71, not Sypolt. Id.

450.   On February 3, 2021 Sypolt, as an attorney with Dentons, stated "[o]ne of our partners [Skibine] that I had mentioned he wrote a large part of the CFR code, so he knows this better than anybody." Exhibit II-C(8) at 23(06:12:30).

451.   On February 3, 2021 Juan Arevalo publicly requested from Sypolt, as the Tribe's attorney for Dentons "in pursuance to the contract that [the judges will] sign for three years, is there a clause in their stating that . . the risk of them you know, losing their positions is ultimately the Te-Moak Tribe's decision right so that they aren't, they are aware of that, that if they don't perform at the level of the Te-Moak Tribe wants that they will be removed immediately. Is there something in there that protects the Te-Moak Tribe in case that happens?" Exhibit II-C(8) at 19(05:59:46).

452.   On February 3, 2021 Sypolt publicly stated, in response to Juan Arevalo's question regarding the contractual term permitting removal of the two appointed judges that day, "[a]bsolutely, absolutely. It follows your constitution to the 'T.'" Id. at 06:00:15.

453.   At no point forward from Sypolt's February 3, 2021 public statement related to a contractual term authorizing removal or recall did Sypolt or Dentons produce a

contract for the Plaintiff that included any term, under the constitution, allowing for the removal of a judge without adhering to the removal process found in <u>Article 8 of the Tribe's Constitution</u>.

454. From August 1982 forward, the Te-Moak Constitution states that the only way to remove or recall a judge after appointment is by the filing of a lawful petition and then holding a special election, there is no statement or provision allowing the Tribal Council to remove or recall a judge after an appointment is made by contract, motion, ordinance or resolution. <u>Te-Moak Constitution, Article 8, section 6</u>(*"[a] judge shall be unseated from office only in the manner set forth in Section 8 of Article 4"*); <u>e.g.</u> <u>Article 4, Section 8</u>(*recall occurs by filing of valid petition signed by at least 25% of the registered voters of the Tribe or by at least two-thirds (2/3) of the registered voters of any Band" an election is set and then "if at least fifty percent (50%) of all the registered voters of the Tribe cast a vote and more than fifty percent (50%) of those voting in the election favor such a recall . . .the office [is] vacant"*).

455. On February 3, 2021 Juan Arevalo stated Arevalo didn't want "a judge from across the United States that nobody knows, because let's be honest no matter what in the history of, of the tribe, any judge every Council has had a problem with the judge.  It doesn't matter.  It's because of the way they rule and that's a fact.  Anyway a judge, any time a judge ruled not in the, in the, in your favor, it's an automatic removal.  So it's always going to be a problem no matter." <u>Exhibit II-C(8)</u> at 22(06:10:28).

456. On February 3, 2021 Sypolt, an attorney at Dentons, publicly stated ". . .**you all came to me and, myself and Dentons, please I know  most people have looked up Dentons, we're the largest law firm in the world.  We're the top Native American law practice in the country, the vast majority of our people in this practice are former high ranking BIA people, former our high ranking Department of Interior people.  We have former Presidents.  We have former Governors.  We have former Senators.  I mean the people who really know what they're doing and what they're talking about and so all this has been run, not just through me, but, but through them as well.**" <u>Id</u>. at 23(06:12:30).

457. On February 3, 2021 Andrea Woods publicly stated "when we hired Scott we hired him because of his expertise, and then when we talked about selecting these people we have no idea where to get these people.  **We relied on Scott to get these people and he already did their background checks which takes a long time and it's already done.  He, we relied on his expertise in selecting these people.**  Why should we question Scott when he's our lawyer and we rely on him to do these

things for us.  And, that's what we hired him for so we should go on what he has selected of all these people in the United States.  Some don't come from this area we could get 'em from clear back East, but no we got some within this area that know Nevada tribal law, so why should we question all these people when we can get their profile?  Yeah, I guess you could say their background check, their resume and read it that way . . .so we relied on Scott to make these legal choices and our behalf." Id. at 23(06:14:00).

458.  On February 3, 2021 Davis Gonzalez publicly stated "**Joe I'd like to, I gotta to tell you guys because I'm, I've known about this for a long time and I got to tell you about it.  These guys like Elisa Dave clerk from McDermitt, Ramon Custer, Acosta, whatever her name was, and, and Tilden Smart, those all came from Darian.  He was telling me that, he was telling me that those from the McDermitt court system** and they're having a fight up there . . .That's what he told me." Id. at 24(06:16:20 and 06:17:14).

459.  On February 3, 2021 Sypolt publicly stated to the TMC in response to Davis Gonzalez informing the Council about Darian Stanford's involvement in the selection of the appointees that day and protect the agreement with SCS and TT "that's not the truth statement.  That's not a true statement, they're not all from Darian. . . That's not a true statement at all." Id. at 24(06:17:06 and 06:17:16).

460.  On February 3, 2021 the Plaintiff and Alice Tybo sent text messages via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah regarding the Plaintiff's appointment.  The Plaintiff informed Alice Tybo "[t]he Council already ordered my background and the FBI gave 100 percent clear," and Alice Tybo replied "Yep . . .Voting on you!! Congratulations!! Congratulations!!"Ref. Exhibit III-B(1)-(3).

461.  On February 3, 2021 David Carrera tendered a motion to appoint the Plaintiff as the appellate judge, with Chairman Holley then reading the official motion into the record as "Dave made a motion to hire Sam Biers as the appellate judge by Resolution 21-TM-29." Exhibit II-C(8) at 26(6:25:37).  As read into the record, and as the actual official action of the Te-Moak Tribal Council, did not include a condition requiring Scott Sypolt to perform an additional or any background investigation related to the Plaintiff. Exhibit II-C(8) at 26(06:24:23 through 06:26:20).  The motion carried by a vote of 5 Yes, 3 No and 1 Abstention.  Larry Yeager voted against the Plaintiff without recusal even after previously signing a sworn statement expressing a bias against the Plaintiff that also admitted that an SCS and EBCE employee falsified statements to interfere with tribal government operations and

caused the Council to consider termination of the Plaintiff.  Id; see also, Exhibit III-A(4).  Immediately prior to the February 3, 2021 meeting Davis Gonzalez, as EBC Chairman, ordered and directed all EBC members to vote no on the motion to appoint the Plaintiff as the appellate judge.

462.    On February 3, 2021 after the TMC Meeting adjourned for the day, the Plaintiff stopped at the open door entrance to Tanya Reynolds' office and heard her in a heightened tone, facing Joseph Holley with her back to the Plaintiff, "what the fuck Joe?  I thought you and Scott had a plan to get rid of him, now he's the goddamn judge?"  Plaintiff stood behind Reynolds waiting for her to stop talking to announce Plaintiff's presence and inform Holley that Sypolt wanted him in the adjacent room.

463.    On February 3, 2021 the TMC enacted Resolution 21-TM-23 establishing a budget and authorized line item expenditures for the court and court personnel, thereafter vesting the Plaintiff with the sole responsibility to administer the court's financial business as the Supreme Court appellate judge.  Joseph Holley, as the Chairman, and Alice Tybo, as the Vice Chairman, opened an account at Zionsbank/NSB and authorized the issuance of a VISA credit card through Zionsbank, issued in the name of the "Te-Moak Administrative Office of the Courts" and failed or refused to provide any information to the Plaintiff, as the appellate court judge related to these accounts and for all times after issuance entered an agreement with Zionsbank to deny the Plaintiff access to these accounts.

464.    On February 3, 2021 the TMC held a public meeting where Joseph Holley ordered the Plaintiff to present information related to Davis Gonzalez' admission tendering payment for a debt to Elko County Dispatch, in the amount of $20,937.50, with cash originating from the sale of a controlled substance, against Tribal law, and any related liability issues, after Davis Gonzalez requested Te-Moak reimburse Elko Band for the expenditure as an attempt to further launder the money through a secondary fraudulent payment.  Plaintiff stated that the debt was over three (3) years old, past the Tribe's civil law statute of limitation, and now the personal responsibility of Gonzalez who failed to previously pay the debt.

465.    On February 3, 2021 the TMC ordered the Plaintiff to provide additional information on the reimbursement for the $20,937.50 debt to Elko County Dispatch issue to the TMC the following day, February 4, 2021, and include a presentation with the video recording showing Davis Gonzalez admitting to the source of funds that EBC sought reimbursement originated from the NCE, after Davis Gonzalez denied making that statement at the recorded February 3, 2021 Te-Moak meeting.

466.  On or about February 3, 2021 at a public TMC Meeting, where the Council discussed dissolving the TMHA Board for good cause, Robin Evans appeared telephonically to address the Te-Moak Council on the matter. Evans stated that she was invited to speak by Council member Davis Gonzalez, and Evans again accused the Plaintiff of being unprofessional and that the Plaintiff was causing problems with the NCE. In response the Plaintiff informed the TMC that Ms. Evans does not work for the Tribe or Housing, she is a private contractor employed by Elko Band and that Evans lacks any personal knowledge since the Plaintiff trespassed her in February 2020 after she gave Chairman Holley false information regarding the Plaintiff and the Te-Moak SORNO Grant. Joseph Holley ended Evans' discussion.

467.  Based on the tribal documents that the Plaintiff reviewed as the Tribal Administrator, Robin Evans and her company RAE Solutions LLC are employed by Elko Band, South Fork Band and Wells Band to write bid proposals for federal and state funds, using account and business information related to EBCE and RAE Solutions, and that Evans includes qualification language in advertisements and solicitations for the most economically lucrative bids, termed Request For Proposals, ("RFP"), that favor the respective Band's selection of her firm RAE Solutions LLC, a defunct Nevada business entity. Once the Band is awarded the contract, the Band hires RAE Solutions LLC and then after Evans is paid Evans gives a kick-back or percentage of the federal or state award to select Band Council members, some of those funds are then laundered through accounts associated with Newe Cannabis, EBCE and SCS.

468.  On November 16, 2020 Alice Tybo sent an email to the Plaintiff stating she received the following message from "Robin Evans" as "'Just following up to see if Chairman Holly and/or the Temoke Council scheduled a date for me and UNR reps to kickoff the USDA Business Development and Analysis Grant for the Bands/Tribe? Once we kickoff via phone with the Te-Moak council we can then schedule workshops with each of the bands (2 workshops per band over next couple months). The end result will enable each band to apply for $3-4 million in construction funding for your various developments.'" Alice Tybo reported that Robin Evans would receive a "significant amount" from "each Band" if the awards went through and the Te-Moak "Council granted her request." At the Council meeting in 2020 Robin Evans attempted to blame the Plaintiff for interfering in the process because the Plaintiff requested documentation, as required by tribal law, that supported the claims made by Evans related to transparency for RAE Solutions and EBCE funding and payments.

469. On or about February 4, 2021 the Plaintiff displayed the public video and audio recording of the Cannabis meeting held January 23, 2021 at EBC where Davis Gonzales admitted to directing his Finance Clerk to issue the check and mail it to Elko Central Dispatch with NCE cannabis funds deposited in the EBC General Fund account at Zionsbank, commingled with federal, state and private funds, without the prior approval of the EBC. That video recording included a discussion regarding a report of missing money from the December 13, 2020 SCS Elko/Newe/EBCE final accounting at the Elko Band Distribution. Alice Tybo stated on the record that Davis Gonzalez "lied" to the TMC and the Tribe about this transaction.

470. On February 4, 2021 Sypolt sent an email via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah from a Dentons address and copied to Scott Sypolt's personal email address, regarding "PL 95-133" by addressing the Plaintiff as "Justice Biers!" and that email then stated "[d]o you trust the local newspaper?"

471. On or about February 5, 2021 the Plaintiff telephoned Zionsbank/NSB Nicole Lewis giving notice of the possibility of forgery of the Plaintiff's signature and the commingling of cash proceeds derived or originating from the sale and distribution of a controlled substance, marijuana, by the NCE at EBC, after the Plaintiff viewed the January 23, 2021 Elko Band meeting where Davis Gonzalez admitted to commingling the NCE cash proceeds with federal, state and private funds held by Zionsbank/NSB for the Elko Band.

472. On February 8, 2021 Davis Gonzalez published and republished statements regarding the Plaintiff as a 'convicted felon' and 'liar' that Gonzalez transmitted by an email over the internet via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah to each members of the Plaintiff's employer-the Te-Moak Tribal Council, the tribal community and tribal administrators across the country in retaliation against the Plaintiff for reporting the NCE-EBC money laundering scheme and displaying the video recording of Davis Gonzalez admitting to complicity in the sale and distribution of a controlled substance, and the financial matters of the NCE, SCS, TT and EBCE to authorities as required by law.

473. On or about February 8, 2021 Sypolt and Joseph Holley authorized, approved and authored a statement published in the Elko Daily Free Press declaring the newly appointed "Appellate Judge Sam Biers" for the Te-Moak Tribe.

474. On February 8, 2021 the Plaintiff received a copy of a document entitled "Notice of Appeal" signed by Skibine, directed to Bryan Bowker, (citing "25 C.F.R. 11.104"),

that contained a statement "[o]n behalf of the Te-Moak Tribe. . . I write this appeal," asserting that Dentons was "not aware of the existence of any other interested party as defined in 25 C.F.R. 2.2." Exhibit III-C(5). This same document acknowledged the Tribe's creation and establishment of the Te-Moak Tribe's Court system, by way of "Resolution 20-TM-129. . .readopting the Tribe's 1987 Law and Order Code, in accordance with the Tribe's Constitution" that included a copy of 20-TM-129 as "(Exh. 3)," and Skibine then referenced a pending mediation action and a fictitious legal standard as asserted by Skibine's former subordinate, Bryan Bowker. Id. Skibine, and Dentons, knew or should have known that the Plaintiff, as the Te-Moak Supreme Court Judge, was an interested party under Te-Moak tribal law.

475.   On February 7, 2021 Sypolt, an attorney with Dentons, sent the Plaintiff a text message, via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah that states ". . .[w]e need to monitor Facebook and respond to these idiots on a regular basis. If we don't the tide of criticism will continue to rise. Do you know a Steve McDade?"

476.   On February 8, 2021 Sypolt arranged for a meeting with Elko County and Elko City leaders and managers, including the Mayor, Commissioners and Sheriff to introduce the new Court personnel and judges. The Elko County Undersheriff contacted the Plaintiff and asked if the "BIA appellate judge was coming" to the event. The Plaintiff, unaware of the event, stated that a federal judge was not appearing because the Plaintiff was the Tribe's new appellate judge. The Elko City Mayor, Reece Keener, telephoned the Plaintiff to inquire why the Plaintiff was not attending the event, and the Plaintiff replied "because I was not informed an event was scheduled."

477.   On or about February 10, 2021 Sypolt and Joseph Holley authorized, approved and authored a statement published in the Vegas Publicity declaring the newly appointed "Appellate Judge Sam Biers" for the Te-Moak Tribe.

478.   On or about February 10, 2021 Sypolt and Joseph Holley authorized, approved and authored a statement published in the Pahrump Valley Times declaring the newly appointed "Appellate Judge Sam Biers" for the Te-Moak Tribe.

479.   On February 10, 2021 Sypolt, an attorney with Dentons, sent the Plaintiff a text message, via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah that states "[a]lmost all of the attacks are on you. They must be stopped immediately!! 1. Vivian Ottawa 2. Steve McDade 3. Davis Gonzalez." The Plaintiff

replied "ok, TM [Te-Moak] has a prosecutor, tribal attorney and trial judge with staff."   Sypolt telephoned the Plaintiff and stated "you need to have a staff member sit and monitor Facebook and respond to these attacks, we can't let this go on." Plaintiff replied "I refuse to govern by social media and certainly the world's largest law firm can handle three people on social media."  Sypolt hung up on the Plaintiff.

480.   On or about February 11, 2021 the Plaintiff communicated with Alexus Leyva after reviewing the documentation that Leyva submitted and the Plaintiff determined that someone had removed her daughter's documents from the Administration's filing folders and computer log, and that a check would issue because the TMC approved this action after the Plaintiff continued to report associated wrongdoing.

481.   On February 17, 2021 Sypolt stated to the Plaintiff and court personnel that the TMC ordered Sypolt to perform a background investigation on the Plaintiff when no official action existed to support or authorize this statement, claim or action.

482.   On or about February 17, 2021 the Plaintiff confronted Sypolt stating "there is no official action by the Council authorizing you to perform any investigation, you said that you already did an investigation, and you will cease your actions now that I am sworn in as the Supreme Court judge."  Sypolt argued that the TMC ordered him to do it, and the Plaintiff reminded Sypolt "there is no official action giving you any authority to perform a background on me.  Any more intrusions by you will be considered an invasion of my privacy."  Sypolt stated "I'm the Attorney General for this Tribe I can look into anyone's background."

483.   On or about February 22, 2021 Sypolt contacted Plaintiff's staff member, Finance Clerk Krystle Ward, and Sypolt ordered Ward to issue a check request without first obtaining TMC approval and without the Plaintiff's knowledge or approval when both the TMC and Plaintiff's approval are necessary before the issuance of a check.

484.   On or about February 22, 2021 Plaintiff delivered a Notice of Claim and Preserve Evidence to Davis Gonzalez stating that Gonzalez:
>   published false, defamatory, scurrilous and slanderous statements regarding the [Plaintiff]. . .joined with [Gonzalez'] prior statements regarding [Plaintiff's] race, culture and ethnicity in a discriminatory, negative context related to [Plaintiff's] employment, and [Gonzalez'] conduct, acts and omissions shall serve as evidence to show [Gonzalez'] intent, plan and/or purpose to deprive [the Plaintiff's] constitutional

'

> rights pursuant to <u>42 U.S.C. §§1981; 1982; 1983 and 1985</u>,
> *inter alia*. Please pay particular attention to section 1985
> subsection(1) as it relates to preventing a judicial officer from
> performing duties; subsection (2) Obstruction of Justice and
> (3)Depriving Persons of Rights or Privileges. . . Perhaps this
> would be a good time for you to review your United States and
> Te-Moak Constitutions, as well as your oath, to remind yourself
> what you swore to uphold.  See <u>Constitution of the Te-Moak
> Tribe, Art. 7 sec.6</u> ('faithfully and impartially'); <u>Art. 9, sec. 1(h)</u>
> ('deny to any person within [the Tribe's] jurisdiction the equal
> protection of the laws or deprive any person of liberty or
> property without due process of laws'). . . [Plaintiff] hereby
> Demand[s] that you, (including your agents, representatives
> and associates), Cease and Desist and immediately issue a
> written retraction related to any and all references to 'criminal
> history' associated with my name. . .

485.  Davis Gonzalez, acting pursuant to an **A1-A6** and **A8** agreement, plan or scheme with SCS; ECBE; Steve Sisolak; Aaron Ford; Darian Stanford; Paul Conable; Robin Evans; Leslie Grove; Kevin Clock; Thalia Marin; Juan Arevalo; Larry Yeager, and others, published and republished false and defamatory publications and statements regarding the Plaintiff stating that the Plaintiff is a "felon" to obtain the removal of the Plaintiff as the Te-Moak Tribal Administrator and appellate judge based on the Plaintiff's race, color, ethnic or national origin in retaliation against the Plaintiff reporting criminal conduct and to protect the continuation of the NCE and the distribution of cash proceeds from that enterprise to the individuals and entities as parties to the agreements, plans and schemes with the intent or purpose to violate or attempt to violate <u>21 U.S.C. §841</u>, <u>26 U.S.C. §7201</u>, <u>18 U.S.C. §1341</u>; <u>18 U.S.C. §1343</u>; <u>18 U.S.C. §1344</u>; <u>18 U.S.C. §1952</u>; <u>18 U.S.C. §1956</u>; <u>18 U.S.C. §1957</u>; <u>15 U.S.C. §§1, 2</u>; <u>31 U.S.C. §5138(h)</u>; <u>18 U.S.C. § 1960 et seq.</u> and the <u>Te-Moak Constitution, Article 4, sections 3, 4 and 12</u>; <u>Article 7, section 6</u>; <u>Article 8, sections 4 and 6</u>; and <u>Article 9, section 1</u>.

486.  On February 22, 2021 Sypolt sent or transmitted a text message to the Plaintiff via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah acknowledging the Plaintiff's authority under Te-Moak law as the Supreme Court Judge that states "[p]lease send me a complete list of the documents you need from the Tribal Court personnel.  I will gather them and then submit them to you.  This

will allow us to keep of (sic) separation of powers between the Te-Moak Court personnel & Te-Moak Administration... I will have the individual contracts to you this week... Remember all are independent contractors with the possible exception of Elisa Dave."

487. Ramon Acosta and the Plaintiff were both appointed to judicial offices on February 2, 2021 and thereafter Sypolt stated to the TMC that both J Acosta and the Plaintiff were contract employees, where no Te-Moak legal authority existed to support this claim. The Plaintiff stated to Sypolt "I will not sign any contract just because [Sypolt] want[s] me too."

488. On February 23, 2021 Krystle Ward, Te-Moak Finance Clerk, stated to the Plaintiff during a telephone call that Sypolt ordered her to sign a check request form, after signing it she stated that she realized the Plaintiff must first grant authorization, and Ward withheld issuance until the Plaintiff returned to work. Ref. Check Request Ramon Acosta (February 22, 2021). When Ward informed Sypolt that the Plaintiff must authorize the request and that Ward refused to issue a check, Sypolt threatened Ms. Ward with termination and Tanya Reynolds began to intentionally target Ward with adverse discriminatory conduct in the workplace based on Ward's race, color, ethnicity or creed. At the time Krystle Ward and Colby Boykin were non-Native employees of the Tribe.

489. On or about February 24, 2021 Davis Gonzalez publicly acknowledged receipt of the February 22, 2021 Notice of Claim stating "are you trying to scare me with that Notice of your's?" Plaintiff replied "no Davis, but you know that you can't publish false statements about me, especially to retaliate or force me out of my job."

490. On February 24, 2021 at a Te-Moak Tribal Council Meeting each member of the TMC received a copy of Joseph Holley's Annual Performance Appraisal concerning the Plaintiff as the Te-Moak Tribal Administrator. Joseph Holley read his findings into the record before Te-Moak Council members gave their individual assessments regarding the Plaintiff's performance. See, Exhibit III-B(9): Te-Moak Performance Plan and Evaluation Report RE Biers, (February 19, 2021).

491. On February 24, 2021 Joseph Holley stated "**I've done a one year review on Sam. There's very little that you can say that's wrong with Sam other than what goes on a day-to-day basis at work. Communication to some of his staff is lacking in sorts and I can understand because he's got a lot more stuff going on with the court now that were movin forward with it. All the, the stuff in front of you**

that he does every day tryin to gather us up a packet to proceed down that path, he does an awesome job of , of taking care of us.  The, the sad picture is gonna come, what are we going to do down the path?  You know he's been, now he's accepted the Supreme Court for the . . . How are we, what are we gonna do . . . We're gonna be in a lot of trouble." Exhibit II-C(9) at 3(00:33:45); e.g. at 3(00:33:46 and 00:33:47)(*Carrera and Tybo confirm "Appellate"*); Exhibit III-B(9).

492.    On February 24, 2021 Alice Tybo stated "**I'd like to talk a little bit about Sam and that is that I don't know how we could have gotten through this COVID thing and CARES Act funding without him.  He was so on top of it.  He kept us so . . .there were times like, 'another Resolution, really Sam?'  You know, but in the long run it's gonna save us.**" Exhibit II-C(9) at 3(00:34:50).

493.    On February 24, 2021 David Carrera stated in response to the Plaintiff's performance evaluation as the Tribal Administrator "[t]hat's what I like." Exhibit II-C(9) at 3(00:35:19); ref. Exhibit III-B(9).

494.    On February 24, 2021 Joseph Holley stated ". . . one he's the judge.  **I don't want any push back because legally he is the judge,**" and Alice Tybo responded in the affirmative "mnhmn." Exhibit II-C(9) at 3(00:35:43).

495.    On February 24, 2021 Joseph Holley stated "**I mean, there's nothing wrong with what Sam is doing.  I can't find any flaws other than you know what we do with him day-to-day and I address them with him on the sheet, and we talked about it, you know, from here out, how are we gonna be if Sam is missing we're gonna be missing a lot of information.  You know somebody else stepping in to take his shoes is, it's gonna be hard to re-train 'em and gettin this much information in front of you an for us to make fair and adequate calls.**" Exhibit II-C(9) at 4(00:37:29).

496.    On February 24, 2021 Alice Tybo stated that the Plaintiff "can still be our administrator . . . for number one we're not gonna have anything go to the appellate court for at least another six months." Exhibit II-C(9) at 4(00:38:30).

497.    On February 24, 2021 Joseph Holley stated "**[t]o get someone to mirror what Sam does is going to be really hard to find no matter what we do,**" and Paula Garcia agreed with Joseph Holley's statement regarding the Plaintiff's performance "[y]eah." Exhibit II-C(9) at 4(00:39:27 through 00:39:36).

498.    On February 24, 2021 Joseph Holley stated "depending on where [the Plaintiff] goes and how we design this from here on out it might get a little stickly.  You know we might not have the material that we need in front of us, we might not you know, [the Plaintiff] made a lot of changes for us, and it's for the good," and Alice Tybo replied "[r]ight," and Joseph Holley then stated that the Plaintiff "**helped us, he's benefitted us in every way there is as far as our Administration went and as far as us as the Te-Moak Council.  You know there's just no loose ends on how, how well versed he's been in guiding us to where we're at so...**"  Exhibit II-C(9) at 4(00:39:37 through 00:39:42).

499.    On February 25, 2021 Sypolt sent an email to the Plaintiff from a Dentons' email account via Lucent Technologies POP 100 gigabyte data switch in Salt Lake City, Utah that states "Hello Crystal.  Here is the signed document to employ Ramon Acosta as an Independent Contractor for the Te-Moak Tribe," and that electronic document contained a statement in the subject heading "Scanned document from HP ePrint user" consisting of invoices and billing statements for Ramon Acosta, no contract or any copy of a contract was included in or attached to the email the Plaintiff received from Sypolt on February 25, 2021 related to Ramon Acosta.

500.    On February 26, 2021 the Plaintiff received an email from Alexus Leyva asking "how I may submit a letter to the council outlining my positive experience with you in figuring this out[?]"

501.    On or about February 27, 2021 the Plaintiff sent an email to Alexus Leyva, in Salt Lake City, Utah informing her that checks were being processed and mailed, and reminding Ms. Leyva of her right to inform the TMC and "describe the positive and negative experiences with the staff."  Ms. Leyva telephoned the Plaintiff and stated that her experiences with the Plaintiff were uncommon in tribal government because the Plaintiff listened to her concerns, investigated the matter and provided clearly understood information in a manner Ms. Leyva felt was exemplary.  Ms. Leyva stated she would write a letter to the TMC stating the same.

502.    After the Plaintiff and Ms. Leyva communicated on February 27, 2021, her relative, Tanya Reynolds contacted Ms. Leyva at the instruction of Sypolt and demanded Leyva refrain from sending any positive comments regarding the Plaintiff to the TMC because it would interfere in the **A5** agreement, plan or scheme to terminate the Plaintiff and Reynolds' and Holley's plans to get re-elected to tribal office.

503. On or about February 27, 2021 Sypolt sent or transmitted an email from a Dentons account and Sypolt's personal email account that contained electronic copies of the invoices for all of the SCS Te-Moak Court personnel, (excluding the Plaintiff), to Darian Stanford via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah pursuant to the February 2, 2021 agreement between Darian Stanford; Paul Conable; Steve Olson; Kevin Clock; Elliot Parris; Dentons; Skibine; Chadwick Smith; Joseph Holley and Scott Sypolt, on behalf of TMC, SCS and TT, to use SCS and TT money to fund and finance the entire Te-Moak Court system in exchange for the placement of SCS-TT employees and judicial decisions allowing the continuation of the NCE to sell and distribute a controlled substance, marijuana. After receipt of the email and invoices by Darian Stanford, Paul Conable, Steve Olson, Darian Stanford, Kevin Clock and Elliot Parris agreed that no payment to support or fund the Te-Moak Courts will occur due to the TMC rejection of Darian Stanford's nomination as the Te-Moak appellate judge on February 3, 2021. Darian Stanford telephoned Sypolt and relayed the substance of that agreement to Sypolt.

504. On or about February 28, 2021 Sypolt and Joseph Holley agreed with Darian Stanford; Davis Gonzalez; David Carrera; Andrea Woods; Alice Tybo; Tanya Reynolds; Paul Conable; Steve Olson; Kevin Clock; Elliot Parris; Chadwick Smith, and others, to unite and work together to remove the Plaintiff as the appellate judge and Tribal Administrator, and thereafter replace the Plaintiff with Darian Stanford or another judicial candidate favorable to the continuation of the NCE pursuant to **A1-A6** an **A8**. See 42 U.S.C. §§2000e-2 and 2000e-3(*barring discrimination and retaliation for opposing unlawful employment practices*); 15 U.S.C. §§1, 2.

505. On March 1, 2021 the Plaintiff received an email from Sypolt that included an invoice for Te-Moak Judge Ramon Acosta totaling $7620.17 as a claimed debt owed to J. Acosta. The Plaintiff informed Sypolt that the charges were not authorized by the Te-Moak Tribal Council and therefore payment was denied. Sypolt stated that he made promises and if they aren't kept "some very important people are going to get nasty," whom the Plaintiff believed the threat referenced Governor Sisolak, Attorney General Ford and the attorneys at SCS and Tonkon Torp.

506. On March 1, 2021 Sypolt transmitted or sent an email to the Plaintiff's judicial email (tm.sup.ct.1@gmail.com), from a Dentons email account that stated "[h]ere are all the invoices for Ramon up [to] and included the March 5th Court Date," for a total of "$7,620.17," that included attachments consisting of various invoices and a check request signed by Joseph Holley on "3-5-2021," four (4) days before March 5, 2021.

507.  On or about March 1, 2021, again without Plaintiff's prior knowledge or permission, Sypolt again approached Plaintiff's staff to demand the staff issue a check request authorizing a check for payment in the amount of $7620.17 or "we won't have a court on the 5th."

508.  On or about March 1, 2021 USA Nicholas Trutanich resigned from the U.S. Attorney position in Nevada and took an employment position with FOX News as the Executive Vice President of Litigation.

509.  On March 1, 2021 Sypolt requested that the Plaintiff transmit a copy of the enacted version of the Tribe's Law and Order Code by facsimile to Dentons Partner Skibine, ("(202) 496-7756"), because Sypolt couldn't figure out how to send a large file via email or dropbox and Dentons refused or failed to assign a paralegal or legal assistant for Sypolt.

510.  On March 2, 2021 the Plaintiff informed Sypolt that Sypolt could send electronic files containing the newly drafted amendments to Te-Moak Law and Order Code from Illinois to the Office Depot in Nevada and that business would then print the files prior to Sypolt's arrival at the Dentons' Office in Salt Lake City, Utah. Sypolt stated he would send these electronic files after "they are reviewed by Dentons."

511.  On or about March 2, 2021 Sypolt and the Plaintiff communicated via telephone after the Plaintiff learned Sypolt again attempted to direct Te-Moak staff to perform at the direction of Sypolt without the Plaintiff's involvement.  During this conversation on or about March 2, 2021 Sypolt again threatened to "kick" Plaintiff's "ass," and threatened the loss of Plaintiff's job, after which the Plaintiff informed Joseph Holley and Alice Tybo, then the staff, of Sypolts' threats and misconduct.

512.  On March 3, 2021 Scott Sypolt, an attorney with Dentons, sent the Plaintiff a text message via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah that states "[p]lease FAX that La[w] & Order Code to Skibine.  He never received it."  The Plaintiff sent Sypolt a picture of the failed FAX receipt.

513.  On March 3, 2021 Sypolt, Dentons and Skibine entered a Notice of Appearance in the pending Mediation case at the U.S. OHA on behalf of the Te-Moak Tribe, (Docket No. ISDA 2017-01), without informing the Plaintiff or the Te-Moak Supreme Court, as necessary parties, when Sypolt, Skibine and Dentons were not authorized to represent the Te-Moak Supreme Court.  All of the proceedings before the United States Office of Hearings and Appeals were held or conducted through the Salt Lake

City, Utah offices for the Mediator, Kelly Latimer, Dentons, the U.S. Solicitor General and DOI-ALJ Heffernan.

514. On March 4, 2021 the Te-Moak Council enacted Resolution 21-TM-43 authorizing payment of wages for each judge, (the Plaintiff and Judge Acosta), based on the legal advice of Dentons and Sypolt, at a rate of "$1200.00 per Court appearance, up to $1,000.00 per month for outside work needed, plus lodging, per diem and mileage per month," when tribal law required the setting of wages for judges "at the time of his appointment," not a month after appointment. 87-ORD-TM-03, 1-3-17(A); e.g. Te-Moak Constitution, Article 8, sec. 5("*judges shall receive for their services, compensation which shall not be diminished*"). Sypolt intentionally advised setting judicial pay and time restrictions at a minimum to permit Sypolt to perform judicial functions at a rate of $765.00 per hour. See 15 U.S.C. §§1, 2. Sypolt failed to advise, reasonably investigate or complete necessary wage rate research pursuant to Te-Moak law requiring wages to be set at the time of appointment, not a month later.

515. On March 4, 2021 the TMC granted the Plaintiff permission to discuss court and court personnel matters, including payment related matters, with newly appointed and hired court personnel Acosta, Smart, Dave and Laughlin to secure their continued employment and attendance the following day, March 5, 2021 the first day of court for the Te-Moak Tribe, after the Plaintiff reported to Council that Acosta, Smart, Dave and Laughlin all intended to resign due to the level of misconduct Sypolt direct toward each individually, with Ms. Laughlin stating she thought "I got PTSD after Scott [Sypolt] screamed and yelled at me over the phone so many times, I was shaking even after he hung up."

516. On March 4 and 5, 2021 Te-Moak Court staff individually communicated to the Plaintiff that Sypolt ordered all support staff, including the prosecutor, to transmit all filings to Sypolt before any filing was sent to the judges, with Sypolt stating that he was the "Attorney General for the Tribe." When the Plaintiff met with all of the court personnel on March 5, 2021 each staff member separately stated that Sypolt demanded their invoices and then sent an email with their invoices to Darian Stanford because "SCS is paying your salaries and everything for the court," using Sypolt's rocketmail email account and CC'g the staff, excluding the Plaintiff.

517. On March 4, 2021 the TMC enacted Resolution 21-TM-44 creating the Administrative Office of the Courts, accepting the 2021 Judicial Services Start Up Budget ($111,381.00) and transferring "$54,000.00 from the Nevada State Bank 'RAMAH' Account," with authorization granted to the Chairman and Vice Chairman

"to open a Credit Card account specifically for the Administrative Office of the Courts." Thereafter, Zionsbank and NSB mutually maintained assets, funds and credit for the Te-Moak Administrative Office of the Courts.

518. On March 4, 2021 during a TMC meeting Joseph Holley gave a positive review of the Plaintiff's performance evaluation and several Council members gave their positive impressions of the Plaintiff as the Tribal Administrator.  Sypolt falsely claimed there is a potential conflict of interest with the Plaintiff serving as the Tribal Administrator and the Supreme Court Justice, and then presented a draft copy of the Law and Order Code, the work product of Ramon Acosta and a paralegal.

519. On or about March 4, 2020 prior to the TMC meeting Sypolt stated to the court staff, individual Council members and J. Acosta that the Plaintiff is a "felon," and "a criminal," announcing Sypolt's "embarrassment for the court."  See 42 U.S.C. §§2000e-2 and 2000e-3(*barring discrimination and retaliation for opposing unlawful employment practices*).

520. On March 4, 2021 at the TMC meeting Sypolt stated that the Plaintiff should be excluded from the prior appointment to appellate court judicial position because the Plaintiff lacked a state issued bar license.  Plaintiff reminded Sypolt of the Dentons' sanctioned September 10, 2020 memorandum that state law no longer applied to the Te-Moak Tribe, that the Tribe paid Sypolt and Dentons to produce that document, and that the only constitutional qualifications for a judicial appointment are over "30" and "good moral character."  Plaintiff stated that the draft Code presented by Sypolt and Dentons that day referenced non-existent clauses and non-existent Resolutions, "like Res. No. 21-TM-000," as constituting official action by the Tribe, and that at one point the draft Sypolt submitted abrogated tribal sovereignty back to state law.  Plaintiff then asked the Chairman if the Council would then and there issue a license to practice law on Te-Moak lands to legitimatize the court system for the following individuals until the Court operations began:  Ramon Acosta; Sam Biers; Anne Laughlin and Scott Sypolt, and the Te-Moak Council agreed and granted the licenses by majority vote.

521. On March 4, 2021 Juan Arevalo submitted his resignation to his seat on the TMC and the TMC accepted that resignation by way of Te-Moak Resolution 21-TM-38.

522. On March 5, 2021 the Plaintiff, Ramon Acosta, Elise Dave, Tildon Smart and Anne Laughlin attended the first session of the Te-Moak Tribal Court.  Once court

adjourned, the Plaintiff answered the court staff's questions with information authorized pursuant to the permission granted to the Plaintiff by the TMC.

523.   On March 5, 2021 each member of the court staff individually stated to the Plaintiff that Scott Sypolt was verbally harassing them at their homes, including emotionally and verbally berating Laughlin with calls late at night.  Sypolt demanded separately from each Te-Moak court staff member loyalty to Sypolt while claiming that the Plaintiff was a criminal and an ex-felon as Sypolt sought to gain the support from the court personnel to remove the Plaintiff through adverse employment action.  See 42 U.S.C. §§2000e-2 and 2000e-3.

524.   On March 5, 2021 each court staff member recounted to the Plaintiff a list of promises that Sypolt made to each of them and the Plaintiff assured each staff member that their wages were approved, and then each court staff member individual stated that Sypolt instructed them to transmit copies of all communications, filings and orders for Sypolt's pre-authorization and review before publication or filing with the court.  J. Acosta stated on that day that he wrote and drafted the new amendments to the Te-Moak Law and Order Code presented by Sypolt, and that Sypolt then had an elderly paralegal "in North Chicago type up" Acosta' work.  Sypolt stated that "Dentons will take credit" for drafting the new amendments to the Te-Moak Law and Order Code and pay Acosta "on the backend."

525.   On March 5, 2021 the Plaintiff informed Sypolt and the court staff that Sypolt was thereafter barred from communicating with court personnel regarding the business and administration of the courts without a court order.

526.   On or about March 8, 2021 the Plaintiff held a mandatory Te-Moak Office staff meeting as directed by Holley.  At this meeting Reynolds admitted to possessing, obtaining and publicly disseminating confidential personnel records, and Reynolds admitted that Alice Tybo and Duane Garcia provided Reynolds with restricted information before attacking all the non-Native American staff for being non-Native American. See N.R.S. §205.463; Privacy Act, (5 U.S.C. §552 et seq.); 42 U.S.C. §13925(b)(2); 2 C.F.R. §200.207 and §200.338; Resolution 03-TM-13)(criminal act to release private confidential information without authorization).

527.   On March 8, 2021 the Plaintiff instructed the Te-Moak Recording Secretary, Colby Boykin, to set a meeting with Sypolt to review all of the 15 completed contractual obligations Sypolt stated that he fully completed to Council on February 24, 2021 as compared to the billing statements submitted on December 10, 2020.

528. On March 9, 2021 at 11:03 a.m. Sypolt sent a text message to the Plaintiff, via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah that states "[p]lease call me. Very important. Let's have you and Joe [Holley] on the line."

529. On March 9, 2021 at 12:47 p.m. Sypolt sent a text message to the Plaintiff via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah that states "I need your birth date and social [security number] in order to complete the Background check the Council asked me to run."

530. On March 9, 2021 at 12:48 p.m. Joseph Holley sent a text message to the Plaintiff via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah that states "Scott [Sypolt] wants your birthday & social [security number]."

531. For the period between July 1, 2020 and March 10, 2021 the TM never voted to approve official Council action granting the authorization, instruction, direction or order to or for Sypolt to conduct a background investigation or background check on the Plaintiff.  The Plaintiff refused to grant Sypolt authorization to possess, use, release of disseminate the Plaintiff's personal, confidential information, and Sypolt, as an attorney with Dentons, intentionally released, disclosed and disseminated the Plaintiff's birth date, social security number, credit history and falsified background information, pursuant to A5 agreement, plan or scheme with Sisolak; Ford; Holley; Reynolds; Stanford; Tybo; Garcia; Gonzalez; Carrera; Marin; Marla McDade; Joseph McDade and Kristen Hevener to violate or attempt to violate the civil and criminal provisions of N.R.S. §205.463; Resolution 20-TM-132; Privacy Act, (5 U.S.C. §552 et seq.); 42 U.S.C. §13925(b)(2); 2 C.F.R. §200.207 and §200.338; Resolution 03-TM-13(*criminal act to release private confidential information without authorization*).

532. On March 10, 2021 the Plaintiff received an email chain of wire communications between J. Acosta and Sypolt sent to all Te-Moak Court personnel, wherein Sypolt is disparaging J. Acosta as a sitting judge before attempting to blame J. Acosta for attacking Plaintiff's character, where Sypolt "expressed [Acosta's] concerns over [the] selection of Samuel Biers as the Supreme Court Tribal Judge. . .[a]fter careful review the Council has made a definitive choice to keep Mr. Biers as their selection."

533. On March 10, 2021 the Plaintiff, acting as the appellate judge for the Te-Moak Supreme Court, issued a sealed order regarding the custody and care of documents and evidence, "as directed by United States Department of Justice Federal Bureau of Investigations Andrew Melville and the agents of the United States Office of the Inspector General—Treasury. . .and as may be necessary to preserve[ ] the

'administration of justice' and 'welfare' of the Tribe." <u>See</u> <u>Exhibit I-B(2)</u>: <u>Sealed Order</u> at 1 (March 10, 2021).

534. On March 10, 2021 the TMC instructed Colby Boykin to have Ms. Sakala, the Te-Moak Receptionist, post an advertisement online, and to make sure a log was made recording the event as the TMC recessed.  Ms. Boykin returned stating that the task was completed by Sakala.  At the conclusion of the meeting, the Plaintiff received notices from tribal members that the online post suddenly disappeared, and when the Plaintiff examined the computer log the prior entry no longer existed.

535. On March 10, 2021 the Plaintiff asked Ms. Sakala about the missing log, and Sakala remained adamant that the post was published online, with the log entry, and offered the handwritten version.  Then, Ms. Sakala confronted the Plaintiff with a list of accusations against the Plaintiff stating the Plaintiff "treated her differently," and that the Plaintiff was negligent in his job duties related to the preparation of documents for the TMC.  The Plaintiff informed Ms. Sakala that as an employee on probation falsely substituting her decisions for that of the TMC and the Plaintiff constituted insubordination and she was relieved of her position.  It was then that Ms. Sakala stated she was "told" by Reynolds and Walker "to say these things, I did not mean them Sam," before Ms. Sakala recited the entire events.

536. According to Ms. Sakala, on March 10, 2021 while the TMC held a meeting Tanya Reynolds and Alfreda Walker kept Ms. Sakala behind locked doors.  During that locked door meeting, Ms. Sakala stated that Reynolds and Walker, (*acting on the instructions of Sypolt and Holley pursuant to the* **A1-A5** *agreement, plan or scheme*), coached Sakala on how to interfere with the Plaintiff's job performance and to inform the TMC that the Plaintiff discriminated against Sakala due to Ms. Sakala's race, culture or nationality.  <u>See</u> <u>42 U.S.C. §§2000e-2 and 2000e-3</u>.

537. On March 10, 2021 the Plaintiff, Reynolds, Boykin and Walker discussed the events that day.  Reynolds and Walker admitted to coaching Sakala to present a false racial discrimination claim against the Plaintiff after the Plaintiff informed them that Ms. Sakala was terminated.  Walker admitted that Reynolds and Holley instructed Walker to perform tasks without authorization for the expenditure of federal funds and without the Plaintiff's knowledge.  Reynolds and Walker admitted they both gained access to confidential, personnel records and disseminated confidential information into the public to retaliate against the Plaintiff, without authorization, specifically releasing information regarding Boykin, Ward and the Plaintiff.  <u>See</u> <u>42 U.S.C. §§2000e-2 and 2000e-3</u>(*barring discrimination and retaliation for opposing*

*unlawful employment practices*); 15 U.S.C. §§1, 2; N.R.S. §205.463; Resolution 20-TM-132; Privacy Act, (5 U.S.C. §552 et seq.); 42 U.S.C. §13925(b)(2); 2 C.F.R. §200.207 and §200.338; Resolution 03-TM-13(*criminal act to release private confidential information without authorization*).  Reynolds yelled and screamed at the Plaintiff making additional admissions that Alice Tybo provided Reynolds with confidential, personnel information regarding Boykin, Ward and the Plaintiff from the locked personnel files.  Walker and Reynolds agreed to accept responsibility for the admissions and events if the Plaintiff agreed to re-hire Ms. Sakala.  Id.

538.  On March 10, 2021 the Plaintiff met with Ms. Sakala and explained what transpired with Reynolds, Walker and Boykin, and the Plaintiff apologized to Ms. Sakala and offered to assist Ms. Sakala with the process to file a grievance, including against the Plaintiff, and the Plaintiff rescinded the termination immediately.  Ms. Sakala stated that the responsibility rested with "Tanya and Alfreda, not you Sam."  Ms. Sakala resumed her job at the Te-Moak Offices.

539.  On March 11, 2021 the Plaintiff received a written complaint against Tanya Reynolds and Alfreda Walker from the Te-Moak Recording Secretary, Colby Boykin, stating "[d]ue to the events that transpired after the Council meeting yesterday 3/10/21, it has come to my attention that there is a hostile work environment in the office due to two employees attitudes toward me and my position with Te-Moak, making me feel discriminated against and not welcome," and this was sent to Joseph Holley, Reynolds' paramour, as the Chairman of the Tribe.

540.  On March 11, 2021 the Plaintiff requested that Hinton-Burdick collect all internal information, documents and records related to Tanya Reynolds' performance as the EPA Director for Te-Moak, supplementing the prior request and then provide a summary report to the Plaintiff.

541.  On or about March 13, 2021 the Plaintiff was notified that an alarm was triggered at the Te-Moak Administration Office building located at 525 Sunset Street by Vivint Security and Enrollment Director Sharla Dick.  The Plaintiff contacted BIA Dispatch and gave notice of Plaintiff's estimated time of arrival, and BIA Dispatch stated to the Plaintiff that BIA Officer Dux Lopez was enroute to the scene.  A visual inspection revealed that someone entered the West side door, which was now open, and Officer Lopez attempted to prove that the door opened by the wind, and that exercise failed to produce results supporting the conclusion.  The Plaintiff reset the alarm and locked the doors after Officer Lopez and the Plaintiff exited the building.

542.  On March 15, 2021 when the Plaintiff entered the Te-Moak Office building and entered the Plaintiff's Tribal Administrator Office a small item on the floor caught the Plaintiff's attention because the Plaintiff vacuumed the floors throughout the building as the last person to leave on Friday and this item was not present when the Plaintiff locked the building after all staff left on Friday for the work week.  This item was a SIM card registered to Alfreda Walker through the Choice Broadband cellular phone company in Ely, Nevada.  Since the break-in on March 13, 2021 some of the Plaintiff's passwords and CARES Act investigation folders were noticeably missing, and Plaintiff believes Alfreda Walker broke into the Plaintiff's office and stole the material at the direction, instruction or advice of and/or with the assistance of Tanya Reynolds, Joseph Holley and Alice Tybo to eliminate evidence implicating Tanya Reynolds and Alfreda Walker to CARES Act fraud.

543.  On March 15, 2021 Joseph Holley affixed his signature as the Chairman of the Te-Moak Tribe to a document entitled "MEMORANDUM" that states:

> I grant the Tribal Administrator, Samuel L. Biers, paid administrative leave for the following dates and times:  March 15, 2021 (5 hours); March 16-19, 2021 (25.5 hours) and March 29, 2021 (8 hours).  Mr. Biers will be on bereavement leave for the loss of an immediate family member for the period March 19, 2021 through March 29, 2021 and he will be using his sick leave totaling 40 hours for that week as allowed by policy.  Exhibit III-B(7) (*document was openly displayed in the Te-Moak Offices, with copies sent to all staff and council members via email, including a hard-copy placed in each TMC member's mailbox before the Plaintiff was absent on leave*).

544.  On March 15, 2021 EBC accepted Juan Arevolo's resignation from the TMC, eleven days after Arevalo's verbal resignation to the TMC by way of Elko Band Council Resolution 2021-EBC-15.

545.  On or about March 15, 2021 the Plaintiff reviewed federal forms received from Hinton-Burdick and then verified through the federal government secured website Grant Solutions that Tanya Reynolds submitted falsified federal documents with the intent or purpose to defraud the federal government.  See 18 U.S.C. §§1000 and 1001.  The United States' Grant Solutions data base revealed that Tanya Reynolds affixed her electronic signature as the authorized representative for the Te-Moak Tribe and Tanya Reynolds affixed her electronic signature asserting that Reynolds was the "Chairman" of the Te-Moak Tribe, dated on or about January 14, 2021, a time when Reynolds was neither authorized or the Chairman of the Tribe.

546. On or about March 15, 2021 Alice Tybo invited the Plaintiff to her home on the South Fork Indian Reservation to discuss the fact that Holley refused to answer Plaintiff's phone calls or communicate with the Plaintiff, and to confirm the filing of reports related to misconduct involving Sypolt and Reynolds, her sister.

547. On March 16, 2021 the Plaintiff gave physical custody of the Tribal Administration files, folders and documents, the password book and USB drives to Joseph Holley before the Plaintiff left on bereavement leave, and Holley asked "what am I supposed to do with this, you know I don't know anything about all this shit?"

548. On or about March 16, 2021 the Te-Moak Finance Clerk, Krystle Ward, stated that she was resigning because of Tanya Reynolds' public admission that Reynolds gained access to Mrs. Ward's personnel records and publicly disseminated that information and also because Tanya Reynolds continued to use disparaging terms and hostile language at or related to Mrs. Ward on the basis of Ward's race, color, culture or nationality.  The Plaintiff asked Mrs. Ward to allow the Plaintiff an opportunity to address the matter and withhold her decision until the following day.

549. On or about March 17, 2021 the Te-Moak Finance Clerk, Krystle Ward, stated that she was resigning from her position with Te-Moak since Tanya Reynolds continued to openly call Mrs. Ward a "white bitch" and a "diabo bitch" in the office and because of Tanya Reynolds' public admission that Tanya Reynolds unlawfully gained access to Ward's personnel records and disseminated that information in a harmful manner to other staff and public.  Ms. Ward provided the Plaintiff with a simple resignation letter, stating she did not want any more confrontation with Reynolds.

550. On or about March 17, 2021 the Plaintiff reported criminal conduct and fraud with the U.S. Environmental Protection Agency Office of Inspector General and the FBI specifically related to Tanya Reynolds' filing and signing federal forms under penalty of perjury as the "Chairman" and as "Authorized Representative" when both statements were materially false and untrue.  After reviewing the prior disciplinary action for insubordination and all the material concerning Tanya Reynolds, the Plaintiff decided to terminate Tanya Reynolds' employment with Te-Moak for cause.

551. On March 18, 2021 Te-Moak Recording Secretary, Colby Boykin, submitted a lengthy written complaint, dated March 10, 2021, re-stating facts and events that transpired with Tanya Reynolds, Alfreda Walker, Sybil Sakala and the Plaintiff on March 8 and 10, 2021 where Reynolds and Walker publicly admitted to gaining unlawful and unauthorized access to confidential, personnel records, making sexual references

toward the Plaintiff, making abusive and racists comments toward all non-Native Americans on the job, and then releasing and disseminating the contents of the personnel records and information, unlawfully accessed and obtained, into the public to cause harm against Mr. Boykin, Mrs. Ward and the Plaintiff.  Ms. Boykin resigned as a result of Reynolds and Walkers' conduct at the workplace.

552. On or about March 18, 2021 the Plaintiff prepared a lengthy termination packet of nearly 30 pages of supporting documents, including Boykin's complaint, and the Plaintiff instructed Te-Moak Law Enforcement Officer Ruben Ramirez to personally serve Tanya Reynolds when she entered the building that day.  Officer Ramirez stated that service was effectuated on Tanya Reynolds at approximately 8:10 a.m. that day and that Reynolds screamed profanities while running up and down the hallways stating that her termination was the fault of the "white bitches" and "that mother fucking diabo Biers" while slamming doors for an extended period of time. That morning Tanya Reynolds communicated with Sypolt, via telephone and email, and during these communications Sypolt gave Tanya Reynolds legal advice and assurances that Biers' would be "dealt with, terminated," and that Tanya Reynolds would get her "job back with back pay" because Tanya Reynolds was the Chairman's paramour, as part of **A5**.

553. On or about March 19, 2021 the Plaintiff reported to US Treasury OIG and FBI known criminal conduct at Te-Moak involving federal funds and threats against Plaintiff's life and other acts of retaliation by Sypolt, Holley, Tybo, Garcia, Carrera, Gonzalez, and others, against the Plaintiff.  See 42 U.S.C. §2000e et seq. and 18 U.S.C. §§1503; 1510; 1512-13.

554. The TMC claimed that it held a meeting on or about March 19, 2021 where Joseph Holley; Paula Garcia; Alice Tybo; Duane Garcia, Sr; Andrea Woods; David Carrera and Davis Gonzalez attended and pursuant to the advice of Sypolt, agreed to terminate the Plaintiff as the Te-Moak Tribal Administrator, to seek the reinstatement of Tanya Reynolds, (with back pay, benefits and interest), and to remove the Plaintiff as the Te-Moak Supreme Court Judge in direct conflict with existing law, pursuant to an **A1-A6** agreement, plan or scheme.  See 42 U.S.C. §§2000e-2 and 2000e-3(*barring discrimination and retaliation for opposing unlawful employment practices*).  The motion passed to remove the Plaintiff as the judge and terminate the Plaintiff as the Tribal Administrator shown by Resolution 21-TM-50. The Council reinstated Tanya Reynolds, (*the sister of Alice Tybo and sister-in-law to Duane Garcia, Sr., when neither abstained from the vote*), with backpay using federal funds, vacation and sick leave after Sypolt offered one (1) page of the termination

packet produced by the Plaintiff, with Sypolt falsely stating that Colby Boykin failed to file "any complaint against Tanya" and that the Plaintiff denied Reynolds' right to due process.

555. On March 19, 2021 Sypolt, as an attorney for Dentons and employed to represent the Tribe, stated via a cellular phone broadcast over Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah that Sypolt represented Tanya Reynolds, a discharged Te-Moak employee, and then advised the TMC to terminate the Plaintiff as the Tribal Administrator because the Plaintiff reported fraud or criminal conduct and because the Plaintiff terminated Holley's paramour, Reynolds, pursuant to a **A1-A6** agreement, plan or scheme. 42 U.S.C. §2000e-3.

556. On March 19, 2021 Sypolt, as an attorney for Dentons, falsely stated via cellular phone broadcast over Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah that the TMC held, possessed or retained unfettered authority to recall and remove the Plaintiff as a judge by Resolution, and that the original Resolution appointing the Plaintiff contained a condition that the Plaintiff successfully passing a background investigation, (*Sypolt claimed he performed or paid for a recent background investigation using the Plaintiff's date of birth and social security number obtained and used without the Plaintiff's consent*), Sypolt advised the TMC that day to remove, fire and terminate the Plaintiff as "a convicted felon in two different states," pursuant to **A5** and retaliate against the Plaintiff. See 42 U.S.C. §§2000e-2 and 2000e-3(*barring discrimination and retaliation for opposing unlawful employment practices*); 15 U.S.C. §§1, 2; N.R.S. §205.463; Resolution 20-TM-132; Privacy Act, (5 U.S.C. §552 et seq.); 42 U.S.C. §13925(b)(2); 2 C.F.R. §200.207 and §200.338; Resolution 03-TM-13(*criminal act to release private confidential information without authorization*).

557. At the March 19, 2021 Sypolt, as the attorney for Dentons representing the Tribe, stated via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah cellular telephone connection with the TMC,  was asked by the TMC why didn't Sam get a due process to appear and why didn't he get to respond when "everyone knows he wouldn't submit just a one (1) page document" to terminate a staff member, especially not Joe's girlfriend, and Sypolt stated "because he's white, he's on tribal land and this Council doesn't have to follow federal law because you all are sovereign." See Te-Moak Personnel, Part IV at 6(*"insure[ ] equal opportunity in recruitment and selection. . .disciplinary action and all other related personnel procedures and practices in accordance with the Indian Self-Determination and Education Assistance Act, P. L. 93-638. . .Section 7, the Civil Rights Act, amended by P.L.*

*92-621, Section 703*”); Part X(A)-(C)(3) at 18-19(*all employees are entitled to due process*); see also, Te-Moak Constitution, Art. 9, section 1(a) and (h)(“*[t]he Tribe. . .shall not . . .[deny the right] to petition for redress of grievances. . .[nor] [d]eny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process*”); e.g. 42 U.S.C. §§2000e-2 and 2000e-3.

558. The enacted version of Resolution 21-TM-50 terminated the Plaintiff as the Tribal Administrator that included a date of March 19, 2021, without affording the Plaintiff any due process nor any prior Notice, when Joseph Holley; Alice Tybo; Duane Garcia, Sr; Andrea Woods; David Carrera; Sypolt; Skibine; Dentons and Davis Gonzalez knew or should have known that the Plaintiff was in Michigan on bereavement leave from March 19 through March 30, 2021, and then the Plaintiff remained on mandatory COVID quarantine until April 5, 2021. Id; e.g. Exhibit III-B(7).  Resolution 21-TM-50 states “by way and through a majority vote of the Te-Moak Tribal Council, permanently and immediately terminates Samuel Lee Biers as the Te-Moak Tribal Administrator. . .” See 42 U.S.C. §§2000e-2 and 2000e-3; and 18 U.S.C. §§1503; 1510; 1512-13.  The Plaintiff received a copy of Resolution 21-TM-50 in July 2021.

559. On or about March 20, 2021 Hinton-Burdick confirmed with the Plaintiff during a telephone call that a check in the amount of $7620.17 was signed and authorized by Joseph Holley and Alice Tybo for payment of Sypolt's self-generated authorization and payment request for J. Acosta in excess of the amount authorized by Resolution 21-TM-43.  During the telephone calls with R. McKay Hall and Stacy Richardson throughout the week of March 20, 2021 both stated the TMC did not give notice of termination regarding the Plaintiff.

560. On or about March 23, 2021 FBI and OIG Agents conducted an interview with the Plaintiff who reported allegations of fraud, waste and corruption involving:  Joseph Holley; Alice Tybo; Tanya Reynolds and Scott Sypolt.  During this interview the Plaintiff reiterated the threats against the Plaintiff, and the Plaintiff requested Whistleblower protection.  Agents stated that because of the complaints and the information that the Plaintiff provided, the Plaintiff was protected under the Whistleblower Act and that agents would look into the threats.  See 42 U.S.C. §2000e et seq. and 18 U.S.C. §§1503; 1510; 1512-13.

561. On or about March 24, 2021 the FBI sent an email to the Plaintiff related to the Whistleblower Act and the Plaintiff's status as a Whistleblower after the March 23, 2021 conference due to Plaintiff's filing of OIG/FBI reports and providing the Plaintiff with Whistleblower Act information. Exhibit III-D(5); ref. 5 U.S.C. ¶2302(b).

562. On or about March 25, 2021 Elisa Dave, Te-Moak Tribal Court Administrator and Court Clerk, sent an email chain of communications consisting of approximately nine (9) pages from an exchange to and from the email addresses of Scott Sypolt and newly appointed Judge Ramon Acosta. See Exhibit III-D(4). The Sypolt-Acosta email messages included abusive, unethical and unprofessional statements by Sypolt that related to J. Acosta, as an attorney working for Dentons on behalf of the Te-Moak Tribe. Id. This email exchange was CC'd to Dentons managing attorney J. Ross Docksey, all TMC members, Ramon Acosta and the Plaintiff, by Elisa Dave, at Plaintiff's direction as the Te-Moak Supreme Court Judge. Id.

563. In the email exchange that Sypolt sent to J. Acosta on Dentons' letterhead as Denton's attorney assigned to represent the Tribe, (dated March 10, 2021), Sypolt falsely blamed J. Acosta for Sypolt's public declaration that the Plaintiff is a felon, who must be removed from judicial office, an accusation that J. Acosta refuted entirely, and in response to that refutation, Sypolt stated that J. Acosta's "work product is horrible and you are a clown in front of a crowd. Id. You are the most unethical, manipulative a-hole I have ever met." Id. J. Acosta replied to Sypolt "I did not threaten to quit because of Sam, I threatened to quit because of you. I did not have a choice and I like Sam. I just questioned the code. You became unhinged, again...To be clear, I was not your choice, I was the tribal council's choice, as was Elisa and the others." Id. Dentons, Skibine, Docksey and Sibbison ratified Sypolt's conduct as Dentons' conduct by tacit agreement or approval when Dentons failed to intervene, re-assign a supervising attorney to the Tribe or take disciplinary action against Sypolt.

564. On or about March 29, 2021 the TMC convened a "Closed" Meeting in Battle Mountain without notice or due process to the Plaintiff, where Joseph Holley; Alice Tybo; Duane Garcia, Sr; Andrea Woods; Clifton Oppenhein; Robert Brady; David Carrera and Davis Gonzalez attended this meeting to correct the motion and official action from March 19, 2021 as it related to the termination of the Plaintiff. Sypolt and Alice Tybo demanded that the windows were blacked out with blankets, all recording and phones turned off, no notes were allowed to be taken, including who made the motion or second, with Andrea Woods only recording the vote total itself. See 42 U.S.C. §§2000e-2 and 2000e-3; 18 U.S.C. §§1503; 1510; 1512-13.

565. On or about March 29, 2021 Sypolt directed the Te-Moak Tribal Council, through Joseph Holley, to hold and conduct a Council meeting without proper Notice of the meeting; without any due process or notice to the Plaintiff; without a Recording Secretary present; without any audio or manual recording including voting and with

blankets draped over the windows.  Joseph Holley; Alice Tybo; Duane Garcia, Sr;
Andrea Woods; Clifton Oppenhein; David Carrera and Davis Gonzalez agreed to
backdate Resolution 21-TM-50 to March 19, 2021 to correct the motion by removing
the termination of the Plaintiff as a judge.

566.   On March 29, 2021 Sypolt, as the attorney for Dentons, stated via cellular phone
broadcast over Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City,
Utah to the Te-Moak Tribal Council that Plaintiff released confidential information
from a "Closed Council Meeting" held on March 4, 2021 without authorization when
at the March 4, 2021 Closed meeting the Council specifically authorized the Plaintiff
to release the information to newly hired court personnel.

567.   On or about March 29, 2021, as a sub-recipient of federal funding Dentons'
representative Sypolt assailed the Plaintiff's race, color, culture, class or ethnicity in
an intentionally false and derogatory manner to obstruct, hinder or prevent the
Plaintiff from exercising his constitutional rights to employment, travel, contract,
equal protection, due process and to be free from excessive force by the government
with the intent or purpose to violate or attempt to violate 42 U.S.C. §§2000e-2 and
2000e-3; and 18 U.S.C. §§1503; 1510; 1512-13.

568.   On or about March 29, 2021 Sypolt offered a draft document to the TMC for
consideration as notice of termination to the Plaintiff as the Te-Moak Tribal
Administrator, and the TMC rejected that document as wholly deficient under the
"Te-Moak Personnel Policy."  At this TMC meeting and pursuant to an agreement,
plan or scheme to continue the NCE and its operations entered into between, by or
with SCS, TT and EBCE, Defendants Skibine; Sypolt; Davis Gonzalez; Alice Tybo;
Joseph Holley; David Carrera; Duane Garcia, Sr; Andrea Woods; Sibbison; Joseph
McDade; Adela Morrison; Steve Sisolak; Aaron Ford; Thalia Marin; Darian Stanford;
Steve Olson; Paul Conable, and others, agreed to terminate the Plaintiff from
employment with the Tribe as a result that will permit the Defendants and entities
to receive, transfer and exchange unreported cash proceeds from the sale and
distribution of a controlled substance, marijuana, at the NCE retail store with the
intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18
U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18
U.S.C. §1957; 31 U.S.C. §5138(h); 18 U.S.C. § 1960 and the Te-Moak Constitution,
Article 4, sections 3, 4 and 12, and to then unlawfully attempt to terminate the
Plaintiff as the Te-Moak Supreme Court judge in retaliation for the Plaintiff
reporting the criminal conduct related to and associated with the NCE without
affording the Plaintiff due process and equal protection rights, among other rights,

as required by the Te-Moak Constitution, Article 9 and the U.S. Constitution, Amend. 5 and 14; Article 1, sec. 10, cl. 5; Article 2, section 2; Article 4, sec. 2, cl. 1 and Article 6. See also, 18 U.S.C. §§1503; 1510; 1512-13

569. On or about March 30, 2021 at an EBC Public Meeting Davis Gonzales celebrated the enactment of Resolution 21-TM-50 by stating to the public, in violation of federal and tribal law regarding Privacy, Personnel and Confidential Records, that "Te-Moak terminated Sam Biers as the Administrator." See 42 U.S.C. §§2000e-2 and 2000e-3*(barring discrimination and retaliation for opposing unlawful employment practices)*; 15 U.S.C. §§1, 2; N.R.S. §205.463; Resolution 20-TM-132; Privacy Act, (5 U.S.C. §552 et seq.); 42 U.S.C. §13925(b)(2); 2 C.F.R. §200.207 and §200.338; Resolution 03-TM-13*(criminal act to release private confidential information without authorization)*. Defendant Gonzalez made no reference to the Plaintiff being terminated as a judge at this time.

570. On or before March 29, 2021 Sypolt; Skibine; Dentons; Joseph Holley; Alice Tybo; Duane Garcia, Sr; Andrea Woods; Paula Garcia; Clifton Oppenhein; David Carrera and Davis Gonzalez failed to give actual notice related to any proceeding, hearing or event related to the Plaintiff's termination. Id.

571. On or about March 30, 2021 Elwood Mose telephoned the Plaintiff and stated that Alice Tybo publicly stated by voice, text and email to tribal members and tribal officials that "Te-Moak fired Sam as the Administrator and judge." Id.

572. On or about March 31, 2021, while on COVID-19 leave as required by Te-Moak policy, the Plaintiff received an alert from Well Fargo Bank informing the Petitioner that a deposit was made by the Te-Moak Tribe, and on review the amount approximately matched the Plaintiff's total accrued vacation, overtime and regular time owed to the Plaintiff from the Te-Moak Tribe as the Tribal Administrator.

573. On or about April 2, 2021 the Plaintiff transmitted a large packet of information, by email, via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah including over 20 pages of documents supporting Tanya Reynolds' Discharge, entitled Plaintiff's "Grievance," that included statements and attachments supporting allegations of Dentons assigned attorney Sypolt's misconduct, fraud, criminal conduct and misrepresentations to the TMC and Dentons US Partner J. Ross Docksey that included the following statements:

a.  Scott Sypolt provided "legal counsel to a discharged [Te-Moak] employee [Tanya Reynolds] with instructions to assert a failure to give [Reynolds] due process;"

b.  Scott "Sypolt sought and obtained [Plaintiff's] termination from [the Te-Moak] Council without. . .a written statement or allegation, without providing a time to respond or any opportunity to know the date, time and place to respond, you know, the basic requirements of due process;"

c.  Plaintiff's "termination is the result of [Plaintiff] fulfilling the legal duty to report fraud and other wrongful acts, while addressing racist and unlawful conduct by staff members that failed to compliment [their] family members on this Council;"

d.  Plaintiff "was never given notice of any of the false allegations presented to Council supporting [Plaintiff's] termination, as reiterated by Mr. Sypolt on or about March 27, 2021 at a Closed Meeting held in Battle Mountain, without a recording secretary, without any electronic or video recording, where a poorly written termination letter authored by Mr. Sypolt was rejected . . .for being wholly deficient;"

e.  Scott Sypolt's "presentment of only one (1) page of a large discharge packet as though a complete representation of what Ms. Reynolds received from [Plaintiff] to hide criminal conduct and terminate [Plaintiff];"

f.  Assisting Reynolds "to receive[ ] backpay consisting of federal funds" by falsifying "government records" is probably a criminal act itself;

g.  Tanya Reynolds, the paramour of the married Council Chairman Joseph Holley, "without Council knowledge or official action authorizing the submission, without [Plaintiff's] knowledge or official authorization regarding the submission, under penalty of a federal felony, Ms. Reynolds affixed her electronic signature to an application for federal funding, (totaling $150,000.00). . .on grants.gov, as the 'Chairman' of the Te-Moak Tribe of Western Shoshone Indians of Nevada on or about January 14, 2021. . .Ms. Reynolds was neither authorized nor the Chairman at the time of submission;"

h.  "Reynolds admitted in front of witnesses to having a closed door meeting with Sybil Sakala on March 5, 2021 coaching [Sakala] to believe [the Plaintiff] was a racist, (Reynolds also admitted to openly criticizing two other staff members for being 'white' and a 'diabo') then Reynolds admitted to gaining unlawful access to employee's confidential payroll information and then

admitted to unlawfully disclosing that information . . .while criticizing that employee for being 'white;'"

i. "For an extensive period of time between September and November 202[0] Ms. Reynolds turned in time sheets," while failing to respond, report or perform "to which Hinton Burdick provided a statement of events with supporting documentation," plus Plaintiff's review, determined that "Reynolds was turning in time for work not performed;"

j. "At the February 3, 2021 [Council] meeting, attorney Scott Sypolt claimed he completed all the tasks assigned to him under the two (2) [Dentons] agreements, about 15 tasks, and that he sent all of the work product to me. On the record I immediately refuted that statement," and despite email, fax and Sypolt's physical presence at Tribal offices, from July 2020 through March 18, 2021, Sypolt failed to submit "any work product" beyond a poorly written "NRS legal memo," "the Apportionment Ordinance," and a draft Resolution so poorly written that Council "rejected [it] as deficient," so of the 15 assigned and three (3) submitted, one was rejected and the remaining two were prepared by others;"

k. Judge Acosta prepared the Law and Order Code, which Scott Sypolt then stated "would be taking credit for the work product and pay Judge Acosta on the 'backend,' for that work," and "Mr. Sypolt submitted a bill to Te-Moak for the entire work on the Apportionment Ordinance when he knew that Mr. McEwen and I performed the work. This then opened a bag of more problems as it appears that Mr. Sypolt disclosed privileged information to another attorney not employed by Te-Moak, without authorization by the entire Council and then attempted to direct me to work with Cameron McEwen a serious legal issue arose;"

l. Terry "Cameron McEwen was introduced to [Plaintiff] by Scott Sypolt in July 2020 as "the attorney who will be working with me and who will appear at every monthly Council meeting to represent the Tribe and this will show people that Dentons is the powerhouse firm representing the Tribe," except one of the Dentons Agreements contains Mr. McEwen's name as a party to a prior contract and McEwen stated to the Plaintiff that McEwen is "'Assistant Attorney General for the State of Alabama,' in the funeral division. . .and that "Dentons has not hired me, they have not given me an offer to hire me and I haven't even had an interview with Dentons yet. It would be highly unethical for me to provide the Tribe legal advice and I don't know why Mr. Sypolt put me in this position, but I respectfully cannot assist the Tribe at this time;'"

m. Scott Sypolt informed the Council that Dentons' legal services billing constituted "attorney-client privilege" barring any disclosure to the entire Council, Plaintiff as the Administrator and the CPA firm;

n. Following the Plaintiff's demand that Scott Sypolt return "$200,000.00 in CARES Act funding" based on Sypolt and Dentons' own memoranda justifying expenditures for attorney fees "and that [Sypolt] would not have direct access to confidential court case information (*Mr. Sypolt has been advocating for my removal as not only the Tribal Administrator, but also as the Appellate Judge for the Tribe while he serves as the attorney representing the Tribe despite a conflict Sypolt has with a member of the Council and Ms. Reynolds*), at a time when I occupied those positions, those employment[ ]positions formed an integral part of his client, whom he is sworn to represent;"

o. "Pursuant to the applicable Constitutional provisions and the subsequent resolutions and oaths of office, Judge Acosta and I were "appointed," as judges, with a minimum initial term of three (3) years, and Mr. Sypolt's claims to the contrary are, at best, disingenuous.  See Te-Moak Resolutions 21-TM-27 through 31, 37 (Obligating Funds and Identifying Court Personnel) and 42 ("Appointment"); <u>e.g.</u> Resolution 21-TM-43(Court Personnel Wage Rates); also, Resolution 21-TM-44(establishing Administrative Office of Court and Funding);" <u>Ref</u>. <u>Exhibit III-B(8)</u>:  <u>Oath of Office Samuel L. Biers</u>.

p. "My duty to report was and is fulfilled, and when I last spoke with the Vice Chairwoman I insisted that the retaliation cease, instead it has increased against me.  The information referenced by Mr. Sypolt regarding the alleged release of Closed Meeting information to specific individuals leading to my alleged termination stem from Council's specific direction regarding that release, of which this information is memorialized in the record as the contents of Resolution 21-TM-43, a public document. Throughout my tenure, even as recent as March 5, 2021, this Council and Mr. Sypolt praised my performance publicly, then I learned that Mr. Sypolt advocated for my removal as Tribal Administrator and Appellate Judge to hide the illegality and unethical conduct I fought against:"

q. Sypolt's "challenge to my performance, resulting in my termination, lead by the attorney of record by the Tribe against a sitting staff member who answers directly to and executes the direction of the Tribal Council, is so abhorrent to many legal principles, especially when whistleblower protections bar such conduct, that it defies logic and law'"

r. ". . .from the statements and emails that Mr. Sypolt's opposition to [Plaintiff's] occupying the office of Appellate Judge, by assisting others and asserting falsehoods regarding [the Plaintiff], is meant to preserve a personal interest of Mr. Sypolt's derived from the Cannabis enterprises. . .Sypolt submitted invoices for wages associated with the Court personnel for payment to Darian Stanford without Council knowledge or approval, and the submission occurred after this Council directly instructed Mr. Sypolt that Mr. Stanford does not work for the Te-Moak Tribe.  Mr. Sypolt claimed to have already ran an NCIC report on [Plaintiff], when that would require an appropriate law enforcement authorization under the CJIS regulations and Council authorization.  At the time of the claim, Council did not authorize this action and therefore any inquiry would be a serious infringement, if not criminal conduct, by someone unlawfully gaining access to NCIC.  In turn I provided a copy of my FBI Background history showing no arrests, no convictions;" Ref. Exhibits II-E(1)-(4).

s. Plaintiff "objected and reported the conduct of Mr. Sypolt which has ranged from calling Mr. Gonzales a Red Apple and when [Plaintiff] stated that [Plaintiff] was unfamiliar with that term, Mr. Sypolt said "only red on the outside, mostly white on the inside."  Mr. Sypolt has screamed and yelled at [the Plaintiff], court personnel and the other judge, even other attorneys.  During the last meeting, Mr. Sypolt made several threats against Mr. Gonzales physical health and safety, and this required [Plaintiff] to promptly separate myself from Mr. Sypolt completely and report the conduct, which I did;"

t. "The independent, supporting documentation also collaborates [Plaintiff's] claims that Ms. Reynolds, and others, implemented a plan to disparage [the Plaintiff] and label [Plaintiff] as a racist and Ms. Reynolds admitted to gaining unlawful access to confidential personnel records belonging to "white" staff members and disclosing that information," and "that Mr. Holley and Ms. Reynolds' relationship, along with Mr. Sypolt's conduct and my reporting of wrongdoing and criminal conduct, serve as the bases for the Council's decision to terminate me as the Tribal Administrator;"

u. Because "the Council failed or refused to provide for the health, safety and welfare of non-native people on Tribal lands, failed to report or take lawful action and opted to retaliate against [Plaintiff] for reporting criminal and wrongful conduct by staff, and because [the Plaintiff has] yet to receive notice of termination, ( *I am currently on leave pursuant to policy requiring seven*

*days quarantine after leaving the state*), this email also serves as a report of alleged unlawful conduct with supporting documentation, previously altered prior to presentment to the Council," submitted by "Hon. Samuel L. Biers Judge Te-Moak Supreme Court. . . ."

574.    On April 2, 2021 a copy of the Plaintiff's "Grievance" and supporting documents were transmitted to the United States Department of Justice, Federal Bureau of Investigations as part of the ongoing Whistleblower investigations at OIG-Treasury, OIG-HUD and OIG-EPA.

575.    On or about April 7, 2021 the TMC held a Closed Meeting and voted to adopt Resolution 21-TM-50 seeking to terminate and remove the Plaintiff as the Supreme Court Judge for the Tribe. See Te-Moak Constitution, Art. 8, sec. 6(a)(*recall judge same as Art. 4, Sec. 8*); e.g. Art. 4, Sec. 8(*"recalled . . . only [if a]valid petition signed [by all] the registered voters of the Tribe or by at least two-thirds (2/3) of the registered voters of any Band" then set an Election where if "at least fifty percent (50%) of all the registered voters of the Tribe case a vote and more than fifty percent (50%) of those voting . . .favor recall" a judge is removed*). Sypolt falsely advised the TMC Resolution 21-TM-50 constituted a permissible, constitutional method of removal with the intent to violate tribal law. Sypolt failed to inform or competently advise the TMC that the recorded vote lacked a legally sufficient number of TMC members to constitute a legal quorum, six "6" members present when 7 were required. See Exhibit Resolution 21-TM-50 (*vote 5-0-0 with the Chairman equals 6 present out of a total members 12*). The TMC erroneously convening a meeting without a quorum, thereby nullifying the official action as unconstitutional. See Te-Moak Constitution, Art. 4, sec. 19(c)(*"[n]o meeting shall commence until a quorum is present. A quorum shall consist of a majority of the membership of the Council including the presiding officer"*).

576.    During the April 7, 2021 TMC Meeting Sypolt provided the TMC with an erroneous legal opinion on the process to remove an appointed judge by falsely stating that the Council merely extended an "offer" of employment to Plaintiff as the Te-Moak Supreme Court Judge, and that the Council was free to "rescind that offer" at any time by firing the Plaintiff as a judge with the enactment of a Resolution without notice to the Plaintiff. Ref. Exhibit II-C(11)(*J. Frias stating Sypolt's bad advice*).

577.    On or about April 7, 2021 Sypolt "ordered" the TMC to "delete" the email sent by the Plaintiff entitled "Grievance" because it "destroyed the attorney-client privilege." TMC members Brady and Gonzalez refused to follow Sypolt's demand with Gonzalez

stating that Sypolt doesn't "get to tell the Council what to do" and that Sypolt has "no way of knowing when or if any email is deleted."

578. On or about April 7, 2021 Sypolt, communicating with the Council by cellular phone, via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah stated again in support of Plaintiff's termination as a judge that Sypolt performed a thorough "background investigation" on the Plaintiff, and then stated that Sypolt also performed a background investigation on all of the EBC members sitting on Te-Moak. Sypolt stated to Gonzalez and Brady that Sypolt identified and knew "everyone you talk to and associate with."

579. On or about April 7, 2021 the TMC accepted Thalia Marin as a TMC Member after Joseph Holley and Sypolt agreed to waive a pending prosecution against Marin for felony embezzlement offenses if Thalia Marin agreed to vote on TMC as directed by Sypolt and Holley, even if Marin's vote negatively affects EBC. At the March 4 and 5 Council meetings Holley directed the submission of affidavits and referral of the Marin matter to Anne Laughlin for prosecution. Marin agreed with the terms set by Sypolt and Holley and was seated on TMC.

580. On April 13, 2021 Darian Stanford traveled from Beaverton, Oregon to Te-Moak Territory carrying and transporting NCE cash, pursuant to a **A1-A6** and **A8** agreement, plan or scheme, with the intent or purpose to deliver a sealed package containing $29,960.00 in NCE cash that was obtained or derived from the sale and distribution of a controlled substance, marijuana, at the NCE retail store- Newe Cannabis, routed through the EBCE account at SALAL, and hand-delivered to Joseph Holley, representing the falsely claimed 5% Te-Moak Cannabis Sales Tax applied to the first quarter 2021 50% share of the NCE cash proceeds. On behalf of SCS and TT, Joseph Holley, Sypolt and Darian Stanford agreed to produce an audio-video recording of the transaction, including the completion of the receipt. Darian Stanford finished the transaction then appeared at Newe Cannabis and took possession of $600,000.00 in cash, and then Stanford carried and transported that sum of NCE cash, revenue or income obtained or derived from the sale and distribution of a controlled substance, marijuana, at the NCE retail store-Newe Cannabis back to Portland, Oregon before depositing the money into SALAL and other financial institutions on behalf of SCS, TT and the personal accounts of Conable, Olson, Stanford and others.

581. On the April 14, 2021 Sharla Dick recorded the transaction involving Sypolt, Holley and Stanford counting and transferring the NCE cash proceeds on her cellular

phone.  The audio video recording shows, records or displays Joseph Holley, Darian Stanford, Jeffery Scott Sypolt, Tanya Reynolds and Alfreda Walker interacting and discussing the transaction on April 14, 2021 where Darian Stanford and Joseph Holley opened the package and hand-counted the cash from the package while being videotaped.  Sypolt states on the video "this is the 5% tax.  He's [Darian] gonna deliver it, count it and then seal it so we have an official record.  Darian is going to sign-off on the amount, and Joe's gonna sign-off on the amount and will be put back in the bag and sealed so when it's reopened by the whole [Te-Moak Tribal] Council it'll be the exact same number."  Joseph Holley asked Jeffery Scott Sypolt "so what we got is thirty thousand right?"  Darian Stanford stated "that's right," and Sypolt replied "Yep."  During the hand-counting process Darian Stanford observed one (1) stack was short claiming "there's a 40 that's short there, I'm going to pay that out myself.  Does somebody have a full one that I can get reimbursed," as he placed one (1) $100.00 bill from his personal assets into a RICO stack of $400.00 and removing $60 dollars.  Sypolt stated "I'm glad that we counted it."

582.  On the video recording Sypolt states "so we have verification of $30,000.00 that exchanged from Darian Stanford to the Te-Moak Tribe on, what is today, April the 14th 2021. . .you [Darian] write the amount that was delivered on such and such date, and have Joe sign off  and then have the two (2) witnesses."  Darian Stanford states "yep, all that's perfect Scott. . . let me write a thousand on here."  Sypolt then states "if we could print it out [receipt] so, and then just sign your name [Darian] and Joe signed it, and that shows the exchange, then we have the two witnesses, and we'll even put the time.  It's 4:22 p.m."  Joseph Holley then handed the resealed package containing the revenue, income or cash proceeds to Alfreda Walker who states "this wouldn't even put a dent in what I owe, it would help a little bit."  Darian Stanford then instructed Alfreda Walker and Sharla Dick to sign as witnesses because "it's just a tax receipt for stuff and we can copy both of these as the first of many," before holding up a black transport bag Stanford carried or transported the package of revenue, income or cash in from Oregon "I didn't realize there was a 'Church Cannabis Company.'"  Church Cannabis Company sells retail marijuana in California, Michigan, Massachusetts and Nevada.

583.  On April 14, 2021 a copy of the signed and witnessed receipt shown or displayed on the video recording was copied, reproduced and delivered to, Joseph Holley, Sypolt and Darian Stanford.  See Exhibit II-B(10): Te-Moak Cannabis Tax and Cash Receipt (April 14, 2021).  A copy of that receipt was then circulated by Joseph Holley to EBC

and the TMC, and the Plaintiff received a copy of the April 14, 2021 receipt from
Suzanna Sandoval and Juan Arevalo in July 2021.

584.  As of April 14, 2021 no lawfully enacted Te-Moak Cannabis Sales Tax law existed
and no cannabis tax rate in any form was ever officially approved by the TMC.  The
EBCE half share from the total gross revenue, income or cash proceeds from the sale
and distribution of a controlled substance, marijuana, at the NCE retail store - Newe
Cannabis, during the first quarter of 2021, as reported to the Plaintiff by Juan
Arevalo, totaled just over $1,503,000.00, where if the claimed 5% Te-Moak Tax Rate
existed would require a payment of over $75,000.00, leaving over $45,000.00
unaccounted for by Darian Stanford, Sypolt and Holley on April 14, 2021.  Sypolt and
Holley took the $45,000.00, with the assistance and approval of Darian Stanford,
prior to the delivery of the $29,960.00 that day, and in the rush failed to accurately
remit $30,000.00 as intended.

585.  The April to June 2021 quarterly accounting report at the NCE retail store – Newe
Cannabis, pursuant to an **A1-A4** agreement, plan or scheme with Robin Evans;
Leslie Grove; Paul Conable; Steve Sisolak; Aaron Ford; Steve Olson; Juan Arevalo;
Davis Gonzalez; Thalia Marin, Larry Yeager; Darian Stanford; Kevin Clock, and
others, acting on behalf of EBCE, SCS, TT, IBSC, RAE and TMC agreed and conspired
to use the Greenbits software system and generate, create or produce sales and
accounting information regarding the sale and distribution of a controlled
substance, marijuana, at the NCE retail store - Newe Cannabis, and that quarterly
report states:  Net Cash Proceeds from the unlawful sale of cannabis:  $2,904,309.45.
See Sales Report-Newe Cannabis, Quarterly Update at 1 (April 1, 2021 12:00 a.m. –
June 30, 2021 11:59 p.m.).[3]  Robin Evans; Leslie Grove; Davis Gonzalez; Darian
Stanford, Paul Conable and Kevin Clock further conspired and agreed with Elliot
Parris to show or state in the Update report the total amount of tax revenue
collected for the second quarter 2021 as: $345,341.54 (*$189,187.76 Excise Tax and
$156,153.87 Sales Tax*).  During this same period of time the Tribe held a permanent
state exemption from taxes, and even if NRS 372A.290(1)-(2) applied, the tax
amount owed and should have collected would equal: $290,430.95, not
$345,341.45, a difference of $54,910.59.  The numbers and figures in this Update
report fail to match the mathematical computations, accounting figures or numbers

---

[3] Greenbits Update Report printed July 12, 2021by Juan Arevalo .  Elliott Parris controls the algorithm in the
Greenbits software for SCS and TT as the CFO or Financial specialist, where Parris intentionally alters the reporting
criteria to show in some reports given to EBC a reduction of true sales by 33%.

sent via email to Kevin Clock and Eli Parris on July 14, 2021 by SCS/EBCE/IBSC Adriana "Audrey" Hernandez.

586. On or about April 15, 2021 in furtherance of and pursuant to any **A1-A4** agreement, plan or scheme with or between Robin Evans; Leslie Grove; Paul Conable; Steve Sisolak; Aaron Ford; Steve Olson; Juan Arevalo; Davis Gonzalez; Thalia Marin, Larry Yeager; Darian Stanford; Elliot Parris; Kevin Clock, and others, agreed and conspired to generate, create or produce a written report regarding the sale and distribution of a controlled substance, marijuana, at the NCE retail store - Newe Cannabis, (*after the unreported and undisclosed, pre-count 'partner's share' was subtracted, deducted or reduced from the gross income amount*), that reports and states that the claimed net income for the first quarter of 2021, (spanning January 1, 2021 through March 31, 2021), totaled an even "$1,200,000.00," with the "EBCE" half share equaling "$600,000.00" and the "SCS" half share equaling "$600,000.00" pursuant to **A6** ("SCS 50% ECBE 50%"), with the intent or purpose to violate or attempt to violate <u>21 U.S.C. §841</u>, <u>26 U.S.C. §7201</u>, <u>18 U.S.C. §1341</u>; <u>18 U.S.C. §1343</u>; <u>18 U.S.C. §1344</u>; <u>18 U.S.C. §1952</u>; <u>18 U.S.C. §1956</u>; <u>18 U.S.C. §1957</u>; <u>18 U.S.C. § 1960</u> and the <u>Te-Moak Constitution, Article 4, sections 3, 12 and 14</u> when, during the same period of time, the NCC stated, claimed or reported to EBC Chairman Davis Gonzalez that the total gross revenue or income derived, received or originating from the sale and distribution of a controlled substance, marijuana, involving the NCE for the first quarter 2021 was "just over 2.4 million," dollars. <u>See</u> <u>Exhibit II-B(2).</u>

587. On April 29, 2021 Steve McDade personally appeared at the Plaintiffs place of abode, while the Plaintiff was absent, and blocked the entrance with his motor vehicle until BIA Officer Lopez appeared who then directed Steve McDade to remove himself from the premises.

588. In May 2021 Juan Arevalo stated to the Plaintiff that SCS; Darian Stanford; Davis Gonzalez and Paul Conable arranged for the delivery of regular payments of unreported cash to elected officials in Nevada from the sale of cannabis involving the NCE to secure favorable political and legal decisions for the NCE and EBC, and that Arevalo was offered $15,000 in January 2019 as the Vice Chairman to vote in favor of Cannabis at EBC and TMC Meetings, and that Thalia Marin, Davis Gonzalez, Ladonna Leyva and Larry Yeager were offered and received similar amounts as unreported cash proceeds each quarter out of the 'partner's share' from the sale of a controlled substance in exchange for favorable votes on the EBC. Arevalo claimed that he rejected the $15,000 offer, stating that he was "worth at least $25,000.00" before Arevalo stated that he maintained a Connex Box with extensive

documentation implicating Davis Gonzalez in a "bribery scam that paid the
Governor and a bunch of other people with the Cannabis money and if he comes at
me I'm gonna fuck that little rat-faced weasel." See 18 U.S.C. §1961(1)(A); 18 U.S.C.
§§1503, 1510 and 1512.

589.   On May 3, 2021 the Plaintiff was served with a TRO as a sitting judge and officer of
the Te-Moak Tribe, that issued in favor of Steve McDade based on perjured
testimony at an *ex parte* hearing that occurred when the Plaintiff was on
bereavement leave in Michigan. Ref. Exhibit III-B(7). At this time and during his
term of office, the Plaintiff was draped with sovereign and judicial immunity from
civil liability. See Randall v. Brigham, 74 U.S. 523, 537(1869); Bradley v. Fisher, 80
U.S. 335, 351 (1872); Pierson v. Ray, 386 U.S. 547 (1967)(*absent clear language
Congress did not abrogate absolute judicial civil immunity*); *e.g.* Hutto v. Finney, 437
U.S. 678, 700(1978)(*suits brought against individual officers for injunctive relief are
for all practical purposes suits against the [Tribe] itself...*").

590.   On May 5, 2021 the TMC reported that it hired and appointed two (2) new judges
based on the legal advice and counsel of Dentons and Sypolt's false statements,
reports and claims that the TMC "removed" the Plaintiff. At this meeting Sypolt
proposed that the Tribe provide Sypolt with funding, and Sypolt will then purchase
land in Wendover and open another cannabis dispensary to sell and distribute a
controlled substance and "capture the market in Utah" as part of the NCE.

591.   On or about May 5, 2021 at a TMC Meeting David Carrera entered the meeting and
stated "hey Davis [Gonzalez] thanks for all of the cannabis cash."

592.   On May 14, 2021 acting Te-Moak Tribal Administrator Sharla Dick left a voice
message with the Plaintiff asking the Plaintiff to call the Te-Moak Office regarding
passwords and keys. Earlier that day the Plaintiff received an email notification that
Plaintiff's accesses to federal databases were rescinded and terminated by Holley.
Pursuant to any **A5** agreement Holley, Tybo, Reynolds, Walker and Sypolt
authorized or approved to change, alter and edit the Plaintiff's security access which
precluded the Plaintiff from performing critical tasks such as submit timely
applications for funding and contract submissions as a judge.

593.   On May 16, 2021 the Plaintiff placed the office keys into the office mailbox located
on the outside of the building located on federal, tribal land outside the front door at
525 Sunset Street.

594. On May 19, 2021 Sharla Dick verbally confirmed receipt of the keys directly with the Plaintiff.

595. On May 20, 2021 TMC Member and Elko Band Council Member Robert Brady drafted, signed and delivered a document to the TMC, Dentons and Sypolt addressing the unlawful conduct and false, defamatory statements by Holley, Gonzalez, Sypolt, Tybo, Garcia and Carrera related to the Plaintiff holding office as the Te-Moak appellate judge. <u>See</u> <u>Exhibit III-A(6)</u>. This document states:

> Per the Constitution, Samuel L. Biers was 'appointed' into office as the Appellate Judge legally set forth by a resolution pursuant to the powers granted in the Constitution and, [at] the time he was 'to be removed' Mr. Biers was already in office as the Appellate Judge. . .[t]he Te-Moak Tribal Council was misled by Scott Sypolt, Attorney[,] to the fact that they [Te-Moak Tribal Council] had the authority to remove Mr. Biers by way of Resolution, however the Council in fact, **HAS ABSOLUTELY NO AUTHORITY** to remove a judge that has been seated Per the Constitution of the Te-Moak Tribe which is the **Supreme Law of the Land** which spells out the process for removing a seated Judge of the Te-Moak Tribe of Western Shoshone Indians of Nevada and any such action against the process set forth in the Constitution would be deemed illegal if contested in Court. <u>Exhibit III-A(6)</u>: <u>Brady Memoranda RE Court and Judge Biers</u>, (*dated stamp received by Te-Moak Tribal Council May 20, 2021 at 11:24 a.m.* Log No. 001073).

596. On May 18, 2021 the Te-Moak Tribal Council approved holding in reserve "$1,813,068.03 from the" American Rescue Plan Act funding that the Tribe received from the United States by <u>Resolution 21-TM-70</u>.

597. On May 21, 2021 the United States Department of the Treasury deposited "$13,148,881.89" American Rescue Plan Act, ("ARPA"), funds into the Te-Moak Tribe account at Zionsbank and NSB with $2,629,776.37 transferred from that total amount, equally, to each of the four (4) Bands.

598. On May 27, 2021 the Te-Moak Tribal Council authorized payment of "$1,000.00 a week every week" to Joseph Holley "until the end of his term [October 12, 2021]," by <u>Resolution 21-TM-73</u>. Holley continued to receive this amount after his term.

599. On May 27, 2021 Joseph Holley and Alice Tybo authorized the transfer of $2,629,776.37 from the Tribe's ARPA funding amount held by Zionsbank, (Account ending in "[*]791), to the South Fork Band. Duane Garcia, Sr; Alice Tybo; Tanya

Reynolds and Tyler Reynolds, (Tanya Reynold's son), as the South Fork Council, authorized the expenditure of $6500.00 to each of the 200 South Fork tribal members for a total expenditure of $1,300,000.00, leaving a remaining unaccounted balance of: $1,329,776.37, where a portion of that amount transferred to Western Shoshone Descendants of Ruby Valley bank accounts; Tanya Reynolds' personal bank accounts; Joseph and Yolanda McDade; Alice Tybo; Joseph Holley; Duane Garcia, Sr; and Sypolt.

600. On May 28, 2021 the Plaintiff verified with the Illinois State Bar Association the license and malpractice insurance status related to Jeffery Scott Sypolt as an attorney with Dentons and received a copy of a government record from Illinois that states Sypolt "reported that he/she has malpractice coverage" that coverage remained current "as of the date of registration...(2021)."

601. On May 28, 2021 the Te-Moak Tribe received a letter signed by David Carrera that states "Battle Mountain Band Council accepts the American Rescue Plan Act funding 2021, please send funding to Wells Fargo account number –[*******]212," with a routing number, and the Te-Moak Tribe transferred by wire $2,629,776.37 into the Wells Fargo Account identified by Carrera. Band Council Business of this nature requires a formal, written and sealed Resolution, not a letter. This Wells Fargo account is the same account and number that Carrera transferred or deposited cash, revenue or income received or derived from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, as delivered by or from Joseph Holley, Sypolt or Darian Stanford in May, June, July and August 2021. Over the course of months, Carrera transferred more than $250,000.00 into and from "Wells Fargo account number –[*******]212" and into and from Carrera's personal Wells Fargo Bank account or accounts, routed through Wade Cicrich at WJC Financials, and both WJC and Carrera failed or refused to inform Wells Fargo Bank that funds deposited originated or were derived from the unlawful sale and distribution of a controlled substance, marijuana, involving the NCE with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956;18 U.S.C. §1957; 18 U.S.C. § 1960 and Te-Moak Constitution, Article 4, sections 3, 12 and 14.

602. On May 31, 2021 EBCE; EBC; NCC; SCS; Suzanna Sandoval and Susan Zuzueta agreed to submit a Monthly Finance Report for the period of May 2021 pursuant to an **A1-A4** and **A6** and **A8** agreement, plan or scheme with and between Robin Evans; Leslie Grove; Paul Conable; Sypolt; Duane Garcia, Sr; Joseph Holley; David Carrera; Alice

Tybo; Steve Sisolak; Aaron Ford; Steve Olson; Juan Arevalo; Davis Gonzalez; Thalia Marin, Larry Yeager; Darian Stanford; Kevin Clock, and others, who agreed and conspired to create, generate, produce and publish this report related to the continuation of operations and business regarding the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis and related businesses with the intent or purpose to violate or attempt to violate federal, state and tribal law.  See Exhibit II-B(9):  May 2021 at 1.  This report states that the ending gross account balance for the month of April is "$1,959,258.13" when in May the only expenditure totaled $1650.00, stating a net total for May as "$1,960,908.13," when if expended the amount should not have been added as shown and equal "$1,960,908.13."  Id; see also, Exhibit II-B(9): June 2021 at 1(*ending balance for the month of June 2021 is "$1,959,258.13"*); c.f. Exhibit II-B(6) at 1( total "$2,904,309.45").  The mathematical computations related to the NCE are falsified and fraudulent by each successive report or statement, the sales figures, numbers and reports all show conflicting totals and amounts.  This monthly report states three (3) related Financial Programs existed at EBC that received Newe Cannabis cash or funds that originated or were derived from the sale and distribution of a controlled substance, marijuana, involving the NCE, and those amounts were deposited or transferred into Zionsbank and SALAL for each Program's Newe Cash Monthly Balance figures and coded as:  "EBC-GF-80"(Elko Band Council General Fund-Program 80)("$1,516,571.24"); "EBC-15"(Elko Band Council – Program 15)("$325,669.00"); "NCC-5"(Newe Cannabis Commission – Program 5)("$117,017.89"). See Exhibit II-B(9).

603.   On or about June 2, 2021 at a TMC Meeting on federal, tribal land Joseph Holley; Alice Tybo; Duane Garcia, Sr; Andrea Woods; Clifton Oppenhein; Thalia Marin; David Carrera and Davis Gonzalez officiated with Sypolt in attendance, as an attorney for Dentons, and Sypolt again stated that the TMC's prior actions by motion and resolution to terminate and remove the Plaintiff as the Te-Moak Supreme Court Judge remained lawful after receiving Brady's memoranda on the issue. On this day Sypolt stated to the TMC that Sypolt's contacts in law enforcement at the US DOJ and Illinois confirmed that Biers is a convicted felon, further stating that the Plaintiff is a bad guy, you don't want him as a judge.  On this date Sypolt stated that the TMC ordered Sypolt to perform an "NCIC Background investigation of Biers," after Plaintiff's appointment and Sypolt's results concluded that Biers' history shows a "lack of good moral character."  TMC then voted to terminate the Plaintiff as the Te-Moak Supreme Court Judge.  Council then voted to grant Holley a wage of $50.00 per hour from federal funds for a 40 hour work week at a time when Holley reportedly

worked a full time job at Marigold Mines in Lovelock, Nevada. Thalia Marin; David Carrera; Alice Tybo; Duane Garcia, Sr; Clifton Oppenhein; Andrea Woods and Davis Gonzales knew or should have known that Holley was committing fraud to obtain federal funds at the time they voted to approve these actions.

604. On June 3, 2021 Joseph Holley called a mandatory meeting with the Te-Moak Administration staff, and TMC members stating that the Te-Moak Tribe appointed a new trial court judge "Carrie Frias." At this meeting Joseph Holley stated that the TMC terminated the Plaintiff as the appellate judge. EBC and TMC Member Thalia Marin asked Sypolt and Joseph Holley what strategy the TMC had in place "when Sam Biers challenges his illegal termination as the judge?"

605. On June 4, 2021 Sypolt introduced the newly hired Trial Court Judge, Carrie Frias, after Alice Tybo; Joseph Holley; Davis Gonzalez; Thalia Marin; David Carrera and Andrea Woods, and others, voted to hire and appoint Carrie Frias. At the time of Frias' appointment Joseph Holley; Alice Tybo; Duane Garcia, Sr; Andrea Woods; Clifton Oppenhein; Thalia Marin; David Carrera; Davis Gonzalez and Sypolt knew that the appellate court position was held by the Plaintiff, and as a result these Defendants failed to appoint an individual to the appellate court at this time.

606. On June 4, 2021 as part of a plan to disrupt the new court system, Davis Gonzalez opened the locked TMC doors to allow Steve McDade entry and Steve McDade stated "I thought you weren't going to let me in. I got something today." Steve McDade walked past Sypolt and stated to J. Frias the substance of Steve McDade's earlier email to J. Frias regarding the validity of her appointment. At this time Sypolt verbally engaged with McDade, stating that McDade previously attempted to ignite himself on fire after dosing himself in gasoline. As the video tape recording displays that day, Steve McDade kicked Sypolt in the crotch before punching Sypolt in the head and kicking Sypolt as he lay on the ground until both were restrained. While Steve McDade was restrained, Scott Sypolt got up and then struck McDade. A publicly viewable video recording of the altercation was published online via Reddit under the account name "SBerryofChaos92."

607. On June 6, 2021 Sypolt, as an attorney of Dentons, instructed, directed or advised Joseph Holley, Alice Tybo and Tanya Reynolds to draft, sign, fax and mail a statement regarding the Plaintiff to the Nevada Employment Security Division with the intent or purpose to violate or attempt to violate federal, state and tribal law. See Exhibit III-B(11)-(12)(June 7, 2021). See 42 U.S.C. §§2000e-2 and 2000e-3(*barring discrimination and retaliation for opposing unlawful employment*

*practices*); N.R.S. §205.463; Resolution 20-TM-132; Privacy Act, (5 U.S.C. §552 et seq.); 42 U.S.C. §13925(b)(2); 2 C.F.R. §200.207 and §200.338; Resolution 03-TM-13(*criminal act to release private confidential information without authorization*). Pursuant to the **A5** agreement, plan or scheme, Sypolt contacted Nevada Attorney General Aaron Ford, released the Plaintiff's protected information to Ford, and Sypolt requested that Ford use his office and authority to file criminal charges against the Plaintiff for submitting an unemployment claim, to deny the Plaintiff's claim and to open an investigation against the Plaintiff for criminal charges by Nevada for impersonating a judge, to preserve the prior agreement, plan or scheme to continue the sale and distribution of a controlled substance, marijuana, at the retail store Newe Cannabis and continue the flow or distribution of unreported cash from the NCE to Sisolak, Ford and other Nevada politicians. Id.  Aaron Ford, (*who Sypolt earlier claimed worked for Dentons*), agreed to violate the law and launched an investigation seeking the criminal prosecution of the Plaintiff based on the Plaintiff's private, confidential and personal information unlawfully released to Ford and DETR by Holley, Reynolds and Sypolt. Sypolt informed Ford that the Plaintiff is a "felon, he's scum," when Sypolt, Holley, Ford and Reynolds release of the Plaintiff's information constituted a felony act. Id.

608. On June 7, 2021 Sypolt, Tanya Reynolds and Alice Tybo co-authored and drafted a response to Nevada DETR that falsely states the Plaintiff stole "highly confidential notes and recordings," and "disseminat[ed] said information. . .to unauthorized third parties," and Joseph Holley affixed his signature in this document as authorized by Davis Gonzalez; David Carrera; Thalia Marin; Andrea Woods; Alice Tybo; Duane Garcia, Sr., and others, when no privilege existed or applied to permit these Defendant to violate the law. Exhibit III-B(11)-(12); see 42 U.S.C. §§2000e-2 and 2000e-3(*barring discrimination and retaliation for opposing unlawful employment practices*); 15 U.S.C. §§1, 2; N.R.S. §205.463; Resolution 20-TM-132; Privacy Act, (5 U.S.C. §552 et seq.); 42 U.S.C. §13925(b)(2); 2 C.F.R. §200.207 and §200.338; Resolution 03-TM-13(*criminal act to release private confidential information without authorization*); ref. Exhibit I-B(2).

609. The June 7, 2021 the Nevada DETR document falsely states, pursuant to the **A5** agreement, plan or scheme, that the Plaintiff claimed "he was a licensed attorney in Nevada" and that the Plaintiff was "fired as a temporary magistrate for concealing information and fabricating his birth date on his application regarding [sic] position of magistrate," and this document attached a copy of Resolution 21-TM-50 along with false, defamatory opinion material regarding the Plaintiff gleaned from the

internet.  See Exhibit III-B(11)-(12).  Sworn testimony from Tuwana Capers, during a civil trial at the United State District Court for the Middle District of North Carolina, reveals that Ms. Capers admitted to inserting the erroneous birth date onto the Plaintiff's former employment records.  Ref. Transcript, Vol. 3, p.12, Ln. 9-14; p.18, Ln.9-24 and p.25 Ln. 1-3 (Biers v. Cline, Case No. 1:12CV375)(April 5, 2017).

610.   On or about June 7, 2021 Joseph Holley states in the Nevada DETR document that the Plaintiff earned "$84,833.89" for the period May 23, 2021 to May 21, 2022 as the Tribal Administrator, and that document failed to disclose that the Plaintiff was terminated for:  properly terminating Tanya Reynolds; submitting and filing complaints with the United States Offices of Inspectors General and FBI against Reynolds, Dentons and Sypolt; and filing complaints or reports against the operation of Newe Cannabis in violation of tribal, state and federal law.  Exhibit III-B(11).  See 42 U.S.C. §§2000e-2 and 2000e-3(*barring discrimination and retaliation for opposing unlawful employment practices*); 15 U.S.C. §§1, 2; N.R.S. §205.463; Resolution 20-TM-132; Privacy Act, (5 U.S.C. §552 et seq.); 42 U.S.C. §13925(b)(2); 2 C.F.R. §200.207 and §200.338; Resolution 03-TM-13(*criminal act to release private confidential information without authorization*).  At no point in time did the Plaintiff ever state, claim or assert to the Te-Moak Tribal Council or any employee, agent or representative of the Tribe that the Plaintiff held or possessed a license to practice law in any state.  Exhibit III-A(5); ref. Exhibit III-B(11).  The Plaintiff never asserted, stated or claimed that the Plaintiff worked as a federal prosecutor in Utah.  Id.  The Plaintiff was never "fired" as a magistrate judge, and the Plaintiff was never fired or terminated "for concealing information and fabricating his birth date on his application."  Exhibit III-B(11); see also, Exhibit I-B(1) and ¶¶104 and 609, *supra*.

611.   On June 7, 2021  at 4:12 p.m., (PST), Tanya Reynolds sent or transmitted, or cause the sending or transmission of electronic copies of the Nevada DETR documents, (8 pages), at the instruction, direction or advice of Sypolt, Darian Stanford and Chadwick Smith pursuant to the **A5** agreement, plan or scheme with or between SCS; EBCE; Robin Evans, RAE Solutions; Leslie Grove, IBSC; Paul Conable; Steve Sisolak; Joseph Holley; Duane Garcia, Sr; Alice Tybo; Sypolt; David Carrera; Aaron Ford; Steve Olson; Juan Arevalo; Davis Gonzalez; Thalia Marin, Larry Yeager; Darian Stanford; Kevin Clock, and others, related to maintaining or continuing the sale and distribution of a controlled substance, marijuana, at the retail store Newe Cannabis and other related locations, via wire transmission by way of the internet and/or telephone signal to:  Nevada Employment Security Division – Adjudication Division (775) 684-0338.  Exhibit III-B(12); see 42 U.S.C. §§2000e-2 and 2000e-3(*barring*

*discrimination and retaliation for opposing unlawful employment practices*); 15 U.S.C. §§1, 2; N.R.S. §205.463; Resolution 20-TM-132; Privacy Act, (5 U.S.C. §552 et seq.); 42 U.S.C. §13925(b)(2); 2 C.F.R. §200.207 and §200.338; Resolution 03-TM-13(*criminal act to release private confidential information without authorization*).

612.  On June 7, 2021 at 4:20 p.m., (PST), Tanya Reynolds sent or transmitted, or cause the sending or transmission of electronic copies of the Nevada DETR documents, (8 pages), at the instruction, direction or advice of Sypolt, Darian Stanford and Chadwick Smith pursuant to the **A5** agreement, plan or scheme with or between SCS; EBCE; Robin Evans, RAE Solutions; Leslie Grove, IBSC; Paul Conable; Steve Sisolak; Joseph Holley; Duane Garcia, Sr; Alice Tybo; Sypolt; David Carrera; Aaron Ford; Steve Olson; Juan Arevalo; Davis Gonzalez; Thalia Marin, Larry Yeager; Darian Stanford; Kevin Clock, and others, related to maintaining or continuing the sale and distribution of a controlled substance, marijuana, at the retail store Newe Cannabis and other related locations, via wire transmission by way of the internet and/or telephone signal to: Nevada Employment Security Division – Adjudication Division (702) 486-7987. See Exhibit III-B(12).

613.  On June 8, 2021 Sypolt verbally threatened TMC members from EBC to follow the planned voting structure and meeting agenda that Sypolt, Holley and Tybo published and created or as Sypolt stated, they would make their "lives a living hell, because [Sypolt] did a background investigation into all the Elko Band Council members," specifically targeting Robert Brady and his friends demanding that Brady withdraw the letter about Council's reasons firing the Plaintiff as the judge.

614.  As of June 8, 2020 Sypolt, acting on behalf of Dentons, performed a background investigation consisting of gossip and opinions found on the internet, Facebook, Twitter and Instagram, when after receiving substantial payment and outlining substantial billing statements for work related to the "Law and Order Code," that states eligibility "require[s] a background investigation [for each judge] similar to which is required of police officers, [that] shall be on file. . ." Without authorization to perform a background investigation, Sypolt, Skibine, Docksey, Sibbison and Dentons performed or accepted a background investigation consisting of Facebook, Instagram and Twitter opinions against the FBI background report regarding the Plaintiff on file at Te-Moak and these Defendants released personal, confidential information regarding the Plaintiff to Chadwick Smith, Anne Laughlin, Ramon Acosta, Wendall Hayes, Joseph McDade, Angelea Mendez, Jessica Montcalm, and others, with the intent or purpose to violate or attempt to violate federal, state and tribal law. Ref. Exhibits II-E(1)-(3); see 42 U.S.C. §§2000e-2 and 2000e-3(*barring*

*discrimination and retaliation for opposing unlawful employment practices*); <u>15 U.S.C. §§1, 2</u>; <u>N.R.S. §205.463</u>; <u>Resolution 20-TM-132</u>; <u>Privacy Act</u>, (<u>5 U.S.C. §552 et seq.</u>); <u>42 U.S.C. §13925(b)(2)</u>; <u>2 C.F.R. §200.207 and §200.338</u>; <u>Resolution 03-TM-13</u>(*criminal act to release private confidential information without authorization*).

615. On or about September 10, 2021 Felix Ike stated to the Plaintiff that in January 2021 Steve McDade actively suborned perjury from Susan Jones by repeatedly demanding that Jones submit a false affidavit and testify against the Plaintiff in support of Marci Villegas false statement and McDade's' TRO against the Plaintiff in the BIA CFR court and Susan Jones refused to lie under oath for Steve McDade.

616. On June 11, 2021 Dentons terminated the employment relationship with Sypolt after receiving a copy of the Reddit audio-video recording from Steve McDade that showed Sypolt physically fighting Steve McDade on June 4, 2021 at the Tribal Court hearing before J. Frias.

617. On June 11, 2021 the TMC consisted of Joseph Holley; Alice Tybo; Larry Yeager; Davis Gonzalez; Thalia Marin; Andrea Woods; Duane Garcia, Sr; Paula Garcia and David Carrera who voted based on information, statements and advice from Sypolt and Dentons, to remove the Plaintiff, by <u>Resolution 21-TM-83</u>, "as the Te-Moak Tribal Court Appellate Judge," and stating "that any Resolutions adopted appointing, hiring or having the involvement of Sam Biers as the Te-Moak Tribal Court Appellate Judge are null and void," pursuant to the **A1-A5** and**A6** agreement plan or scheme with or between TT; SCS; EBCE; Sypolt; Dentons; Skibine; Joseph McDade; Robin Evans, RAE Solutions; Leslie Grove, IBSC; Paul Conable; Steve Sisolak; Aaron Ford; Steve Olson; Juan Arevalo; Davis Gonzalez; Thalia Marin, Larry Yeager; ECDCC; Darian Stanford; Kevin Clock, and others, to protect and continue the sale and distribution of a controlled substance, marijuana, involving or related to the NCE retail store Newe Cannabis and other related businesses, and to continue the unreported transportation, transfer and delivery or cash from that enterprise to the named individuals and entities, and to retaliate against the Plaintiff for opposing the enterprise on legal grounds, reporting criminal conduct and fraud at the Te-Moak Tribe, filing a complaint against Sypolt and terminating the paramour of Joseph Holley, when the named individuals knew or should have known that a Resolution will not remove or recall a judge after that judge's appointment as stated in the <u>Te-Moak Constitution, Article 8</u>; Robert Brady's <u>May 20, 2021 Memoranda</u>; <u>Exhibit III-C(4)(c)</u>(performed extensive research on this issue) and the prior statements given to the TMC by Sypolt, Dentons and the Plaintiff on this issue.

618. On June 15, 2021 the Plaintiff contacted Sibbison, a partner at Dentons, by telephone and Sibbison confirmed that Sypolt was terminated as of June 11, 2021 based on the video, and in response to Plaintiff's question regarding "...who Dentons is representing," Sibbison stated that Dentons will withdraw its representation for the Tribe and that she was unaware of multiple written agreements that Sypolt drafted for the Te-Moak Tribe, and Sibbison stated that Sypolt was not a partner and that only partners were permitted to charge $765 an hour or more as a matter of policy at Dentons law firm. Sibbison stated to the Plaintiff that his "Grievance" was not received by her office and that if that document was delivered to "Docksey, that's a problem."

619. On June 16, 2021 EBC accepted the resignation of Robert Brady from his seat on the TMC by way and through Elko Band Council Resolution 2021-EBC-27.

620. On or about June 17, 2021 the Plaintiff and Davis Gonzalez communicated with each other regarding Sypolt, and during this conversation Davis Gonzalez informed the Plaintiff that Gonzalez had recently contacted Dentons' partner Sibbison who confirmed to Gonzalez that Sypolt was terminated and that Dentons included a notation on Sypolt's file stating "Do Not Rehire." The Plaintiff reiterated the substance of a similar conversation Plaintiff held with Sibbison to Gonzalez, and at that time Gonzalez informed the Plaintiff that the attorneys for SCS and TT "took over the Council and Newe," operating the businesses "without Elko Band's approval, they work for Sypolt and Joe now."

621. On or about June 25, 2021 the Plaintiff received a copy of the Zionsbank/NSB VISA credit card statement, for the account ending in "[*]032," in the United States Postal Service mailbox for the Te-Moak Supreme Court showing a total available credit amount of $5,000.00 and expenditures totaling $110.30 that the Plaintiff did not authorize, and the statement demanded payment to an address in Salt Lake City, Utah. Plaintiff contacted Zionsbank regarding the status of this account and credit card, and Zionsbank stated the Plaintiff did not have access to information on the account. After that call to Zionsbank an unknown person or persons changed to billing address at Zionsbank from the Te-Moak Supreme Court address to an unknown address for this account and credit card without the Plaintiff's knowledge, authorization or consent, and a USPS agent informed the Plaintiff that Alice Tybo had been picking up the mail for the Supreme Court at Box 867 claiming she was the "Council."

622. On or about June 27, 2021 Sypolt stated to the TMC that Sypolt was "still employed with Dentons," and Sypolt directed the TMC to alter or edit the original <u>Resolution 21-TM-29</u> to include language rendering the Plaintiff's appointment conditioned on a background investigation.

623. On June 28, 2021 Davis Gonzalez contacted the Plaintiff to request a telephone number for Skibine or Sibbison to confirm the employment status of Sypolt with Dentons after Sypolt's statement to the TMC.

624. On June 30, 2021 EBCE; EBC; NCC; SCS; Suzanna Sandoval and Susan Zuzueta agreed to submit a Monthly Finance Report for the period of June 2021 pursuant to an **A1-A4** and **A6** and **A8** agreement, plan or scheme with and between Robin Evans; Leslie Grove; Paul Conable; Sypolt; Duane Garcia, Sr; Joseph Holley; David Carrera; Alice Tybo; Steve Sisolak; Aaron Ford; Steve Olson; Juan Arevalo; Davis Gonzalez; Thalia Marin, Larry Yeager; Darian Stanford; Kevin Clock, and others, who agreed and conspired to create, generate, produce and publish this report related to the continuation of operations and business regarding the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis and related businesses with the intent or purpose to violate or attempt to violate federal, state and tribal law.  See Exhibit II-B(9): June 2021 at 1.  This report states that the ending balance for the month of June 2021 is "$1,959.258.13" minus monthly expenditures totaling $900.00, then states a monthly ending total balance for June 2021 as "$1,958,358.13." <u>Id</u>.

625. For all relevant periods Zionsbank, and its subsidiaries and board members, knowingly received, transferred and accepted proceeds, income, cash or revenue that was derived or originated from the sale and distribution of a controlled substance, marijuana, in California, Oregon, Nevada and Washington routed through NSB and other financial institutions before arriving at Zionsbank's central location in Utah with the intent or purpose of violating or attempting to violate <u>21 U.S.C. §841</u>, <u>26 U.S.C. §7201</u>, <u>18 U.S.C. §1341</u>; <u>18 U.S.C. §1343</u>; <u>18 U.S.C. §1344</u>; <u>18 U.S.C. §1952</u>; <u>18 U.S.C. §1956</u>; <u>18 U.S.C. §1957</u>; <u>18 U.S.C. § 1960 et seq</u>. and Zionsbank/NSB, Nicole Lewis, Ashley Dewey and Brent Waite agreed and acted pursuant to the **A1-A4**, and especially the **A5** agreement, plan or scheme to cause injury to the Plaintiff and preserve the continuity of the revenue, income or cash proceeds originating from the sale and distribution of a controlled substance, marijuana, transferred or deposited into Zionsbank and its subsidiaries.

626.  In or about June 2021 the Plaintiff communicated with the FBI.  The Plaintiff was informed at that time that all law enforcement agents in Nevada were instructed by the AUSA in Reno that pursuant to an internal DOJ-AUSA policy that no arrests were allowed based solely on probable cause, that the AUSA directed all federal law enforcement agents in the area to obtain an indictment or only arrest individuals for serious crimes committed in their presence, any arrest made on probable cause without an indictment would be dismissed with prejudice by the United States Attorney's Office as it relates to tribal marijuana operations and businesses.

627.  For the period of June 12, 2021 through September 1, 2021 Dentons, by way and through Skibine, Sibbison and Chadwick Smith, pursuant to **A5** agreement, plan or scheme, that Bowker and Joseph McDade agreed to enter, and who continued to assist and provide legal advice to Sypolt, Holley, Tybo and Reynolds to remove the Plaintiff from judicial office without due process or adhering to the proper and lawful tribal method, process or procedure to remove or recall a judge.  Dentons assisted in the drafting of a settlement agreement with the U.S. DOI/BIA Office of Hearings and Appeals regarding a reassumption of a judicial services contract in 2017 at the same time that Bowker and Skibine held private non-public meetings regarding this process, to obtain a complete release of liability for all prior acts involving Bowker, the BIA and McDade, and to obtain the resulting settlement agreement.  For all relevant times Dentons, Skibine, Bowker, Joseph Holley and Sypolt falsified information contained in documents stating that the Plaintiff, as the sole Te-Moak Supreme Court Judge, lacked any authority or interest in the proceedings, in contradiction to known authority and requirements under the <u>Te-Moak Law and Order Code, 1-3-16(D)</u> that states the Supreme Court Judge retains all authority to manage the business of the Te-Moak Court system.

628.  On July 12, 2021 Juan Arevalo and the Plaintiff communicated via telephone, and Arevalo informed the Plaintiff that Arevalo had a packet of documents that would be "helpful," in an upcoming lawsuit against "Gonzalez and SCS."  The Plaintiff met Sandoval at the Te-Moak Administration Building, who hand-delivered a packet of documents to the Plaintiff "from Juan."  That packet contained a copy of Te-Moak <u>Exhibit II-A(2)</u>; <u>Exhibit I -A(3)</u>; <u>Exhibit III-B(1)</u>; <u>Newe Cannabis Funds Request Policy</u>; <u>Exhibit II-A(5)</u>, and related records.  For all times prior to this date Joseph Holley; Alice Tybo; Thalia Marin; David Carrera; Duane Garcia, Sr; Andrea Woods; and Davis Gonzalez failed or refused to provide, deliver or give the Plaintiff actual notice of termination as the Tribal Administrator as shown in <u>Resolution 21-TM-50</u>.

629.   On July 6, 2021 EBCE; EBC; NCC; SCS and Susan Zuzueta created, generated,
produced and published a document consisting of data, reports and information for
the second quarter 2021 entitled the <u>Newe Cannabis Profit and Loss Statement</u> (July
6, 2021), at the direction and under the supervision of Davis Gonzalez; Kevin Clock;
Paul Conable; Steve Olson; Darian Stanford, and others, with the knowledge,
participation and advice of Sypolt, Chadwick Smith and Joseph Holley, pursuant to
an **A1-A4, A6** and **A8** agreement, plan or scheme with or between Robin Evans;
Leslie Grove; Paul Conable; Sypolt; Duane Garcia, Sr; Joseph Holley; David Carrera;
Alice Tybo; Steve Sisolak; Aaron Ford; Steve Olson; Juan Arevalo; Davis Gonzalez;
Thalia Marin, Larry Yeager; Darian Stanford; Kevin Clock, and others, related to and
regarding the sale and distribution of a controlled substance, marijuana, at the NCE
retail store Newe Cannabis and related businesses.  <u>See</u> <u>Exhibit II-B(7)</u>.

630.   <u>Exhibit II-B(7)</u>, as published for July 2021, states the following information
representing data for the claimed second quarter 2021:

> (1) Total "**Sales** $2,904,306.78;" "Tips $42,815.00;" and "**ATM**" Revenue
> "$7,712.50;" stating a total quarterly "Income" amount of "$2,954,834.28;"

> (2) Cost of Goods and Services, "COGS," total expenditures "Product MMJ
> [acronym for **Medical Marijuana**] $885,700.00;" "Product – Apparel
> $2,457.00;" and "**Delivery to SALAL** $275,000.00," that states a total
> quarterly expenditure amount reported for Cost of Goods and Services as
> "$1,143,157.00;"

> (3) "Expenses Administrative "$30,000.00;" "Advertising and Marketing
> $10,638.00;" "**Bank Fees** $2,202.04;" "Contractors $41,256.23;" "Insurance
> (G/L and W/C [General Liability and Workers Compensation]) $13,611.64;"
> "Professional Services $17,585.73;" "Meals/Entertainment $6,984.77;"
> "Rentals $9,224.12;" "Repairs/Maintenance $224.84;" "Office Supplies
> $21,043.81;" "**Payroll Taxes** $44,275.43;" "Payroll Fees $2,057.20;"
> "**Postage** $131.90;" "Travel and Lodging $2,560.59;" "Subscriptions
> $14,155.48;" "Utilities $2,185.42;" "Wages $180,348.68;" that states a total
> quarterly "Expense" amount of "$308,487.36" and an amount of
> "$1,413,189.90" for division by Elko Band and SCS under the Agreement.

631.   The <u>Update Report</u> submitted to Kevin Clock and Elliot Parris on July 14, 2021 by
Adriana Hernandez states the NCE SCS one half share amount for the quarter
equaled "$1,401,093.89" or a difference of $12,096.01, and the reporting difference

between the <u>Newe P & L</u> total sales for the quarter and the total sales reported by the Greenbits quarterly report ("$2,904,309.98") is $3.02.  See <u>Exhibit II-B(6), (7) and (12)</u>.

632.   The <u>Newe P &</u> L states "$7,712.50" was generated or received by the ATM for this period, while the <u>Update Report</u> on July 14, 2021 states "$135,088.60" was received or generated by the same ATM, and the Greenbits quarterly report states "$0.00" was generated or received by the same ATM for the same period.  The same ATM referenced is located inside the Newe Cannabis facility.

633.   The <u>Newe P & L</u> states that the NCE expended "$275,000.00" on transportation and delivery of cash to "SALAL" Credit Union in Seattle, Washington from the Te-Moak Territory through Utah, Idaho and Oregon using Empyreal and GardaWorld Armored Transportation services, pursuant to an **A1-A4, A6** and **A8** agreement, plan or scheme with or between SCS; TT; EBCE; Zionsbank; NSB; Davis Gonzalez; Paul Conable; Darian Stanford; Thalia Marin; Juan Arevalo; Joseph Delarosa; Kevin Clock; Steve Olson; Elliot Parris, and others, who agreed to falsify or misrepresent information or statements contained within financial records and documents related to the actual characteristic, source or legal status of these funds to Empyreal, or GardaWorld Armored Transportation, by including statements in these financial records and documents that the funds were derived from a lawful and legitimate tribal business related to EBC, Elko Band Authority and EBCE, not Newe Cannabis, to continue transferring and depositing cash proceeds derived or originating from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis with the intent or purpose to violate or attempt to violate <u>21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957;18 U.S.C. § 1960</u> and the <u>Te-Moak Constitution, Article 4, sections 3, 12 and 14</u> and thereafter the same Defendant individuals and entities executed a plan, scheme or agreement, **A5**,  to interfere or interrupt Tribal government operations managed and administered by the Plaintiff and to implement, devise or invent false or artificial reasons or justifications to obtain the termination of the Plaintiff's office and employment with the Tribe; deprive the Plaintiff's right to practice law and serve as a witness and judge, including discrimination against the Plaintiff on the basis of race, ethnicity and culture to permit the same individuals and entities to continue the unlawful commercial sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, and continue to generate unreported revenue or income for the parties to each agreement.

634. The <u>Empyreal Deposit and Bag Slip</u> shows that it transported "$1,033,000.00" in July 2021, not "$100k" and not "$725,000.00" as stated, claimed and recorded in the document entitled <u>Elko Band Colony Enterprise Distribution Tracker</u> that claimed the amount constituted and represented EBC-EBCE's "50%" share pursuant to **A6**. <u>See Exhibit II-B(13)</u>; <u>Exhibit II-B(8)</u>: <u>Distribution Tracker</u>; e.g. <u>Exhibit II-B(12)</u>.

635. The <u>Newe P & L</u> states expenditures were made by the NCE for "Insurance;" "Payroll Taxes;" "Postage;" "Bank Fees;" and "Travel." <u>Exhibit II-B(7)</u>. The <u>Newe P & L</u> document states an amount of "$44,275.43" was paid for "Payroll Taxes," and for the same period of time involving the same enterprise or business the <u>Greenbits Sales Report</u> fails to state, disclose or show any "Payroll Tax" expenditures and states a total amount of "$345,341.54" was paid in sales and excise taxes, when the Tribe is exempt from Nevada sales taxes. <u>Id</u>; <u>e.g. II-B(6)</u>. The <u>Newe Profit  & Loss Statement</u> fails to disclose, state or show any expenditure for taxes for the same period of time for the same enterprise and business. <u>Id</u>. EBCE financial records for the same period states it expended $1,541,644.38 in total for Cost of Goods and Services plus Expenses, when <u>Newe P & L</u> states $1,451,644.38, a $90,000.00 difference in reporting between EBCE and <u>Newe P & L</u> for the same enterprise or business for the same period of time. <u>Id</u>.

636. For the same period, (2nd Quarter 2021), the EBC-EBCE <u>Distribution Log</u> records a total net income amount of "$1,450,000.00;" <u>Newe P & L</u> states a total net income amount of "$1,413,189.90;" and Greenbits sales software accounting states a total net income amount of "$2,558,968.55." <u>Exhibit II-B(2)</u>, <u>II-B(6)</u> and <u>II-B(7)</u>. EBCE states a total net income amount of "$1,413,189.30" (total gross revenue "$2,954,834.28" minus "$1,514,644.38") and then EBCE subtracted its "Working Capital $86,182.49" from its "Cash Position $1,536,182.49" to create a "50%" share for a "Distribution Amount [of] $1,450,000.00" to EBC-EBCE. <u>Id</u>.

637. It appears that on or about July 14, 2021 Davis Gonzalez and Paul Conable affixed their respective signature to the EBCE <u>Distribution Tracker</u> that states and discloses the exchange, transfer and collection of revenue, income or cash proceeds from the unlawful sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, between EBCE, EBC, SCS and TT, with the intent or purpose to violate or attempt to violate <u>21 U.S.C. §841</u>, <u>26 U.S.C. §7201</u>, <u>18 U.S.C. §1341</u>; <u>18 U.S.C. §1343</u>(Wire Fraud); <u>18 U.S.C. §1344</u>(Financial Institution Fraud); <u>18 U.S.C. §1952</u>(Travel Act); <u>18 U.S.C. §1956</u>(Money Laundering); <u>18 U.S.C. §1957</u>(Engaged in Unlawful Monetary Transactions); <u>18 U.S.C. § 1960</u> and the <u>Te-Moak Constitution</u>, <u>Article 4, sections 3, 12 and 14</u>. <u>See Exhibit II-B(8)</u>.

638. On or about July 14, 2021 Davis Gonzalez; Juan Arevalo; Larry Yeager; Thalia Marin; Susan Zuzueta; EBCE and NCC produced and transmitted a document entitled "Distribution Log" that itemized each quarter of income or revenue as an accounting of revenue, income or cash proceeds derived or originating from the sale of a controlled substance, at Newe Cannabis, as reported by EBCE and SCS, for the first year of operation of the NCE, beginning with the first quarter July 2020 until July 2021, that stated, disclosed, reported or revealed a net income amount of "$6,650,000.00," where each quarter stated an exact, rounded off number, a result of skimming the exact change amount from the reported sales figures and transferring that amount directly to personnel, staff, officers and employees as an undisclosed 'tip' or windfall. Exhibit II-B(2). The actual total gross revenue, when rounded off , was $10,000,000.00 for the first three (3) quarters of 2020, resulting in the skimming of $3,350,000.00 as the unreported 'partner's share' used to pay Sisolak, Masto, Ford, Garrand, ECDCC, Chadwick Smith, Skibine, Joseph McDade, and others, in exchange for political and legal assistance, support and information to continue the NCE.

639. The Newe P & L document states a "COGS" for MMJ as "$865,700.00" for the second quarter of 2021 and a total of "$2,904,306.76" as derived, received or originating from the sale of a controlled substance, marijuana, at the NCE. Exhibit II-B(7).

640. The NCE sells its marijuana at an average retail price of $20.00 per gram, and dividing that amount into "$865,700.00" equals approximately 145,216 grams of marijuana sold during the period, or about 326 lbs. sold during the second quarter of 2021 that generating "$2,904,306.76" in total sales.

641. The Nevada Department of Taxation states in its 2020 survey of wholesale prices charged in the state, (29,878 transactions), as authorized pursuant to NCCR 1.095, that the median "Fair Market Value at Wholesale" price for marijuana purchases in Nevada, beginning January 1, 2021, was $2,100.00 per pound of marijuana, and the minimum price was set at $322 per pound. Ref. Fair Market Value at Wholesale of Marijuana – Nevada Department of Taxation (2021). Multiplying $2,100 by the 326 pounds sold at Newe Cannabis is $689,285.00, or alternatively multiplying 326 by $322, the minimum wholesale price, equals $8372.00, resulting in a regulatory price range for the NCE. Where the Tribe retains a permanent Nevada tax exemption and under the Agreement between EBCE and SCS, the total fair market price for 326 pounds to $585,892.25, not $865,700.00 a difference of $279,807.75 that is unaccounted for in the financial documents. SCS, EBCE and TT failed or refused to produce, state, generate or submit actual sales invoices or accounting showing the

actual amount paid to producers, wholesalers or even copies of test results as required by their own agreements, policies and regulations.  SCS, SCI, CSI and TT own or control the tribal marijuana production facilities, using non-disclosure agreements), that claim to produce 15,000 lbs. of marijuana per month and sell the marijuana to tribal competitors under similar regimes and agreements as with the NCE.  See 15 U.S.C. §§1, 2 and 13(a), (d) and (e).

642.    On July 14, 2012 Adriana Hernandez who resides on Te-Moak Tribal land and who was for all relevant times related to this action employed by SCS, IBSC and EBCE, authored, drafted and transmitted an email from accounting@newecannabis.com, (*an account established, created and set up for Hernandez by Robin Evans, RAE Solutions, and Leslie Grove, IBSC*), and Hernandez then sent that email to Kevin Clock and Elliot Parris, via Lucent Technologies POP 100 Gigabyte data switch located in Salt Lake City, Utah then routed to Oregon and Idaho, when Kevin Clock and Elliot Parris continued to use an email address associated with a defunct and closed business entity, Cascade Strategic Investments, (CSI), and the email by Hernandez states: "Here is the Ending Balance as of today 7/14/2021 Actual Cash Count: $1,401,093.89  Wells Fargo ATM Balance:  $135,088.60 $100K is schedule to be picked up today."  See Exhibit II-B(12); Hernandez Email; e.g. Exhibit III-C(10);

643.    The total difference between the Greenbits Sales Report, ("Net Tender Breakdown $2,904,309.98"), and the amount stated by Hernandez, ("Actual Cash Count: $1,401,093.89"), is $1,503,215.11 for the same reporting period, a number that fails to match the stated "50%" **A6** share when the NCE states the "Distribution Amount [of] $1,450,000.00."  Id; also, Exhibit II-B(6); **A6**; Exhibit II-B(2).

644.    Kevin Clock; Elliot Parris; Paul Conable; Darian Stanford; Steve Olson asserted and stated to Suzanna Sandoval; LaDonna Leyva; Davis Gonzalez; Thalia Marin; Juan Arevalo; Larry Yeager, and others, that the "ATM revenue belongs to SCS, not ECBE, EBC or NCC because it's our machine."  EBCE; EBC; SCS states and reported "Cashless ATM $0.00" as ATM revenue for the same period contained in the Exhibit II-B(6) at 1 (April 1, 2021 12:00 a.m. – June 30, 2021 11:59 p.m.).

645.    EBCE; EBC; NCC; TT; SCS by way and through Davis Gonzalez; Kevin Clock; Paul Conable; Steve Olson; Darian Stanford; Larry Yeager; Juan Arevalo; and Thalia Marin, pursuant to an **A1-A4**, **A6** and **A8** agreement, plan or scheme, hired and paid Empyreal Logistics to schedule and pick up cash revenue, income or proceeds from the NCE retail store Newe Cannabis in an amount of "$100K," through Ms. Hernandez, using GardaWorld Armored Transportation services to drive the cash

income or revenue proceeds from federal, tribal lands through Utah, Idaho, Oregon and Washington to SALAL in Seattle Washington.  See Exhibits II-B(12) and (13).

646.   For all relevant times to this action Darian Stanford, Elliott Parris and Kevin Clock continue to use an email addresses associated with or for Cascade Strategic Investments, a defunct, dissolved and closed Oregon business entity that dissolved as an Oregon corporation on May 31, 2018.  See Exhibit III-C(10); Exhibit II-B(12); e.g. Exhibit III-C(9).  CSI listed Paul Conable's Tonkon Torp Administrative Services LLC as its Registered Agent that lists or identifies the business address associated with Cascade Strategic Investments as:  888 SW 5th Avenue, Suite 1600; Portland, Oregon 97204, also the address for Tonkon Torp.  Id.

647.   On July 15, 2021 the NCE produced, generated and published a written report, pursuant to any **A1-A4, A6** and **A8** agreement, plan or scheme with or between SCS; EBCE; Robin Evans; Chadwick Smith; Scott Sypolt; Leslie Grove; Paul Conable; Steve Sisolak; Aaron Ford; Steve Olson; Juan Arevalo; Davis Gonzalez; Thalia Marin, Larry Yeager; Darian Stanford; Kevin Clock, and others, related to the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, that states the total net income for the second quarter 2021, (spanning April 1, 2021 through June 30, 2021), is an even "$1,450,000.00," with the "EBCE" half share equaling "$725,000.00" and the "SCS" half share equaling "$725,000.00" pursuant to **A6**, ("SCS 50% ECBE 50%"), with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14 when NCC representative Marin stated, claimed and reported to EBC Chairman Davis Gonzalez that the total revenue or income generated, received or derived from the sale and distribution of a controlled substance, marijuana, involving the NCE for the second quarter of 2021 was "$2 million and some change."  See Exhibit II-B(2).

648.   On or about July 15, 2021 Darian Stanford traveled to Nevada from Oregon and met with Kevin Clock; Davis Gonzalez; Larry Yeager; Thalia Marin, and after that meeting Darian Stanford hand-delivered $37,000.00 (USD) in cash, that was derived, received or originated from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, directly to Joseph Holley who took possession, custody or control of the cash as payment for a claimed 5% Te-Moak Tribal Cannabis Sales tax for the 3rd quarter 2020 income when no duly enacted law, rule or regulation existed authorizing the collection or assessment of

any 5% Te-Moak Tribal Cannabis tax that applied or related to the sale or distribution of marijuana with the Te-Moak Tribe.

649.   Between July 15, 2021 and July 16, 2021 Joseph Holley expended, transferred or deposited approximately $7,000.00 into Te-Moak tribal bank accounts at Zionsbank containing federal funds obtained by way and through federal contract and grant awards for Te-Moak Tribal Programs administered under:  Bureau of Indian Affairs - Aid to Tribal Government; U.S. DOJ -SORNA; Environmental Protection Agency and United States Health and Human Services-Indian Health Services.

650.   On or about July 16, 2021 Joseph Holley; David Carrera; Davis Gonzalez; Duane Garcia; and Alice Tybo attended a meeting held on federal, tribal land at a building purchased, constructed and maintained with federal funds located at:  511 Sunset Street; Elko, Nevada.  Therein Joseph Holley ordered Te-Moak employees Sharla Dick and Alfreda Walker to act as witnesses to the hand-counting of the $30,000.00 in cash by Joseph Holley; David Carrera; Davis Gonzalez; Duane Garcia; and Alice Tybo.  On this date Joseph Holley communicated with Hinton-Burdick CPA, R. McKay Hall, regarding the disposition of the funds.  At the time, Holley indicated to Hall that Holley spent "about $10,000.00," and that the remainder was "locked in a safe at Te-Moak."  Hall advised Holley that because the funds originated or were derived from the sale of marijuana, that "cash cannot be deposited into" or commingled with federal funds associated with the tribe in its tribal bank accounts.  Joseph Holley terminated the communication with McKay Hall and then distributed the remainder of the cash, equally, in an amount of $5,000.00, to himself; David Carrera; Davis Gonzalez; Duane Garcia; and Alice Tybo, and $2,500.00 each to Sharla Dick and Alfreda Walker. Sypolt; Joseph Holley; David Carrera; Davis Gonzalez; Duane Garcia; and Alice Tybo agreed to pay newly hired Tribal Trial Judge Carrie Frias and Prosecutor Sherry Harris an aggregate amount of $6,500.00 to conduct hearings in favor of the Te-Moak Tribal Council.

651.   On July 22, 2021 the Te-Moak Supreme Court issued an Order declaring as unconstitutional and void all actions by the TMC that stemmed from any Council meeting held or conducted as "Closed Meetings," and declaring that "Resolution 21-TM-83 is unconstitutional, a legal nullity and is immediately voided" because under the Te-Moak Constitution "[n]o Ordinance, Resolution or Motion shall rise to the level of being superior to the Constitution of the Te-Moak Tribe. . .[t]he proper process is to Amend the Constitution or follow the Recall procedures as dictated by the Constitution," to remove an appointed judge.  Ref. Order, In re Te-Moak Tribal Council Resolution 21-TM-83, (Case No. 2021-TM-SC-001)(July 22, 2021).

652. On July 27, 2021 Suzanna Sandoval prepared, drafted and submitted an official document referenced as the TMC "Special Open Meeting" Minutes related to a meeting held on July 27, 2021, when there was no "Open Meeting" on that date, and Joseph Holley; Alice Tybo; David Carrera; Duane Garcia, Sr.; Paula Garcia; Davis Gonzalez; Thalia Marin; Andrea Woods and Larry Yeager were present at this meeting and who acted without lawful authority, and that document contained the following statements:

   a. "Scott Sypolt informed the Council that the Department of Interior agreed to help fund the Te-Moak Tribal Courts. . . Te-Moak was involved with mediation . . .[and] Joseph Holley, Juan Arevalo, Alice Tybo and Andrea Woods were selected," as the Te-Moak representatives for the settlement agreement, and "Te-Moak would have to agree to the mediation settlement. . . BIA agrees to formally recognize the Te-Moak Tribal Court. . .[where] Chairman Holley and Vice Chair Tybo would be identified as authorizing signatory for Te-Moak on the Agreement [pursuant to] Resolution 21-TM-94 and sign the Agreement for the Court;" Exhibit II-C(7)

   b. Scott Sypolt "discussed the removal of Elko Band from the Te-Moak Tribe to operate as a separate Sovereign entity per Davis's (sic) request . . .Scott briefly talked about amending the Constitution to remove Elko Band . . .[n]ow is the time to move on matters in Indian Country. The Biden Administration is recognizing Tribal Sovereignty and the Department of Interior is led by Deb Haaland who is an enrolled member of the Laguna Pueblo;" Id;

   c. Scott Sypolt "provided an amendment to the Law-and-Order code. This ordinance needs to be updated. It would strengthen the laws for the Tribe. . .Suzanna will work on getting the amendment drafted for Council review;" Id;

   d. The Plaintiff "is acting on behalf of the Te-Moak Courts without authorization to do so. Scott [Sypolt] said [the Plaintiff] is creating havoc by making inaccurate statements about Scott. Davis then asked Scott to verify if he is currently employed by Dentons. Scott informed Davis that [Sypolt] is aware of the calls that [Davis], Robert Brady, Steve McDade and Sam Biers have made to Dentons. Denton[s] provided a statement to Chairman Holley indicat[ing] that Denton[s] has not released information to the above-mentioned individuals. . .Davis then informed Scott that Sam Biers. . .informed [Davis] of the matters. . . .Scott then asked Davis why he would believe or trust Sam when [Plaintiff] has shown himself to be untrustworthy. [Plaintiff's] background check came back unfavorable, [Plaintiff] informed Te-Moak that he had a license to practice Law in the State of Nevada which

was proven false.  Sam took records from the Te-Moak Tribe that were confidential and not his property to take, so he could cause problems for the Te-Moak Tribe.  Now all of a sudden Sam is the reason of truth and honesty. . .Alice [Tybo] says the Tribe should take action to notify the public that Sam Biers is not affiliated with the Te-Moak Tribe or the Te-Moak Tribal Courts.  Sam has not been able to be served notice.  Suzanna did provide [Plaintiff] a copy of the Resolution removing him as the appellate Judge, but [Plaintiff] still refuses to stop identifying himself as a Judge for the Te-Moak Tribal Courts.  Alice Tybo motions to post public notice in the Elko Daily Free Press, Reno Gazette, Salt Lake Tribune and Times-News Idaho as official notice to Sam Biers.  A letter shall also be written and sent out to all Band Councils and Government agencies as notice that Sam Biers is not associated with Te-Moak or the Tribal Courts.  Thalia Marin seconds the motion.  Vote 7 FOR, 1 AGAINST (Davis Gonzalez), 0 ABSTENTIONS;" Id; e.g. Exhibit III-B(16)

  e.  Hinton Burdick's CPA R. McKay Hall attended the meeting held on July 27, 2021 to discuss "financial services," with the Council.  Id.

653.  During the period of time that Dentons represented the Te-Moak Tribe, Sypolt; Joseph Holley; Alice Tybo; Tanya Reynolds; Thalia Marin; Suzanna Sandoval; Juan Arevalo; Larry Yeager; David Carrera; Andrea Woods; and Davis Gonzalez acted pursuant to any **A1-A4, A6** or **A8** agreement, plan or scheme with or between Aaron Ford, Steve Sisolak; SCS; EBCE; Darian Stanford; Steve Olson; Paul Conable; Joseph McDade; Skibine and Chadwick Smith, to pay or fund, with the income, revenue or cash proceeds that were derived, received or originated from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis and related businesses, with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14 and pursuant to **A5** agreement, scheme and plan to fund the publication of a "PUBLIC NOTICE," beginning on July 30, and successively on July 31 through "August 3, 4, 5, 6, 7, 10, 11, 12, 2021" to publish this Notice in newspapers across the Western United States and in various online publications, viewable internationally, via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah that states the Plaintiff "is not affiliated with the Te-Moak Tribal Court," that "as the Appellate Judge" the Plaintiff's appointment was conditioned on a "background check" that the Defendants mutually agreed and determined that the Plaintiff failed to "meet the qualification

requirements as specified in the Constitution," and that "Resolution No. 21-TM-83" voided the Plaintiff's judicial office, revoking "the offer for Appellate Judge," and further states that the Plaintiff lacked "any authority or affiliation as it relates to the Te-Moak Tribe of Western Shoshone Indians of Nevada or Te-Moak Tribal Courts." See Exhibit III-B(16) and ¶652, supra; ref. Exhibit III-A(7).

654.   Each and every publication in the Salt Lake Tribune (10 publications), Reno Gazette (10 publications), Elko Daily Free Press (10 publications), Twin Falls (10 publications), and republication on Facebook, that contained the Plaintiff's personal, confidential information by Joseph Holley; Alice Tybo; Tanya Reynolds; Thalia Marin; Suzanna Sandoval; Juan Arevalo; Larry Yeager; David Carrera; Andrea Woods; and Davis Gonzalez, who Aaron Ford, Steve Sisolak; Sypolt; Darian Stanford; Steve Olson; Paul Conable; Joseph McDade; George Skibine and Chadwick Smith agreed and conspired with to publish, release and fund the publication and release, (*pursuant to an A5 agreement, plan or scheme*), constituted a separate criminal, felony act under N.R.S. §205.463.  See Exhibit III-B(16) and ¶652 *supra*; e.g. 42 U.S.C. §§2000e-2 and 2000e-3(*barring discrimination and retaliation for opposing unlawful employment practices*); 15 U.S.C. §§1, 2; Resolution 20-TM-132; Privacy Act, (5 U.S.C. §552 et seq.); 42 U.S.C. §13925(b)(2); 2 C.F.R. §200.207 and §200.338; Resolution 03-TM-13(*criminal act to release private confidential information without authorization*).

655.   On July 30, 2021 the Plaintiff transmitted copies of official government documents offering to settle as a minimum payment for a debt to the Plaintiff for services performed as the Te-Moak Supreme Court appellate judge, pursuant to the Tribe's constitutional mandate, directly to the Tribe's accountants, Hinton-Burdick, located in St. George, Utah.  This email included copies of Te-Moak Resolution 21-TM-37 (*Identifying Administrative Office of the Court Personnel and Obligation of Funds*); Resolution 21-TM-23(*Creation of Line Items and Court Budget*); Resolution 21-TM-29 (*Appointment of Samuel L. Biers Supreme Court Appellate Judge*); Resolution 21-TM-44(*Creation of Administrative Office of the Court*) and Resolution 21-TM-23 (*Approving Court Personnel Contracts*).  The Plaintiff previously provided detailed accounting, time-reporting and invoices to the Te-Moak Tribe and its Council, and thereafter Hinton-Burdick received orders and instructions from Joseph Holley; Alice Tybo; Duane Garcia, Sr; Thalia Marin; Davis Gonzalez; Andrea Woods and Sypolt, without lawful authority, with the intent or purpose to violate federal and tribal law to deny any payment and refuse to communicate or answer the Plaintiff's communications related to the debt.

656.   As of July 30, 2021 all other Te-Moak court personnel were paid in full, some more than allowed by law, and the Plaintiff remained the only member of the Te-Moak Judicial Branch, who did not receive one penny for services performed as the individual legally responsible to manage the business of the Court.  See U.S. Const. Amend. 13.

657.   On July 30, 2022 Bryan Bowker, pursuant to any **A1-A6** agreement, plan or scheme with or between Dentons; Skibine; Chadwick Smith; Darian Stanford; Sypolt; Paul Conable; Steve Sisolak; Aaron Ford; Joseph McDade and Joseph Holley affixed a digital electronic signature onto a document entitled "Settlement Agreement" related to the Te-Moak Tribal Court System and a judicial services contract, Contract No. AV15AV00203, dismissing "ISDA 2017-01" and releasing Bowker and McDade from all liability, without the knowledge, consent or participation of the Plaintiff.  At the time Bowker knew or should have known that the Plaintiff was the Te-Moak Supreme Court Judge, and pursuant to the legal authority granted to the Plaintiff, as approved by the United States, the Plaintiff's office remained a necessary party to the proceedings.[4] See Exhibit I-B(5):  Settlement Agreement.  Bryan Bowker retired on or about October 15, 2021.

658.   On August 1, 2021 Darian Stanford, after travelling across, on or along interstate highways, bridges and roads constructed or maintain with or by federal funds, hand-delivered a package containing $30,000.00 (USD), consisting of income, revenue or cash proceeds that originated from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis or related businesses, and Darian Stanford physically delivered that container or package containing the $30,000 in cash to Joseph Holley.

659.   On August 2, 2021 the Plaintiff and former Te-Moak prosecutor, Sherry Harris, and Tribal Judge, Carrie Frias, communicated via email regarding the termination of Sypolt from Dentons on June 11, 2021; identified the false and defamatory statements by Sypolt regarding the Plaintiff; providing copies of Te-Moak legislative enactments; and the Plaintiff provided documentation to support the Plaintiff's lawful appointment to the bench, including the contact information for Skibine and Sibbison as partners at Dentons to verify Sypolt's status.  Ms. Harris responded, thanking the Plaintiff, and Harris stated that she was unaware Sypolt was terminated by Dentons. Dentons and Sypolt continued to deceive by failing to give notice to legal professionals or to falsely claim Sypolt remained with Dentons

---

[4] The Plaintiff received a copy of the Settlement Agreement via FOIA on March 25, 2022.

related to the representation of the Tribe, and preserve the NCE.  In the carbon copy, the name Isidra Russell appeared as the clerk of the court, and as of that date and all times before Sypolt; Holley; Garcia; Tybo; Woods; Marin; Gonzalez and Carrera failed to inform the Plaintiff, as the Chief Tribal Judge, or Te-Moak Tribal members that Ms. Russell was hired as the clerk.

660.   On August 3, 2021 Dentons, by way of its partner Skibine, filed a notice of withdrawal of representation for the Te-Moak Tribe with the U.S. Solicitor General Christopher A. Reudas-Salt Lake City, Utah.  Sypolt, George Skibine, Reudas and the Te-Moak Tribal Council failed or refused to provide any documentation showing a withdrawal of legal representation, or information related to the Settlement of Case No. ISDA 2017-01/1ADR that directly or indirectly affected the operation and business of the Te-Moak Court system to the Plaintiff.  Ref. Dentons Letter of Withdrawal as Counsel for the Te-Moak Tribe, United States Department of Interior-Office of Hearings and Appeals (August 3, 2021); see also, Exhibits II-F(3)(a)-(d)(identifying Jeffery Scott Sypolt); see also, Notice of Entry of Appearance on Behalf of Te-Moak Tribe of Western Shoshone Indians of Nevada, United States Department of Interior-Office of Hearings and Appeals, (Case No. ISDA 2017-01)(March 23, 2021).

661.   On August 4, 2021 the Plaintiff sent an email to the TMC, with a copy to each respective Band Council Administrator, that stated and refuted the assertions by members of the TMC claiming that the Plaintiff's judicial appointment was conditional as an offer to hire, as published and republished in the media, mail and wire by the members of the TMC.

662.   On August 6, 2021 Joseph Holley; Duane Garcia, Sr; Davis Gonzalez and David Carrera held a meeting at the Te-Moak Diabetes Building, (*a building constructed, maintained and funded with federal tax dollars*), located on federal, tribal land at 511 Sunset Street; Elko, Nevada where Joseph Holley stated that Joseph Holley authorized the expenditure of $7,931.74 from the original $30,000.00 cash that Holley received from Darian Stanford, upon delivery, and that the total cash amount of $30,000.00 represented a 5% sales tax on the total income from sales of marijuana at "Newe Cannabis" for a past amount from the second quarter 2021 when, according to the Greenbits sales report, that 5% amount equaled $75,001.00 for that quarter.  Ref. Exhibit II-B(6); e.g. Exhibit II-B(11).

663.   On August 6, 2021 Joseph Holley; Duane Garcia, Sr; Davis Gonzalez and David Carrera separately affixed their signatures after they hand-counted the NCE cash

Joseph Holley received from Darian Stanford before making a written entry onto a document entitled "Cash Count Receipt August 6, 2021" as prepared in advance by Tanya Reynolds and Alfreda Walker that states: "Payment Received $30,000.00;" "Deductions: $7931.74;" "Total Cash: $22,068.25;" "Name;" "Area Representing;" "Date;" "Amount Verified;" and "Signature." Exhibit II-B(11): Te-Moak Cash Count Receipt (August 6, 2021). Joseph Holley ordered two (2) employees of Te-Moak, Sharla Dick and Jennifer Knight, to act as witnesses and separately hand-count the cash before affixing their signatures verifying the process and amounts. Id. Once the money was verified and the signatures affixed, Joseph Holley dismissed the employees and split the money: David Carrera received $5,000.00; Davis Gonzalez received $5,000.00; Joseph Holley received $5,000.00 and Duane Garcia Sr. received $5,000.00 with the remainder deposited into Zionsbank and NSB.

664.   On or about August 6, 2021 Clifton Oppenhein and Julia Oppenhein submitted their resignation from the TMC. Joseph Holley, Alice Tybo, David Carrera and Sypolt agreed to hold both resignations without recordation until after the upcoming October 2021 Election "in case we need their votes."

665.   On August 9, 2021 Sypolt, Joseph Holley, Alice Tybo, Davis Gonzalez, Duane Garcia, Sr., David Carrera and Andrea Woods authorized a judicial services Settlement Agreement without the Plaintiff's knowledge as the Te-Moak Supreme Court Judge in a case before the U.S. Office of Hearings and Appeals, Docket No. ISDA 2017-01.

666.   On August 18, 2021 the Plaintiff, as the Te-Moak Supreme Court Judge, sent an email to Sypolt; Joseph Holley; Duane Garcia, Sr; Davis Gonzalez; Alice Tybo; Andrea Woods; David Carrera, and others, that states:

> Once the Tribal Council created the Court System and then appointed the judges and personnel, according to the Constitution and Ordinance 87-ORD-TM-03 (Approved by the United States July 17, 1989) the Supreme Court Judge is expressly granted the exclusive power over the administration of justice and business of the Tribal Courts, not the Tribal Council. . . Please take a minute and review Article 8 of the Constitution of the Te-Moak Tribe of Western Shoshone Indians of Nevada. . . Mr. Sypolt is permanently DISBARRED and his license is REVOKED.

667.   On August 18, 2021 the Plaintiff sent an email to Sypolt; Joseph Holley; Duane Garcia, Sr; Davis Gonzalez; Alice Tybo; Andrea Woods; David Carrera, and others, that states: "[t]o validate that claim that Mr. Sypolt was no longer employed with

Dentons, please find a copy of the automatic reply I received from Dentons today 'no longer with the firm' which occurred on or about June 11, 2021."

668. On August 18, 2021 the Plaintiff sent an email to Sypolt, Holley, Garcia, Gonzalez, Tybo, Woods, Carrera, and others, containing an automatic reply message that the Plaintiff received from Dentons' email server that states:

> The email you sent cannot be delivered to Jeffery Scott Sypolt, who is no longer with the firm.  If you would like to speak with someone at Dentons, you may contact Heather Sibbison at +1 202 408 6439 or heather.sibbison@dentons.com

669. On August 19, 2021 the Plaintiff sent an email to Sypolt; Joseph Holley; Duane Garcia, Sr; Davis Gonzalez; Alice Tybo; Andrea Woods; David Carrera, and others, demanding Defendants cease and desist publicly identifying the Plaintiff as a felon, stating that the Plaintiff is not a Te-Moak judge and that the Plaintiff falsified or stole Te-Moak government records.  In the Plaintiff's August 19, 2021 email the Plaintiff identified the Plaintiff's FBI Background report and Joseph Holley's official written statement of January 17, 2020 accepting the FBI report, exonerating and clearing the Plaintiff on this issue, finding no criminal history.  Ref. Exhibit III-B(1)-(3).  The Plaintiff demanded that Sypolt; Joseph Holley; Duane Garcia, Sr; Davis Gonzalez; Alice Tybo; Andrea Woods; David Carrera retract the Public Notices containing the false statements regarding the Plaintiff published in the Salt Lake Tribune, Reno Gazette, Elko Daily, Twin Falls and on Facebook, to the public and to government agencies and officers.

670. On or about August 19, 2021 Alice Tybo, Sypolt, Joseph Holley and Tanya Reynolds used the Plaintiff's confidential and personnel records, (*birth date and social security number*), to gain unauthorized access to the Plaintiff's gmail account associated with the Te-Moak Supreme Court, locking the Plaintiff out of that account for three (3) days.

671. On or about August 19, 2021 Alice Tybo, Sypolt, Joseph Holley and Tanya Reynolds, with other unknown individuals, used the Plaintiff's confidential and personnel records, (*birth date and social security number*), to gain unauthorized access to the Plaintiff's credit reports or information, obtaining private information regarding the Plaintiff's auto loan and disseminating that information to the public.  As a result of the non-payment of the Plaintiff's wages as the judge and the wrongful termination of the Plaintiff as the Tribal Administrator, the Plaintiff notified the loan carrier,

Santander, of default and to voluntarily repossess the vehicle to mitigate damages. Sypolt, Tybo, Holley and Reynolds, agreed to communicate with Santander and communicated with Santander, as the Plaintiff's loan service company, and published a public, joint statement that the Plaintiff "has a stolen vehicle," the same vehicle subject to the default, and also communicated with Santander and law enforcement requesting the arrest of the Plaintiff for possession of a stolen motor vehicle.

672. On August 19, 2021 Alice Tybo, Duane Garcia, Sr; Tanya Reynolds and Cheryl Mose, with the aid and assistance of Joseph McDade and Bryan Bowker, caused the transmission of a document to the United States Department of Treasury that states "[t]he South Fork Band Council is 100% dependent upon the Federal Government. The monies received from government agencies are obligated for specific uses," and then demanded that the U.S. "immediately cease and desist in any attempts to recover the debt," then totaling over $850,000.00 where Alice Tybo, Duane Garcia Sr, Tanya Reynolds, Tyler Reynolds and Cheryl Mose, misappropriated and fraudulently spent those "obligated" funds for personal use through series transactions funneling the funds through programs that appeared legitimate, and in Mose's instance at the local casino, and with the assistance of Bowker's brother-in-law, Glen Shafer, who failed to timely report the fraud as the agency official with authority, Reynolds, Garcia, Tybo and Mose continued spending federal funds on personal use unabated for years, taking vacations, purchasing property, such as cattle and hay, then converting those items into personal assets.  Joseph McDade assisted this group in South Fork by stalling legal processes until periods of repose expired, and assisted Bowker to prevent federal officials beyond the Region from gaining knowledge of the tribal conflicts and McDade's interference in internal tribal and election disputes, (*precluded by McDade's office as a legal matter*).  In exchange, the Band's Council representatives, Tanya Reynolds, Tyler Reynolds, Alice Tybo and Duane Garcia Sr, (all related), continued to allow McDade to hold a land assignment in the same geographical area as his agency authority, (otherwise in conflict with McDade's position at the BIA), continue to exercise natural resource rights on federal land under McDade's supervision, along with the misappropriation of federal funds and equipment, and abuse of authority with the support of Band Council and Joseph McDade and Bowker agreed to influence or interfere with the BIA CFR Court processes in select cases favoring the tribal faction in power, and if any opposition arose, McDade manipulated local BIA Law enforcement officials  and tribal officials with threats of lost employment or restriction of government program funds, evidenced by McDade's help in the disbarment of the Plaintiff without due process.

673. The Plaintiff reported allegations of misconduct related to Joseph McDade, and others, to the Bryan Bowker, and the Plaintiff learned that Bowker failed or refused to report the misconduct beyond the Regional Office, in part to protect Shafer's employment. The Plaintiff reported extensive allegations of criminal conduct to BIA OJS Internal Affairs and OIG, with OJS in turn informing McDade and others of the allegations, who in turn retaliated against witnesses and victims. Several adult tribal members contacted the Plaintiff to report several violent sexual offenses against them when they were children by a former BIA-ENA law enforcement officer and former tribal official. Lt. Anderson and Joseph McDade informed the alleged perpetrator who in turn threatened the families of the witness victims, effectively silencing those individuals from making further reports. Reportedly, the alleged perpetrator, as a then BIA Law enforcement officer, raped and beat a child so bad that the officer threw her into a water filled ditch believing she died, and left the scene, only to learn that child survived and was in the hospital. While she was in the hospital this individual reportedly threatened members of her family with arrest and violence as a BIA law enforcement officer to silence her and her family from making an official report. The entire family moved outside of the state days later.

674. Under the supervisory authority of Joseph McDade and Bryan Bowker the Plaintiff reported instances where BIA OJS incarcerated individual defendants, in one case, over 30 days without an arraignment when the legal standard is within 72 hours, and McDade received a report of every tribal member incarcerated each day as a matter of policy. OJS internal affairs took no action against McDade or others involved, and as a result Bowker recommended a promotion for the internal affairs officer the Plaintiff reported the allegations related to the unlawful incarceration, and that agent became Special Agent in Charge for the Region. Joseph McDade arranged with the BIA CFR Court to refile the charges against that individual without addressing the unlawful incarceration.

675. On or about August 20, 2021 the Plaintiff and David Carrera communicated via the telephone about the extensive false and defamatory publications in the Salt Lake Tribune concerning the Plaintiff, and Carrera stated that Joseph Holley, Alice Tybo, Duane Garcia Sr, David Carrera, Andrea Woods and Davis Gonzalez were advised by their "bar licensed attorney Scott Sypolt to publish the Public Notices in the newspaper, so we listen to him, not you Sam." Ref. Exhibit III-B(16). David Carrera confirmed and verified to the Plaintiff that Carrera's May and June 2021 public statements to the Tribal Council thanking Davis Gonzalez for the "'Cannabis money'" actually occurred. Prior to this conversation with Carrera, Davis Gonzalez stated to

the Plaintiff in July 2021 that Elko Band did not pay or authorize payment to Carrera, when Gonzalez stated that Darian Stanford and Paul Conable paid Carrera, Holley, Tybo, Garcia with cash proceeds from the NCE retail store Newe Cannabis, from the 'partner's share,' agreeing to pay Carrera, Holley, Tybo and Garcia each an amount of $5,000.00 per month and disguise the payments as the Tribe's 5% sale tax and that Holley, Carrera, Tybo, Garcia and Marin agreed to support the NCE by building a  court system with judges and staff favorable to NCE with the help of Chadwick Smith, Darian Stanford, Joseph McDade, Wendall Hayes and Sypolt.

676. On August 20, 2021 Hinton Burdick produced a written financial record entitled "Final – All Programs Budgets," that included a Financial Summary for the Reporting Period up to and including August 20, 2021 for all Te-Moak Contracts and Grants. See Exhibit II-B(15): Te-Moak Final Report (August 2021).  In that report are individual spreadsheets that state and detail the Te-Moak expenditures and income amounts up to that date. Id.  This Final Report fails to include any budget or program for the $13 million in aid from the federal ARPA that Te-Moak received, however there is a report for the ARPA-FRF Program 15 (state ARPA grant) for "$2, 629,776.39" that reports a total expenditure amount of "$56,003.19" with a note "[n]eed a budget for new program." Id. The SORNA Program received "$150,000.00" in federal funds October 1, 2020 and to date expended "$72,134.36." Id.

677. All federal grant awards to the Tribe require legislative enactment, approval of a program, statement of work, narrative and budget prior to expenditures.  For all times Juan Arevalo was unqualified to serve as Te-Moak SORNO law enforcement officer because the Te-Moak SORNO law requires a POST certified law enforcement officer and Arevalo lacked the credentials and education to serve as a POST certified law enforcement officer.

678. The Final Report SORNA section states that for the period of May 2021 through August 2021 Juan Arevalo received as salary and wages federal grant funds administered under the U.S. DOJ SMART SORNA Program, and then ARPA federal funding, as authorized by Joseph Holley and Alice Tybo. Id; see also, Exhibit I-C(9).

679. On or about September 9, 2021 Arevalo, Sypolt and Holley stated that the SORNA Program lacked funding, then requested additional funding, and the TMC approved transferring income or revenue received from the claimed cannabis sales taxation amount derived or originating from the sale and distribution of a controlled substance, marijuana, at the NCE, in addition to authorizing the impermissible reallocation of ARPA federal funds into the SORNO Program.

680. Following the October 25, 2021 elections, where the results show the people refused to re-elect Holley and Gonzalez, on or about November 17, 2021 Tybo, Marin, Gonzalez, Garcia, Carrera, Woods authorized Holley to sign <u>Resolution 21-TM-124</u> approving the transfer and expenditure of federal ARPA funds, totaling $75,000.00, into the SORNO program, *inter alia*, when that transfer is not only impermissible under Treasury rules, it is unlawful because Holley, Marin, Tybo, Gonzalez, Garcia, Woods and Carrera lacked all legal authority to expend any federal funds at that point due to the election removing his authority. <u>Exhibit I-C(9)</u>. Joseph McDade attempted to interfere in the election and sanction these actions by Holley, Gonzalez and Arevalo by allowing these Defendants to remain in office and continue disguising or hiding their criminal complicity, and McDade's, with the NCE. <u>See</u> <u>Del Rosa v. Acting Pacific Regional Director</u>, 51 IBIA 317, 320 n6 (2010)(*the BIA lacks power "to serve as arbiter of a tribal dispute"*). As the Te-Moak Supreme Court Judge the Plaintiff issued a decision governing certain 2021 pre-election matters on December 28, 2021 that validated the elections in South Fork and Elko.

681. The <u>Final Report</u> states and shows expenditures of federal grant funds, via Indirect (*the federally accepted annual percentage rate is deducted from all other federal grant funds and programs and deposited into Indirect for expenditure on Administrative costs to manage the other programs-33.82%*), for an "Administrator" covering the period of April 1, 2022 through June 1, 2022 in an amount of "$22,212.45" when no Administrator was employed at Te-Moak. <u>Exhibit II-B(15)</u>. During this time, Diabetes Director, Alfreda Walker, and the Enrollment Director, Sharla Dick, performed the "acting" Administrator duties while simultaneously drawing a 40 hour paycheck through the federal grant award IHS Diabetes and BIA ATTG Enrollment funds.

682. The <u>Final Report</u> states and shows that the Te-Moak Tribe expended federal grant funds in an amount of $1528.80 in postage costs for the 2nd and 3rd quarters of the fiscal year, when for Fiscal Year 2020, at the height of COVID-19 when the tribe mailed CARES Act checks, applications and individual mailings to the 2450 tribal members costing $555.85 in postage costs from Indirect, or roughly 36% was spent in one year, FY20, of the total amount expended in one quarter FY21 on postage. <u>Id</u>. The same period, 2QFY21 Holley et al instituted and conducted a mailing campaign against the Plaintiff using the United States Postal Service. The <u>Final Report</u> states and shows that Indirect is in the negative "$11,303.87" on August 20, 2021. <u>Id</u>.

683. The <u>Final Report</u> states and shows that all programs, (*except some rent expenditures in the Diabetes Program as discussed infra*), applied the TMC approved rate of $.90

per square foot rental amount for expenditures of federal funds for the FY21 period. Id. Resolution 21-TM-124 approved an expenditure of $550,000.00 of ARPA federal funds for rent to the Tribe when the FY21 expenditure for space rent for all programs in the Te-Moak Office Building at 525 Sunset totaled $7961.42.[5] Exhibit I-C(9). The buildings are constructed, maintained and renovated with federal funds, then federal funds are charged against the same space for use inside the buildings, and in December 2021 $16,000.00 expended on new furnace, $24,000.00 on a piece of heavy equipment, only to have Holley extricate the TMC and staff from that building the same week. Davis Gonzalez, Adela Morrison, Holley and Sypolt then authorized the TMHA Board to issue a quit claim deed against the building at 525 Sunset where no prior deed existed to quit claim.

684.  The Final Report states and shows that the Te-Moak Diabetes Program Category view of expenditures "Personnel" (2 FTE and 1 PTE) spent a total year to date amount totaling "$63,794.06;" "Supplies" incurred a total cost spent "$41,184.94," or 19% of direct cost expended year to date; and "Other" expended a total year to date amount "$101,919.07" or 47% of the entire program, where a significant number of the expenditures listed under "Other" lack justification or valid documentation as required by the grantor.[6] Exhibit II-B(15).

685.  The Final Report states and shows that during the Plaintiff's administration of the CARES Act, the Administration expended at a total amount of $36,400.00 on Hazard Stipends covering 11 Council Members and 10 staff members for the period July 2020 through December 2020, while for the period July 2021 through November 17, 2021 Holley expended almost $250,000.00 on Hazard Pay stipends from ARPA federal funds, under Resolution 21-TM-124, on the same staff and Council. See Exhibit II-B(15); c.f. Exhibit I-C(9). In at least one instance, the TMC retroactively agreed and paid an employee who was not employed during the relevant period.

686.  On August 23, 2021 the Plaintiff transmitted a simultaneous email to the editors at major media outlets in Salt Lake City, Reno, Twin Falls and Elko, related to Exhibit III-B(16), containing the following statement:

---

[5] Te-Moak Diabetes Program, administered with U.S. HHS –IHS federal funds, paid to each of the four (4) bands during the Plaintiff term of office as the Administrator, over $3,000.00 per month to Elko Band without a valid lease, or any lease, covering a building constructed with federal funds issued to Te-Moak, not Elko Band. The Plaintiff refused to authorize the expenditure. The Final Report states that all four Bands combined received from Diabetes IHS $21,829.01 for space rent. See Exhibit II-B(15).
[6] Diabetes Grant Budget Period is based on a calendar year, (January 1 to December 31), not Fiscal year (October 1 to September 30).

the Te-Moak Supreme Court, and the Mediator, Kelly Latimer, submitted a joint notification of that settlement agreement to ADR Judge Heffernan regarding <u>Docket No. ISDA 2017-01</u>. Administrative Law Judge Heffernan is a former subordinate to Skibine and Sibbison.

690.    On September 3, 2021 the Plaintiff sent and transmitted a Claim and Demand for Payment to Joseph Holley; Alice Tybo; David Carrera; Duane Garcia, Sr; Davis Gonzalez; Andrea Woods, and others, with a copy sent to Bryan Bowker, Kyle Clayton, Jim James, Delores Miller, Jacqueline Ruley and April Gromadzki at the Bureau of Indian Affairs OIG that included a copy of the April 14, 2021 Holley-Stanford Cannabis Receipt, Reynolds' false or fraudulent federal applications for federal funds, and a claim that Sypolt failed to inform the BIA and OHA during the settlement proceedings of Sypolt's disbarment and termination at Dentons while continuing to represent the Tribe in association with Skibine and Dentons.

691.    On September 8, 2021 the Plaintiff communicated with Governor Jenelle Roybal, and Lt. Governor Rafaela Sanchez, of the Pojoaque Pueblo in New Mexico. <u>Exhibit III-D(3)</u>. The Governor, Lt. Governor and the Plaintiff discussed claims made by Stanford and Sypolt, who personally appeared in New Mexico, stating that Sypolt and Stanford represented a marijuana company "Planet 13 Holdings," and proposed representing the Pueblo People in a joint marijuana business venture, and provided the Te-Moak Tribe as a reference. <u>Id</u>.

692.    On September 8, 2021 the Plaintiff refused to give Mr. Sypolt or Mr. Stanford a reference to the Pueblo, and the Plaintiff communicated directly with Planet 13 Holdings attorney Leighton Koehler who stated that neither Darian Stanford nor Sypolt were ever employed by or with Planet 13 Holdings. During this conversation Mr. Koehler requested to speak with the Governor and Lt. Governor of the Pojoaque Pueblo and seek to enjoin Stanford and Sypolt. The Plaintiff relayed the information to the Pojoaque Pueblo Governor and Lt. Governor who thanked the Plaintiff "for being so honest helping Native people."

693.    On September 9, 2021 Joseph Holley; Alice Tybo; David Carrera; Duane Garcia, Sr.; Thalia Marin; held a meeting, partly funded with federal funds and the cash income, revenue or proceeds originating, received or derived from the sale and distribution of a controlled substance, marijuana, at Newe Cannabis, routed through SALAL; Zionsbank; NSB and Wells Fargo Bank, pursuant to an **A1-A4**, **A6** and **A8** agreement, plan or scheme with or between SCS; EBCE; Robin Evans; Leslie Grove; Paul Conable; Chadwick Smith; Steve Sisolak; Aaron Ford; Steve Olson; Juan Arevalo;

Skibine; Larry Yeager; Darian Stanford; Kevin Clock, and others, related to and regarding the sale and distribution of a controlled substance, marijuana, at Newe Cannabis, who agreed to issue, publish or produce an official government record to support the execution of the terms of **A1-A4**, **A6** and **A8** agreement, plan or scheme that states:

   a. "a quorum was present," where the document stated the "Tribal Council is composed of twelve (12) members of whom 6 were present. . .and the foregoing Resolution as adopted. . .by a vote of 5 in favor; 0 against; 1 Abstaining," and when simple math and tribal law require 7 present to constitute a quorum;

   b. "a motion was properly made and seconded to hire Scott Sypolt as a Consultant to be paid of ARP [American Rescue Plan Act] funds, and as General Counsel to help policy and procedures for the Te-Moak Law & Order Code;"

   c. "a second motion was made. . .to fund Scott Sypolt as a Consultant and as General Counsel in the amount of three hundred and ninety-thousand dollars in the form of a retainer to pay for future legal services, and to pay for past legal services performed by Mr. Sypolt in writing policies and procedures for the Law & Order Code for the Te-Moak Tribe from June 30th of 2021 through September 8, 2021, and at the hourly rate of five hundred dollars per hour," when written out the amount is for an expenditure of $90,300.00, not $390,000.00 as paid, and ARPA precludes retroactive expenditures as stated and claimed in this document.  Resolution 21-TM-111.

694. On September 9, 2021 Joseph Holley; Alice Tybo; David Carrera; Duane Garcia, Sr.; Thalia Marin; held a meeting, partly funded with federal funds and cash, income or revenue proceeds originating from the sale and distribution of a controlled substance at Newe Cannabis, routed through SALAL; Zionsbank; NSB and Wells Fargo Bank, pursuant to the **A5** agreement, plan or scheme with or between SCS; EBCE; TT; Robin Evans, RAE Solutions; Sypolt; Skibine; Dentons; Leslie Grove, IBSC; Paul Conable; Chadwick Smith; Steve Sisolak; Aaron Ford; Steve Olson; Juan Arevalo; Davis Gonzalez; Thalia Marin, Larry Yeager; Darian Stanford; Kevin Clock, and others, and who then issued, published or produced an official government record to support the execution of the terms of **A1-A4**, **A6** and **A8** agreement, plan or scheme,  that was published, submitted and mailed as an official government record, (Resolution 21-TM-112), that states:

a. "UNEQUIVOCAL CONDEMNATION OF SAMUEL LEE BIERS FOR FRAUDULENT REPRESENTING HIMSELF TO BE A JUSTICE OF THE TE-MOAK SUPREME COURT AND AN OFFICIAL TRIBAL DECLARATION THAT BIERS IS NOT A JUSTICE OF THE TE-MOAK SUPREME COURT AND DOES NOT REPRESENT THE TE-MOAK TRIBE OF WESTERN SHOSHONE INDIANS OF NEVADA IN ANY CAPACITY;"

b. "[O]n or about February of 2020 SAMUEL LEE BIERS ("BIERS") was nominated to become a Tribal Judge for the Te-Moak Tribe. . .a federally recognized Indian Tribe, which offer expired in June of 2021, subject to the positive outcome of Biers' background check and proof of good moral character;"

c. "BIERS falsified his legal background by telling the Te-Moak Tribal Chairman Joseph Holley and other individuals that he was a licensed attorney and in good standing in the States of Nevada, Utah and North Carolina.  BIERS also told Chairman Holley that he was formerly a prosecution attorney in Utah and that he had practiced extensively before the World Court in the Hague;"

d. "[T]he Te-Moak Law and Order Code requires that a judicial candidate be licensed in at least one state jurisdiction and the Te-Moak Constitution requires a judicial candidate be of good moral character;"

e. "Tribal investigation of BIERS' it was discovered that BIERS falsified his entire legal background and that he was not a licensed attorney in good standing in the State of Nevada . . .Utah nor was he ever a prosecuting attorney in said State; that he was not a licensed attorney . . .in North Carolina; and that no evidence was discovered or provided that he ever practiced before the World Court in the Hague;"

f. "[B]ecause of BIERS' fraudulent misrepresentations regarding his legal background the Te-Moak Council. . .sent multiple notices of these fraudulent misrepresentations to BIERS (who failed to respond to Council) and made the official determination that BIERS lacked a good moral character and that BIERS used subterfuge to gain the nomination of Tribal Judge;"

g. "[O]n or about March 5, 2020 it was discovered by the Te-Moak Council that BIERS knowingly stole and disseminated information from the Council that was known to be highly sensitive and confidential, thereby, harming the attempted formation of the new Te-Moak Tribal Court;"

h. "[B]ased upon these official findings,  the Te-Moak Council immediately condemned BIERS . . .and permanently removed him from the position of Te-Moak Tribal Judge and in a separate Resolution, No. 20-TM-49, unanimously

condemned BIERS for theft and dissemination of sensitive and confidential information;"

i. "BIERS continues to falsely impersonate himself (sic) as a judicial officer of the Te-Moak Tribal Court in violation of Nevada Code Title 15 NRS 199.430 'Impersonation of Officer,' and continues to falsely misrepresent himself as a Te-Moak Supreme Court Tribal Judge;"

j. "BIERS negatively impacts the Te-Moak Tribe and creates confusion and chaos by his wrongful representations that he is a judicial officer of the Te-Moak Courts," citing a newspaper article as factual support for this claim; ref. Exhibit III-B(16)

k. "...hereby condemns SAMUEL LEE BIERS for his lies and subterfuge to attain a Te-Moak judicial position and further states that BIERS is **not** a Justice of the Te-Moak Supreme Court and does **not** represent the Te-Moak Tribe in any capacity, and that any representations by BIERS to the contrary are fraudulent and untrue;"

l. "...hereby requests the Federal Bureau of Investigations, the Bureau of Indian Affairs Police, and the District Attorney for Elko County, Nevada to investigate BIERS for criminal actions involving the impersonation of a judicial officer and other crimes arising out of his wrongful impersonation of a judicial officer of the Te-Moak Tribal Court and to punish him accordingly including banishment from all lands on the Te-Moak Reservation and enjoining [the Plaintiff] from usurping a judicial position of the Te-Moak Tribe."

695. Resolution 21-TM-112 included language stating that the Council "permanently removed," the Plaintiff as the Te-Moak Tribal Judge and cited "Resolution 20-TM-49" in support. Resolution 20-TM-49 authorized the distribution of CARES Act funds, and failed to include any language or statement related to the Plaintiff's employment with the Te-Moak Tribe.

696. The FBI, BIA-OJS and Nevada law enforcement agencies reviewed the government records, tribal law and transcripts related to the Plaintiff's appointment as the Te-Moak Supreme Court Judge, investigated and refused to prosecute the Plaintiff. The Plaintiff is legally the Te-Moak Supreme Court Judge.

697. On or about September 9, 2021 Sypolt submitted "Invoice /01" as a demand for payment in an amount of "$390,000 [as a ] Retainer for legal services per Resolution

passed by Te-Moak Tribal Council on September 9, 2021 and per Retainer Agreement signed by Chairman Joseph Holley on September 9, 2021. . .MAKE CHECK PAYABLE TO:  Scott Sypolt MAIL CHECK TO:  7903 Bayview Road Wonder Lake, Illinois 60097." <u>Exhibit III-C(6)</u>.

698. On or about September 10, 2021 Joseph Holley; Alice Tybo; David Carrera; Duane Garcia, Sr.; Thalia Marin publicly published and transmitted copies of <u>Resolution 21-TM-111 and 112</u> after receiving individual payments consisting of cash proceeds from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, pursuant to an agreement, plan or scheme with or between SCS; TT; EBCE; Robin Evans; Leslie Grove; Paul Conable; Skibine; Chadwick Smith; Steve Sisolak; Aaron Ford; Steve Olson; Juan Arevalo; Davis Gonzalez; Thalia Marin; Larry Yeager; Darian Stanford; Kevin Clock, and others, who agreed through written contracts and agreements with SALAL to keep, maintain, manage, transmit, deposit or retain records, information and documents related to cash proceeds originating, received or derived from the sale and distribution of a controlled substance, marijuana, related to the NCE, that were sent or published via the United States Postal Service, facsimile transmissions and via Lucent Technologies POP 100 Gigabyte data switch located in Salt Lake City, Utah over the internet, email and by other electronic means, with the intent or purpose to violate or attempt to violate <u>21 U.S.C. §841</u>, <u>26 U.S.C. §7201</u>, <u>18 U.S.C. §1341</u>; <u>18 U.S.C. §1343</u>; <u>18 U.S.C. §1344</u>; <u>18 U.S.C. §1952</u>; <u>18 U.S.C. §1956</u>; <u>18 U.S.C. §1957</u>; <u>18 U.S.C. § 1960</u> and the <u>Te-Moak Constitution</u>, <u>Article 4, sections 3, 12 and 14</u>.

699. On or about September 10, 2021 Suzanna Sandoval resigned from her position as the Te-Moak Tribal Administrator and acting Te-Moak Recording Secretary.

700. On September 11, 2021 Suzanna Sandoval drafted and published via the internet a letter to the public stating that Sypolt, the "Tribal Attorney. . .fought an enrolled member of the Tribe. . .is hand picking Tribal Court Judges. . .[Sypolt was] paid over a Million dollars and has done nothing for the Tribe but hurt our people.  Court cases have been delayed and he thinks its no big deal[ ] Violating the civil rights of our people."

701. On or about September 24, 2021 the Plaintiff met with Elwood Mose, at which time Mr. Mose stated that on or about September 23, 2021 the Tribal Council appointed him as the Te-Moak Election Board Chairman and that he swore into office Morgan Currey as a Te-Moak Trial Court Judge and Wendall Hayes as the Te-Moak appellate judge.  <u>Ref</u>. <u>Exhibits II-C(3)</u> and ¶¶708, 710, *infra*.  The Plaintiff asked Mose who

swore Mose into office because neither the Plaintiff nor BIA Magistrate Harlan performed that act, and Mose replied "nobody." Plaintiff stated that the oaths for Mose, Currey and Hayes would be materially defective, with the Resolution for Hayes void because only one (1) appellate judge is permitted under tribal law. Mose then informed the Plaintiff that "Tanya, Scott and Joe's Council," on the advice and approval of "Joe McDade," agreed to publish a Notice in newspapers across the Western United States and online via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah, stating that the Plaintiff "is not affiliated with the Te-Moak Tribal Court," that the Plaintiff, although appointed "as the Appellate Judge," the appointment was conditioned on a "background check," claiming that the Plaintiff "does not meet the qualification requirements as specified in the Constitution," and that "Resolution No. 21-TM-83" declared and voided the Plaintiff's judicial office, revoking "the offer for Appellate Judge," further claiming the Plaintiff lacks "any authority or affiliation as it relates to the Te-Moak Tribe of Western Shoshone Indians of Nevada or Te-Moak Tribal Courts." Ref. Exhibit III-B(13)-(16). Mose stated to the Plaintiff that Joseph Holley and Sypolt arranged for the "cannabis money" to pay for these publications with the "cannabis attorney." Id.

702. On or about September 12, 2021 Sypolt; Chadwick Smith; Darian Stanford; Paul Conable; Skibine and Joseph McDade, agreed to communicate with Zionsbank, Brent Waite, in Salt Lake City, Utah and engaged in a series of communications with Brent Waite, stating that the Plaintiff is a felon, not a judge for the Te-Moak Tribe directing Waite and Zionsbank to deny access to the Te-Moak Administrative Office of the Court accounts and account information to the Plaintiff with the intent or purpose to violate or attempt to violate federal law related to the sale and distribution of a controlled substance, marijuana, and to conceal the financial transactions related to the operation and management of the NCE. Joseph McDade; Bowker; Sypolt; Darian Stanford; Paul Conable; Skibine; Brent Waite received money or funds, directly or indirectly, that originated or were derived from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis and related businesses, and Joseph McDade; Sypolt; Darian Stanford; Paul Conable; Skibine; Brent Waite received money or funds, directly or indirectly, that originated or were derived from the fraudulent misappropriation of federal grant funds earmarked for specific use, where Brent Waite authorized Nicole Lewis to permit Joseph Holley and Alice Tybo to pay Sypolt $390,000 without application of lawful processes or procedures, to wit: Resolution 21-TM-111 and the related Check Request failed to show a lawful quorum, vote and requisite signatures. Exhibit III-C(6).

703. On September 13, 2021 Joseph Holley signed a document entitled "CHECK REQUEST" as the sole authorizing agent when a minimum of two (2) signatures were required before processing and issuance, and without identifying or indicating the source of federal funds or Te-Moak Program and Account number associated with the expenditure of federal funds as required according to Te-Moak Policy. See Exhibit III-C(6): Check Request-Sypolt (September 23, 2021).

704. On September 15, 2021 at 11:23 a.m. Sypolt drafted and transmitted an email "from [Sypolt's] Verizon, Samsung Galaxy smartphone" via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah using Sypolt's personal email address (scottsypolt@rocketmail.com) to Alice Tybo (personal email address) and Joseph McDade (personal email address), regarding an ongoing BIA CFR court case, "I talked to Joe about this last night. Exhibit III-C(7). Today we are filing an Appeal which will freeze the Status Quo as it existed BEFORE the Order was issued." Id; ref. 18 U.S.C. §§1503 and 1510(obstruction through corrupt means). This September 15, 2021 email from Sypolt was copied to Joseph Holley; Duane Garcia; Andrea Woods; David Carrera and Chadwick Smith (using multiple email addresses for Smith), and others. Id.

705. Sypolt and Chadwick Smith maintained, established and conducted impermissible ex parte communications with United States BIA Superintendent Joseph McDade regarding an ongoing Cannabis lawsuit involving Newe Cannabis, (tribal members were challenging the lawfulness of the NCE), filed in the BIA CFR Court, using private email messaging and cellular phone communications from Illinois and Oklahoma via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah to McDade in Nevada whereby McDade agreed to influence or interfere and then influenced or interfered with the decisions of the BIA CFR Courts in favor of the continuation of the NCE Newe Cannabis after SCS; Sypolt and Darian Stanford tendered, transferred or made cash payments commingled with federal funds, directly or indirectly, to Joseph McDade and to BIA CFR magistrates funneled through Chadwick Smith, Charles Tripp and Harlan Law in Oklahoma where those funds originated or were derived from the sale and distribution of a controlled substance, marijuana, involving the NCE with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §§1503 and 1510(obstruction through corrupt means); 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and §1962, and the Te-Moak Constitution, Article 4, sections 3, 12 and 14.

706.   Sypolt; Joseph Holley; Darian Stanford; Skibine; Paul Conable; Davis Gonzalez; Juan
       Arevalo; David Carrera; Alice Tybo; Duane Garcia, Sr; Tanya Reynolds and Angela
       Mendez agreed, as part of the NCE, to pay Chadwick Smith for legal services, and
       paid Chadwick Smith for legal services, with federal funds and cash, income,
       revenue or proceeds that originated or were derived from the sale and distribution
       of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, and
       related businesses, where the funds were fraudulently wired to and from Sypolt's
       financial institution and via SCS; EBCE and Te-Moak Tribal accounts held at or
       serviced by Wells Fargo Bank; Zionsbank; NSB and SALAL with the intent or
       purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C.
       §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §§1503 and
       1510; 18 U.S.C. §1956(Money Laundering); 18 U.S.C. §1957; 18 U.S.C. § 1960 and
       §1962 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14.

707.   Chadwick Smith is an advocate for racial supremacy, previously espousing an
       amendment to the Cherokee Constitution restricting citizenship only to those with
       "Indian blood" or "by blood" when that language went against the Cherokee Nation's
       Treaty and federal law, which resulted in the expulsion of thousands of Cherokee
       freedmen, former slaves of the Nation.  Subsequently, in 2021 the Cherokee
       Supreme Court rejected this amendment and all laws that flowed from it.  Chadwick
       Smith previously fought to retain the leadership position of the Cherokee Nation
       past the term of office Smith was elected to serve.

708.   On September 23, 2021 Elwood Mose, pursuant to an **A1-A6** and **A8** agreement,
       plan or scheme with or between Joseph Holley; Alice Tybo; Chadwick Smith; Sypolt;
       Duane Garcia, Sr; Thalia Marin, Wendall Hayes and Larry Yeager, and other
       unnamed individuals, signed a document entitled Te-Moak Appellate Court Judge
       Oath of Office as the officer who administered the oath of office, and Susan Jones
       affixed her signature as a witness attesting to the signature of Wendall Hayes as the
       "Te-Moak Supreme/Appellate Court Judge" when the signature for Wendall Hayes
       above Jones' and Mose's signatures was blank.  Exhibit II-C(3)(September 23, 2021).
       Mose lacked legal authority to administer the oath on this date as his oath of office
       was not executed until September 29, 2021, and Mose's oath was initially left blank,
       later signed by J. Currey who was not authorized to give an oath.  Id; e.g. Te-Moak
       Constitution, Article 7, Section 6("Chief Judge" shall administer and then officer "shall
       take [the oath] . . .prior to assuming the duties").

709.   On September 26, 2021 Steve McDade published a statement on Facebook that the
       Plaintiff is a white supremacist.

710. For the period September 23, 2021 through September 29, 2021 Te-Moak tribal law
states that only the Chief Tribal Judge, (Supreme Court), "shall" administer oaths,
unless that judge is absent, then and only then is the Tribal Election Board Chairman
permitted to administer an oath, where the term of office for each member of the
Te-Moak Election Board begins and ends when that Board member's term of office
as a member on the Band Election Committee begins and ends, yet at no time before
taking the oath. Id; see Election Ordinance 13-15-1(c)(*Tribal Election Board term of
office "shall be for the duration of his term of office on the Band Election Committee"*).
The oath for Mr. Mose's seat on the Band Committee stated that term began
"September 25, 2021," this date is two (2) days after Mr. Mose signed the empty
oath for Hayes and two (2) days before the claimed date that Mose assumed official
duties. Exhibit II-C(3). The Supreme Court Judge Plaintiff was not been absent
during this time.

711. On or about September 30, 2021 the Plaintiff received a phone call from the State of
Nevada DETR Attorney General investigating the Plaintiff's unemployment claim
based on the submissions, assertions and information Nevada received by mail and
facsimile from Joseph Holley dated June 7, 2021, resulting in the denial of
unemployment benefits. The Plaintiff appealed the earlier DETR decision, providing
a copy of the Sealed Order refuting the claims of Holley, and the DETR Attorney
General, acting pursuant to an **A1**, **A2**, **A4** and **A5** agreement, plan or scheme
involving Aaron Ford; SCS; TT; Sypolt; Joseph Holley; Davis Gonzalez; Sisolak;
Skibine; Paul Conable and Darian Stanford, began a criminal investigation against
the Plaintiff to retaliate against the Plaintiff for reporting criminal conduct related to
the sale and distribution of a controlled substance, marijuana, at the NCE Newe
Cannabis and continue the substantial unreported cash 'donations' to Ford, Sisolak
and Masto involving the NCE unabated with the intent or purpose to violate or
attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343;
18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960
and §1962 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14.

712. In October 2021 EBCE Gonzalez contacted Paul Conable, and Conable stated to
Gonzalez that he agreed on behalf of TT and SCS to transfer an amount equaling
about $1.3 million into an EBCE bank account allowing Gonzalez, Hernandez and/or
Leslie Grove to draw and pay funds necessary for distribution to Te-Moak Elko Band
tribal members in November 2021, in the form of checks or instruments sent and
delivered through the United States Postal Service, across the United States. Id; see
15 U.S.C. §§1-7; 12-26 and 1125; and 29 U.S.C. §§52-53.

713.  Wes Williams, a Nevada attorney hired by EBC in July 2020 to assist with the NCE
      Cannabis business at Newe, stated and advised Davis Gonzalez, EBCE and NCC to
      deposit cash proceeds received, derived or originating from the sale and
      distribution of a controlled substance, marijuana, into the EBCE account, then route
      to EBC General Fund at Zionsbank/NSB and commingle that money with federal
      funds and Smoke Shop income, and then withdraw necessary funds out of Elko Band
      Council's Indirect Cost and General Fund Budget accounts containing the federal
      funds to pay Williams' attorney fees, along with wages, salaries and benefits to RAE,
      Robin Evans, Adriana Hernandez, Leslie Berg, IBSC, Timothy Randolph, and others,
      without disclosing the unlawful character or source of the funds, transfers or
      deposits to federal grantors, financial institutions or the Tribe with the intent or
      purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C.
      §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C.
      §1957; 18 U.S.C. § 1960 and §1962 and Te-Moak Constitution, Article 4, sections 3,
      12 and 14.

714.  On or about October 5, 2021 David Carrera publicly stated that he was not running
      for elected office in the October 2021 Battle Mountain Band Election and that
      Carrera was "wealthy, I don't have to work.  I'm just going to invest my money and
      relax."

715.  On October 8, 2021 tribal advocate Lorraine Garcia stated that a member of Senator
      Masto's office contacted Garcia to confirm that a Band is not a Tribe in reference to
      the **A2** Compact.

716.  On October 10, 2021 SALAL Business Services sent an email to Thalia Marin from
      Washington via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City,
      Utah routed to the data server at EBC on federal, tribal land that states "Salal Credit
      Union – Business Account Application – Elko Band Council has been voided for the
      following reason:  Envelope has expired." See Exhibit III-D(2).  Marin attempted to
      open an additional SALAL business account for EBC to transfer funds originated
      from or related to the NCE as directed or advised by the ECDEE and the NCE.

717.  On or about October 12, 2021 EBCE, pursuant to any **A1-A4**, **A6** and **A8** agreement,
      plan or scheme with or between TT attorneys Paul Conable, Darian Stanford and
      Steve Olson; Kevin Clock; Juan Arevalo; Larry Yeager; Thalia Marin and Davis
      Gonzalez who agreed to pay or fund the publication of an electronic advertisement
      on the internet announcing an event entitled "Distribution of Funds" to be held on
      "[December] 14, 2021. . .[and December] 15, 2021," for Elko Band Tribal Members

where the "cash" proceeds that were received, derived or originating from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis and related businesses, would be hand-delivered to individual members, and that when an Elko Band Tribal Member is "unable to pick up your funds on the dates listed, a check will be mailed to the address listed on your application" pre-stamped and delivered via the United States Postal Service with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 15 U.S.C. §§1-7, 12-26 and 1125; and 29 U.S.C.. §§52-53; 18 U.S.C. § 1960 and §1962 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14.

718.  On October 13, 2021 SCS and NCE conducted a hand-count of the revenue, income, cash and proceeds originating from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, with SCS directing Empyreal and GardaWorld to pick up, transport and deliver an undetermined amount of the cash proceeds to SALAL and Zionsbank. Paul Conable, Kevin Clock and Elliot Parris personally appeared at Newe Cannabis on October 13, 2021 to supervise and conduct the hand-count, delivery and transportation of cash proceeds, revenue or income originating from the NCE retail store Newe Cannabis.

719.  On October 14, 2021 the Plaintiff received a copy of an executed Affidavit of Robert Brady, (former Elko Band and Te-Moak Tribal Council member), that states under penalty of perjury:

      1)  On February 3, 2021 the Te-Moak Tribal Council appointed the Plaintiff to the Te-Moak Supreme Court, "pursuant to the Te-Moak Constitution;" Exhibit III-A(5);
      2)  Jeffery Scott Sypolt claimed to the Tribal Council on February 3, 2021 that Sypolt "performed and completed background investigations for all candidates," including "Biers," and "found no issues;" Id;
      3)  On March 25, 2021 the Te-Moak Tribal Council received documents from the "Te-Moak Court Clerk" containing copies of emails written by Jeffery Scott Sypolt to the Te-Moak Trial Court Judge, Ramon Acosta, where Sypolt referred to J. Acosta as "'a clown,' falsely accusing Ramon of slandering Mr. Biers when it was Sypolt slandering Judge Biers," and that after delivery of these documents to the Tribal Council, "Te-Moak council members as well as Scott Sypolt began to make negative comments regarding Judge Biers' past;" Id;
      4)  During "bereavement leave," and "at the direction of Scott Sypolt the

Te-Moak Council terminated Mr. Biers as the tribal administrator based on false and negative comments regarding Mr. Biers from Mr. Sypolt" and on "the recommendation of Scott Sypolt, then passed another resolution unlawfully claiming the power to remove Mr. Biers as the appellate judge;" Id; e.g. Exhibit III-B(7)

5) Former TMC member Brady sent an email challenging the unlawful removal of Biers and delivered it to Tribal Chairman Joseph Holley and acting administrator Sharla Dick;

6) On May 20, 2021 Robert Brady wrote and submitted a memorandum, with supporting documentation attached "stating that the action taken previously [to remove Plaintiff as a judge] by the Te-Moak Council was illegal;" Id; ref. Exhibit III-A(6)

7) On May 28, 2021 the TMC addressed Brady's memorandum regarding the unlawful removal of the Plaintiff by setting a later date to discuss and decide the matter; Id;

8) On June 2, 2021 Sypolt and Holley "ordered" Robert Brady, without authority, "to withdraw" his memo regarding the unlawful removal of Judge Biers, Brady refused, and Sypolt "then lied and told [Brady] that Biers' appointment was conditional on a background check," Brady challenged that falsehood with facts from the February 3, 2021 publicly broadcast video livestream showing no condition. Sypolt stated "'Mr. Biers is a felon' and 'do you know how embarrassing it would be to have a felon as a judge;" Id;

9) Robert Brady challenged Sypolt's false statements regarding the Plaintiff's criminal status as a condition of office and Sypolt threatened Brady's membership on TMC, and that Sypolt recommended that TMC issue another "resolution" to remove Biers by "unlawfully claiming the authority to remove Mr. Biers from the courts as the [Te-Moak] Appellate Judge under the guidance of Scott Sypolt who at the time was terminated from his law firm, Dentons, for physically attacking a Te-Moak Tribal member;" Id;

10) "On September 9, 2021 the Te-Moak Council adopted resolution 2021-TM-112 . . .stating that Mr. Biers had falsified his background check and stated that [the Plaintiff claimed] he was a licensed attorney in Nevada; this however was not true as Mr. Biers never made such a claim from the beginning of his time as administrator. . .through when he was wrongfully terminated as the Tribal Administrator and slandered by Scott Sypolt." Exhibit III-A(5).

720.   On October 15, 2021 Te-Moak Tribal Advocate and Yakima Tribal member, Lorraine Garcia, a person who was previously an opponent of the Plaintiff in civil court proceedings, submitted an affidavit under penalty of perjury that states:

1) Lorraine Garcia "personally listened to a meeting of the Te-Moak Tribal Council, on or about February 3, 2021" and "[a]t that meeting the Te-Moak Tribal Council . . .legal counsel for the Te-Moak Tribe, Scott Sypolt, did advise the Te-Moak Tribal Council that if they did not agree with any decision of the Tribal Judge, that Judge could be immediately fired. . .I am aware that this is false legal advice" under the Tribe's Constitution; Exhibit III-A(7).

2) "Samuel Biers was selected by the Te-Moak Tribal Council to be the Supreme Judge of the Appellate Court;" Id

3) "On February 8, 2021 the Tribe did a press release with the Elko Daily Free Press announcing. . .the Supreme Judge of the Appellate Court, Samuel Biers;"

4) ". . .viewed a posting on the Te-Moak Tribe Facebook page that show Res. No. 21-TM-112 which is a Resolution of the Te-Moak Tribal Council . . . stat[ing] **that it is unequivocal condemnation of Samuel Lee Biers for fraudulently representing himself to be a Justice of the Te-Moak Supreme Court;**"

5) "Samuel Lee Biers has not been recalled by the members of the Te-Moak Tribe" as required by and under the Tribe's Constitution;

6) "I have personally viewed press releases purportedly by the Te-Moak Tribal Council that falsely state that the Te-Moak Tribe is not now or has never been affiliated with Samuel Biers, printed in the Elko Daily Free Press;"

7) "I have personally spoken with. . .Te-Moak Tribal Court, [Judge] Ramon Acosta, who resigned . . .due to blatant interference of his duties as Trial Judge by Scott Sypolt;"

8) "I have personally read a letter of resignation by [Te-Moak] Trial Judge. . . Carrie Frias, who resigned. . .in part due to the faulty legal advice of Attorney Scott Sypolt;" ref. Exhibit II-C(11);

9) Te-Moak Supreme Court Judge Samuel Biers' term of six (6) years did "not expire[ ]" since the appointment on February 3, 2021, and at no time before the affidavit did the Tribe hold or conduct a recall election for Mr. Biers as the sole method of removal under Te-Moak Law. Exhibit III-A(7); see also, Exhibit III-B(8).

721.   On October 15, 2021 the Plaintiff transmitted an email with supporting documents to Zionsbank/NSB Nicole Lewis, (*delivery acknowledged*), regarding a payment of

$390,000.00 to Sypolt being processed at Zionsbank with federal funds held in the Te-Moak account at Zionsbank, wherein the Plaintiff stated to Lewis that Sypolt was disbarred by the Te-Moak Supreme Court; that Resolution 21-TM-111 contained material legal defects rendering it unlawful or void; that the Plaintiff held exclusive authority to manage all the Te-Moak Court business; and that Sypolt continued to publish known falsehoods regarding the Plaintiff to Zionsbank agents stating that the Plaintiff is not a judge for the Te-Moak Tribe.  Ref. Exhibit III-C(6).

722.  Zionsbank released $390,000.00 to Sypolt, pursuant to Resolution 21-TM-111 and Joseph Holley's signature alone, composed of federal funds commingled with cash, revenue or income derived or originating from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, and those funds were sent, transmitted or delivered to Sypolt's "Law Offices" located at his home address: "7903 Bayview Road Wonder Lake, Illinois 60097" as identified in Sypolt's invoice 1/1. See Exhibit III-C(6); e.g. Exhibit III-D(6): Zionsbank/NSB Email.

723.  On October 16, 2021 the Plaintiff sent Zionsbank agent Nicole Lewis an email containing citations and language for tribal legal authority granting the Plaintiff access to the accounts and funds for the Te-Moak Court System, including a copy of the Tribe's Constitution, a copy of Order, In Re Te-Moak Tribal Council Resolution 21-TM-83 (Case No. 2021-TM-SC-001, Te-Moak Supreme Court)(July 22, 2021), and a copy of the receipt of cash, revenue, income or proceeds originating or derived from the sale of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, SCS and Darian Stanford to Joseph Holley from April 14, 2021.

724.  On October 18, 2021 Zionsbank agent Nicole Lewis transmitted a reply email to the Plaintiff's October 16 email that states "the bank will not get involved [ ]at this time. I have still sent all documents on to our legal department to review in case it goes to a level that we are pulled into."  As the records show, Zionsbank and NSB were actively involved in the issues raised by the Plaintiff contrary to Lewis' statements.

725.  On October 18, 2021 the Plaintiff transmitted a response email to Zionsbank agent Nicole Lewis specifically identifying material, legal defects in Resolution 21-TM-111 that rendered it invalid under tribal law stating "NSB is bound to follow lawful authority to withdraw funds belonging to the Tribe[ ] If Resolution 21-TM-111 is not lawful. . . and if funds are sent by NSB to an unauthorized individual . . .is there a way to at least delay processing and demand clear authority to make the withdrawal?"

726. On October 18, 2021 Zionsbank agent Nicole Lewis replied via email to the Plaintiff that Lewis sent or transmitted the records, documents and information contained in the Plaintiff's October 18, 2021 email "to the legal department. I have been advised to send all future communications to them as well and not to discuss with the Tribal Courts at this time." Zionsbank in Salt Lake City refused and denied the Plaintiff access to the Te-Moak Administrative Offices of the Courts accounts and information while granting access to individuals, such as Tammy Carrera, who were not lawfully entitled to receive that information and who were at all times subordinate to the Plaintiff's judicial authority under tribal law.

727. On October 20, 2021 EBCE and SCS agents, representatives and attorneys, Davis Gonzalez; Thalia Marin; Steve Olson; Adriana Hernandez; Paul Conable and Darian Stanford, and others, pursuant to a **A1-A4**, **A6** or **A8** agreement, plan or scheme, agreed to hire and pay, and who hired and paid, Empyreal Logistics and GardaWorld Armored Transportation, (Customer ID NV210507aD), to transport $1,033,000.00 in cash (USD), that originated or was derived from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis and related businesses from Te-Moak Territory through Utah, Idaho, Oregon and Washington to SALAL where it was deposited, transferred or transmitted into EBCE; SCS and TT accounts pursuant to an **A1-A4**, **A6** or **A8** agreement, plan or scheme with or between SCS; EBCE; Davis Gonzalez; Thalia Marin; Juan Arevalo; Larry Yeager; Paul Conable; Chadwick Smith; Skibine; Joseph McDade; Aaron Ford; Steve Sisolak; Joseph Holley; Alice Tybo; Scott Sypolt; David Carrera; Duane Garcia, Sr; Joseph McDade; Paul Conable and Darian Stanford to sell and distribute a controlled substance, marijuana, distributing funds derived or originating from the sale and distribution of marijuana at Newe Cannabis between the parties with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and §1962 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14. See Exhibits JJ-B(12) and (13).

728. On October 22, 2021 Paul Conable, with his wife Barbara, filed a Reinstatement Amendment with the Oregon Secretary of State for a business entity, Andover Productions, Inc., where both hold an ownership interest, after depositing and/or investing a portion of the cash proceeds obtained, received, derived or originating from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis and related businesses transported the cash proceeds to Washington across Oregon using Empyreal Logistics and GardaWorld Armored

Transportation via interstate commerce over and across highways, bridges and roads pursuant to an **A1-A4, A6** or **A8** agreement, plan or scheme with or between SCS; EBCE; Davis Gonzalez; Thalia Marin; Juan Arevalo; Larry Yeager; Chadwick Smith; Skibine; Joseph McDade; Aaron Ford; Steve Sisolak; Joseph Holley; Alice Tybo; Scott Sypolt; David Carrera; Duane Garcia, Sr; Joseph McDade; and Darian Stanford to sell and distribute a controlled substance, marijuana, with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 15 U.S.C. §§1-7, 12-26 and 1125; 29 U.S.C.. §§52-53; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and §1962; Te-Moak Constitution, Article 4, sections 3, 12 and 14. See Exhibit II-B(13).

729. Brent Waite, Zionsbank and NSB agreed to unlawfully deprive the Plaintiff his judicial office or the Plaintiff's exercise of judicial authority, and to deny or deprive the Plaintiff's constitutional rights and privileges under Te-Moak Constitution, Article 9 and the U.S. Constitution, Amend. 5 and 14;  Article 1, sec. 10, cl. 5; Article 2, section 2; Article 4, sec. 2, cl. 1 and Article 6 and 28 U.S.C. §§1981, 1982; 1983 and 1985 pursuant to any **A2, A3, A4** and **A5** agreement, plan or scheme with or between SCS; EBCE; Davis Gonzalez; Thalia Marin; Juan Arevalo; Larry Yeager; Paul Conable; Chadwick Smith; Skibine; Joseph McDade; Aaron Ford; Steve Sisolak; Joseph Holley; Alice Tybo; Sypolt; David Carrera; Duane Garcia, Sr; Joseph McDade; and Darian Stanford to assist, conspire or provide material support for that agreement, plan or scheme to sell and distribute a controlled substance, marijuana, distributing funds derived or originating from the sale and distribution of marijuana at Newe Cannabis between the parties to the agreement, plan or scheme with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 15 U.S.C. §§1-7, 12-26 and 1125; 29 U.S.C.. §§52-53; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and §1962 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14.  See Exhibit II-B(13):  Deposit Slip and Bag Packing Slip, (Serial Number 19315).

730. On October 29, 2021 Tanya Reynolds entered into an agreement, plan or scheme with Sypolt, Joseph Holley, Darian Stanford and Alice Tybo and purchased or attempted to purchase an interest in real property located at 2213 and 2215 North 5th Street; Elko, Nevada 89801 using tribal assets commingled with cash, funds or money generated, derived, received or originating from the sale of a controlled substance involving the NCE, as stated in Resolution 21-TM-124, (November 17, 2021)(*modifying "the American Rescue Plan budget and rescinding Resolution 21-TM-121),*  where the language failed to show a lawful quorum and the individuals who

signed that Resolution were not lawfully elected to office by tribal law following the end of their three (3) year constitutional term of office that resulted in a fraudulent transfer of federal funds totaling $550,000.00 commingled with the NCE cash at Zionsbank/NSB that included Tanya Reynolds' business entity Western Shoshone Descendants of Ruby Valley LLC, formerly ETK Enterprise, LLC.

731.   On or about November 5, 2021 checks or financial instruments drawn, drafted or written on a SALAL account for EBCE, (located in Seattle, Washington), in the amount of $1000.00 each, containing routing numbers "**427" were issued pursuant to the October 2021 agreement, plan or scheme between, by or with Davis Gonzalez and TT attorney Paul Conable, (*who guaranteed in October 2021 that sufficient funds were timely deposited or transferred into EBCE SALAL account for the total distribution amount set to begin issuing on or about November 10, 2021*), where Elko Band tribal members who submitted a timely written application were eligible to receive funds, (by way of a financial instrument drawn on EBCE SALAL account), sent or transmitted through the United States Mail and sent to individual tribal members routed through the USPS Central Mailing hub in Salt Lake City, Utah and delivered to addresses throughout the country.  See Exhibit II-B(14) ECBE 2021 SALAL Check Information(November 5, 2021)(A. Hernandez).

732.   On or about November 12, 2021 SCS; EBCE; EBC and TT representatives Davis Gonzalez; Darian Stanford; Paul Conable; Kevin Clock; Thalia Marin; Suzanna Sandoval and Juan Arevalo were notified in by email and telephone by Susan Zuzeuta and Michelle Levy-Wakish that approximately 100  EBCE 'Distribution Checks' issued on November 5, 2021, (*drawn on SALAL in Seattle, Washington that contained the account holder's name in the upper left corner "Elko Band Colony Enterprises; 1555 Shoshone Circle; Elko, Nevada 89801"*), were returned to tribal members throughout the country labeled by numerous financial institutions as 'Insufficient Funds,' ("NSF"), due to an absence of sufficient funding in the EBCE SALAL account, and those NSF with a corresponding fee assessed against the tribal member who tendered the check, and all the checks contained the authorized signature of "A. Hernandez" a person known to be Adriana Hernandez, an employee, agent and representative of SCS; EBCE and IBSC.  Id.  Paul Conable stated to Susan Zuzueta and Michelle Levy-Wakish that SCS agreed to reimburse each and every tribal member for all costs associated with the failure to timely make the necessary deposit into EBCE SALAL account as agreed between Gonzalez and Conable in October 2021.

733.  On November 12, 2021 the Plaintiff sent an email to Zionsbank agent Nicole Lewis that requested "the contact information for whomever advised you to 'not discuss' the Te-Moak Tribal Court accounts and money held in trust at NSB," with the Plaintiff, as the Te-Moak Supreme Court Judge. See Exhibit III-D(6).

734.  On November 12, 2021 Woods or Angelea Mendez prepared, drafted and authored a handwritten version of the meeting minutes for a meeting held with Joseph Holley; Alice Tybo; Duane Garcia; David Carrera; Thalia Marin; Andrea Woods that day, and that document stated: "New judge Wendall Hayes. . .May 4th Meeting 1.6 mil/13 mil Resolution 21-TM-72 May 27, 2021. . .Oath to swear in 'Elwood Mose' Te-Moak Election Board. . . 25 C.F.R. 11.118B can't swear in people. . .mtg with BIA." Exhibit II-C(6):  Te-Moak Closed Meeting Minutes (November 12, 2021).

735.  On November 15, 2021 Zionsbank agent Nicole Lewis replied to the Plaintiff's November 12, 2021 request via email "Here is the contact information for Brent. . . brent.waite@zionsbancorp.com." See Exhibit III-D(6).  Brent Alan Waite is the lead corporate council for Zionsbank in Salt Lake City, Utah 84133.  Plaintiff held a teleconference with Mr. Waite, Vincent Garcia, Chairman, and Vice Chairwoman Danena Ike, (newly elected Te-Moak Tribal Council), on or about January 11, 2022, and at that time Mr. Waite stated that Zionsbank would not release any information to the Plaintiff or the new TMC related to the Te-Moak Court accounts at Zionsbank.

736.  On November 16, 2021 Sypolt stated that Governor Sisolak, Senator Masto and Attorney General Ford agreed to work together to remove the Plaintiff's Judicial Authority.

737.  On November 16, 2021 at 6:15 p.m. the Elko County Democratic Central Committee, ("ECDCC"), held a video conference General Membership Meeting with Thalia Marin, Davis Gonzalez and others related to the NCE, to introduce Kim Cole as a candidate for Lt. Governor, to approve the ECDCC Treasurer's Report and to read and approve the individual Committee Reports.  As recorded, John Garrard provided the ECDCC Diversity Report that states: "[t]he Tribal Councils have had their elections and leaderships have turned over.  We need Democratic candidates in all spots.  We need campaign training in Elko."

738.  Thalia Marin; Davis Gonzalez; Larry Yeager; Suzanna Sandoval, and others, delivered large amounts of unreported cash, income or revenue, as well as checks drawn on bank accounts associated with EBCE, EBC and charter associations of EBCE and EBC that contained cash, revenue, income or proceeds that originated or

were derived from the sale and distribution of a controlled substance, marijuana, involving the NCE, directly and indirectly, to John Garrard; ECDCC; Steve Sisolak; Aaron Ford; Kim Cole; Mark Amodei and Catherine Cortez Masto, and other unnamed politicians and staff associated with ECDCC, in exchange for political and legal favors and promises to allow the continuation of business operations related to the sale and distribution of a controlled substance, marijuana, at the NCE, that included promises and agreements to unlawfully deprive the Plaintiff of his judicial office or the Plaintiff's exercise of judicial authority, and to deny or deprive the Plaintiff constitutional rights and privileges under Te-Moak Constitution, Article 9 and the U.S. Constitution, Amend. 5 and 14;  Article 1, sec. 10, cl. 5; Article 2, section 2; Article 4, sec. 2, cl. 1 and Article 6 and 28 U.S.C. §§1981, 1982, 1983 and 1985 pursuant to any A2, A4, A5 and A6 agreement, plan or scheme with or between SCS; Zionsbank; Brent Waite; NSB; EBCE; Davis Gonzalez; Steve Sisolak; Aaron Ford; Thalia Marin; Juan Arevalo; Larry Yeager; Paul Conable; Chadwick Smith; Skibine; Joseph McDade; Joseph Holley; Alice Tybo; David Carrera; Duane Garcia, Sr; Joseph McDade; Paul Conable and Darian Stanford to assist, conspire or provide material support related to any A2 and A6 agreement, plan or scheme to sell and distribute a controlled substance, marijuana, distributing the funds derived or originating from the sale and distribution of marijuana at Newe Cannabis between the parties to an agreement, plan or scheme with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and §1962 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14.

739. Davis Gonzalez reported, stated and communicated on multiple occasions that at his direction or under an agreement and plan with SCS; EBCE; TT; Paul Conable; Darian Stanford; Steve Olson; Kevin Clock and Elliot Parris, the NCE paid over "500 grand" in cash, income, revenue or proceeds from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis or related businesses, directly and indirectly, to the EDCC; Steve Sisolak; Aaron Ford; Kim Cole; Mark Amodei and Catherine Cortez Masto.

740. Plaintiff alleges that payments of unreported cash, income, revenue or proceeds that originated or were derived from the sale and distribution of a controlled substance, marijuana, at the NCE, directly or indirectly to EDCC and Catherine Cortez Masto, resulted in Catherine Cortez Masto involvement, plans, agreement, order, advise or instruction to Assistant United States Attorney Sue Fahami and/or Acting United States Attorney Christopher Chiou to carry out, institute or execute a law

enforcement policy in Nevada where all federal law enforcement officers were compelled, in all cases involving tribal marijuana operations and businesses, to make arrests only after an indictment issued or a serious felony was committed in the presence of the federal law enforcement officer, and to dismiss all arrests that were effectuated on probable cause, where this policy's goal or aim was to preserve and protect the flow of unreported cash and non-cash proceeds originating or derived from the sale and distribution of a controlled substance, marijuana, in the State of Nevada from multiple tribal nations and government officials, directly and indirectly, to the campaigns and personal accounts of Catherine Cortez Masto; Mark Amodei; Steve Sisolak, Aaron Ford, and other unnamed staff and officials at ECDCC and the State Democratic Convention, or their family members and business entities. Masto agreed with Sisolak and Ford to submit the name of Jason Frierson to President Biden as a nominee, who seems to have agreed to support and continue the policy protecting the distribution of revenue from tribal marijuana operations and businesses in Nevada, California, Oregon and Washington through financial institutions and into the coffers of Nevada politicians.

741. On or about November 17, 2020 Sypolt stated to the Plaintiff that "every weed store and grower in Nevada pays cash to the Party [Democratic] so they can continue doing business in the state. It's how things work. The Governor and I have an agreement, we're good friends, so let's make some money. You and I can open our own store, get the tribe to purchase the land, and we'll make all the money. Fuck them." The Plaintiff rejected Sypolt's offer.

742. On or about November 17, 2021 Joseph McDade and Steve McDade got into a verbal dispute when Joseph McDade stated that he will not recognize the 2021 tribal election results or "Biers" and Steve McDade stating that Joseph McDade is barred by the "CFR" from "interfering in election disputes."

743. On or about November 17, 2021 Joseph Holley; Alice Tybo; David Carrera; Duane Garcia, Sr.; Thalia Marin asserted the legal authority to authorize the reallocation and distribution of American Rescue Plan Act (ARP) funds, by way and through Resolution 21-TM-124 that included language transferring "$75,000.00" into the Tribe's Sex Offender Registration and Notification Program, (*at the time already funded by U.S. DOJ Adam Walsh grant money*); "$75,000.00" into the Tribe's Enrollment Program, (*already funded by way and through the U.S. BIA Aid to Tribal Government grant*); "$30,000.00" into the Tribe's Eyewear Program, (*the Tribe's sole private program that is self-funded*); "$231,776.37: into an unknown "Paid Sick/Hazard Premium" policy; "$60,000.00" into "Supplies;" "$550,000.00" into the

Tribe's Rent/Utilities expense budget; "$80,000.00" into the Tribal Offices' "Health and Safety/Janitor" services, (*staff already compensated for this service and their performance of this service is already paid with federal grant funds*); "$60,000.00" for Tribal "Equipment" budget, (*this subject is included as an existing Tribal budgetary item in each of the existing Te-Moak Programs paid and funded with federal grant funds*); "$550,000.00" for "Contractors;" and "$20,000.00" for the Tribe's "Transportation" services, (*Transportation costs already paid from existing programs funded by federal grants*). See Exhibit   Resolution 21-TM-124.

744. Resolution 21-TM-124 states and includes a date, votes and signatures that occurred after the October 25, 2021 election, where the signatories and voting individuals were not re-elected or who  failed/refused to take office, and that document states Joseph Holley set the total number on the Council at 9 total members when on September 9, 2021 it was set at 11, (Resolution 21-TM-111), and minutes later on September 9, 2021 Joseph Holley stated the Council consisted of 12 total members in Resolution 21-TM-112.  Id.

745. SCS; EBCE; Tonkon Torp; Steve Sisolak; Aaron Ford; Chadwick Smith; Darian Stanford; Paul Conable; Davis Gonzalez; Steve Olson; Kevin Clock and Elliot Parris paid and funded Joseph Holley; Alice Tybo; Joseph McDade; Chadwick Smith; Wendall Hayes; David Carrera; Davis Gonzalez, and others, to disrupt or interfere and attempt to disrupt or interfere with the Plaintiff's judicial authority pursuant to an **A5** agreement by appointing Wendall Hayes into the same judicial office as the Plaintiff without lawful authority, when tribal law allows only one (1) appellate judge, and funding Defendants' plan to carry out or execute an extensive plan or scheme to destroy the character and reputation of the Plaintiff by distributing, publishing, republishing, creating or authoring statements related to the Plaintiff, focused primarily on the Plaintiff's experience, education and ethics that arose in Utah, to invalidate the orders and decisions issued by the Plaintiff as the Te-Moak Supreme Court Judge, and to deny or deprive the Plaintiff's constitutional rights and privileges under Te-Moak Constitution, Article 9 and the U.S. Constitution, Amend. 5 and 14;  Article 1, sec. 10, cl. 5; Article 2, section 2; Article 4, sec. 2, cl. 1 and Article 6 and 28 U.S.C. §§1981, 1982, 1983 and 1985 pursuant to an agreement, plan or scheme by, with or between SCS; EBCE; Davis Gonzalez; Thalia Marin; Juan Arevalo; Larry Yeager; Paul Conable; Chadwick Smith; Skibine; Joseph McDade; Aaron Ford; Steve Sisolak; Joseph Holley; Alice Tybo; Scott Sypolt; David Carrera; Duane Garcia, Sr; Joseph McDade; Paul Conable and Darian Stanford to assist, conspire or provide material support to execute the terms of **A1-A8** agreements, plans or schemes

related to the sale and distribution of a controlled substance, marijuana, at the NCE and to distribute funds derived or originating from the sale and distribution of marijuana at Newe Cannabis between or among the Parties to any agreement, plan or scheme with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341(Mail Fraud); 18 U.S.C. §1343(Wire Fraud); 18 U.S.C. §1344(Financial Institution Fraud); 18 U.S.C. §1952(Travel Act); 18 U.S.C. §1956(Money Laundering); 18 U.S.C. §1957(Engaged in Unlawful Monetary Transactions); 18 U.S.C. § 1960 and §1962 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14.

746. On or about November 17, 2021 Joseph Holley drafted and published a Notice, at the direction, advise, authorization, instruction, agreement or approval of Sypolt; Chadwick Smith; Wendall Hayes; Zionsbank; NSB; Davis Gonzalez; David Carrera; Duane Garcia, Sr.; Tanya Reynolds; Alice Tybo, funded in part by the cash, proceeds or income received, derived or originating from the unlawful sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, directly or indirectly from SCS, EBCE and TT representatives, along with misappropriated federal funds, and this Notice states that the Plaintiff "is no longer affiliated with the Te-Moak Tribe of Western Shoshone per attached resolution in any way, shape, or form. Any business he does in the Te-Moak Tribes' (sic) name is fraudulent. Please share this notice with other tribal members and employees." Exhibit III-B(13); ref. 15 U.S.C. §§1-7, 12-26 and 1125; and 29 U.S.C. §§52-53; 18 U.S.C. § 1960 and §1962.

747. On November 18, 2021 Elko Band Council member Suzanna Sandoval published an advertisement on the internet via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah offering to employ, hire and fill "TWO (2) VACANCIES ON THE NEWE CANNABIS COMMISSION" where that advertisement states each position or office continues for a term of 5 years. Exhibit II-A(8); ref. 15 U.S.C. §§1-7, 12-26 and 1125; and 29 U.S.C.. §§52-53; 18 U.S.C. § 1960 and §1962.

748. On November 20, 2021 newly elected EBC member Chauna Cota stated during a public meeting, broadcast over the internet via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah that "[an SMS text message was] sent out by SCS, or whoever, [because] people out there have been wondering about their checks bouncing and I'd like to know why they're bouncing. . ." The SMS text message was authorized and directed by TT, SCS and EBCE to SALAL via its Positive Pay software program from Seattle Washington throughout the country to tribal members whose EBCE Distributions checks were identified as NSF.

749. On November 20, 2021 Michelle Levy-Wakish stated during a public Elko Band Council meeting, broadcast via the internet using Lucent Technologies POP 100 Gigabyte data switch located in Salt Lake City, Utah "so, I'd like to actually present that because I spoke to Paul [Conable]. On their part, where they, in their system with the banking, Paul is going to rectify it and get those people to call me, and I've been updating them as to what's going on. They also encourage, bank fees, anyone who's incurred bank fees, SCS is going to pay the bank fees. So I just need the list of those who has, but there is plenty of money in there. It's just regarding the bank where they have on SCS has to approve those checks, those number of check deposits to be cleared."

750. On November 20, 2021 Suzanna Sandoval stated at the November 20, 2021 public meeting, broadcast via the internet using Lucent Technologies POP 100 Gigabyte data switch located in Salt Lake City, Utah "it's like Positive Pay here [automated Cash Management Service used by SALAL to detect check fraud]. . . they have to go in and verify and approve those checks to be paid in order for those checks to clear the bank, which is an oversight on their part, it's not our responsibility. So, if people are having those issues just [go] directly to Michelle and then she can resolve it for you." Michelle Wakish replied "yes, and that will be resolved on Monday [November 22, 2021] and like I said if there's any bank fees please bring it to my attention so if I can get your name and all your information so that both bank fees can be taken care of by SCS." An Elko Band Council member asked Michelle "so some checks have cleared their bank?" Michelle Wakish answered "yes some have, but there was a batch that was wrote. . . that's the Positive Pay issue Suzanna was explaining." Councilwoman Dana Lopez asked "Michelle, so how close are [we] to getting all the checks out to the People?" Michelle Wakish answered "the deadline on the application is December 10th . . .they are getting them, the accountant for the Cannabis [Adriana Hernandez] is having to handwrite all the checks. So she has her regular job, [Newe Cannabis retail CFO] so she does them in batches so those checks can be mailed out. That's you know what we wait for is to help on that stuff. She's getting, the list is getting close, but we're still getting applications because the deadline is December 10th."

751. SALAL in Seattle, Washington uses Positive Pay software. The SALAL website states that Positive Pay is an "Advanced Fraud Protection" tool used by SALAL to detect fraudulent activity with "check[s] and ACH transaction[s]," notifying account holders "alerts via email" and "SMS text messag[ing]."

752. Positive Pay is used at SALAL to protect the interests of SALAL against fraudulent activity by account holders and outside criminal actors, and by design SALAL specifically engages in interstate transactions involving cash, revenue, income or proceeds that originate or are derived from the unlawful sale and distribution of a controlled substance, marijuana.  SALAL advertises on its website, across the internet and wire services that it accepts "Cannabis" funds, namely the cash proceeds derived or originating from the unlawful sale and distribution of a controlled substance, marijuana, with the intent or purpose to violate or to attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 15 U.S.C. §§1-7, 12-26 and 1125; and 29 U.S.C.. §§52-53; and 18 U.S.C. § 1960 and §1962.

753. On November 21, 2021, at the direction of Sypolt, Chadwick Smith and Wendall Hayes, in furtherance of any **A2, A4** or **A5** agreement, plan or scheme, Joseph Holley; Alice Tybo; David Carrera; Duane Garcia, Sr; Andrea Woods; Davis Gonzalez and Thalia Marin agreed to hand-deliver or caused the hand-delivery of a document to the United States Postal Service facility located at:  500 Aspen Way; Elko, Nevada that falsely states the Plaintiff is claiming to be a Te-Moak "Tribal Council member" and directing USPS to reject any claim of authority by the Plaintiff.  Exhibit III-B(13).

754. On or about November 23, 2021 EBC Finance Clerk stated that the Nevada Department of Taxation sent a check in the amount of $1.6 million as a refund for tax revenue derived from the sale and distribution of marijuana at Newe Cannabis.

755. On or about November 29, 2021 Suzanna Sandoval stated that she did not "trust" Biers to swear them into office as the Chief Tribal judge because of the statements regarding the Plaintiff that were made, published and uttered by Holley, Sypolt, Stanford and Gonzalez.

756. On November 30, 2021 EBC held a Special Public Meeting that broadcast live audio and video signals over the internet via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah and the audio and video signals were recorded onto Facebook, where Suzanna Sandoval stated "the structure of the Cannabis Commission [NCC] wasn't working the way it was supposed to. . . the Commission wasn't even getting the daily amounts that were being deposited or whatever that you know was made each day because Elko Band said at that time they 'don't need that.' So like I said the whole structure we need to look at . . .[and]when I came on board there was, it was hard to get any answers.  There was so much confusion

about what was being pulled out, was it being deposited, what was being used here, what was being made worse was . . ."

757.   On November 30, 2021 during a public meeting that broadcast live audio and video signals of that meeting over the internet via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah the following statements were recorded onto the Elko Band Council's Facebook page regarding the NCE retail store Newe Cannabis:

    a.   Robin Evans asked Sandoval "you're looking at MIP [accounting software program] so you know what you have right, you have a finance background?" Suzanna Sandoval replied "I don't really have a finance background, but I'm familiar with Elko Band's Budgets. . ."

    b.   Robin Evans stated "if you just let me know what it is that you want and in detail I can run you some detail reports and maybe we can get some more information that's sitting in there."

    c.   Suzanna Sandoval stated ". . .we're talking about almost a year's worth of expenditures, if you stop and think about it, I know that law enforcement was started up with it [the cannabis money]. How much of that money was supposed to be used? How much did they actually use? We don't know."

    d.   Tribal Member Fred Leyva asked the Council "if you are doing a forensic audit of it [Cannabis Business] what do you hope to gain out of it, because you know forensically is more of a legal kinda thing? So, if you find any misappropriation of funds are you looking to take people to court for this findings that they misused the funds if they intended it?" Suzanna Sandoval replied to Fred Leyva's question stating "yeah, at some point we have to stop what's happening someone's gotta step up." Fred Leyva then stated "I agree, a forensic audit is a legal thing so are you looking to press some legal thing against the people who may have misused these funds, is that what you're after?" Suzanna Sandoval replied and stated "we need to set a precedent we haven't held our leaders accountable for forty some years. At some point someone is going to have to take some responsibility. I don't think it's right what's happening, what's been happening. I don't know that it's happening at this level, but as a new Council member I want to make sure as Elko Band member that we're where we need to be, and if we're not, then we need to set some sort of standard that the next Council's gonna have to abide by and we have to abide by it. . .this has been ongoing and I hope we take the same

approach at Te-Moak. . .sitting here yesterday trying to go through those proposed budgets and figure out the set-up of our current budgets, it's a huge concern . . .there's no money.  There's no money anywhere, and to try and go back and see where they were pulling money from, it's concerning. . .out of General Fund, if they allocated anything else or equipment we need to look at that because we don't know where that pulled that money from.  It's not showing in our budgets."

758.  On December 2, 2021 Joseph McDade transmitted an email to BIA CFR CIO Harlan and Wright stating that the BIA will not recognize the South Fork Band and Elko Band Election results.  Joseph McDade determined, in conflict with legal authority on the issue, that these election results were "invalid" and that the BIA will not "recognize Biers as the judge" in furtherance of the NCE common purpose and the **A5** agreement, plan or scheme to remove the Plaintiff as a judge.

759.  On December 2, 2021 Elko Band Council Finance Department received communications from Catherine Cortez Masto who agreed to assist EBC obtain $600,000 in federal funds to develop about 185 acres of federal tribal land pursuant to or in furtherance of any **A1-A6** agreement, plan or scheme of the NCE.

760.  On or about December 6, 2021 Suzanna Sandoval published and broadcast via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah a written false statement nationwide asserting that the Plaintiff "wreaked havoc in our community. . .[and the Plaintiff] did not and does not qualify to be a Judge for the Tribe."  See Exhibit III-D(8):  Sandoval Post (December 6, 2021).

761.  On December 7, 2021 Alice Tybo publicly and falsely stated from within Te-Moak Territory that "Sam Biers is not authorized. . .he is not a judge. . .Sam Biers is a convicted felon.  He cannot hold office. . .Sam Biers is a convicted felon. . .He cannot be a judge.  He is a convicted felon.  He's a felon in two different states.  He's a felon in Minnesota.  He's a felon in Nevada.  He committed fraud when he failed to disclose to the Te-Moak Council that he was a convicted felon.  That's why he's not a judge.  He's a convicted felon in two different states.  He failed to disclose.  When we found out what he'd done, he was removed. . .You cannot have a convicted felon as a judge."  Shannon Darden videotaped Alice Tybo making the public statements this day and then Darden distributed that videotape recording broadcast via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah to other named and unnamed defendants, law enforcement agencies and agents, the public-at-large and to tribal members all over the country, after receiving cash payments and a

promise of continued employment with the tribe pursuant to an agreement, plan or scheme with or between Alice Tybo; Joseph Holley; Tanya Reynolds; Joseph McDade; Chadwick Smith; Wendall Hayes and Jeffery Scott Sypolt.

762.   On December 7, 2021 Alice Tybo publicly stated on a video recording broadcast via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah "I talked to the BIA superintendent [Joseph McDade] who stated that we will remain as Council until we have new elections. . .and I just talked to him. . .we are the Council. . . Sam Biers is going to have federal charges brought against him [inaudible] for impersonating a judge. . . Sam Biers is not an authorized person to swear [elected Council members] in. . .He is committing fraud.  He's been notified everywhere that he is not a judge.  Sam Biers is a convicted felon and cannot hold office.  He cannot be a judge."

763.   On December 7, 2021 Vincent Garcia publicly stated "you [Alice Tybo] and Duane [Garcia, Sr.] signed off on Cannabis deposits when we had a Resolution out there that we [the South Fork Council] were not going to be involved with any of that, you guys are getting kickbacks from all that payment." Alice Tybo responded, "you're right, I'm getting them."

764.   On December 9, 2021, pursuant to or in furtherance of any NCE **A2**, **A4** and **A5** agreement, plan or scheme and at the direction of Sypolt; Tybo, Reynolds and Holley, Cheryl Mose sent an email via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah to government officials four (4) hours after the Plaintiff sent a  request for a criminal referral involving Cheryl Mose, Alice Tybo, Duane Garcia, Sr., and Tanya Reynolds for the misappropriation of just under a million dollars in federal funds, and that email included a copy of Te-Moak Resolution 21-TM-83 and 21-TM-112 asserting the unlawful and impermissible removal of the Plaintiff as the judge in furtherance of the NCE common purpose.

765.   On December 16, 2021 Joseph Holley, on the advice or direction of Sypolt, McDade, Smith or Hayes, authorized, prepared, approved and/or affixed his signature on a document, (misspelling his surname), addressed to and copies sent to: "Joseph McDade," Bryan Bowker, Glen Shafer; Sophia Torres; Susan Zuzueta; Heather Martinez and Cheryl Mose-Temoke, who are all government officials the Plaintiff interacted with as both Judge and Tribal Administrator, and in that document Joseph Holley falsely states that  "Sam Biers, [is] a convicted felon," that further accused the Plaintiff of criminal conduct and that the Plaintiff falsely asserted judicial authority.  Exhibit II-C(2):  Holley Letter.  Joseph Holley then published, sent

and transmitted this document via the United States Postal Service, the internet and other electronic means via Lucent Technologies POP 100 Gigabyte data switch located in Salt Lake City, Utah and Joseph Holley publicly posted or caused the public posting of this document on federal land throughout the tribal community and to many different tribes throughout the Western United States (Fallon-Paiute; Shoshone Bannock; Utes; Goshute). Id. Alice Tybo, Angelea Mendez and Tanya Reynolds posted copies of this document or caused the posting of copies of this document on public boards and various electronic websites online throughout communities in Nevada and Utah. While earning wages paid with federal funds and after receiving cash, revenue or proceeds from the unlawful sale and distribution of a controlled substance, marijuana, at the NCE, Angelea Mendez, Alice Tybo and Tanya Reynolds then prepared copies of this document and envelopes addressed to United States government officials: Christopher Andres Reudas; Joseph McDade; Bryan Bowker; Felisa Wright; Marsha Harlan; Gerald Dixon and Jessica Montcalm. See Exhibit II-C(2).

766. On December 20, 2021 Angelea Mendez, a Native American who is not enrolled or a part of the Te-Moak Tribe drafted and signed a letter addressed to NSB and Zionsbank entitled "RE: Te-Moak Administration and General Fund Accounts," and then published, sent, transmitted and broadcast an electronic copy that letter via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah before a copy of that document was sent, transmitted and published via the United States Postal Service to R. McKay Hall in St. George, Utah that states "Samuel Biers" is not "authorized on the bank card" and Mr. Biers' attempts to "conduct official business with [Zionsbank] shall be considered fraudulent and unlawful as [he is] not [an official]." Exhibit III-B(14): Mendez Interference Letter.

767. On December 27, 2021 Wendall Hayes prepared, drafted and authored a document entitled "INVOICE FOR and TRAVEL EXPENSES" for the period "October 13 to October 16, 2021" totaling "$3,000.00" that Wendall Hayes transmitted, sent or caused the transmission of a copy via the internet, email or other electronic means through the Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah to the personal email accounts "alicetybo@gmail.com" and "jhchairman1@gmail.com." Exhibit III-C(8). This document included a demand for payment and reimbursement from the Tribe and Sypolt amounting to "$4068.95" for Airfare to and from Salt Lake City Airport, a rental car to and from Salt Lake City, Utah, "billed to" Hayes American Express Card and directly to Scott Sypolt for a Court hearing and "'swearing in' of duly elected officials" during this period. Id. At

the time of the claimed swearing in events in this invoice Wendall Hayes lacked legal authority pursuant to Te-Moak law to swear in any Tribal officials.  Ref. Exhibits II-C(3) and ¶¶708, 710 *supra*.

768.   On December 27, 2021 Angelea Mendez completed a typewritten, unsigned document entitled "CHECK REQUEST" seeking the payment of Wendall Hayes' invoice totaling "$4068.95" as the "Te-Moak Tribal Judge" from federal funds identified in the Tribe's Aid to Tribal Government Program, ("ATTG"), under "Acct # 5270 Consultants" that included a notation "need address and receipts" from Wendall Hayes to finalize and process the request for payment.  Exhibit III-C(8).

769.   On December 28, 2021 Wendall Hayes issued a document entitled: "COURT'S ORDER OF DECEMBER 27, 2021 GRANTING PETITIONER'S EMERGENCY TEMPORARY RESTRAINING ORDER," without identifying or including any lawful authority, and in fact this document failed to cite, include or offer any legal authority written anywhere within that document, and Hayes identified the Plaintiff as a party to that action, as part of any **A5** agreement, plan or scheme with or between Joseph Holley; Alice Tybo; David Carrera; Duane Garcia, Sr.; Thalia Marin; SCS; EBCE; TT; Steve Sisolak; Aaron Ford; Chadwick Smith; Darian Stanford; Paul Conable; Davis Gonzalez; Steve Olson; Kevin Clock; Angelea Mendez; Suzanna Sandoval and Elliot Parris, and the costs associated with the production and publication of this document was partly funded with federal funds and partly funded with the cash, revenue, income or proceeds received, derived or originated from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, routed through SALAL; Zionsbank and Wells Fargo Bank, as agreed and approved by the Defendants, and after payment was received Hayes, Mendez, Tammy Carrera, and others, then issued, transmitted and published this document, as an official government record, to maliciously prosecute the Plaintiff, and others, and to harass, embarrass, annoy, stalk and further deny the legal rights belonging to the Plaintiff as retaliation and to force the Plaintiff out of judicial office.  See Exhibit I-B(3): Hayes Emergency Order (December 27, 2020).  Wendall Hayes transmitted this document over the internet, email, facsimile and other electronic means via Lucent Technologies POP 100 Gigabyte data switch located in Salt Lake City, Utah.

770.   On December 29, 2021 Angelea Mendez, pursuant to an agreement with Chadwick Smith; Scott Sypolt; Joseph Holley; Alice Tybo; David Carrera; Joseph McDade; Davis Gonzalez; Duane Garcia, Sr; and Andrea Woods, executed pursuant to a payment agreement with SCS; TT; EBCE; Paul Conable; Darian Stanford; Steve Olson; Thalia Marin; Steve Sisolak and Aaron Ford with the intent or purpose to permanently

defame, destroy and discredit the character of the Plaintiff and unlawfully remove the Plaintiff from judicial office by drafted, sent and transmitted an email, via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah from Angelea Mendez' "iphone" where Mendez states she was "Chairman Joseph Holley," and delivered that email to United States officials:  Joseph McDade; Bryan Bowker; Felisa Wright; Marsha Harlan; Gerald Dixon and Jessica Montcalm;  Tribal Leaders: Rupert Steele; Rodney Mike; Greg Anderson; Serrell Smokey;  Ginny Hatch and all Te-Moak officials;  Governor Sisolak's Tribal Liaison Stacy Montooth; Elko City Mayor Reece Keener, and then to Christopher Andres Ruedas, (United States Solicitor General in Salt Lake City, Utah).  Exhibit III-B(15).  This December 29, 2021 email states:

    a.  "Sam Biers is a convicted Felon in two (2) states and is a pathological liar;"
    b.  Because the Plaintiff is the lawful appellate judge for the Te-Moak Tribe, the Tribe is "the laughing stock of Nevada" and an "embarrassment;"
    c.  Plaintiff's "attempted rise to power is based on nothing but lies;"
    d.  Plaintiff "claimed to be a licensed lawyer in Nevada but this is a lie;"
    e.  Plaintiff "claimed to be a licensed lawyer in Utah but this is a lie;"
    f.  Plaintiff "claimed to be a Federal Prosecutor in Utah but this is a lie;"
    g.  Plaintiff "is a pathological liar;"
    h.  "We know that Sam hid his multiple felony convictions;"
    i.  Plaintiff "is a convicted felon in both Michigan and in Nevada;"
    j.  ". . .google Samuel Lee Biers Magistrate Durham North Carolina, you will  see that Sam's pathological lying has a long and consistent history;"
    k.  "It is black and white that Sam Biers is of rotten moral character;"
    l.  "Sam Biers is clearly not qualified to be a Te-Moak Supreme Court Judge or any judge for that matter;"
    m.  "Sam Biers does not meet the requirements of our Te-Moak Constitution and therefore will never be recognized as a Supreme Court Judge of Te-Moak Tribe." Id.

771.  On or about December 30, 2021 SCS and TT attorneys Paul Conable, Darian Stanford and Steve Olson, with representatives Kevin Clock and Elliott Parris, authorized and participated in the counting of the cash, revenue, income or proceeds derived or originating from the unlawful sale of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, to support the agreements, plans and schemes related to an ongoing business enterprise while on federal, tribal land that included Wells Fargo Bank, Zionsbank, NSB and SALAL which were used to disguise the transactions, money and funds and prevent disclosure of the actual source of the

funds, and to hide the illegal status of the money and transactions with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14 pursuant to an **A1-A8** agreement, plan or scheme with ECBE; Steve Sisolak; Aaron Ford; Robin Evans; Leslie Grove; Suzanna Sandoval; Thalia Marin; Juan Arevalo; Larry Yeager; Davis Gonzalez; Joseph Holley; Alice Tybo; Sypolt; Chadwick Smith; Wendall Hayes; Brent Waite; Nicole Lewis; ECDCC; David Carrera; Duane Garcia, Sr; Andrea Woods, and other unnamed individuals and entities, to continue the operation and business transactions involving the NCE.

772. On or about January 4, 2022 Paul Conable, Kevin Clock and Elliott Parris personally appeared on Te-Moak Territory to deliver EBC's one half share, pursuant to A6, consisting of cash proceeds, income or revenue derived or originating from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, for the period October 1 through December 31, 2021. At this meeting Paul Conable stated that SCS and TT will no longer provide daily Headset Cannabis Intelligence sales reports from Newe Cannabis to EBC any longer, and that SCS will not release or deliver the EBC one half share of cash, revenue or income derived or originating from the sale of a controlled substance at the NCE retail store Newe Cannabis, pursuant to A6, for the 4th quarter 2021 until two (2) signatories are assigned to open and manage SALAL EBCE accounts, with Conable suggesting Juan Arevalo and Suzanna Sandoval.

773. On or about January 5, 2022 at a public EBC Meeting a staff member noticed a package under a table in the conference room that contained $50,000 cash (USD) labeled "Newe Cannabis" where Suzanna Sandoval stated that package originated from the December 30, 2021 accounting of profits, cash, income and revenue from the unlawful sale and distribution of a controlled substance, marijuana, at Newe Cannabis, and Sandoval placed the package into the Elko Band Council Safe.

774. On or about January 7, 2022 Elko Band Council Members Chauna Cota and Jay Allison inquired about the status of the package containing the $50,000 cash and Susan Zuzueta stated that package was removed and its whereabouts were unknown. Davis Gonzalez, Roseanna Recendiz, Thalia Marin, Nick Knight and Suzanna Sandoval were the only individuals with access to the safe during this period of time. Davis Gonzalez provided Rosanna Recendiz, Raymond Gonzalez' daughter, the combination to that safe. The ingress and egress to the building is monitored by video surveillance equipment installed by White Cloud, with the

electronically recorded signals broadcast via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah to the cellular phones and computers belonging to Davis Gonzalez and Thalia Marin, and others.

775. On January 18, 2022 the Plaintiff communicated with Mediator Kelly Latimer regarding the status of the judicial services mediation case involving the Te-Moak Tribal Court system and whether Sypolt, Joseph Holley, Alice Tybo, Davis Gonzalez, David Carrera and Duane Garcia, Sr., informed ALJ Heffernan, OHA or Mediator Latimer at any point in time that the Te-Moak Tribe granted a "delegation of constitutional authority by the Te-Moak Tribal Council effective November 23, 2020" to the Te-Moak Supreme Court, and Latimer stated that Skibine, Sypolt and Holley "continued to represent throughout the proceeding that [the Tribal Council] had authority to enter into a settlement agreement," as shown by "Resolution 21-TM-94" granting Joseph "Holley 'full authority to approve and sign said Settlement Agreement on behalf of the Te-Moak Tribe," and that agreement "was signed on July 27, 2021, by Chairman Joseph Holley. . .'" Ref. Exhibit II-C(7).

776. On January 18, 2022 Kelly Latimer, an attorney with the United States Office of Hearing and Appeals, communicated with the Plaintiff via email, stating that Sypolt and Skibine signed and submit a federal document, as required to practice before the OHA, pursuant to  "43 C.F.R. § 1" avowing that their individual "signature shall constitute his certificate:  (a) That under the provision of this part and the law, he is authorized and qualified to represent the particular party in the matter . . . [and] (d) That he has read the paper; that to the best of his knowledge, information, and belief there is good ground to support its contents; that it contains no scandalous or indecent matter; and that it is not interposed for delay."

777. On January 20, 2022 at a public meeting held on federal tribal land, and broadcast online via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah to multiple homes throughout the country, Suzanna Sandoval disclosed and disseminated Plaintiff's private and confidential personnel information to the public without written authorization from the Plaintiff, in violation of tribal, state and federal law, as required by Te-Moak Resolution 20-TM-132, (December 2, 2020), enacting the Te-Moak Confidential Information Policy and Procedures that incorporated by adoption the U.S. Privacy Act 5 U.S.C. §552 et seq.; 42 U.S.C. §13925(b)(2); 2 C.F.R. §200.207 and §200.338, and the Te-Moak Confidential Information Policy and Procedures(enacted by Resolution 03-TM-13 (July 2, 2003). See N.R.S. §205.463 (bars any release of this private, nonpublic information).

778. On January 24, 2022 the Plaintiff transmitted a written notice of claims to Suzanna Sandoval demanding Sandoval cease and desist publishing the Plaintiff's private, confidential information, as well as publishing, republishing or making false and defamatory statements regarding the Plaintiff.

779. On January 31, 2022 Zionsbank refused access to Te-Moak Tribal accounts held at Zionsbank and NSB to the newly elected Tribal Council Chairman, Vincent Garcia, and the Vice Chairwoman, Danena Ike, with Nicole Lewis stating that Brent Waite and Zionsbank decided they will not "recognize Sam Biers as a judge or the Te-Moak Court." This conclusion is the intended result and product the A5 agreement, plan or scheme, *supra*.

780. On February 2, 2022 newly elected tribal officials, Chauna Cota and Jay Allison, with NCC Lyle Yowell, signed an affidavit avowing that on December 30, 2021, "Jay Allison, Juan Arevalo, Susana Sandoval, Lyle Yowell and [Chauna Cota]" were present at a government building within Te-Moak Territory to count and distribute the cash, income and revenue received, derived or originating from the unlawful sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, (covering the period July 1, 2021 and September 30, 2021), pursuant to **A6** and the Cash and Safe Policy, when Suzanna Sandoval offered to unlawfully divide "$50,000.00" in cash between the Allison, Cota, Arevalo, Yowell and Sandoval without disclosing the conduct to the public or disclose the amount or transaction in the records. Exhibit III-A(8).

781. On February 4, 2022 attorney Wes Williams prepared, authorized, drafted and/or transmitted an email via Lucent Technologies POP 100 Gigabyte data switch located in Salt Lake City Utah from his home or office in Reno, Nevada that included an attached copy of an invoice that states: "01/19/2022 Telephone conferences (2) with Chairwoman Susanna Sandoval re: new court decision and email/invoices from Sam Biers. Review documents received from the Chairwoman and research ultra vires cases and defenses to claims by Mr. Biers." Ref. N.R.S. §205.463.

782. On February 4, 2022 the Plaintiff transmitted via United States Postal Service two (2) separate Notices of Claim describing RICO Enterprise offenses, and related causes of action, sent to Governor Steve Sisolak and Attorney General Aaron Ford, addressed to the Secretary of State at the address listed by the State of Nevada for service of process. Governor Sisolak received his, as Nevada state assemblymen openly discussed the delivery and receipt, while the Secretary of State date stamped

Mr. Ford's envelope "Feb 07 2022 RECEIVED," and returned the envelope unopened to the Plaintiff via the United States Postal Service.

783. On February 9, 2022 the Plaintiff reported instances and allegations of bank fraud and wire fraud involving SCS; SALAL; EBCE; TT; Wells Fargo Bank; Davis Gonzalez, Thalia Marin; Darian Stanford; Steve Olson; Paul Conable and Kevin Clock to the United States Department of Treasury, Office of the Comptroller of Currency, based on the financial records showing an ATM machine is connected directly from Newe Cannabis via the Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah and routing electronic payments, debits, credits and transfers of U.S. currency to Wells Fargo Bank, Zionsbank and SALAL in Seattle Washington.

784. On February 9, 2022 the BIA-WRO, on behalf of the United States, issued a final decision pursuant to the ISDA 2017-01 Settlement Agreement finding that "the Tribe is no longer subject to the regulation of 25 C.F.R. Part 11 . . .and jurisdiction is transferred . . .from the Court of Indian Offenses for the Western Region (CFR Court) to the Tribal Court of the Te-Moak Tribe of Western Shoshone (Tribal Court) . . .by operation of [Resolution 20-TM-129, the Law and Order Code and] 25 C.F.R. §11.104 . . .the imposition of the CFR Court no longer apply to the Tribe."

785. On February 11, 2022 attorney Wes Williams communicated with Suzanna Sandoval by text message from his home or office in Reno, Nevada regarding Sandoval's prior submission of the Plaintiff's private, confidential records that Williams received from Sandoval. Ref. N.R.S. §205.463.

786. On February 17, 2022 the Plaintiff received a text message from Te-Moak Trial Judge Morgan Currey, (Oklahoma), that stated it had been months since Currey talked to Sypolt or done any business with the Te-Moak Tribe "other than swearing in some officers," when under Te-Moak tribal law the trial court judge lacks the legal authority to administer the oath of office to tribal officials.

787. On February 18, 2022 pursuant to an agreement with Davis Gonzalez; Juan Arevalo; Darian Stanford; Sypolt and Suzanna Sandoval, for the payment of Newe Cannabis funds, Rena Premo personally appeared at a public TMC meeting and presented confidential records and private information regarding the Plaintiff, previously obtained and publicly disclosed by Suzanna Sandoval, without lawful authority and without Plaintiff's written authorization or permission, as required by federal and tribal law, and then disseminated that information to the public. Ref. N.R.S. §205.463.

788. On February 19, 2022 the Plaintiff, acting as the Te-Moak Supreme Court Judge, sent an email to Tammy Carrera that stated the following:

> As you have failed to appear for work for more than two (2) business days and you failed to return the property, records and information belonging to the Court as directed, therefore, the Court hereby accepts your voluntary resignation under the Te-Moak Personnel Policy. . . Effective immediately. . .You, Tammy Carrera, are not employed by or with the Te-Moak Court in any capacity.  You will immediately secure and return all property, records and information belonging to the Te-Moak Tribal Court.  Ref. gen. Exhibit I-A(3).

789. On February 21, 2022 and in furtherance of a conspiracy and agreement to continue the NCE and judicial enterprise, *supra*, Chadwick Smith sent an email via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah to the Plaintiff as proof of service on the Plaintiff, as the Te-Moak Supreme Court Judge, naming the Plaintiff as a defendant in a civil action.  Chadwick Smith knew or should have known that Plaintiff was draped with sovereign and judicial immunity from civil liability.  See Randall v. Brigham, 74 U.S. 523, 537(1869); Bradley v. Fisher, 80 U.S. 335, 351 (1872); Pierson v. Ray, 386 U.S. 547 (1967)(*absent clear language Congress did not abrogate absolute judicial civil immunity*); e.g. Hutto v. Finney, 437 U.S. 678, 700(1978)(*suits brought against individual officers for injunctive relief are for all practical purposes suits against the [Tribe] itself. . ."*), and Chadwick Smith continued to retaliate against the Plaintiff, pursuant to any **A3-A6** agreement, plan or scheme, with or between SCS; TT; EBCE; Sypolt; Wendall Hayes; Dentons; Skibine; Joseph McDade; Joseph Holley; Alice Tybo; David Carrera; Duane Garcia, Sr; Andrea Woods, and others, to deny and deprive the Plaintiffs constitutional rights.

790. Sypolt, with others, entered into an agreement with Joseph Holley and Thalia Marin, who agreed to 'pardon' (prior to any conviction) Thalia Marin, for a pending embezzlement charge, after Sypolt and Holley directed the Plaintiff and Ruben Ramirez, pursuant to TMC, to submit sworn complaints in January 2021 that included evidence related to felony fraud against Thalia Marin.  As consideration Holley accepted Marin's placement on the Te-Moak Council.  In exchange Marin agreed to vote and support the issues presented by Joseph Holley at the Te-Moak Council, and Joseph Holley, Sypolt and Marin received cash, income, revenue or proceeds that originated or were derived from the unlawful sale and distribution of a controlled substance, marijuana, at the NCE pursuant to an agreement, plan or scheme with or between SCS; TT; EBCE; Davis Gonzalez; Juan Arevalo; Larry Yeager; Wendall Hayes; Paul Conable; Chadwick Smith; Skibine; Joseph McDade; Aaron

Ford; Steve Sisolak; Alice Tybo; David Carrera; Duane Garcia, Sr; Joseph McDade; Paul Conable and Darian Stanford to assist, conspire or provide material support for any agreement, plan or scheme to sell and distribute a controlled substance, marijuana, at the NCE retail store Newe Cannabis, and to distribute funds derived or originating from the sale and distribution of marijuana at Newe Cannabis between the members of the NCE with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341(Mail Fraud); 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and §1962 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14.

791.  On February 22, 2022 Angela Mendez and Tanya Reynolds distributed, affixed and posted a document entitled "PUBLIC NOTICE" at the direction, advice or instruction of Joseph Holley in accordance with the terms of any **A5** agreement between Joseph Holley; Joseph McDade; Alice Tybo; Scott Sypolt; Wendall Hayes; Chadwick Smith; David Carrera; Davis Gonzalez; Duane Garcia, Sr.; Andrea Woods and Thalia Marin to publish, republish and disseminate this document, nationally and internationally, by way and through email, mail and wire, where the services and goods to produce, publish and disseminate this document were paid for or funded with federal money and revenue, income or cash originating or derived from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and §1962 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14 where said document states that the Plaintiff is "not [an] official of the Te-Moak Tribe of Western Shoshone Indians of Nevada." Exhibit II-C(1).

792.  On or about February 22, 2022 Angela Mendez and Tanya Reynolds, with others, travelled across interstate highways, roads and bridges and personally delivered copies of the "PUBLIC NOTICE" document to the United States Postal Service at locations in Elko, Battle Mountain and Wells, Nevada before transmitting electronic copies via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah to every vendor, business and government organization that has or had an official relationship with the Te-Moak Tribe or the Plaintiff, fraudulently backdating this document "January 1, 2022." Exhibit II-C(1): Public Notice; ref. N.R.S. §205.463.

793.  In furtherance of the **A5** conspiracy and agreement to continue the NCE and judicial enterprise, on February 24, 2022 Tammy Carrera sent a notice by email via the Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah

commanding the Plaintiff, as the Te-Moak Supreme Court judge, to appear as a defendant in a civil action before "Wendall D. Hayes, Te-Moak Chief Judge."

794.   On February 27, 2022 Joseph Holley transmitted a copy of a document, (dated February 26, 2022 as signed by Wendall Hayes), consisting of an email message sent or transmitted via Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah to Elko Band Police Chief William Grundy who then forwarded an electronic copy of that document to the Plaintiff.  Wendall Hayes states in this document that the "United States" Bureau of Indian Affairs "recognizes Wendall Hayes as Chief Judge of the Te-Moak Tribal Court" and that the "United States government through the BIA does not recognize Samuel L. Biers as a judge or judicial officer in any capacity of the Te-Moak Tribal Court."  See Exhibit I-B(4): Hayes Temporary Order (Case No. TM CV 01-22).  Joseph McDade communicated with Wendall Hayes, Chadwick Smith, Sypolt and Joseph Holley, pursuant to any **A2, A4, A5** agreement, plan or scheme, and agreed to support the rejection of recognition related to the Plaintiff's judicial office, on behalf of the United States when Joseph McDade was stripped of this authority on February 9, 2022 and repeatedly warned by BIA-WRO to stop making these statements.

795.   On March 2, 2022 the United States Bureau of Indian Affairs, Western Region, Acting Director Jessie Durham issued a formal decision in direct rebuke and in response to the unauthorized conduct of Joseph McDade, that states "[t]he [BIA-WRO] makes no findings or decision as to the validity of th[e] Tribal Court or the Tribal Judge."

796.   On February 28, 2022 Wendall Hayes received income, revenue or cash proceeds, directly or indirectly, derived or originating from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, where the NCE Defendants agreed to fund or pay Hayes to issue an Injunction against the Plaintiff as a sitting judge, and others, contrary to federal and tribal law, without service of process, and where Hayes publicly stated that the Plaintiff, by name, "is an arrogant white boy, a felon," and Hayes published, issued and republished the purported injunction pursuant to an agreement, plan or scheme with or between SCS; EBCE; TT; Davis Gonzalez; Thalia Marin; Paul Conable; Chadwick Smith; Skibine; Joseph McDade; Bryan Bowker; Aaron Ford; Steve Sisolak; Joseph Holley; Alice Tybo; Scott Sypolt; David Carrera; Duane Garcia, Sr; Joseph McDade and Darian Stanford to assist, conspire or provide material support for any agreement, plan or scheme to sell and distribute a controlled substance, marijuana, involving the NCE and to distribute funds derived or originating from the sale and distribution of marijuana at Newe Cannabis between or among NCE Defendants with the intent or

purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and §1962 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14 in exchange Hayes agreed to preserve the continuation of the NCE and the ongoing fraud involving federal funds administered through the Te-Moak Tribe as a key component to the judicial enterprise arm of the NCE.

797.  On March 2, 2022 the Plaintiff received a text message from Te-Moak Trial Court Judge Morgan Currey, (Oklahoma), stating that she was sending to the Plaintiff a formal written "resignation" to the Plaintiff as the Te-Moak Supreme Court Judge.

798.  On or about March 2, 2022 Joseph Holley; Juan Arevalo; David Carrera; Tanya Reynolds; Angelea Mendez, and other unnamed individuals, appeared at the Te-Moak Office Building with pick-up trucks and began to empty the contents of the building, including the Plaintiff's private, confidential and privileged information, and then loaded the vehicles with the building contents and exited Te-Moak Territory for 825/875 Railroad Street, Elko, Nevada, non-tribal, state jurisdiction. Holley later appeared on a recorded video instructing all Te-Moak Tribal members to purchase "Life Lock" to protect their personal, private information because Holley has no way to protect the integrity of that information.  Ref. N.R.S. §205.463.

799.  On or about March 3, 2022 Davis Gonzalez communicated with Elko Band Police Chief William Grundy claiming that "Judge Biers was an Appellate Judge and had no reason to be involved with the TPO that was issued by Judge Hayes." Exhibit III-A(7). Davis Gonzalez stated to Chief Grundy that Gonzalez was "present" at the February 3, 2021 Tribal Council meeting, voted no to appoint the Plaintiff before noting that a motion "confirmed Judge Biers to his seat at the Te-Moak level" as the Te-Moak Supreme Court Appellate Judge.  On March 7, 2022 Chief Grundy delivered a copy of his official log report on this incident by email to the Plaintiff. Id.

800.  On March 3, 2022 Davis Gonzalez stated that Joseph Holley "won't listen to anyone, I was there, the motion was made, I voted no, but the motion carried and they appointed Sam as the appellate judge.  Since Sam fired Tanya nobody can get through to Joe and Scott."

801.  On March 10, 2022 the Plaintiff filed a formal report with federal law enforcement agents related to money laundering, bank fraud and wire fraud at Wells Fargo Bank, Zionsbank, NSB and SALAL regarding the transfers, expenditures and deposits of income, revenue and cash proceeds derived or originated from the sale and

distribution of a controlled substance at Newe Cannabis pursuant to any agreement, plan or scheme between or with SCS; TT; ECBE; Zionsbank; Brent Waite; Nicole Lewis; Davis Gonzalez; Thalia Marin; Juan Arevalo; Joseph Holley; Scott Sypolt; Chadwick Smith; Paul Conable; Kevin Clock; Darian Stanford; Elliot Parris; Tanya Reynolds; Alice Tybo; Duane Garcia, Sr.; Andrea Woods.  Plaintiff authorized the U.S. Treasury Comptroller agents to notify the financial institutions of the allegations made by the Plaintiff after the Plaintiff informed the agents that Plaintiff already notified Zionsbank in early 2020.

802. On March 12, 2022 Zionsbank notified EBC that Zionsbank was closing all EBC accounts at Zionsbank within "90 days" because of activity related to money laundering, bank fraud and wire fraud associated with the transfers and deposits of revenue, income and cash proceeds received, derived or originating from the sale and distribution of a controlled substance at Newe Cannabis.

803. EBCE; SCS; TT; Davis Gonzalez; Thalia Marin; Juan Arevalo; Joseph Holley; Scott Sypolt; Chadwick Smith; Paul Conable; Kevin Clock; Darian Stanford; Elliot Parris; Tanya Reynolds; Alice Tybo; Duane Garcia, Sr.; Andrea Woods and David Carrera entered into an agreement, plan or scheme as part of the NCE whereby Davis Gonzalez; Thalia Marin; Juan Arevalo; Joseph Holley; Scott Sypolt; Chadwick Smith; Paul Conable; Kevin Clock; Darian Stanford; Elliot Parris; Tanya Reynolds; Alice Tybo; Duane Garcia, Sr.; Andrea Woods and David Carrera signed and submitted financial documents, records, information or forms at Wells Fargo Bank, NSB, Zionsbank; Empyreal Logistics; GardaWorld Armored Transportation and SALAL that asserted, stated or claimed that the transfer or deposits of currency, money or funds transferred or deposited with or at Wells Fargo Bank, Zionsbank; Empyreal Logistics; GardaWorld Armored Transportation, NSB and SALAL originated from lawful or legitimate tribal business operations at EBC and EBCE and failed to state, declare or inform Wells Fargo Bank, Empyreal Logistical and GardaWorld Armored Transportation in the records, forms, information or documents that the same revenue, income, funds or cash proceeds transferred or deposited, directly or indirectly, were derived or originated from the unlawful sale and distribution of a controlled substance, marijuana, involving the NCE with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 15 U.S.C. §§1-7, 12-26 and 1125; 29 U.S.C. §§52-53; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and §1962 and the Te-Moak Constitution, Article 4, sections 3, 12 and 14.

804. Lyle Yowell,  Thalia Maria, Rosanna Recendiz, and Joe Delarosa (the SCS representative from Las Vegas), served on the NCC, pursuant to an agreement, plan or scheme by, with or between SCS; EBCE; TT; Davis Gonzalez; Thalia Marin; Juan Arevalo; Larry Yeager; Paul Conable; Chadwick Smith; Skibine; Joseph McDade; Aaron Ford; Steve Sisolak; Joseph Holley; Alice Tybo; Scott Sypolt; David Carrera; Duane Garcia, Sr; Joseph McDade and Darian Stanford to engage in interstate commerce related to the sale and distribution of a controlled substance, marijuana, where TT attorneys Paul Conable; Steve Olson; Darian Stanford actually controlled the management of NCC (formerly Elko Band Authority), to administer the policy and procedures governing the NCE operations at Newe Cannabis with the intent or purpose to violate or attempt to violate <u>21 U.S.C. §841</u>, <u>26 U.S.C. §7201</u>, <u>18 U.S.C. §1341</u>); <u>18 U.S.C. §1343</u>; <u>18 U.S.C. §1344</u>; <u>18 U.S.C. §1952</u>; <u>18 U.S.C. §1956</u>; <u>15 U.S.C. §§1-7, 12-26 and 1125</u>; <u>29 U.S.C.. §§52-53</u>; <u>18 U.S.C. §1957</u>; <u>18 U.S.C. § 1960 and §1962</u> and the <u>Te-Moak Constitution, Article 4, sections 3, 12 and 14</u>.

805. From August 10, 2021 through March 30, 2021 Battle Mountain Band and the Te-Moak Tribe failed to pay a debt that arose under the E-Rate, Universal Schools and Libraries Program, after authorizing the payment with ARPA federal funding and receiving 100MB fiber optics connectivity hardware and services.

806. On March 25, 2022 Darian Stanford telephoned Police Chief William Grundy from the TT Offices in Portland, Oregon and stated "Sam Biers is not a judge."

807. On March 25, 2022 Thalia Marin personally appeared at the physical address of Newe Cannabis and conducted a telephone conference with Kevin Clock and Scott Sypolt, at which time Kevin Clock instructed Marin to obtain the store's keys to secure the cash inside in exchange for continued payments to tribal, government officials, including Marin, as those payments related to an election on April 1, 2022.

808. Ernie Aldredge, Thalia Marian and Suzanna Sandoval formerly served on NCC and resigned from NCC to allow Davis Gonzalez; Paul Conable; Steve Olson and Darian Stanford to hold or retain authority over the funds derived or originating from the sale and distribution of a controlled substance, marijuana, at the NCE, without any legitimate control measures that would otherwise prevent fraudulent transfers or theft of those funds pursuant to an agreement, plan or scheme by, with or between SCS; EBCE; Chadwick Smith; Skibine; Joseph McDade; Aaron Ford; Steve Sisolak; Joseph Holley; Alice Tybo; Scott Sypolt; David Carrera; Duane Garcia, Sr; Joseph McDade to continue the business operation related to the unlawful sale and distribution of a controlled substance, marijuana, at the NCE.

809. Davis Gonzalez keeps a portion of his *pro rata* portion of the 'partner's share' of the cash income that originated from the unlawful sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, at an unknown financial institution that also contains funds that Davis Gonzalez fraudulently skimmed off federal grant programs. Davis Gonzalez provided his brother Raymond Gonzalez' daughter, Rosanna Recindez, with the EBC safe combination to withdraw and remove NCE cash, income and revenue without proper EBC authorization. On March 13, 2022 Rosanna Recindez entered the EBC building, after Paul Conable transferred 1.4 million in cash from the NCE to EBC, and Rosanna Recindez opened the EBC safe to deposit the NCE money into that safe.

810. United States Assistant Attorney Sue Fahami was exonerated as a co-conspirator with her ex Stephen Marich's involvement in a $3.6 million embezzlement scam over a ten (10) year period from the First National Bank Ely, Nevada when Fahami resided with Marich during that ten (10) year period. AUSA Sue Fahami was also involved in an U.S. Alcohol, Tobacco and Firearms Agent Whistleblower Complaint where it was alleged that Fahami directed agents at the US DOJ-Reno to commit perjury in sworn statements to federal judges involving the ATF out of Reno and then ordering prosecutions based on probable cause to cease, permitting arrests by indictments issued by the AUSA only. AUSA Fahami continues the practice here.

811. On or about March 14, 2022 Robin Evans, representing RAE Solutions, and Leslie Grove, representing IBSC, each demanded $10,000.00 to perform financial analysis related to the NCE, and EBC approved payment to Evans and Grove for a total amount of $20,000.00, (USD), using commingled federal funds that included income, revenue or cash proceeds that, directly or indirectly, were derived or originated from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 15 U.S.C. §§1-7, 12-26 and 1125; 29 U.S.C.. §§52-53; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and §1962 and Te-Moak Constitution, Article 4, sections 3, 12 and 14.

812. Darian Stanford serves as a tribal judge at the Fort McDermitt Paiute and Shoshone Tribe. Darian Stanford recommended Tilden Smart; Elise Dave; Anne Laughlin; Carrie Frias; and Sherry Harris to court personnel positions at Te-Moak based on their involvement and support for the continuation of the NCE. Prior to Tilden Smart's nomination by Sypolt and Stanford to benefit the NCE as part of the judicial enterprise, in 2019 Mr. Smart was the Chairman of the McDermitt Tribe. During a

discussion with another McDermitt Council member who opposed the use of his land to cultivate marijuana for SCS being managed by Tilden Smart, it was alleged that Mr. Smart pushed that Council member, who fell, struck his head and died.

813. Sypolt, Skibine and Smith recommended Morgan Currey; Angelea Mendez; Wendall Hayes to serve as judicial officers and personnel as part of an agreement to create a secondary 'judicial' or criminal justice enterprise with the intent or purpose to create a governmental entity that will shield, protect and ensure against the disclosure of the NCE activities and foster continuity of the criminal organizations within the Te-Moak Tribe. Morgan Currey was unaware and resigned to avoid complicity with Sypolt, Skibine, Hayes and Smith's unlawful activity.

814. On March 17, 2022 the United States Bureau of Indian Affairs, Western Region, Acting Director Jesse Durham stated, (*in response to Wendall Hayes continued false representation that the United States only recognizes Hayes and that the United States refuses to recognize the Plaintiff*), "[i]t is reiterated that our interim recognition [March 2, 2022] of the Council [Holley Council]. . .is not a general letter of recognition . . . and is not a final decision regarding the validity of the Tribal Court or the Tribal Judge."

815. In furtherance of a conspiracy and pursuant to **A1-A8** agreements to continue the NCE and the supporting judicial enterprise, as an apparatus of the Newe Cannabis enterprise, Sypolt; Robin Evans; Leslie Grove; Joseph Holley; Adela Morrison and Andrea Woods entered into an agreement with SCS, Darian Stanford, Paul Conable, Steve Olson, Kevin Clock and Elliot Parris to create and establish a new business that will generate income, revenue or proceeds from the unlawful sale and distribution of a controlled substance, marijuana, on federal, tribal lands, within the territorial jurisdiction of the Te-Moak Tribe, located on the Wells Band Colony.

816. On March 16, 2022 the Plaintiff transmitted and sent an email to Zionsbank and its agents containing an audio-video recording that included electronic images and audio statements by and between individuals known to the Plaintiff as Joseph Holley; Darian Stanford; Scott Sypolt; Sharla Dick and Alfreda Walker, (as recorded on April 14, 2021), who stated, discussed and counted the income, revenue or cash proceeds that were derived, received or originated from the unlawful sale and distribution of a controlled substance, marijuana, at the NCE, with the intent or purpose to violate or attempt to violate 21 U.S.C. §841, 26 U.S.C. §7201, 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and §1962 and the Te-Moak Constitution, Article 4, sections

3, 12 and 14 and the Plaintiff included an electronic copy of a receipt signed by Joseph Holley; Darian Stanford; Scott Sypolt; Sharla Dick and Alfreda Walker, along with copies of the Sales Report-Newe Cannabis, Quarterly Update; SCS-EBCE Financials; Exhibit II-A(6); Newe Cannabis Procedures; and Check Receipt #89132 showing, stating or disclosing Zionsbank, Brent Waite and Nicole Lewis' involvement, association, support and agreement to participate in the plan, scheme and agreement between and with SCS; EBCE; TT; Davis Gonzalez; Thalia Marin; Juan Arevalo; Larry Yeager; Paul Conable; Chadwick Smith; Skibine; Joseph McDade; Aaron Ford; Steve Sisolak; Joseph Holley; Alice Tybo; Scott Sypolt; David Carrera; Duane Garcia, Sr; Joseph McDade and Darian Stanford to engage in interstate commerce through the sale and distribution of a controlled substance, marijuana, at the NCE, where the NCE and the Parties to the agreements, plans or schemes funded or paid for activities and conduct intended to deprive and deny of the Plaintiff's constitutional rights and privileges under the Te-Moak Constitution, Article 9 and the U.S. Constitution, Amend. 5 and 14;  Article 1, sec. 10, cl. 5; Article 2, section 2; Article 4, sec. 2, cl. 1 and Article 6 and 28 U.S.C. §§1981, 1982, 1983 and 1985.  Ref. Exhibit II-B(2) and II-B(5).

817.  On March 25, 2022 three (3) teenagers were in an automobile accident on Nevada Highway 227 where it was alleged that law enforcement located a package from the NCE retail store—Newe Cannabis, (as printed by Dutchie.com), inside the vehicle and that the teenagers were under the influence.  Ref. Exhibit II-A(9)

818.  On March 28, 2022 Joseph Holley personally appeared at Best Western Inn after traveling along Interstate 80 from federal, tribal land in Battle Mountain to Elko, Nevada to meet with the NCE, SCS representatives Clock and Spurlock who were delivering income, revenue, cash or proceeds from the unlawful sale and distribution of a controlled substance, marijuana, by the NCE retail store—Newe Cannabis, representing a claimed 5% tax share for the third quarter 2021 gross amount ($180,000.00), and that Holley allegedly took custody of a cash amount of approximately $27,000.00 pursuant to **A2**, **A4** and **A6** agreement, plan or scheme.

819.  On March 29, 2022 Corey Spurlock travelled to Te-Moak Territory and met with EBC members Allison and Cota to discuss the **A1-A4**, **A6** and **A8** agreements, plans and schemes, as the SCS representative and co-owner of Las Vegas Nuwu Cannabis operation.  At this meeting Corey Spurlock stated that Joseph Holley's 5% tax revenue as applied to EBCE one half share for the first quarter 2022 under **A6** remained "in the safe" at Newe Cannabis.

820. On March 29, 2022 Corey Spurlock stated that the NCE retail store Newe Cannabis financial reports produced by Headset Cannabis Intelligence and Greenbits that TT and SCS held or retain in their custody and care, show a total gross revenue amount of $10 million dollars for the first three (3) quarters of 2020 and a total gross revenue amount of "just over $10 million dollars" for the second year of operations, that will end March 30, 2022, equally "about 20 million since we started."

821. From the $20 million total revenue or income amount generated at the NCE in 2020 and 2021, according to the terms of the **A1-A3** and **A6** Agreements, SCS and EBC were each entitled to receive an equal one half-share of the revenue, (50%-50%). Since April 2020, EBC distributed $399,000.00 to its 399 eligible members in cash, ($1,000 each), with additional, minimal amounts for tuition and education supplies or equipment, on or about December 13, 2020, and then on or about December 11, 2021, after receiving 641 applications from Elko Band members, EBC distributed a total amount of $766,000.00 from which $125,000.00 was missing by December 30, 2021 when that process was supervised or performed by Suzanna Sandoval and Thalia Marin. The Charter required each tribal member to receive one equal share, not each Band member exclusive of all other tribal members. Thus, according to the claimed distribution reports by Defendants, the Tribe received about $140,000.00 and Elko Band members received about $1.3 million, roughly $1.5 million of a $10 million one-half share, leaving about $8 million unaccounted for by the Defendants.

822. On March 30, 2022 Kevin Clock personally appeared at EBC Administration Building after traveling from Oregon to Te-Moak Territory within the EBC and stated that SCS generated "about $16 million from cannabis sales at Newe in the last two years. As far as the taxes go at Newe, we pay the staff cash most of the time and report as little as possible to keep the overhead down and profits up." The business entity "Elko Band Authority" was referenced for the first time on March 30, 2022 by Kevin Clock as separate "from Elko Band Colony Enterprise," (herein "EBA"), who stated that Davis Gonzalez, Fermina Stevens, Julie Cavanaugh-Bill and Thalia Marin created the unregistered, unlicensed and unincorporated business entity EBA in early 2019 to transfer payments routed through IBSC, RAE, EBC, TLC, H & R Block-Delcor; NSB, Great Basin and SALAL through Zionsbank-NSB in Vegas and to EBC financial institutions to Elko. EBC failed to enact legitimate Resolutions related to EBA.

823. On or about April 8, 2022 Holley drafted and sent a letter to the BIA-WRO and OJS that states Joseph Holley does not recognize the Plaintiff as a Te-Moak Judge.

824. On or about April 12, 2022 the BIA-WRO Acting Director Jesse Durham sent written communication to BIA-OJS Joel Chino specifically stating that the BIA-WRO will not decide or determine whether the Plaintiff is or is not a Te-Moak Tribal Judge, reminding BIA-OJS of the earlier investigation and review of Te-Moak records related to the Plaintiff's appointment under Te-Moak law.

825. On April 13, 2022 Paul Conable, Kevin Clock and Elliott Parris personally appeared at EBC after traveling from Oregon and delivered to EBC $1,400,000.00 in cash proceeds, income or revenue that was derived or originated from the sale and distribution of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, for the period January 1, 2022 through March 31, 2022.

826. On or about April 13, 2022 Joseph McDade falsely informed EBC members and staff, Rena Premo and Carla Knight, that the United States BIA issued a formal opinion stating that the Plaintiff is not Te-Moak tribal judge when this statement is in direct conflict with legal authorities and February 9th March 2nd and March 17, 2022 published decisions from the U.S. DOI, BIA-WRO on this issue.

827. On April 13, 2022 Alice Tybo, Angelea Mendez, Tanya Reynolds, and others, entered the Tribal Office Building at 525 Sunset Street within the Te-Moak Territory and physically removed all of the remaining private and confidential personnel and government records, some of which belonged or related to the Plaintiff, then instructed sub-contractors to load the files, folder and boxes into vehicles that were then driven to an unsecure, private location at: 825/875 Railroad Street, in the City of Elko, a location outside of tribal jurisdiction.

828. For all relevant times related to this action, SCS; EBC; EBCE and SALAL transmitted, sent or delivered, or caused the sending, transmission or delivery of, bank records, forms and document via the Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah to the Elko Band Tribal Police facsimile machine located at 1550 Silver Eagle Road; Elko, Nevada 89801. SCS writes payroll checks for NCE employees and staff, then requires some of those employees to cash the payroll checks at Newe Cannabis, charging a fee and paying those employees cash and/or cannabis, issuing an IRS W-2 wage statement under EBC EIN without authorization and without including the entire amount paid and retaining the claimed tax amount shown on the payroll checks as unreported income or revenue for the NCE.

829. Each and every named or identified Defendant herein who adhered or acted pursuant to or under the **A2** Compact, acted under the color or authority of state law, custom or usage on federal Territory, Indian Country, as a state actor.

830. Samuel L. Biers attended college at Salt Lake Community College in 1992; attended Weber State University from 1993-2000, receiving an Associate Degree in Criminal Justice, and a Baccalaureate in Criminal Justice-Forensic Science with a minor in Political Science/Philosophy. Professors James Gaskill, (WSU Crime Lab), and Political Science/Philosophy Department Chairman Rod O. Julander gave the following statements regarding employment recommendations for Samuel L. Biers:

    a. Chairman Julander: "I have known Sam for 2 years and believe that he is the kind of person needed in public service. He is pleasant, uncomplicated and easy to get along with. With such an easy going personality one expects him to approach school in the same way. Nothing is further from the truth. He approaches his studies with assertiveness. There is no question that his academic and professional goals are the most important thing in his life. . . I can vouch for the ethical standards to which he holds himself. He holds the public trust very seriously and his personal ethics are similarly important to him. His work ethic is equally strong. Finally, I have watched him relate to people around him: faculty, students and University staff. He is universally liked and respected. He has excellent interpersonal skills. I recommend him without reservation."

    b. Professor James Gaskill: "Sam is one of my favorite students. He has been taking classes from me since 1995 and has completed the forensic science series. Most of these classes are small, lab oriented classes that allow the instructor to get acquainted with each of the students. I have enjoyed the association with Sam. He has a great deal of life experience and brings new and refreshing ideas and attitudes to the classroom. He is a good student; his writing is well done and he is punctual and prompt with assignments. He is a natural leader. Students look to him for guidance and he has the ability to relate to a great variety of personalities. His easy going style and his quick sense of humor make him a fun person to be with. Sam has experience as a firefighter, a dispatcher and in the records area that combine to give him a well rounded understanding of the criminal justice area. I have found him to be trustworthy and dependable in all dealings I have had with him. I would not hesitate to recommend him for a position in law enforcement or any field of trust in the area of criminal justice."

831. Samuel L. Biers began his legal career at Utah Legal Services in Ogden, Utah as a Weber State University intern working under the supervision of Martin Blaustein, Linda Laws, Michael Bulson and Paul Olds in 1994-95 performing research and writing tasks related to the Utah Landlord Tenant Handbook.

832. Samuel L. Biers first paid employment position in the criminal justice system began at the Third Judicial District Court, Park City as a Deputy Court Clerk for Ronald E. Nehring, Pat O'Brian and Stephen L. Henriod, under the guidance of Nancy L. Hilton, (Clerk of the Court for 22 years), who stated: "Sam Biers has truly been an asset to our office team. His leadership ability has greatly improved our office. His personality and attitude have been a joy to be around. Sam follows direction well and uses his creative an[d] special abilities to get the tasks done."

833. Plaintiff resided in Utah from 1990 until 2000 and then again from 2007 through 2010 where he worked as a Utah EMS dispatcher for the Bangerter family; operated a pro bono Paralegal business for disadvantaged clients; an Ironworker for Local 27 in Utah; and as Utah's first District Fire Warden (Davis, Morgan and Salt Lake County), where the Plaintiff received accolades separately from both the Davis County Commission and Morgan County Commission, after serving as the Fire Warden in Wasatch County and liaised a Mutual Aid Agreement between the County and State since the 1990 Midway fatality fire. Samuel L. Biers provided testimony as an expert witness firefighter for the State of Utah in the Fourth Judicial District and authored articles on wildland fire while working for the State of Utah.

834. The death threats against Plaintiff caused extreme anxiety. The joint campaign to destroy the personal and professional reputation of the Plaintiff through the nationwide publicity of false statements regarding the Plaintiff as funded, published and republished pursuant to an agreement, plan or scheme with or by SCS; EBCE; Davis Gonzalez; Steve McDade; Marla McDade; Joseph McDade; Scott Sypolt; Tanya Reynolds; Darian Stanford; Paul Conable; Steve Olson; Kevin Clock; Elliot Parris; Joseph Holley; Alice Tybo; Duane Garcia, Sr; Andrea Woods; Adela Morrison; Robin Evans; Leslie Grove; Chadwick Smith; Wendall Hayes and David Carrera resulted in daily, persistent emesis; loss of hair, familial association and society; insomnia and periods of depression; loss of employment and employability; loss of private identity; isolation and a withdrawal and participation in normal life activities previously engaged in by the Plaintiff, and the elimination from Plaintiff's participation in social media and nearly all social interaction and events, while enduring persistent and continuous threats against the Plaintiff's safety and employment.

835.   Plaintiff incorporates <u>Plaintiff's Ex Parte Motion And Memorandum In Support Of Emergency Temporary Injunction Or Alternatively The Setting Of Hearing For A Preliminary Restraining Order</u>, including each and every allegation, attachment, exhibit, declaration and affidavit therein, by reference here, as though fully set forth.

<b>E.     CAUSES OF ACTION</b>

<b>CLAIM ONE:  (RICO) <u>18 U.S.C. §§1961  and 1962 et seq</u>.- RACKETEERING ENTERPRISES, PREDICATE ACTS AND PATTERN AND DRUG DEALER LIABILITY UNDER <u>UTAH CODE ANNOTATED 58-37e-1 et seq</u>.</b>

836.   The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 835, *supra*, including each attachment, citation and exhibit, and paragraphs 874 through 1016, *infra*, without waiving any claim or defense, as though fully set forth here in Section E - CLAIM ONE:  RICO- RACKETEERING ENTERPRISE, PREDICATE ACTS AND PATTERN.

836.   On information or belief the Defendants are considered knowing participants in an illegal drug market as defined by <u>U.C.A. 58-37e-1 et seq</u>. who, individually and jointly violated <u>RICO</u> by the acts described herein and Plaintiff was injured as a result.

837.   On information or belief each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of <u>18 U.S.C. §1961(3)</u>.

838.   <u>The Enterprise</u>.  On information or belief, as shown by way and through multiple written and verbal agreements, plans and schemes, Defendants, in their official and individual capacities, Davis Gonzalez; Juan Arevalo; Thalia Marin; LaDonna Leyva;  Larry Yeager; Robin Evans; Leslie Grove; Darian Stanford; Paul Conable; Steve Olson; Steve Sisolak; Aaron Ford, on behalf of and for Elko Band Council; IBSC; RAE Solutions; SCS; TT; entered into an agreement or agreements with Governor Steve Sisolak and Attorney General Aaron Ford to create, manage, operate or establish EBCE as a criminal business, a

façade, that formed the Newe Cannabis Enterprise, or NCE, for a common criminal purpose, to wit: On April 18, 2020 the NCE retail store, Newe Cannabis, engaged in the commercial sale and distribution of a controlled substance, marijuana, pursuant to the agreements, plans and schemes of the Defendants in conflict with tribal and federal law to generate revenue, income, cash or proceeds and to then distribute the NCE assets to the Parties of NCE agreements, plans or schemes and either willfully under-report or inaccurately report the amount of the revenue, income or cash derived from the NCE to the IRS and financial institutions, by way and through the use of false statements in official documents and record, thereby allowing distribution of unreported NCE cash to Defendants.  See 21 U.S.C. §§841(b)(1)(A); 841(b)(1)(B); 841(b)(1)(C) and (D);  843(a)(6) and (7); 854(a); 856; 26 U.S.C. §7201; 18 U.S.C. §1341; 18 U.S.C. §1343; 18 U.S.C. §1344; 18 U.S.C. §1952; 18 U.S.C. §1956; 18 U.S.C. §1957; 18 U.S.C. § 1960 and §1962 et seq; and 31 U.S.C. §§ 5311-5314e; 5316-5331; 5332e; 12 U.S.C. §§1829b, 1951-1959; 31 CFR Chpt X and Part 103).

839.    On information or belief, at the time of or after the creation of the NCE, Wells Fargo Bank; SALAL Credit Union; Empyreal Logistics; GardaWorld and Zionsbank agreed to join the NCE, and joined the NCE, directly or indirectly, to share or assist in performing any task or common purpose of the NCE or execute any agreement, plan or scheme in furtherance of the NCE common goal or purpose, as it relates to the continuation of the NCE retail store Newe Cannabis or its business operations, in exchange for revenue, income, cash or proceeds from the sale and distribution of a controlled substance, marijuana, with the intent to violate or attempt to violate federal law.  Id.

840.    On information or belief, at the time of or after the creation of the NCE, Brent Waite,

individually and on  behalf of Zionsbank, agreed to join the NCE, and joined the NCE, to

share or assist in performing any task or common purpose of the NCE, (with other

subsidiaries of Zionsbank in Washington and California), and at the direction or approval of

Zionsbank Board ordered and instructed the staff at Zionsbank and Zionsbank's wholly

owned subsidiary, NSB, to give material support and execute any agreement, plan or

scheme necessary to further the continuation of the NCE or the NCE retail store Newe

Cannabis business operations in exchange for revenue, income, cash or proceeds from the

unlawful sale and distribution of a controlled substance, marijuana, with the intent to

violate or attempt to violate federal law.  Id.

841.    On information or belief, at the time of or after the creation of the NCE Joseph

McDade, Marla McDade and Bryan Bowker agreed, in their individual capacities, to abuse

their federal and state government employment  and join the NCE, then joined the NCE, to

share or assist in performing any task or common purpose of the NCE and execute any

agreement, plan or scheme in furtherance of the NCE or the NCE retail store Newe

Cannabis business, in exchange for receiving, directly or indirectly, revenue, income, cash

or proceeds from the sale and distribution of a controlled substance, marijuana, to violate

or attempt to violate federal criminal law.  Id.

842.    On information or belief ECDCC; Aaron Ford; John Garrand; Steve Sisolak;

Catherine Cortez Masto and AUSA Sue Fahami agreed, in their official and individual

capacities, to join the NCE, and joined the NCE, to share or assist in performing any task or

common purpose of the NCE and execute any agreement, plan or scheme in furtherance of

the NCE, or to continue the NCE retail store Newe Cannabis business operations, in exchange for receiving income, revenue, cash or proceeds, directly or indirectly, from the unlawful sale and distribution of a controlled substance, marijuana, to violate or attempt to violate state and federal criminal law. Id.

843.   On information or belief, Dentons US LLP, Skibine, Sypolt, Sibbison and Docksey agreed to join the NCE, and joined the NCE agreements, plans or schemes to share or assist in performing any task or common purpose of the NCE or execute any term of any agreement, plan or scheme in furtherance of the NCE or the NCE retail store Newe Cannabis business operations, in exchange for receiving, directly or indirectly, revenue, income, cash or proceeds from the unlawful sale and distribution of a controlled substance, marijuana, and where the NCE converted Dentons, Sypolt, Skibine, Sibbison and Docksey into perpetrators of the NCE, who in turn joined with Conable, Olson and Stanford, who captured SCS, SCI, CSI and TT through a pattern of racketeering activity, and then created or established a judicial sub-enterprise with Chadwick Smith, Tammy Carrera and Wendall Hayes to protect and preserve the NCE and the continuing flow of cash, revenue or income from the NCE to violate or attempt to violate federal, state and tribal law. Id.

844.   On information or belief, the Party Defendants to any agreement, plan or scheme of the NCE or who subsequently joined the NCE by way of or through any agreement, plan or scheme, agreed to further the common goal or purpose of the NCE, infiltrated or captured the governing body politic of the Te-Moak Tribe, the Te-Moak Tribal Council and a majority of its individual members, Joseph Holley; Davis Gonzalez; Alice Tybo; Paula

Garcia; David Carrera; Duane Garcia, Sr.; Andrea Woods; Thalia Marin; Juan Arevalo by

transferring or delivering funds, cash, revenue or income from the NCE as a bribe, gratuity

or improper gift to influence individual Council members, as a corrupt practice, in

exchange for political favors and votes, and who in turn laundered the NCE funds by

commingling the NCE funds with federal funds in the Te-Moak Tribe's financial accounts,

to convert the governing authority into a prize, instrument or tool of the NCE for its

common purpose: to violate or attempt to violate tribal, state and federal law.  Id; e.g. 15

U.S.C. §§78dd-1 et seq; 18 U.S.C. §§1163, 2314 and 2315; see also, Te-Moak Constitution,

Article 4, sections 3, 12 and 14.

845.   Plaintiff, as the Tribal Administrator and Supreme Court Judge, reasonably and

justifiably relied on the Defendant's false representations, false pretenses and deceptive

communications, and the Plaintiff has been damaged as a direct and proximate result of

the Defendant's participation in such enterprise, as alleged herein.

846.   Predicate Act:  Transportation and Receipt of Stolen Money - 18 U.S.C. §§2314 and

2315.  Defendants committed acts constituting indictable offenses under 18 U.S.C.

§§1163; 2314, as part of or resulted from a conspiracy, infra, having devised or intended

to devise a scheme or artifice to defraud the People of the Te-Moak Tribe, or to obtain

money from the Tribe and the federal government by means of false or fraudulent

pretenses, representations or promises, and from other Defendant Party members to the

NCE, shown by Defendant's transported or caused the transportation of money having a

value of $5,000.00 or more, in interstate commerce, that was stolen, converted or taken

by fraud.  Ref. ¶¶120; 128; 179; 184; 186; 188; 403; 580-84; 633-34; 645; 662-63; 718;

727-28; 803; 818-19; 821 and 825.  Defendants committed acts constituting indictable offenses under 18 U.S.C. §2315 in that Defendants, individually and jointly, received money in excess of $5,000.00 that crossed a State or United States Boundary after being stolen, unlawfully converted or taken.  Id.  The Defendant's acts set forth herein were done intentionally, willfully and with the knowledge that the money was stolen, converted or taken by fraud, with the specific intent to advance the Defendants' agreements, plans, scheme or artifice.

847.    As part of any agreement, plan or scheme alleged herein, such as described in ¶¶140; 149; 258; 292; 395; 419; 588, *inter alia*, the Defendants facilitated the payment of bribes and improper gifts or gratuities to or attempted to bribe tribal and government officials to secure favorable business decisions for the benefit of the Defendants and the NCE, at the expense of the Plaintiff.

848.    Predicate Act: Mail Fraud 18 U.S.C. §1341 and Schmuck v. U.S., 489 U.S. 705 (2020). The Defendants, jointly and individually, devised agreements, schemes and plans to defraud the Te-Moak Tribe, part of or resulted from a conspiracy, *infra*, by the performance of fraudulent acts and use of material misrepresentations of fact or law to conceal or alter the source or character of money; amounts of money;  tax revenue or falsified tax records, information or documents; improper campaign contributions, bribes and gratuities; transportation of money over $5,000 across state and federal boundaries; false, defamatory and libelous statements.

849.    The Defendants, jointly and individually, used the United States Postal Service to execute or attempt to execute the NCE agreements, plans and schemes to defraud the

Tribe and federal government, and Defendants performed specific fraudulent acts constituting material misrepresentations of fact or law, using the United States Postal Service, such as described in ¶¶144; 174; 187; 368; 390; 394; 399; 469; 607; 621; 682; 697; 711; 722; 731; 750; 753 and 791.

850.    Predicate Act:  Wire Fraud 18 U.S.C. §1343 and U.S. v. Hanson, 41 F.3d 580, 583 (10ᵗʰ Cir. 1994).  The Defendant's joint and individual acts or omissions to fraudulently obtain, transfer, steal or convert money from the Tribe, the Plaintiff, the court and the United States government by trick, deception and material misrepresentation of fact or law, pursuant to any **A1-A8** agreement, plan or scheme, through the use of the telephone, internet, facsimile and email to facilitate, transmit, send and receive records, documents and information with the intent to conceal the unlawful character of the NCE money or income; the unlawfulness of the NCE itself; the existence of the NCE; use of a tribal EIN to hide tax revenue; the use of checks, instruments and IRS forms to falsify tax information and reporting; unreported transfers of money to political campaigns; and the legal relationships of Party Defendants where an affirmative duty existed to disclose; and create a judicial sub-enterprise that misrepresented the judicial office, title and authority of the Plaintiff and Defendant Hayes, whereafter Hayes entered false orders and decisions to further hide or conceal the agreements, plans and schemes of the NCE.  Defendants knowingly installed a wire service connected to Lucent Technologies POP 100 Gigabyte data switch in Salt Lake City, Utah to conduct the wire fraud alleged herein, such as described in ¶¶61; 65; 84; 86; 110-11; 120; 125; 130; 144; 161; 174; 185-7; 204; 206; 232; 250; 261; 273-74; 327; 322; 332; 342; 354; 376; 377-80; 410-11; 468; 470; 472;

503; 505-06; 516; 552; 562-63; 571; 577; 585; 642; 646; 687; 704-05; 716; 722-26; 732-33; 735; 751-52; 758; 764; 767; 769-70; 781; 783; 789; 791;793-94 and 828, *inter alia.*

851.   Predicate Act:  Financial Institution Fraud 18 U.S.C. §1344; 18 U.S.C. §§1005 and 1006.  Defendants committed acts constituting indictable offenses under 18 U.S.C. §1344 as part of or resulted from a conspiracy, *infra*, having knowingly executed or attempted to execute any **A1-A6** and **A8** agreement, plan, scheme or artifice to obtain funds held under the custody or control of Zionsbank, SALAL Credit Union, Wells Fargo Bank and Nevada State Bank such as described in ¶¶49; 61; 63; 115; 117; 120; 123-27; 134; 137-38; 144; 161; 180; 184-88; 190; 219: 233; 252; 259; 271; 273-74; 282-83; 291; 301; 304; 311; 316; 326-27; 356; 361; 368; 382; 388; 390; 392;  397; 399-01; 403; 407; 410; 463; 469; 472; 483; 488; 506-07; 559; 580; 601-02; 625; 633; 635; 637; 641; 676; 681-82; 697; 702-03; 706; 712-13; 717; 731-33; 738; 740; 745; 748-54; 768; 783; 801; 803; 811; 816; 820-25 and 828-29, *inter alia.*

852.   Defendant Brent Waite; directing and advising Ashley Dewey and Nicole Lewis, as employees, representatives and agents acting on behalf of or at the direction of Zionsbank and Nevada State Bank officers acted with the intent to deceive or defraud the Tribe, and its body politic TMC, EBC, the Plaintiff and the Te-Moak Supreme Court by concealing the true nature of the transactions and funds received and accepted by Zionsbank/NSB from the NCE, and Defendants.  Defendants Brent Waite acted on behalf of or at the direction of Zionsbank and Nevada State Bank officers and made or directed Dewey and Lewis to make false entries in books, reports and statements to conceal and prevent the disclosure of Defendants agreements, plans or schemes, and knowingly accepted funds transferred

from SALAL, Wells Fargo and Defendants consisting of income from the NCE with the intent to defraud the Tribe and the United States. Defendants Waite, Zionsbank and NSB received money, profit or benefits through a series of fraudulent transactions involving not just the NCE, aiding the NCE in preparing, mailing and submitting financial documents and records containing known falsehoods. Zionsbank, Waite and NSB also engaged in the same practice involving similar criminal organizations throughout the Western United States and Zionsbank subsidiaries.

853. Defendant SALAL employees, officers and agents Russell Rosenthal, Robert Schweigert, Randy Cloes and Troy Skott Pope directed, advised and instructed SALAL-SCU Holdings to commit acts constituting indictable offenses under 18 U.S.C. §§1343-44 and §1006, for the period of 2020 through the date of this action, with the intent to deceive the Tribe, and its body politic TMC and EBC, or their members, by misrepresenting facts and law asserting that the transportation of money, transfer of money by ACH or instrument from the unlawful sale of a controlled substance on a Territory of the United States, outside the State of Washington, constitutes a lawful act under federal and state law so long as a body politic or its members complete an application and provide copies of A2 and complete necessary A4 filings. SALAL employees, agents and representatives entered statements or entries into SALAL records and books authorizing and falsely claiming that the ECBE deposits and transfers originated from a legitimate and lawful tribal business pursuant to agreements with TT, SCS, and their attorneys, to fraudulently generate profits and additional income received by SALAL that otherwise belong to the Tribe or the United States. SALAL employees, agents and officers falsely entered or

advised others to enter false tax, financial and business information onto statements, records and documents to knowingly conceal the source and character of the funds accepted by SALAL, as received from Defendants, commingling those funds between multiple accounts at SALAL and ECBE, TT and SCS' accounts at Zionsbank, and its subsidiaries, and then mailing by USPS and via the internet statements, entries, payments, reports and records to Defendants.

854.   Defendants, jointly and individually, who subsequently joined the NCE by way of or through any agreement, plan or scheme, committed indictable offenses under 18 U.S.C. §§1163, 1341, 43-44 and §§1005-06, *inter alia*, when they each agreed to falsify and who falsified financial records and documents, claiming or stating therein that the source of funds, revenue, income or proceeds that originated from the NCE, directly or indirectly, originated from EBCE as a lawful tribal business, hidden through a series of ongoing financial transactions with H & R Block-Delcor; Zionsbank; NSB; Wells Fargo Bank; IBSC; Avantax; TMHA; Edward Jones & Associates, and other entities and individuals, into and from SALAL, (*operated as both a victim and perpetrator-prize association*), where the SALAL board members conducted and ran the business affairs of SALAL-SCU Holdings through a pattern of racketeering activity that included mixing the NCE funds and revenue with fraudulently obtained and legitimately obtained federal funds, then combined with the unlawful proceeds from marijuana businesses in California, Oregon, Nevada and Washington assisted, ratified or endorsed by and through Zionsbank, or its subsidiaries.

855.     Predicate Act:  Money Laundering 18 U.S.C. §1956 Including Unlawful Money

Transactions and Travel Act violations.  Each Defendant committed acts constituting

indictable offenses under 18 U.S.C. §§1952, 1956 and 1957 such as described in ¶¶134;

144; 180; 187-88; 190; 209; 235; 290; 356; 361; 399-400; 409-10; 422; 464; 467; 637;

706; 745; 801 and 802, *inter alia*, or were part of or resulted from a conspiracy, *infra*,

having devised or intended to devise a scheme or artifice by **A1-A6** and **A8** knowing the

property involved in the financial transactions identified herein constituted the proceeds

and income from the unlawful sale of a controlled substance at the NCE retail store Newe

Cannabis and fraudulently obtained federal funds, and engaged or committed acts with

the intent to continue or carry on the NCE unlawful activity, including tax fraud, and

knowing that the transactions with and between Defendants and SALAL; H & R Block-

Delcor; Zionsbank; NSB; Wells Fargo Bank; EBCE; RAE Solutions; IBSC; Avantax; TMHA;

Edward Jones & Associates were designed, in whole or in part, to conceal, hide or disguise

money transactions derived from the NCE sales of a controlled substance having a value

greater than $10,000.00, and Defendants traveled interstate, used the mail and the

internet or wire service to distribute the proceeds from the NCE, promoted, managed and

carried on the unlawful NCE activities from 2019 to the present.

856.     Predicate Act:  Obstruction and Obstruction of Criminal Investigation 18 U.S.C.

§§1503 and 1510.  Such as described in ¶¶64; 88;108; 115; 133; 140; 149; 191; 242; 249-

52; 255; 257-58; 267; 272; 292; 325; 334-36; 339; 347; 349; 351; 353; 359; 367; 373;

376; 395; 419; 513; 553-58; 560; 564; 567-69; 588; 615; 660; 672; 694; 696; 704-06;

769; 784; 789; 835, *inter alia*, and as applicable here, Defendants committed acts,

conspired to commit acts or attempted to commit acts constituting indictable offenses under <u>18 U.S.C. §§1163, 1503 and 1510</u>, part of or resulted from a conspiracy, *infra*, with the intent to injure or influence witnesses and parties in cases filed in the United States BIA-CIO and BIA-CIA that included the filing of false and fraudulent letters, documents, records, affidavits or declarations by Defendant attorneys, and others, to cause injury to the Tribe, the Plaintiff and others, using corrupt practices and endeavors, with the intent to obstruct or impede the administration of justice.   Individual Defendants knew or should have known that the Plaintiff reported criminal acts to federal investigators, and as described herein, individual Defendants committed acts, conspired to commit acts or attempted to commit acts constituting bribery, obstruction, interference, delay or prevent OIG, FBI, ATF and BIA criminal investigations related to the NCE and fraud involving federal funding.

857.   <u>Predicate Act:  Witness, Victim or Informant Tampering 18 U.S.C. §1512 and Retaliation Against Witness, Victim or Informant 18 U.S.C. §1513.</u>  Such as described in ¶¶117; 134; 140; 149; 211; 249-52; 255; 257-58; 267; 272; 292; 311; 329; 333; 340; 342; 358; 419; 472; 485; 488-89; 504-05; 511; 519; 556; 553-54; 558; 560; 564; 567-69; 588; 607-08; 610-11; 613-14; 617; 654; 672-73; 711; 769; 789; 835, *inter alia*, Defendants, jointly and individually, conspired to commit, agreed to commit or committed acts constituting indictable offenses, as part of or resulted from a conspiracy, *infra*,  under <u>18 U.S.C. §§1163, 1512</u> and <u>§1513</u> by knowingly threaten the life and person of the Plaintiff, by knowingly intimidate, threaten and corruptly persuade others to threaten and intimidate those in opposition to the NCE and its members, with the intent to influence

obstruct or prevent testimony in court proceedings related to the NCE by altering, concealing or destroying evidence, or with the intent to hinder or prevent the Plaintiff's communication with federal law enforcement; and Defendants, jointly and individually, committed acts constituting indictable offenses under 18 U.S.C. §1513 by knowingly or intentionally interfering with the Plaintiff's lawful employment or livelihood, rising to the level of retaliation that caused actual harm to the Plaintiff because the Plaintiff reported criminal conduct to federal law enforcement agencies and officers.

858.    On information or belief, the Defendants to any agreement, plan or scheme of the NCE, (*or who subsequently joined the NCE by way of or through any agreement, plan or scheme of the NCE*), authorized, directed and approved the acts, conduct and omissions of Chadwick Smith; Wendall Hayes, Tammy Carrera and Angelea Mendez in furtherance of the NCE, as tools or instruments of the NCE, used to create, manage and direct a judicial sub-enterprise and who committed predicate acts, with other NCE Parties, sufficient to become a continuing pattern of racketeering activity to violate or attempt to violate tribal, state and federal law.  See 21 U.S.C. §§841(b)(1)(A); 841(b)(1)(B); 841(b)(1)(C) and (D); 843(a)(6) and (7); 854(a); 856; 26 U.S.C. §7201; 18 U.S.C. §§1163, 1341, 1343, 1344; 18 U.S.C. §1952, 1956, 1957; 18 U.S.C. § 1960 and §1962 et seq; and 31 U.S.C. §§ 5311-5314e; 5316-5331; 5332e; 12 U.S.C. §§1829b, 1951-1959; 31 CFR Chpt X and Part 103).

859.    On information or belief, the Defendant Parties to any agreement, plan or scheme of the NCE authorized and directed the acts and conduct of Adela Morrison, in furtherance of the NCE, as perpetrators, converting the TMHA into a prize and tool for the NCE to unlawfully invest or transfer cash, income or proceeds obtained directly or indirectly

from the fraudulent misappropriation, embezzlement or theft of federal funds, with legitimately obtained federal funds and funds, cash or income derived from or originated, directly or indirectly, from the NCE and unlawfully transferred, deposited or invested in foreign and domestic financial institutions and accounts. Id.

860.    On information or belief, TT; SCS and CSI were operated, managed or directed by Paul Conable; Steve Olson; Darian Stanford; Kevin Clock and Elliot Parris within Tribal Territories of the United States in California, Oregon, Washington and Nevada as one single apparatus, extension or entity of the NCE, often under the color and authority of state law where the NCE practices included corruptly fixing tribal civil and criminal cases, organizing and operating tribal courts and criminal justice systems in such a manner to: 1) avoid and bar prosecution or arrest of the enterprise members, and 2) arbitrarily arresting and prosecuting those in opposition to the enterprises, and to 3) prevent reporting or disclosure of the unlawful aspects of the enterprises, by incorporating corrupt payments to judges, legislators, lawyers and law enforcement officers by way of and with unreported financial incentives, gifts and payments from the NCE and other enterprises operated, controlled or managed by TT, SCS or its attorneys pursuant to a common purpose: to violate or attempt to violate state and federal law. Id; e.g. 15 U.S.C. §§78dd-1 et seq.

861.    On information or belief Davis Gonzalez; Thalia Marin; Suzanna Sandoval; Juan Arevalo; LaDonna Leyva; and Larry Yeager ran, directed, managed, conducted and operated Elko Band Council and its subordinate boards, committees and organizations, in alternating forms, as perpetrator, victim, prize and instrument sub-enterprises of the

NCE, conducting the business of the body politic with a pattern of racketeering activity

that included the misappropriation of federal funds mixed with NCE income and

legitimately obtained federal and state funding.  Id; see also, 18 U.S.C. §1163.

862.    On information or belief Alice Tybo; Duane Garcia, Sr.; Tanya Reynolds, (with the

assistance of Bowker, Joseph McDade), managed, operated and conducted the South Fork

Band Council and its boards, committees and charter organizations, in alternating forms,

as a perpetrator, victim, prize and instrument sub-enterprises of the NCE, conducting

business as a body politic of the NCE through a series or pattern of racketeering activity

that included the misappropriation of federal funds mixed with NCE income and

legitimately obtained federal and state funding, then transferred and consumed by these

Defendant's for their personal use or gain through Zionsbank and other financial

institutions, including entities such as WSDRV.  Id.

863.    On information or belief Joseph Holley; David Carrera; Davis Gonzalez; Duane

Garcia, Sr; Alice Tybo; Juan Arevalo; Paula Garcia; Andrea Woods; Larry Yeager, with

others acting on their behalf, managed, operated and conducted the Te-Moak Tribal

Council and its subordinate boards, committees and organizations, in alternating forms,

as a perpetrator, victim, prize and instrument sub-enterprises of the NCE, conducting

business as a body politic of the NCE through a series or pattern of racketeering activity,

including the delivery and receipt of payments from NCE income, as well as approving

and authorizing the Band Councils, (*and their members, subsidiaries, boards, attorneys,*

*employees and representatives, including, but not limited to Dentons, Sypolt, Skibine,*

*Chadwick Smith and Heather Sibbison; Robin Evans; SCS; Hinton-Burdick; Eide Bailly; WJC;*

*TMHA; Andrea Mendez; Wendall Hayes; Adela Morrison; Tanya Reynolds and WSDRV*), to commit predicate acts sufficient to constitute a pattern of racketeering activity as associations-in-fact to violate or attempt to violate tribal, state and federal law. Id.

864.     On information or belief, beginning in 2019 through the time of the filing of this Complaint, (2022), Defendants Davis Gonzalez; Juan Arevalo; Thalia Marin; LaDonna Leyva; Robin Evans; Leslie Grove; Darian Stanford; Paul Conable; Steve Olson; Steve Sisolak; Brent Waite; Zionsbank; SALAL; Joseph Holley; David Carrera; Alice Tybo; Duane Garcia, Sr; Andrea Woods; Larry Yeager; Tanya Reynolds; Nicole Lewis; Aaron Ford; Adela Morrison; SCS and TT, directly and indirectly, participated in a pattern of racketeering activity as an enterprise to violate or attempt to violate federal laws identified and described in paragraphs 1-835 to include:  Extortion, Bribery (18 U.S.C. §666); Dealing in Controlled Substances; Mail Fraud (18 U.S.C. §1341 and Schmuck v. U.S., 489 U.S. 705, 721(2020)); 18 U.S.C. §1163; Wire Fraud(18 U.S.C. §1343 and U.S. v. Hanson, 41 F.3d 580, 583 (10th Cir. 1994)); Financial Institution Fraud(18 U.S.C. §§1005, 1006 and 1344); Obstruction of Justice(18 U.S.C. §1503 and Roberts v. U.S., 239 F.2d 467 (9th Cir. 1956), Catrino v. U.S., 176 F.2d 884, 887(9th Cir. 1949) and Nye v. U.S., 137 F.2d 73(4th Cir. 1943)); Obstruction of Criminal Investigation(18 U.S.C. §1510); Witness, Victim or Informant Tampering(18 U.S.C. §1512); Retaliation Against Witness, Victim or Informant(18 U.S.C. §1513 and 5 U.S.C. §2302(2)(*Whistleblower Protection*) and 41 U.S.C. §4714(c)); Money Laundering(18 U.S.C. §1956); Travel Act(18 U.S.C. §1952); Engaging in Monetary Transactions Derived from Unlawful Activity(18 U.S.C. §1957) and Attempt to Evade or Defeat Tax  (26 U.S.C. §§7201, 7206 and 7207).

865.    On information or belief, beginning in 2019 through the time of the filing of this

Complaint, (2022), Defendants Davis Gonzalez; Juan Arevalo; Thalia Marin; LaDonna

Leyva; Robin Evans; Leslie Grove; Chadwick Smith; Wendall Hayes; Sypolt; Darian

Stanford; Paul Conable; Steve Olson; Steve Sisolak; Brent Waite; Zionsbank; SALAL;

Joseph Holley; David Carrera; Alice Tybo; Duane Garcia, Sr; Andrea Woods; Larry Yeager;

Tanya Reynolds; Nicole Lewis; Aaron Ford; Adela Morrison; Elko Band Council; SCS; TT,

and others acting on their behalf, received income, cash or proceeds directly or indirectly

from racketeering activity or through the collection of any unlawful debt involving the

NCE, where Defendants, individually and jointly, in their individual or official capacities,

1) invested income, revenue or proceeds from the NCE; 2) acquired or maintained an

interest in the NCE; 3) participated in the activities of the NCE; or 4) were employed by or

associated with the conduct and activities of the NCE and the NCE's affairs as described in

paragraphs 1-835, *supra*, including the transfer, delivery, transportation or depositing of

funds, revenue, income or proceeds into cryptocurrency, and into the personal assets and

accounts of children, spouses and business entities, real and fictitious, to prevent

disclosure or discovery to violate or attempt to violate federal, state or tribal law.

866.    On information or belief, the Plaintiff pleads in the alternative, that the Defendants

TT; SCS; Steve Sisolak; Aaron Ford; Davis Gonzalez; Darian Stanford; Paul Conable; Steve

Olson; Kevin Clock; Elliot Parris, and those acting on their behalf,  conspired, individually

and jointly, to form and create partnerships, associations, corporations or other business

entities as an enterprise, and enterprises, and to participate in, be employed by or to

obtain or receive income derived from a pattern of racketeering activity, related to the enterprises, in violation of 18 U.S.C. §1962(d).

867.    This conspiracy commenced on or about January 2019 and is ongoing, and the conspiracy's purpose was to divert money from the Tribe, EBCE and EBC to Defendants own benefit and to facilitate the payment of bribes, improper gifts and gratuities to elected and appointed government officials in furtherance of the conspiracy and enterprises.

868.    Each Defendant to this conspiracy committed at least one act in furtherance of such conspiracy, including, but not limited to, misleading the Plaintiff and the Tribe the legality of the NCE selling and distributing a controlled substance, traveling in interstate and foreign commerce to manage the scheme to defraud the Plaintiff and the Tribe, and facilitating payment of bribes, improper gifts and gratuities, all as described herein, *supra*.

869.    Even if some Defendants failed to specifically agree to harm the Plaintiff, the purpose of the acts and conduct they engaged in causing injury was to advance the overall object of the conspiracy, and the harm to Plaintiff was a reasonably foreseeable consequence of each act or omission by each Defendant in furtherance of the conspiracy.

870.    On information or belief the Plaintiff, the Plaintiff's trade, profession, business interests and property suffered harm and injury as the direct and proximate result of the Defendant's violations of state, tribal and federal law; conduct associated with or related to the NCE, and from any associated or related pattern of racketeering activity by the NCE and its associations in fact, spanning the periods December 2019 through the present.

871.   <u>Continuity of Conduct</u>.   Defendant's violations of state and federal law, as set forth herein, each of which directly and indirectly injured the Plaintiff and other market participants, constituted and constitutes a continuous course of conduct spanning a period from approximately 1993 to present, which is intended to obtain money through false representations, fraud, deceit and other improper and unlawful means.  Thus, the violations, facts, events and circumstances described herein were and are a part of a pattern of racketeering activity under <u>18 U.S.C. §§1163 and 1961(1) and (5)</u>.

872.   On information or belief Defendants have conducted and/or participated, directly and indirectly, in the conduct of the affairs of the alleged enterprises through a pattern of racketeering activity as defined herein in violation of <u>18 U.S.C. §§1163 and 1962(c)</u>.

873.   The unlawful actions and/or conduct of the Defendants, jointly and individually, have directly, unlawfully, and proximately caused and continue to cause injury to the Plaintiff and the Plaintiff's business or trade.  Plaintiff seeks an award of compensation, among other things, plus treble damages, and recovery of all reasonable fees and costs.

**CLAIM TWO:       DEFAMATION, LIBEL AND SLANDER (U.S. Constitution - Privacy Right)**

874.   The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 835, *supra*, including any referenced attachment, citation and exhibit, and paragraphs 881 through 1016, *infra*, without waiving any claim or defense, as though more fully set forth here in Section E - CAUSE OF ACTION CLAIM TWO.

875.   On information or belief the publication and republication of public statements, writings and utterances by Steve McDade that the Plaintiff is a "felon," "ex-felon,"

"convicted felon," "criminal," "drug dealer," and "white supremacist," or similar words and statements regarding the Plaintiff are false, libelous and *defamatory per se*.

876.    On information or belief the publication and republication of public statements, writings and utterances by Steve McDade that the Plaintiff was "fired," "removed," "recalled," or "terminated" as a magistrate judge in North Carolina; that the Plaintiff engaged in the unlawful practice of law; and that the Plaintiff committed 'perjury' were false, libelous and *defamatory per se*. Steve McDade published, uttered and republished these statements and writing to obtain a criminal indictment against the Plaintiff, to obtain the exclusion of the Plaintiff from Te-Moak Territory and to cause interference with or the termination of the Plaintiff's employment with the Te-Moak Tribe.

877.    On information or belief Steve McDade published and republished false and defamatory statements, writings and utterances regarding the Plaintiff repeatedly throughout the nation using streams of interstate commerce when the Plaintiff was a private party, a limited public official and a public official.

878.    On information or belief Steve McDade published and republished false and defamatory statements  and utterances that the Plaintiff was a convicted criminal and engaged in criminal behavior to expose the Plaintiff to public hatred, contempt, ridicule or obloquy to deprive the Plaintiff of public confidence or injure the Plaintiff in his occupation and reputation, and caused the Plaintiff to be exposed to public hatred, contempt, ridicule or obloquy, including threats of death, depriving the Plaintiff of public confidence and injured the Plaintiff in his occupation, profession and reputation.

879.     On information or belief Steve McDade published and republished false and

defamatory statements, writing and utterances with actual malice, based partly on the

Plaintiff's race, color, ethnicity or nationality.  See Hogan v. Winder, et al., 762 F.3d 1096,

1105-10 (10th Cir. 2014)(*publication and republication of statements that constitute*

*defamation and defamation by implication*); Petersen v. Grisham, 594 F. 3d 723, 729-

31(10th Cir. 2010)(*publication of false claims that an official "engaged in criminal" conduct*

*are considered actionable per se with actual malice, and civil conspiracy allowed if alleged to*

*include an agreement with an "unlawful act, or to do a lawful act by unlawful means"*); e.g.

Milkovich v. Lorain Journal Co., 497 U.S. 1, 20(1990)(*publication of statements that an*

*official committed perjury in a newspaper is actionable*); see also, U.S. v. Wells, 519 U.S. 482,

505-507(1997)(*Stevens, J. dissenting,  false statements to courts and law enforcement lack*

*1st Amendment protection*); Gertz v. Robert Welch, Inc., 418 U.S. 323, 331-40(1974)

(*intentionally false statements and those containing negligent error*).

880.     On information or belief Steven McDade received actual, written notice from the

BIA-CFR CIO Magistrate Harlan that the Plaintiff lacked any criminal record, Plaintiff was

"not disbarred from any jurisdiction," and that no evidence existed proving McDade's false

claims that the  Plaintiff was "'forced to resign from a Magistrate position in North Carolina

for allegedly falsifying employment documents by giving a wrong birth date,'" and

Defendant Steve McDade continued to further defame, libel and slander the Plaintiff after

receiving said notice.  Ref. IN RE INQUIRY INTO THE TRIBAL COURT ADVOCACY OF

SAMUEL L. BIERS, Case No. AO-02-WR-19(Court of Indian Offenses of the Western

Region)(October 2, 2019).

**CLAIM THREE:        DEFAMATION, LIBEL AND SLANDER (U.S. Constitution - Privacy Right)**

881.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 835, *supra*, including any referenced attachment, citation and exhibit, and paragraphs 925 through 1016, *infra*, without waiving any claim or defense, as though more fully set forth here in Section E - CAUSE OF ACTION:  CLAIM THREE.

882.    On information or belief the publication and republication of public statements, writings and utterances by Marla McDade that the Plaintiff is a "felon," "ex-felon," "convicted felon," "criminal," or similar words and statements regarding the Plaintiff were false, slanderous, libelous and defamatory *per se*.

883.    On information or belief the publication and republication of public statements, writings and utterances by Marla McDade that the Plaintiff was "fired" "removed" "recalled" or "terminated" as a magistrate judge in North Carolina to obtain a criminal indictment against the Plaintiff were false and *defamatory per se*, and that Marla McDade published and republished these statements repeatedly throughout the nation using streams of interstate commerce when the Plaintiff was a private party, a limited public official and a public official.

884.    On information or belief Marla McDade published and republished false and defamatory statements regarding the Plaintiff, under color or authority of state law, in her individual and official capacity, that included statements that the Plaintiff was a convicted criminal and the Plaintiff engaged in criminal behavior, to expose the Plaintiff to public hatred, contempt, ridicule or obloquy to deprive the Plaintiff of public confidence or injure

the Plaintiff in his occupation and reputation, and caused the Plaintiff to be exposed to public hatred, contempt, ridicule or obloquy, including threats of death, depriving the Plaintiff of public confidence and injured the Plaintiff in his occupation, trade, profession and reputation.

885.   On information or belief Marla McDade published and republished, and conspired to publish and republish, false and defamatory statements regarding the Plaintiff with actual malice, based partly on the Plaintiff's race, color, ethnicity or nationality.  See Hogan v. Winder, et al., 762 F.3d 1096, 1105-10 (10th Cir. 2014); Petersen v. Grisham, 594 F. 3d 723, 729-31(10th Cir. 2010); also, 42 U.S.C. §§1981-83 and 1988; e.g. 42 U.S.C. §2000e-2.

**CLAIM FOUR:        DEFAMATION, LIBEL AND SLANDER (U.S. Constitution - Privacy Right)**

886.   The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 835, *supra*, including any referenced attachment, citation and exhibit, and paragraphs 925 through 1016, *infra*, without waiving any claim or defense, as though more fully set forth here in Section E - CAUSE OF ACTION:  CLAIM FOUR.

887.   On information or belief the publication and republication of an article in the Salt Lake Tribune repeatedly for 10 days, by Alice Tybo, in her individual capacity, that the Plaintiff failed a background investigation, lacked good moral character and qualifications as the Te-Moak Supreme Court Judge, and that the Plaintiff lacks all authority and affiliations as said judge were false, libelous and defamatory *per se*.

888.   On information or belief the publication and republication of public statements, writings and utterances by or from Alice Tybo, in her individual capacity, that the Plaintiff

is a "felon," "ex-felon," "convicted felon," "criminal," "drug dealer" or similar words and statements, regarding the Plaintiff, including false public statements that the Plaintiff was convicted of a felony in "Minnesota," were false and *defamatory per se.*

889.    On information or belief the publication and republication of public statements, writings and utterances by Alice Tybo, in her individual capacity, that the Plaintiff was "fired," "removed," "recalled," or "terminated" as a magistrate judge in North Carolina; that the Plaintiff falsely claimed to be a district attorney or federal prosecutor in Utah; that the Plaintiff failed a federal law enforcement or similar type of background investigation; that the Plaintiff is not a judge or affiliated with the Te-Moak Tribe; and that the Plaintiff falsely 'impersonated a judge' to obtain a criminal indictment or arrest of the Plaintiff were false and *defamatory per se.*

890.    On information or belief Alice Tybo repeatedly published and republished false and defamatory statements, writings and utterances regarding the Plaintiff when the Plaintiff was a private party, a limited public official and a public official.

891.    On information or belief Alice Tybo, in her individual and official capacity, published and republished these statements repeatedly throughout the nation using streams of interstate commerce falsely stating that the Plaintiff was a convicted criminal, and that the Plaintiff engaged in criminal behavior, to expose the Plaintiff to public hatred, contempt, ridicule or obloquy to deprive the Plaintiff of public confidence or injure the Plaintiff in his occupation and reputation, and caused the Plaintiff to be exposed to public hatred, contempt, ridicule or obloquy, depriving the Plaintiff of public confidence and injured the Plaintiff in his occupation, trade, profession and reputation.

892.    On information or belief Alice Tybo published and republished false and defamatory statements regarding the Plaintiff with actual malice, based partly on the Plaintiff's race, color, ethnicity or nationality.  See Hogan, 762 F.3d at 1105-10; Grisham, 594 F. 3d at 729-31. Milkovich, 497 U.S. at 20; Wells, 519 U.S. at 505-507; Gertz, 418 U.S. at 331-40.

893.    On information or belief Defendant Alice Tybo acted in her capacity as an employer and/or supervisor within the meaning to Title VII, through the Te-Moak Tribe as a recipient of state and federal funds, and who published and republished false and defamatory statements regarding the Plaintiff with the intent to discriminate against the Plaintiff because of the Plaintiff's race, color, culture, ethnicity or national origin and created a hostile work environment with conduct so severe that it altered the terms and conditions of the Plaintiff's employment.  See 42 U.S.C. §§1981-83 and 1988; e.g. 42 U.S.C. §2000e et seq; e.g. Vance v. Ball State Univ., 570 U.S. 421, 427-40(2013).

### CLAIM FIVE:        DEFAMATION, LIBEL AND SLANDER (U.S. Constitution - Privacy Right)

894.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 835, *supra*, including any referenced attachment, citation and exhibit, and paragraphs 925 through 1016, *infra*, without waiving any claim or defense, as though more fully set forth here in Section E - CAUSE OF ACTION:  CLAIM FIVE.

895.    On information or belief the publication and republication of public statements, writings and utterances by, from or as approved by Dentons, Skibine, Chadwick Smith, Docksey,  Hayes and Scott Sypolt, (between the period of September 2020 and August 2021), that the Plaintiff is a "felon," "ex-felon," "convicted felon," "criminal," "drug dealer"

or similar words and statements repeatedly throughout the nation using streams of interstate commerce regarding the Plaintiff were false and *defamatory per se*.

896.    On information or belief the publication and republication of public statements, writings and utterances by, from or as approved by Dentons, Skibine, Docksey and Scott Sypolt, (between the period of September 2020 and August 2021), including, but not limited to, the drafting and advice to publish the false statements to NV DETR using wire services that the Plaintiff was "fired," "removed," "recalled," or "terminated" as a magistrate judge in North Carolina; that the Plaintiff falsely during the December 2019 employment interview the Plaintiff claimed to be a federal prosecutor in Utah; that the Plaintiff failed a federal law enforcement or similar type of background investigation; that the Plaintiff is untrustworthy; that the Plaintiff is not a judge or affiliated with the Te-Moak Tribe; that the Plaintiff falsely claimed to be a licensed attorney in Utah; that the Plaintiff falsified his 'birth date' on employment forms; and that the Plaintiff falsely 'impersonated a judge,' used by these Defendants to recommend a criminal referral to prosecute the Plaintiff or to obtain an arrest or criminal indictment against the Plaintiff, were false and *defamatory per se*.

897.    On information or belief Dentons and Sypolt published and republished false and defamatory statements, writings and utterances regarding the Plaintiff, repeatedly, when the Plaintiff was a private party, a limited public official and a public official with the approval and agreement of Sibbison, Skibine and Docksey.

898.    On information or belief Sypolt and Chadwick Smith published and republished false and defamatory statements, writings and utterances that the Plaintiff was a convicted

criminal and who engaged in criminal behavior when Sypolt, Hayes and Smith were considered employees, agents and representatives of Dentons.

899.    On information or belief the publication and republication of false and defamatory statements regarding the Plaintiff by Sypolt, Hayes, Smith and Dentons exposed the Plaintiff to public hatred, contempt, ridicule or obloquy, including death threats, with the intent to deprive the Plaintiff of public confidence or injure the Plaintiff in his occupation and were published with actual malice, partly based on the Plaintiff's race, color, ethnicity or nationality after the Plaintiff reported Sypolt and Dentons of criminal and unethical conduct.  See Hogan, 762 F.3d at 1105-10; Grisham, 594 F. 3d at, 729-31; see also, Dunlop v. Carriage Carpet Co., 548 F.2d 139, 147 (6th Cir. 1977)(*§215 prohibits retaliation and black-listing a former employee who filed a complaint related to the Act*); e.g. 29 U.S.C. §201 et seq. ("Fair Labor Standards Act").

900.    On information or belief Defendants Dentons, Sypolt, Docksey and Skibine, individually and jointly, asserted false supervisory authority over the Plaintiff to take, advise or direct tangible, adverse employment actions against the  Plaintiff, within the meaning to Title VII, and Defendants intended to discriminate against the Plaintiff because of the Plaintiff's race, color, culture, ethnicity or national origin and Defendants created a hostile work environment with conduct so severe that it altered the terms and conditions of the Plaintiff's employment.  Id; see 42 U.S.C. §§1981-83 and 1988; e.g. 42 U.S.C. §2000e et seq; e.g. Vance v. Ball State Univ., 570 U.S. 421, 427-40(2013).

901.    Defendants Sypolt, Smith and Skibine are directly liable to the Plaintiff because Defendants were negligent in remedying the discriminatory conduct where Smith, Sypolt

and Skibine provided legal advice to the Plaintiff's employer to take adverse, tangible

employment action against the Plaintiff on the basis of race, color, culture, ethnicity or

national origin, and to retaliate against the Plaintiff, resulting in the termination of the

Plaintiff as the Tribal Administrator and loss of rights as a Judge.  Id; e.g. McGinest v. GTE

Serv. Corp., 360 F.3d 1103, 1119-21 (9th Cir. 2004).

902.    On information or belief Defendant Dentons is liable to the Plaintiff under the theory

of *respondeat superior* for the willful, malicious acts, conduct and omissions of Skibine,

Docksey,  Sypolt, Smith and Sibbison, as employees of Dentons acting within the course and

scope of their employment against the Plaintiff that Dentons ratified as the acts of Dentons

by failing to discharge Skibine, Sypolt, Docksey, Smith or Sibbison after Plaintiff provided

direct notice on or about April 2, 2021, or as a result of Dentons authorizing the retaliatory

plan against the Plaintiff after the Plaintiff reported criminal conduct by Dentons to federal

law enforcement.

903.    Alternatively, Defendants Skibine, Sypolt, Hayes and Smith are vicariously liable for

the additional malicious, willful, negligent and wrongful acts committed against the

Plaintiff and intended to inflict injury on the Plaintiff out of personal malice unconnected

with their employment by Dentons US LLP.  The losses and injury to the Plaintiff in this

regard were not reasonably foreseeable result from the conduct of Dentons employment or

business.

904.    Defendants Dentons, Skibine, Docksey, Hayes, Smith and/or Sibbison committed,

advised or directed others to commit  unlawful discriminatory conduct against the Plaintiff

because the Defendants received actual notice the Plaintiff reported alleged criminal

conduct by Dentons employees to federal law enforcement agents, and Defendant Dentons, as the employer, maintained a written contract term that prohibits "corruption" or violations of the law, (*where all partners in a law firm are presumed to  know the actions and work-product of the other partners*), and Defendant Dentons failed to exercise reasonable care to prevent the unlawful discriminatory conduct or the adverse employment decisions based on the legal advice given by Dentons' attorneys and partners.  Id; see Hogan, 762 F.3d at 1105-10; Grisham, 594 F. 3d at 729-31.

905.    Plaintiff was discharged and terminated from employment with the Te-Moak Tribe as the Tribal Administrator, and suffered a complete loss of benefits, compensation and wages, including Social Security benefits.  The Plaintiff seeks an award of retroactive pay, front pay, and retirement benefits, adjusted for cost of living and inflation, with pre and post judgment interest to compensate  for the lost wages, benefits and compensation up to the age of 70, and also mental and emotional distress as a result of the discriminatory and retaliatory conduct.  See 42 U.S.C. §2000e-5(g); Selgas v. Am. Airlines, Inc., 104 F.3d 9, 12-13(1st Cir. 1997); see also, Dunlop v. Carriage Carpet Co., 548 F.2d 139, 147 (6th Cir. 1977)(*§215 prohibits black-listing a former employee who filed a complaint related to the Act*); e.g. 29 U.S.C. §201 et seq. ("Fair Labor Standards Act").

      **CLAIM SIX:**                **DEFAMATION, LIBEL AND SLANDER (U.S. Constitution - Privacy Right)**

906.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 835, *supra*, including any referenced attachment, citation and exhibit, and paragraphs 925

through 1016, *infra*, without waiving any claim or defense, as though more fully set forth here in Section E - CAUSE OF ACTION:  CLAIM SIX.

907.    On information or belief the publication and republication of public statements, writings and utterances by or from Joseph Holley, in his individual and official capacity, that the Plaintiff is a "felon," "ex-felon," "convicted felon," "criminal," or similar words and statements regarding the Plaintiff, were false, libelous and *defamatory per se*.

908.    On information or belief the publication and republication of public statements, writings and utterances by or from Joseph Holley, in his individual and official capacity, occurred when the Plaintiff was a private party, limited public official and public official.

909.    On information or belief Joseph Holley, in his individual and official capacity, published and republished false and defamatory statements, writing and utterances, that the Plaintiff was a convicted criminal and who engaged in criminal behavior, to expose the Plaintiff to public hatred, contempt, ridicule or obloquy to deprive the Plaintiff of public confidence or injure the Plaintiff in his occupation and reputation, and caused the Plaintiff to be exposed to public hatred, contempt, ridicule or obloquy, depriving the Plaintiff of public confidence and injured the Plaintiff in his occupation, profession and reputation.

910.    On information or belief Joseph Holley published and republished false and defamatory statements, writing and utterances regarding the Plaintiff with actual malice, based in part on the Plaintiff's race, color, ethnicity or nationality and to retaliate against the Plaintiff for reporting criminal and unethical conduct.  See Hogan, 762 F.3d at 1105-10; Grisham, 594 F. 3d at 729-31.

911.    On information or belief Defendant Joseph Holley acted as an employer and/or supervisor within the meaning to Title VII, through the Te-Moak Tribe as a recipient of state and federal funds, and Joseph Holley intentionally discriminated against the Plaintiff in part because of the Plaintiff's race, color, culture, ethnicity or national origin and created a hostile work environment with conduct so severe that it altered the terms and conditions of the Plaintiff's employment, i.e. termination as the Tribal Administrator and a falsely constructed termination as the Judge.  See 42 U.S.C. §§1981-83 and 1988; e.g. 42 U.S.C. §2000e et seq; e.g. Vance v. Ball State Univ., 570 U.S. 421, 427-40(2013); see also, Dunlop v. Carriage Carpet Co., 548 F.2d 139, 147 (6th Cir. 1977)(*§215 prohibits retaliation and black-listing a former employee who filed a complaint related to the Act*); e.g. 29 U.S.C. §201 et seq. ("Fair Labor Standards Act").

      **CLAIM SEVEN:**     **DEFAMATION, LIBEL AND SLANDER (U.S. Constitution - Privacy Right)**

912.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 835, *supra*, including any referenced attachment, citation and exhibit, and paragraphs 925 through 1016, *infra*, without waiving any claim or defense, as though more fully set forth here in Section E - CAUSE OF ACTION:  CLAIM SEVEN.

913.    On information or belief the publication and republication of public statements, writings and utterances by or from Angelea Mendez that the Plaintiff is a "felon," "ex-felon," "convicted felon," "criminal," or similar words and statements regarding the Plaintiff; that the Plaintiff failed a background investigation; that the Plaintiff is not a judge or affiliated with the Te-Moak Tribe; that the Plaintiff falsely claimed to be a federal prosecutor in Utah;

that the Plaintiff falsified his 'date of birth' on employment forms; that the Plaintiff falsely

claimed to be a licensed attorney in Utah, and that the Plaintiff was "fired," "removed"

"recalled" or "terminated" as a magistrate judge in North Carolina to obtain a criminal

indictment against the Plaintiff, were false and *defamatory per se*, and that Angelea Mendez

published and republished these statements when the Plaintiff was a private party, limited

public official and public official.  Angelea Mendez repeatedly published and republished

these false and defamatory statements regarding the Plaintiff, claiming that the Plaintiff

was a convicted criminal and the Plaintiff engaged in criminal behavior to expose and

exposed the Plaintiff to public hatred, contempt, ridicule or obloquy to deprive the Plaintiff

of public confidence or injure the Plaintiff in his occupation and were published with actual

malice, partly based on the Plaintiff's race, color, ethnicity or nationality.  See Hogan, 762

F.3d at 1105-10; Grisham, 594 F. 3d at 729-31.

> **CLAIM EIGHT:** **DEFAMATION, LIBEL AND SLANDER (U.S. Constitution - Privacy Right)**

914.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 835,

*supra*, including any referenced attachment, citation and exhibit, and paragraphs 925

through 1016, *infra*, without waiving any claim or defense, as though more fully set forth

here in Section E - CAUSE OF ACTION:  CLAIM EIGHT.

915.    On information or belief the publication and republication of public statements,

writings and utterances by Joseph Holley asserting that 1) the Plaintiff falsely claimed

during the employment interview for the Tribal Administrator position to have previously

been a federal prosecutor in Utah; 2) that the Plaintiff falsely claimed to be a licensed

attorney in Utah; 3) the Plaintiff failed a background investigation; 4) the Plaintiff is not a judge or affiliated with the Te-Moak Tribe; 5) the Plaintiff falsified his 'date of birth' on employment forms; and 6) that the Plaintiff was "fired," "removed" "recalled" or "terminated" as a magistrate judge in North Carolina to obtain a criminal indictment against the Plaintiff were false and *defamatory per se*.  Joseph Holley published and republished these statements when the Plaintiff was a private party, limited public official and public official.  Joseph Holley published and republished these false and defamatory statements repeatedly nationwide, without privilege, using streams of interstate commerce, regarding the Plaintiff, claiming that the Plaintiff was a convicted criminal and who engaged in criminal behavior, to expose and exposed the Plaintiff to public hatred, contempt, ridicule or obloquy to deprive the Plaintiff of public confidence or injure the Plaintiff in his occupation and Joseph Holley published, uttered and declared these false statements with actual malice, partly based on the Plaintiff's race, color, ethnicity or nationality.  See Hogan, 762 F.3d at 1105-10; Grisham, 594 F. 3d at 729-31; see also, Dunlop v. Carriage Carpet Co., 548 F.2d 139, 147 (6th Cir. 1977)(*holding that §215 prohibits retaliation and black-listing a former employee who filed a complaint related to the Act*); e.g. 29 U.S.C. §201 et seq. ("Fair Labor Standards Act").

**CLAIM NINE:        DEFAMATION, LIBEL AND SLANDER (U.S. Constitution - Privacy Right)**

916.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 835, *supra*, including any referenced attachment, citation and exhibit, and paragraphs 925

through 1016, *infra*, without waiving any claim or defense, as though more fully set forth here in Section E - CAUSE OF ACTION:  CLAIM NINE.

917.    On information or belief the publication and republication of public statements, writings and utterances by Joseph McDade that the Plaintiff is a "felon," "ex-felon," "convicted felon," "criminal," or similar words and statements regarding the Plaintiff, and that the Plaintiff was "fired" "removed" "recalled" or "terminated" as a magistrate judge in North Carolina,  and that the Plaintiff was not and is not a lawful judge, to obtain a criminal indictment against the Plaintiff, were false and *defamatory per se*.

918.    Defendant Joseph McDade published and republished these statements when the Plaintiff was a private party, limited public official and public official.  Joseph McDade published and republished these false and defamatory statements regarding the Plaintiff claiming that the Plaintiff was a convicted criminal and who engaged in criminal behavior, to expose and exposed the Plaintiff to public hatred, contempt, ridicule or obloquy to deprive the Plaintiff of public confidence or injure the Plaintiff in his occupation and were published with actual malice, partly based on the Plaintiff's race, color, ethnicity or nationality.  See Hogan, 762 F.3d at 1105-10; Grisham, 594 F. 3d at 729-31.

**CLAIM TEN:**        **DEFAMATION, LIBEL AND SLANDER (U.S. Constitution - Privacy Right)**

919.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 835, *supra*, including any referenced attachment, citation and exhibit, and paragraphs 925 through 1016, *infra*, without waiving any claim or defense, as though more fully set forth here in Section E - CAUSE OF ACTION:  CLAIM TEN.

920.    On information or belief the publication and republication of public statements, writings and utterances by or as approved by Davis Gonzalez that the Plaintiff is a "felon," "ex-felon," "convicted felon," "criminal," or similar words and statements regarding the Plaintiff; that the Plaintiff falsely claimed to be a federal prosecutor in Utah; that the Plaintiff falsely claimed to be a licensed attorney in Utah, and that the Plaintiff was "fired," "removed" "recalled" or "terminated" as a magistrate judge in North Carolina to obtain a criminal indictment against the Plaintiff were false and *defamatory per se*.

921.    Defendant Davis Gonzalez published and republished these statements when the Plaintiff was a private party, limited public official and public official.  Davis Gonzalez published and republished these false and defamatory statements regarding the Plaintiff repeatedly, nationwide, using streams of interstate commerce, claiming that the Plaintiff was a convicted criminal and who engaged in criminal behavior, to expose and exposed the Plaintiff to public hatred, contempt, ridicule or obloquy, including death threats, to deprive the Plaintiff of public confidence or injure the Plaintiff in his occupation and were published with actual malice, partly based on the Plaintiff's race, color, ethnicity or nationality.  See Hogan, 762 F.3d at 1105-10; Grisham, 594 F. 3d at 729-31.

**CLAIM ELEVEN:     DEFAMATION, LIBEL AND SLANDER (U.S. Constitution - Privacy Right)**

922.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 835, *supra*, including any referenced attachment, citation and exhibit, and paragraphs 925 through 1016, *infra*, without waiving any claim or defense, as though more fully set forth here in Section E - CAUSE OF ACTION:  CLAIM ELEVEN.

923.    On information or belief the publication and republication of public statements, writings and utterances by or approved by David Dale Carrera asserting 1) that the Plaintiff is a "felon," "ex-felon," "convicted felon," "criminal," or similar words and statements regarding the Plaintiff; 2) the Plaintiff falsely claimed to be a federal prosecutor in Utah; 3) the Plaintiff failed a background investigation; 4) the Plaintiff is not a judge or affiliated with the Te-Moak Tribe; 5) the Plaintiff falsely claimed to be a licensed attorney in Utah; 6) the Plaintiff falsified his 'date of birth' on employment forms; and that the Plaintiff was "fired," "removed" "recalled" or "terminated" as a magistrate judge in North Carolina to obtain a criminal indictment against the Plaintiff were false and *defamatory per se.*

924.    Defendant David Dale Carrera published and republished these statements when the Plaintiff was a private party, limited public official and public official.  David Dale Carrera published and republished these false and defamatory statements regarding the Plaintiff repeatedly, nationwide, using streams of interstate commerce, claiming that the Plaintiff was a convicted criminal and who engaged in criminal behavior, to expose and exposed the Plaintiff to public hatred, contempt, ridicule or obloquy to deprive the Plaintiff of public confidence or injure the Plaintiff in his occupation and were published with actual malice, partly based on the Plaintiff's race, color, ethnicity or nationality.  See Hogan v. Winder, et al., 762 F.3d 1096, 1105-10 (10th Cir. 2014); Petersen v. Grisham, 594 F. 3d 723, 729-31(10th Cir. 2010).

**CLAIM TWELVE:**     42 U.S.C. §1985 CIVIL CONSPIRACY - OBSTRUCTION OF CRIMINAL INVESTIGATION (18 U.S.C. §1510); WITNESS, VICTIM OR INFORMANT TAMPERING (18 U.S.C. §1512); RETALIATION AGAINST WITNESS, VICTIM OR INFORMANT (18 U.S.C. §1513 AND 5 U.S.C. §2302(2)), (*WHISTLEBLOWER PROTECTION*) AND 41 U.S.C. §4712 PROHIBITING REPRISAL AGAINST EMPLOYEE OF FEDERAL CONTRACT GRANTEE.

925.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 905, *supra*, including any referenced attachment, citation and exhibit, and paragraphs 933 through 1016, *infra*, without waiving any claim or defense, as though more fully set forth here in Section E - CAUSE OF ACTION:  CLAIM TWELVE.

926.    On information or belief Tanya Reynolds; Joseph Holley; Jeffery Scott Sypolt; Dentons; George Skibine; Davis Gonzalez; Alice Tybo; Chadwick Smith; David Carrera; Duane Garcia, Sr; Thalia Marin; Andrea Woods; Larry Yeager; Paula Garcia; Adela Morrison; Suzanna Sandoval, (*and other unnamed individuals and entities, known and unknown*), conspired and entered an agreement, plan or scheme with Paul Conable; Darian Stanford; Kevin Clock; Elliott Parris; Zionsbank; Kristen Hevener; Marla McDade; Steve Sisolak; Aaron Ford; Nevada State Bank; Steve Olson; Bryan  Bowker; Joseph McDade; Brent Waite; Nicole Lewis; Robin Evans; Leslie Grove; V. Heather Sibbison and J. Ross Docksey to fund and pay the costs and fees, using federal program funds and income, proceeds or cash from the NCE, directly and indirectly, to jointly and individually publish and republish documents, records and information, (*partly based on the Plaintiff's race, color, ethnicity or nationality*), containing false statements regarding the Plaintiff and obtain or secure Plaintiff's termination, resignation, removal or constructive termination that included the

927.    Each Defendant committed at least one overt act in furtherance of this conspiracy. These acts in furtherance of the conspiracy include threatening, coercing and intimidating or attempting to coerce or intimidate the Plaintiff through a massive campaign publishing false statements about the Plaintiff nationwide; the use of NV law enforcement agents; BIA law enforcement officers and BIA CFR court resources to support the conspiracy; use of economic resources held, controlled or retained by Zionsbank; and the use or assignment of legal resources of Dentons US LLP; TT and SCS.

928.    A purpose of the conspiracy was to continue the diversion and transfer of NCE income; conceal fraud of federal funding; maintain the status quo and to discredit or decrease the reliability of the Plaintiff's reports and statements given to Congressman Amodei; DOJ SMART Office; USA Trutanich; IRS; OIG; BIA and FBI law enforcement agents that disclosed criminal conduct, and an extensive criminal network, system or systems of fraud, theft, bribery and extortion the Plaintiff witnessed or reported that involved the abuse of authority, gross mismanagement, fraud or waste of federal funds, grants and contracts involving the co-conspirators. See 18 U.S.C. §1163.

929.    Plaintiff was threatened, deprived of property interests and rights, injured and publicly humiliated from the conduct of the Parties to the conspiracy, that included Plaintiff's termination as the Te-Moak Tribal Administrator, personal injury to property interests, future employment and the denial of benefits, wages, expense reimbursement, costs and fees as the Te-Moak Supreme Court Judge.  See 42 U.S.C. §1985; 18 U.S.C. §§1510, 1512 and 1513; 5 U.S.C. §2302(2) and 41 U.S.C. §4712; e.g. Grisham, 594 F. 3d at 729-31; see also, Dunlop v. Carriage Carpet Co., 548 F.2d 139, 147 (6th Cir. 1977)(*holding that §215*

*prohibits retaliation and black-listing a former employee who filed a complaint related to the Act); e.g. 29 U.S.C. §201 et seq.* ("Fair Labor Standards Act").

930.    On information or belief pursuant to an agreement, plan or scheme the Defendants Tanya Reynolds; Joseph Holley; Jeffery Scott Sypolt; Dentons; George Skibine; Davis Gonzalez; Alice Tybo; Chadwick Smith; David Carrera; Duane Garcia, Sr; Thalia Marin; Andrea Woods; Larry Yeager; Paula Garcia; Adela Morrison; Suzanna Sandoval, (*and other unnamed individuals and entities, known and unknown*), jointly and individually created and employed individuals in the NCE judicial sub-enterprise to further obstruct justice and continue as a criminal organization whereby Sherry Harris; Carrie Frias; Tammy Carrera; Chadwick Smith; Angelea Mendez and Wendall Hayes were hired and paid with NCE funds and cash to operate the judicial sub-enterprise in furtherance of the **A1-A8** agreements, and to falsify government documents, records and reports to qualify the court personnel contrary to tribal law, after failing to bribe the Plaintiff with funds from the NCE. Id.

931.    Some Defendants named here may not have agreed to harm the Plaintiff when they agreed to advance the overall object of the conspiracy, the purpose of the acts they committed or engaged in furtherance of the conspiracy made any harm or injury to the Plaintiff a reasonably foreseeable consequence of each Defendant's action or conduct.

932.    The unlawful actions by each Defendant, and the Defendants jointly, directly and proximately caused and continue to cause harm or injuries to the Plaintiff's business, trade and profession, and Plaintiff's property and property interests, by the Defendants' conspiracy and conduct in furtherance of the conspiracy.

**CLAIM THIRTEEN:  42 U.S.C. §§1981; 1982 AND 1983, BY WAY AND THROUGH 42 U.S.C. §1988, DEPRIVATION OF THE EQUAL RIGHT TO MAKE AND ENFORCE CONTRACTS, TO SUE, BE A PARTY, GIVE EVIDENCE AND ENJOY ALL BENEFITS, PRIVILEGES, TERMS AND CONDITIONS OF A CONTRACTUAL RELATIONSHIP, WITHOUT IMPAIRMENT UNDER COLOR OF STATE LAW OR NON-GOVERNMENTAL DISCRIMINATION; DEPRIVATION OF THE EQUAL RIGHT TO INHERIT, PURCHASE, LEASE, SELL, HOLD AND CONVEY REAL AND PERSONAL PROPERTY; AND DEPRIVATION OF THE RIGHT TO SPEECH, PRIVACY, PUBLIC EMPLOYMENT, ASSOCIATION, DUE PROCESS AND TRAVEL, OR ANY CONSTITUIONAL PRIVILEGE OR IMMUNITY, UNDER COLOR OF ANY STATE LAW, CUSTOM OR USAGE.**

933.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 932, *supra*, including any referenced attachment, citation and exhibit, and paragraphs 942 through 1016, *infra*, without waiving any claim or defense, as though more fully set forth here in Section E - CAUSE OF ACTION:  CLAIM THIRTEEN.

934.    On information or belief , Governor Steve Sisolak and Attorney General Aaron Ford, in their individual and official capacities, (*pursuant to a common purpose of the A1, A2, A4 and A5 agreement, plan or scheme under color of state law, custom or usage*), permitted, allowed, ratified and approved the nationwide, continuous dissemination and publication of Kristen Hevener's false affidavit from within the State of Nevada by Marla McDade, Joseph McDade, Kristen Hevener, Jeffery Scott Sypolt, Joseph Holley and Tanya Reynolds containing private, privileged and highly confidential information regarding the Plaintiff, a felony criminal act under N.R.S. §205.463 that bars any release of this private, nonpublic information.

935.    On information or belief Sisolak and Ford agreed to violate criminal and civil law, agreed to not prosecute Marla McDade, J. Scott Sypolt, Joseph Holley, Tanya Reynolds,

Joseph McDade and Kristen Hevener to further retaliate against the Plaintiff, who for this time was considered a witness, victim or informant, and permit Sisolak and Ford to escape prosecution for bribery, extortion and public corruption related to the NCE, also a felony under N.R.S. §205.463, while promoting Marla McDade and Kristen Hevener in state government employment positions and increasing their wages, salaries and benefits.

936.    On or information or belief Defendants herein denied, discriminated or impaired the Plaintiff's right to enjoy all the benefits, privileges and conditions of the contractual relationship with the Te-Moak Tribe, (*within a Territory of the United States referred to as Indian Country*), depriving the Plaintiff the right to own, hold, purchase or lease personal and real property, and the Plaintiff's right to privacy, travel and public employment and benefits.  Defendants Sisolak and Ford approved and sanctioned the commission of felonies through a policy of non-prosecution on condition they receive income from the NCE transferred to their businesses, family members and election campaign entities.  See 42 U.S.C. §§1981-83 and 1988; e.g. Grisham, 594 F. 3d at 729-31.

937.    On information or belief, Defendants, Defendants Steve Sisolak and Aaron Ford Tanya Reynolds; Joseph Holley; Jeffery Scott Sypolt; Davis Gonzalez; Alice Tybo; Chadwick Smith; David Carrera; Duane Garcia, Sr; Thalia Marin; Andrea Woods; Larry Yeager; Paula Garcia; Adela Morrison; Suzanna Sandoval; Paul Conable; Darian Stanford; Kevin Clock; Elliott Parris; Steve Olson; Bryan  Bowker; Joseph McDade; Brent Waite; Nicole Lewis; Robin Evans-RAE; Leslie Grove-IBSC;  George Skibine; V. Heather Sibbison and J. Ross Docksey; Dentons US LLP and Zionsbank, in their individual and official capacities, pursuant to a common purpose in the **A1**, **A2**, **A4** and **A5** agreement, plan or scheme under

color of state law, custom or usage, agreed to intentionally discriminate against the Plaintiff

in his employment, (*managing programs receiving state and federal funds*), by causing the

termination of the Plaintiff on the basis of race, culture, nationality or ethnicity, and then

retaliating against the Plaintiff's right to speech, as a witness, victim or informant by

denying the Plaintiff all due process and equal rights for all times after March 18, 2021 up

to and including the denial of unemployment benefits under color of state law, custom or

usage to preserve and protect the flow of unreported cash or income directly and indirectly

from the NCE to Governor Sisolak, ECDCC, Senator Masto and Attorney General Aaron Ford

by way and through Zionsbank, Gonzalez, SALAL, Sypolt, TT and SCE, and family members,

business associates, businesses and election campaigns.  See 42 U.S.C. §§1981-83 and 1988;

e.g. Grisham, 594 F. 3d at 729-31.

938.    On information or belief, and pursuant to a common purpose in an **A1, A2, A4** and

**A5** agreement, plan or scheme under color of state law or authority, custom or usage,

Governor Steve Sisolak and Attorney General Aaron Ford, (*in their individual and official*

*capacity*), ratified, permitted, allowed or approved the continuous, nationwide

dissemination and publication of  documents, information and records containing private,

privileged, protected and highly confidential information regarding the Plaintiff by Jeffery

Scott Sypolt; Marla McDade; Dentons US LLP; SCS; EBCE; Darian Stanford; Paul Conable;

Kevin Clock; Davis Gonzalez; George Skibine; Chadwick Smith; Joseph Holley; Joseph

McDade; Thalia Marin; Kristen Hevener; Andrea Woods; Adela Morrison; Alice Tybo; Duane

Garcia, Sr; David Carrera; Tanya Reynolds; Tammy Carrera; Larry Yeager; Suzanna

Sandoval; Angela Mendez, and other unnamed and unknown individuals.

939.    These Defendants each knew or should have known that the private, privileged and highly confidential information regarding the Plaintiff was protected against public disclosure by federal, state and tribal civil and criminal law, Te-Moak Records and Information Retention Policy, incorporating the Privacy Act, (5 U.S.C. §552 et seq.); 42 U.S.C. §13925(b)(2); 2 C.F.R. §200.207 and §200.338, *inter alia*, and supplementing the Tribe's Confidential Information Policy & Procedures (enacted by Resolution 03-TM-13), specifically the Defendant's use of the Plaintiff's birth date, social security number, workplace information and other identifiable information to harm the Plaintiff, to get access to the Plaintiffs personal information or nonpublic records or carry out any other unlawful purpose, including, but not limited to, depriving the Plaintiff the right to sue, give evidence, travel, own/lease property and retain public employment.

940.    Plaintiff's filing of complaints and reporting criminal conduct involving Defendants' fraudulent expenditures of federal funding, that also included public corruption, was a substantial and motivating factor in each Defendant's decision to retaliate and use protected information and disparage the Plaintiff's reputation and character, pre and post-employment, and these individual Defendants acted, jointly and individually, under color of authority of state law pursuant to a common purpose in a **A1, A2, A4** and **A5** agreement, plan or scheme, and as directed, ratified or approved by Governor Sisolak and Attorney General Aaron Ford, to take the adverse employment action taken against the Plaintiff that would deter a person of ordinary firmness from continuing to engage in protected speech. See, Dunlop, 548 F.2d 139, 147 (6th Cir. 1977)(*prohibits black-listing a former employee who filed a complaint related to the Act*); e.g. 29 U.S.C. §201 et seq. and 18 U.S.C. §1163.

941.    In their official and individual capacities, each Defendant's decision and conduct violated the Plaintiff's clearly established constitutional rights and were not objectively reasonable in light of the circumstances.

### CLAIM FOURTEEN:  TORTIOUS INTERFERENCE WITH A BUSINESS OR CONTRACTUAL RELATIONSHIP UNDER COMMON LAW

942.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 932, *supra*, including any referenced attachment, citation and exhibit, and paragraphs 944 through 1016, *infra*, without waiving any claim or defense, as though more fully set forth here in Section E - CAUSE OF ACTION:  CLAIM FOURTEEN.

943.    On information or belief  Defendants Brent Waite; Nicole Lewis; Zionsbank; Sypolt; Skibine; Wendall Hayes; Chadwick Smith; Marla McDade; Dentons; Bryan Bowker; Steve McDade; Joseph McDade; Robin Evans; Davis Gonzalez; Adela Morrison; EBCE; Larry Yeager; Joseph Holley; Thalia Marin; Alice Tybo; Duane Garcia, Sr; David Carrera; Tammy Carrera; Tanya Reynolds; Paul Conable; Darian Stanford; Kevin Clock; Elliott Parris; Steve Olson, individually and jointly, pursuant to a common purpose in a **A1, A2, A4** and **A5** agreement, plan or scheme, engaged and performed the acts and omissions described herein, and intentionally and with malice interfered with the Plaintiff's contractual and business relationships causing injury, harm or damage to the Plaintiff's business and contractual relationships, reduced the value of the Plaintiff's trade, business, profession and reputation.  See, Dunlop, 548 F.2d at 147 (6th Cir. 1977)(*holding that §215 prohibits black-listing a former employee who filed a complaint related to the Act*); e.g. 29 U.S.C. §201 et seq. ("Fair Labor Standards Act").

**CLAIM FIFTEEN:     CIVIL CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**

944.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 932, *supra*, including any referenced attachment, citation and exhibit, and paragraphs 949 through 1016, *infra*, without waiving any claim or defense, as though more fully set forth here in Section E - CAUSE OF ACTION:  CLAIM FIFTEEN.

945.    On information or belief Defendants Steve Sisolak; Aaron Ford; Marla McDade; Joseph McDade; Jeffery Scott Sypolt; Joseph Holley; Tanya Reynolds; Davis Gonzalez; Alice Tybo; Chadwick Smith; David Carrera; Duane Garcia, Sr; Thalia Marin; Andrea Woods; Larry Yeager; Paula Garcia; Adela Morrison; Suzanna Sandoval; Paul Conable; Darian Stanford; Kevin Clock; Elliott Parris; Steve Olson; Bryan  Bowker; Brent Waite; Nicole Lewis; Robin Evans-RAE; Leslie Grove-IBSC; George Skibine; V. Heather Sibbison and J. Ross Docksey; Dentons and Zionsbank, acting individually and jointly in their individual and official capacities, pursuant to a common purpose in any **A1-A8** agreement, plan or scheme, agreed to use inducement, force, threat or intimidation and deter the Plaintiff from exercising or performing required tasks related to the due course of justice and the official duties as the Te-Moak Tribal Administrator in executing federal contract obligations, and as the Te-Moak Supreme Court Judge.

946.    On information or belief these Defendants used inducement, force, threat or intimidation, to prevent or deter the Plaintiff from testifying freely, fully and truthfully in a federal court after the Plaintiff provided evidence and statements to federal law enforcement officers and agents regarding alleged criminal conduct involving Defendants that related to the NCE and at the Te-Moak Tribe where Defendants conspired and used or

implemented a widespread, joint campaign to publicly discredit the reliability of the

Plaintiff's testimony and statements using force, intimidation, inducement and threats,

*supra*. See 42 U.S.C. §1985;  Haddle v. Garrison, 525 U.S. 121, 125 (1998); Grisham, 594 F.

3d at 729-31; ref. 18 U.S.C. §1163.

947.    On information or belief Defendants Steve Sisolak; Aaron Ford; Marla McDade;

Joseph McDade; Jeffery Scott Sypolt; Joseph Holley; Tanya Reynolds; Davis Gonzalez; Alice

Tybo; Chadwick Smith; Wendall Hayes; David Carrera; Duane Garcia, Sr; Thalia Marin;

Andrea Woods; Larry Yeager; Paula Garcia; Adela Morrison; Suzanna Sandoval; Paul

Conable; Darian Stanford; Kevin Clock; Elliott Parris; Steve Olson; Bryan  Bowker; Joseph

McDade; Brent Waite; Nicole Lewis; Robin Evans-RAE; Leslie Grove-IBSC; George Skibine;

V. Heather Sibbison and J. Ross Docksey; Dentons US LLP and Zionsbank, acting

individually and jointly in their individual and official capacities, pursuant to a common

purpose in any **A1-A8** agreement, plan or scheme conspired or agreed to deprive, or to act

in furtherance of the object to deprive, by inducement, force, threat or intimidation, the

Plaintiff, either directly or indirectly, the equal protection of the laws or equal privileges

and immunities under the laws; or for the purpose of preventing or hindering the

authorities within the Te-Moak Territory from giving or securing to all persons, including

the Plaintiff, the equal protection of the laws, and two or more Defendants engaged and

caused acts in furtherance of the object of the conspiracy or agreements that injured the

Plaintiff, or Plaintiff's property interest, and deprived the Plaintiff his constitutional right or

privilege to public employment, due process, travel, freedom without restraint, speech,

public benefits and privacy as a citizen of the United States.  Id; Dunlop, 548 F.2d at 147 (6th

Cir. 1977)(*holding that §215 prohibits black-listing a former employee who filed a complaint related to the Act*); e.g. 29 U.S.C. §201 et seq.

948.    On information or belief and pursuant to a common purpose in any **A1-A8** agreement, plan or scheme or in furtherance of the object of the conspiracy related to any agreement, plan or scheme, two or more Defendants injured or harmed the Plaintiff.  Id.

### COUNT SIXTEEN:    ANTI-TRUST VIOLATIONS - SHERMAN ACT (15 U.S.C. §§1-7), CLAYTON ACT (15 U.S.C. §§12-26; 29 U.S.C. §§52-53) AND UNFAIR COMPETITION 15 U.S.C. §1125

949.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 942, *supra*, including any referenced attachment, citation and exhibit, and paragraphs 955 through 1016, *infra*, without waiving any claim or defense, as though more fully set forth here in Section E - CAUSE OF ACTION:  CLAIM SIXTEEN.

950.    On information or belief  Defendants TT and SCS, by way and through their agents, employees and attorney Defendants Conable, Olson and Stanford, as a condition of entering and continuing a business relationship and payments of bribes, improper gifts and gratuities pursuant to a common purpose of any **A1-A4** or **A5** agreement, plan or scheme, unlawfully required the body politic of the Tribe and its Bands to: 1) compel EBCE to accept SCS and NCE ATM service fees, payment transfers and remuneration, as well as business equipment, software and maintenance costs without submission for bids in the open market, as a necessary part of the ownership agreement; 2) enter into non-disclosure agreements, ("NDA"), that tortiously interfered with the legal rights and duties of the Plaintiff in his public employment, business and contracts, (*Plaintiff had a legal right to receive and record all official documents of the Bands and Tribe, including contracts,*

*agreements, financial records*); and 3) unlawfully interfere with the Plaintiff's employment, business, trade or profession to the point of termination as a means to accomplish, maintain or continue other unlawful restraints on trade by conducting the business of multiple entities to unreasonably fix prices, receive compensation to fix prices, and suppress competition shown by the terms in **A1-A4**, **A6** and **A8**, as detailed or expressed in the NCE's Taxation Policy; Cash Flow and Safe Policy, (*plus the exclusive use of SALAL for deposits, and Dutchie and Greenbits for advertising and marketing*) and in the written advertisements related to the NCE, that were of a manner or type that damaged the Plaintiff's professional and business reputation, hindered the Plaintiff's ability to conduct business and interfered with the Plaintiff employment with the Te-Moak Tribe resulting in unlawful termination, (**A5**), involving the Defendants here, (*with others acting on their behalf*), who jointly and individually served as a director or officer in two or more business entities engaged in simultaneous service, in whole or in part, as competitors in the market in violation of 15 U.S.C. §§1, 12-14, 19 and 1125.

951.    On information or belief Defendants Conable, Stanford and Olson served as *de facto* directors or officers on SCS, CSI, SCI, EBCE, and other business entities, while conducting the business of TT with the apparent authority as a director or officer of TT, on behalf of the NCE, as competitors in the market in violation of 15 U.S.C. §§1, 12-14, 19 and 1125.

952.    On information or belief Brent Waite, Steve Sisolak, Paul Conable, Steve Olson, Darian Stanford significantly controlled or managed the collective NCE operations, *viz-a-viz* two or more competing businesses or business interests that merged to create an unlawful trust, investment or holding company where, overtly or covertly, these Defendants

purchased, transferred or invested in assets, stocks, real property, chattels or intangibles with the revenue, cash, income or proceeds from the NCE in violation of 15 U.S.C. §§7 and 19, shown by the continued use of a Cascade Strategic Investments, and the use of CSI, SCS, SCI and TT listing, using or identifying the same physical address in Portland, Oregon, and as shown by the terms of the **A1-A8** agreement, plans or schemes and physical involvement with the EBCE financials.

953.     On information or belief, pursuant to the terms of any **A1-A4** agreement, plan or scheme, Defendants Sisolak; Ford; Davis Gonzalez; Thalia Marin; Juan Arevalo; Larry Yeager; Joseph Delarosa; Darian Stanford; Paul Conable; Steve Olson; Kevin Clock; Elliot Parris; Robin Evans-RAE; Leslie Grove-IBSC; SCS; EBCE and TT entered into contracts and combinations of contracts to conspire in the restraint of trade by monopolizing the unlawful sale of a controlled substance, marijuana, at the NCE retail store Newe Cannabis, whereby the Parties to the NCE purchased, sold and delivered goods, products and services in a manner that suppressed or eliminated competition in the market solely for the advantage of the Parties to the NCE, such as price fixing, rigging bids on contracts or failing to conduct bids for contracts to preserve the *status quo*, bribery, market allocation schemes, false advertising, false designation (15 U.S.C. §1125 (*misleading fact related to origin, term, word, symbol or device as a lawful business*)); market manipulation, false statements in marketing, extortion and tax fraud  to continue the wholesale and retail purchases, distribution and sale of a controlled substance, marijuana; transportation of money, funds and a controlled substance, marijuana, across multiple jurisdictions, along, on and across highways, bridges and interstates; making and authorizing expenditures and

investments of the proceeds, revenue and income resulting or derived from or related to the sale and distribution of a controlled substance, marijuana; granting and denying legislation, authorizations and rendering adverse employment decisions; establishing rules, goals and policy while providing legal decisions and advice, including the planning and funding of the unlawful, joint campaign to destroy the Plaintiff's character and professional reputation with the intent and purpose to violate or attempt to violate the Plaintiff's civil liberties and rights:  Speech, Employment, Security and Privacy.

954.    On information or belief, pursuant to the terms of any **A1-A4** agreement, plan or scheme, Defendants Sisolak; Ford; Davis Gonzalez; Thalia Marin; Juan Arevalo; Larry Yeager; Joseph Delarosa; Sypolt; Chadwick Smith; Darian Stanford; Paul Conable; Steve Olson; Kevin Clock; Elliot Parris; Robin Evans; Leslie Grove-IBSC; SCS and TT, jointly and individually: 1) created, established, managed and operated the NCE by way and through unlawful contracts or agreements; fraudulent or non-existent business entities, (EBCE, RAE, CSI and EBA), holding out to the world that the same entities were lawful and actually in existence, when unlawful, fictitious or nonexistent, imitating the NCE and retail store Newe Cannabis to falsify financial records and avoid tax and criminal liability; 2) published and produced false online advertising claims, statements and ads regarding the legality of Newe Cannabis, its products, existence and marketability; 3) impersonated the ownership of EBCE; RAE; CSI; EBA; Newe Cannabis and SCS, and falsely claiming to be the attorneys providing legal representation for Elko Band Council and Te-Moak Council; 4) used threats, fraud, bribery and coercion to maintain, control and manage the NCE, including its sub-enterprises and Cascade Strategic Investments; EBC/EBA; RAE; SCS and other unnamed

and unknown shell business entities; and/or 5) falsified information to the public, businesses and government officials that the Plaintiff is a felon, a convicted criminal and untrustworthy to preserve and protect the continuation of the NCE and destroy or injure the Plaintiff's marketability in his trade, profession or business, where the advertising related to the NCE retail store Newe Cannabis also violates <u>section 43(a) of the Lantham Act</u>, <u>15 U.S.C. §1125</u>(*false or misleading statement of fact [legal business]; used in commercial advertising [Newe-Dutchi Packaging, billboards and website];  that deceives or likely deceives in a material way [lawful business]; in interstate commerce [website and packaging allows ordering online with  motor vehicle drive-up delivery]; that the Plaintiff believes caused or likely caused harm to the Plaintiff's business interest*).

**CLAIM SEVENTEEN:        NEGLIGENT ACTION OR FAILURE TO PREVENT DEPRIVATION OF CONSTITUTIONAL RIGHTS (42 U.S.C. §1986)**

955.   The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 954, *supra*, including any referenced attachment, citation and exhibit, and paragraphs 957 through 1016, *infra*, without waiving any claim or defense, as though more fully set forth here in Section E - CAUSE OF ACTION:  CLAIM SEVENTEEN.

956.   On information or belief Defendants Sisolak; Ford; Davis Gonzalez; Thalia Marin; Juan Arevalo; Larry Yeager; Joseph Delarosa; Darian Stanford; Paul Conable; Steve Olson; Wendall Hayes; Kevin Clock; Elliot Parris; Joseph McDade; Bryan Bowker; Joseph Holley; David Carrera; Chadwick Smith; Alice Tybo; Duane Garcia, Sr; Adela Morrison; Andrea Woods; Scott Sypolt; Tanya Reynolds; Angelea Mendez; Robin Evans-RAE; Leslie Grove-IBSC; SCS; Dentons; TT knew or should have known that the wrongs described in this

Complaint, related to 18 U.S.C. §1163 and 42 U.S.C. §1985, were about to be committed and had the power and legal duty to prevent or aid in preventing the commission of the wrongs associated with the deprivation of the Plaintiff's constitutional rights that accrued on or about July 21, 2021, and each Defendant refused, neglected or failed to prevent such wrongful acts that reasonable diligence would have prevented, causing harm to the Plaintiff as a result of the intentional, negligent failure of each Defendant to aid or prevent the deprivation of the Plaintiff's constitutional rights, as described *supra*.

**CLAIM EIGHTEEN:          INVASION OF PRIVACY AND VIOLATIONS OF THE PRIVACY ACT (5 U.S.C. §552A(G)(1)(D)) - FAILURE TO COMPLY**

957.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 942, *supra*, including any referenced attachment, citation and exhibit, and paragraphs 965 through 1016, *infra*, without waiving any claim or defense, as though more fully set forth here in Section E - CAUSE OF ACTION: CLAIM EIGHTEEN.

958.    On information or belief Defendants Scott Sypolt; Dentons US LLP; George Skibine; Joseph Holley; Alice Tybo; Davis Gonzalez; David Carrera; Duane Garcia, Sr; Andrea Woods; Angelea Mendez; Tanya Reynolds; Larry Yeager; Thalia Marin; Joseph McDade; Chadwick Smith; and Suzanna Sandoval, and other unknown individuals, created, maintained, released or disseminated confidential records regarding the Plaintiff, or authorized, ratified or approved the release or dissemination of confidential records regarding the Plaintiff in retaliation for Plaintiff's exercise of his 1st Amendment rights, and Defendants obtained, released and disseminated personal, confidential information regarding the Plaintiff, including his birth date, credit history, wage and personnel information and social security

number in retaliation against the Plaintiff as a witness, victim or informant against the

Defendants in exercise of the Plaintiff's 1st Amendment right to free speech and to further

deprive the Plaintiff's <u>Article 1, sec. 10, cl. 5</u> and <u>Article 4, sec. 2, cl. 1</u> rights, privileges and

immunities, the Plaintiff's right to redress grievances, due process rights and <u>Amend. 14</u>

privileges and immunities.

959.    On information or belief Te-Moak <u>Resolution 20-TM-132</u> adopted the <u>Te-Moak</u>

<u>Records And Information Retention Policy</u> that incorporated the <u>Privacy Act</u>, (<u>5 U.S.C. §552</u>

<u>Et Seq.</u>); <u>42 U.S.C. §13925(B)(2)</u>; <u>2 C.F.R. §200.207 And §200.338</u>, *inter alia*, and

supplemented the Tribe's <u>Confidential Information Policy & Procedures</u> (Enacted By

<u>Resolution 03-TM-13</u>) which criminalized the unauthorized releases of "[p]ersonnel

information . . . except by written authorization from the individual concerned."

960.    On information or belief during the period of time that Dentons entered into an

agreement to provide professional legal services for the Te-Moak Tribe and the Plaintiff

was employed by Dentons' client as the Te-Moak Tribal Administrator, Dentons claimed its

attorneys will provide "privacy and confidentiality of personal data . . .[w]e will handle

personal data you send us about you, your employees, agents, contractors and other

individuals in accordance with data protection and privacy standards equivalent to or

higher than those required by law." <u>See</u> 5 U.S.C. §552 et seq.; *e.g.* <u>42 U.S.C. §13925(B)(2)</u>; <u>2</u>

<u>C.F.R. §200.207</u> and <u>§200.338</u>; <u>also</u> <u>Te-Moak</u> <u>Resolution 20-TM-132</u>; <u>Resolution 03-TM-13</u>.

961.    Defendants Sypolt; Skibine; Sibbison; Docksey and Chadwick Smith were employed

by Dentons and who did unlawfully possess, obtain and release or disseminate the private,

confidential records and information regarding the Plaintiff during the period Dentons

represented the Te-Moak Tribe and these Defendants failed comply with the legal
standards, to handle or ensure the privacy laws were met or exceeded under the law. Id.

962.     Dentons, its attorneys and partners, (Sypolt; Skibine; Sibbison, Hayes and Smith),
failed to comply with the applicable legal standards and requirements, and Dentons failed
to adequately supervise and train its employees, partners and attorneys, as it related to the
privacy and confidentiality of the client's employee's records and information as required
by the law and Dentons' Terms, and these failures or negligent acts resulted in the
unauthorized, unlawful release and continued dissemination of the Plaintiff's private,
confidential records and information, causing perpetual harm to the Plaintiff and the
Plaintiff's business interests and property rights.  See 5 U.S.C. §552A(G)(1)(D).

963.     Defendants Joseph Holley; Alice Tybo; Davis Gonzalez; David Carrera; Duane Garcia,
Sr; Andrea Woods; Angelea Mendez; Tanya Reynolds; Larry Yeager; Thalia Marin; Joseph
McDade; Chadwick Smith; and Suzanna Sandoval failed to comply with the legal standards
and requirements of the Tribe as it related to the privacy and confidentiality of the
Plaintiff's records and information as required by the law, and Defendants, jointly and
individually, unlawfully released and disseminated the Plaintiff's private, confidential
records and information without written authorization, causing substantial harm to the
Plaintiff and the Plaintiff's business interests and property rights.  See 5 U.S.C. §552 et seq.;
e.g. 42 U.S.C. §13925(B)(2); 2 C.F.R. §200.207 and §200.338; also Te-Moak Resolution 20-
TM-132 and Resolution 03-TM-13.

964.     Defendants Steve Sisolak, Marla McDade, Aaron Ford, Joseph McDade and Kristen
Hevener failed to comply with the legal standards and requirements related to the privacy

and confidentiality of the Plaintiff's records and information as required by the law, a

felony criminal act under N.R.S. §205.463, and Defendants, jointly and individually,

unlawfully released and disseminated or ratified, approved or caused the unlawful release

and dissemination of the Plaintiff's private, confidential records and information without

written authorization, causing perpetual, substantial harm to the Plaintiff and the Plaintiff's

business and property interests.  See 5 U.S.C. §552 et seq.; e.g. 42 U.S.C. §13925(B)(2); 2

C.F.R. §200.207 and §200.338; also Te-Moak Resolution 20-TM-132; Resolution 03-TM-13.

**CLAIM NINETEEN: 42 U.S.C. §1983 MALICIOUS PROSECUTION - ABUSE OF PROCESS AS A FEDERAL COMMON LAW TORT PURSUANT TO SOSA V. ALVAREZ-MACHAIN, 542 U.S. 692 (2004) AND 28 U.S.C. §1350 (2000) BY WAY AND THROUGH THE RUBY VALLEY TREATY OF 1863, ARTICLES 1-2.**

965.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 964,

*supra*, including any referenced attachment, citation and exhibit, and paragraphs 972

through 1016, *infra*, without waiving any claim or defense, as though more fully set forth

here in Section E - CAUSE OF ACTION:  CLAIM NINETEEN.

966.    On information or belief the Plaintiff alleges as a novel, threshold case to extend

existing law with a good faith argument that malicious prosecution, as included under an

abuse of process doctrine, is a recognized principle of public international law that

prohibits the use or exercise of a procedural instrument or right by a party to a dispute

against the purpose that right was established to provide, and as such because malicious

prosecution or abuse of process actions served as a base to originally create civil tort law,

as codified from common law principle and practices, these actions apply here.

967.    On information or belief the Te-Moak Tribe of Western Shoshone Indians of Nevada,

("Tribe"), is an independent nation that recognizes only tribal members as legitimate

'citizens' to that nation and all others are by custom and tradition deemed aliens or foreign

nationals to the Tribe, wherein the pattern and practice of the Te-Moak Tribe, as approved

by the United States, grants or affords rights to members of the Tribe at the exclusion of all

others.  See U.S. Const. Art. 1, Section 8 ("*Congress shall have the power to regulate*

*Commerce with foreign nations . . .and with the Indian tribes*"); e.g. Cherokee Nation v.

Georgia, 30 U.S. (5 Pet.) 1 (1831)(*Indian Tribes are separate nations from the federal*

*government, states and foreign nations*); also, Worcester v. Georgia, 31 U.S. (6 Pet.) 515

(1832)(*an Native American "nation . . .is a distinct community, occupying its own territory"*

*and the US must treat each as a nation under "settled principles of our constitution"*).  Under

the Treaty Clause, the U.S. Treaty with the Te-Moak Tribe elevated the Te-Moak nation to a

parallel status with other foreign nations. See U.S. Const. Art. 2, Section 2, clause 2

(*President shall have the power "to make Treaties" and on execution are binding agreements*

*between nations and become international law*).

968.    On information or belief in 1863 the United States entered the Treaty of Peace and

Friendship ("Ruby Valley Treaty"), with the Te-Moak Nation, and the Parties agreed that

deprivations of the rights of citizens of the United States within Te-Moak Indian Country

"shall cease," and therefore, in accordance with international law, the abuse of rights and

abuse of process is recognized as a "violation of the law of nations or a treaty with the

United States," and, thus to preserve principles of sovereignty and comity, this creates a

cause of action for an alien to an Indian nation.  UNCLOS, Article 294(1) and Article 300, UN

DOC. A/CONF.62/122 21 ILM 1261(*as transmitted to the United States in 1995 "[t]his article restates existing customary law*"); also Protocol No. 11 in 1998, art. 17 of the Convention for the Protection of Human Rights and Fundamental Freedoms, 4 November 1950, 213 U.N.T.S. 222, Eur. T.S. 5("*Prohibition of abuse of rights" where art. 17 states nothing in the law shall allow or permit a "group or person any right to engage in any activity or perform any act aimed at the destruction of the rights and freedoms set forth herein*"); see also, Convention on Rights and Duties of States, 26 December 1933, 165 L.N.T.S. 19 at art. 3 (Montevideo Convention); e.g. Article 38(1) Statute of the International Court of Justice(*identifying international conventions, customs and traditions as evidence of general principles of law recognized among civilized nations*); and Case Concerning  the Gabcikovo-Nagymaros Project (Hungary v. Slovakia), [1997] I.C.J. Rep. 7 at para. 22 (*J. Weeramantry held under existing law among nations that the abuse of rights is a "well-established area of international law"*); e.g. U.S. Executive Order 13107(December 10, 1998).

969.    On information or belief Defendants, jointly and individually acted pursuant to racial, cultural or ethnic discrimination as a "custom or usage" of tribal leaders (*in Indian Country, a "Territory" of the United States)* under color of authority of state law memorialized in **A2** as sanctioned by Governor Sisolak and Attorney General Ford in furtherance of a criminal enterprise, and then using the BIA-CIO and judicial sub-enterprise of the NCE, the Defendants permanently branded the Plaintiff as convicted criminal, a felon, without the benefit of trial, hearing or notice to deprive the Plaintiff of his professional reputation, property interest in continued public employment as the Te-Moak Tribal Administrator and the Te-Moak Supreme Court Judge on the basis of race, color, ethnicity

or nationality claiming the Plaintiff is "white" *inter alia*, as discussed *supra*.    42 U.S.C. §§1983 and 1988; e.g. Grisham, 594 F. 3d at 729-31.

970.    On information or belief Defendant Marla McDade; Kristen Hevener; Joseph McDade; Chadwick Smith; George Skibine; Angelea Mendez; Tanya Reynolds; Bryan Bowker and Steve McDade, agreed or conspired to file litigation, affidavits and lawsuits against the Plaintiff to deprive the Plaintiff his constitutional freedoms under the U.S. Const. Amend. 4, 5, 13 and 14; Article 1, sec. 10, cl. 5 and Article 4, sec. 2, cl. 1 (*privileges and immunities*); and, thereafter, wrongfully obtained without justification restraining orders against the Plaintiff, as an official and judge of the Tribe, where the lawsuits lacked legal and factual support, and Defendants Bowker and Joseph McDade further conspired to direct and instruct BIA magistrates to issue at least one restraining order when the Plaintiff was cloaked in sovereign and judicial immunity, after receiving notice of that immunity, to shield and hide the corrupt actions and conduct of Bowker and McDade; Defendants Chadwick Smith, George Skibine, Tanya Reynolds and other unknown individuals, who in turn conspired and agreed to file a lawsuit against the Plaintiff as a judge knowing the Plaintiff was cloaked in sovereign and judicial immunity; Defendants Steve McDade, Marla McDade and Joseph McDade conspired and agreed to file a lawsuit in October 2019 against the Plaintiff, seeking a restraining order, and the Plaintiff successfully obtained the termination of that action; Defendants Steve McDade; Marla McDade and Joseph McDade, and other unknown individuals, conspired and agreed to file actions in a federal court falsely accusing the Plaintiff of being a criminal, a felon, to manipulate and obtain a favorable result, *ex parte*, and to remove the Plaintiff's employment as a legal practitioner;

Defendants Steve McDade, Marla McDade and Joseph McDade agreed and conspired to

suborn perjury from Susan Jones to support the filing of a false lawsuit against the Plaintiff

in a federal court.  These negative racial, cultural, ethnic and nationality based actions by

Defendants were the proximate cause of the loss of the Plaintiff's employment or license as

a legal practitioner in the federal court without due process, the loss of freedom to

associate, travel or speak freely on matters of public concern.  See Strength v. Hubert, 854

F.2d 421, 425 (11th Cir. 1988)(quoting Shaw v. Garrison, 467 F.2d 113, 120 *"freedom from*

*malicious prosecution is a federal right protected by Section 1983"*); see also, NAACP v. Hunt,

891 F2d 1555, 15623 (11th Cir. 1990)*("[Plaintiff] must show that the parties 'reached an*

*understanding' to deny the plaintiff his . . .rights . . .[and] prove an actionable wrong to*

*support the conspiracy"*).

971.    On information or belief the conduct, acts and omissions, jointly and individually, of

or by Defendants Joseph Holley; Jeffery Scott Sypolt; Dentons; George Skibine; Tanya

Reynolds; Alice Tybo; Duane Garcia, Sr; Thalia Marin; Kristen Hevener; Wendall Hayes;

Davis Gonzalez; David Carrera; Suzanna Sandoval; Steve Sisolak; Aaron Ford; Chadwick

Smith; Angelea Mendez; Tammy Carrera; Marla McDade and Joseph McDade, as relates to

false statements, affidavits, abuse of process or malicious prosecution of a state

unemployment action; the wrongful  termination as Tribal Administrator without due

process; and unlawful abuses and malicious processes to remove the Plaintiff as a judge

and capriciously initiate civil and criminal prosecution of the Plaintiff with state and federal

authorities without sufficient legal cause as a means to serve and continue the goals and

aims of the NCE, including the distribution of unreported income from the NCE to Governor

Sisolak and Attorney Aaron Ford, in their official and individual capacity, among others.

**CLAIM TWENTY:   42 U.S.C. §§1983 and 1985 UNLAWFUL CONFINEMENT, IMPRISONMENT OR CUSTODY, MALICIOUS PROSECUTION - ABUSE OF PROCESS PURSUANT TO WYATT V. COLE, 504 U.S. 158 (1992) AND THE U.S. CONSTITUTION, ARTICLES 1, 4 AND 6; AND AMENDMENTS 4, 5, 13 AND 14.**

972.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 965,

*supra*, including any referenced attachment, citation and exhibit, and paragraphs 975

through 1016, *infra*, without waiving any claim or defense, as though more fully set forth

here in Section E - CAUSE OF ACTION:  CLAIM TWENTY.

973.    On information or belief Defendants Sisolak and Ford, directly and indirectly in their

official and individual capacities, with other yet known individuals, instructed, directed,

approved or authorized Defendants, (*who agreed and conspired as willful participants in*

*joint activity with Sisolak and Ford*), Marla McDade; Sypolt; Davis Gonzalez; Joseph Holley;

Kristen Hevener; Steve McDade; Darian Stanford; TT; SCS; Paul Conable; Kevin Clock; Elliot

Parris; Tanya Reynolds; Alice Tybo; Duane Garcia Sr; David Carrera; George Skibine;

Dentons; Sibbison; Andrea Woods; Wendall Hayes; Chadwick Smith; Thalia Marin; Brent

Waite; Nicole Lewis and Zionsbank, to act under the color and authority of state law,

custom or usage within the Territory of the United States and without due process and

against existing law effectively causing the arrest, sentencing, conviction and elimination of

the Plaintiff's constitutional rights, placing the Plaintiff in an indefinite and perpetual state

of custody, without so much as a hearing, rendering the Plaintiff a slave by refusing to pay

the Plaintiff's wages, salary and benefits after receiving the benefit of the Plaintiff's labor,

and erasing over thirty years of the Plaintiff's work history, experience and educational

accomplishments.  See 42 U.S.C. §§1983 and 1985; e.g. U.S. Const. Amend. 4, 5, 13 and 14;

Article 1, sec. 10, cl. 5 (obligation to contract) and Article 4, sec. 2, cl. 1 (privileges and

immunities); e.g. Article VI(*State Executive Officers bound by oath to support the U.S.*

*Constitution and laws thereunder*); see also, Wyatt v. Cole, 504 U.S. 158, 163, 164-66

(1992)(*§1983 action permitted against private parties, including attorneys and complaining*

*witnesses, "for unjustified harm arising out of the misuse of governmental processes"*).

974.    On information or belief each Defendant's conduct constituted the intentional and

malicious prosecution of the Plaintiff, coupled with abuses of legal processes and

deprivation of rights against the Plaintiff at the instruction, order or approval of the State of

Nevada Governor Steve Sisolak  and Nevada Attorney General Aaron Ford, in their official

and individual capacities, to preserve and protect the income stream obtained through a

vast network of organized crime,  based on an enterprise that misappropriates federal and

tribal funds by fraud, trick or deception to permit or allow the commingling of money

derived from the unlawful sale of a controlled substance, filtered through Zionsbank, Wells

Fargo and SALAL throughout the United States, where the deprivations complained of here

resulted after termination of all prior criminal proceedings in favor of the Plaintiff.  Id; Heck

v. Humphreys, 512 U.S. 477, 486-87 (1994); also, 18 U.S.C. §1163.

### CLAIM TWENTY-ONE:  UNJUST ENRICHMENT PURSUANT TO HESS V. JOHNSTON, 163 P.3d 747, 754 (Utah App. 2007)

975.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 965,

*supra*, including any referenced attachment, citation and exhibit, and paragraphs 983

through 1016, *infra*, without waiving any claim or defense, as though more fully set forth here in Section E - CAUSE OF ACTION:  CLAIM TWENTY-ONE.

976.    On information or belief the Plaintiff and Defendant Te-Moak Tribe entered into two (2) separate employment contracts at-law:  1) Te-Moak Tribal Administrator, and 2) Te-Moak Supreme Court Judge.

977.    NCE and Tribe conferred direct and indirect financial benefits, in substantial amounts to the Defendants Holley; Marin; Garcia, Sr; D. Carrera; Tybo; Woods; Gonzalez; Sypolt; as former members of the governing body politic of the Tribe; its Bands, organization, associations and entities; or acting on their behalf pursuant to **A1-A5**. Defendants fraudulently received the financial benefits with full knowledge of the benefits, and the acceptance or retention of those benefits constituted an unjust enrichment at great detriment to the Plaintiff, requiring each and every Defendant to tender payment.

978.    The reasonable value of the annual contract services for the Tribal Administrator position, pursuant to <u>Davis v. Olson</u>, 746 P.2d 264, 269 (Ut. Ct. App. 1987), as described herein, is as follows:

    Year 1:    Salary - $84,833.89;
               Lost Insurance Benefits (24% of annual salary)-$20,360.13;
               Lost Savings Account Benefit (5%)- $4241.69;
               Lost Vacation and Leave Benefits -$6525.68 (annual salary/52 x 4)
        Subtotal:  $115,961.39 + est. tax penalties, costs (15%) = $133,355.60

    Year 2: (COLA 3%)    Salary $87,378.90
               Lost Insurance Benefits (24% of annual salary)-$20,970.94;
               Lost Savings Account Benefit (5%)- $4368.95;
               Lost Vacation and Leave Benefits -$6721.45 (annual salary/52 x 4)
        Subtotal:  $119,440.24 + est. tax penalties, costs (15%) = $137,356.28

979.    On information or belief the 2 Year income-based lost value to services as Tribal

Administrator, at an adjusted market value, equals $270,711.88; plus interest on the

judgment (12% or $32,485.43) and the lost value to property, i.e. credit score, late fees

($1346 per credit point x 212 ($285,352.00)+ $8455 fees/costs) and personal property

loss to valuation $26,000 (2018 Audi TLX) equals:  $623,004.31 x treble damages

associated for fraud totals:  $1,869,012.92 for two years unjust enrichment.

980.    On information or belief, pursuant to Davis v. Olson, 746 P.2d 264, 269 (Ut. Ct. App.

1987), the reasonable value of the annual contract services at-law, as described herein, for

the Te-Moak Supreme Court Judge Position, at the approved GS-13(Step 1) wage rate,

calculated using the U.S. Office of Personnel Management Salary Table - District of Las

Vegas, for the year 2021 at $93,518.00 and for the year of 2022 at $96,038.00, projected

outward for three years under a six year contract, plus denied benefits, interest and

penalties:

      Year 1 (2021)          Salary  $93,518.00
                                     Lost Insurance Benefits (24% of annual salary)-$22444.32;
                                     Lost Savings Account Benefit (5%)- $4675.90;
                                     Lost Vacation and Leave Benefits -$7193.69 (annual salary/52 x 4)
              Subtotal:  $127,831.01 + est. tax penalties, costs (15%) = $147,005.66

      Year 2 (2022)          Salary $96,038.00
                                       Lost Insurance Benefits (24% of annual salary)-$23049.12;
                                     Lost Savings Account Benefit (5%)- $4801.90;
                                     Lost Vacation and Leave Benefits -$7387.54 (annual salary/52 x 4)
              Subtotal:  $131,276.56 + est. tax penalties, costs (15%) = $150,968.04

981.    On information or belief the 2 Year income-based lost value to services as the Te-

Moak Supreme Court Judge, at an adjusted market value, equals $297,973.70; plus interest

on the judgment (12% or $35,756.84) = $333,730.54 x treble damages associated for fraud totals:  $1,001,191.62 for two years unjust enrichment.

982.    Alternatively, the Plaintiff requests an accounting of all profits after examination of all records and books, and to then apply equity and disgorge all Defendants of all profits derived from or originating from the NCE and the fraudulent taking of federal funds.

**F.      REQUEST FOR PRELIMINARY INJUNCTION**

983.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 975, *supra*, including any referenced attachment, citation and exhibit, without waiving any claim or defense, as though more fully set forth here in the Request For Preliminary Injunction.

984.    Plaintiff will likely suffer irreparable harm or injury if Defendants, their agents, family members and representatives, are not restrained from:

> 1) The publication and any publication and republication of any government document containing any false, defamatory statements regarding the Plaintiff claiming or stating that the Plaintiff is a felon, convicted criminal, or that the Plaintiff is a drug dealer, or Plaintiff was removed from any office as a judge or magistrate judge, or any similar false claim; and

> 2) Directly or indirectly harassing, stalking or threatening the Plaintiff in any manner, including the continuation of unlawful conduct by Governor Sisolak and AG Ford and the issuance of court related process through the BIA-CIO or any Te-Moak pseudo-court, as identified in this lawsuit, except through legal counsel who represent Defendants in this lawsuit; and

> 3) Officially asserting or claiming facts and information that Wendall D. Hayes is the Te-Moak Chief Tribal Judge, Appellate Judge, Supreme Court Judge or any other judicial office related to or associated with the Te-Moak Tribe and its Tribal Court system; and

> 4) Enacting legislation, (Ordinance, Resolution or Motion), by the Te-Moak Tribal Council or any association thereunder that harasses, impedes, obstructs or interferes with the orderly operation of the Te-Moak Supreme Court or the Plaintiff.

985.   Plaintiff will likely suffer irreparable harm or injury if the Defendants, their agents,

representatives and employees or any individual or entity acting on their behalf, unless

required to:

1) Retract and remove at Defendants' cost each and every false publication
regarding the Plaintiff published or republished online, by email, posting and
publication stating or claiming that the Plaintiff is a felon, convicted criminal,
removed from office as a judge or magistrate judge, drug dealer or any similar false
claim; and

2) Surrender and deliver to the Plaintiff, as the Te-Moak Supreme Court Judge, any
and all originals and copies of all documents, contracts, agreements, notices, case
folders and files associated or related to the Te-Moak Tribal Court system; and

3) Surrender and deliver to the Plaintiff, as the Te-Moak Supreme Court Judge, any
and all funds, bail, bond, grant, award, money, bank and financial record, report,
statement and account directly or indirectly related to or associated with the Te-
Moak Tribal Courts and the Te-Moak Administrative Office of the Court; and

4) Hire and employ 24 hour a day, 365 days a year private security detail for the
Plaintiff until final disposition of this case, at the Defendant's collective *pro rata* cost,
and require each and every Defendant to maintain a minimum of 150 foot distance
from the Plaintiff unless in the courtroom; and

5) Require and order Defendants Zionsbank, Nevada State Bank, SALAL, and any
individual or entity acting on their behalf, to freeze, hold and prevent any access,
withdrawal, distribution, payment or transfer of any amount from any account or
fund created, opened or issued in the name of or associated by the name:  Elko Band
Colony Enterprise; Elko Band Council, Elko Band Colony or Elko Band Authority;
Davis Gonzalez; Thalia Marin; Larry Yeager; Juan Arevalo; Cascade Strategic
Investments; SCS Elko LLC or Sovereign Cannabis Solutions; Tonkon Torp; Paul
Conable, Jeffery Scott Sypolt; Darian Stanford; Steve Olson; Robin Evans or RAE
Solutions, and Leslie Berg-Grove or Integrity Business Solutions & Consulting, and to
order Defendants Zionsbank, Nevada State Bank and SALAL to preserve all records,
documents, statements and financial reports related to the same Defendant
individuals and entities for the period January 2019 through trial in this case; and

6) Strike, rescind, nullify and void each and every official action in conflict with Federal and State Law, and the Te-Moak Constitution, specifically <u>Resolutions 21-TM-50, 83, 94, 111, 112, 120-134</u> and rescind, nullify and void each and every Resolution, Motion, Ordinance, Judgment, Agreement, Contract, Plan signed, entered or executed by Defendants Governor Sisolak, AG Ford and Defendants Holley, Marin, Gonzalez, Carrera, Woods, Duane Garcia, Sr; Arevalo; Yeager, among others, and then prohibit these tribal Defendants from taking any further action as the Te-Moak Tribal Council; and

7) Provide an accounting, calculating the amount that the Defendants obtained or profited from the anti-competitive practices or anti-trust behavior, and then rescind all contracts, agreements and policies, ordering a sale of all assets and categories of assets obtained by the anti-competition RICO Defendants, divesting and disgorging these Defendants to satisfy any potential or actual judgment.

986.    The injury or harm claimed herein is irreparable, ongoing and imminent based on the continuation of death threats, extortion and bribery, spoliation of evidence; interference with the orderly administration of justice; the ongoing deprivation of employment rights and the public harm due to the ongoing concealment, destruction and alteration of government documents and records.  There is no adequate remedy at law.

987.    For the same justifications asserted in the Plaintiff's motion seeking a temporary injunction, the balance of hardships tips sharply in favor of granting a preliminary injunction, there is a substantial likelihood that the Plaintiff will prevail on the merits, and the waiver of a bond is requested due to the unlawful removal of all financials by Defendants.  Plaintiff requests the setting of the matter for Preliminary as soon as possible.

## G.    REQUEST FOR DECLARATORY JUDGMENT

988.    Plaintiff respectfully requests that this court give notice and set a hearing date, and then issue a Declaratory Judgment pursuant to the <u>Federal Rules of Civil Procedure Rule 57</u>, and pursuant to <u>28 U.S.C. §§2201 and 2202</u> to declare the rights and privileges of the

Plaintiff under the United States Constitution, the Constitution of the Te-Moak Tribe of Western Shoshone Indians of Nevada, and laws thereunder.

989.    The Plaintiff re-alleges and incorporates by reference paragraphs 1 through 835, *supra*, including any referenced attachment, citation and exhibit, and paragraphs 999999 without waiving any claim or defense, as though more fully set forth here in this request for Declaratory Judgment.

990.    The lawsuit filed by the Plaintiff involves an extensive deprivation of constitutional freedoms under the <u>U.S. Const. Amend. 4, 5, 13 and 14</u>; <u>Article 1, sec. 10, cl. 5</u> (obligation to contract) and <u>Article 4, sec. 2, cl. 1</u> (privileges and immunities); and this case arises primarily under <u>18 U.S.C. §1961 et seq</u>; and <u>42 U.S.C. §§1981, 1982, 1983, 1985, 1986 and 1988</u>, and the rights granted under the <u>Constitution of the Te-Moak Tribe of Western Shoshone Indians of Nevada, Article 8 and Article 9</u>.

991.    Defendants Joseph Holley; Jeffery Scott Sypolt; Alice Tybo; Chadwick Smith; Duane Garcia, Sr; Andrea Woods; Paula Garcia; Joseph McDade; Thalia Marin; Tammy Carrera; SCS; TT; Paul Conable; Kevin Clock; Darian Stanford and Elliot Parris continued to threaten the rights of the Plaintiff, as the Te-Moak Supreme Court Judge, long after tribal elections were held and these elections terminated most of the tribal offices Defendants previously held, and Defendants, jointly and individually, continue to issue proclamations, legislative enactments and correspondence, as though duly elected tribal officials, stating that the Plaintiff was removed or recalled from office by Resolution and that the Plaintiff lacks all authority as a Te-Moak Judge, then publishing and mailing said documents to government officials, and installing a puppet judge, Wendall D. Hayes, who is paid by a RICO Enterprise

involving the Defendants, (NCE), to issue nonsensical 'orders' as the Te-Moak Chief Tribal Judge, Appellate Judge and Supreme Court Judge, while falsely claiming this authority on behalf of the Defendants' RICO Enterprise.

992.    Plaintiff examined multiple 'orders' from Hayes and they lack any and all reference to any rule, regulation, ordinance or any legal authority at all while directing law enforcement officers to restrain the freedoms and liberties of citizens, including the Plaintiff, without proper notice or hearing. Hayes is grossly incompetent.

993.    Under existing law the Plaintiff was lawfully and duly appointed as the appellate judge of the Te-Moak Supreme Court for the Te-Moak Tribe of Western Shoshone Indians of Nevada on February 3, 2021 for a term of six (6) years, as the only supervisor and manager of the Te-Moak Tribal Courts and all business matters of the Tribal Courts.

994.    Existing tribal law, as approved by the United States in 1989, dictates that there shall be only one (1) appellate judge on the Te-Moak Supreme Court, and that no ordinance, motion or resolution shall remove, terminate, fire or recall said judge where the only permissible means is by an Election.  Constitution of the Te-Moak Tribe of Western Shoshone Indians of Nevada, Article 8, section 6(a)("*unseated from office only" by recall election referencing the removal procedure outlined in Article 4, section 8*).  No election has been held by the Te-Moak Tribe to remove or recall the Plaintiff.

995.    As according to the United States Supreme Court, the final orders and decisions of the Te-Moak Supreme Court are indistinguishable from authoritative weight given to decisions of the U.S. Supreme Court against the superiority to legislative actions and subordinate law, unless timely appealed and reversed by a federal court.

# PRAYER FOR RELIEF

## A.  *STRIPPING OF OFFICIAL CHARACTER AND IMMUNITY*

996.    For all causes of action, and claims involving or alleging violations of law resulting in any civil cause of action, as claimed herein, and because this lawsuit names and identifies government officials that fails to create a suit against the government except to prove that the official's conduct constitutes state action, the Plaintiff respectfully requests that the court strip Governor Steve Sisolak, Attorney General Aaron Ford, Kristen Hevener and Marla McDade of their official character under Ex Parte Young, 209 U.S. 123 (1908), Edelman v. Jordan, 415 U.S. 651 (1974), and their progeny, and grant appropriate prospective and equitable relief to the Plaintiff, including an injunction nullifying and voiding every agreement, plan and scheme related to any cause of action in this lawsuit, and hold each individually liable to the Plaintiff, with their personal assets subject to judgment.

997.    For all causes of action identified or claimed herein, the Te-Moak Constitution prohibits the enactment of any law and the exercise of any official action in conflict with Federal Law and the Te-Moak Constitution, rendering any conflicting action a waiver by abrogation.  See Constitution of the Te-Moak Tribe, Article 4, section 3 and section 12, 12(a), 12(b) and 12(c).  The Te-Moak Corporate Charter grants a waiver to sue the Tribe to recover damages for debts owed by the Tribe.  See Corporate Charter of the Te-Moak Bands of Western Shoshone Indians of the State of Nevada, a federal corporation chartered under the Act of June 18, 1934, (48 Stat. 1934), (as amended 49 Stat. 378 on June 15, 1935). For the purpose of this lawsuit, involving claims of unlawful conduct in violation of Federal law

and Te-Moak law, and recover a damages associated with a debt owed by Te-Moak to the Plaintiff. The Plaintiff respectfully requests that the Court find that Te-Moak sovereign immunity is waived or abrogated for claims and causes of action herein as it relates to the Te-Moak Tribe, the Te-Moak Tribal Council and all agencies, boards, committees, officers, agents and representatives thereunder. Id.

998. For all causes of action identified or claimed herein the Plaintiff requests that that the court strip Defendants Joseph Holley; Davis Gonzalez; Alice Tybo; Duane Garcia, Sr; Tanya Reynolds; David Dale Carrera; Andrea Woods; Paula Garcia; Juan Arevalo; Suzanna Sandoval; Adela Morrison; Larry Yeager; Thalia Marin; Jeffery Scott Sypolt; George Skibine; V. Heather Sibbison; Wendall Hayes; Dentons and Chadwick Smith of their official character pursuant to Ex Parte Young, 209 U.S. 123 (1908), Edelman v. Jordan, 415 U.S. 651 (1974), and their progeny, and grant appropriate prospective and equitable relief to the Plaintiff, including an injunction nullifying and voiding each and every Resolution, Motion, Ordinance, Judgment, Agreement, Plan and Scheme in conflict with Federal and state Law, and the Te-Moak Constitution, and hold each Defendant individually and personally liable to the Plaintiff, with their personal assets subject to judgment.

999. For all causes of action involving or alleging violations of law resulting in any civil cause of action, as claimed herein, and because this lawsuit names and identifies government officials that fails to create a suit against the government except to prove that the official's conduct constitutes government action, the Plaintiff respectfully requests that the court strip Bryan Bowker and Joseph McDade of their official character pursuant to Ex Parte Young, 209 U.S. 123 (1908), Edelman v. Jordan, 415 U.S. 651 (1974), and grant

appropriate prospective and equitable relief to the Plaintiff, and to thereafter hold each individually and personally liable to the Plaintiff, with their personal assets subject to judgment as a matter of law.

## B.    PIERCE THE CORPORATE VEIL

1000.   Plaintiff re-alleges and incorporates by reference paragraphs 1- 835, *supra*, including any attachment, citation and exhibit, without waiving any claim or defense, as though more fully set forth here.

1001.   Pursuant to d'Elia v. Rice Dev., Inc., 2006 UT App. 416 ¶30-34 the Plaintiff requests an order from this Court piercing the Veil of Dentons US LLP and TT holding the individual members, officers, partners or directors personally liable for any judgment or liability for any claim or cause of action where fairness and equity provide a just result.

1002.   Pursuant to MJ v. Wilson, 2016 UT 13 (March 23, 2016) the Plaintiff requests entry of an order from this Court reverse veil-piercing Nevada State Bank, as Zionsbank and Brent Waite's artificial *alter ego*; SALAL, as Russel Rosenthal, Robert Schweigert, Troy Pope and Randy Coes' artificial *alter ego*; SCS, as Kevin Clock, Elliot Parris, Darian Stanford, Paul Conable and Steve Olsons' artificial alter ego, holding the business entity "responsible for the individuals' personal acts liable for any claim or cause of action where fairness and equity provide a just result.

## C.    EQUITABLE DISSOLUTION, DIVESTITURE, FORFEITURE OF ASSETS, RESCISSION AND COURT APPOINTED RECEIVER OR CONSERVATOR

1003.   Pursuant to the Court's inherent power to grant equitable relief to prevent irreparable harm from unlawful conduct, Fed. R. Civ. P. Rule 64, the All Writs Act, 28 U.S.C.

§1651 and 18 U.S.C. §1964(a),[7] *inter alia*, the Plaintiff requests equitable relief in the form of Dissolution, Divestiture, Forfeiture of Assets, Rescission and the appointment of a Receiver or Conservator.  See M̲arshall v. Icahn, 537 F. Supp. 413 (S.D.N.Y. 1982); U̲.S̲. v̲. B̲arber, 476 F. Supp. 182, 189 (S.D. W. Va. 1979); U̲.S̲. v̲. M̲andel, 415 F. Supp. 997, 1021 (D. Md. 1976)(*for the proposition that dissolution, restitution, divestiture, forfeiture as equitable remedies available to a private party under RICO*).

1004.  D̲issolution, Divestiture and Forfeiture of Assets.  The extensive and intentional operation, involvement, management and control over the unlawful NCE enterprise by SALAL, TT, SCS, CSI, SCI and ECBE, by their officers, boards and directors, as shown herein, warrants and justifies Dissolution of their legal status as a business entity by order of this Court.  Their attorneys, officers and directors knowingly and intentionally thwarted federal, state and tribal law to generate income from RICO enterprises using the corporate shield of protection, entering contracts, agreements and trusts, and then investing that income on behalf of or for the named entities, as well as their personal benefit.  Thus, an order should issue where applicable rescinding all contracts, agreements and trust so entered or executed to prevent irreparable harm.

1005.  Defendants SALAL-SCU, TT, SCS, SCI, CSI and ECBE, and their officers, attorneys and directors, invested income derived from a pattern of racketeering activity or from the collection of an unlawful debt in an interstate enterprise, or maintained an interest or control in an interstate enterprise through a pattern of racketeering activity, or conspired or engaged in unlawful restraints on trade.  Thus, where applicable an order compelling

---

[7] S̲ee Pub. L. No. 91-452, 84 Stat. 922 (1970)(Statement of Findings and Purpose allows liberal construction).

SALAL, TT, SCS, SCI, CSI an ECBE, and their officers, attorneys and directors, to hold separate all assets, instruments, chattel, cryptocurrency, stocks, bonds, trusts and categories of assets that were derived from any income, revenue or profit from any pattern of racketeering activity or collection of any unlawful debt, described herein, until final disposition of this case at which time if the Plaintiff is successful, order these Defendants to divest. See Steves and Sons, Inc. v. JELD-WEN, Inc., 2021 WL 630521 (4th Cir. February 18, 2021)(*divestiture to private party in Clayton Act suit*).

1004.  All assets and categories of assets subject to divestiture, and divested by sale, should be forfeited to the Te-Moak Supreme Court pursuant to a Charging Order the Plaintiff hereby requests be issued under UCA § 48-3a-503(6), authorizing the Te-Moak Supreme Court, as *pro tempore* receiver, to enter an order of distribution, or alternatively this Court should appoint a receiver or temporarily appoint a conservator to retain, manage and control the sale of assets and categories of assets subject to divestiture.

**D.      CLAIM ONE**

1006.  WHEREFORE, based on the aforementioned, the Plaintiff respectfully requests judgment against the Defendants and requests that this Court:

- A.    Award compensatory damages in an amount not to exceed $17,000,000.00, and consequential, exemplary and punitive damages to the Plaintiff in an amount to be determined at trial;
- B.    Rescission of all Contracts, Agreements, Policies and Bylaws associated with or related to the NCE;
- C.    Award all reasonable costs and fees to the Plaintiff;
- D.    Order Dissolution and Reorganization, Enjoin Defendants from engaging in the same or similar type of endeavor, with appropriate "provision[s] for the rights of innocent person" and businesses; 18 U.S.C. §1964(a).
- E.    Pre and Post Judgment Interest; and
- F.    Treble damages, any and all other relief the Court deems just and fair.

**E.      CLAIMS TWO THROUGH ELEVEN**

1007.  WHEREFORE, based on the aforementioned the Plaintiff respectfully requests

judgment against each Defendant and further requests that this Court:

      A.      Award compensatory damages (actual or assumed) against each Defendant individually liable in an amount not to exceed $1,896,000.00, and consequential, exemplary and punitive damages to the Plaintiff in an amount to be determined at trial;

      B.      Award all reasonable costs and fees to the Plaintiff;

      C.      Pre and Post Judgment Interest; and

      D.      Any and all other relief the Court deems just and fair.

**F.      CLAIM TWELVE**

1008.  WHEREFORE, based on the aforementioned and for damages that were foreseeable

and the proximate cause of the Defendant's conduct, the Plaintiff respectfully requests

judgment against the Defendants and requests that this Court:

      A.      Award compensatory damages for lost pay, lost benefits, lost future pay, physical and emotional pain and suffering, distress, humiliation, loss of consortium and familial association in an amount not to exceed $20,000,000.00, and consequential, exemplary and punitive damages to the Plaintiff in an amount to be determined at trial;

      B.      Award all reasonable costs and fees to the Plaintiff;

      C.      Pre and Post Judgment Interest; and

      D.      Any and all other relief the Court deems just and fair.

**G.      CLAIM THIRTEEN**

1009.  WHEREFORE, based on the aforementioned and for damages that were reasonably

foreseeable and the proximate cause of the Defendant's conduct, the Plaintiff respectfully

requests judgment against the Defendants and requests that this Court:

      A.      Award compensatory damages and consequential, exemplary and punitive damages to the Plaintiff in an amount to be determined at trial;

      B.      Award all reasonable costs and fees to the Plaintiff;

**J.     CLAIM SIXTEEN – RESTRAINTS ON TRADE AND ANTITRUST**

1012. WHEREFORE, based on the aforementioned and for damages that were reasonably

foreseeable and the proximate cause of the Defendants conduct, the Plaintiff respectfully

requests judgment against the Defendants and requests that this Court:

      A.    Award compensatory damages in an amount not to exceed $10,000,000.00, consequential and treble damages to the Plaintiff in an amount to be determined at trial;

      B.    Award all reasonable costs and fees to the Plaintiff;

      C.    As an alternative remedy to treble, injunctive relief to divest with an accounting and Disgorgement;

      D.    Pre and Post Judgment Interest; and

      E.    Any and all other relief the Court deems just and fair.

**K.     CLAIM SEVENTEEN**

1013. WHEREFORE, based on the aforementioned and for damages that were reasonably

foreseeable and the proximate cause of the Defendants conduct, the Plaintiff respectfully

requests judgment against the Defendants and requests that this Court:

      A.    Award compensatory damages in an amount not to exceed $10,000,000.00, consequential and treble damages to the Plaintiff in an amount to be determined at trial;

      B.    Award all reasonable costs and fees to the Plaintiff;

      C.    Pre and Post Judgment Interest; and

      E.    Any and all other relief the Court deems just and fair.

**L.     CLAIM EIGHTEEN – INVASION OF PRIVACY**

1014. WHEREFORE, based on the aforementioned and for damages that were reasonably

foreseeable and the proximate cause of the Defendants conduct, the Plaintiff respectfully

requests judgment against the Defendants and requests that this Court:

      A.    Award compensatory damages for harm to interest in privacy; mental distress; shame, anxiety, humiliation, embarrassment; lost privacy or lost exclusive use of personalty; expenses; loss of promised future contracts;

reputational harm; loss of community status; loss consortium or familial association; harm to business relationships, and consequential, exemplary and punitive damages to the Plaintiff in an amount to be determined at trial;

B.   Award all reasonable costs and fees to the Plaintiff;
C.   Pre and Post Judgment Interest; and
D.   Any and all other relief the Court deems just and fair.

## M.   CLAIM NINETEEN – MALICIOUS PROSECUTION

1015.  WHEREFORE, based on the aforementioned the Plaintiff respectfully requests

judgment against the Defendants and requests that this Court:

A.   Award compensatory, consequential, exemplary and punitive damages to the Plaintiff in an amount to be determined at trial;
B.   Award all reasonable costs and fees to the Plaintiff;
C.   Pre and Post Judgment Interest; and
D.   Any and all other relief the Court deems just and fair.

## N.   CLAIM TWENTY – UNLAWFUL CONFINEMENT, ABUSES

1016.  WHEREFORE, based on the aforementioned the Plaintiff respectfully requests

judgment against the Defendants and requests that this Court:

A.   Award compensatory, consequential, exemplary and punitive damages to the Plaintiff in an amount to be determined at trial;
B.   Award all reasonable costs and fees to the Plaintiff;
C.   Pre and Post Judgment Interest; and
D.   Any and all other relief the Court deems just and fair.

For all of the aforementioned reasons, the Plaintiff respectfully requests judgment

against Defendants as set forth herein for each claim listed and an award for the damages

sought, enjoining future unlawful conduct, plus pre- and post-judgment interest, equitable

relief, costs and the entry of an Order declaring that the Defendants account and hold in

trust, as constructive trustees for the benefit of Plaintiff, all illegal profits, dissolution of

the business entities legal status, divestiture and disgorgement, along with any and all

other relief the court deems just and fair.

Plaintiff demands a jury trial.

By my signature below, I declare under penalty of perjury that the aforementioned

<u>Verified Complaint</u> is true and correct to the best of my knowledge, information or belief.


RESPECTFULLY SUBMITTED:

Hon. Samuel L. Biers
Plaintiff

4/28/2022