Case: 2:22–cv–00298
Assigned To : Bennett, Jared C.
Assign. Date : 5/2/2022
Description: Biers v Dentons US LLP
et al

# Appendix III - Index

Exhibit III-A

(1) Steve McDade Exclusion Letter........61 ¶196

(2) Steve McDade Interference Letter........63 ¶204

(3) Declaration of Thalia Marin........74 ¶¶249, 250

(4) Declaration of Larry Yeager........100 ¶341; 130-31 ¶461

(5) Affidavit of Robert Brady........207-08 ¶719

(6) Brady Memo RE Appellate Judge Removal........166 ¶595

(7) Affidavit of Lorraine Garcia........209 ¶720

(8) Affidavit of Chauna Cota, Jay Allison, Lyle Yowell........229 ¶780

(9) Police Chief William Grundy Letter........234 ¶799

Exhibit III-B

(1) Holley Exoneration Letter........66 ¶¶215, 216, 217; 130 ¶460; 172 ¶614; 176 ¶628; 190 ¶669

(2) FBI Criminal History Results (2020)........65 ¶212; 65-66 ¶214, 215, 217; 97 ¶332; 130 ¶460; 159 ¶573; 172-73 ¶614; 190 ¶669

(3) Nevada Dept. of Public Safety, Criminal History Report (2011)........65-66 ¶214,215; 172-73 ¶614; 190 ¶669

(4) Background Receipts (2020)........65 ¶212; 65-66 ¶¶214, 217

(5) Te-Moak Tribal Administrator Job Announcement and Qualifications........62 ¶200

(6) Offer of Te-Moak Tribal Administrator........62 ¶202

(7) Te-Moak Memo RE: Sam Biers Administrative and Bereavement Leave........148 ¶543; 152 ¶558; 165 ¶589; 207-08 ¶719(4)

(8) Te-Moak Appellate Judge Oath of Office........158 ¶573(o); 209 ¶720(9)

(9) Te-Moak Personnel Performance & Evaluation Report RE Biers............................................................................................................................................137-38 ¶¶490, 491, 493

(10) Alice Tybo Performance Acknowledgement Email............................................118 ¶406

(11) Holley-Sypolt False Statements NV DETR....................169-70 ¶607; 170-71 ¶¶608-610

(12) Holley-Sypolt False Statements NV DETR Facsimile Transmission Receipts
(a) June 7, 2021 @ 4:19pm, Fax No. 17756840338........................................................................................................169-70 ¶607; 170-71 ¶¶608-610; 171-72 ¶¶611,612
(b) June 7, 2021 @ 4:27pm, Fax No. 17024867987............................................................................................................169-70 ¶607; 170-71 ¶¶608-610; 171-72 ¶¶611,612

(13) Te-Moak Public Notice RE Fraudulent Office....................................218 ¶746; 220 ¶753

(14) Mendez Interference Letter to Zionsbank-NSB...............................................224 ¶766

(15) Mendez Salacious Interference Email-Subject: Sam Biers...........................225-26 ¶770

(16) Invasion if Privacy- Libel Public Notice Salt Lake Tribune..............................................................184-86 ¶¶652,653; 186 ¶654; 192 ¶675; 195-96 ¶686; 200 ¶695(j); 201-02 ¶701

Exhibit III-C

(1) Denton's US LLP- Terms of Business...........................................................64 ¶209

(2) Zionsbank-NSB Copy of Cashiers Check to Denton's............................92 ¶308; 112 ¶382

(3) Denton's Engagement Agreement:
(a) July 22, 2020.............................................83 ¶280; 85 ¶285; 95 ¶320; 108 ¶375
(b) October 1, 2020.....................................................95 ¶322; 100 ¶343; 108 ¶375
(c) December 11, 2020..........................................108 ¶375; 124 ¶431; 188 ¶660
(d) December 11, 2020..........................................108 ¶375; 124 ¶431; 188 ¶660

(4) Denton's US LLP Billing Statement:
(a) 2:40:02 pm Version...........................................100 ¶343; 108 ¶375; 110-11 ¶378
(b) 4:16:59 pm Version...........................................100 ¶343; 108 ¶375; 110-11 ¶378
(c) 4:20:02 pm Version..........95 ¶322; 100 ¶343; 108 ¶375; 110-11 ¶378; 173 ¶617

(5) Skibine Notice of Appeal...........................................................................133-34 ¶474

(6) Sypolt Invoice: $390,000 Retainer................200-01 ¶697; 202-03 ¶¶702,703; 210 ¶722

(7) Sypolt-Joseph McDade Interference Email.....................................................203 ¶704

(8) Wendall Hayes Fraudulent Invoice...........................................................224-25 ¶767

(9) Tonkon Torp LLP Oregon Business Registration....................................20 ¶68; 182 ¶646

(10) Cascade Strategic Investments, Inc. Oregon Business Registration.................................. ..........................................................................................................20 ¶68; 181 ¶642; 182 ¶646

Exhibit III-D

(1) SALAL-Washington: Corporate Officers..................................................................15 ¶48

(2) SALAL CU Business Services-Thalia Marin Email..................57-58 ¶¶186, 187; 206 ¶716

(3) Judge Biers-Lt. Governor Sanchez Email RE: Sypolt and Stanford..................197-98 ¶693

(4) Judge Ramon Acosta- Scott Sypolt Email.............................................153 ¶¶562, 563

(5) FBI Email- Whistleblower Information.........................................................152 ¶561

(6) Zionsbank/NSB-Judge Biers Email RE Criminal Conduct................................................. ..........................................................................................................210 ¶722; 214 ¶¶733,735

(7) Steve McDade Defamation Facebook Post..........................................................33 ¶112

(8) Suzanna Sandoval Defamation Facebook Post..................................................222 ¶760

(9) Sypolt-Biers Text Message RE: Governor Sisolak................................................113 ¶387

Exhibit III-E

(1) Judge Biers Text Message Death Threat - Photo..................................................100 ¶340

# Appendix III

# Exhibit III-A(1)

Sept 11, 2019

I Steve McDade TM 1287 am requesting to be put on the Temoak agenda.

This request is for the exclusion of Samuel Biers from all Temoak Tribal Lands. Mr. Biers is NOT A member of any recognized tribe and does NOT Any legal authority on such lands. Per the Temoak Constitution as non-member can and should be removed if they are harassing, stalking or trespassing or violating Any ~~th~~ tribal members

Steve McDade

# Appendix III

# Exhibit III-A(2)

Dec 12, 2019

I Steve McDade TM-1287 am requested
an open hearing on the Conduct of Joe
Holley. He has violated not only his oath
of office by hiring a felon, non native
drug dealer as adminstrator. He also has
violated the Courts Rule by continuing
To have close meetings behind the
peoples back. Mr. Holley has also
violated his conduct and oath by
hiring his girl friend Tanya Tybo.
This is a violation of Conduct
of fratinazation.

Stev [illegible]

# Appendix III

# Exhibit III-A(3)

IN THE TE-MOAK TRIBAL COURT OF INDIAN OFFENSES

IN AND FOR THE TE-MOAK TRIBE OF WESTERN SHOSHONE INDIANS OF NEVADA

| | |
|---|---|
| LETA JIM and HELEN STEVENS,<br>Petitioners;<br>v.<br>THE ELKO BAND COUNCIL: DAVIS GONZALES, Chairman; JUAN ARAVELO, Vice-Chairman; LARRY YAEGER, Member; JILL TEMOKE, Member; THALIA MARIN, Member; LADONNA LEYVA, Member; ROBERT BRADY, Member; and JOHN AND JANE DOES 1-20;<br>Respondents. | Case No. CIV-20-WR03<br>**DECLARATION OF THALIA MARIN IN SUPPORT OF RESPONDENTS' OPPOSITION TO PRELIMINARY INJUNCTION** |

I, THALIA MARIN, state as follows under penalty of perjury:

1. I am one a member of the Elko Band Council and one of the named Respondents in this matter. I make the declaration based on personal knowledge and am competent to testify to the matters below.

2. Since Nevada Governor Brian Sandoval signed SB 375 on June 2, 2017, approximately ten Nevada tribes have executed compacts, or agreements, with the State of Nevada: Las Vegas Paiute; Fort McDermitt Paiute Shoshone; Pyramid Lake Paiute; Ely Shoshone; Yerington Paiute; Reno Sparks Indian Colony; Lovelock Paiute; Walker River Paiute; Paiute Shoshone Tribe of the Fallon Reservation; and the Elko Band. Many of these tribes, including in particular the

Las Vegas Paiutes, have had fully operational and profitable cannabis operations for as long as two years now without incident.

3. On or about December 17, 2018, Elko Band held an initiative regarding cannabis with approximately 119 participants. The purpose of the initiative was merely to give the new council a sense of how the Elko Band members felt about cannabis. The results showed overwhelming support for both medical and recreational cannabis. Based in part on these results, Elko Band Council felt comfortable moving forward with a cannabis business and received necessary approval to do so from the Te-Moak Tribal Council.

4. On April 18, 2020, the Elko Band opened Newe Cannabis on tribal lands. Due to the Covid 19 pandemic, this opening is presently limited for safety reasons to drive-through only. Newe Cannabis presently employs approximately twenty-five persons and has been a tremendous success since opening, despite the limited nature of operations presently.

5. The Elko Band hopes that Newe Cannabis can provide much needed economic development and responsibly serve the people of Elko County and Nevada for years to come.

6. The Elko Band has had multiple public hearings and meetings regarding cannabis. Petitioners and Mr. Felix Ike were part of a very small but very vocal minority of Elko Band members in opposition. The vast majority of the Elko Band members are in support.

DATED this 6th day of May, 2020

By /s/ Thalia Marin (signature to follow)
THALIA MARIN

# CERTIFICATE OF SERVICE

**DECLARATION OF THALIA MARIN IN SUPPORT OF RESPONDENTS' OPPOSITION TO PRELIMINARY INJUNCTION** was served by email on the following persons on May 6, 2020:

LORRAINE GARCIA
HC 30, Box 185
Spring Creek, Nevada 89815
775-744-4389
vgranchkt@yahoo.com

FELIX IKE
HC 30, Box 185
Spring Creek, Nevada 89815
775-738-6602
f_ike@yahoo.com

DATED this 6th day of May, 2020

By *\/s/ Darian Stanford*

Darian Stanford
15530 NW Oak Hills Dr.
Beaverton, OR 97006
(503) 708-8908
darianstanford@gmail.com
Oregon Bar #994491
Ft. McDermitt Paiute Shoshone
#FM2017-01

# Appendix III

# Exhibit III-A(4)

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Samuel L. Biers,
Plaintiff *

**DECLARATION OF LARRY YEAGER**

v. *

Nocona Spring Smales-Hassett and *
John Doe (1-10), and
Jane Doe (1-10), *
Defendants.

Case No. ____________________

Judge ______________________

I, Larry Yeager, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information or belief:

1. I am an adult, over the age of eighteen, not a party to the above entitled case, and I make this declaration based on my personal knowledge and I am competent to make the same.

2. On or about June 12, 2020 Nocona Smales-Hassett communicated with me that the Te-Moak Tribal Administrator Sam Biers made a seriously disrespectful statement about me when I am one of his supervisors. Nocona stated that Sam Biers specifically referenced me as a Te-Moak Council Member and called me a "pussy" and Elko Band Chairman Davis Gonzales' "bitch."

4. On or about June 12, 2020 I personnally contacted Sam Biers about the statements Nocona made, and Sam emphatically denied ever making such a

statement about me, and then he informed me that Nocona was the probable source, before I made any reference to her, based on the fact that as the Tribal Administrator, Sam recently terminated Nocona Smales-Hassett.

5. Before this instance involving Nocona Smales-Hassett making statements about the Tribal Administrator, Sam Biers, my relationship with Sam Biers as the Tribal Administrator has always been professional and friendly, and since this instance our relationship is strained and distant.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct based on my knowledge, information or belief. Executed on this the 17th day of November 2020.

Larry Yeager

# Appendix III

# Exhibit III-A(5)

I, Robert Brady, am an adult over the age of 18 and give the following statement of my own free will based on my personal knowledge and information:

1. In October 2018 I was elected to the Elko Band Council and thereafter to the Te-Moak Tribal Council as a Council member.

2. I remained on the Te-Moak Tribal Council until about June 2021.

3. On February 3, 2021 the Te-Moak Tribal Council appointed Mr. Ramon Acosta, as the Te-Moak Tribal Judge, and Mr. Samuel L. Biers as the appellate judge to the Te-Moak Supreme Court, pursuant to the Te-Moak Constitution.

4. At the time of appointment on February 3, 2021Te-Moak's attorney Scott Sypolt submitted Mr. Biers' name as a candidate for Tribal Prosecutor, (along with additional candidates Ramon Acosta, Chadwick Smith, Elisa Dave, Darian Stanford, Tilden Smart and Ann Laughlin), and Mr. Sypolt went on the record stating that he performed and completed background investigations for all candidates for the judiciary system and found no issues.

5. After Mr. Sypolt's submission and declaration regarding the background investigations on February 3, 2021, both individuals were appointed by Te-Moak Resolution 21-TM-27 and 21-TM-29, and sworn in on February 5, 2021.

6. On or about March 25, 2021 the Te-Moak Council received documentation from Te-Moak Court Clerk that included copies of emails from Scott Sypolt to Judge Ramon Acosta where Mr. Sypolt called Judge Acosta a "clown," falsely accusing Ramon of slandering Mr. Biers when it was Mr. Sypolt slandering Judge Biers. Scott Sypolt had been harassing the court staff and made vulgar comments to Judge Acosta over email, shortly after which Mr. Acosta resigned his position leaving only Appellate Judge Biers. Over the next couple weeks other Te-Moak council members as well as Scott Sypolt began to make negative comments regarding Judge Biers' past.

7. On or about March 19, 2021 while Judge Biers was on bereavement leave when at the direction of Scott Sypolt the Te-Moak Council terminated Mr. Biers as the tribal administrator based on the false and negative comments regarding Mr.

Biers from Mr. Sypolt. The Te-Moak Council, at the recommendation of Scott Sypolt, then passed another resolution unlawfully claiming the power to remove Mr. Biers as the appellate judge. Under tribal law this action is undoubtably unconstitutional as the Te-Moak Constitution spells out exactly how a seated judge is removed from their appointed position. A few weeks later I wrote an email to the Tribal Chairman Joseph Holley and cc'd acting administrator Sharla Dick stating my concerns that the action the council took trying to remove Mr. Biers by resolution was incorrect but I received no response from either nor was it ever bought it at a meeting.

8. On or about May 6, 2021 I proceeded to write a letter to the entire Te-Moak Council citing the Te-Moak Constitution and providing back-up documentation of Mr. Biers' Oath of Office, again stating that the action taken previously taken by the Te-Moak Council was illegal.

9. On or about May 28, 2021 my letter was addressed at a closed meeting of the council, I however was not informed of it and so it was tabled for a later date.

10. On or about June 2, 2021 at the end of a regular Te-Moak meeting, I attempted to talk with Chairman Joe Holley just to catch up on life to which he said "we are not friends" due to me "writing that stupid letter" after which Scott Sypolt walked up to me and Joe Holley in the parking lot and ordered me to withdraw my letter. They stated that they were positive that Mr. Biers wrote my letter for me, disregarding the fact that I had copies of my drafts, the first email, and witnesses to me working on it in the Elko Band Administration. I refused to pull my letter, and again stated my claims regarding the proper removal of a seated judge based on facts from the Constitution, Scott then lied and told me that Mr. Biers appointment was conditional on a background check, I told him that was untrue because to back up my letter prior I had gone back to the livestream from the February 3, 2021 meeting and listened to verify the motion. Scott Sypolt then changed his argument stating that "Mr. Biers is a felon" and "do you know how embarrassing it would be to have a felon as a judge?" I responded with the constitution's requirements for a judge and said that the same case could be said about some current Te-Moak Council members. After this he proceeded to make a vague comment about life becoming harder and he then walked over to my colleagues from the Elko Band Council to attempt to get them

to make me pull my letter back. Before my resignation from the Te-Moak Council in late May the Council had again passed yet another resolution unlawfully claiming the authority to remove Mr. Biers from the courts as Appellate Judge under the guidance of Scott Sypolt who at the time was terminated from his law firm, Dentons US LLP, for physically attacking a Te-Moak Tribal member.

11. On September 9, 2021 the Te-Moak Council adopted resolution 2021-TM-112 referencing Mr. Biers appointment as Appellate Judge stating that Mr. Biers had falsified his background check and stated that he was a licensed attorney in Nevada; this however is not true as Mr. Biers never made such a claim from the beginning of his time as administrator when he had his man bush of a beard all the way through to when he was wrongfully terminated as the Tribal Administrator and slandered by Scott Sypolt.

I, Robert Brady, declare under penalty of perjury, under the laws of the United States, that the foregoing information is true and correct pursuant to 28 U.S Code § 1746.

EXECUTED on this the 14th day of October 2021.

DocuSigned by:
179650B2113B446...

Robert Brady

# Appendix III

# Exhibit III-A(6)

# ELKO BAND COUNCIL

001073

May 20, 2021

Chairman Joseph Holley and Council Members,
**TE-MOAK TRIBAL COUNCIL:**

This letter is to inform you and the council members of the current issue with our Appellate Court Judge Samuel Biers. That according to my review of our Constitution, Mr. Biers is still the Official "Appellate Judge" of the Te-Moak Tribal Court.

At a duly held meeting on February 3, 2021, Mr. Biers was appointed to the Supreme Court of The Te-Moak of Western Shoshone Indians of Nevada, as Appellate Judge by a Majority Vote of the Te-Moak Tribal Council by Te-Moak Resolution 21-TM-29, pursuant to the Constitution of the Te-Moak Tribe of Western Shoshone, Article 8- Judicial Branch of Government, Sec. 4. Term of Office and Qualifications.

The Justification for removing Mr. Biers was a claim that his Position was "offered" to him and that the Te-Moak Tribal Council possessed the authority to retract the offer. It is important to note that this position is not a "job" where we would "offer" and hire a Judge as an employee in a manner that we would use other court staff. For arguments sake this action of "rescinding the offer", the term "offer" would need to be part of the original motion in the first place and a verbdom of the minutes would prove this was not the case. However, it is also clearly stated as such in the livestream of the meeting from February 3rd, when the judges were Appointed pursuant to the Te-Moak Constitution Article 8, Sec. 4 and that, Mr. Biers immediately fell under the Jurisdiction of the Te-Moak Tribal Constitution and therefore, the only way to remove a Judge appointed by the Te-Moak Tribal Council is by an Election process set forth in the Constitution.

*See below a citation from the Te-Moak Constitution regarding governing factors for the Judicial Branch.*

**Te-Moak Constitution: Article 8- Judicial Branch of Government**

**Article 8 Sec. 4. Term of Office and Qualifications.**

***(a)*** *The judges of both Tribal Courts shall be appointed by the Tribal Council for six (6) years terms, except for the initial appointments to fill those positions. At the time of the initial appointments, the length of the term for approximately half of the judges on each court shall be for three (3) years in order to establish a system of staggered term of office.*

**(b)** **<u>Qualifications:</u>** A judge shall be at least thirty (30) years of age and of good moral character.

*See the following excerpt from **Te-Moak Resolution 21-TM-29***

*"**WHEREAS,** at a duly held meeting on February 3, 2021 the Te-Moak Tribal Council, by way of majority vote, hereby hires and appoints Samuel L. Biers to the Supreme Court of the Western Shoshone Indians of Nevada, as the Appellate Judge, pursuant to the Constitution of the Te-Moak Tribe of Western Shoshone Indians of Nevada, Art. 8, who shall take the Oath of Office on February 5, 2021. "*

Per the Constitution, Samuel L. Biers was **"appointed"** into office as the Appellate Judge legally set **forth by a resolution pursuant to the powers granted in the Constitution** and, the time he was "to be removed" Mr. Biers was already in office as the Appellate Judge.

*See attached a copy of Mr. Biers **Oath of Office** signed by himself, Chairman Holley, Te-Moak Chairman, and Elwood Mose, Te-Moak Election Board Chairman.*

The Te-Moak Tribal Council was misled by the Scott Sypolt, Attorney to the fact that they had the authority to remove Mr. Biers by way of a Resolution, however the Council in fact, **<u>HAS ABSOLUTLEY NO AUTHORITY</u>** to remove a Judge that has been seated Per the Constitution of the Te-Moak Tribe which is the **Supreme Law of the Land** which spells out the process for removing a seated Judge of the Te-Moak Tribe of Western Shoshone Indians of Nevada and any such action against the process set forth in the Constitution would be deemed illegal if contested in any Court.

*See the following excerpt from the Te-Moak Constitution on the correct way to remove a judge from office.*

**<u>Article 8</u>** **<u>Sec. 6 Recall of Judges and Filling of Vacancies.</u>**

*(a) A judge shall be unseated from office only in the manner set forth in Section 8 of Article 4.*

**<u>Article 4</u>** **<u>Sec. 8</u>** **<u>Recall of a Tribal Chairperson.</u>**

*(a) Upon receipt of a valid petition signed by at least twenty-five percent (25%) of the registered voters of the Tribe or by at least two-thirds (2/3) of the registered voters of any band to recall the Tribal Chairperson, it shall be the duty of the Tribal Council to direct the Tribal Election Board to call and conduct a special election to determine whether the chairperson should be recalled from office.*

*(b) If at least fifty percent (50%) of all registered voters of the tribe cast a vote and more than fifty percent (50%) of those voting in the election favor such recall, the Tribal Council shall declare the office vacant.*

**Article 8** **Sec. 6 Recall of Judges and Filling of Vacancies.**

**(a)** If the position of a judge is declared vacant, the Tribal Council shall immediately appoint a qualified person to fill the vacancy for the remainder of the unexpired term.

It is imperative that the Te-Moak Tribal Council follow our **Tribal Constitution** and correct this mistake by directing the Election Committee to put the removal of Appellate Court Judge Samuel L. Biers on the ballot for this upcoming Election in October.

If you have any question(s) call me, my cell number is 775-385-0162.

Sincerely,

Robert Brady, Te-Moak tribal Council Member

Elko Band Representative

**Cc:** Attached documents

**ATTACHMENTS**

# Appendix III

# Exhibit III-A(7)

Affidavit of Lorraine Garcia
In the Matter of the Supreme Judge of the Te-Moak Tribal Court

State of Nevada )
:
County of Elko )

---

I, Lorraine Garcia, swear and affirm under the penalty of perjury as follows:

1. I am a Tribal Court Advocate, licensed to practice in the Te-Moak Court of Indian Offenses for the Western Region.
2. I am a resident of the South Fork Indian Reservation for on or about thirty six years.
3. The governing body of the Te-Moak Tribe of Western Shoshone Indians of Nevada is the Te-Moak Tribal Council.
4. The Te-Moak Tribal Council is sworn to follow the ***Constitution of the Te-Moak Tribe of Western Shoshone Indians of Nevada, 1982.***
5. I personally listened to a meeting of the Te-Moak Tribal Council, on or about February 3, 2021 via telephonic manner.
6. At the meeting of the Te-Moak Tribal Council, the Tribal Council was hiring personnel for a Te-Moak Tribal Court that was proposed for the Te-Moak Tribe.
7. At this meeting the legal counsel for the Te-Moak Tribe, Scott Sypolt, did advise the Te-Moak Tribal Council that if they did not agree with any decision of a Tribal Judge, that Judge could be immediately fired by the Te-Moak Tribal Council.
8. I am aware that this is false legal advice pursuant to, ***Article 8, Section 6. Recall of Judges and Filling of Vacancies (a) A judge shall be unseated from office only in the manner set forth in Section 8 of Article 4 of the Constitution of the Te-Moak Tribe of Western Shoshone Indians of Nevada.***
9. ***Article 4, Section 8. Recall of a Tribal Chairperson. (b) Upon receipt of a valid petition signed of the registered voters of the Tribe or at least two/thirds of the voters of any Band to recall the Tribal Chairperson, it shall be the duty of the Tribal Council to direct the Tribal Election Board to call and conduct a special election to determine whether the Chairperson should be recalled from that office.***
10. At the meeting of the Te-Moak Tribal Council, on or about February 3, 2021, Mr. Samuel Biers was selected by the Te-Moak Tribal Council to be the Supreme Judge of the Appellate Court of the proposed Te-Moak Tribal Court.
11. I am aware that on or about February 8, 2021, the Tribe did a press release with the Elko Daily Free Press announcing the formation of the Te-Moak Tribal Court and the personnel of said court including the Supreme Judge of the Appellate Court, Samuel Biers.
12. I personally viewed a post from a Facebook page which congratulated the newly sworn in personnel for the Te-Moak Tribal Court including Supreme Judge of the Appellate Court, Samuel Biers.
13. I am aware of postings on the Te-Moak Tribe Facebook page that show Res. No. 21-TM-112 which is a Resolution of the Te-Moak Tribal Council. Said Resolution states **that it**

**is an unequivocal condemnation of Samuel Lee Biers for fraudulently representing himself to be a Justice of the Te-Moak Supreme Court.**

14. I have personal knowledge that Samuel Lee Biers has not been recalled by the members of the Te-Moak Tribe pursuant to Article 4, Section 8 of the Te-Moak Tribe of Western Shoshone Constitution.
15. I have personally viewed press releases purportedly by the Te-Moak Tribal Council that falsely state that the Te-Moak Tribe is not now or has never been affiliated with Samuel Biers, printed in the Elko Daily Free Press.
16. I have personally spoken with previous Trial Court Judge of the purported Te-Moak Tribal Court, Ramon Acosta, who resigned as Trial Judge due to the blatant interference of his duties as Trial Judge by Scott Sypolt.
17. I have personally read a letter of resignation by Trial Judge of the Te-Moak Tribal Court, Carrie Frias, who resigned as Trial Judge in part due to the faulty legal advice of Attorney Scott Sypolt.
18. I am aware that a Supreme Judge of the Appellate Court is appointed for six years.
19. I am aware that the six year term of the Supreme Judge of the Appellate Court for the Te-Moak Tribe has not expired.
20. I am aware that the Supreme Judge of the Appellate Court for the Te-Moak Tribe, Samuel Biers, has not been recalled pursuant to Article 4, Section 8.

Dated this 15th Day of October, 2021

[signature]
Lorraine Garcia
Tribal Court Advocate

SUBSCRIBED AND SWORN TO BEFORE ME

THIS 15th DAY OF OCTOBER, 2021

[signature]
NOTARY PUBLIC

SUSAN ZAZUETA
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 01-12-22
Certificate No: 10-1162-6

# Appendix III

# Exhibit III-A(8)

# Affidavit

STATE OF NEVADA
COUNTY OF ELKO INDIAN COLONY (ELKO BAND OFFICE)

The undersigned, **CHAUNA COTA AND JAY ALLISON**, being sworn, hereby deposes and says:

1. I am over the age of 18 and am a resident of the State of Nevada. I have personal knowledge of the facts herein, and if called as a witness, could testify completely thereto.
2. I suffer no legal disabilities and have personal knowledge of the facts set forth below.
3. I Chauna Cota am writing this to let it be known that on the 30th day of December Jay Allison, Juan Arevelo, Susana Sandovol, Lyle Yowell and myself were in the conference room at the Elko Band Office passing out the distributions to the rest of the tribal members that hadn't picked up their money. It was starting to wind down for the day. Suzanna spoke up and asked, "Hey you wanna split what's leftover here? Nobody is going to know. Who are they gonna to have look into it? Shit, nobody would find out. Think about it guys, who is going to find out?" It was at this moment that I was thinking, What the fuck??? I don't want there to be any wrong doing while I'm around. She continued to ask if we wanted to take the large amount of cash around $50,000. I am writing this because I do not want to be involved in anything that is wrong. I have let Jay know that he should also write an affidavit as well, to cover our backs. I couldn't tell if she was serious or joking so I am playing it safe. There was a lot of money present that day. I don't think that kind of talk is good from our Vice Chair or anyone in that position, joking or not. With that I am writing this for Jay and I, for Officer Grundy's records.

I declare that, to the best of my knowledge and belief, the information is true, correct and complete.

Executed this 2ND day of FEBRUARY 2022.

[signature]
Chauna Cota

[signature]
Jay Allison

[signature]
Lyle Yowell (Witnessed the conversation)

# Appendix III

# Exhibit III-A(9)

**ELKO BAND POLICE DEPARTMENT**
**1509 SHOSHONE CIRCLE**
**ELKO, NV 89801**
**775-316-7951**

To: The Te-Moak Supreme Court

From: W. Grundy, Chief of Police

Date: 03/07/2022

At the Court's request, I am submitting this letter as a summary of a telephone call I had with Mr. Davis Gonzalez on 03/03/2022.

On the aforementioned date, I received a telephone call on my department cell phone from Mr. Gonzalez. He stated that a TPO that was issued by Judge Hayes not only excluded the parties mentioned from being within 300 feet of the *Te-Moak administration building, but it also included the Diabetes center. I informed him that I would re-read the order and act accordingly.*

*As we continued our conversation, I informed him that my hands were tied when it came to this order because Judge Sam Biers had essentially entered an Order that nullified the Order he was referencing. Mr. Davis then stated that Judge Biers was an Appellate Judge and had no reason to be involved with the TPO that was issued by Judge Hayes. He went on to say that if Judge Biers got involved with the TPO Order, he would not be able to rule on any cases that were appealed as a result. Mr Gonzalez also stated that he had been present for he motions that had confirmed Judge Biers to his seat, at the Te-Moak level and never raised any object to Judge Biers being legally seated.*

*I told Mr. Gonzalez that I agreed with his analysis, but it did not change the fact that I was in possession of two Court Orders that contradicted each other and all the internal fighting made it impossible for me to make an informed decision. Mr. Davis agreed.*

William Grundy

Chief of Police

# Appendix III

# Exhibit III-B(1)

**TE-MOAK TRIBE OF WESTERN SHOSHONE**

January 17, 2020

To All Concerned:

Recent events that transpired over the hiring of a qualified non-native person as the Te-Moak Tribal Administrator, (as asserted by four or five members), has unjustifiably cast a negative light on the Tribe, the Council, its administration and Mr. Biers himself. This should be a lesson to some members in the community that just because someone says something about another person or you read something on the internet about a person does not make it true, as in this case, those statements and what you read about Mr. Biers' criminal history are false.

In response to the false accusations regarding his character, Mr. Biers voluntarily subjected himself to an unprecedented, post-employment background investigation, and he even donated hundreds of dollars into the Te-Moak General Fund to cover the costs. As a Tribe we agreed to assure "fair treatment of applicants and employees in all aspects. . . without regard for political affiliation, family ties, age, race, color, national origin, sex, marital status, religious creed, or other non-merit considerations and with proper regard for their privacy and other constitutional rights as citizens. . . ." Te-Moak Personnel Manual, at 1(I).

A review of Mr. Biers' confidential, personnel records; drug testing results; DMV history report; as well as a federal and state criminal background investigation "certified report disclose that none of the accusations against Mr. Biers are true, in fact all of the information reviewed actually shows that Mr. Biers has no criminal history, no trace of any drugs in his system, nor does Mr. Biers even have a parking ticket on his driving record.

The current Te-Moak Personnel Policy did not require a mandatory background investigation for Mr. Biers because such a report is required only if an employment applicant has been "convicted of a felony or gross misdemeanor. . . ." Te-Moak Personnel Manual, at 6(V)(A)(as amended 1993). According to official certified government documents Mr. Biers has no felony or gross misdemeanor convictions.

Therefore, on January 21, 2020 Mr. Biers will resume his full duties as the Te-Moak Tribal Administrator, relieving Sharla Dick as the Acting Tribal Administrator. The Tribal Council, as a governing body, will continue to direct the Tribal Administrator, who in turn, is responsible for the management of Te-Moak programs.

Joseph Holley

Joseph Holley
Te-Moak Tribal Council -Chairman

# Appendix III

# Exhibit III-B(2)

1-787 (Rev. 08-10-2016)

**U.S. Department of Justice**

Federal Bureau of Investigation
Criminal Justice Information Services Division
Clarksburg, WV 26306

SAMUEL LEE BIERS
1188 COURT STREET #1
ELKO, NV 89801

Date: 01-21-2020

The Criminal Justice Information Services (CJIS) Division of the Federal Bureau of Investigation (FBI) has completed the following fingerprint submission:

**Subject Name**

SAMUEL LEE BIERS

**Search Completed Result** 01-21-2020 E2020021000000102891

**A SEARCH OF THE FINGERPRINTS PROVIDED BY THIS INDIVIDUAL HAS REVEALED NO PRIOR ARREST DATA AT THE FBI. THIS DOES NOT PRECLUDE FURTHER CRIMINAL HISTORY AT THE STATE OR LOCAL LEVEL.**

Date of Birth: [redacted]

Social Security number: [redacted]

The result of the above response is only effective for the date the submission was originally completed. For more updated information, please submit new fingerprints of the Subject.

In order to protect Personally Identifiable Information, as of August 17, 2009, FBI policy has changed to no longer return the fingerprint cards. This form will serve as the FBI's official response.

This Identity History Summary (IdHS) is provided pursuant to 28 CFR 16.30-16.34 solely for you to conduct a personal review and/or obtain a change, correction, or updating of your record. **This IdHS is not provided for the purpose of licensing or employment or any other purpose enumerated in 28 CFR 20.33.**

Any questions may be addressed to the Customer Service Group at 304-625-5590. You may also visit the website at www.fbi.gov/checks for further instructions.

Scott A. Rago
Section Chief
Biometric Services Section
Criminal Justice Information Services Division

MEDTOX LABORATORIES INC.
402 WEST COUNTY ROAD D
ST PAUL, MN 55112
651-636-7466

Jennifer A. Collins, Ph.D.

LABORATORY REPORT

| | |
|---|---|
| Account #: 976971 TEMOAK TRIBE | Accession #: E1934705 |
| EMPLOYER NAME: | Specimen I.D.: Z39052330 |
| DR NEIL J DASH OF WESTERN SHOSHONE | Donor Name/ID: BIERS,SAMUEL |
| D.R.S | SSN: |
| 546 FRANKLIN AVE | Age: Sex: |
| MASSAPEQUA, NY 11758 | Reason for test: Pre-Employment |

| General Information | Date Collected | Date Received | Date Reported |
|---|---|---|---|
| TEMOAKTRIBEOF/8557 | 01/13/2020 11:53 | 01/15/2020 | 01/15/2020 11:22AM |

| TEST(S) REQUESTED | RESULTS | UNITS | THERAPEUTIC RANGE |
|---|---|---|---|
| DRUGS OF ABUSE SCREEN 89700 | | | |
| AMPHETAMINES | NEGATIVE | ng/mL | |
| MDMA | NEGATIVE | ng/mL | |
| COCAINE METABOLITE | NEGATIVE | ng/mL | |
| OPIATES | NEGATIVE | ng/mL | |
| 6-ACETYLMORPHINE | NEGATIVE | ng/mL | |
| PHENCYCLIDINE (PCP) | [redacted] | ng/mL | |
| MARIJUANA (THC) METABOLITE | NEGATIVE | ng/mL | |
| CREATININE, URINARY | 51.5 | mg/dL | > = 20 |
| NITRITES | NEGATIVE | mcg/mL | < 200 |
| URINE pH | 5.3 | | 4.5 - 8.9 |

THE DRUGS IN THIS PROFILE ARE SCREENED BY IMMUNOASSAY. ANY POSITIVE RESULT IS CONFIRMED BY CHROMATOGRAPHY WITH MASS SPECTROMETRY. THE FOLLOWING THRESHOLD CONCENTRATIONS ARE USED FOR THIS ANALYSIS:

| DRUG | SCREENING THRESHOLD | CONFIRMATION THRESHOLD |
|---|---|---|
| AMPHETAMINES | 500 NG/ML | |
| AMPHETAMINE | | 250 NG/ML |
| METHAMPHETAMINE | | 250 NG/ML |
| MDMA | | 250 NG/ML |
| MDA | | 250 NG/ML |
| MDEA | | 250 NG/ML |
| COCAINE METABOLITE | 150 NG/ML | 100 NG/ML |
| OPIATES | 2000 NG/ML | |
| CODEINE | | 2000 NG/ML |
| MORPHINE | | 2000 NG/ML |
| 6MAM | 10 NG/ML | 10 NG/ML |
| PHENCYCLIDINE | 25 NG/ML | 25 NG/ML |
| MARIJUANA METABOLITE | 50 NG/ML | 15 NG/ML |

ALTERNATE EXPLANATIONS SHOULD BE CONSIDERED FOR ANY POSITIVE RESULT.
THIS PANEL INCLUDES TESTS FOR SPECIMEN VALIDITY.

Certified by: TOMASZEWSKI,JEFF

** FINAL REPORT **

Collected at 7757386973 MEDTOX collection site #25625
A1 ALCOHOL & DRUG COLLECTIONS, LLC.
ELKO, NV

# Appendix III

# Exhibit III-B(3)

NEVADA DEPARTMENT OF PUBLIC SAFETY
CRIMINAL HISTORY RECORDS REPOSITORY
APPLICANT FINGERPRINT RESPONSE

PERSONAL IDENTIFICATION
XXX
XXX
XXX, NV 00000

REFERENCE

ACCOUNT NUMBER: [redacted] DATE FINGERPRINTED: 2011/05/18

APCN: PS0340031A
NAME: BIERS, SAMUEL LEE
DOB: [redacted]
OCA: [redacted]

STATE NEGATIVE

A TECHNICAL FINGERPRINT SEARCH OF THE ABOVE INDIVIDUALS FINGERPRINTS WAS PERFORMED THROUGH THE WESTERN IDENTIFICATION NETWORK AUTOMATED FINGERPRINT IDENTIFICATION SYSTEM (WIN-AFIS).

PURSUANT TO NRS 179A.100, THE SEARCH FAILED TO DISCLOSE A MATCHING CRIMINAL HISTORY RECORD OR PURSUANT TO NRS 179A.210, BASED ON INFORMATION RECEIVED ON THE BACKGROUND CHECK

OR

IT HAS BEEN DETERMINED THAT, NO PRIOR CRIMINAL HISTORY INFORMATION EXISTS FOR WHICH NOTICE IS SUBJECT TO RELEASE OR PURSUANT TO NRS 449.188, BASED ON INFORMATION RECEIVED ON THE BACKGROUND CHECK,

OR

IT HAS BEEN DETERMINED THAT, THIS SUBJECT HAS NOT BEEN CONVICTED OF A CRIME LISTED IN NRS 449.188.

THE INFORMATION CONTAINED IN THIS DOCUMENT IS PROVIDED FOR IN ACCORDANCE WITH THE PROVISIONS OF NEVADA REVISED STATUTE (NRS) 179A.100 -179A.210. THIS RESPONSE IS BASED ON THOSE RECORDS, DATABASES, AND DOCUMENTS AVAILABLE TO THE NEVADA RECORDS CRIMINAL HISTORY CENTRAL REPOSITORY AT THE TIME THE BACKGROUND CHECK WAS PERFORMED. THIS INFORMATION IN THIS DOCUMENT SHOULD NOT BE CONSTRUED TO PRECLUDE THE EXISTENCE OF A CONVICTION RECORD OR ADDITIONAL RECORDS OF THE TYPES LISTED IN NRS 179A.190 WHICH MAY BE IN A RECORD, DATABASE OR DOCUMENT NOT AVAILABLE OR ACCESSIBLE BY THE CENTRAL REPOSITORY. USE OF THIS INFORMATION IS REGULATED BY LAW. IT IS PROVIDED FOR OFFICIAL USE ONLY AND MAY BE USED ONLY FOR THE PURPOSE REQUESTED. DISSEMINATION TO A SECOND PARTY OR ENTITY IS PROHIBITED. REVISED 062608

A check of the State of Nevada Sex Offender Registry database indicates the applicant is not a registered sex offender as of 2011/05/19 pursuant to NRS 179A.100.

DATE REPORT GENERATED: 2011/05/19

NEVADA DEPARTMENT OF PUBLIC SAFETY
RECORDS AND IDENTIFICATION BUREAU

5-20-11

I HEREBY CERTIFY THAT THIS IS A TRUE AND ACCURATE COPY AND THAT THE ORIGINAL DOCUMENT IS CONTAINED IN THE FILES OF THE NEVADA DEPARTMENT OF PUBLIC SAFETY RECORDS AND IDENTIFICATION SERVICES BUREAU.

[signature]

# Appendix III

# Exhibit III-B(4)

ELKO COUNTY SHERIFF'S DEPT.
775 WEST SILVER STREET
ELKO, NEVADA 89801

**RECEIPT** DATE 1/14/20 No.

RECEIVED FROM Samuel Buss $15.00

Fifteen + 00/100 DOLLARS

FOR RENT
FOR Fingerprints

| | | |
|---|---|---|
| ACCOUNT | | |
| PAYMENT | 15 | 00 |
| BAL. DUE | | |

CASH
CHECK
MONEY ORDER
CREDIT CARD

FROM ______ TO ______

BY ______

3-11

---

**RECEIPT**

**Te-Moak Tribe of Western Shoshone**
525 Sunset St.
Elko, NV 89801
**775-738-9251**

11041

DATE 1/27/2020

RECEIVED FROM Samuel Bias $ 255.00

Two hundred fifty five dollars DOLLARS

FOR Public Donation

| | | |
|---|---|---|
| AMOUNT OF ACCOUNT | 255 | 00 |
| THIS PAYMENT | 255 | 00 |
| BALANCE DUE | 0 | |

☑ CASH
☐ CHECK
☐ CREDIT CARD
☐ MONEY ORDER

BY ______

**THANK YOU**

ASPEN
500 ASPEN WAY
ELKO, NV 89801-2707
312561-0825
(800)275-8777
01/14/2020 02:07 PM

| Product | Qty | Unit Price | Price |
|---|---|---|---|
| PM 2-Day Flat Rate Env | 1 | $7.35 | $7.35 |
| (Domestic) | | | |
| (CLARKSBURG, WV 26306) | | | |
| (Flat Rate) | | | |
| (Expected Delivery Day) | | | |
| (Friday 01/17/2020) | | | |
| (USPS Tracking #) | | | |
| (9505 5100 5051 0014 3975 43) | | | |
| Insurance | | | $0.00 |
| (Up to $50.00 included) | | | |

Total: $7.35

Debit Card Remit'd $7.35
(Card Name:VISA)
(Account #:XXXXXXXXXXXX4242)
(Approval #)
(Transaction #:369)
(Receipt #:026614)
(Debit Card Purchase:$7.35)
(Cash Back:$0.00)
(AID:A0000000980840 Chip)
(AL:US DEBIT)
(PIN:Verified)

Includes up to $50 insurance

Text your tracking number to 28777 (2USPS) to get the latest status. Standard Message and Data rates may apply. You may also visit www.usps.com USPS Tracking or call 1-800-222-1811.

Save this receipt as evidence of insurance. For information on filing an insurance claim go to https://www.usps.com/help/claims.htm

Preview your Mail
Track your Packages
Sign up for FREE @
www.informeddelivery.com

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.

# Identity History Summary Request Confirmation

From: Criminal Justice Information Services (edo@services.fbi.gov)

To: sambiers@yahoo.com

Date: Friday, January 10, 2020, 01:13 PM PST

Your Identity History Summary Request has been accepted and will be processed in the date order in which it was received.

Samuel Lee Biers
Your Order number is: D86081320010
Your payment verification code is: 26MODA3O

You indicated your fingerprints would be delivered by: MAIL

Please refer to the following details when submitting your fingerprints:

If delivering your fingerprints via Mail, please send your completed fingerprint card along with a copy of this confirmation email to:

FBI CJIS Division
ATTN: ELECTRONIC SUMMARY REQUEST
1000 Custer Hollow Road
Clarksburg, West Virginia 26306

If you have any questions regarding this e-mail contact 304-625-5590 or identity@fbi.gov

This message has been transmitted to you by the FBI Criminal Justice Information Services Division. If you are not the intended recipient of this message, please destroy it promptly without any retention, dissemination, or reproduction (unless required by law), and please notify the sender of the error immediately by separate e-mail to identity@fbi.gov or by calling the Customer Service Group at 304-625-5590.

This is an automated message. Please do not reply to this e-mail.

# Appendix III

# Exhibit III-B(5)

TE-MOAK TRIBE OF WESTERN SHOSHONE

525 Sunset Street • Elko, Nevada 89801
775-738-9251 • Fax 775-738-2345

**JOB ANNOUNCEMENT**

| | |
|---|---|
| **POSITION:** | **Tribal Administrator (Full-Time)** |
| **OPENING DATE:** | November 8, 2019 |
| **CLOSING DATE:** | November 22, 2019 |
| **SALARY:** | $20.00 - $25.00 per hour |
| **LOCATION:** | Te-Moak Administration Building |

**JOB DEFINITION:**

The Tribal Administrator will ensure effective and efficient management of the government functions, departments, programs, 638 contracts, acts as a governmental liaison with other agencies, and performs all other duties as directed by the Tribal Council and the Tribal Chairperson in order to accomplish all administrative and organizational goals. The Tribal Administrator will direct the daily operations of the tribal government, administer tribal policies and procedures, financial obligations, and goals for government operations as defined by the Tribal Council.

**EXAMPLE OF PRINCIPAL ASSIGNMENTS:**

The incumbent prepares recommendations to the Tribal Council based on analysis and examination of information. Prepares short and long-term objectives and goals, initiates discussion between and among tribal programs and funding agencies. Coordinates the Finance Office on the control, oversight, management, and reporting of program(s) financial status, and supervises tribal employees. Keeps the Tribal Chairman and Tribal Council informed on all aspects of program operation and issues relating to the administration of tribal programs; performs all duties related to the operation of an office.

**EDUCATION AND EXPERIENCE REQUIRED:**

A Master's Degree from an accredited university or college in Public Administration, Business, Planning, Management or related field OR a Bachelor's Degree with 10 years of experience. Five to ten years of experience in Tribal Government operations. Five to ten years of demonstrated experience in a leadership position, including management of multiple departments, and supervising personnel. Demonstrated capability to interface and maintain effective relationships with Tribal Council, Tribal Committees, boards, outside agencies, governmental and program partners, departments and employees in a team-oriented environment.

**KNOWLEDGE, SKILLS AND REQUIREMENTS NEEDED:**

Must possess excellent interpersonal written and verbal skills as required in order to work effectively with the general public, department staff, other tribal agencies, and the Tribe's governing bodies.

Must possess strong administrative, organizational, planning, communication skills as demonstrated through past work experience, and the ability to prioritize and multi-task responsibilities.

Must exemplify a commitment to a positive and ethical tribal organization image, work environment, and a professional image to the public.

Ability to read, analyze and interpret various reports and documents, including financial records, legal information, and application of complex federal regulations. Extensive experience working with the BIA and knowledge of IHS rules and regulations.

Must have the ability to plan, coordinate and direct staff engaged in various professional, technical, and clerical functions.

Must have working knowledge of tribal sovereignty, tribal government structure, general knowledge of tribal laws, customs, traditions, and the ability to work and promote Native American culture, language, traditions, and communities.

Must have experience in planning, grant and contract administration, drafting policies and procedures, and various reports.

Must have experience supervising or managing multiple programs and grants.

Ability to exercise independent judgment complex situations with minimal supervision or direction.

Must have knowledge of computer programs such as Microsoft Word, PowerPoint, Excel, and Outlook.

**ADDITIONAL REQUIREMENTS:**

A Nevada Driver's License and be full insurable under the Tribe's insurance policy. References are mandatory to check previous employment and working habits, any falsification of employment information is grounds for immediate disqualification or dismissal.

**INDIAN PREFERENCE:**

***Preference in filling for vacancies is given to qualified enrolled members in accordance with the Indian Preference Act (Title 25, U.S. Code, Section 472 and 473). Te-Moak Tribe is an Equal Opportunity Employer and all qualified applicants will be considered in accordance with the provisions of Section 703 (1) of the Title VII of the Civil Rights Act of 1964, as amended in 1991.***

**HOW TO APPLY:**

An employment application can be obtained from the Te-Moak Tribal Administration Office, 525 Sunset Street, Elko, NV 89801 or at temoaktribe.com and returned with any pertinent documents. **All applicants must be received on or before 5:00 p.m. of the closing date.** **ANY LATE, INCOMPLETE AND FAXED APPLICATIONS WILL NOT BE ACCEPTED!**

***This announcement does not constitute an employment agreement between the applicant and the Te-Moak Tribe nor does it imply anything other than an announcement of a job opening and is subject to revision as the needs of the employer and job requirements change.***

**FOR FURTHER INFORMATION CONTACT: (775) 738.9251**

# Appendix III

# Exhibit III-B(6)

TE-MOAK TRIBE OF WESTERN SHOSHONE

525 Sunset Street • Elko, Nevada 89801
775-738-9251 • Fax 775-738-2345

December 12, 2019

Mr. Samuel Biers
1188 Court Street, #1
Elko, NV 89801

Dear Mr. Biers:

The Te-Moak Tribe of Western Shoshone is pleased to offer you the position of the Tribal Administrator. Your skills and experience will be an ideal fit for this position.

Your hourly rate is $23.00 per hour with your official start date on Monday, December 16, 2019. The probation period will begin on your first day of employment for a period of six (6) months.

We look forward to welcoming you to the Te-Moak Tribe of Western Shoshone. If you have any questions or concerns, please do not hesitate to call our office at the above address/phone number.

Sincerely,

Joseph Holley, Chairman
Te-Moak Tribe of Western Shoshone

Office file

OFFICIAL TRIBAL SEAL

# Appendix III

# Exhibit III-B(7)

TE-MOAK TRIBE OF WESTERN SHOSHONE

525 Sunset Street • Elko, Nevada 89801
775-738-9251 • Fax 775-738-2345

# MEMORANDUM

TO: Hinton-Burdick

FROM: Te-Moak Tribal Administrator

SUBJECT: Tribal Administrator

DATE: March 15, 2021

As the Te-Moak Tribal Chairman, I grant the Tribal Administrator, Samuel L. Biers, paid administrative leave for the following dates and times: March 15, 2021 (5 hours); March 16-19, 2021(25.5 hours) and March 29, 2021 (8 hours). Mr. Biers will be on bereavement leave for the loss of an immediate family member for the period March 19, 2021 through March 29, 2021 and he will be using his sick leave totaling 40 hours for that week as allowed by policy.

DATED this the 15th day of March 2021.

Joseph Holley
Te-Moak Tribal Chairman

# Appendix III

# Exhibit III-B(8)

**TE-MOAK TRIBE OF WESTERN SHOSHONE**

# TE-MOAK APPELLATE COURT JUDGE
# OATH OF OFFICE

"I, _____Samuel Biers_____, do solemnly swear that I will support and defend the Constitution of the United States and the Constitution of the Te-Moak Tribe of Western Shoshone Indians of Nevada; that I will carry out, faithfully and impartially, the duties of my office to the best of my ability; that I will promote and protect the best interests of the Te-Moak Tribe of Western Shoshone Indians of Nevada."

INVALID IF NO SEAL APPEARS BELOW:

OFFICIAL TRIBAL SEAL

Samuel Biers
Te-Moak Appellate Court Judge

2/6/2021
Date

Joseph Holley, Chairman
Te-Moak Tribe of Western Shoshone

2-6-2021
Date

Elwood Mose
Te-Moak Election Board Chairman

6 FEB 2021
Date

# Appendix III

# Exhibit III-B(9)

EMPLOYEE NAME: Sam Biers



## PERFORMANCE INDICATORS:

| Quality | Exceeds | Meets Fully Successful | Does Not Meet Fully Successful "Explanation" |
|---|---|---|---|
| **Knowledge of Field or Profession:** Maintains and demonstrates technical competence and/or expertise in areas of assigned responsibility. | ✓ | | |
| **Accuracy and Thoroughness of Work:** Plans, organizes, executes, work logically. Anticipates and analyzes problems clearly and determines appropriate solution. Work is correct and complete. | ✓ | | |
| **Soundness of Judgment and Decisions:** Assesses tasks objectively and researches and documents assignments carefully. Weighs alternative courses of action, considering long and short term implications. Makes and executes timely decisions. | ✓ | | |
| **Effectiveness of Written Documents:** Written work is clear, revelant, concise, well organized, grammatically correct, and appropriate to audience. | ✓ | | |
| **Effectiveness of Communications:** Presentation meets objectives, is persuasive, tactful, and appropriate to audience. Demonstrates attention, courtesy, and respect for other points of view. | ✓ | | |
| **Timeliness in Meeting Deadlines:** Completes work in accordance with established deadlines. | ✓ | | |
| **Effectiveness of Supervision:** Directs and coordinates activities of unit, assuring deadlines are met. Coaches, counsels, developes, and utilizes staff effectively, demonstrates a commitment to the work force. | | ✓ | |
| OTHER (Specify): | | | |

**Recommendations/Suggestions for Improvement** (Attach Additional Recommendations)

## TEAMWORK:

| | | | |
|---|---|---|---|
| **Participation:** Willingly participates in group activities, performing in a thorough and complete fashion. Communicates regularly with team members. Seeks team consensus. | ✓ | | |
| **Leadership:** Provides encouragement, guidance and direction to team members as needed. Adjusts style to fit situation. | ✓ | | |
| **Cooperation:** Supports team initiatives. Demonstrates respect for team members, accepts the view of others, and actively supports team decisions. | ✓ | | |

**Recommendations/Suggestions for Improvement:** (Attach Additional Recommendations)

## CUSTOMER SERVICE:

| | | | |
|---|---|---|---|
| **Quality of Service:** Delivers high quality products and service to both external and internal customers. Initiates and responds to suggestions for improving service. | ✓ | | |
| **Timeliness of Service:** Delivers quality products and service in accordance with time schedules agreed upon with customer. | ✓ | | |
| **Courtesy:** Treats external and internal customers with courtesy and respect. Customer satisfaction is high priority. | ✓ | | |

**Recommendations/Suggestions for Improvement:** (Attach Additional Recommendations).

EMPLOYEE PERFORMANCE PLAN AND EVALUATION REPORT

EMPLOYEE NAME: Sean Biers RATING PERIOD Jan 2020 TO Feb 2021

JOB TITLE: Administrator PROGRAM: Tenure Administration

SUPERVISOR: Chairman Date Rec'd: /Employee's Initials

| SKILLS: | 5A Critical Element (✓) | 5B Exceeds Fully Successful | 5C Meets Fully Successful | 5D Does Not Meet Fully Successful |
|---|---|---|---|---|
| A. Skills and Knowledge necessary for job. | | | | |
| 1. does a lot of research, Bring stuff to Council | ✓ | | | |
| 2. good with Computer and writings | ✓ | | | |
| 3. | | | | |
| B. Interest in and time spent on improving skills and knowledge. | | | | |

QUALITY OF PERFORMANCE

A. Performance Elements: (List measurable items to be accomplished in accordance with position description)

| | | | | |
|---|---|---|---|---|
| 1. He works hard on products handed to him | ✓ | | | |
| 2. Keeps ahead of what is Coming up | ✓ | | | |
| 3. Still needs more time with employees | | | ✓ | |
| 4. | | | | |
| 5. | | | | |

| B. RELIABILTY | | | | |
|---|---|---|---|---|
| 1. Attendance | ✓ | | | |
| 2. Punctuality | ✓ | | | |
| 3. Meeting Deadlines | ✓ | | | |

| C. TEAMWORK/CUSTOMER SERVICES | | | | |
|---|---|---|---|---|
| 1. With other staff members | | | ✓ | |
| 2. With Supervisor | ✓ | | | |
| 3. Outside of Agency (if required by job) | | ✓ | | |

**INSTRUCTIONS:**

Blocks 5B, 5C, 5D. Rate actual performance by entering 2 for critical elements and 1 for non-critical elements in appropriate column.
Blocks 5E, 5F, 5G. Enter total of each column.
Blocks 5H. Enter total from 5E, 5F and 5G.
Block 6A Check Off.
Blocks 7 - 12. Self-explanatory

| 5E Exceeds: | 5F Meets: | 5G Does Not Meet: |
|---|---|---|
| 10 | 2 | |
| 5H Enter Total (5E+5F+5G = 5H) | 12 | |

6A Summary Rating *(See decision table in 6B)*

☑ Exceeds Fully Successful ☐ Fully Successful ☐ Successful ☐ Marginal ☐ Unacceptable

6B Decision table (Check off Summary Rating in Block 6A).

Rating of Exceeds if 5E equals 5H.
Rating of Fully successful if no element is rated in 5D, 5F is greater than zero and 5E is greater that 5F.
Rating of Successful if none of the above apply.
Rating of Unacceptable if any critical element is rated in 5D.
Rating of Marginal if 5G is greater than 5E and no critical Element is rated in 5D.

Employee Signature: [signature] Date: 2/19/2021

Supervisor Signature: [signature] Date: 2-19-2021

Approving Official Signature: Date:

# Appendix III

# Exhibit III-B(10)

Fwd: Treasury Report 10-1-2020 to 12-31-2020

From: Te Moak Administrator (te.moak.adm@outlook.com)

To: sambiers@yahoo.com

Date: Wednesday, June 23, 2021, 05:36 PM PDT

Get Outlook for Android

**From:** Alice Tybo <alicetybo@gmail.com>
**Sent:** Wednesday, January 20, 2021 7:37:30 AM
**To:** Te Moak Administrator <Te.Moak.Adm@outlook.com>
**Cc:** Joe Holley <jhchairman1@yahoo.com>
**Subject:** Re: Treasury Report 10-1-2020 to 12-31-2020

Sam: Thank you for all that you do. You are the best person for us to have as the administrator, during this pandemic and troubling court times. I really appreciate you, your knowledge & professionalism. - Alice

Sent from my iPhone - Alice

On Jan 20, 2021, at 7:10 AM, Te Moak Administrator <Te.Moak.Adm@outlook.com> wrote:

Pursuant to the request of Council members, please find a copy of the quarterly Treasury Report for CARES Program 11 based on the information provided and documented in this office. Thank you for the help.
<OIG Financial Progress Report_10_01_2020.pdf>

# Appendix III

# Exhibit III-B(11)

TE-MOAK TRIBE OF WESTERN SHOSHONE

# Te-Moak Tribe of Western Shoshone
# Facsimile Cover Sheet

TO: Employment Security Division
Adjudication Center

FAX NUMBER: ~~702.486.7987~~ 775.684.0338 @ 4:05pm

DATE: 06-07-2021

TIME SENT: ~~3:47~~pm

NO. OF PAGES: 8 (Including Cover Sheet)

**MESSAGE:**

Samuel L. Biers

**The original document being transmitted:**

☒ Will not be sent ☐ Will be sent Fed Ex ☐ Will be sent by regular mail ☐ Other

☐ Call when you receive this fax at (775) 738-9251

IF YOU ENCOUNTER DIFFICULTIES RETRIEVING THIS DOCUMENT, PLEASE CALL (775) 738-9251.

*WARNING:* This facsimile transmittal and any accompany documents contain information belonging to the sender, which may be confidential, and legally privilege. This information is intended only for the use of the individual or entity to whom this facsimile transmittal was sent as indicated above. If you received this fax in error, please send it to the intended recipient named above or call the sender immediately.

# TRANSMISSION VERIFICATION REPORT

TIME : 06/07/2021 04:27PM
NAME :
FAX :
TEL :
SER.# : U64969A9N213074

| | |
|---|---|
| DATE,TIME | 06/07 04:20PM |
| FAX NO./NAME | 17024867987 |
| DURATION | 00:06:24 |
| PAGE(S) | 08 |
| RESULT | OK |
| MODE | STANDARD<br>ECM |

# TRANSMISSION VERIFICATION REPORT

TIME : 06/07/2021 04:19PM
NAME :
FAX :
TEL :
SER.# : U64969A9N213074

| | |
|---|---|
| DATE,TIME | 06/07 04:12PM |
| FAX NO./NAME | 17756840338 |
| DURATION | 00:06:23 |
| PAGE(S) | 08 |
| RESULT | OK |
| MODE | STANDARD<br>ECM |

**Employment Security Division**
Adjudication Center
500 East Third Street
Carson City, NV 89713-0035
Tel (775) 684-0302 Fax (775) 684-0338
Tel (702) 486-7999 Fax (702) 486-7987

**DETR**
Nevada Department of Employment, Training and Rehabilitation
ONE NEVADA - Growing A Skilled, Diverse Workforce

15833814
http://ui.nv.gov

001145

TE-MOAK TRIBAL COUNCIL TGDP
525 SUNSET ST
ELKO, NV 89801-2598

**Employer Account No:** 005090200
**Re:** Notice of Claim Filed - Separation Base Period Employer
**Claimant Name:** SAMUEL BIERS
**SSN:** [redacted]
**Separation Date:** 03/29/2021
**Date Mailed:** 05/26/2021
**Due Date:** 06/07/2021

You are the Last employer on a claim for unemployment insurance benefits UI filed by SAMUEL BIERS. The claimant provided the following reason for separation: Other - discharge / fired.

To determine if SAMUEL BIERS is eligible for benefits, specific information concerning the reason for separation is needed from TE-MOAK TRIBAL COUNCIL TGDP. Please provide all relevant facts and supporting documentation regarding the separation. Attach additional pages if needed.

| Maximum Potential Benefit Cost $12,558.00 or 100.000% of all benefits paid on this claim For the Year 05/23/2021 to 05/21/2022 | | |
|---|---|---|
| Your Reported Wages Are: | QTR 1/2020 | $18,402.10 |
| | QTR 2/2020 | $19,065.84 |
| | QTR 3/2020 | $24,754.65 |
| | QTR 4/2020 | $22,611.30 |
| | **TOTAL** | $84,833.89 |

This is your **ONLY** opportunity to protest the claimant's eligibility to receive benefits and to protect your right to appeal. Refer to the attached form for an explanation of the business' rights and responsibilities. In the event there are changes to the monetary entitlement which affect your potential charges, you may receive an additional notice.

**NRS 612.475.3 in part, states the employing unit shall provide all relevant facts which may affect the claimant's right to benefits. Failure to provide requested information could affect your right to appeal the separation and you may incur charges to your account.**

**NRS 612.551.7 states in part, that if an employer fails to provide all relevant facts or fails to respond timely as required by NRS 612.475, which may affect the claimant's rights to benefits, the employer's record for experience rating is not entitled to be relieved of the amount for any erroneous payments made to the claimant.**

**Please complete the following page and return by 06/07/2021. Fax or mail your response to either of the fax numbers or mailing address shown above. Refer to the attached form for an explanation of the business' rights and responsibilities.**

**Employment Security Division**
Adjudication Center
500 East Third Street
Carson City NV 89713-0035
Tel (775) 684-0302 Fax (775) 684-0338
Tel (702) 486-7999 Fax (702) 486-7987

**DETR**
Nevada Department of Employment, Training and Rehabilitation
ONE NEVADA - Growing A Skilled, Diverse Workforce

15833814

**Employer Account**
0050990200

**Employer Name**
TE MOAK TRIBAL COUNCIL TGDP

**Claimant Name**
SAMUEL BIERS

**Claimant** [redacted]

**Due Date**
06/07/2021

**Re:** Notice of Claim Filed - Separation Base Period Employer

## EMPLOYER RESPONSE

**Dates Worked:** 12/12/2019 **to** 03/23/2021 **Hours Worked Each Week:** 40
**Rate of Pay: $** 30.00 **Gross Weekly Wage: $** 1,200.00

**Separation Reason:** Indicate separation reason by checking appropriate box and provide details as needed

☐ Lack of Work

☐ Temporary Layoff. Recall/Return to Work Date ______ ☐ Still Working. Hours Per Week. ______

☐ **Quit:** If the claimant **quit**, explain in detail the reason given, the date of resignation and attach a copy of the resignation letter ______

☒ **Discharge:** If the claimant was **discharged**, explain in detail the final incident including the date of occurrence along with details and dates of related warnings and policy violations. Attach all supporting documentation.
SEE ATTACHMENT A

☐ **Leave of Absence:** If the claimant is on a **leave of absence**, explain in detail the reason and the expected return to work date ______

☐ **Separation Pay:** Indicate if the person will receive separation pay by checking the box and filling out details below.

| Type of Separation Pay | Gross Amount | Date Paid |
|---|---|---|
| **Personal Time Off**<br>Could PTO be used for sick leave? ☐ Yes ☐ No<br>If Yes, do not report PTO | | |
| **Accrued Vacation Pay** | | |
| **Severance Paid** | | |
| **Wages in Lieu of Notice** | | |

| Joseph Holley | 775.738.9251 | [signature] | Chairman | 06/04/2021 |
|---|---|---|---|---|
| **Contact Person** | **Telephone** | **Company Official Signature** | **Title** | **Date** |

*In order to protect your rights in this eligibility decision this form must be completed, signed and returned no later than 5:00 p.m. PST on 06/07/2021. The due date is 11 calendar days from the date this form was mailed to you.* ***Fax or mail your response to either of the fax numbers or mailing address shown above.***

# ATTACHMENT A

The Te-Moak Tribal Council is the supreme ruling body of the Te-Moak Tribe of Western Shoshone Indians of Nevada. The Te-Moak Tribal Council terminated Samuel Biers for cause relative to the following reasons:

1. Mr. Biers knowingly stole confidential property that belong to the Te-Moak Council without the permission of the Te-Moak Council. Then used said confidential property (information) and used it in an attempt to sabotage the newly formed Te-Moak Tribal Court System.

On or about March 10, 2021, Mr. Biers used his position as Tribal Administrator to steal highly confidential notes and recordings from a Closed Te-Moak Tribal Council Meeting without the permission of the Te-Moak Tribal Council and attempted to use said highly confidential information to sabotage the newly formed Te-Moak Tribal Court System by disseminating said information to unauthorized third parties.

2. Mr. Biers used subterfuge to obtain his position as Tribal Administrator.

During the interview process for the position of Te-Moak Tribal Administrator, Mr. Biers claimed that he was a licensed attorney in Nevada and that he was a former court magistrate. It was subsequently discovered that Mr. Biers is not a licensed Nevada attorney nor is a licensed attorney in any state. It was also subsequently discovered that Mr. Biers was fired as a temporary magistrate for concealing information and fabricating his birth date on his application regarding position of magistrate. SEE ATTACHMENT A1.

SEE ATTACHMENT A2 – Resolution No. 21-TM-50

**ATTACHMENT A1**

LOCAL NEWS

# Former Durham magistrate officially out of job

Posted May 26, 2011 2:57 p.m. EDT

Updated May 26, 2011 6:55 p.m. EDT

Listen to this article now

01:44 Powered by

DURHAM, N.C. — Two complaints against a former Durham County magistrate were dropped Thursday, and he agreed not to seek another magistrate position in North Carolina.

Magistrate Sam Biers submitted a letter of resignation on Tuesday, saying that he had to step down because of "scurrilous and false complaints."

Biers was suspended last month after the Durham County Sheriff's Office accused him of providing a false date of birth on his employment records to hide a criminal history. He accused a clerk of getting his birth date wrong and denied having a criminal record.

Through a Michigan Freedom of Information Act request, WRAL News discovered Biers pleaded guilty to breaking and entering in that state in 1985 and served time in jail.

"The allegation that I intentionally deceived the hiring authority is ludicrous and patently false since legally I h and sealed."

During a court hearing Thursday, Assistant Durham County Attorney Marie Inserra said the county had evidence that Biers also had been convicted of a crime in Nevada and that that crime had never been expunged.

Defense attorney Patrice Walker asserted that Biers had been pardoned in Nevada and that his records were supposed to have been sealed.

The court hearing was to consider two petitions seeking that Biers be removed as magistrate. In addition to the complaint from the sheriff's office, the mother of a student stabbed at Northern High School in March filed a complaint against Biers.

Kenya Newell said Biers didn't take her concerns seriously when she questioned the low bond he set for the student accused of attacking her son.

Newell withdrew her complaint and the county didn't oppose a motion to dismiss the complaint by the sheriff's office after Biers submitted a new resignation letter and promised not to apply for another magistrate position. The new letter didn't include the accusations against Durham County court officials or proclamations of innocence that were in his original letter.

GET CORONAVIRUS UPDATES

The latest coronavirus news from WRAL delivered daily to your inbox.

For more news about the Coronavirus and resources for tracking the virus and protecting your family, .

Email address

**ATTACHMENT A2**

# TE-MOAK TRIBE OF WESTERN SHOSHONE

**RESOLUTION OF THE GOVERNING BOARD**
**OF THE**
**TE-MOAK TRIBE OF WESTERN SHOSHONE INDIANS OF NEVADA**

RESOLUTION NO. 21-TM-50

**IMMEDIATE TERMINATION OF SAMUEL LEE BIERS AS TE-MOAK TRIBAL ADMINISTRATOR**

**BE IT RESOLVED BY THE TRIBAL COUNCIL OF THE TE-MOAK TRIBE OF WESTERN SHOSHONE INDIANS OF NEVADA THAT:**

**WHEREAS**, this Organization is an Indian Organization as defined under the **Indian Reorganization Act of June 18, 1934**, 25 U.S.C. Section 461 et seq., (as amended), to exercise certain rights of home rule and to be responsible for its Tribal members, and

**WHEREAS**, the Te-Moak Tribe of Western Shoshone Indians Tribal Council ("Council") is composed of Constituent Bands known individually as the Battle Mountain Band Council, Elko Band Council, South Fork Band Council and the Wells Band Council (collectively "Bands"); and

**WHEREAS**, the Te-Moak Tribe of Western Shoshone Indians of Nevada retains the inherent right to govern itself and exercise sovereign authority over its lands and its people, as established by the **Constitution of the United States, Article I, Section 2, Clause 3; Article I, Section 8**; and by the **Fourteenth Amendment, Section 2**; and in the **United States v. Mazurie**, 419 U.S. 544, 557 (1975) ruling that "Indian Tribes are unique aggregations possessing attributes of sovereignty over both their members and over their territory... [as] 'separate people' possessing 'the power of regulating their internal and social relations...' (citing and quoting **Worcester v. Georgia**, 31 U.S. 557 (1832); **United States v. Kagama**, 118 U.S. 375, 381-82 (1886) and **McClanahan v. Arizona State Tax Comm'n**, 411 U.S. 164, 173 (1973); the **Constitution of the Te-Moak Tribe of Western Shoshone Indians of Nevada** and **25 U.S.C. Section 1301 et seq.**, (affirming the Constitutional Rights of Native Americans and the recognition by the United States of Native American Tribal "Powers of Self-Government" to include "all governmental powers possessed by an Indian Tribe including Executive, Legislative & Judicial Rights, and all offices, bodies and tribunals by and through which these Rights are executed, including but not limited to courts of Indian Offenses,' and "Indian Court" meaning any Indian Tribal and/or court of Indian offenses"); and

**WHEREAS**, pursuant to **the Constitution of the Te-Moak Tribe of Western Shoshone Indians of Nevada, Article 4, Section 3(j), (k), and (n),** the Council retains the Sovereign Authority to promote and protect the health, safety and welfare of the Tribe, its members and all persons within the Tribe's jurisdiction and the Council retains the authority to promulgate Resolutions that are "necessary and proper for carrying into effect" the Council's authority to "regulate all administrative, executive, judicial and legislative bodies of the Tribe, Tribal Agencies, officers and organizations," and

# ATTACHMENT A2

**WHEREAS**, the **Preamble of the Constitution of the Te-Moak Tribe of Western Shoshone Indians of Nevada** sets forth the purpose behind the Constitution as necessary "to improve the governing structure…administer justice… and otherwise govern the affairs of this Tribe,' and

**WHEREAS**, at a duly held Council Meeting with a quorum present on March 19, 2021, the Te-Moak Tribe of Western Shoshone Indians of Nevada, by way and through a majority vote of the Te-Moak Tribal Council approved the permanent and immediate Termination of Samuel Lee Biers as the Te-Moak Tribal Administrator of the Te-Moak Tribe of Western Shoshone Indians of Nevada.

**NOW, THEREFORE, IT IS RESOLVED**, the Te-Moak Tribe of Western Shoshone Indians of Nevada, by way and through a majority vote of the Te-Moak Tribal Council, permanently and immediately terminates Samuel Lee Biers as the Te-Moak Tribal Administrator of the Te-Moak Tribe of Western Shoshone Indians of Nevada.

## CERTIFICATION

I, Joseph Holley, the undersigned, as Chairman of the Te-Moak Tribal Council of the Te-Moak Tribe of Western Shoshone Indians of Nevada, do hereby certify that the Te-Moak Tribal Council is composed of twelve (12) members of whom _6_ were present at the Tribal Council meeting which constituted a quorum held on March 19, 2021, and the foregoing Resolution was adopted at such Meeting by a vote of _5_ In Favor; _0_ Against; _0_ Abstaining, pursuant to the Authority of Article 4, Section 3 of the Constitution of the Te-Moak Tribe of Western Shoshone Indians of Nevada.

TE-MOAK TRIBE OF WESTERN SHOSHONE INDIANS OFFICIAL TRIBAL SEAL

Joseph Holley, Chairman
Te-Moak Tribe of Western Shoshone Indians of Nevada

**ATTEST:**

Alice Tybo, Recording Secretary

# Appendix III

# Exhibit III-B(12)

# Appendix III

# Exhibit III-B(13)

TE-MOAK TRIBE OF WESTERN SHOSHONE
525 Sunset Street • Elko, Nevada 89801
775-738-9251 • Fax 775-738-2345

# NOTICE

This Notice is to inform you that Mr. Sam Biers is no longer affiliated with the Te-Moak Tribe of Western Shoshone per attached resolution in any way, shape, or form. Any business he does in the Te-Moak Tribes' name is fraudulent. Please share this notice with other tribal members and employees.

Sincerely,

Joseph Holley

Joseph Holley, Chairman
Te-Moak Tribe of Western Shoshone

# Appendix III

# Exhibit III-B(14)

525 Sunset Street • Elko, Nevada 89801
775-738-9251 • Fax 775-738-2345

December 20, 2021

Nevada State Bank
P.O. Box 990
Las Vegas, NV 89125-0990

Re: Te-Moak Administration and General Fund Accounts

To Whom it May Concern:

On behalf of the Te-Moak Tribal Council of Western Shoshone Indians of Nevada, this letter is to inform you there is a group allegedly posing as a non-existent, alternate, and new Te-Moak Tribe's Council.

You are also advised that this group may attempt to conduct official business with you, which shall be considered fraudulent and unlawful as they are not officials or members of the Te-Moak Tribal Council.

Current check signers for the Te-Moak Tribe of Western Shoshone Council are still in effect until further notice.

If you are approached by any of the following persons (Lorraine Garcia, Kirk S Malotte, Vincent G. Garcia, Annette Malotte Clark, Angie Quintans, Chuana Coda, Jay Allison, Danena Ike, or Samuel Biers or anyone other than the current Council members authorized on the bank card as a check signer) please contact Chairman Joseph Holley, at 775-374-1451, Vice-Chairperson Alice D. Tybo at 775-340-3876, or myself, Angelea Mendez, Acting Te-Moak Administrator at 775-738-9251.

Sincerely,

Angelea Mendez, Acting
Te-Moak Administrator

CC: Joseph Holley, Te-Moak Chairman
Mckay Hall, Finance
file

Attachments: Resolution 21-TM-112 & resolution 21-TM-83

# Appendix III

# Exhibit III-B(15)

From: Angelea Mendez <angeleamendez@yahoo.com>
Date: 12/29/21 1:42 PM (GMT-08:00)
To: joseph.mcdade@bia.gov, bryan.bowker@bia.gov, harlanlaw@yahoo.com
Cc: felisa.wright@bia.gov, jhchairman1@yahoo.com, wbc.heather@gmail.com, sforkcouncil.adm@gmail.com, chairman@elkoband.org, vicechair@elkoband.org, kmalotte@yahoo.com, vgranchkt@yahoo.com, aquintana@live.com, annettelclark@gmail.com, councilmember1@elkoband.org, councilmember2@elkoband.org, councilmember3@elkoband.org, councilmember4@elkoband.org, councilmember5@elkoband.org, andyw.wellsbandcouncil@gmail.com, chad@chadsmith.com, administrator@elkoband.org, gdixon@blm.gov, rupertsteele@ctgr.us, chairman@duckwatertribe.org, chair.mbop@moapabandofpaiutes.org, serrell.smokey@washotribe.us, ghatch@ypt-nsn.gov, smontooth@nic.nv.gov, jmontcalm@blm.gov, reece@allianceny.com
Subject: Sam Biers is a Fraud

## A TWO-TIME FELON AND PATHOLOGICAL LIARSWEARS IN A MOB

This is an embarrassing day for the Te-Moak Tribe. Vince Garcia and Steve McDade are trying to make non-Native Sam Biers the most powerful person in the Te-Moak Tribe. Sam Biers is a convicted Felon in two (2) states and is a pathological liar but Vince and Steve, through their own personal power, have declared Sam to be the Te-Moak Supreme Court Judge making him the most powerful person in the Tribe. This actionmakes the Te-Moak Tribe the laughingstock of Nevada. We can thank Vince and Steve for this embarrassment.

Sam's attempted rise to power is based upon nothing but lies. He claimed to be a licensed lawyer in Nevada but this is a lie. He claimed to be a licensed lawyer in Utah but this is a lie. He claimed to be a Federal Prosecutor in Utah but this is a lie. Sam is a pathological liar. Do the Te-Moak people truly want apathological liar representing them? What else is Sam hiding? We know that Sam hid his multiple felony convictions. He is a convicted felon in both Michigan and in Nevada. If you google Samuel Lee Biers Magistrate Durham North Carolina, you will see that Sam's pathological lying has a long and consistent history. The Te-Moak Constitution clearly requires a person of "good moral character," for Te-Moak Tribal Judge. It is black and white that Sam Biers is of rotten moral character. Sam has also never been licensed to practice law in another jurisdiction. Why do Vince and Steve want a non-Native of rotten moral character for Tribal Judge? Is it for personal gain or do Birds of a Feather flock together? Are we, the Te-Moak people, truly as foolish as Vince and Steve want us to be? Are Vince and Steve above Te-Moak law? Is their mob above the law?

The answer to that question is clearly, no. Vince Garcia and Steve McDade are not above the law and Sam Biers is clearly not qualified to be a Te-Moak Supreme Court Judge or any judge for that matter. Sam Biers does not meet the requirements of our Te-Moak Constitution and therefore will never be recognized as a Supreme Court Judge of Te-Moak Tribe Western Shoshone Indians of Nevada.

Chairman Joseph Holley

Sent from my iPhone

# Appendix III

# Exhibit III-B(16)

# PUBLIC NOTICE

This is to notify that Samuel L. Biers, is not affiliated with the Te-Moak Tribal Courts as of June 11, 2021 for the following:

Te-Moak Tribal Council adopted Resolution No. 21-TM-29 to appoint Samuel L. Biers as the Appellate Judge, pending a background check.

The Constitution of the Te-Moak Tribe of Western Shoshone Indians of Nevada, Article 8 Judicial Branch of Government; Section 4 Term of Office and Qualifications; (b) Qualifications – a Judge shall be at least thirty (30) years of age and of good moral character.

After determining the background of Samuel L. Biers, he does not meet the qualification requirements as specified in the Constitution of the Te-Moak Tribe of Western Shoshone Indians of Nevada.

Mr. Biers was personally notified by Resolution No. 21-TM-83, on July 21st, 2021 at the Te-Moak Tribal Administration Building located on the Elko Indian Colony in Elko, NV that he was not qualified for the position and the offer for Appellate Judge was revoked. He does not have any authority or affiliation as it relates to the Te-Moak Tribe of Western Shoshone Indians of Nevada or Te-Moak Tribal Courts.

July 30, 31, August 3, 4, 5, 6, 7, 10, 11, 12, 2021

# Appendix III

# Exhibit III-C(1)

大成 DENTONS

# Terms of Business

## Dentons US LLP

January 2020

## Welcome to Dentons.

Thank you for choosing Dentons to represent you. These Terms of Business and the Engagement Letter form our Engagement Agreement.

### Dentons and You

1. The Letter sets out the scope of our representation and identifies you as our sole client. We do not represent any other persons or entities, including your parent, subsidiaries, and affiliates, unless named in the Letter. Our advice and work is provided solely for your benefit and relates only to the matters set out in the Letter. The Terms apply as soon as we start acting on your instructions, regardless of whether or not you have signed the Letter.

2. The partners of Dentons US LLP also are partners of Dentons United States LLP, which is the US Region member of Dentons Group (a Swiss Verein), whose members and their respective subsidiaries, affiliates and related entities provide legal services in different locations, each of which is its own Legal Practice. For a list of each Legal Practice by location, see dentons.com/legalnotices.

3. This Engagement Agreement is between you and Dentons US LLP only and not any other Dentons Legal Practice within or outside the US Region, or any entity or individual. We will conduct ourselves in accordance with the professional responsibility rules applicable in the jurisdictions in which we render services.

4. Other Dentons Legal Practices outside the US Region represent many clients in different geographies, including entities and individuals that may enter into transactions or have disputes with you. Unless such other Dentons Legal Practice is specifically engaged by you or on your behalf outside the US Region, you agree that those representations by other Dentons Legal Practices do not conflict with our representation of you, and that you will not assert that other Dentons Legal Practices outside the US Region are precluded from representing those entities and individuals.

5. While Dentons US LLP remains solely responsible to you for this engagement, we may involve other lawyers and professionals from other Dentons Legal Practices, within or outside the US Region, to provide services. Unless we state otherwise, we will do so by subcontract. You agree that we may pay or apportion part of our fees and costs for the work in a manner that may be considered a referral fee in some jurisdictions.

### Our Working Relationship

6. Effective representation requires open and honest communication. We need you to provide us with clear and timely instructions, relevant information and documents, and make yourself available for consultation.

7. You should carefully check for any insurance policies that might relate to the work we do for you and notify your insurers promptly to protect your rights. Unless you disclose these policies and we agree to advise on them in the Letter, we are not responsible for advising you on the existence or applicability of any insurance coverage.

8. We may communicate with you using any reasonable method, including electronic communications, like email, which may not be absolutely secure and present risk of interception or copying.

9. Generally, communications between a lawyer and client regarding legal advice are privileged and confidential. You may jeopardize these protections by disclosing communications to others. You agree we are under no duty to disclose to you any information that is confidential to another client or any other person.

### Advance Clearance of Conflicts of Interest

10. Each Dentons Legal Practice represents a wide variety of entities and individuals, some of whom may be, for instance, your borrowers, investors, shareholders, creditors, or other parties with conflicting interests in a litigation, arbitration, bankruptcy, insolvency or other matter. As a condition of our representation of you, you agree that, without further notice, we may represent other clients in matters, even if they are directly adverse to you, as long as: (1) those matters are not substantially related to our representation of you; or (2) we screen our lawyers and professionals

# Appendix III

# Exhibit III-C(2)

922298

PURCHASER'S COPY OF CASHIER'S CHECK

NEVADA STATE BANK

A division of Zions Bancorporation, N.A. Member FDIC

94-77/1224

TE-MOAK TRIBE/WES. SHOSHONE

Remitter

Date AUG 11, 2020

Pay

$ ***127,000.00***

***ONE HUNDRED TWENTY SEVEN THOUSAND and 00/100*** US Dollars

To The Order Of ***DENTONS US LLP***

NOTICE TO CUSTOMER: The purchase of a Surety Bond and/or execution of an Indemnity Agreement may be required before the check may be replaced or refunded in the event it is lost, misplaced or stolen.

NON NEGOTIABLE

CUSTOMER COPY

[redacted]

HARLAND CLARKE M1094S 90276527

# Appendix III

# Exhibit III-C(3)

# Exhibit III-C(3)(a)

大成 DENTONS

J. Scott Sypolt
Counsel

scott.sypolt@dentons.com
D +1 312 876 8184

Dentons US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606-6361
United States

dentons.com

July 22, 2020

Joseph Holley
Chairman
Te-Moak Tribe of Western Shoshone Indians of Nevada
37 Mountain View Drive
Battle Mountain, NV 89820

*Re: Engagement Agreement*

**PRIVILEGED AND CONFIDENTIAL**

Dear Mr. Holley:

Thank you for choosing Dentons US LLP to represent you in the matter described below.

**Our Client**. The purpose of this Engagement Letter, as well as the associated Terms of Business, is to set forth the Engagement Agreement by which Dentons US LLP will represent you.

**Scope of Representation**. We have agreed to provide legal services in connection with setting the legal foundation for future economic development, the development of a casino and re-write constitution and various laws and regulations, as well as incidental matters, such as responding to audit letter requests.

**Terms of Business**. Attached is a copy of our Terms.

**Our Team and Charges**. Although I will be principally responsible for this engagement, it is anticipated that other lawyers and professionals will be involved. Our fees will be based on the time devoted to the representation, and the billing rates charged by each timekeeper. Currently, our standard hourly charges range from $200 to $800 per hour depending on the lawyer's or professional's experience. We will bill you at our preferred rates, which reflect a discount of approximately 10% to our standard rates. For example, my time will be billed at $800 per hour. If in the course of this representation we use other lawyers, their time will be billed at a similar discount. Our representation of you also will involve costs (expenses), which are reviewed in the Terms.

**Retainer**. You have agreed to pay us a retainer of $200,000. Under Illinois law, this is a "security retainer," which will be initially deposited into a client trust account and remain your property until applied to services rendered or expenses incurred. Notwithstanding this retainer, you agree to pay our invoices promptly as they come due. We intend to apply this retainer toward payment of our final invoice, and refund any balance due. If you do not pay invoices as due, however, you agree that we may draw on the retainer to the extent we do not receive your payment in full of our invoices, and you agree promptly to restore the full principal amount of the retainer.

**Conflicts**. Our Terms include provisions regarding conflicts.

Please indicate your agreement to the Letter and Terms by executing a copy of this Letter in the space provided below and returning it. A facsimile or scanned copy delivered via email is as acceptable as an original. We appreciate prompt receipt of an executed copy, but will commence work based on the understandings contained in this letter prior to our receipt of your signature. Of course, please contact me if you have any questions about anything in this Letter or the Terms, or with respect to any aspect of our representation of you.

Again, we are very pleased to have this opportunity to be of service and to work with you.

Sincerely,

DENTONS US LLP

By: /s/ Scott Sypolt
Counsel

Enclosure *Terms of Business*

---

***Agreement and Acceptance***

The undersigned hereby acknowledges and agrees that he or she has reviewed and understands the terms and conditions of this Letter and the Terms. The undersigned further agrees and accepts these provisions, including, but not limited to, all disclosures regarding conflicts of interest, and hereby waives any conflict or potential conflict of interest as set forth therein.

______________________________
JOSEPH HOLLEY, Chairman

# Exhibit III-C(3)(b)

大成 DENTONS

J. Ross Docksey
Partner

ross.docksey@dentons.com
D +1 312 876 8171

Dentons US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606-6361
United States

dentons.com

October 1, 2020

Joseph Holley
Chairman
Te-Moak Tribe of Western Shoshone Indians of Nevada
37 Mountain View Drive
Battle Mountain, NV 89820

*Re: Engagement Agreement*

**PRIVILEGED AND CONFIDENTIAL**

Dear Mr. Holley:

Thank you for choosing Dentons US LLP to represent you in the matter described below.

**Our Client.** The purpose of this Engagement Letter, as well as the associated Terms of Business, is to set forth the Engagement Agreement by which Dentons US LLP will represent you.

**Scope of Representation.** We have agreed to provide legal services specific to the following issues: (1.) research and drafting of an Outline for proper use of COVID-19 Money; (2.) research and drafting of documents to create and establish a Te-Moak Court System of Original and Appellate Jurisdiction; (3.) research and drafting of a new and updated Te-Moak Legal Civil Code; (4.) research and drafting of new and updated Te-Moak Rules of Civil Procedure; (5) research and drafting of new and updated Te-Moak Legal Criminal Code; (6) research and drafting of new and updated Rules of Criminal Procedure; (7) Work with the Te-Moak Council to attract new economic development to the Tribe; (8) Initial Investigation and Presentation of Te-Moak Water Right (Just Initial Stage); (9) Initial Investigation and Presentation of Ruby Valley Treaty (Just Initial Stage); (10) Initial Investigation of Restarting Te-Moak Police Force; (11) Input from Council Members and Continued Amendment of Te-Moak Constitution; and (12) Research and recruitment of Qualified Tribal Judge for Original Jurisdiction; (13) Research and recruitment of Qualified Tribal Judge for Supreme Appellate Court Jurisdiction; (14) Research and Recruitment of a Qualified Court Clerk; (15) Research and recruitment of Qualified Tribal Prosecuting Attorney;(16) Research and recruitment of Qualified Tribal Public Defender; and (17) Research and recruitment of a Qualified Tribal Court Bailiff.

**Terms of Business.** Attached is a copy of our Terms.

**Our Team and Charges.** Although Scott Sypolt will be principally responsible for this engagement, it is anticipated that other lawyers and professionals will be involved. Our fees will be based on the time devoted to the representation, and the billing rates charged by each timekeeper. For example, Scott Sypolt will be billed at $765 per hour. These rates reflect a discount of approximately 10% off our preferred rates. If we use other lawyers, their time will be billed at a similar discount. Our representation of you also will involve costs (expenses), which are reviewed in the Terms.

**Retainer**. A retainer of $600,000.00 will be required before work can begin on the 17 above-listed matters. I confirm that you have given such retainer check to Scott Sypolt. Under Illinois law, this is a "security retainer," which will be initially deposited into a client trust account and remain your property until applied to services rendered or expenses incurred. You will be billed, via an email invoice, on a monthly basis. We will charge our fees against the retainer and credit them on our billing statements. In the event our fees exceed the amount of the retainer deposited with us, we will bill you for, and you agree to pay, the excess. In the event our fees exceed the retainer, you further agree to replenish the retainer in an amount requested by us. Any unused portion of the retainer will be refundable at the conclusion of our services.

**Conflicts**. Our Terms include provisions regarding conflicts.

Please indicate your agreement to the Letter and Terms by executing a copy of this Letter in the space provided below and returning it. A facsimile or scanned copy delivered via email is as acceptable as an original. We appreciate prompt receipt of an executed copy, but will commence work based on the understandings contained in this letter prior to our receipt of your signature. Of course, please contact me if you have any questions about anything in this Letter or the Terms, or with respect to any aspect of our representation of you.

Again, we are very pleased to have this opportunity to be of service and to work with you.

Sincerely,

DENTONS US LLP

By:
J. Ross Docksey, Partner

Enclosure *Terms of Business*

---

***Agreement and Acceptance***

The undersigned hereby acknowledges and agrees that he or she has reviewed and understands the terms and conditions of this Letter and the Terms. The undersigned further agrees and accepts these provisions, including, but not limited to, all disclosures regarding conflicts of interest, and hereby waives any conflict or potential conflict of interest as set forth therein.

**TE-MOEK TRIBE OF WESTERN SHOSHONE INDIANS OF NEVADA**

By: ______________________________
JOSEPH HOLLEY, Chairman

# Exhibit III-C(3)(c)

大成 DENTONS

J. Ross Docksey
Partner

ross.docksey@dentons.com
D +1 312 876 8171

Dentons US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606-6361
United States

dentons.com

December 11, 2020

Joseph Holley
Chairman
Te-Moak Tribe of Western Shoshone Indians of Nevada
37 Mountain View Drive
Battle Mountain, NV 89820

*Re: Engagement Agreement*

**PRIVILEGED AND CONFIDENTIAL**

Dear Mr. Holley:

Thank you for choosing Dentons US LLP to represent you in the matter described below.

**Our Client**. The purpose of this Engagement Letter, as well as the associated Terms of Business, is to set forth the Engagement Agreement by which Dentons US LLP will represent you.

**Scope of Representation**. We have agreed to provide legal services specific to the Tribe's use of the Coronavirus Relief Funds (CRF) provided under the CARES Act.

**Terms of Business**. Attached is a copy of our Terms.

**Our Team and Charges**. Although Scott Sypolt and I will be principally responsible for this engagement, it is anticipated that other lawyers and professionals will be involved. Our fees will be based on the time devoted to the representation, and the billing rates charged by each timekeeper. For example, Scott Sypolt will be billed at $765 per hour. These rates reflect a discount of approximately 10% off our preferred rates. If we use other lawyers, their time will be billed at a similar discount. Our representation of you also will involve costs (expenses), which are reviewed in the Terms.

**Retainer**. A retainer of $200,000.00 will be required before work can begin on the above-listed matter. You will be billed, via an email invoice, on a quarterly basis. Said invoices shall be paid and amounts withdrawn from the $200,000.00 retainer as incurred.

**Conflicts**. Our Terms include provisions regarding conflicts.

Please indicate your agreement to the Letter and Terms by executing a copy of this Letter in the space provided below and returning it. A facsimile or scanned copy delivered via email is as acceptable as an original. We appreciate prompt receipt of an executed copy, but will commence work based on the understandings contained in this letter prior to our receipt of your signature. Of course, please contact me if you have any questions about anything in this Letter or the Terms, or with respect to any aspect of our representation of you.

Again, we are very pleased to have this opportunity to be of service and to work with you.

Sincerely,

DENTONS US LLP

By:
J. Ross Docksey, Partner

Enclosure *Terms of Business*

---

***Agreement and Acceptance***

The undersigned hereby acknowledges and agrees that he or she has reviewed and understands the terms and conditions of this Letter and the Terms. The undersigned further agrees and accepts these provisions, including, but not limited to, all disclosures regarding conflicts of interest, and hereby waives any conflict or potential conflict of interest as set forth therein.

**TE-MOAK TRIBE OF WESTERN SHOSHONE INDIANS OF NEVADA**

By: ______________________________
Authorized Representative of the Te-Moak Tribe of Western Shoshone Indians of Nevada

# Exhibit III-C(3)(d)

大成 DENTONS

J. Ross Docksey
Partner

ross.docksey@dentons.com
D +1 312 876 8171

Dentons US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606-6361
United States

dentons.com

December 11, 2020

Joseph Holley
Chairman
Te-Moak Tribe of Western Shoshone Indians of Nevada
37 Mountain View Drive
Battle Mountain, NV 89820

*Re: Engagement Agreement*

**PRIVILEGED AND CONFIDENTIAL**

Dear Mr. Holley:

Thank you for choosing Dentons US LLP to represent you in the matter described below.

**Our Client**. The purpose of this Engagement Letter, as well as the associated Terms of Business, is to set forth the Engagement Agreement by which Dentons US LLP will represent you.

**Scope of Representation**. We have agreed to provide legal services specific to the following issues: (1.) research and drafting of documents to create and establish a Te-Moak Court System of Original and Appellate Jurisdiction; (2.) research and drafting of a new and updated Te-Moak Legal Civil Code; (3.) research and drafting of new and updated Te-Moak Rules of Civil Procedure; (4.) research and drafting of new and updated Te-Moak Legal Criminal Code; (5.) research and drafting of new and updated Rules of Criminal Procedure; (6.) Work with the Te-Moak Council to attract new economic development to the Tribe; (7.) Initial Investigation and Presentation of Te-Moak Water Rights (Initial Stage); (8.) Initial Investigation and Presentation of Ruby Valley Treaty Rights (Initial Stage); (9.) Recruiting and Hiring of Qualified Tribal Court Personnel (10.) Input from Council Members and Continued Amendment of Te-Moak Constitution; and (11.) Daily availability for minor day-to-day legal questions.

**Terms of Business**. Attached is a copy of our Terms.

**Our Team and Charges**. Although Scott Sypolt will be principally responsible for this engagement, it is anticipated that other lawyers and professionals will be involved. Our fees will be based on the time devoted to the representation, and the billing rates charged by each timekeeper. For example, Scott Sypolt will be billed at $765 per hour. These rates reflect a discount of approximately 10% off our preferred rates. If we use other lawyers, their time will be billed at a similar discount. Our representation of you also will involve costs (expenses), which are reviewed in the Terms.

**Retainer**. A retainer of $300,000.00 will be required before work can begin on the 11 above-listed matters. I confirm that you have given such retainer check to Scott Sypolt. Under Illinois law, this is a "security retainer," which will be initially deposited into a client trust account and remain your property until applied to services rendered or expenses incurred. You will be billed, via an email invoice, on a quarterly basis. We will charge our fees against the retainer and credit them on our billing statements. In the event

our fees exceed the amount of the retainer deposited with us, we will bill you for, and you agree to pay, the excess. In the event our fees exceed the retainer, you further agree to replenish the retainer in an amount requested by us. Any unused portion of the retainer will be refundable at the conclusion of our services.

**Conflicts**. Our Terms include provisions regarding conflicts.

Please indicate your agreement to the Letter and Terms by executing a copy of this Letter in the space provided below and returning it. A facsimile or scanned copy delivered via email is as acceptable as an original. We appreciate prompt receipt of an executed copy, but will commence work based on the understandings contained in this letter prior to our receipt of your signature. Of course, please contact me if you have any questions about anything in this Letter or the Terms, or with respect to any aspect of our representation of you.

Again, we are very pleased to have this opportunity to be of service and to work with you.

Sincerely,

DENTONS US LLP

By:
J. Ross Docksey, Partner

Enclosure *Terms of Business*

---

***Agreement and Acceptance***

The undersigned hereby acknowledges and agrees that he or she has reviewed and understands the terms and conditions of this Letter and the Terms. The undersigned further agrees and accepts these provisions, including, but not limited to, all disclosures regarding conflicts of interest, and hereby waives any conflict or potential conflict of interest as set forth therein.

**TE-MOAK TRIBE OF WESTERN SHOSHONE INDIANS OF NEVADA**

By: ______________________________
Te-Moak Tribe of Western Shoshone Indians of Nevada - Authorized Representative

# Appendix III

# Exhibit III-C(4)

# Exhibit III-C(4)(a)

# Fwd: Quarterly Invoice, in Requested Format

From: Te Moak Administrator (te.moak.adm@outlook.com)

To: sambiers@yahoo.com

Date: Sunday, September 26, 2021, 12:23 AM PDT

Get Outlook for Android

**From:** Sypolt, Scott <scott.sypolt@dentons.com>
**Sent:** Thursday, December 10, 2020 2:40:02 PM
**To:** Te.Moak.Adm@outlook.com <Te.Moak.Adm@outlook.com>
**Cc:** Sypolt, Scott <scott.sypolt@dentons.com>
**Subject:** Quarterly Invoice, in Requested Format

DENTONS Scott Sypolt

Visit the **New Dynamic Hub**, available to our clients and communities as part of the commitment that Dentons, the world's largest law firm, is making across 75+ countries, to address accelerating change resulting from the pandemic.

D +1 312 876 8184 | US Internal 18184
scott.sypolt@dentons.com
Bio | Website

Dentons US LLP

Durham Jones & Pinegar > LEAD Advogados > Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larraín Rencoret > For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices.

116147275_1.pdf
140kB

***DENTONS***

***Dentons US LLP***
***233 South Wacker Drive***
***Chicago, Illinois 60606-6361***

Te-Moak Tribe of Western Shoshone Indians of Nevada
37 Mountain View Drive
Battle Mountain, Nevada 89820
United States

Federal Indian Law

---

**AUGUST 2020**:

Legal Review of 1982 Te-Moak Tribe of Western Shoshone Indians of Nevada Constitution;
Legal Review of Legal Documents underlying formation of 1982 Te-Moak Constitution including but not Limited to the Indian Reorganization Act of 1934;
Review of all Federal Statutes, Federal Acts, Federal Rules & Regulations as adopted and/or Amended affecting the 1982 Te-Moak Constitution;
Review all Federal Case Law Affecting the Indian Reorganization Act of 1934, as Amended and/or Repealed;

Review of Nevada Revised Statute 41.430 and Nevada Revised Statute Code;
Review of Public Law 280 as it may relate to Te-Moak Tribe and Tribes of Nevada; Review Case Law on Federal Court interpretation of Nevada Revised Statute 41.430 as it relates to Te-Moak Tribe and to the Tribes of Nevada;
Review authority of the State of Nevada to impose State Laws on Te-Moak Tribe and Tribes of Nevada; Review Case Law on Cases pertaining to attempts by State of Nevada attempting to impose State Law on Federally Recognized Tribes of Nevada; Tribes organized under the Indian Reorganization Act of 1934.

Review current Te-Moak Tribe Apportionment Ordinance; Review all Tribal Supplemental documents relating to Apportionment Ordinance;
Review Apportionment Ordinance as it relates to the Te-Moak Constitution;
Review Federal Constitutionality of Te-Moak Apportionment Article and Apportionment Ordinance; Review historical policy of Te-Moak Tribe of Western Shoshone Indians of Nevada as it relates the "1 Person, 1 Vote Principal;
Review Federal Constitutional Right of "Equal Representation" as it relates to Federally Recognized Tribes and as it relates to Tribal Bands within a Federally Recognized Tribe; Review Case Law on Legal Fights within Tribal Bands for Equal Representation within the Federally Recognized Tribe.

SEPTEMBER 2020:

Review and research of Article of Te-Moak Constituion pertaining to Tribal Membership; Review of Federal Case Law on Who is and Who is not a Tribal Member; Review of Tribal Membership requirements; Review of Base Roll #1 of Elko Colony; Review of Official Census of Non-Reservation Indians; Review of Requirements of Northeastern Nevada Reservation of Carson Agency as of January 1, 1937 taken by Alida C. Bowler;

Review of Federal Case Law of Blood Quantum requirements of the Federal Government as it relates to a Federally Recognized Tribe; Review of Case Law on Blood Quantum;
Review of Blood Quantum requirements under the Indian Reorganization Act of 1934;
Review of Tribal Descendancy Requirements;
Review of Case Law pertaining to Implementation of Tribal Descendancy; Review Tribal Descendancy under Federally Recognized Tribes organized under the Indian Reorganization Act of 1934; Review of possible Legal Structures and Legal Processes to Implement Tribal Enrollment through Descendancy; Review Federal requirements under the Indian Reorganization Act of 1934 to establish Starting Point to trace Tribal Descendancy;
Review of Federal Case Law pertaining to Loss of Tribal Membership; Review Case Law on Constitutional Question of "Who Is An Indian"; Review Federal Case Law on the Constitutional Process of Disenrollment of a Tribal Member as it relates to the Te-Moak Constitution of 1982 and as it relates to Federally recognized Tribes organized under the Indian Reorganization Act of 1934; Review of Case Law regarding Disenrollment of a Tribal Member due to Lack of Blood Quantum; Review Statutes and Case Law on Tribal Requirements of ¼ Blood Quantum; Review Statutes and Case Law on Legal Process for a Federally Recognized Tribe organized under the Indian Reorganization Act of 1934 to switch from a ¼ Blood Quantum Requirement to a 1/8 Blood Quantum Requirement;
Review of Constitutional and Federal Legal Requirements to bring New Members into the Federally Recognized Tribe organized under the Indian Reorganization Act of 1934;

Call from Elko Attorney Darian Stanford to discuss Cannabis Law suit pending before the Te-Moak CFR Court;
Review of Entire Cannabis Lawsuit Court File (100 Pages); Review of Pleadings; Review of Related Statutes and Related Case Law;
Review of Legal Steps taken by Elko Band to Implement Cannabis Dispensary; Review of Resolutions and Ordinances; Review of Consensus Poll taken with Elko Tribal Residents;
Multiple Phone Calls from Felix Ike to Discuss His Cannabis Complaint;
Review of Documents, Resolutions and Consensus Polls supporting Felix Ike's Allegations;
Multiple Phone calls from Lorraine Garcia regarding Documents, Resolutions and Consensus Polls in support of Felix Ike Complaint;
Multiple emails from Felisa Wright regarding Cannabis Court Case;
Review of Federal Case Law on Legality of Elko dispensary; Review of Case Law on Medical Cannabis versus Recreational Cannabis; Review of State Law on Cannabis and Pending Federal Law on Legalization of Cannabis; Review of State Laws that allow Sale of Medical and Recreational Cannabis in their respective States Despite Federal ban on the Sale of Cannabis; Review of Federal Policy of "Don't Ask, Don't Tell, Non-Enforcement of Prosecuting Cannabis Medical and Recreational Sales in States; Review of Federally Recognized Tribes Selling Cannabis Despite Federal Ban; Review of the Constitutions of those Federally Recognized Tribes to Allow for the sale of Medical and Recreational Cannabis;

SEPTEMBER 2020 - (CONTINUED):

Multiple Phone Calls from Darian Stanford (Cannabis Attorney for Elko Band) on possible Settlement terms of Cannabis Lawsuit;
Discussions with Te-Moak Chairman, Te-Moak Administrator and Members of Te-Moak Council on possible Settlement of Cannabis Lawsuit; Discussion of desired Terms including but not limited to Apportionment Agreement, Tax, 5 Buildings in Lower Elko Colony;
Review of Fact-Check on Felix Ike Allegations in Cannabis Lawsuit;
Additional Phone Calls from Felix Ike relating to Fact-Check of His Allegations;
Additional Phone Calls from Lorraine Garcia relating to Fact-Check relating Felix Ike Allegations in Cannabis Complaint;
Multiple Phone Calls from Darian Stanford relating to Cross-Check of Felix Ike Allegations regarding past Te-Moak and Elko Resolutions, Ordinances, Consensus Polls and Te-Moak Constitution.
Continued Phone Call conversation with Darian Stanford regarding possible Settlement of Cannabis Complaint;
Review of CFR Rules and Regulations; Review of Federal Rules of Civil Procedure as they relate to the Cannabis Lawsuit;
Filing of Te-Moak Legal Response to Felix Ike Cannabis Complaint; Agreed Order written For Extension of Time for Trial regarding Cannabis Lawsuit;
Additional Phone Calls from Darian Stanford and presentation of Te-Moak Council Demands for a Cannabis Settlement;
Discussion of Legality of Elko Cannabis Referendum Vote from a Medical Cannabis and Recreational Cannabis point of view; Discussion of the purported Integrity of the Cannabis Referendum Vote; Request to see the Elko Band Cannabis Referendum Vote Results; Request to depose the Director of the Elko Cannabis Referendum Vote;
Discussion with Darian Stanford pertaining to the Te-Moak Constitution Conflict regarding the Elko Band Cannabis Dispensary;
Discussion of Legal Relationship between Elko Band and the Cannabis Company that established the Elko dispensary;
Discussion of the Legality of the State of Nevada Cannabis Compact with Elko Band;
Begin Drafting Cannabis Settlement Proposal for Elko Band and Te-Moak Tribal Council; Continue to negotiate the Terms with Elko Band;
Present possible settlement terms to Te-Moak Chairman and Te-Moak Administrator; Finish Cannabis Settlement Resolution; Legal Conversation regarding Sovereign Cannabis Solutions;

Read and review Article Four of the Te-Moak Constitution; Research Federal Case Law relating to the governing Bodies of Tribal Executive and Tribal Legislative Branches of government and their Legal Bounds and Limits of Authority; Legal Composition of Federally Recognized Tribal Councils; Legal Case Law on Apportionment of Tribal Band Representation on Tribal Councils; Federal Case Law on the Legal Bounds of authority for Tribal Chairperson in Tribes Organized under the Indian Reorganization Act of 1934; Power and Bounds of Authority for the Tribal Vice Chairperson; Power and Bounds of Authority for the Tribal Secretary; Power and Bounds of Authority for the Tribal Treasurer; Power and Bound of Conduct for the Administrator; Power and Bounds of conduct for the Tribal Accountant; Federal Case Law on Legal Succession of Tribal Officers; Federal Case Law on Length of Terms; Number of Consecutive Terms; Federal Case Law on the Power of the Tribal Council to Remove Tribal Officers; Federal Case Law on the Power of the Tribe to Remove Tribal Officers; Federal Case Law on the Power of the Tribe to remove Tribal Council Members; Tribal Council Codes of Conduct; Federal Case Law on Legal Grounds for Removal; Federal Case Law on the Legal Bounds of Authority for Tribal Officers/

SEPTEMBER 2020 (CONTINUED)

Tribal Council Members, to Sell, Dispose of, Lease, Encumber, Assign and/or Regulate Tribal Lands; Federal Case Law on the Power and Bounds of Authority for Tribal Bands to Sell, Dispose of, Lease, Encumber, Assign and/or Regulate; enter into Contracts, Manage and Control Tribal Assets and/or Tribal Lands; Federal Case Law on the Legal Power and Bounds of Authority for the Tribal Council to Charter and to Regulate Independent Organizations associated with the Tribe; Federal Case Law on the Legal Power and Bounds of Authority for the Tribal Council to Manage Economic Affairs and Enterprises of the Tribe; Federal Case Law on the Legal Power and Bounds of Authority for Tribal Bands to Manage Economic Affairs and Enterprises Associated with the Tribe; Federal Case Law on the Power of the Tribal Council to Establish and Manage Tribal Agencies; Federal Case Law on the Power and Bounds of Authority to Levy Tax Assessments; Federal Case Law on the Legal Power and Bounds of Authority of the Tribal Council to Spend Tribal Funds; Federal Case Law on the Legal Power and Bounds of Authority of the Tribal Council to Promote and to Protect the Health, Peace, Morals, Education, Safety and Welfare of the Tribe; Federal Case Law on the Legal Power and Bounds of Authority of the Tribal Council to Regulate Administrative Agencies, Quasi-Administrative Agencies, and Band Legislative Bodies;

Read and research Federal Case Law pertaining to Article Five of the 1982 Te-Moak Constitution relating to Tribal Voter Registration; Federal Case Law on Tribal Eligibility to Vote; Requirements of Tribal Registrations; Legal Requirements of Certified Voter Registration Lists; Federal Case Law on the Legal Requirements of the Tribal Absentee Vote; Federal Case Law on the Qualifications and Eligibility of Candidate applying to an Elective Office; Federal Qualifications to Remove Prospective Tribal Candidates; Federal Case Law on the Legal Duties and Responsibilities of the Election Committees; Federal Case Law on the Legal Requirements of Vote Certification; Federal Case Law of the Rights of Tribal Persons Refused the Right to Vote; Refused the Right to Run for Elected Tribal Office;

Read and Research Federal Case Law on Article 7 of the 1982 Te-Moak Constitution regarding Legally Required times to Hold Elections; Case Law on Assuming Tribal Office after Elections; Federal Case Law on the Required Tribal Oath of Office; Federal Case Law on the Legal Requirements pertaining to Tribal Election Day; Tribal Monitoring Posts for Election; Tribal election Judges; Tribal Salaries and Expenses pertaining to the Tribal election Committee; Federal Case Law on the Legal composition and Legal Requirements of the Tribal Election Board;

Read and Research Federal Case Law on Article Eight of the 1982 Te-Moak Constitution pertaining to the Tribal Judicial Branch of Government; Federal Case Law on Tribal Courts of General Jurisdiction; Case Law on Courts of Appellate Jurisdiction of a Tribal Supreme Court; Federal Case Law on Powers and Bounds of Authority for the Tribal Judicial Branch for Tribal Cases in Law and for Tribal Cases in Equity; Federal Case Law on Tribal Jurisdiction over Tribal Individuals on Tribal Lands, Non-Tribal Individuals on Tribal Lands and Tribal Individuals on Non-Tribal Lands; Federal Case Law on the Final Interpreters of the Tribal Constitution and on Tribal Laws, Ordinances and Resolutions; Federal Case Law on Terms of Judicial Office; Federal Case Law on Required Qualification for Various Tribal Judicial Officers; Federal Case Law on Tribal Judges;; Required Qualifications; Compensation; Vacancies; Federal Case Law on the Legal Requirements to Fill Judicial Vacancies; Federal Case Law on the Legal Process to Recall Tribal Judges; Removal of Judicial Officers;

Read and research Federal Case Law pertaining to Article 9 of the 1982 Te-Moak Constitution; Federal Case Law regarding Basic "Bills of Rights" including all Civil Rights of Tribal Members; Free Exercise of Religion by Tribal Members; Federal Case Law pertaining to Freedom of Speech for Tribal Members; SEPTEMBER 2020 - ( CONTINUED ):

Federal Case Law pertaining to Freedom of the Press for Tribal Members; Federal Case Law pertaining to Freedom of Assembly of Tribal Members; Federal Case Law on ability of Tribal Members to Petition for a Redress of Grievances; Federal Case Law pertaining to the Rights of Tribal Citizens to be Secure in Their Persons, Homes, Papers and Effects Against Unreasonable Search and Seizure; Federal Case Law against Double Jeopardy of Tribal Citizens; Federal Case Law pertaining to the right against Compelling Tribal Citizens to be Witnesses Against Himself or Herself; Federal Case Law Against the Taking of Property without Just Compensation; Federal Case Law pertaining to the Right to a speedy Trial for Tribal Citizens; Federal case Law pertaining to the Tribal Right to be Informed of the Nature of a Criminal Accusation; Federal Case Law pertaining to the Tribal Right to Confront a Witness; Federal Case Law pertaining to the Tribal Right to Compel a Witness; Federal Case Law pertaining to the Tribal Right to Legal Counsel in Own Defense; Case Law regarding Excessive Bail; Case law regarding Excessive Fines; Federal Case Law pertaining to Cruel and unusual Punishment; Federal Case Law pertaining to Equal Protection of Tribal Citizens Under the Law; Federal Case law pertaining to Depriving a Tribal Citizen of Life, Liberty and/or Property without Due Process of Law; Federal Case Law pertaining to Bills of Attainder and Ex Post Facto Laws; Federal Case Law on the Tribal Right to Demand a Trial by Jury; Federal Case Law on the number of people required to partake on a Tribal Jury;

Review and research of Article Ten of the Te-Moak Constitution regarding the Use of Tribal Lands by Tribal Members and by Non-Tribal Members; Federal Case Law regarding the Lease, Permits, Assignments and Other Contractual Matters Encumbering Tribal Lands; Federal Case Law on the Power of Bands within a Federally Recognized Tribe to Lease Tribal Lands; Federal Case Law on Grazing Permits; Federal Case Law on the Authority of the Band to Issue Assignments, Purpose, Preferences, and Notice Requirements; Legal Requirements regarding the Cancellation of Assignment; Death of a Tribal Member Holding Assignment; Legal Requirements of Succession; Legal Requirements for Application for Assignment; Federal Case Law on Legal Requirements for Record Keeping of All Activity Taken by Each Band Council regarding: Assignments, Ordinances for Tribal Land, Fees for Use of Tribal Land; Necessary Legal approval of the Secretary of the Interior for All Leases, Permits, Assignments and/or contracts on Tribal Lands;

Review and research of Federal Case Law pertaining to Article 11 of the Te-Moak Constitution; Federal Case Law regarding the Rights of Tribal Members to Propose Tribal Legislation including Ordinances, Resolutions, Laws; Case Law on Right s to Vote by Secret Ballot; Federal Case Law on the Legal Requirements for Tribal Members to File a Petition; Federal Case Law on Tribal Referendums on Federally Recognized Tribes; Federal Case Law regarding the Rights of Tribal Voters to Propose Band Initiatives; Federal Case Law on the Rights of Tribal Members to Propose Popular Referendums to affect Enacted and/or Proposed Resolutions/ Ordinances of a Band Council;

Review and research Federal Case Law regarding Article 12 of the 1982 Te-Moak Constitution regarding the Legal Requirements to Adopt/ Amend a Tribal Constitution; Legal Requirements from the Secretary of the Interior; Effective Date of said Adoption and/or Amendment of the Tribal Constitution; Federal Case Law on Holding Special Tribal Elections after the Adoption/ Amendment of the Constitution; Federal Case Law on Enacting all Tribal Ordinances, Resolution and Expressions of Policy before and

after Enactment of the Tribal Constitution; Federal Case Law regarding the Legal Requirements of Nullification of Disharmonious Ordinances and Resolutions relative to the Constitution;

SEPTEMBER 2020 - ( CONTINUED ):

Phone call from Darian Stanford regarding Te-Moak Diabetes Building; Negotiation with Darian toward an amicable resolution; Finalization of Terms for Cannabis Settlement Agreement; Review of 15 Real Estates documents regarding five buildings in the Lower Elko Colony;

OCTOBER 2020:

Multiple Phone calls from Darian Stanford regarding negotiated Se

# Exhibit III-C(4)(b)

# Fwd: Billing Statement in Requested Format

From: Te Moak Administrator (te.moak.adm@outlook.com)

To: sambiers@yahoo.com

Date: Sunday, September 26, 2021, 12:23 AM PDT

Get Outlook for Android

**From:** Sypolt, Scott <scott.sypolt@dentons.com>
**Sent:** Thursday, December 10, 2020 4:16:59 PM
**To:** Te.Moak.Adm@outlook.com <Te.Moak.Adm@outlook.com>; jhchairman1@yahoo.com <jhchairman1@yahoo.com>
**Cc:** scottsypolt@rocketmail.com <scottsypolt@rocketmail.com>; Sypolt, Scott <scott.sypolt@dentons.com>
**Subject:** Billing Statement in Requested Format

Hi Sam,

Here is the Billing Statement you requested and in the format you requested.

Thank you,
Scott

DENTONS Scott Sypolt

Visit the **New Dynamic Hub**, available to our clients and communities as part of the commitment that Dentons, the world's largest law firm, is making across 75+ countries, to address accelerating change resulting from the pandemic.

D +1 312 876 8184 | US Internal 18184
scott.sypolt@dentons.com
Bio | Website

Dentons US LLP

Durham Jones & Pinegar > LEAD Advogados > Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larraín Rencoret > For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices.

116147275_1.pdf
146.8kB

***DENTONS***

***Dentons US LLP***
***233 South Wacker Drive***
***Chicago, Illinois 60606-6361***

Te-Moak Tribe of Western Shoshone Indians of Nevada
37 Mountain View Drive
Battle Mountain, Nevada 89820
United States

Federal Indian Law

---

**AUGUST 2020**:

Legal Review of 1982 Te-Moak Tribe of Western Shoshone Indians of Nevada Constitution;

Legal Review of Legal Documents underlying formation of 1982 Te-Moak Constitution including but not Limited to the Indian Reorganization Act of 1934;

Review of all Federal Statutes, Federal Acts, Federal Rules & Regulations as adopted and/or Amended affecting the 1982 Te-Moak Constitution;

Review all Federal Case Law Affecting the Indian Reorganization Act of 1934, as Amended and/or Repealed;

Review and research of Nevada Revised Statute 41.430 and Nevada Revised Statute Code;

Review of Public Law 280 as it may relate to Te-Moak Tribe and Tribes of Nevada; Review Case Law on Federal Court interpretation of Nevada Revised Statute 41.430 as it relates to Te-Moak Tribe and to the Tribes of Nevada;

Review authority of the State of Nevada to impose State Laws on Te-Moak Tribe and Tribes of Nevada; Review Case Law on Cases pertaining to attempts by State of Nevada attempting to impose State Law on Federally Recognized Tribes of Nevada; Tribes organized under the Indian Reorganization Act of 1934

Draft Legal Memorandum on impact of Nevada Revised Statute 41.430 on Te-Moak Ordinances and Resolutions;

Review current Te-Moak Tribe Apportionment Ordinance; Review all Tribal Supplemental documents relating to Apportionment Ordinance;

Review Apportionment Ordinance as it relates to the Te-Moak Constitution;

Review Federal Constitutionality of Te-Moak Apportionment Article and Apportionment Ordinance; Review historical policy of Te-Moak Tribe of Western Shoshone Indians of Nevada as it relates the "1 Person, 1 Vote Principal; Review Federal Case Law on this subject;

Review Federal Constitutional Right of "Equal Representation" as it relates to Federally Recognized Tribes and as it relates to Tribal Bands within a Federally Recognized Tribe; Review Case Law on Legal Fights within Tribal Bands for Equal Representation within the Federally Recognized Tribe.

Draft Tribal Apportionment Ordinance pertaining to Equal Representation for Tribal Bands.

**SEPTEMBER 2020**:

Review and research of Article of Te-Moak Constituion pertaining to Tribal Membership; Review of Federal Case Law on Who is and Who is not a Tribal Member; Review of Tribal Membership requirements; Review of Base Roll #1 of Elko Colony; Review of Official Census of Non-Reservation Indians; Review of Requirements of Northeastern Nevada Reservation of Carson Agency as of January 1st, 1937 taken by Alida C. Bowler;

Review of Federal Case Law of Blood Quantum requirements of the Federal Government as it relates to a Federally Recognized Tribe; Review of Case Law on Blood Quantum;

Review of Blood Quantum requirements under the Indian Reorganization Act of 1934;

Review of Tribal Descendancy Requirements;

Review of Case Law pertaining to Implementation of Tribal Descendancy; Review Tribal Descendancy under Federally Recognized Tribes organized under the Indian Reorganization Act of 1934; Review of possible Legal Structures and Legal Processes to Implement Tribal Enrollment through Descendancy; Review Federal requirements under the Indian Reorganization Act of 1934 to establish Starting Point to trace Tribal Descendancy;

Review of Federal Case Law pertaining to Loss of Tribal Membership; Review Case Law on Constitutional Question of "Who Is An Indian"; Review Federal Case Law on the Constitutional Process of Disenrollment of a Tribal Member as it relates to the Te-Moak Constitution of 1982 and as it relates to Federally recognized Tribes organized under the Indian Reorganization Act of 1934; Review of Case Law regarding Disenrollment of a Tribal Member due to Lack of Blood Quantum; Review Statutes and Case Law on Tribal Requirements of ¼ Blood Quantum; Review Statutes and Case Law on Legal Process for a Federally Recognized Tribe organized under the Indian Reorganization Act of 1934 to switch from a ¼ Blood Quantum Requirement to a 1/8 Blood Quantum Requirement;

Review of Constitutional and Federal Legal Requirements to bring New Members into the Federally Recognized Tribe organized under the Indian Reorganization Act of 1934;

Call from Elko Attorney Darian Stanford to discuss Cannabis Law suit pending before the Te-Moak CFR Court;

Review of Entire Cannabis Lawsuit Court File (100 Pages); Review of Pleadings; Review of Related Statutes and Related Case Law;

Review of Legal Steps taken by Elko Band to Implement Cannabis Dispensary; Review of Resolutions and Ordinances; Review of Consensus Poll taken with Elko Tribal Residents;

Multiple Phone Calls from Felix Ike to Discuss His Cannabis Complaint;

Review of Documents, Resolutions and Consensus Polls supporting Felix Ike's Allegations;

Multiple Phone calls from Lorraine Garcia regarding Documents, Resolutions and Consensus Polls in support of Felix Ike Complaint;

**SEPTEMBER 2020** **(CONTINUED-1)**

Multiple emails from Felisa Wright regarding Cannabis Court Case;

Review of Federal Case Law on Legality of Elko dispensary; Review of Case Law on Medical Cannabis versus Recreational Cannabis; Review of State Law on Cannabis and Pending Federal Law on Legalization of Cannabis; Review of State Laws that allow Sale of Medical and Recreational Cannabis in their respective States Despite Federal ban on the Sale of Cannabis; Review of Federal Policy of "Don't Ask, Don't Tell, Non-Enforcement of Prosecuting Cannabis Medical and Recreational Sales in States; Review of Federally Recognized Tribes Selling Cannabis Despite Federal Ban; Review of the Constitutions of those Federally Recognized Tribes to Allow for the sale of Medical and Recreational Cannabis;

Multiple Phone Calls from Darian Stanford (Cannabis Attorney for Elko Band) on possible Settlement terms of Cannabis Lawsuit;

Discussions with Te-Moak Chairman, Te-Moak Administrator and Members of Te-Moak Council on possible Settlement of Cannabis Lawsuit; Discussion of desired Terms including but not limited to Apportionment Agreement, Tax, 5 Buildings in Lower Elko Colony;

Review of Fact-Check on Felix Ike Allegations in Cannabis Lawsuit;

Additional Phone Calls from Felix Ike relating to Fact-Check of His Allegations;

Additional Phone Calls from Lorraine Garcia relating to Fact-Check relating Felix Ike Allegations in Cannabis Complaint;

Multiple Phone Calls from Darian Stanford relating to Cross-Check of Felix Ike Allegations regarding past Te-Moak and Elko Resolutions, Ordinances, Consensus Polls and Te-Moak Constitution.

Continued Phone Call conversation with Darian Stanford regarding possible Settlement of Cannabis Complaint;

Review of CFR Rules and Regulations; Review of Federal Rules of Civil Procedure as they relate to the Cannabis Lawsuit;

Filing of Te-Moak Legal Response to Felix Ike Cannabis Complaint; Agreed Order written For Extension of Time for Trial regarding Cannabis Lawsuit;

Additional Phone Calls from Darian Stanford and presentation of Te-Moak Council Demands for a Cannabis Settlement;

Discussion of Legality of Elko Cannabis Referendum Vote from a Medical Cannabis and Recreational Cannabis point of view; Discussion of the purported Integrity of the Cannabis Referendum Vote;

Request to see the Elko Band Cannabis Referendum Vote Results; Request to depose the Director of the Elko Cannabis Referendum Vote;

**SEPTEMBER 2020** **(CONTINUED 2)**

Discussion with Darian Stanford pertaining to the Te-Moak Constitution Conflict regarding the Elko Band Cannabis Dispensary;

Discussion of Legal Relationship between Elko Band and the Cannabis Company that established the Elko dispensary;

Discussion of the Legality of the State of Nevada Cannabis Compact with Elko Band;

Begin Drafting Cannabis Settlement Proposal for Elko Band and Te-Moak Tribal Council; Continue to negotiate the Terms with Elko Band;

Present possible settlement terms to Te-Moak Chairman and Te-Moak Administrator; Finish Cannabis Settlement Resolution; Legal Conversation regarding Sovereign Cannabis Solutions;

Read and review Article Four of the Te-Moak Constitution; Research Federal Case Law relating to the governing Bodies of Tribal Executive and Tribal Legislative Branches of government and their Legal Bounds and Limits of Authority; Legal Composition of Federally Recognized Tribal Councils; Legal Case Law on Apportionment of Tribal Band Representation on Tribal Councils; Federal Case Law on the Legal Bounds of authority for Tribal Chairperson in Tribes Organized under the Indian Reorganization Act of 1934; Power and Bounds of Authority for the Tribal Vice Chairperson; Power and Bounds of Authority for the Tribal Secretary; Power and Bounds of Authority for the Tribal Treasurer; Power and Bound of Conduct for the Administrator; Power and Bounds of conduct for the Tribal Accountant; Federal Case Law on Legal Succession of Tribal Officers; Federal Case Law on Length of Terms; Number of Consecutive Terms; Federal Case Law on the Power of the Tribal Council to Remove Tribal Officers; Federal Case Law on the Power of the Tribe to Remove Tribal Officers; Federal Case Law on the Power of the Tribe to remove Tribal Council Members; Tribal Council Codes of Conduct; Federal Case Law on Legal Grounds for Removal; Federal Case Law on the Legal Bounds of Authority for Tribal Officers/ Tribal Council Members, to Sell, Dispose of, Lease, Encumber, Assign and/or Regulate Tribal Lands; Federal Case Law on the Power and Bounds of Authority for Tribal Bands to Sell, Dispose of, Lease, Encumber, Assign and/or Regulate; enter into Contracts, Manage and Control Tribal Assets and/or Tribal Lands; Federal Case Law on the Legal Power and Bounds of Authority for the Tribal Council to Charter and to Regulate Independent Organizations associated with the Tribe; Federal Case Law on the Legal Power and Bounds of Authority for the Tribal Council to Manage Economic Affairs and Enterprises of the Tribe; Federal Case Law on the Legal Power and Bounds of Authority for Tribal Bands to Manage Economic Affairs and Enterprises Associated with the Tribe; Federal Case Law on the Power of the Tribal Council to Establish and Manage Tribal Agencies; Federal Case Law on the Power and Bounds of Authority to Levy Tax Assessments; Federal Case Law on the Legal Power and Bounds of Authority of the Tribal Council to Spend Tribal Funds; Federal Case Law on the Legal Power and Bounds of Authority of the Tribal Council to Promote and to Protect the Health, Peace, Morals, Education, Safety and Welfare of the Tribe; Federal Case Law on the Legal Power and Bounds of Authority of the Tribal Council to Regulate Administrative Agencies, Quasi-Administrative Agencies, and Band Legislative Bodies;

Read and research Federal Case Law pertaining to Article Five of the 1982 Te-Moak Constitution relating to Tribal Voter Registration; Federal Case Law on Tribal Eligibility to Vote; Requirements of Tribal Registrations; Legal Requirements of Certified Voter Registration Lists; Federal Case Law on the Legal Requirements of the Tribal Absentee Vote; Federal Case Law on the Qualifications and Eligibility of

**SEPTEMBER 2020** ( CONTINUED 3 )

Candidate applying to an Elective Office; Federal Qualifications to Remove Prospective Tribal Candidates; Federal Case Law on the Legal Duties and Responsibilities of the Election Committees; Federal Case Law on the Legal Requirements of Vote Certification; Federal Case Law of the Rights of Tribal Persons Refused the Right to Vote; Refused the Right to Run for Elected Tribal Office;

Read and Research Federal Case Law on Article 7 of the 1982 Te-Moak Constitution regarding Legally Required times to Hold Elections; Case Law on Assuming Tribal Office after Elections; Federal Case Law on the Required Tribal Oath of Office; Federal Case Law on the Legal Requirements pertaining to Tribal Election Day; Tribal Monitoring Posts for Election; Tribal election Judges; Tribal Salaries and Expenses pertaining to the Tribal election Committee; Federal Case Law on the Legal composition and Legal Requirements of the Tribal Election Board;

Read and Research Federal Case Law on Article Eight of the 1982 Te-Moak Constitution pertaining to the Tribal Judicial Branch of Government; Federal Case Law on Tribal Courts of General Jurisdiction; Case Law on Courts of Appellate Jurisdiction of a Tribal Supreme Court; Federal Case Law on Powers and Bounds of Authority for the Tribal Judicial Branch for Tribal Cases in Law and for Tribal Cases in Equity; Federal Case Law on Tribal Jurisdiction over Tribal Individuals on Tribal Lands, Non-Tribal Individuals on Tribal Lands and Tribal Individuals on Non-Tribal Lands; Federal Case Law on the Final Interpreters of the Tribal Constitution and on Tribal Laws, Ordinances and Resolutions; Federal Case Law on Terms of Judicial Office; Federal Case Law on Required Qualification for Various Tribal Judicial Officers; Federal Case Law on Tribal Judges;; Required Qualifications; Compensation; Vacancies; Federal Case Law on the Legal Requirements to Fill Judicial Vacancies; Federal Case Law on the Legal Process to Recall Tribal Judges; Removal of Judicial Officers;

Read and research Federal Case Law pertaining to Article 9 of the 1982 Te-Moak Constitution; Federal Case Law regarding Basic "Bills of Rights" including all Civil Rights of Tribal Members; Free Exercise of Religion by Tribal Members; Federal Case Law pertaining to Freedom of Speech for Tribal Members; Federal Case Law pertaining to Freedom of the Press for Tribal Members; Federal Case Law pertaining to Freedom of Assembly of Tribal Members; Federal Case Law on ability of Tribal Members to Petition for a Redress of Grievances; Federal Case Law pertaining to the Rights of Tribal Citizens to be Secure in Their Persons, Homes, Papers and Effects Against Unreasonable Search and Seizure; Federal Case Law against Double Jeopardy of Tribal Citizens; Federal Case Law pertaining to the right against Compelling Tribal Citizens to be Witnesses Against Himself or Herself; Federal Case Law Against the Taking of Property without Just Compensation; Federal Case Law pertaining to the Right to a speedy Trial for Tribal Citizens; Federal case Law pertaining to the Tribal Right to be Informed of the Nature of a Criminal Accusation; Federal Case Law pertaining to the Tribal Right to Confront a Witness; Federal Case Law pertaining to the Tribal Right to Compel a Witness; Federal Case Law pertaining to the Tribal Right to Legal Counsel in Own Defense; Case Law regarding Excessive Bail; Case law regarding Excessive Fines; Federal Case Law pertaining to Cruel and unusual Punishment; Federal Case Law pertaining to Equal Protection of Tribal Citizens Under the Law; Federal Case law pertaining to Depriving a Tribal Citizen of Life, Liberty and/or Property without Due Process of Law; Federal Case Law pertaining to Bills of Attainder and Ex Post Facto Laws; Federal Case Law on the Tribal Right to Demand a Trial by Jury; Federal Case Law on the number of people required to partake on a Tribal Jury;

Review and research of Article Ten of the Te-Moak Constitution regarding the Use of Tribal Lands by Tribal Members and by Non-Tribal Members; Federal Case Law regarding the Lease, Permits,

**SEPTEMBER 2020** ( CONTINUED 4 )

Assignments and Other Contractual Matters Encumbering Tribal Lands; Federal Case Law on the Power of Bands within a Federally Recognized Tribe to Lease Tribal Lands; Federal Case Law on Grazing Permits; Federal Case Law on the Authority of the Band to Issue Assignments, Purpose, Preferences, and Notice Requirements; Legal Requirements regarding the Cancellation of Assignment; Death of a Tribal Member Holding Assignment; Legal Requirements of Succession; Legal Requirements for Application for Assignment; Federal Case Law on Legal Requirements for Record Keeping of All Activity Taken by Each Band Council regarding: Assignments, Ordinances for Tribal Land, Fees for Use of Tribal Land; Necessary Legal approval of the Secretary of the Interior for All Leases, Permits, Assignments and/or contracts on Tribal Lands;

Review and research of Federal Case Law pertaining to Article 11 of the Te-Moak Constitution; Federal Case Law regarding the Rights of Tribal Members to Propose Tribal Legislation including Ordinances, Resolutions, Laws; Case Law on Right s to Vote by Secret Ballot; Federal Case Law on the Legal Requirements for Tribal Members to File a Petition; Federal Case Law on Tribal Referendums on Federally Recognized Tribes; Federal Case Law regarding the Rights of Tribal Voters to Propose Band Initiatives; Federal Case Law on the Rights of Tribal Members to Propose Popular Referendums to affect Enacted and/or Proposed Resolutions/ Ordinances of a Band Council;

Review and research Federal Case Law regarding Article 12 of the 1982 Te-Moak Constitution regarding the Legal Requirements to Adopt/ Amend a Tribal Constitution; Legal Requirements from the Secretary of the Interior; Effective Date of said Adoption and/or Amendment of the Tribal Constitution; Federal Case Law on Holding Special Tribal Elections after the Adoption/ Amendment of the Constitution; Federal Case Law on Enacting all Tribal Ordinances, Resolution and Expressions of Policy before and after Enactment of the Tribal Constitution; Federal Case Law regarding the Legal Requirements of Nullification of Disharmonious Ordinances and Resolutions relative to the Constitution;

Phone call from Darian Stanford regarding Te-Moak Diabetes Building; Negotiation with Darian toward an amicable resolution; Finalization of Terms for Cannabis Settlement Agreement; Review of 15 Real Estates documents regarding five buildings in the Lower Elko Colony;

**<u>OCTOBER 2020</u>:**

Multiple Phone calls from Darian Stanford regarding negotiated Settlement Agreement; Further discussions regarding Agreed Pleadings for Cannabis Lawsuit;

Per request of Te-Moak Chairman, research and review CFR Rules and Relations to create Te-Moak Tribal Court System; Rules and Regulation to Replace Judge Harlan;
Review Federal Case Law on Repeal of Te-Moak Ordinance originally passed;

One Day In Person Meeting with Te-Moak Tribal Council in Wells Band to discuss ways in which all Four Bands can work together; Continue discussion on Apportionment Issue; Cannabis Issue; Tax Issue; Five Buildings in Lower Elko Colony Issue; Agree Upon a Resolution in which to Work Together; Further Discussions of Creating Te-Moak Tribal Court and Disbanding CFR Court, All Are in Agreement; Further discussions on the needed Additions to a New Te-Moak Constitution;

Review of Te-Moak Law and Order Code; Matching Federal Case Law Requirements to Each Article within the Te-Moak Law and Order Code; Analyze Impact of the Nevada Revised Statute 41.430 on the Te-Moak Law and Order Code and on the creation of a Te-Moak Tribal Court System; Study the Legal Elements necessary to Create the Te-Moak Tribal Court of Original Jurisdiction and Te-Moak Tribal Court of Appellate Supreme Court Jurisdiction; Match Legal Requirements with the 1982 Te-Moak Tribe of Western Shoshone Indian of Nevada Constitution; Verify that the Te-Moak Law and Order Code was Approved by the Department of the Interior and Approved; Confirm Legal Requirements under the CFR Codes for Replacing the Current CFR Court and the Current CFR Judge with a complete Tribal Court System and with Tribal Judges;

Begin drafting of Legal documents necessary to replace the current CFR Court and the current CFR Judge with an authentic Te-Moak Tribal Court System and with authentic Te-Moak Judges of Original Jurisdiction and Appellate Jurisdiction; Get approval from Te-Moak Chairman;

Review and research CFR Rules and Regulations to stay all pending CFR Court matters and CFR Rules and Regulations on the Transfer of these Cases to Te-Moak Tribal Court and before Te-Moak Tribal Judges;

Begin Blue Print for new Te-Moak Tribal Court of Original Jurisdiction and Blue Print for new Te-Moak Court of Appellate Jurisdiction; Research Structure of Courts and possible selections for Tribal judges, Tribal Clerk, Tribal Bailiff, Tribal Prosecutor, Tribal Public Defender;

Answer Multiple CFR Subpoenas from Felix Ike and from Lorraine Garcia; Research CFR Rules for lack of proper form in issuing said Subpoena; Draft Motion to Quash said Subpoenas;

$200,000.00

# Exhibit III-C(4)(c)

# Fwd: Amended Billing Statement

From: Te Moak Administrator (te.moak.adm@outlook.com)

To: sambiers@yahoo.com

Date: Sunday, September 26, 2021, 12:23 AM PDT

Get Outlook for Android

---

**From:** Sypolt, Scott <scott.sypolt@dentons.com>
**Sent:** Thursday, December 10, 2020 4:20:02 PM
**To:** Te.Moak.Adm@outlook.com <Te.Moak.Adm@outlook.com>; jhchairman1@yahoo.com <jhchairman1@yahoo.com>
**Cc:** Sypolt, Scott <scott.sypolt@dentons.com>; scottsypolt@rocketmail.com <scottsypolt@rocketmail.com>
**Subject:** Amended Billing Statement

Hi Sam,

Here is an amended version of the Billing Statement.   Please call me.

Thank you,
Scott

DENTONS Scott Sypolt

Visit the **New Dynamic Hub**, available to our clients and communities as part of the commitment that Dentons, the world's largest law firm, is making across 75+ countries, to address accelerating change resulting from the pandemic.

D +1 312 876 8184 | US Internal 18184
scott.sypolt@dentons.com
Bio | Website

Dentons US LLP

Durham Jones & Pinegar > LEAD Advogados > Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larraín Rencoret > For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices.

116147275_1.pdf
146.3kB

***DENTONS***

***Dentons US LLP***
***233 South Wacker Drive***
***Chicago, Illinois 60606-6361***

Te-Moak Tribe of Western Shoshone Indians of Nevada
37 Mountain View Drive
Battle Mountain, Nevada 89820
United States

Federal Indian Law

---

**AUGUST 2020:**

Legal Review of 1982 Te-Moak Tribe of Western Shoshone Indians of Nevada Constitution;

Legal Review of Legal Documents underlying formation of 1982 Te-Moak Constitution including but not Limited to the Indian Reorganization Act of 1934;

Review of all Federal Statutes, Federal Acts, Federal Rules & Regulations as adopted and/or Amended affecting the 1982 Te-Moak Constitution;

Review all Federal Case Law Affecting the Indian Reorganization Act of 1934, as Amended and/or Repealed;

Review and research of Nevada Revised Statute 41.430 and Nevada Revised Statute Code;

Review of Public Law 280 as it may relate to Te-Moak Tribe and Tribes of Nevada; Review Case Law on Federal Court interpretation of Nevada Revised Statute 41.430 as it relates to Te-Moak Tribe and to the Tribes of Nevada;

Review authority of the State of Nevada to impose State Laws on Te-Moak Tribe and Tribes of Nevada; Review Case Law on Cases pertaining to attempts by State of Nevada attempting to impose State Law on Federally Recognized Tribes of Nevada; Tribes organized under the Indian Reorganization Act of 1934

Draft Legal Memorandum on impact of Nevada Revised Statute 41.430 on Te-Moak Ordinances and Resolutions;

Review current Te-Moak Tribe Apportionment Ordinance; Review all Tribal Supplemental documents relating to Apportionment Ordinance;

Review Apportionment Ordinance as it relates to the Te-Moak Constitution;

Review Federal Constitutionality of Te-Moak Apportionment Article and Apportionment Ordinance; Review historical policy of Te-Moak Tribe of Western Shoshone Indians of Nevada as it relates the "1 Person, 1 Vote Principal; Review Federal Case Law on this subject;

Review Federal Constitutional Right of "Equal Representation" as it relates to Federally Recognized Tribes and as it relates to Tribal Bands within a Federally Recognized Tribe; Review Case Law on Legal Fights within Tribal Bands for Equal Representation within the Federally Recognized Tribe.

Draft Tribal Apportionment Ordinance pertaining to Equal Representation for Tribal Bands.

**SEPTEMBER 2020**:

Review and research of Article of Te-Moak Constituion pertaining to Tribal Membership; Review of Federal Case Law on Who is and Who is not a Tribal Member; Review of Tribal Membership requirements; Review of Base Roll #1 of Elko Colony; Review of Official Census of Non-Reservation Indians; Review of Requirements of Northeastern Nevada Reservation of Carson Agency as of January 1st, 1937 taken by Alida C. Bowler;

Review of Federal Case Law of Blood Quantum requirements of the Federal Government as it relates to a Federally Recognized Tribe; Review of Case Law on Blood Quantum;

Review of Blood Quantum requirements under the Indian Reorganization Act of 1934;

Review of Tribal Descendancy Requirements;

Review of Case Law pertaining to Implementation of Tribal Descendancy; Review Tribal Descendancy under Federally Recognized Tribes organized under the Indian Reorganization Act of 1934; Review of possible Legal Structures and Legal Processes to Implement Tribal Enrollment through Descendancy; Review Federal requirements under the Indian Reorganization Act of 1934 to establish Starting Point to trace Tribal Descendancy;

Review of Federal Case Law pertaining to Loss of Tribal Membership; Review Case Law on Constitutional Question of "Who Is An Indian"; Review Federal Case Law on the Constitutional Process of Disenrollment of a Tribal Member as it relates to the Te-Moak Constitution of 1982 and as it relates to Federally recognized Tribes organized under the Indian Reorganization Act of 1934; Review of Case Law regarding Disenrollment of a Tribal Member due to Lack of Blood Quantum; Review Statutes and Case Law on Tribal Requirements of ¼ Blood Quantum; Review Statutes and Case Law on Legal Process for a Federally Recognized Tribe organized under the Indian Reorganization Act of 1934 to switch from a ¼ Blood Quantum Requirement to a 1/8 Blood Quantum Requirement;

Review of Constitutional and Federal Legal Requirements to bring New Members into the Federally Recognized Tribe organized under the Indian Reorganization Act of 1934;

Call from Elko Attorney Darian Stanford to discuss Cannabis Law suit pending before the Te-Moak CFR Court;

Review of Entire Cannabis Lawsuit Court File (100 Pages); Review of Pleadings; Review of Related Statutes and Related Case Law;

Review of Legal Steps taken by Elko Band to Implement Cannabis Dispensary; Review of Resolutions and Ordinances; Review of Consensus Poll taken with Elko Tribal Residents;

Multiple Phone Calls from Felix Ike to Discuss His Cannabis Complaint;

Review of Documents, Resolutions and Consensus Polls supporting Felix Ike's Allegations;

Multiple Phone calls from Lorraine Garcia regarding Documents, Resolutions and Consensus Polls in support of Felix Ike Complaint;

**SEPTEMBER 2020** **(CONTINUED-1)**

Multiple emails from Felisa Wright regarding Cannabis Court Case;

Review of Federal Case Law on Legality of Elko dispensary; Review of Case Law on Medical Cannabis versus Recreational Cannabis; Review of State Law on Cannabis and Pending Federal Law on Legalization of Cannabis; Review of State Laws that allow Sale of Medical and Recreational Cannabis in their respective States Despite Federal ban on the Sale of Cannabis; Review of Federal Policy of "Don't Ask, Don't Tell, Non-Enforcement of Prosecuting Cannabis Medical and Recreational Sales in States; Review of Federally Recognized Tribes Selling Cannabis Despite Federal Ban; Review of the Constitutions of those Federally Recognized Tribes to Allow for the sale of Medical and Recreational Cannabis;

Multiple Phone Calls from Darian Stanford (Cannabis Attorney for Elko Band) on possible Settlement terms of Cannabis Lawsuit;

Discussions with Te-Moak Chairman, Te-Moak Administrator and Members of Te-Moak Council on possible Settlement of Cannabis Lawsuit; Discussion of desired Terms including but not limited to Apportionment Agreement, Tax, 5 Buildings in Lower Elko Colony;

Review of Fact-Check on Felix Ike Allegations in Cannabis Lawsuit;

Additional Phone Calls from Felix Ike relating to Fact-Check of His Allegations;

Additional Phone Calls from Lorraine Garcia relating to Fact-Check relating Felix Ike Allegations in Cannabis Complaint;

Multiple Phone Calls from Darian Stanford relating to Cross-Check of Felix Ike Allegations regarding past Te-Moak and Elko Resolutions, Ordinances, Consensus Polls and Te-Moak Constitution.

Continued Phone Call conversation with Darian Stanford regarding possible Settlement of Cannabis Complaint;

Review of CFR Rules and Regulations; Review of Federal Rules of Civil Procedure as they relate to the Cannabis Lawsuit;

Filing of Te-Moak Legal Response to Felix Ike Cannabis Complaint; Agreed Order written For Extension of Time for Trial regarding Cannabis Lawsuit;

Additional Phone Calls from Darian Stanford and presentation of Te-Moak Council Demands for a Cannabis Settlement;

Discussion of Legality of Elko Cannabis Referendum Vote from a Medical Cannabis and Recreational Cannabis point of view; Discussion of the purported Integrity of the Cannabis Referendum Vote;

Request to see the Elko Band Cannabis Referendum Vote Results; Request to depose the Director of the Elko Cannabis Referendum Vote;

**SEPTEMBER 2020** **(CONTINUED 2)**

Discussion with Darian Stanford pertaining to the Te-Moak Constitution Conflict regarding the Elko Band Cannabis Dispensary;

Discussion of Legal Relationship between Elko Band and the Cannabis Company that established the Elko dispensary;

Discussion of the Legality of the State of Nevada Cannabis Compact with Elko Band;

Begin Drafting Cannabis Settlement Proposal for Elko Band and Te-Moak Tribal Council; Continue to negotiate the Terms with Elko Band;

Present possible settlement terms to Te-Moak Chairman and Te-Moak Administrator; Finish Cannabis Settlement Resolution; Legal Conversation regarding Sovereign Cannabis Solutions;

Read and review Article Four of the Te-Moak Constitution; Research Federal Case Law relating to the governing Bodies of Tribal Executive and Tribal Legislative Branches of government and their Legal Bounds and Limits of Authority; Legal Composition of Federally Recognized Tribal Councils; Legal Case Law on Apportionment of Tribal Band Representation on Tribal Councils; Federal Case Law on the Legal Bounds of authority for Tribal Chairperson in Tribes Organized under the Indian Reorganization Act of 1934; Power and Bounds of Authority for the Tribal Vice Chairperson; Power and Bounds of Authority for the Tribal Secretary; Power and Bounds of Authority for the Tribal Treasurer; Power and Bound of Conduct for the Administrator; Power and Bounds of conduct for the Tribal Accountant; Federal Case Law on Legal Succession of Tribal Officers; Federal Case Law on Length of Terms; Number of Consecutive Terms; Federal Case Law on the Power of the Tribal Council to Remove Tribal Officers; Federal Case Law on the Power of the Tribe to Remove Tribal Officers; Federal Case Law on the Power of the Tribe to remove Tribal Council Members; Tribal Council Codes of Conduct; Federal Case Law on Legal Grounds for Removal; Federal Case Law on the Legal Bounds of Authority for Tribal Officers/ Tribal Council Members, to Sell, Dispose of, Lease, Encumber, Assign and/or Regulate Tribal Lands; Federal Case Law on the Power and Bounds of Authority for Tribal Bands to Sell, Dispose of, Lease, Encumber, Assign and/or Regulate; enter into Contracts, Manage and Control Tribal Assets and/or Tribal Lands; Federal Case Law on the Legal Power and Bounds of Authority for the Tribal Council to Charter and to Regulate Independent Organizations associated with the Tribe; Federal Case Law on the Legal Power and Bounds of Authority for the Tribal Council to Manage Economic Affairs and Enterprises of the Tribe; Federal Case Law on the Legal Power and Bounds of Authority for Tribal Bands to Manage Economic Affairs and Enterprises Associated with the Tribe; Federal Case Law on the Power of the Tribal Council to Establish and Manage Tribal Agencies; Federal Case Law on the Power and Bounds of Authority to Levy Tax Assessments; Federal Case Law on the Legal Power and Bounds of Authority of the Tribal Council to Spend Tribal Funds; Federal Case Law on the Legal Power and Bounds of Authority of the Tribal Council to Promote and to Protect the Health, Peace, Morals, Education, Safety and Welfare of the Tribe; Federal Case Law on the Legal Power and Bounds of Authority of the Tribal Council to Regulate Administrative Agencies, Quasi-Administrative Agencies, and Band Legislative Bodies;

Read and research Federal Case Law pertaining to Article Five of the 1982 Te-Moak Constitution relating to Tribal Voter Registration; Federal Case Law on Tribal Eligibility to Vote; Requirements of Tribal Registrations; Legal Requirements of Certified Voter Registration Lists; Federal Case Law on the Legal Requirements of the Tribal Absentee Vote; Federal Case Law on the Qualifications and Eligibility of

**SEPTEMBER 2020** ( CONTINUED 3 )

Candidate applying to an Elective Office; Federal Qualifications to Remove Prospective Tribal Candidates; Federal Case Law on the Legal Duties and Responsibilities of the Election Committees; Federal Case Law on the Legal Requirements of Vote Certification; Federal Case Law of the Rights of Tribal Persons Refused the Right to Vote; Refused the Right to Run for Elected Tribal Office;

Read and Research Federal Case Law on Article 7 of the 1982 Te-Moak Constitution regarding Legally Required times to Hold Elections; Case Law on Assuming Tribal Office after Elections; Federal Case Law on the Required Tribal Oath of Office; Federal Case Law on the Legal Requirements pertaining to Tribal Election Day; Tribal Monitoring Posts for Election; Tribal election Judges; Tribal Salaries and Expenses pertaining to the Tribal election Committee; Federal Case Law on the Legal composition and Legal Requirements of the Tribal Election Board;

Read and Research Federal Case Law on Article Eight of the 1982 Te-Moak Constitution pertaining to the Tribal Judicial Branch of Government; Federal Case Law on Tribal Courts of General Jurisdiction; Case Law on Courts of Appellate Jurisdiction of a Tribal Supreme Court; Federal Case Law on Powers and Bounds of Authority for the Tribal Judicial Branch for Tribal Cases in Law and for Tribal Cases in Equity; Federal Case Law on Tribal Jurisdiction over Tribal Individuals on Tribal Lands, Non-Tribal Individuals on Tribal Lands and Tribal Individuals on Non-Tribal Lands; Federal Case Law on the Final Interpreters of the Tribal Constitution and on Tribal Laws, Ordinances and Resolutions; Federal Case Law on Terms of Judicial Office; Federal Case Law on Required Qualification for Various Tribal Judicial Officers; Federal Case Law on Tribal Judges;; Required Qualifications; Compensation; Vacancies; Federal Case Law on the Legal Requirements to Fill Judicial Vacancies; Federal Case Law on the Legal Process to Recall Tribal Judges; Removal of Judicial Officers;

Read and research Federal Case Law pertaining to Article 9 of the 1982 Te-Moak Constitution; Federal Case Law regarding Basic "Bills of Rights" including all Civil Rights of Tribal Members; Free Exercise of Religion by Tribal Members; Federal Case Law pertaining to Freedom of Speech for Tribal Members; Federal Case Law pertaining to Freedom of the Press for Tribal Members; Federal Case Law pertaining to Freedom of Assembly of Tribal Members; Federal Case Law on ability of Tribal Members to Petition for a Redress of Grievances; Federal Case Law pertaining to the Rights of Tribal Citizens to be Secure in Their Persons, Homes, Papers and Effects Against Unreasonable Search and Seizure; Federal Case Law against Double Jeopardy of Tribal Citizens; Federal Case Law pertaining to the right against Compelling Tribal Citizens to be Witnesses Against Himself or Herself; Federal Case Law Against the Taking of Property without Just Compensation; Federal Case Law pertaining to the Right to a speedy Trial for Tribal Citizens; Federal case Law pertaining to the Tribal Right to be Informed of the Nature of a Criminal Accusation; Federal Case Law pertaining to the Tribal Right to Confront a Witness; Federal Case Law pertaining to the Tribal Right to Compel a Witness; Federal Case Law pertaining to the Tribal Right to Legal Counsel in Own Defense; Case Law regarding Excessive Bail; Case law regarding Excessive Fines; Federal Case Law pertaining to Cruel and unusual Punishment; Federal Case Law pertaining to Equal Protection of Tribal Citizens Under the Law; Federal Case law pertaining to Depriving a Tribal Citizen of Life, Liberty and/or Property without Due Process of Law; Federal Case Law pertaining to Bills of Attainder and Ex Post Facto Laws; Federal Case Law on the Tribal Right to Demand a Trial by Jury; Federal Case Law on the number of people required to partake on a Tribal Jury;

Review and research of Article Ten of the Te-Moak Constitution regarding the Use of Tribal Lands by Tribal Members and by Non-Tribal Members; Federal Case Law regarding the Lease, Permits,

**SEPTEMBER 2020** ( CONTINUED 4 )

Assignments and Other Contractual Matters Encumbering Tribal Lands; Federal Case Law on the Power of Bands within a Federally Recognized Tribe to Lease Tribal Lands; Federal Case Law on Grazing Permits; Federal Case Law on the Authority of the Band to Issue Assignments, Purpose, Preferences, and Notice Requirements; Legal Requirements regarding the Cancellation of Assignment; Death of a Tribal Member Holding Assignment; Legal Requirements of Succession; Legal Requirements for Application for Assignment; Federal Case Law on Legal Requirements for Record Keeping of All Activity Taken by Each Band Council regarding: Assignments, Ordinances for Tribal Land, Fees for Use of Tribal Land; Necessary Legal approval of the Secretary of the Interior for All Leases, Permits, Assignments and/or contracts on Tribal Lands;

Review and research of Federal Case Law pertaining to Article 11 of the Te-Moak Constitution; Federal Case Law regarding the Rights of Tribal Members to Propose Tribal Legislation including Ordinances, Resolutions, Laws; Case Law on Right s to Vote by Secret Ballot; Federal Case Law on the Legal Requirements for Tribal Members to File a Petition; Federal Case Law on Tribal Referendums on Federally Recognized Tribes; Federal Case Law regarding the Rights of Tribal Voters to Propose Band Initiatives; Federal Case Law on the Rights of Tribal Members to Propose Popular Referendums to affect Enacted and/or Proposed Resolutions/ Ordinances of a Band Council;

Review and research Federal Case Law regarding Article 12 of the 1982 Te-Moak Constitution regarding the Legal Requirements to Adopt/ Amend a Tribal Constitution; Legal Requirements from the Secretary of the Interior; Effective Date of said Adoption and/or Amendment of the Tribal Constitution; Federal Case Law on Holding Special Tribal Elections after the Adoption/ Amendment of the Constitution; Federal Case Law on Enacting all Tribal Ordinances, Resolution and Expressions of Policy before and after Enactment of the Tribal Constitution; Federal Case Law regarding the Legal Requirements of Nullification of Disharmonious Ordinances and Resolutions relative to the Constitution;

Phone call from Darian Stanford regarding Te-Moak Diabetes Building; Negotiation with Darian toward an amicable resolution; Finalization of Terms for Cannabis Settlement Agreement; Review of 15 Real Estates documents regarding five buildings in the Lower Elko Colony;

**OCTOBER 2020:**

Multiple Phone calls from Darian Stanford regarding negotiated Settlement Agreement; Further discussions regarding Agreed Pleadings for Cannabis Lawsuit;

Per request of Te-Moak Chairman, research and review CFR Rules and Relations to create Te-Moak Tribal Court System; Rules and Regulation to Replace Judge Harlan;
Review Federal Case Law on Repeal of Te-Moak Ordinance originally passed;

One Day In Person Meeting with Te-Moak Tribal Council in Wells Band to discuss ways in which all Four Bands can work together; Continue discussion on Apportionment Issue; Cannabis Issue; Tax Issue; Five Buildings in Lower Elko Colony Issue; Agree Upon a Resolution in which to Work Together; Further Discussions of Creating Te-Moak Tribal Court and Disbanding CFR Court, All Are in Agreement; Further discussions on the needed Additions to a New Te-Moak Constitution;

Review of Te-Moak Law and Order Code; Matching Federal Case Law Requirements to Each Article within the Te-Moak Law and Order Code; Analyze Impact of the Nevada Revised Statute 41.430 on the Te-Moak Law and Order Code and on the creation of a Te-Moak Tribal Court System; Study the Legal Elements necessary to Create the Te-Moak Tribal Court of Original Jurisdiction and Te-Moak Tribal Court of Appellate Supreme Court Jurisdiction; Match Legal Requirements with the 1982 Te-Moak Tribe of Western Shoshone Indian of Nevada Constitution; Verify that the Te-Moak Law and Order Code was Approved by the Department of the Interior and Approved; Confirm Legal Requirements under the CFR Codes for Replacing the Current CFR Court and the Current CFR Judge with a complete Tribal Court System and with Tribal Judges;

Begin drafting of Legal documents necessary to replace the current CFR Court and the current CFR Judge with an authentic Te-Moak Tribal Court System and with authentic Te-Moak Judges of Original Jurisdiction and Appellate Jurisdiction; Get approval from Te-Moak Chairman;

Review and research CFR Rules and Regulations to stay all pending CFR Court matters and CFR Rules and Regulations on the Transfer of these Cases to Te-Moak Tribal Court and before Te-Moak Tribal Judges;

Begin Blue Print for new Te-Moak Tribal Court of Original Jurisdiction and Blue Print for new Te-Moak Court of Appellate Jurisdiction; Research Structure of Courts and possible selections for Tribal judges, Tribal Clerk, Tribal Bailiff, Tribal Prosecutor, Tribal Public Defender;

Answer Multiple CFR Subpoenas from Felix Ike and from Lorraine Garcia; Research CFR Rules for lack of proper form in issuing said Subpoena; Draft Motion to Quash said Subpoenas;

$127,000.00

# Appendix III

# Exhibit III-C(5)

大成 DENTONS

George T. Skibine
george.skibine@dentons.com
D +1 202-408-8865

Dentons US LLP
1900 K Street, NW
Washington, DC 20006
United States

dentons.com

000320

2021 FEB -8 P 4: 19

February 5, 2021

Mr. Bryan Bowker
Regional Director
Bureau of Indian Affairs
Western Regional Office
2600 N. Central Ave.
Phoenix, Arizona 85004

Re: NOTICE OF APPEAL

Dear Regional Director Bowker:

On behalf of the Te-Moak Tribe of Western Shoshone Indians ("Tribe"), I write to appeal, pursuant to 25 C.F.R. Part 2, a decision letter from Mr. Bryan Bowker, Regional Director, Western Region, to the Honorable Joseph Holley, Chairman, Te-Moak Tribe of Western Shoshone Indians, dated December 17, 2020, and received by the Tribe on January 27, 2021 (Exh. 1). More specifically, we appeal the decision's statement to "continue to operate the Court of Indian Offenses as the court providing judicial services to the Te-Moak Tribe of Western Shoshone Indians" until the mediation process regarding the Tribe's Judicial Services contract is resolved The Bureau of Indian Affairs reassumed the Tribe's Judicial Services contract pursuant to 25 C.F.R. Part 900, Subpart P on June 12, 2017, over three and a half years ago.

STATEMENT OF REASONS

On November 24, 2020, the Tribe wrote to then Assistant Secretary for Indian Affairs Tara Sweeney (Exh. 2) to inform her that, pursuant to 25 C.F.R. 11.104, it had duly enacted Te-Moak Resolution No. 20-TM-129, reestablished its own tribal judicial system and readopting the Tribe's 1987 Law and Order Code, in accordance with the Tribe's Constitution (Exh. 3). As a result, pursuant to 25 C.F.R. 11.104(b), 25 C.F.R. the regulations in 25 C.F.R. Part 11 no longer apply to the Tribe. The letter of December 17, 2020, acknowledges receipt of the Tribe's November 24, 2020, letter to then Assistant Secretary Sweeney, but simply ignores the clear language of the regulation in 25 C.F.R. 11.104, that explains when 25 C.F.R. Part 11 ceases to apply to the Tribe. Instead, the letter states that the Court of Indian Offenses will continue to operate on the Tribe's Indian lands until ongoing mediation regarding the reassumption of the Judicial Services contract is resolved. The letter does not state any rationale or legal basis for the decision to continue to recognize the existence of a Court of Indian Offenses for the Tribe in contravention of the regulations in 25 C.F.R. Part 11. The reassumption process cited in the letter as the reason for the decision is totally separate and unrelated to the decision by the Tribe to reestablish its own judicial system, and the regulations in 25 C.F.R. Part 11 nowhere prevent an Indian tribe from transitioning to a tribal court system because of a pending appeal process under the Indian Self Determination Act regulations in 25 C.F.R. Part 900 The two issues are simply unrelated

In addition, the December 17, 2020, decision ostensibly results in the operation of two competing tribal court systems, one unlawfully run by the BIA and the other by the Tribe's pursuant to its sovereign authority under the Tribe's Constitution. This can only result in an untenable and chaotic state of affairs. Finally, we note that it is the antithesis of Indian self-governance and self-determination to thwart the sovereign right of the Tribe to reestablish a tribal court system.

Also enclosed for the record is a letter dated February 13, 2017, from the Acting Regional Director, Western Region, to the Tribe's Vice Chairman, Davis Gonzales, that contains an accurate understanding of the regulation in 25 C.F.R. 11.104, and recognizes the approval of the Tribe's Law and order Code by the BIA on July 11, 1989 (Exh. 4).

For the foregoing reasons, we appeal the Regional Director's decision dated December 17, 2020, but received by the Tribe on January 27, 2021. We are not aware of the existence of any other interested party as defined in 25 C.F.R. 2.2.

Sincerely,

George T. Skibine

Enclosures

cc: Assistant Secretary - Indian Affairs
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240
MS-4660-MIB

Interior Board of Indian Appeals
Office of Hearings and Appeals
U.S. Department of the Interior
801 North Quincy Street
Arlington, Virginia 22203

The Honorable Joseph Holley
Chairman, Te-Moak Tribe of Western Shoshone Indians
525 Sunset Street
Elko, Nevada 89801

# Appendix III

# Exhibit III-C(6)

*LAW OFFICES OF SCOTT SYPOLT*

**7903 Bayview Road**
**Wonder Lake, Illinois 60097**
**312-402-6688**

# INVOICE /01

Bill to:
Joseph Holley
Chairman
Te-Moak Tribe of Western Shoshone Indians of Nevada
525 Sunset Street
Elko, Nevada 89801

---

DESCRIPTION:

$390,000 Retainer for legal services per Resolution passed by Te-Moak Tribal Council on September 9, 2021 and per Retainer Agreement signed by Chairman Joseph Holley on September 9, 2021.

PLEASE MAKE CHECK PAYABLE TO: **SCOTT SYPOLT**

**MAIL CHECK TO:** **7903 Bayview Road**
**Wonder Lake, Illinois 60097**

*Thank you for your business!*

Te-Moak Tribe of Western Shoshone

**CHECK REQUEST**

DATE: 09/10/2021

PLEASE ISSUE CHECK ON: (Circle One)

**Administration Fund** (circled) **Diabetes Fund** **Court Fund** **General Fund**

MAKE CHECK PAYABLE TO:
Law Offices of Scott Sypolt
7903 Bayview Road
Wonder Lake, Illinois 60097

IN THE AMOUNT OF: $390,000

FOR PAYMENT OF: Invoice /01
(Description/Item) Retainer Fee for legal services
(INV #/Statement #) Approved by Tribal Council & Resolution on 09/09/2021

CHARGE OF ACCOUNT:

(Please Check Mark your Program #)

| | Program # | | Acct # |
|---|---|---|---|
| | 20 | — | |
| | 36 | — | |
| | 42 | — | |
| | 43 | — | |
| | 45 | — | |
| | 51 | — | |
| | 52 | — | |
| | 58 | — | |
| | 59 | — | |
| | 68 | — | |
| | 69 | — | |
| | 76 | — | |
| | 77 | — | |
| | | — | |

Please refer to the Chart of Accounts for more information

REQUESTED BY: [signature] DATE: 9.13.2021

PROGRAM DIRECTOR: ______________ DATE: ______
(If Available)

TRIBAL ADMINISTRATOR: ______________ DATE: ______

(For Finance Department Only)

| PAID | | PAID | |
|---|---|---|---|
| DATE: | | DATE: | |
| AMT: | | AMT: | |
| CHECK #: | | CHECK #: | |
| CODE: | | CODE: | |

# Appendix III

# Exhibit III-C(7)

**From:** scottsypolt <scottsypolt@rocketmail.com>
**Sent:** Wednesday, September 15, 2021 11:23 AM
**To:** Alice Tybo <alicetybo@gmail.com>; Wright, Felisa A <Felisa.Wright@bia.gov>; Joseph mcdade <joeroper5@hotmail.com>
**Cc:** Joe Holley <jhchairman1@yahoo.com>; Duane Garcia, Acting Chairman <Duane.garcia56@hotmail.com>; Andrea Woods, Chairwoman <Andyw.wellsbandcouncil@gmail.com>; Julia Oppenhein <julsoppie@yahoo.com>; Paula Garcia <paula.wellsband@yahoo.com>; oppenhein13@gmail.com <oppenhein13@gmail.com>; David Carrera <tribalchairman.carrera@yahoo.com>; chadsmith@chadsmith.com <chadsmith@chadsmith.com>; Chad Smith <Chad@chadsmith.com>
**Subject:** [EXTERNAL] Re: CIV-21-WR08 Order Denying Ex Parte Relief and Setting Matter for Hearing

**This email has been received from outside of DOI - Use caution before clicking on links, opening attachments, or responding.**

Hi Alice,
I talked with Joe about this last night. Today we are filing an Appeal which will freeze the Status Quo as it existed BEFORE the Order was issued.

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: Alice Tybo <alicetybo@gmail.com>
Date: 9/15/21 12:07 PM (GMT-07:00)
To: "Wright, Felisa A" <Felisa.Wright@bia.gov>, Joseph mcdade <joeroper5@hotmail.com>, Scott Sypolt <scottsypolt@rocketmail.com>
Cc: Joe Holley <jhchairman1@yahoo.com>, "Duane Garcia, Acting Chairman" <Duane.garcia56@hotmail.com>, "Andrea Woods, Chairwoman" <Andyw.wellsbandcouncil@gmail.com>, Julia Oppenhein <julsoppie@yahoo.com>, Paula Garcia <paula.wellsband@yahoo.com>, oppenhein13@gmail.com, David Carrera <tribalchairman.carrera@yahoo.com>, scottsypolt@rocketmail.com, chadsmith@chadsmith.com, Chad Smith <Chad@chadsmith.com>
Subject: Re: CIV-21-WR08 Order Denying Ex Parte Relief and Setting Matter for Hearing

The judge had the "chief of police," order the Te-Moak council to listen to Advocates Lorraine Garcia and Felix Ike. They filed an action in court prior to the Temoak Council hearing their issues. The Advocates and the judge are interfering in tribal business and are acting as though they are the Te-Moak Tribal Council. How can we listen to the grievance, When an action has already been filed in court?

Sent from my iPhone

On Sep 15, 2021, at 9:29 AM, Wright, Felisa A <Felisa.Wright@bia.gov> wrote:

Court hearing information and copy of "CIV-21-WR08 Order Denying Ex Parte Relief and Setting Matter for Hearing", thank you

Friday, September 17, 2021

10:00 AM | (UTC-07:00) Pacific Time (US & Canada) | 1 hr

# Appendix III

# Exhibit III-C(8)

# Te-Moak Tribe of Western Shoshone

## CHECK REQUEST

**DATE:** 12/27/2021

**PLEASE ISSUE CHECK ON:** (Circle below)

*Administration Fund* *Diabetes Fund* *Court Fund* *General Fund* *CARES Fund*

**MAKE CHECK PAYABLE TO:** Wendall Hayes

TeMoak Tribal Judge

(need address and receipts)

**IN THE AMOUNT OF:** $4,068.95

**FOR PAYMENT OF:** 10/13-10-16/21
(Description/Item)
(INV #/Statement #)

Newly appointed and sworn Tribal Judge: - 10/13-10/16/21: $3000.00
Travel Cost Airfair: $798.31, Rental car and gas: $270.64: Total $1068.95

CHARGE ACCOUNT CODE:

Please mark your Program #

| Program # | Name | Acct # | AMOUNT | |
|---|---|---|---|---|
| 10 | CARES | | | |
| 20 | ITCA | | | |
| 25 | SORNA | | | |
| 26 | SORNA-Fuel | | | |
| 36 | Environmental | | | |
| 45 | Court Fund | | | |
| 51 | Enrollment | | | |
| 52 | ATTG | 5270 | $4,068.95 | Consultants |
| 58 | Judicial | | | |
| 59 | Indirect | | | |
| 68 | Eyewear | | | |
| 69 | Diabetes | | | |
| 76 | State Grant | | | |
| 78 | Transportation | | | |
| | | Total | $ - | |

REQUESTED BY: ______________ DATE: 12/27/2021

PROGRAM DIRECTOR: ______________ DATE: ______________

TRIBAL ADMINISTRATOR: ______________ DATE: 12/27/2021

*(For Finance Dept Use)*

DATE: ______________

AMT: ______________

CHECK #: ______________

CODE: ______________

002442

**TE-MOAK TRIBE OF WESTERN SHOSHONE INDIANS OF NEVADA**
**37 MOUNTAIN VIEW DRIVE**
**BATTLE MOUNTAIN, NEVADA 89820**

2021 DEC 27 P 3:04

WESTERN SHOSHONE

TO: jhchairman1@gmail.com

TO: alicetybo@gmail.com

**RE: INVOICE FOR and TRAVEL EXPENSES**

**October 13, to October 16, 2021. $3000.00**

In my capacity as a newly appointed and sworn Tribal Judge.

The first hearing (s) was on October 13, 2021, in Battle Mountain, NV. Since then, there has been several official duties performed that required the "swearing in" of duly elected officials. These were conducted by telephone conference.

**October 13, to October 16, 2021. Travel Expenses**

In my capacity there were travel expensed incurred. They involved air fare, gasoline lodging, and meals.

1. OCTOBER 3RD, 2021. UNITED AIRLINES
   CHICAGO IL to SALT LAKE CITY UT - ROUND TRIP
   FIND ATTACHED:

| | | |
|---|---|---|
| E-Ticket Receipt | $595.60 | (Refundable Ticket) |
| Economy Plus Seat | $29.00 | (Legroom and Seat Location Fee) |
| Economy Plus Seat | $66.00 | (SLC to DEN) |
| Economy Plus Seat | $69.00 | (DEN to CHICAGO) |
| Travel Guard Group | $38.00 | (Insurance Cover for trip) |

**TOTAL COST OF AIR TRAVEL: $798.31**

Plane fare and companion costs: Seat selection, and travel insurance, beg fees, ect:

TOTAL: **$798.31** billed to AX Card. 10/03/2021.

2. Hertz rental car at Salt Lake City International Airport.

2021 DEC 27 P 3:05

WESTERN SHOSHONE

TOTAL: **$180.64** billed to AX Card.

Car picked up on 10/13/2021 and returned on 10/15/2021.

Attached receipt for $180.64 from the Hertz Rental

3. Hotel accommodations in Elko NV were billed by and to Scott Sypolt. 10/13/2021. **$00.00**

4. Gasoline cost at Elko Freeway Sinclair gas station. 10/14/ 2021

TOTAL: **$50.00.**

Fill-up cost of gasoline after return from Battle Mountain back to Elko.

Find ATTACHED receipt of purchase.

5. Gasoline cost

TOTAL: **$40.00.**

Return gasoline cost to return car to Hertz Rental Car at SLC Airport

Find receipt Top Stop gas station in West Valley City, UT

**TOTAL CAR AND TRAVEL EXPENSES:**

**$1068.95**

**TOTAL DUE FOR OCTOBER:** **$3000.00 - Stipend**
**$1068.95 - Car and travel expenses..**

**$4068.95**

# Appendix III

# Exhibit III-C(9)

## Limited Liability Partnership - Information Change

Secretary of State - Corporation Division - 255 Capitol St. NE, Suite 151 - Salem, OR 97310-1327 - sos.oregon.gov/business - Phone: (503) 986-2200

FILED: NOV 2, 2021
OREGON SECRETARY OF STATE
60175883-22726455
TONKON TORP LLP
AAR

**REGISTRY NUMBER:** 601758-83

**ENTITY TYPE:** (●) DOMESTIC ( ) FOREIGN

In accordance with Oregon Revised Statute 192.410-192.490, the information on this application is public record. We must release this information to all parties upon request and it will be posted on our website.

Please Type or Print Legibly in Black Ink. Attach Additional Sheet if Necessary.

**1. NAME OF LIMITED LIABILITY PARTNERSHIP:**

Tonkon Torp LLP

**2. PRINCIPAL PLACE OF BUSINESS: (Street Address)**

888 SW 5th Avenue, Suite 1600
Portland, OR 97204

**3. ADDRESS WHERE THE DIVISION MAY MAIL NOTICES:**

888 SW 5th Avenue, Suite 1600
Portland, OR 97204

**NAME(S) AND ADDRESS(ES) OF PARTNER(S)**

**4. PARTNER(S):** (Name(s) and New Adress(es))

Kurt W. Ruttum
888 SW 5th Avenue, Suite 1600
Portland, OR 97204

(Name and New Address)

Sherrill A. Corbett
888 SW 5th Avenue, Suite 1600
Portland, OR 97204

**5. EXECUTION:** I declare as an authorized signer, under penalty of perjury, that this document does not fraudulently conceal, obscure, alter, or otherwise misrepresent the identity of any person including officers, directors, employees, members, managers or agents. This filing has been examined by me and is, to the best of my knowledge and belief, true, correct and complete. Making false statements in this document is against the law and may be penalized by fines, imprisonment, or both.

**SIGNATURE:**

**PRINTED NAME:** Kurt W. Ruttum

**TITLE:** Partner

**DATE:** 10-21-21

**CONTACT NAME:** (To resolve questions with this filing)

Rita Bell

**PHONE NUMBER:** (Include area code)

503-802-2083

**FEES**

No Processing Fee

Free copies are available at sos.oregon.gov/business using the Business Name Search program.

Phone: [illegible]
Fax: [illegible]

Secretary of State
Corporation Division
[illegible] Capitol St. NE, Suite [illegible]
Salem, OR [illegible]

# Application for Registration—Limited Liability Partnership

For office use only

FILED
OCT 29 1997
OREGON
SECRETARY OF STATE

Registry Number: 601758-83

Attach Additional Sheet If Necessary
Please Type or Print Legibly in Black Ink

1) Name (Must contain the words "Registered Limited Liability Partnership" or the abbreviation "LLP" or "L.L.P.")
Tonkon Torp LLP

2) Principal Office Address
1600 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204

3) Address Where the Division May Mail Notices
1600 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204

4) Brief Statement of Primary Business Activity
Practice of law.

5) Federal Identification Number
93-0633194

6) Name and Address of At Least Two Partners
Jeffrey E. Harmes
1600 Pioneer Tower, 888 SW Fifth Avenue
Portland, OR 97204
Mark F. LeRoux
1600 Pioneer Tower, 888 SW Fifth Avenue
Portland, OR 97204

7) Other Optional Provisions
Effective Nov. 3, 1997

8) Execution (At least one partner must sign.)

Printed Name
Jeffrey E. Harmes

Signature
[signature]

9) Contact Name
Jeffrey E. Harmes

Daytime Phone Number
(503) 802-2024

FEES
[illegible]

CR101 (Rev. [illegible])

1027970605 40

TONKON TORP LLP
60175883-4597177 NEW

# Appendix III

# Exhibit III-C(10)

# Business Registry Business Name Search

New Search

## Business Entity Data

01-14-2022 12:22

| Registry Nbr | Entity Type | Entity Status | Jurisdiction | Registry Date | Next Renewal Date | Renewal Due? |
|---|---|---|---|---|---|---|
| 760973-94 | DBC | INA | OREGON | 03-30-2011 | | |
| Entity Name | CASCADE STRATEGIC INVESTMENTS, INC. | | | | | |
| Foreign Name | | | | | | |

New Search

## Associated Names

| | | | | | | |
|---|---|---|---|---|---|---|
| Type | PPB | PRINCIPAL PLACE OF BUSINESS | | | | |
| Addr 1 | 1001 SW 5TH AVE | | | | | |
| Addr 2 | | | | | | |
| CSZ | PORTLAND | OR | 97204 | | Country | UNITED STATES OF AMERICA |

*Please click here for general information about registered agents and service of process.*

| | | | | | | |
|---|---|---|---|---|---|---|
| Type | AGT | REGISTERED AGENT | Start Date | 03-23-2016 | Resign Date | |
| Of Record | 086012-96 | TT ADMINISTRATIVE SERVICES, LLC | | | | |
| Addr 1 | 888 SW 5TH AVE SUITE 1600 | | | | | |
| Addr 2 | | | | | | |
| CSZ | PORTLAND | OR | 97204 | | Country | UNITED STATES OF AMERICA |

| | | | | | | |
|---|---|---|---|---|---|---|
| Type | MAL | MAILING ADDRESS | | | | |
| Addr 1 | 1001 SW 5TH AVE | | | | | |
| Addr 2 | | | | | | |
| CSZ | PORTLAND | OR | 97204 | | Country | UNITED STATES OF AMERICA |

| | | | | | | |
|---|---|---|---|---|---|---|
| Type | PRE | PRESIDENT | | | Resign Date | |
| Name | KEVIN | | CLOCK | | | |
| Addr 1 | 1001 SW 5TH AVE | | | | | |
| Addr 2 | | | | | | |
| CSZ | PORTLAND | OR | 97204 | | Country | UNITED STATES OF AMERICA |

| | | | | | | |
|---|---|---|---|---|---|---|
| Type | SEC | SECRETARY | | | Resign Date | |
| Name | ELI | | PARRIS | | | |
| Addr 1 | 1001 SW 5TH AVE | | | | | |
| Addr 2 | | | | | | |
| CSZ | PORTLAND | OR | 97204 | | Country | UNITED STATES OF AMERICA |

New Search

## Name History

| Business Entity Name | Name Type | Name Status | Start Date | End Date |
|---|---|---|---|---|
| CASCADE STRATEGIC INVESTMENTS, INC. | EN | CUR | 03-30-2011 | |

Please read before ordering Copies.

New Search

## Summary History

| Image Available | Action | Transaction Date | Effective Date | Status | Name/Agent Change | Dissolved By |
|---|---|---|---|---|---|---|
| | ADMINISTRATIVE DISSOLUTION | 05-31-2018 | | SYS | | |
| | AMENDED ANNUAL REPORT | 03-23-2017 | | FI | | |
| | AMNDMT TO ANNUAL RPT/INFO STATEMENT | 10-12-2016 | | FI | | |

New Search Printer Friendly

# Business Entity Data

03-21-2022 08:23

| | Entity Type | Entity Status | Jurisdiction | | | |
|---|---|---|---|---|---|---|
| 760973-94 | DBC | INA | OREGON | 03-30-2011 | | |
| | CASCADE STRATEGIC INVESTMENTS, INC. | | | | | |
| | | | | | | |

New Search Printer Friendly

## Associated Names

| | | | | | |
|---|---|---|---|---|---|
| | PPB | PRINCIPAL PLACE OF BUSINESS | | | |
| | 1001 SW 5TH AVE | | | | |
| | | | | | |
| | PORTLAND | OR | 97204 | | UNITED STATES OF AMERICA |

*Please click here for general information about registered agents and service of process.*

| | | | | | |
|---|---|---|---|---|---|
| | AGT | REGISTERED AGENT | | 03-23-2016 | |
| | 086012-96 | TT ADMINISTRATIVE SERVICES, LLC | | | |
| | 888 SW 5TH AVE SUITE 1600 | | | | |
| | | | | | |
| | PORTLAND | OR | 97204 | | UNITED STATES OF AMERICA |

| | | | | | |
|---|---|---|---|---|---|
| | MAL | MAILING ADDRESS | | | |
| | 1001 SW 5TH AVE | | | | |
| | | | | | |
| | PORTLAND | OR | 97204 | | UNITED STATES OF AMERICA |

| | | | | | |
|---|---|---|---|---|---|
| | PRE | PRESIDENT | | | |
| | KEVIN | CLOCK | | | |
| | 1001 SW 5TH AVE | | | | |
| | | | | | |
| | PORTLAND | OR | 97204 | | UNITED STATES OF AMERICA |

| | | | | | |
|---|---|---|---|---|---|
| | SEC | SECRETARY | | | |
| | ELI | PARRIS | | | |
| | 1001 SW 5TH AVE | | | | |
| | | | | | |
| | PORTLAND | OR | 97204 | | UNITED STATES OF AMERICA |

New Search Printer Friendly

## Name History

| | Name Type | Name Status | | |
|---|---|---|---|---|
| CASCADE STRATEGIC INVESTMENTS, INC. | EN | CUR | 03-30-2011 | |

Please read before ordering Copies.

New Search Printer Friendly

## Summary History

| | | | | Status | | |
|---|---|---|---|---|---|---|
| | ADMINISTRATIVE DISSOLUTION | 05-31-2018 | | SYS | | |
| | AMENDED ANNUAL REPORT | 03-23-2017 | | FI | | |
| | AMNDMT TO ANNUAL RPT/INFO STATEMENT | 10-12-2016 | | FI | | |
| | AMENDED ANNUAL REPORT | 03-23-2016 | | FI | Agent | |
| | AMENDED ANNUAL REPORT | 04-15-2015 | | FI | | |

# Appendix III

# Exhibit III-D(1)

**From:** Yejin Park
**To:** Capra, Jeremiah
**Cc:** Randy Cloes; Soon Lee
**Subject:** Salal Credit Union Governor/Officer Add Request
**Date:** Friday, December 18, 2020 8:19:34 AM

---

Good morning Jeremiah,

I spoke with you over the phone on 12/17 about officer/governor for Salal Credit Union (UBI: 601 133 761).
Per our conversation, Salal currently does not have any one listed and email can be send to add people.

We would like to add people below as our officer/governor:
Russ Rosendal
Bob Schweigert
Skott Pope
Randy Cloes

If you could please respond to this email after adding them that would be greatly appreciated.

Thank you,

Yejin Park
**Assistant Controller, Accounting I Finance**

PO Box 75029, Seattle, WA 98175-0029

P: 206.826.7681 • 800.562.5515 • F: 206.298.3492
ypark@salalcu.org • SalalCU.org

SALAL
CREDIT UNION

This email may contain confidential information, and is for the sole use of the intended recipient. If you are not the intended recipient, please contact the sender immediately and delete the email and any attachments from your computer. Salal CU disclaims any responsibility or liability for personal information or Salal CU of the author expressed in the email. Although Salalcu takes reasonable precautions to ensure no viruses are present in email, it will not be liable for any loss or damage arising from the use of the email or attachments.



Work Order #: 2020121800668753 - 1
Received Date: 12/18/2020
Amount Received: $0.00

# Appendix III

# Exhibit III-D(2)

**From:** Thaila Marin <councilmember5@elkoband.org>
**Sent:** Tuesday, November 2, 2021 5:37:33 PM
**To:** Thalia Marin <marin.thalia@yahoo.com>
**Subject:** FW: Voided: Salal Credit Union - Business Account Application - Elko Band Council

Sent from Mail for Windows

**From:** Salal CU Business Services via DocuSign
**Sent:** Sunday, October 10, 2021 12:45 AM
**To:** Thaila Marin
**Subject:** Voided: Salal Credit Union - Business Account Application - Elko Band Council

SALAL®
BUSINESS SERVICES

**Salal CU Business Services**

BusinessServices@salalcu.org

Salal Credit Union - Business Account Application - Elko Band Council has been voided for the following reason:
Envelope has expired.

Powered by DocuSign

# Appendix III

# Exhibit III-D(3)

Gmail

Hon. Samuel Biers <tm.sup.ct.1@gmail.com>

## Scott sypolt reference

**Rafaela Sanchez, Lt. Governor** <RSanchez@pojoaque.org>
To: "Hon. Samuel Biers" <tm.sup.ct.1@gmail.com>
Cc: "Jenelle Roybal, Governor" <jcroybal@pojoaque.org>

Wed, Sep 8, 2021 at 10:35 AM

Your Honor,

Thank you for your call today. This has been an ongoing concern of mine and it was helpful to get perspective on the situation.

I have added Governor Roybal to the email as well so you have our information. Take care and blessings to you and the Te-Moak tribe.

**Rafaela Sanchez**

**LT. Governor**

Office of the Governor

78 Cities of Gold Road

Santa Fe, NM 87506

O: 505-455-5051

C: 505-231-0835

F: 505-455-3684

This message is intended only for the use of the individual or entity to which it is addressed and may contain legally privileged and/or confidential information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this message is strictly prohibited. If you received this message in error, please immediately notify the sender by return e-mail or by telephone and delete this message from your computer

**From:** Hon. Samuel Biers <tm.sup.ct.1@gmail.com>
**Sent:** Wednesday, September 8, 2021 10:56 AM
**To:** Rafaela Sanchez, Lt. Governor <RSanchez@pojoaque.org>
**Subject:** Re: Scott sypolt reference

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

[Quoted text hidden]

Gmail **Hon. Samuel Biers <tm.sup.ct.1@gmail.com>**

## Scott sypolt reference

**Hon. Samuel Biers** <tm.sup.ct.1@gmail.com> Wed, Sep 8, 2021 at 11:23 AM
To: "Rafaela Sanchez, Lt. Governor" <RSanchez@pojoaque.org>

Your Honors:

Thank you for the time today working together to help prevent any potential harm to your tribe. In following up with our exchange of information, I contacted Planet 13, specifically their attorney Leighton Koehler, to verify whether Mr. Sypolt or Mr. Stanford are employed with Planet 13. Mr. Leighton and others confirmed that neither Mr. Sypolt or Mr. Stanford are employed with Planet 13 nor do they represent Planet 13.

If it would be acceptable, will you permit me to forward your email addresses to Mr. Koehler as I believe he would like to confirm the information that these two individuals provided your Tribe as it relates to Planet 13?

Thank you again.

Hon. Samuel L. Biers
Te-Moak Supreme Court
[Quoted text hidden]

Gmail Hon. Samuel Biers <tm.sup.ct.1@gmail.com>

## Scott sypolt reference

**Rafaela Sanchez, Lt. Governor** <RSanchez@pojoaque.org> Wed, Sep 8, 2021 at 2:46 PM
To: "Hon. Samuel Biers" <tm.sup.ct.1@gmail.com>

Sure you can give him my email.

Thank you again!

Rafaela Sánchez

Sent from my iPhone

On Sep 8, 2021, at 12:23 PM, Hon. Samuel Biers <tm.sup.ct.1@gmail.com> wrote:

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Your Honors:

Thank you for the time today working together to help prevent any potential harm to your tribe. In following up with our exchange of information, I contacted Planet 13, specifically their attorney Leighton Koehler, to verify whether Mr. Sypolt or Mr. Stanford are employed with Planet 13. Mr. Leighton and others confirmed that neither Mr. Sypolt or Mr. Stanford are employed with Planet 13 nor do they represent Planet 13.

If it would be acceptable, will you permit me to forward your email addresses to Mr. Koehler as I believe he would like to confirm the information that these two individuals provided your Tribe as it relates to Planet 13?

Thank you again.

Hon. Samuel L. Biers
Te-Moak Supreme Court

On Wed, Sep 8, 2021 at 10:35 AM Rafaela Sanchez, Lt. Governor <RSanchez@pojoaque.org> wrote:

Your Honor,

Thank you for your call today. This has been an ongoing concern of mine and it was helpful to get perspective on the situation.

I have added Governor Roybal to the email as well so you have our information. Take care and blessings to you and the Te-Moak tribe.

**Rafaela Sanchez**

**LT. Governor**

Office of the Governor

78 Cities of Gold Road

Santa Fe, NM 87506

O: 505-455-5051

C: 505-231-0835

F: 505-455-3684

<image001.jpg>
[Quoted text hidden]

**image001.jpg**

# Appendix III

# Exhibit III-D(4)

Gmail

Samuel Biers <tm.sup.ct.1@gmail.com>

## Re: Samuel Biers/ Supreme Court Judge

3 messages

**ramon acosta** <brownbuffalo99@gmail.com> Wed, Mar 10, 2021 at 10:45 AM
To: "Sypolt, Scott" <scott.sypolt@dentons.com>, Elisa Dave <elisaallison11@gmail.com>, Tildon Smart <green.delight@icloud.com>, Anne Laughlin <anne@laughlin.legal>, Samuel Biers <tm.sup.ct.1@gmail.com>

I respect the Council members. I just wanted honesty and transparency. Sam told me what happened at the council meeting on Thursday. I work for the TeMoak Tribe, not you. I intend to
maintain my position on the court.

From this point forward, I do not want any interaction with you, unless it is in writing and on the record and free of any appearances that somehow you control this court because you do not. The court belongs to the tribe not dentons. You made many representations and promises about supposedly getting what we need. It is time for you to deliver.

In April, I will come to Elko for our court docket. I'm hopeful that this court will have everything you promised; a CMS, an audio recording system, tribal law and order code and supplies
We need the court files from the CFR Court. You boasted that dentons can make that happen given the powerful presence in Washington.

You have asked me repeatedly to cut my hours and hourly rate, while you maintain a high hourly rate for yourself.

To be clear, I do not report to you and I do not work for you. That is true for Elisa. I will never discuss any case with you unless we are in court and on the record. I ll get my contract (finally) from Sam or the council.
I' m curious to see if you made the changes I asked for.

No more emails, no more text messages and especially no more phone calls. You may remember you actually called me at 1130 on a Sunday night!

I respect the Council, the Chairperson and their authority, but that respect does not extend to you. Your glaring lack of respect for others and lack of humility is toxic and boring.
I will work with you, as a professional, but you do not have my trust and especially do not have my friendship.

Ramon Acosta,
Tribal Judge of Original Jurisdiction
Te Moak Tribal Court

On Wed, Mar 10, 2021 at 9:20 AM Sypolt, Scott <scott.sypolt@dentons.com> wrote:

> Good Morning Ramon,
>
> As per our discussions, I have expressed your concerns over selection of Samuel Biers as the Supreme Court Tribal Judge to the Te-Moak Tribal Council. After careful review the Council has made the definitive choice to keep Mr. Biers as their selection.
>
> If the Council's decision to retain Mr. Biers affects your decision to remain as Tribal Judge of Original Jurisdiction please notify the Council immediately.
>
> Thank you,
> Scott Sypolt
> General Council for
> Te-Moak Council
>
> [http://logo.dentons.com/dentons_logo.png]
>
> Scott Sypolt
>
> We are proud that Dentons is one of the three best known and most favored firms in the world, according to the Thomson Reuters Acritas "Global Elite Brand Index,"<https://www.dentons.com/en/whats-different-about-dentons/connecting-you-to-talented-lawyers-around-the-globe/news/2021/january/dentons-is-now-the-second-best-known-law-firm-in-the-world-according-to-acritas> the annual ranking of law firms judged by leading general counsel.
>
> D +1 312 876 8184 | US Internal 18184
> scott.sypolt@dentons.com<mailto:scott.sypolt@dentons.com>
> Bio<http://www.dentons.com/ch.aspx?email=scott.sypolt@dentons.com&action=biolink> | Website<http://www.dentons.com>
>
> Dentons US LLP
>
> Eric Silwamba, Jalasi and Linyama > Durham Jones & Pinegar > LEAD Advogados > Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larrain Rencoret > For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices.

---

**ramon acosta** <brownbuffalo99@gmail.com> Wed, Mar 10, 2021 at 11:18 AM
To: Anne Laughlin <laughlinlaw1@gmail.com>, Elisa Dave <elisaallison11@gmail.com>, Samuel Biers <tm.sup.ct.1@gmail.com>, "Sypolt, Scott" <scott.sypolt@dentons.com>, Tildon Smart <green.delight@icloud.com>

II did not threaten to quit because of Sam, I threatened to quit because of you. I did not have a choice and I like Sam. I just just questioned the code. You became unhinged, again.

"God complex"? Really? Coming from you that is a joke. If you are not bragging about yourself, you really have nothing to say.
You do not care about this tribe. All you care about is money and it is quite obvious. To be clear, I was not your choice, I was the tribal councils choice, as was Elisa and the others. I realize you have big plans to bleed this tribe dry so as far as staying out of your way, we ll see about that.

Do your job and take responsibility.
Stop emailing me.

On Wed, Mar 10, 2021 at 10:59 AM Sypolt, Scott <scott.sypolt@dentons.com> wrote:

You have shown absolutely no respect for the Tribal Council. You threatened to quit the very first day of court because the Council selected Sam Biers and he was not your choice. You are already starting to show signs of the "God Complex" which is unfortunate for the Tribe.
I regret selecting you as my choice for judge but what is done is done.

Stay out of my way and I will stay out of yours.

[http://logo.dentons.com/dentons_logo.png]

Scott Sypolt

We are proud that Dentons is one of the three best known and most favored firms in the world, according to the Thomson Reuters Acritas "Global Elite Brand Index<https://www.dentons.com/en/whats-different-about-dentons/connecting-you-to-talented-lawyers-around-the-globe/news/2021/january/dentons-is-now-the-second-best-known-law-firm-in-the-world-according-to-acritas>," the annual ranking of law firms judged by leading general counsel.

D +1 312 876 8184 | US Internal 18184
scott.sypolt@dentons.com<mailto:scott.sypolt@dentons.com>
Bio<http://www.dentons.com/ch.aspx?email=scott.sypolt@dentons.com&action=biolink> | Website<http://www.dentons.com>

Dentons US LLP

Eric Silwamba, Jalasi and Linyama > Durham Jones & Pinegar > LEAD Advogados > Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larraín Rencoret > For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices.

-------- Original message --------
From: ramon acosta <brownbuffalo99@gmail.com>
Date: 3/10/21 10:45 AM (GMT-08:00)
To: "Sypolt, Scott" <scott.sypolt@dentons.com>, Elisa Dave <elisaallison11@gmail.com>, Tildon Smart <green.delight@icloud.com>, Anne Laughlin <anne@laughlin.legal>, Samuel Biers <tm.sup.ct.1@gmail.com>
Subject: Re: Samuel Biers/ Supreme Court Judge

[WARNING: EXTERNAL SENDER]

---

I respect the Council members. I just wanted honesty and transparency. Sam told me what happened at the council meeting on Thursday. I work for the TeMoak Tribe, not you. I intend to
maintain my position on the court.

From this point forward, I do not want any interaction with you, unless it is in writing and on the record and free of any appearances that somehow you control this court because you do not. The court belongs to the tribe not dentons. You made many representations and promises about supposedly getting what we need. It is time for you to deliver.

In April, I will come to Elko for our court docket. I'm hopeful that this court will have everything you promised; a CMS, an audio recording system, tribal law and order code and supplies
We need the court files from the CFR Court. You boasted that dentons can make that happen given the powerful presence in Washington.

You have asked me repeatedly to cut my hours and hourly rate, while you maintain a high hourly rate for yourself.

To be clear, I do not report to you and I do not work for you. That is true for Elisa. I will never discuss any case with you unless we are in court and on the record. I ll get my contract (finally) from Sam or the council.
I' m curious to see if you made the changes I asked for.

No more emails, no more text messages and especially no more phone calls. You may remember you actually called me at 1130 on a Sunday night!

I respect the Council, the Chairperson and their authority, but that respect does not extend to you. Your glaring lack of respect for others and lack of humility is toxic and boring.
I will work with you, as a professional, but you do not have my trust and especially do not have my friendship.

Ramon Acosta,
Tribal Judge of Original Jurisdiction
Te Moak Tribal Court

On Wed, Mar 10, 2021 at 9:20 AM Sypolt, Scott <scott.sypolt@dentons.com<mailto:scott.sypolt@dentons.com>> wrote:

Good Morning Ramon,

As per our discussions, I have expressed your concerns over selection of Samuel Biers as the Supreme Court Tribal Judge to the Te-Moak Tribal Council. After careful review the Council has made the definitive choice to keep Mr. Biers as their selection.

If the Council's decision to retain Mr. Biers affects your decision to remain as Tribal Judge of Original Jurisdiction please notify the Council immediately.

Thank you,
Scott Sypolt
General Council for
Te-Moak Council

[http://logo.dentons.com/dentons_logo.png<http://logo.dentons.com/dentons_logo.png>]

Scott Sypolt

We are proud that Dentons is one of the three best known and most favored firms in the world, according to the Thomson Reuters Acritas "Global Elite Brand Index,"<https://www.dentons.com/en/whats-different-about-dentons/connecting-you-to-talented-lawyers-around-the-globe/news/2021/january/dentons-is-now-the-second-best-known-law-firm-in-the-world-according-to-acritas<https://www.dentons.com/en/whats-different-about-dentons/connecting-you-to-talented-lawyers-around-the-globe/news/2021/january/dentons-is-now-the-second-best-known-law-firm-in-the-world-according-to-acritas>> the annual ranking of law firms judged by leading general counsel.

D +1 312 876 8184 | US Internal 18184
scott.sypolt@dentons.com<mailto:scott.sypolt@dentons.com><mailto:scott.sypolt@dentons.com<mailto:scott.sypolt@dentons.com>>
Bio<http://www.dentons.com/ch.aspx?email=scott.sypolt@dentons.com&action=biolink<http://www.dentons.com/ch.aspx?email=scott.sypolt@dentons.com&action=biolink>> | Website<http://www.dentons.com<http://www.dentons.com>>

Dentons US LLP

Eric Silwamba, Jalasi and Linyama > Durham Jones & Pinegar > LEAD Advogados > Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larrain Rencoret > For more

information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms<http://dentons.com/legacyfirms>

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com<http://dentons.com> for Legal Notices.

---

**Sypolt, Scott** <scott.sypolt@dentons.com> Wed, Mar 10, 2021 at 11:26 AM
To: ramon acosta <brownbuffalo99@gmail.com>, Anne Laughlin <laughlinlaw1@gmail.com>, Elisa Dave <elisaallison11@gmail.com>, Samuel Biers <tm.sup.ct.1@gmail.com>, Tildon Smart <green.delight@icloud.com>, "Sypolt, Scott" <scott.sypolt@dentons.com>

You are the one bleeding the Tribe with your Bullshit charges for a CLE seminar that benefited no one but you. Your work product is horrible and you are a clown in front of a crowd. You are the most unethical, manipulative a-hole I have every met.

[http://logo.dentons.com/dentons_logo.png]

Scott Sypolt

We are proud that Dentons is one of the three best known and most favored firms in the world, according to the Thomson Reuters Acritas "Global Elite Brand Index<https://www.dentons.com/en/whats-different-about-dentons/connecting-you-to-talented-lawyers-around-the-globe/news/2021/january/dentons-is-now-the-second-best-known-law-firm-in-the-world-according-to-acritas>," the annual ranking of law firms judged by leading general counsel.

D +1 312 876 8184 | US Internal 18184
scott.sypolt@dentons.com<mailto:scott.sypolt@dentons.com>
Bio<http://www.dentons.com/ch.aspx?email=scott.sypolt@dentons.com&action=biolink> | Website<http://www.dentons.com>

Dentons US LLP

Eric Silwamba, Jalasi and Linyama > Durham Jones & Pinegar > LEAD Advogados > Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larraín Rencoret > For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices.

-------- Original message --------
From: ramon acosta <brownbuffalo99@gmail.com>
Date: 3/10/21 11:19 AM (GMT-08:00)
To: Anne Laughlin <laughlinlaw1@gmail.com>, Elisa Dave <elisaallison11@gmail.com>, Samuel Biers <tm.sup.ct.1@gmail.com>, "Sypolt, Scott" <scott.sypolt@dentons.com>, Tildon Smart <green.delight@icloud.com>
Subject: Re: Samuel Biers/ Supreme Court Judge

[WARNING: EXTERNAL SENDER]

---

II did not threaten to quit because of Sam, I threatened to quit because of you. I did not have a choice and I like Sam. I just just questioned the code. You became unhinged, again.

"God complex"? Really? Coming from you that is a joke. If you are not bragging about yourself, you really have nothing to say.

You do not care about this tribe. All you care about is money and it is quite obvious. To be clear, I was not your choice, I was the tribal councils choice, as was Elisa and the others. I realize you have big plans to bleed this tribe dry so as far as staying out of your way, we ll see about that.

Do your job and take responsibility.
Stop emailing me.

On Wed, Mar 10, 2021 at 10:59 AM Sypolt, Scott <scott.sypolt@dentons.com<mailto:scott.sypolt@dentons.com>> wrote:
You have shown absolutely no respect for the Tribal Council. You threatened to quit the very first day of court because the Council selected Sam Biers and he was not your choice. You are already starting to show signs of the "God Complex" which is unfortunate for the Tribe.
I regret selecting you as my choice for judge but what is done is done.

Stay out of my way and I will stay out of yours.

[http://logo.dentons.com/dentons_logo.png<http://logo.dentons.com/dentons_logo.png>]

Scott Sypolt

We are proud that Dentons is one of the three best known and most favored firms in the world, according to the Thomson Reuters Acritas "Global Elite Brand Index<https://www.dentons.com/en/whats-different-about-dentons/connecting-you-to-talented-lawyers-around-the-globe/news/2021/january/dentons-is-now-the-second-best-known-law-firm-in-the-world-according-to-acritas<https://www.dentons.com/en/whats-different-about-dentons/connecting-you-to-talented-lawyers-around-the-globe/news/2021/january/dentons-is-now-the-second-best-known-law-firm-in-the-world-according-to-acritas>>," the annual ranking of law firms judged by leading general counsel.

D +1 312 876 8184 | US Internal 18184
scott.sypolt@dentons.com<mailto:scott.sypolt@dentons.com><mailto:scott.sypolt@dentons.com<mailto:scott.sypolt@dentons.com>>
Bio<http://www.dentons.com/ch.aspx?email=scott.sypolt@dentons.com&action=biolink<http://www.dentons.com/ch.aspx?email=scott.sypolt@dentons.com&action=biolink>> | Website<http://www.dentons.com<http://www.dentons.com>>

Dentons US LLP

Eric Silwamba, Jalasi and Linyama > Durham Jones & Pinegar > LEAD Advogados > Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larraín Rencoret > For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms<http://dentons.com/legacyfirms>

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com<http://dentons.com> for Legal Notices.

-------- Original message --------
From: ramon acosta <brownbuffalo99@gmail.com<mailto:brownbuffalo99@gmail.com>>
Date: 3/10/21 10:45 AM (GMT-08:00)
To: "Sypolt, Scott" <scott.sypolt@dentons.com<mailto:scott.sypolt@dentons.com>>, Elisa Dave <elisaallison11@gmail.com<mailto:elisaallison11@gmail.com>>, Tildon Smart <green.delight@icloud.com<mailto:green.delight@icloud.com>>, Anne Laughlin <anne@laughlin.legal>, Samuel Biers <tm.sup.ct.1@gmail.com<mailto:tm.sup.ct.1@gmail.com>>
Subject: Re: Samuel Biers/ Supreme Court Judge

[WARNING: EXTERNAL SENDER]

---

I respect the Council members. I just wanted honesty and transparency. Sam told me what happened at the council meeting on Thursday. I work for the TeMoak Tribe, not you. I intend to
maintain my position on the court.

From this point forward, I do not want any interaction with you, unless it is in writing and on the record and free of any appearances that somehow you control this court because you do not. The court belongs to the tribe not dentons. You made many representations and promises about supposedly getting what we need. It is time for you to deliver.

In April, I will come to Elko for our court docket. I'm hopeful that this court will have everything you promised; a CMS, an audio recording system, tribal

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices.

-------- Original message --------
From: ramon acosta <brownbuffalo99@gmail.com>
Date: 3/10/21 11:19 AM (GMT-08:00)
To: Anne Laughlin <laughlinlaw1@gmail.com>, Elisa Dave <elisaallison11@gmail.com>, Samuel Biers <tm.sup.ct.1@gmail.com>, "Sypolt, Scott" <scott.sypolt@dentons.com>, Tildon Smart <green.delight@icloud.com>
Subject: Re: Samuel Biers/ Supreme Court Judge

[WARNING: EXTERNAL SENDER]
________________________________
II did not threaten to quit because of Sam, I threatened to quit because of you. I did not have a choice and I like Sam. I just just questioned the code. You became unhinged, again.

"God complex"? Really? Coming from you that is a joke. If you are not bragging about yourself, you really have nothing to say.
You do not care about this tribe. All you care about is money and it is quite obvious. To be clear, I was not your choice, I was the tribal councils choice, as was Elisa and the others. I realize you have big plans to bleed this tribe dry so as far as staying out of your way, we ll see about that.

Do your job and take responsibility.
Stop emailing me.

On Wed, Mar 10, 2021 at 10:59 AM Sypolt, Scott <scott.sypolt@dentons.com<mailto:scott.sypolt@dentons.com>> wrote:
You have shown absolutely no respect for the Tribal Council. You threatened to quit the very first day of court because the Council selected Sam Biers and he was not your choice. You are already starting to show signs of the "God Complex" which is unfortunate for the Tribe.
I regret selecting you as my choice for judge but what is done is done.

Stay out of my way and I will stay out of yours.

[http://logo.dentons.com/dentons_logo.png<http://logo.dentons.com/dentons_logo.png>]

Scott Sypolt

We are proud that Dentons is one of the three best known and most favored firms in the world, according to the Thomson Reuters Acritas "Global Elite Brand Index<https://www.dentons.com/en/whats-different-about-dentons/connecting-you-to-talented-lawyers-around-the-globe/news/2021/january/dentons-is-now-the-second-best-known-law-firm-in-the-world-according-to-acritas<https://www.dentons.com/en/whats-different-about-dentons/connecting-you-to-talented-lawyers-around-the-globe/news/2021/january/dentons-is-now-the-second-best-known-law-firm-in-the-world-according-to-acritas>>," the annual ranking of law firms judged by leading general counsel.

D +1 312 876 8184 | US Internal 18184

scott.sypolt@dentons.com<mailto:scott.sypolt@dentons.com><mailto:scott.sypolt@dentons.com<mailto:scott.sypolt@dentons.com>>
Bio<http://www.dentons.com/ch.aspx?email=scott.sypolt@dentons.com&action=biolink<http://www.dentons.com/ch.aspx?email=scott.sypolt@dentons.com&action=biolink>> | Website<http://www.dentons.com<http://www.dentons.com>>

Dentons US LLP

Eric Silwamba, Jalasi and Linyama > Durham Jones & Pinegar > LEAD Advogados > Rattagan Macchiavello Arocena > Jiménez de Aréchaga, Viana & Brause > Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larraín Rencoret > For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms<http://dentons.com/legacyfirms>

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com<http://dentons.com> for Legal Notices.

-------- Original message --------
From: ramon acosta <brownbuffalo99@gmail.com<mailto:brownbuffalo99@gmail.com>>
Date: 3/10/21 10:45 AM (GMT-08:00)
To: "Sypolt, Scott" <scott.sypolt@dentons.com<mailto:scott.sypolt@dentons.com>>, Elisa Dave <elisaallison11@gmail.com<mailto:elisaallison11@gmail.com>>, Tildon Smart <green.delight@icloud.com<mailto:green.delight@icloud.com>>, Anne Laughlin <anne@laughlin.legal>, Samuel Biers <tm.sup.ct.1@gmail.com<mailto:tm.sup.ct.1@gmail.com>>
Subject: Re: Samuel Biers/ Supreme Court Judge

[WARNING: EXTERNAL SENDER]

---

I respect the Council members. I just wanted honesty and transparency. Sam told me what happened at the council meeting on Thursday. I work for the TeMoak Tribe, not you. I intend to maintain my position on the court.

From this point forward, I do not want any interaction with you, unless it is in writing and on the record and free of any appearances that somehow you control this court because you do not. The court belongs to the tribe not dentons. You made many representations and promises about supposedly getting what we need. It is time for you to deliver.

In April, I will come to Elko for our court docket. I'm hopeful that this court will have everything you promised; a CMS, an audio recording system, tribal law and order code and supplies
We need the court files from the CFR Court. You boasted that dentons can make that happen given the powerful presence in Washington.

You have asked me repeatedly to cut my hours and hourly rate, while you maintain a high hourly rate for yourself.

To be clear, I do not report to you and I do not work for you. That is true for Elisa. I will never discuss any case with you unless we are in court and on the record. I ll get my contract (finally) from Sam or the council.
I' m curious to see if you made the changes I asked for.

# Appendix III

# Exhibit III-D(5)

# Whistleblower Information

From: Melville, Andrew T. (LV) (FBI) (atmelville@fbi.gov)

To: sambiers@yahoo.com

Date: Wednesday, March 24, 2021, 06:53 AM PDT

Sam,

As discussed on the phone yesterday, below are links to information about whistleblower protection. Please let me know you received them.

SA Andrew Melville
Elko RA
Las Vegas Division
775-738-1880 (desk)
915-472-3753 (mobile)

**From HUD OIG**

Federal Employee Whistleblower rights

Federal Contractor/Grantee Whistleblower rights

**From Treasury OIG**

# Appendix III

# Exhibit III-D(6)

## FW: Attempted Criminal Conduct

Leena Khoury <Leena.Khoury@nsbank.com>
Fri 10/15/2021 11:33 AM
To: Te.Moak.Adm@outlook.com <Te.Moak.Adm@outlook.com>

8 attachments (25 MB)

InvoiceScottSypolt.pdf; Robert.Brady.Affidavit.RE.Scott.Sypolt.10.14.2021.pdf; Te-Moak.Tribal.Council.Meeting.Certified.Verbatim.Transcript.02.03.2021.pdf; Susanna.Sandoval.Tribal.Administrator.Posting.RE.Sypolt.09.11.2021.pdf; Judge.Carrie.Frias.Resignation.RE.Sypolt.08.28.2021.pdf; Te.Moak.Community.Complaint.pdf; Alice.Tybo.Email.RE.Biers.01.20.2021.pdf; Te.Moak.Chairman.Holley.Decision.RE.Biers.Criminal.Hx.01.17.2021.jpeg;

**From:** Hon. Samuel Biers <tm.sup.ct.1@gmail.com>
**Sent:** Friday, October 15, 2021 10:23 AM
**To:** Leena Khoury <Leena.Khoury@nsbank.com>
**Subject:** Fwd: Attempted Criminal Conduct

**EXTERNAL EMAIL!** Inspect contents carefully.

Per Nicole Lewis' automatic reply directing communications to your office. Thank you.

---------- Forwarded message ---------
From: **Hon. Samuel Biers** <tm.sup.ct.1@gmail.com>
Date: Fri, Oct 15, 2021 at 10:07 AM
Subject: Attempted Criminal Conduct
To: <sarah.stevenson@nsbank.com>, <nicole.lewis@nsbank.com>

This morning at approximately 10:00 a.m. the Te-Moak Council will meet, without publication of the Agenda, and at the beginning a motion to amend will include payment of $390,000.00 to Scott Sypolt for attorney fees.

On or about June 11, 2021 Dentons US LLP terminated Scott Sypolt from the firm.

On or about August 16, 2021 as the only lawfully appointed Te-Moak Supreme Court judge, I permanently disbarred Scott Sypolt from the practice of law on all Te-Moak lands and covering all Te-Moak interests. Mr. Sypolt was served with a copy of the Order to Show Cause regarding allegations of his misconduct on or about July 26, 2021 via email, and via personal service at Te-Moak on July 28, 2021. I understand Mr. Sypolt has disseminated certain false information regarding me, particularly claiming with his friends on the Te-Moak Council who are receiving kick-backs as bribes that a motion was made conditioning my appointment on a background investigation. This is categorically false.

During the February 3, 2021 Tribal Council Meeting Mr. Sypolt made numerous references prior to my appointment that he already performed a background investigation on me because he vetted all the candidates he selected. See Attached February 3, 2021 Transcript at 2-3 (42:47); 8 (5:09:45); 9(5:14:46); 15(5:44:48); at 23 (6:14:00)(confirmed by Council member Andrea Woods). Initially, my name was included by Mr. Sypolt as a candidate for prosecutor. While he first declared that he had thoroughly performed a background investigation on each of us as candidates, only after his choice for appellate judge was eliminated and my name was substituted did he switch courses, contradict and misrepresent his earlier claims. Id at 16(5:42:12 - 5:43:26)(Sypolt not the Council conditioned Biers' appointment on "the outcome of the background check"). Chairman Holley and the Council already accepted my FBI background and issued a decision on this point in early 2020 before placing those documents in my personnel file at Te-Moak. See Attached Chairman Holley Criminal Background RE Biers.

Despite the false representations given to the Tribe, the Tribal Council and the public by Mr. Sypolt claiming the motion for my appointment was a conditional hire, a thorough review of the official meeting recording shows that the motion never included a background as a condition of appointment or hire and it was an immediate appointment. Ibid at 26 (6:24:23 - 6:25:37)(Chairman Holley read into the official record the motion as: "Dave made a motion to hire Sam Biers as the appellate judge by Resolution 21-TM-29"); e.g. February 24, 2021 Transcript at 3(00:35:43)(Chairman Holley: "Yeah, but one he's the judge. . .legally he is the judge").

On September 9, 2021 Te-Moak Resolution 21-TM-111 purports to hire Mr. Sypolt as "General Counsel" for the Te-Moak Tribe, and the attached Invoice was submitted for payment by Mr. Sypolt on September 10, 2021 was transmitted via wire in an attempt to defraud the Te-Moak People by obtaining federal funds, your tax dollars.

On or about September 11, 2021 Te-Moak Tribal Administrator, Suzanna Sandoval, resigned from her position and then posted her reasons online. See Sandoval Posting (September 11, 2021)(claiming Scott Sypolt "hurt" tribal "people" caused delays in Court cases and "thinks it's no big deal. Violating the civil rights of our people"). After paying the former trial court judge, Carrie Frias, and the prosecutor, Sherry Harris, with illicit cash proceeds from the RICO enterprise, they resigned on August 28, 2021 because of Scott

Sypolt. See Judge Carrie Frias Resignation RE Sypolt (August 28, 2021)("deeply concerned that the Tribe is receiving inaccurate legal advice regarding the Tribal Court and laws governing it" as well as Mr. Sypolt tainting my office to the point of J. Frais referencing me as the "rouge Appellate justice"). On or about October 11, 2021 the Tribal Council hired Barry Stark, a former Tribal prosecutor and County Court Clerk, as the Tribal Administrator. Mr. Stark resigned on or about October 12, 2021 claiming Scott Sypolt was trying to frame him by signing a check request for $390,000 in disallowable payments for legal fees after Mr. Stark negatively remarked on Mr. Sypolt selecting new judges because I am legally in office.

At no point in my life have I ever claimed to be a licensed attorney in Utah, Nevada or North Carolina, let alone any other state, nor have I claimed a prosecutor at the Hague or anywhere else, and my character is beyond reproach in this manner. Ref. February 24, 2021 Transcript at 00:33:45, 00:37:29; 00:39:27; 00:39:52 (Chairman Holley praise); 00:34;50 and 00:34:20 (Vice Chairman Tybo accolades); e.g. Alice Tybo Email; e.g. Chairman Holley One Year Performance Evaluation RE Biers (February 19, 2021). In fact, I have always acted to the contrary. Id; see also, Professional Recommendation Weber State Biers. The only reason for the change in opinion is the unlawful actions by Mr. Sypolt.

The claims against Mr. Sypolt are not solely at the Te-Moak Supreme Court steps, they are being voiced by the Community, other leaders and tribes. See Te-Moak Community Complaint; e.g. Affidavit Lorraine Garcia. On September 8, 2021 I received communications from the Lt. Governor of the Pueblo of Pojoaque, a tribe in New Mexico. The Lt. Governor, Rafaela Sanchez, asked me for a professional reference regarding Scott Sypolt, before informing me that Mr. Sypolt recently appeared in New Mexico claiming to be the attorney for Planet 13. Planet 13 is the largest marijuana dispensary in the world, and I contacted their attorney, Leighton Koehler, to verify. Mr. Koehler immediately refuted Sypolt's claim and asked to speak with the Lt. Governor. The Lt. Governor and the Governor of the Pojoaque People held a teleconference with me, and afterward they stated that they appreciated my candor and help avoiding potential fraud by Mr. Sypolt, who was accompanied by Darian Stanford, who represents the Cannabis entity SCS Elko LLC.

The Tribe was supposed to hold its election on October 12, 2021. These individuals manipulated that date and delayed it until after this money issue at hand is resolved, setting October 25, 2021 as the date, except Chairman Holley claims now it will be February.

Banks are bailees of money held, in this instance the money's character is federal funds until a lawful and official Te-Moak action changes that character. Please notify your legal counsel and law enforcement contacts when Chairman Holley and Vice Chairwoman Tybo present a signed document and/or check seeking funds to pay Scott Sypolt. Mr. Sypolt has no lawful authority to obtain federal funds as an attorney for Te-Moak because he was disbarred. Thank you for your time and consideration in this matter.

RESPECTFULLY SUBMITTED:
/s/
Hon. Samuel L. Biers
Te-Moak Supreme Court

Professional.Recommendations.Weber.State.pdf

Te.Moak.Tribal.Council.Meeting.02.24.2021.RE.Bi...

Affidavit.Lorraine.Garcia.10.15.2021.pdf

Sam.Tribal.Adm.Perf.pdf

Pardon.Cert.NV.pdf

THIS ELECTRONIC MESSAGE, INCLUDING ANY ACCOMPANYING DOCUMENTS, IS CONFIDENTIAL and may contain information that is privileged and exempt from disclosure under applicable law. If you are neither the intended recipient nor responsible for delivering the message to the intended recipient, please note that any dissemination, distribution, copying or the taking of any action in reliance upon the message is strictly prohibited. If you have received this communication in error, please notify the sender immediately. Thank you.

# Automatic reply: Attempted Criminal Conduct

1 message

**Hon. Samuel Biers** <tm.sup.ct.1@gmail.com> Fri, Nov 12, 2021 at 3:25 PM
To: Nicole Lewis <Nicole.Lewis@nsbank.com>

Ms. Lewis:

As soon as possible, please forward to me the contact information for whomever advised you to "not discuss" the Te-Moak Tribal Court accounts and money held in trust at NSB, whether individual attorney, partner or firm so that process can begin. Thank you.

RESPECTFULLY
/s/
Hon.Samuel L. Biers
Te-Moak Supreme Court
(425) 330-5576

[Quoted text hidden]

# Automatic reply: Attempted Criminal Conduct

1 message

**Nicole Lewis** <Nicole.Lewis@nsbank.com> Mon, Nov 15, 2021 at 4:55 PM
To: Hon. Samuel Biers <tm.sup.ct.1@gmail.com>

Hello Sam,

Sorry for the delay. Here is the email contact information for Brent. Thank you,

# Appendix III

# Exhibit III-D(7)

4 >



**Lorrie Carpenter**

What a joke really? I don't believe this letter. Plus I don't think Joe can wrote a letter like this. I can just imagine who wrote it, lol!

9h Like Reply 1



**Steve Mcdade**

I don't even know why I have to explain this again. First and foremost, this article written in the Durham NC paper is not an accusation of any kind. It's fact. I personally know a family member who called the sitting NC magistrate and that magistrate verified everything in that article. Second Biers sued that court and got his ass handed to him in federal court. Courts records show this. And last... See More

20m Like Reply 1

Write a comment... GIF

# Replies

personally know a family member who called the sitting NC magistrate and that magistrate verified everything in that article. Second Biers sued that court and got his ass handed to him in federal court. Courts records show this. And last... See More

20m Like Reply 1

**Lorrie Carpenter**

**Steve Mcdade** well when he dies we can thank the Tm t

15m Like Reply

**Angie Quintana**

**Steve Mcdade** my dad Edward Mcdade sat on many councils with past Glenn Holley (JOSEPH HOLLEYS) dad and he would roll over in his grave for bad decisions of Joseph or Joe.

14m Like Reply

Write a reply... GIF

# Replies

Delvin Tom
Lorraine Garcia ok I'll look

14h Like Reply

Bobby George
Lorraine Garcia Does it say his name.
What he probably did was get his record sealed But that still don't say he was Not a felon

13h Like Reply

Lorraine Garcia
Yes, it does name him. Look on Angie's page, you can watch the video.

12h Like Reply 1

Angie Quintana
Bobby George A NCIC National crime information center needs to be done on what was sealed. Need birth date, Social security

Write a reply... GIF

# Appendix III

# Exhibit III-D(8)

Suzanna's Post

Since people keep asking. No I didn't get sworn in as Te-Moak rep. I refuse to recognize Sam Biers. This man has wreaked havoc in our community and created the situation we are in by advising the Tmk Council they had the authority to disregard the Constitution and their oath of office. Sam and Joe Holley have a falling out and everyone thinks Sam is our best option to fix the problems he created??? Absurd!!! Furthermore do we not realize the power he has by recognizing his authority, he is now the final interpreter of the Tmk Constitution!! Good idea?? I think not! The man did not and does not qualify to be a Judge for the Tribe. Lastly none of the Elko Band Council members spoke with me about their actions, choices or decisions. I was told they would not be sworn in by Mr. Biers but I guess their words mean nothing. Who's gonna chair their meeting if Joe or Alice don't show up??? Two wrongs don't make a right! Politics is not the way to go. What happened to leadership???? The only way to fix this issue is to petition Joe and Alice out!! Which is what I thought we were doing but I guess the "super majority" has other plans...

Write a comment...

News Feed Marketplace Groups Notifications Menu

# Appendix III

# Exhibit III-D(9)

Scott Sypolt

Friday, Dec 11 • 1:26 PM

S

I just got off the phone with Governor Sisolak. Please call me.

Friday, Dec 11 • 3:38 PM

I'll call you right back.

S

Ok.
Darian received an interesting text from Juan

Friday, Dec 11 • 6:22 PM

Can you call I'm on my way home

Monday, Dec 14 • 6:56 AM

S

Good Luck this Week!!

Monday, L • 1:20 PM

Text message

# Appendix III

# Exhibit III-E(1)


(737) 402-2366
Sep 18, 9:46 PM
Text message